CHUBB

# Attached please find Chubb mail received November 22, 2022.

If you need to collect your physical document, contact the mailroom, and provide the file number located on the bottom of the page.

## \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*MEMO\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Throughout the pandemic, mail has been scanned to building colleagues and distributed as a PDF file to various site-specific email boxes along with a transmittal stating the date said parcel was scanned, and a unique mail parcel identification number in the bottom right corner. As per the original instructions when mail scanning started for select locations in 2020, when offices re-open we would provide 30 days' notice to destroy all hard copies of mail unless specifically requested within those 30 days. At this time, we are looking to destroy all mail received from 2021.

If you need hard copies of the scanned mail PDFs previously sent to you from **January 2021** through **December 2021**, kindly request said hard copies be sent to your work address. **Please allow 48 hours for retrieval of each mail piece.** If such requests are not received by **October 14, 2022**, any hard mail received from January 2021 through December 2021 will be destroyed.

Requests for hard copies of previously scanned mail for the following locations should be sent to mailbox:

**WHS A, WHS B, Boston, Basking Ridge, Jersey City, 1133 AOA, Uniondale**
Mail-whsa-mailroom-qc@chubb.com

**Philadelphia, Malvern, Bethlehem**
Mail-Philadelphia-mailroom-QC@chubb.com

Requests should include the file name which is located on the bottom right corner of the scanned mail email cover sheet. Only requests with particular mail parcel numbers can be returned to your work address. The mail team cannot process blanket requests for all mail sent to a particular person or department.

PHL20221122- 137252

**EXHIBIT A**

Springfield, Illinois 62777

9214 7969 0099 9790 1645 3665 99

neopost
11/14/2022
**US POSTAGE** $020

PRIOI

ZIP 6
041L12:

Ace American Insurance Company
PO Box 1000
436 Walnut Street
Philadelphia, PA 19106

 **Illinois Department of Insurance**

| | |
|---|---|
| **JB PRITZKER**<br>Governor | **DANA POPISH SEVERINGHAUS**<br>Director |

November 14, 2022

Ace American Insurance Company
PO Box 1000
436 Walnut Street
Philadelphia, PA 19106

     Re:    Case #2022CH08890

Gentlemen:

Enclosed please find copy Complaint for Declaratory Judgment received by me as your agent for service of process on November 11, 2022, in my Springfield office in the case of Jason Rahimzadeh vs. your company, et al.

     Sincerely,

Dana Popish Severinghaus
Director of Insurance

DPS:MS:alt
Enclosure

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

**Springfield Office**
320 W. Washington Street
Springfield, Illinois 62767
(217) 782-4515

**Chicago Office**
122 S. Michigan Ave., 19th Floor
Chicago, Illinois 60603
(312) 814-2420

**IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS**
**CHANCERY DIVISION**

|  |  |  |
|---|---|---|
| Jason Rahimzadeh, | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | No. 2022CH08890 |
| | ) | |
| ACE American Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

To:

Illinois Department of Insurance
Attn: Civil Process
320 W. Washington St.
Springfield, IL 62767
(217) 782-4515

    I, Zachary Stillman, being first duly sworn on oath, certify that I served a copy of the following documents, via certified mail, return receipt requested, to the above party on November 4, 2022:

1. Cover Letter
2. 2x Copies of Complaint + Exhibits A and B.
3. $40 Check payable to the Illinois Department of Insurance
4. This Certificate of Service

    Pursuant to 215 ILCS 5/112(2), this mailing and the subsequent confirmation of receipt represent full effectuation of service upon Defendant ACE American Insurance Company in the above captioned matter.

                              */s/Zachary Stillman*_____
                                Zachary Stillman

                                [x] Under penalties as provided by law
                                pursuant to 735 ILCS 5/1-109, I certify that
                                the statements set forth herein as true and
                                correct.

# Stapled

# Document

9/8/2022 3:16 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH08890
Calendar, 15
19414946

## IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS
## CHANCERY DIVISION

Jason Rahimzadeh, )
)
)
Plaintiff )
v. ) No. 2022CH08890
)
ACE American Insurance Company, )
)
Defendant. )
)

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Jason Rahimzadeh ("Rahimzadeh"), by and through his attorneys, DEVORE RADUNSKY LLC, pursuant to Section 2-701 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-701, and states as following with respect to his request for declaratory judgment in his favor:

### THE DISPUTE AND THE PARTIES

1.      This is an insurance coverage dispute, which relates to an underinsured motorists ("UIM") claim brought by Rahimzadeh under a policy of insurance issued by ACE American Insurance Company, an affiliate of Chubb ("Chubb"), as policy number H25295304.

2.      Rahimzadeh brings this action, pursuant to 735 ILCS 5/2-701, to obtain a declaratory judgment that Chubb affords UIM coverage to Rahimzadeh related to an accident during the COVID-19 pandemic on September 11, 2020.

3.      Rahimzadeh suffered significant, debilitating injuries in the September 11, 2020 accident.

4.      The September 11, 2020 accident happened during the workday for Rahimzadeh.

5.      At all times relevant hereto, Rahimzadeh was an employee of Medtronic PLC ("Medtronic") and a resident of the State of Illinois.

#373527v1

6.      At all times relevant hereto, Chubb was an insurance company authorized to issue insurance policies in the State of Illinois.

7.      At all times relevant hereto, Chubb issued policies of insurance in Cook County, Illinois.

8.      At all times relevant hereto, Medtronic, PLC was a corporation doing business in Cook County, Illinois.

9.      There is an actual case or controversy between the parties, pursuant to 735 ILCS 5/2-701.

## BACKGROUND

10.      At all times relevant hereto, Rahimzadeh was using a Medtronic-issued company vehicle.

11.      As part of his employment with Medtronic, Rahimzadeh had use of a Medtronic-issued company vehicle at his home.

12.      The Medtronic-issued company vehicle issued to Rahimzadeh was a 2018 Chevy Traverse, Vehicle Identification Number 1GNEVLKW6JJ229084.

13.      The 2018 Chevy Traverse used by Rahimzadeh was registered in the State of Illinois with the following registered owner: D L PETERSON TRUST LSR, CO COVIDIEN SALES LLC LSE, 42 DUKES CIRLCE, LINCONSHIRE, IL  60069-3323.

14.      Chubb issued an "Illinois Insurance Identification Card" for the 2018 Chevy Traverse used by Rahimzadeh, effective 5/1/2020 to 5/2/2021 to the following insured: D.L. Peterson Trust, COVIDIEN SALES LLC, 940 Ridgebrook Rd, Sparks, MD  21152.

15.      On September 11, 2020, at the time of the accident, Rahimzadeh was participating in exercise activities endorsed by his employer, Medtronic.

2

16.     Following the September 11, 2020 accident, Rahimzadeh notified Chubb of the accident and UIM claim.

17.     Rahimzadeh also filed a lawsuit against the at-fault driver of the vehicle who struck him in a lawsuit in the Circuit Court of **Cook County**, styled *as Jason and Nikki Rahimzadeh v. Keller*, Case No.:2021L78.

18.     Rahimzadeh sought UIM coverage from the insurer who issued a personal automobile policy to Jason and Nikki Rahimzadeh.

19.     The Rahimzadeh's personal automobile insurer acknowledged UIM coverage and paid its entire UIM policy limit.

20.     Rahimzadeh requested a copy of the Chubb policy and received what purports to be a complete policy.

21.     The UIM coverage of the Chubb policy is governed by Illinois statutory provisions controlling the broad scope of the coverage.

22.     On January 15, 2021, Chubb sent a letter to counsel for Rahimzadeh in response to a request for a review of UIM coverage under a policy of insurance issued by ACE American Insurance Company ("Chubb") to Medtronic, PLC ("Medtronic") Business Auto Policy, Number H25295304, effective from 5/1/2020 – 5/1/2021.

23.     The January 15, 2021 letter from Chubb advises that there is no coverage under the policy for the following two reasons: (1) the bicycle does not meet the definition of an owned "auto" as defined in the Policy, nor would it qualify as an "auto" owned by Medtronic; and (2) Jason does not qualify as an "insured" under the Policy, under the terms of the Illinois Uninsured Motorists Coverage Endorsement.

3

24. Chubb's January 15, 2021 letter fails to address the impact of Rahimzadeh participating in exercise activities endorsed by his employer, Medtronic, at the time of the September 11, 2020 accident.

25. On June 10, 2022, counsel for Rahimzadeh wrote an 11-page letter to Chubb, which outlined numerous issues with the January 15, 2021 correspondence from Chubb.

26. Page one of the June 10, 2022 letter to Chubb included the following five reasons why Jason is entitled to UIM coverage under the Chubb policy:

First, he is an insured. Second, Jason's use of a covered auto relates to the accident and there is a sufficient causal nexus to support coverage. Third, Chubb's interpretation of its policy does not reflect the reasonable expectations of its named insured, Medtronic. Fourth, Chubb's interpretation suggests that Jason (nor any Medtronic employee) could not qualify for UIM coverage under any circumstances, which reflects illusory coverage. Fifth, Chubb's overly restrictive, narrow, view of the UIM coverage afforded by the policy issued to Medtronic, gave rise to the need for Chubb to notify Medtronic and employees issued company cars, like Jason, that coverage under the Chubb policy would be narrower than they may reasonably expect.

27. Two months later, on August 8, 2022, Chubb reiterated its denial of the UIM claim in a two-page letter that did not address the five issues raised in Rahimzadeh's June 10 letter to Chubb.

## MEDTRONIC "HEALTHIER TOGETHER" INITIATIVE

28. At all times relevant hereto, Medtronic maintained a "Healthier Together" Initiative and encouraged its employees to engage in bicycling and other exercise during the workday.

#373527v1

29. The "Healthier Together" Initiative at Medtronic contemplates employees engaging in exercise on a daily basis.

30. On September 11, 2020, before Rahimzadeh was struck by a vehicle during his workday, Medtronic sent an email to employees advising that the "first virtual Medtronic Move Together 5K" was taking place Sept. 11-13, 2020. (See Exhibit A, September 11, 2020, email from Medtronic to Jason Rahimzadeh).

31. Medtronic employees were encouraged to "run, walk, or roll a 5K" during workdays.

32. As part of Medtronic's "Healthier Together" Initiative, Jason routinely bicycled during the workday, as he did on September 11, 2020.

33. It would be reasonably expected that employees, including Jason, would have UIM coverage as they participated in company-endorsed exercise, like bicycling.

## CHUBB POLICY

34. Chubb issued a Business Auto Policy, Number H25295304, effective from 5/1/2020 – 5/1/2021, to Medtronic plc, 710 Medtronic Parkway, Minneapolis, MN 55432. A copy of the Chubb policy is attached hereto and incorporated herein as Exhibit B.

35. The Chubb policy Declarations lists a limit of $2,000,000.

36. Chubb was required to offer UIM limits to match the $2,000,000 liability limits of the business automobile policy that Chubb issued to Jason's employer, Medtronic.

37. The Chubb policy Declarations refers to forms that were not provided by Chubb when it provided what purported to be the applicable policy for the vehicle that Medtronic issued to Rahimzadeh.

38.     The Chubb policy is comprised of several hundred pages, including numerous sections of the policy that refer to other sections of the policy.

39.     The Chubb policy is ambiguous with respect to UIM coverage for the September 11, 2020, accident involving Rahimzadeh.

40.     Under Illinois law, if an insurance policy term is capable of two or more reasonable interpretations, courts consider the term to be ambiguous.

41.     Courts construe ambiguous terms against the insurer and in favor of those seeking coverage.

42.     Policy provisions that contradict other policy provisions create ambiguity, as do provisions that reference documents that have not been appropriately endorsed to the policy.

43.     The Chubb UIM Endorsement states, *inter alia*, that an "insured" is defined as anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". See Ex. A, Illinois Uninsured Motorists Coverage (CA 21 30 01 15).

44.     The Chubb UIM Endorsement is named "Illinois Uninsured Motorists Coverage", but the terms uninsured and underinsured are used interchangeably in the Chubb policy.

45.     Rahimzadeh was occupying a covered auto at the time of the accident.

46.     The Chubb policy does not require a person to be inside of a vehicle in order to "occupy" it.

## COUNT I
## CHUBB OWES UIM COVERAGE TO RAHIMZADEH

47.     On September 11, 2020, at the time of the accident Rahimzadeh was riding his bicycle during his workday

48.     On September 11, 2020, at the time of the accident Rahimzadeh was riding his bicycle in furtherance of a corporate health initiative "Healthier Together".

6

49.     The "Healthier Together" initiative was promoted on the date of Jason's accident and continues to this day.

50.     The Chubb policy affords UIM coverage to Rahimzadeh with a $2,000,000 limit.

51.     Rahimzadeh provided information to Chubb regarding accident and the lawsuit that he filed.

52.     Rahimzadeh has complied with all conditions precedent to UIM coverage under the Chubb policy.

## COUNT II
## CHUBB'S UIM COVERAGE IS ILLUSORY
## (PLED IN THE ALTERNATIVE)

53.     Coverage symbol 6 in the Declarations of the Chubb policy limits coverage to vehicles that are owned by Medtronic.

54.     Yet, neither the insurance card or the registration reference Medtronic as the owner of the vehicle used by Jason Rahimzadeh on the date of the accident.

55.     The Illinois Registration card shows the following registered owner of the 2018 Chevy Traverse issued to Rahimzadeh: D L PETERSON TRUST LSR, CO COVIDIEN SALES LLC LSE, 42 DUKES CIRLCE, LINCONSHIRE, IL 60069-3323.

56.     The "Illinois Insurance Identification Card" for the 2018 Chevy Traverse used by Rahimzadeh lists the following insured: D.L. Peterson Trust, COVIDIEN SALES LLC, 940 Ridgebrook Rd, Sparks, MD 21152.

57.     Chubb's January 15, 2021 denial letter states that Rahimzadeh does not qualify as an "insured" under the Policy, despite having a Medtronic-issued vehicle at his home for daily use.

58.     Based upon the rationale employed by Chubb in its January 15, 2021 coverage denial, it would be impossible for Rahimzadeh to receive UIM coverage under any circumstances in relation to his use of the company vehicle.

59.     Chubb's letter dated August 8, 2022 indicates that the vehicle used by Rahimzadeh is an insured vehicle, subject to UM/UIM coverage.

60.     The position taken in Chubb's August 8, 2022 letter differs from Chubb's January 15, 2021, letter, wherein Chubb contended that the bicycle ridden by Rahimzadeh in the "Healthier Together" Initiative was not an "auto" without mention of the company-issued 2018 Chevy Traverse qualifying as a covered "auto".

61.     Thus, the UIM coverage in the Chubb policy is illusory in nature.

## COUNT III
## SECTION 155 DAMAGES ARE APPROPRIATE

62.     At all times relevant hereto, the following statute was in effect, 255 ILCS 5/155 ("Section 155"):

Sec. 155. Attorney fees.

(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

  (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
  (b) (b) $60,000;
  (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

(2) Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount

8

of the allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on such policies.

255 ILCS 5/155

*    *    *

63.    Chubb's refusal to acknowledge UIM coverage for Rahimzadeh was vexatious and unreasonable.

64.    There is no indication Chubb considered any of the information that it sought from Rahimzadeh during the claims review process.

65.    Chubb provided no reason for delaying its decision regarding UIM coverage.

66.    Chubb's interpretation of its policy does not reflect the reasonable expectations of its named insured, Medtronic.

67.    Chubb's coverage position reflects illusory coverage under the policy it issued to Medtronic.

68.    Chubb's overly restrictive, narrow, view of the UIM coverage afforded by the policy issued to Medtronic, gave rise to the need for Chubb to notify Medtronic and employees issued company cars, like Jason, that coverage under the Chubb policy would be narrower than they may reasonably expect.

69.    Chubb's refusal to reconsider its position regarding UIM coverage for Rahimzadeh did not reflect any consideration of the facts surrounding the accident involving Rahimzadeh.

70.    Chubb's interpretation of its policy would never allow UIM coverage to employees who were issued vehicles by Medtronic.

9

71.    Chubb's January 15, 2021 letter does not discuss the fact that Rahimzadeh was participating in exercise activities endorsed by his employer, Medtronic, at the time of the September 11, 2020 accident.

72.    Chubb's August 8, 2022 letter fails to discuss the fact that Rahimzadeh was participating in exercise activities endorsed by his employer, Medtronic at the time of the September 11, 2020 accident.


WHEREFORE, the Plaintiff Jason Rahimzadeh prays that this Honorable Court enters an Order as follows:

A.  Chubb policy H25295304 affords UIM coverage to Jason Rahimzadeh;

B.  The UIM limit for Chubb policy H25295304 is $2,000,000;

C.  Rahimzadeh is entitled to arbitrate his UIM claim under the Chubb policy;

D.  Chubb acted vexatiously and unreasonably in violation of Section 155 of the Illinois Insurance Code;

E.  Rahimzadeh is entitled to recover damages from Chubb in relation to Chubb's vexatious and unreasonable conduct in violation of Section 155 of the Illinois Insurance Code;

F.  Any further relief deemed appropriate.

Respectfully Submitted,

Jason E. DeVore, Attorney for Jason Rahimzadeh

10

#373527v1

DEVORE RADUNSKY LLC
230 W. Monroe Street, Suite 230
Chicago, IL 60606
(312) 300-4479
Firm ID: 58321
E-mail service accepted at jdevore@devoreradunsky.com

11

FILED
9/8/2022 3:16 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH08890
Calendar, 15
19414946

**From:** Nikki <nrahimzadeh29@gmail.com>
**Sent:** Tuesday, May 17, 2022 1:30 PM
**To:** Jason DeVore
**Subject:** Fwd: Let's Move Together This Weekend

Please see below:

Begin forwarded message:

> **From:** Healthier Together <HealthierTogether@mail.virginpulse.com>
> **Date:** September 11, 2020 at 9:05:55 AM CDT
> **To:** nrahimzadeh29@gmail.com
> **Subject: Let's Move Together This Weekend**



# HEALTHIER TOGETHER

# The Medtronic Move Together 5K Begins Today

1

Exhibit A

FILED DATE: 9/8/2022 3:16 PM    2022CH08890

Join colleagues around the world in our first virtual Medtronic Move Together 5K, **Sept. 11-13.**

- Register on **Healthier Together** (if you haven't already). Join under **Challenges**. Encourage your colleagues to register, too.
- Run, walk, or roll a 5K this weekend. Be sure to stay hydrated.
- Post your participation photo on the 5K event page chat feature or the **Healthier Together Yammer site** and earn a chance to win Recognize! points.
- In lieu of a registration fee, support your colleagues and donate to the **Medtronic Employee Emergency Assistance Fund.** Click on Volunteer & Giving Hub, Make a New Donation, and enter "Move Together 5K" in the note box.

**Join Under Challenges**



Next-Steps Consult and Journeys are registered trademarks of Virgin Pulse, Inc.

Virgin Pulse, Inc. respects your privacy.
75 Fountain St Providence, Rhode Island 02902
© 2020 Virgin Pulse, Inc.

Unsubscribe nrahimzadeh29@gmail.com from future emails.

Exhibit A

# Stapled

# Document

.

.

earing Date: 1/6/2023 10:00 AM
ocation: Court Room 2410
Judge: Loftus, Anna M.

**CHUBB˙**

FILED
9/8/2022 3:16 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH08890
Calendar, 15
19414946

POLICY NUMBER: ISA H25295304

5

**CHUBB˙**

## LEAD SHEET

### FOR:

### MARSH USA INC

### RUN DATE: 04/28/2020

### POLICY NUMBER: ISA H25295304
### ID: Z02WRIK1
### RUN BY: ACEINA\KTWRIG

PAGES OF THIS COPY: 0570

### INSURED'S NAME

Medtronic plc

### Policyholder Notice
### Commercial Lines Deregulation
### New York

> NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

CLASS CODE  2-14057

ALL-23445b (07/13)

Page 1 of 1

Exhibit B

POLICY NUMBER: ISA H25295304



**An Important Notice to
Our Alaska Policyholders**

ALASKA DEPARTMENT OF COMMERCE AND ECONOMIC DEVELOPMENT
DIVISION OF INSURANCE
ATTORNEY FEES COVERAGE NOTICE D

**THIS POLICY DOES NOT PROVIDE COVERAGE FOR ATTORNEY FEES
UNDER ALASKA RULE OF CIVIL PROCEDURE 82**

We do not have a right or duty to defend an insured under this policy. We have no obligation to pay attorney fees taxable as costs against the insured under Alaska Rule of Civil Procedure 82.

**This limitation means that the potential costs that may be awarded against you as attorney fees under Alaska Rule of Civil Procedure 82 are not covered by this policy. You will have to pay all attorney fees under Alaska Rule of Civil Procedure 82 directly.**

ALL-4X04 (7/96)                                                                                    Page 1 of 1

Exhibit B

---

POLICY NUMBER: ISA H25295304

CHUBB

**An Important Notice To Our
Alaska Policyholders**

ALASKA DEPARTMENT OF COMMERCE AND ECONOMIC DEVELOPMENT
DIVISION OF INSURANCE
ATTORNEY FEES COVERAGE NOTICE A

**THIS POLICY LIMITS COVERAGE FOR ATTORNEY FEES
UNDER ALASKA RULE OF CIVIL PROCEDURE 82**

In any suit in Alaska in which we have a right or duty to defend an insured within the limits of liability, our obligation under the applicable coverage to pay attorney fees taxable as costs against the insured is limited as follows:

Alaska Rule of Civil Procedure 82 provides that if you are held liable, some or all of the attorney fees of the person making a claim against you must be paid by you. The amount that must be paid by you is determined by Alaska Rule of Civil Procedure 82. We provide coverage for attorney fees for which you are liable under Alaska Rule of Civil Procedure 82 subject to the following limitation:

**We will not pay that portion of any attorney's fees that is in excess of fees calculated by applying the schedule for contested cases in Alaska Rule of Civil Procedure 82(b)(1) to the limit of liability of the applicable coverage.**

**This limitation means that the potential costs that may be awarded against you as attorney fees may not be covered in full. You will have to pay any attorney fees not covered directly.**

For example, the attorney fees provided by the schedule for contested cases in Alaska Rule of Civil Procedure 82(b)(1) are:

    20% of the first $25,000 of a judgment;
    10% of the amounts over $25,000 of a judgment.

Therefore, if a court awards a judgment against you in the amount of $125,000, in addition to that amount you would be liable under Alaska Rule of Civil Procedure 82(b)(1) for attorney fees of $15,000, calculated as follows:

|  |  |  |  |
|---|---|---|---|
| | 20% of $25,000 | | $5,000 |
| | 10% of $100,000 | | $10,000 |
| Total Award | $125,000 | Total Attorney Fees | $15,000 |

If the limit of liability of the applicable coverage is $100,000, we would pay $100,000 of the $125,000 award, and $12,500 for Alaska Rule of Civil Procedure 82(b)(1) attorney fees, as calculated as follows:

|  |  |  |  |
|---|---|---|---|
| | 20% of $25,000 | | $5,000 |
| | 10% of $75,000 | | $7,500 |
| Total Limit of Liability | $100,000 | Total Attorney Fees Covered | $12,500 |

You would be liable to pay, directly and without our assistance, the remaining $25,000 in liability plus the remaining $2,500 for attorney fees under Alaska Rule of Civil Procedure 82 not covered by this policy.

ALL-4X07 (7/96)                                                                                    Page 1 of 1

Exhibit B

POLICY NUMBER: ISA H25295304

## CHUBB°

**Arkansas**
**Notice To Policyholders**

### QUESTIONS ABOUT YOUR INSURANCE?

If you have questions about your insurance, need coverage information, or require assistance in resolving complaints, do not hesitate to contact either your insurance agent, or Chubb, Customer Service Department, 436 Walnut Street, Philadelphia, PA 19106-3703, telephone 1-800-352-4462.

If we fail to provide you with reasonable and adequate service, you should feel free to contact:

Arkansas Insurance Department
1200 West Third Street
Little Rock, AR 72201
(501) 371-2640 or 800-852-5494

ALL-2Y31b (11/09)

Page 1 of 1

Exhibit B

---

POLICY NUMBER: ISA H25295304

IL N 119 10 15

## CALIFORNIA AUTO BODY REPAIR CONSUMER BILL OF RIGHTS

(This form was developed by the California Department of Insurance.)

A CONSUMER IS ENTITLED TO:

1. SELECT THE AUTO BODY REPAIR SHOP TO REPAIR AUTO BODY DAMAGE COVERED BY THE INSURANCE COMPANY. AN INSURANCE COMPANY SHALL NOT REQUIRE THE REPAIRS TO BE DONE AT A SPECIFIC AUTO BODY REPAIR SHOP.
2. AN ITEMIZED WRITTEN ESTIMATE FOR AUTO BODY REPAIRS AND, UPON COMPLETION OF REPAIRS, A DETAILED INVOICE. THE ESTIMATE AND THE INVOICE MUST INCLUDE AN ITEMIZED LIST OF PARTS AND LABOR ALONG WITH THE TOTAL PRICE FOR THE WORK PERFORMED. THE ESTIMATE AND INVOICE MUST ALSO IDENTIFY ALL PARTS AS NEW, USED, AFTERMARKET, RECONDITIONED, OR REBUILT.
3. BE INFORMED ABOUT COVERAGE FOR TOWING AND STORAGE SERVICES.
4. BE INFORMED ABOUT THE EXTENT OF COVERAGE, IF ANY, FOR A REPLACEMENT RENTAL VEHICLE WHILE A DAMAGED VEHICLE IS BEING REPAIRED.
5. BE INFORMED OF WHERE TO REPORT SUSPECTED FRAUD OR OTHER COMPLAINTS AND CONCERNS ABOUT AUTO BODY REPAIRS.
6. SEEK AND OBTAIN AN INDEPENDENT REPAIR ESTIMATE DIRECTLY FROM A REGISTERED AUTO BODY REPAIR SHOP FOR REPAIR OF A DAMAGED VEHICLE, EVEN WHEN PURSUING AN INSURANCE CLAIM FOR REPAIR OF THE VEHICLE.

COMPLAINTS WITHIN THE JURISDICTION OF THE BUREAU OF AUTOMOTIVE REPAIR

Complaints concerning the repair of a vehicle by an auto body repair shop should be directed to:

Toll Free (866) 799-3811

Bureau of Automotive Repair
10949 North Mather Blvd.
Rancho Cordova, CA 95670

The Bureau of Automotive Repair can also accept complaints over its web site at: www.autorepair.ca.gov.

COMPLAINTS WITHIN THE JURISDICTION OF THE CALIFORNIA INSURANCE COMMISSIONER

Any concerns regarding how an auto insurance claim is being handled should be submitted to the California Department of Insurance at:

(800) 927-4357 or (213) 897-8921

California Department of Insurance
Consumer Services Division
300 South Spring Street
Los Angeles, CA 90013

The California Department of Insurance can also accept complaints over its web site at: www.insurance.ca.gov.

IL N 119 10 15

© Insurance Services Office, Inc., 2015

Page 1 of 1

Exhibit B

POLICY NUMBER:  ISA H25295304

IL N 118 01 10

## CALIFORNIA AUTOMOTIVE REPAIR DEALER RECOMMENDATION NOTICE

| Claimant: |
| Company: |

WE ARE PROHIBITED BY LAW FROM REQUIRING THAT REPAIRS BE DONE AT A SPECIFIC AUTOMOTIVE REPAIR DEALER. YOU ARE ENTITLED TO SELECT THE AUTO BODY REPAIR SHOP TO REPAIR DAMAGE COVERED BY US. WE HAVE RECOMMENDED AN AUTOMOTIVE REPAIR DEALER THAT WILL REPAIR YOUR DAMAGED VEHICLE. WE RECOMMEND YOU CONTACT ANY OTHER AUTOMOTIVE REPAIR DEALER YOU ARE CONSIDERING TO CLARIFY ANY QUESTIONS YOU MAY HAVE REGARDING SERVICES AND BENEFITS. IF YOU AGREE TO USE OUR RECOMMENDED AUTOMOTIVE REPAIR DEALER, WE WILL CAUSE THE DAMAGED VEHICLE TO BE RESTORED TO ITS CONDITION PRIOR TO THE LOSS AT NO ADDITIONAL COST TO YOU OTHER THAN AS STATED IN THE INSURANCE POLICY OR AS OTHERWISE ALLOWED BY LAW. IF YOU EXPERIENCE A PROBLEM WITH THE REPAIR OF YOUR VEHICLE, PLEASE CONTACT US IMMEDIATELY FOR ASSISTANCE.

POLICY NUMBER:  ISA H25295304



### Chubb Producer Compensation Practices & Policies

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

POLICY NUMBER: ISA H25295304

POLICY NUMBER: ISA H25295304

IL N 175 11 11

# COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

# ILLINOIS NOTICE TO POLICYHOLDERS REGARDING THE RELIGIOUS FREEDOM PROTECTION AND CIVIL UNION ACT

Dear Policyholder:

This is to provide notice that, pursuant to Illinois Department of Insurance Company Bulletin 2011-06 (CB 2011-06), this policy is in compliance with the Illinois Religious Freedom Protection and Civil Union Act ("the Act", 750 ILL. COMP. STAT. 75/1). The Act, which became effective on June 1, 2011, creates a legal relationship between two persons of either the same or opposite sex who establish a civil union.

The Act provides that parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the law of Illinois to spouses, whether they are derived from statute, administrative rule, policy, common law or any source of civil or criminal law. In addition, this law requires recognition of a same-sex civil union, marriage, or other substantially similar legal relationship, except for common law marriage, legally entered into in other jurisdictions. The Act further provides that "party to a civil union" shall be included in any definition or use of the terms "spouse", "family", "immediate family", "dependent", "next of kin" and other terms descriptive of spousal relationships as those terms are used throughout the law. According to CB 2011-06, this includes the terms "marriage" or "married" or any variations thereof. CB 2011-06 also states that if policies of insurance provide coverage for children, the children of civil unions must also be provided coverage.

ALL-22368 (06/07)          © ISO Properties, Inc., 2004          Page 1 of 1

IL N 175 11 11          © Insurance Services Office, Inc., 2011          Page 1 of 1

Exhibit B

Exhibit B

POLICY NUMBER:  ISA H25295304

CHUBB˙

## Important Information to Idaho Policyholders Regarding Your Insurance

In the event you need to contact someone about this insurance for any reason please contact your agent. If no agent was involved in the sale of this insurance, or if you have additional questions you may contact the insurance company issuing this insurance at the following address and telephone number

Chubb Companies
Customer Support Service Department
436 Walnut Street
PO Box 1000
Philadelphia, PA 19106-3703
1-800-352-4462

If you have been unable to contact or obtain satisfaction from the company or the agent, you may contact the Idaho Department of Insurance at:

Idaho Department of Insurance
Consumer Affairs
700 W. State Street, 3rd Floor
PO Box 83720
Boise, ID 83720-0043

1-800-721-3272 or www.DOI.Idaho.gov

Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your agent, company or the Idaho Department of Insurance, have your policy number available.

ALL-30152 (07/10)  Printed in U.S.A.                                    Page 1 of 1

Exhibit B

---

POLICY NUMBER:  ISA H25295304

CHUBB˙

## Important Information to Virginia Policyholders Regarding Your Insurance

In the event you need to contact someone about this insurance for any reason please contact your agent. If no agent was involved in the sale of this insurance, or if you have additional questions you may contact the insurance company issuing this insurance at the following address and telephone number

Chubb Companies
Customer Support Service Department
436 Walnut Street
PO Box 1000
Philadelphia, PA 19106-3703
1-800-352-4462

If you have been unable to contact or obtain satisfaction from the company or the agent, you may contact the Virginia State Corporation Commission's Bureau of Insurance at:

1300 East Main Street
Tyler Building
Richmond, VA 23219
Consumer Hot Line: 1-800-552-7945
Bureau of Insurance: 804-371-9185

Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your agent, company or the Bureau of Insurance, have your policy number available.

ALL-7X47a (2/06)  Printed in U.S.A.                                    Page 1 of 1

Exhibit B

POLICY NUMBER:  ISA H25295304

CHUBB°

**Important Message to Our
Pennsylvania Auto Insurance
Policyholders**

**NOTICE APPLIES TO AUTOS REGISTERED OR PRINCIPALLY GARAGED IN PA.**

Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and payment of a fine of up to $15,000.

POLICY NUMBER:  ISA H25295304

CHUBB°

**Important Notice - Wisconsin**

Wisconsin law requires us to notify you that, if you cancel this policy prior to its expiration date, the terms and conditions of your policy may require that you pay a substantial penalty.

Exhibit B

Exhibit B

POLICY NUMBER: ISA H25295304

**CHUBB®**

**Important Notice To
Our Connecticut Policyholders**

This is a description of coverage provided in your policy for damage to a rental vehicle. No coverage is provided by this description, and it does not replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverage you are provided. If there is any conflict between the policy and this description, the provisions of the policy apply.

Under Section II – LIABILITY COVERAGE of the Commercial Auto Coverage Forms (CACF), there is **no** coverage for damage to a rental vehicle.

Under the Commercial Auto Coverage Forms (CACF), physical damage coverage can be provided for rental vehicles through an entry in the Schedule of Hired or Borrowed Covered Autos Coverage and Premiums of the CACF Declarations. This will designate any hired or borrowed car to be a "covered auto."

Endorsement CA 20 01 (Additional Insured - Lessor), which should be used when an auto is leased or rented from a standard leasing concern, can provide physical damage coverage by changing any leased autos designated in the schedule of the form "covered autos you own" (while also providing physical damage coverage for the leasing concern).

In addition, Endorsement CA 99 10 (Drive Other Car Coverage - Broadened Coverage For Named Individuals) provides that any private passenger type auto rented by an employee named in the endorsement will be considered a covered auto for physical damage coverage.

The limit of liability for this coverage, subject to any applicable deductible shown in the declarations, will be the lesser of:

1.   The actual cash value of the vehicle; or

2.   The amount necessary to repair or replace the rental vehicle.

DA-3E53a (Ed. 8/02) Ptd. in U.S.A.

Page 1 of 1

Exhibit B

---

POLICY NUMBER: ISA H25295304

**CHUBB®**

**Important Notice To Our
Oregon Policyholders**

Oregon law requires we advise policyholders of the RIGHTS AND RESPONSIBILITIES of the insured when submitting a claim covered by the policy for damage to the insured's vehicle.

The insured must give the company or one of our agents written notice of the accident or loss as soon as reasonably possible.

When there is a loss covered by the policy, the insured shall:

-   make a prompt report to the police when the loss is the result of theft or larceny.

-   protect the damaged vehicle -- we will pay any reasonable expense to do so.

-   Show us the damage if we ask.

The insured shall cooperate with the company.

The insured has the right to receive the reasonable cost of repairs for claims covered by the policy.

Oregon law states:

An insurer shall not require that a particular person make the repairs to the insured's motor vehicle as a condition for recovery by the insured under a motor vehicle liability insurance policy.

The policy contract contains the complete statement of rights and responsibilities of both the insured and the company.

DA-9T21 (Ed. 7/93) Ptd. in U.S.A.

Page 1 of 1

Exhibit B

POLICY NUMBER: ISA H25295304

⊏ H ⊔ B B°

**Indiana**
**Notice to Policyholders**

We are here to serve you....

As our policyholder, your satisfaction is very important to us. If you have a question about your policy, if you need assistance with a problem, or if you have a claim, you should first contact your insurance agent.

If you are unable to reach your agent, or if you wish to contact us directly, please call our Customer Services Department at 1-800-352-4462. Should you have a valid claim, we fully expect to provide a fair settlement in a timely fashion.

Should you feel you are not being treated fairly with respect to a claim, you may also contact the Indiana Department of Insurance with your complaint.

To contact the Department, write or call:

Consumer Services Division
Indiana Department of Insurance
311 West Washington Street, Suite 300
Indianapolis, IN 46204-2787
317-232-2395 or 1-800-622-4461

Complaints can be filed electronically at www.in.gov/idoi

POLICY NUMBER: ISA H25295304

IL N 043 01 16

## KANSAS FRAUD STATEMENT

Any person who commits a fraudulent insurance act is guilty of a crime and may be subject to restitution, fines and confinement in prison. A fraudulent insurance act means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer or insurance agent or broker, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for insurance, or the rating of an insurance policy, or a claim for payment or other benefit under an insurance policy, which such person knows to contain materially false information concerning any material fact thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto.

POLICY NUMBER: ISA H25295304

**CHUBB**

**MARYLAND**
**NOTICE OF UNDERWRITING PERIOD**

We are notifying you that the binder or policy you have just agreed to purchase may provide you with only temporary coverage, since Maryland law provides the company with a 45 day period, from the effective date of your coverage, to confirm that you are eligible for coverage under this policy.

Should the company find that you are not eligible for this coverage, we will send you a written Notice of Cancellation advising you of the reason(s) that you do not qualify for coverage and the date on which your policy will be cancelled.

---

**MASSACHUSETTS COMPULSORY PREMIUM POLICYHOLDER NOTICE**

| Named Insured Medtronic plc | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| ISA | H25295304 | 05/01/2020 TO 05/01/2021 | |
| Issued By (Name of Insurance Company) | | | |
| ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

The premium for your compulsory coverage is included in the premium shown on the Declarations page of your policy. In addition, the limits of insurance for your compulsory coverages are included in, and not in addition to, the limits of insurance shown on the Declarations page of your policy.

All other terms and conditions remain unchanged.

Authorized Agent

---

ALL-38711 (08/12)                 Page 1 of 1          DA-16607 07/2005                              Page 1 of 1

Exhibit B                                                   Exhibit B

**CHUBB** MISSOURI DISCLAIMER NOTICE
COMMERCIAL LINES DEREGULATION

This policy may include rates and forms which may not be filed with the Missouri Department of Insurance, Financial Institutions and Professional Registration.

POLICY NUMBER: ISA H25295304



**Minnesota Policyholder
Notice Of Election To Have Two
Or More Autos Added Together**

Pursuant to Section 65B.47, subdivision 7, of the Minnesota statutes, you may make a specific election to have the limits of liability for basic economic loss benefits added together for two or more motor vehicles under your automobile insurance policy to determine the limit of insurance coverage available to an injured person for any one accident.   Unless you make such an election, the limit of liability for basic economic loss benefits for two or more motor vehicles may not be added together to determine the limit of insurance coverage available to an injured person for any one accident.

If you wish to elect to have the limits of liability for basic economic loss benefits for two or more motor vehicles added together, please notify your insurance representative.  You may be charged an additional premium for such additional coverage.

POLICY NUMBER: ISA H25295304

IL N 002 11 10

## NEW YORK RENTAL REIMBURSEMENT COVERAGE DISCLOSURE

YOU HAVE THE RIGHT, PURSUANT TO N.Y. INS. LAW § 2610-A, TO CHOOSE ANY RENTAL VEHICLE COMPANY, RENTAL VEHICLE COMPANY LOCATION OR A PARTICULAR CONCERN IN THE EVENT YOU UTILIZE RENTAL REIMBURSEMENT COVERAGE.



### NORTH CAROLINA REINSURANCE FACILITY SURCHARGE

Dear Policyholder,

Effective for all policies incepting on or after October 1, 2018 every company that writes commercial automobile insurance in North Carolina is required by law, to charge the North Carolina Reinsurance Facility surcharge as outlined below.

This surcharge of 7.07% applies to all of the following North Carolina **vehicle level** coverages per insured automobile garaged in North Carolina:

- Bodily Injury and Property Damage Liability (split and combined single limit)
- Uninsured Motorists Coverage
- Underinsured Motorists Coverage
- Medical Payments Coverage

This surcharge of 7.07% applies to all of the following North Carolina **state level** coverages:

- Hired Car Liability
- Non-Owned Liability
- Fellow Employee Liability
- Pollution Liability
- Garage Liability
- Registration Plates and/or Drive Other Car Liability
- Registration Plates and/or Drive Other Car Uninsured Motorists Coverage
- Registration Plates and/or Drive Other Car Underinsured Motorists Coverage
- Registration Plates and/or Drive Other Car medical Payments Coverage

If you have any questions or require additional information about the surcharge, please contact your agent or broker.

Very truly yours,

Chubb Limited Group

Exhibit B        Exhibit B

POLICY NUMBER: ISA H25295304

# NOTICE TO ALL OKLAHOMA POLICYHOLDERS

**WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

You are insured by the Company listed **on** the Signature page which is named on the first page of the Declarations of this policy. It is a Chubb company and has its principal office at 436 Walnut Street, PO Box 1000, Philadelphia, PA 19106-3703.

---

POLICY NUMBER: ISA H25295304



**Notice To Our Florida
Property And Casualty Policyholders
Guidelines For Loss Control Plans**

Florida law requires us to inform you that we have developed guidelines for risk management plan which are available to you at no cost. The guidelines consist of the following:

A. A booklet entitled "Establishing an Effective Loss Control Program." This booklet describes various loss control procedures that can help you in your selection and implementation of actions that eliminate or reduce the frequency and severity of your losses.

B. A self inspection checklist that is tailored for your business and when used in inspections it may be of assistance to you in the identification of conditions which could be responsible for losses.

Should you require further help in developing and implementing an effective loss control program, other loss control services are also available to you for an additional charge. The following services are available from Chubb Loss Control Services:

A. Loss control management consultation. Through a visit to your facility we will assist you in identifying loss causing conditions, evaluating your loss prevention methods, and recommending loss control enhancements.

B. Training loss control management techniques. This training supports our consulting and is intended to assist you in the implementation of your loss control procedures. The training can be provided to you or your employees.

To obtain either the free guidelines for loss control plans or information on additional loss control services, please complete the section below and send it to:

National Manager, Jurisdictional Services
Chubb Risk Control Services
P. O. Box 1000
Philadelphia, PA 19105-1000
Tel: 866-357-3797

---

| | |
|---|---|
| ☐ Send me the free guidelines for the loss control plans | |
| ☐ Send me information on how I can obtain additional loss control services | |
| Business Operation: | |
| Company Name: | |
| Street Address: | |

| City: | State: | Zip Code: |
|---|---|---|
| Telephone: | Policy No: | |
| Person to contact: | Title: | |
| Signature | | |

Exhibit B

---

POLICY NUMBER:  ISA H25295304

**CHUBB˙**

**Notice To Our New York Policyholders Optional Basic Economic Loss Coverage**

Dear Policyholder or Applicant:

Optional Basic Economic Loss (OBEL) coverage is being offered to you as an enhancement of the Basic No-Fault coverage you are presently required to purchase. But before we describe this coverage, we would like to advise you what benefits Basic No-Fault coverage does and does not provide.

No-Fault coverage, otherwise known as Personal Injury Protection or "PIP" coverage, pays for expenses incurred by persons injured in a motor vehicle accident. This coverage does not pay to repair damages to your automobile.

Basic No-Fault, which you are required by law to purchase, provides coverage of up to $50,000 per person in benefits for:

1. all necessary doctor and hospital bills and other health service expenses, payable in accordance with fee schedules established or adopted by the New York State Department of Financial Services; and

2. 80% of lost earnings up to a maximum monthly payment of $2,000 for up to three years following the date of accident; and

3. up to $25 per day for a period of one year from the date of the accident for other reasonable and necessary expenses the injured person may have incurred because of an injury resulting from the accident, such as the cost of hiring a housekeeper or necessary transportation expenses to and from a health service provider; and

4. a $2,000 death benefit, payable to the estate of a covered person, in addition to the $50,000 coverage for economic loss described above.

No-Fault benefits will be reduced by other benefits that are payable under Workers' Compensation, Social Security Disability, New York State Disability, and certain employer "wage continuation" plans where an employee does not lose any future sick leave benefits.

**OPTIONAL COVERAGE AVAILABLE**

In addition to Basic No-Fault Coverage, you may also purchase OBEL coverage that will pay certain expenses, up to $25,000, above the Basic No-Fault limit of $50,000. OBEL coverage is different from other coverages in that a claimant can select the kinds of benefits to be paid under OBEL.

If you purchase OBEL coverage and if it appears likely that a claimant will use up the Basic No-Fault coverage, your insurer will send the claimant a form for the claimant to choose what expenses the $25,000 in OBEL coverage will be used to pay. Under No-Fault, a claimant could include you, family members, passengers in your car, or pedestrians, if injured in an auto accident.

Exhibit B

The claimant will be able to choose one of the following four OBEL options and thereby direct the insured to pay expenses for:

1.  basic economic loss, whether health care expenses, loss of earnings from work, or other reasonable and necessary expenses;

2.  loss of earnings from work;

3.  psychiatric, physical or occupational therapy and rehabilitation; or

4.  a combination of options 2 and 3.

The additional $25,000 of OBEL coverage will be used only for costs incurred under the chosen option, which, once selected, the claimant cannot change.

If you have any questions, please contact your company or agent.

DA-3H93b (06/13)                                                Page 2 of 2

Exhibit B

---

POLICY NUMBER: ISA H25295304

CHUBB·                          **Notice To Our Texas Policyholders**
                                Motor Vehicle Crime Prevention
                                Authority Pass Through Fee

NOTICE: A fee of $ <u>Included</u> is payable in addition to the policy premium due under this policy. This fee partially or completely reimburses the insurer, as permitted by 28 TAC 5.205, for the $4.00 fee per motor vehicle year required to be paid to the Motor Vehicle Crime Prevention Authority under Title 28 Texas Administrative Code Section 5.205, which became effective on September 1, 2019.

DA-8S71c (09/19)                                                Page 1 of 1
                                                                (286011)

Exhibit B

POLICY NUMBER: ISA H25295304



## POLICYHOLDER NOTICE -
### NEW YORK DMV REPORTING

Dear Policyholder,

Chubb is dedicated to providing the highest level of support and service to our insured's, as well as the obligations we have to report accurate and timely data to any governmental or regulatory agencies to which we are statutorily required to do so.

In order for Chubb to attain this high level of support and service for our insureds and to prevent impact to the New York registered automobiles insured on a Chubb commercial automobile policy, you need to report the following information to your agent/broker immediately regardless of coverage symbol or rating plan utilized on your policy (i.e. Composite Rate Plan). *Failure to report newly acquired autos timely and accurately to the insurance carrier may result in the registrant of the auto being subject to civil fines, registration and license suspensions and/or impoundment of their vehicle.*

Since Chubb is required by New York law to report this information to the New York DMV within seven (7) days of the vehicle's registration, your prompt reporting is essential.

**You must report the following to your agent/broker immediately:**

- Vehicle's exact vehicle identification number (VIN), year, make and model
- Vehicle's exact registration date at the New York DMV for newly added autos
- Vehicle's New York license plate number, if at all possible
- Vehicle's registration state, **if** different than garaging state (i.e. vehicle is registered in New York, but garaged in New Jersey)
- **Plate transfers from one vehicle to another must be specifically called out as this requires a very specific transaction be submitted by the Carrier (Vehicle Replacement) to the NY DMV.**
- Dealer and Transporter Plates must also be reported with the NY DMV assigned License Plate Number in order to allow insurance verification to be submitted to the NY DMV.
- The exact name the vehicle is registered in.

If you have any questions, please contact your agent/broker to discuss.

Regards,

Chubb

Exhibit B

---

POLICY NUMBER: ISA H25295304

### POLICYHOLDER NOTICE – OHIO

**WARNING:** Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

Exhibit B

POLICY NUMBER:  ISA H25295304

INTERLINE
IL N 089 03 10

# PUERTO RICO FRAUD STATEMENT

IN ACCORDANCE WITH PUERTO RICO LAW THE FRAUD STATEMENT PROVIDED BELOW MUST BE INCLUDED IN ALL INSURANCE APPLICATION FORMS AND INSURANCE CLAIM FORMS.

Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation with the penalty of a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

POLICY NUMBER:  ISA H25295304



## QUESTIONS ABOUT YOUR INSURANCE?

Answers to questions about your insurance, coverage information, or assistance in resolving complaints can be obtained by contacting:

Chubb Customer Support Services Department:
436 Walnut Street
Philadelphia, Pennsylvania 19106-3703

Telephone Number: 1-800-352-4462
Email: ChubbUSCustomerServices@chubb.com

**The Illinois Department of Insurance** may also be contacted for assistance. Insurance analysts are available to answer general questions by phone at our toll-free Consumer Assistance Hotline (866) 445-5364.  **However, complaints must be submitted in writing.**

How to file a complaint with the Insurance Department:

Complaints may be submitted in the following ways:

- On-line at
  https://insurance.illinois.gov/applications/ComplaintForms/default.aspx
  and by following the instructions posted.
- By fax: (217) 558-2083
- By email at consumer_complaints@ins.state.il.us
- By mail: 320 W. Washington St. Springfield, IL 62767 or 122 S. Michigan Ave., 19th Floor, Chicago, Illinois 60603

POLICY NUMBER: ISA H25295304

# CHUBB°

## Questions About Your Insurance?

Answers to questions about your insurance, coverage information, or assistance in resolving complaints can be obtained by calling Chubb, Customer Support Service Department, at 1-800-352-4462.

ALL-5X45 (11/96) Ptd. in U.S.A.                    Page 1 of 1

Exhibit B

---

POLICY NUMBER: ISA H25295304

# CHUBB°

Chubb
Risk Control Services
525 W. Monroe Street
Chicago, IL 60661

Phone: 1.866.357.3797
Fax:
215.640.5084
www.chubb.com

losscontrolrcq@chubb.com

National Manager, Jurisdictional Services

RE: **RISK CONTROL SERVICES FOR TEXAS POLICYHOLDERS**
**Commercial Automobile Liability, General Liability, Professional Liability, and Medical Professional Liability**

Chubb is required by Texas law and regulations to maintain or provide accident prevention services for its commercial automobile, general liability, professional liability, and medical professional liability policyholders. Chubb offers an array of accident prevention services in Texas at no additional charge. These services are intended to help prevent and/or minimize loss.

These services include but are not limited to: individual risk surveys; improvement recommendations; loss investigation; specific loss problem identification and recommended improvement actions.

Chubb may recommend one or more of these services based upon hazard, experience, and size of your Texas operations. You have the choice of receiving or declining any of the services offered. If you wish to decline all of the services or wish to receive only selected risk control service, please indicate that by signing and dating this letter in the space provided below. Please e-mail, mail or fax a response to the appropriate address or fax number listed above. If you decline all of Chubb's risk control services or choose only a support service, such as ergonomics survey, driving training, or other services and not a complete risk survey, we still have a responsibility under Texas law and regulation to monitor your losses. In the event you start to have a loss problem and a trend is established, and/or adverse loss ratio is developed, we will contact you and offer to assist you in addressing the situation.

Sincerely,

National Manager, Jurisdictional & Regulatory Services
Chubb Risk Control Services
525 W. Monroe Street
Chicago, IL 60661
or call toll free at: 1-866-357-3797

☐ I am aware of the loss control services offered and decline them. I have made other arrangements for these services.

☐ I wish to obtain the following offered accident prevention services: _____

☐ I have no risk control services needs now. I reserve the right to request loss control services within the policy period.

| (Signature) | (Phone #) | (Date) |
|---|---|---|

Print Name: _____     Policy # _____
Company Name: _____
Address: _____
City, State, Zip: _____

ALL-11559e (07/16)                    Page 1 of 1

Exhibit B

POLICY NUMBER: ISA H25295304

**STATE OF NEW HAMPSHIRE**
**UNINSURED MOTORISTS POLICYHOLDER NOTICE**

Notwithstanding any other provision or endorsement of this policy, pursuant to Section 264.15 of the New Hampshire Revised Statutes, it is understood that in the event of insolvency on the part of the liability insurer which prevents the insurer from paying the legal liability of its insured within the limits of the coverage provided, and no other insurance applies, Uninsured Motorists Coverage shall provide for no less than $25,000 coverage for damage to or destruction of property in any one accident.

.

POLICY NUMBER: ISA H25295304



# Texas Notice –
# Information and Complaints

**IMPORTANT NOTICE**

To obtain information or make a complaint:

You may call the Company's toll-free telephone number for information or to make a complaint at:

**1 (800) 352-4462**

You may also write to the Company at:

Chubb
Customer Services
PO Box 1000
Philadelphia, PA 19106-3703

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1 (800) 252-3439**

You may write the Texas Department of Insurance:

P. O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007
Web: *www.tdi.texas.gov*
E-mail: *ConsumerProtection@tdi.texas.gov*

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim, you should contact your agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANTE**

Para obtener información o para presentar una queja:

Usted puede llamar al número de teléfono gratuito de la Compañía para obtener información o para presentar una queja al:

**1 (800) 352-4462**

Usted también puede escribir a la Compañía:

Chubb
Customer Services
PO Box 1000
Philadelphia, PA 19106-3703

Usted puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos, o quejas al:

**1 (800) 252-3439**

Usted puede escribir al Departamento de Seguros de Texas a:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007
Sitio web: *www.tdi.texas.gov*
E-mail: *ConsumerProtection@tdi.texas.gov*

**DISPUTAS POR PRIMAS DE SEGUROS O RECLAMACIONES:**
Si tiene una disputa relacionada con su prima de seguro o con una reclamación, usted debe comunicarse con el agente o la compañía primero. Si la disputa no es resuelta, usted puede comunicarse con el Departamento de Seguros de Texas

**ADJUNTE ESTE AVISO A SU PÓLIZA:**
Este aviso es solamente para propósitos informativos y no se convierte en parte o en condición del documento adjunto.

Exhibit B

Exhibit B

5

POLICY NUMBER: ISA H25295304

# CHUBB

**UNINSURED MOTORISTS/UNDERINSURED MOTORIST COVERAGE SUMMARY**

The following Limit of Insurance for Uninsured Motorists and Underinsured Motorists (when not included in Uninsured Motorists Coverage) apply to Item 2 of the Declarations:

1. No Coverage is offered or provided for vehicles principally garaged or registered in the following states:
   MI,OH,PR

2. You have rejected coverage in the following states and no Limit of Insurance is provided for vehicles principally garaged or registered in these states:
   AL,AK,AZ,AR,CA,CO,DE,FL,GA,HI,ID,IN,IA,KY,LA,MS,MT,NV,NM,OK,PA,TN,TX,UT,WA,WY

3. Limit of Insurance for vehicles principally garaged or registered in the following states will be the limit of insurance you selected on the signed Uninsured and/or Underinsured Motorist selection/rejection form on file with us:
   All states not listed in items 1,2 or 4 of this form.

4. The policy limit for liability shall apply for vehicles principally garaged or registered in the state of NH.

DA-40002 (04/13)                                                       Page 1 of 1

Exhibit B

---

## VERMONT CHANGES: PROPERTY/CASUALTY - CIVIL UNION

| Named Insured Medtronic plc | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 To 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement is part of the policy to which it is attached and provides benefits under the policy for parties to a civil union. Vermont law requires that insurance policies offered to married persons and their families be made available to parties to a civil union and their families. In order to receive benefits in accordance with this endorsement, the civil union must be established in the state of Vermont according to Vermont law.

It is understood that policy definitions and provisions designating

- an insured
- named insured
- who is insured
- who is an insured
- who is a named insured
- covered person(s)
- you and / or your
- spouse
- family member

and any other policy definitions and provisions designating an insured under this policy, are amended, wherever appearing, where terms denoting a marital relationship or family relationship arising out of a marriage are used, to include parties to a civil union and their families under Vermont law.

_____
Authorized Agent

ALL-10032 (12/00) Ptd. in U.S.A.                                    Page 1 of 1

Exhibit B

## CHUBB'

### Wisconsin Notice To Policyholders

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**

**PROBLEMS WITH YOUR INSURANCE?** — If you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem.

**Chubb**
**Customer Support Service Department**
**436 Walnut Street**
**PO Box 1000**
**Philadelphia, PA 19106-3703**
**1-800-352-4462**

You can also contact the **OFFICE OF THE COMMISSIONER OF INSURANCE**, a state agency which enforces Wisconsin's insurance laws, and file a complaint. You can contact the **OFFICE OF THE COMMISSIONER OF INSURANCE** by contacting:

Office of the Commissioner of Insurance
Complaints Department
P.O. Box 7873
Madison, WI 53707-7873
1-800-236-8517
608-266-0103

Exhibit B

---

## CHUBB'

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

### Business Auto Declarations

**POLICY NUMBER:** ISA H25295304     **EXPIRING POLICY NUMBER:** ISA H25282012

RENEWAL

**ITEM ONE**

**Named Insured:** Medtronic plc

**Address:** 710 Medtronic Parkway
Minneapolis MN 55432

**Producer Number:** 244247
**Producer Name:** MARSH USA INC
**Producer Address:** 333 S 7TH ST
SUITE 1600
MINNEAPOLIS MN 55402-2427

**Form of Business:** [X] Corporation    [ ] Limited Liability Company

[ ] Other:

**Named Insured's business:** Surgical and Medical Instrument Manufacturing

**Policy Period:** Policy covers from 05/01/2020 to 05/01/2021 12:01 am standard time at the named insured's address stated above.

**Audit Period: Annual, unless otherwise stated:** [ ] Semi-Annual [ ] Quarterly [X] Not Auditable
**Total Advance Premium (Including surcharges):** $35,096.00
Refer to Surcharge Schedule for surcharge amounts and rates.
NO SURCHARGE APPLIES IN PUERTO RICO

In return for the payment of premium and subject to all the terms of this policy we agree with you to provide the insurance as stated in this policy.

Exhibit B

## CHUBB

**Business Auto Declarations**

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

**POLICY NUMBER:** ISA H25295304

### ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 1 | $2,000,000 | $Included |
| PERSONAL INJURY PROTECTION (or equivalent No fault Coverage) | 5 | SEPARATELY STATED IN EACH P.I.P ENDORSEMENT $ N/A DED | $Included |
| ADDED PERSONAL INJURY PROTECTION (or equivalent Added No fault Coverage) | | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT. | $ |
| OPTIONAL BASIC ECONOMIC LOSS COVERAGE (New York Only) | | $ | $ |
| ADDITIONAL PERSONAL INJURY PROTECTION (New York Only) | | $ Maximum Monthly Work Loss $ / Death Benefit $ / Other Necessary Expense (per day) $ | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | 5 | SEPARATELY STATED IN THE P.P.I ENDORSEMENT. MINUS $N/A DED FOR EACH ACCIDENT. | $Included |
| MEDICAL PAYMENTS | 10 | $10,000 | $Included |
| MEDICAL EXPENSE AND INCOME LOSS BENEFITS | | SEPARATELY STATED IN THE P.P.I ENDORSEMENT. MEDICAL EXPENSE BENEFITS $ EACH PERSON INCOME LOSS BENEFITS $ EACH PERSON | $ |
| UNINSURED MOTORISTS | 6 | $ See DA40002 | $Included |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists) (Not Applicable in New York) | 6 | $ See DA40002 | $Included |

DA-19661a (12/2008)    Copyright, Insurance Services Office, Inc. 2000    Page 2 of 13

Exhibit B

---

## CHUBB

**Business Auto Declarations**

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

**POLICY NUMBER:** ISA H25295304

### ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS (Continued)

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTO Section of the Truckers Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| SUPPLEMENTARY UNINSURED/ UNDERINSURED MOTORIST (New York only) | | $ The maximum amount payable under SUM coverage shall be the policy's SUM limits reduced and thus offset by the motor vehicle Bodily Injury liability insurance and policy or bond payments received from, or on behalf of, any negligent party involved in the accident as specified in the SUM endorsement. | $ |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ .DED. FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. (N/A to private passenger type vehicles in NY). See Schedule On File With Company For Vehicle Deductibles. See ITEM FOUR For Hired Or Borrowed "Autos". | $ |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS MINUS $ .DED. FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. See Schedule On File With Company For Vehicle Deductibles. See ITEM FOUR For Hired Or Borrowed "Autos." | $ |
| PHYSICAL DAMAGE COLLISION COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED FOR EACH COVERED AUTO FOR LOSS CAUSED BY COLLISION See Schedule On File With Company For Vehicle Deductibles. See ITEM FOUR For Hired Or Borrowed "Autos." | $ |
| PHYSICAL DAMAGE TOWING AND LABOR | | $ for each disablement of a private passenger auto. | $ |

DA-19661a (12/2008)    Copyright, Insurance Services Office, Inc. 2000    Page 3 of 13

Exhibit B

## CHUBB®

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

**Business Auto Declarations**

**POLICY NUMBER:** ISA H25295304

**ITEM THREE - SCHEDULE OF COVERED AUTOS YOU OWN**

| DESCRIPTION | | | |
|---|---|---|---|
| Covered Auto No | Year, Model, Trade Name, Serial Number or Vehicle Identification Number (VIN) | Original Cost New | Terr Code |
| | AS PER SCHEDULE ON FILE WITH COMPANY | | |

**ITEM FOUR - SCHEDULE OF HIRED OR BORROWED AUTO COVERAGE AND PREMIUMS**

LIABILITY COVERAGE - RATING BASIS, COST OF HIRE

| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | FACTOR (if liab. cov. is primary) | PREMIUM |
|---|---|---|---|---|
| All States on File With Us | $If Any | $ | | $Included |
| | | | TOTAL PREMIUM | $Included |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

PHYSICAL DAMAGE COVERAGE

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | PREMIUM |
|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. (N/A to Private Passenger type vehicles in NY). | $ | $ | $ |
| SPECIFIED CAUSES OF LOSS | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | $ | $ | $ |
| COLLISION | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO. | $ | $ | $ |

## CHUBB®

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

**Business Auto Declarations**

**POLICY NUMBER:** ISA H25295304

**ITEM FIVE - SCHEDULE FOR NON-OWNERSHIP LIABILITY**

| NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|---|---|---|---|
| Other Than A Social Service Agency | Number of Employees | 25 | $Included |
| | Number of Partners | | $ |
| Social Service Agency | Number of Employees | | $ |
| | Number of Volunteers | | $ |
| Garage Service Operations | Number of Employees | | $ |
| | Number of Partners | | $ |
| | TOTAL PREMIUM | | $Included |

**CHUBB®**        **Business Auto Declarations**
ACE American Insurance Company
436 Walnut Street
Philadelphia PA

| POLICY NUMBER:  ISA H25295304 |
|---|

| FORMS AND ENDORSEMENTS ATTACHED TO POLICY AT INCEPTION |
|---|

### SCHEDULE OF NOTICES

| Form No. | Description |
|---|---|
| ALL23445b0713 | Policyholder Notice Commercial Lines Deregulation New York |
| ALL4X04 | An Important Notice To Our Alaska Policyholders |
| ALL4X07 (07/96) | An Important Notice To Our Alaska Policyholders |
| ALL2Y31b | Arkansas Notice To Policyholders |
| ILN1191015 | California Auto Body Repair Consumer Bill Of Rights |
| ILN1180110 | California Automotive Repair Dealer Recommendation Notice |
| ALL208871006 | Chubb Producer Compensation Practices & Policies |
| ALL223680607 | Colorado Fraud Statement |
| ILN1751111 | Illinois Notice To Policyholders Regarding The Religious Freedom Protection And Civil Union Act |
| ALL301520710 | Important Information To Idaho Policyholders Regarding Your Insurance |
| ALL7X47a0206 | Important Information To Virginia Policyholders Regarding Your Insurance |
| DA1K19 | Important Message To Our Pennsylvania Auto Insurance Policyholders |
| ALL389690812 | Important Notice - Wisconsin |
| DA3E53a | Important Notice To Our Connecticut Policyholders |
| DA9T21 | Important Notice To Our Oregon Policyholders |
| ALL2Y810514 | Indiana Notice To Policyholders |
| ILN0430116 | Kansas Fraud Statement |
| ALL387110812 | Maryland Notice Of Underwriting Period |
| DA18607 | Massachusetts Compulsory Premium Policyholder Notice |
| DA410710913 | Minnesota Policyholder Notice Of Election To Have Two Or More Autos Added Together |
| ALL512200918 | Missouri Disclaimer Notice Commercial Lines Deregulation |
| ILN0021110 | New York Rental Reimbursement Coverage Disclosure |
| DA504041018 | North Carolina Reinsurance Facility Surcharge |
| ALL2U78b | Notice To All Oklahoma Policyholders |
| ALL398220413 | Notice To Our Florida Property And Casualty Policyholders Guidelines For Loss Control Plans |
| DA3H93b0613 | Notice To Our New York Policyholders Optional Basic Economic Loss Coverage |
| DA8S71c0919 | Notice To Our Texas Policyholders Motor Vehicle Crime Prevention Authority Pass Through Fee |
| DA504030518 | Policyholder Notice - New York Dmv Reporting |

DA-19661a (12/2008)    Copyright, Insurance Services Office, Inc. 2000    Page 6 of 13

Exhibit B

---

**CHUBB®**        **Business Auto Declarations**
ACE American Insurance Company
436 Walnut Street
Philadelphia PA

| POLICY NUMBER:  ISA H25295304 |
|---|

| Form No. | Description |
|---|---|
| ALL5W06(07/95) | Policyholder Notice - Ohio |
| ILN0890310 | Puerto Rico Fraud Statement |
| ALL18653d0714 | Questions About Your Insurance? |
| ALL5X45 | Questions About Your Insurance? |
| ALL11559e0716 | Risk Control Services For Texas Policyholders |
| DA395930113 | State Of New Hampshire Uninsured Motorists Policyholder Notice |
| ALL4Y30f0615 | Texas Notice – Information And Complaints |
| DA400020413 | Uninsured Motorists/Underinsured Motorist Coverage Summary |
| ALL10032 | Vermont Changes: Property/Casualty - Civil Union |
| ALL5X51a0206 | Wisconsin Notice To Policyholders |

### SCHEDULE OF COVERAGE FORMS

| Form No. | Description |
|---|---|
| CA00011013 | Business Auto Coverage Form |
| IL00171198 | Common Policy Conditions |

### SCHEDULE OF ENDORSEMENTS

| Endt. No. | Form No. | Description |
|---|---|---|
| 1 | ALL32677a0412 | Kentucky Local Government Premium Tax Schedule |
| 2 | ALL22421 | Surcharge Schedule |
| 3 | CC1K11i0218 | Signatures |
| 4 | DA9U74c0316 | Additional Insured – Designated Persons Or Organizations |
| 5 | DA13117c0614 | Cancellation By Us |
| 6 | ALL18845c0612 | Difference In Conditions/Difference In Limits |
| 7 | ALL44289c1116 | Direct Action Expenses |
| 8 | DA25844 | Fronted Reimbursement Of Deductible Endorsement Allocated Loss Adjustment Expense ("ALAE") Borne Entirely By The Insured |
| 9 | DA5X68b0614 | Knowledge Of An Accident |
| 10 | DA9T51 | Mexico Coverage Endorsement |
| 11 | DA21886b0614 | Non-Contributory Endorsement For Additional Insureds |
| 12 | DA14673b0315 | Notice Of Accident |
| 13 | ALL180571211 | Notification Of Premium Adjustment |
| 14 | ALL211011106 | Trade Or Economic Sanctions Endorsement |
| 15 | DA14674 | Trailer Endorsement |
| 16 | DA14672b0614 | Unintentional Errors & Omissions |
| 17 | DA13115a0614 | Waiver Of Transfer Of Rights Of Recovery Against Others |

DA-19661a (12/2008)    Copyright, Insurance Services Office, Inc. 2000    Page 7 of 13

Exhibit B

**CHUBB**
ACE American Insurance Company
436 Walnut Street
Philadelphia PA

### Business Auto Declarations

POLICY NUMBER: ISA H25295304

| Endt. No. | Form No. | Description |
|---|---|---|
| 18 | MS490580518 | Broad Form Named Insured |
| 19 | IL09130498 | Insurance Inspection Services Exemption From Liability |
| 20 | IL00210908 | Nuclear Energy Liability Exclusion Endorsement |
| 21 | CA99031013 | Auto Medical Payments Coverage |
| 22 | CA99541013 | Covered Auto Designation Symbol |
| 23 | CA99331013 | Employees As Insureds |
| 24 | CA20551013 | Fellow Employee Coverage |
| 25 | CA99161013 | Hired Autos Specified As Covered Autos You Own |
| 26 | CA20011013 | Lessor – Additional Insured And Loss Payee |
| 27 | DA249860508 | New Mexico Amendatory Endorsement: Uninsured/Underinsured Motorists |
| 28 | DA27455a1013 | State Of North Dakota Amendatory Endorsement Uninsured/Underinsured Motorists Coverage Rejection |
| 29 | CA01751013 | Arizona Changes |
| 30 | CA02050514 | Arizona Changes – Nonrenewal |
| 31 | CA01621013 | Arkansas Changes |
| 32 | CA04241013 | California Auto Medical Payments Coverage |
| 33 | CA01430517 | California Changes |
| 34 | CA04401013 | Colorado Auto Medical Payments Coverage |
| 35 | CA01131013 | Colorado Changes |
| 36 | IL01251113 | Colorado Changes – Civil Union |
| 37 | CA01071013 | Connecticut Changes |
| 38 | CA01901013 | Connecticut Changes – Liability Of Municipalities |
| 39 | CA21570316 | Connecticut Uninsured And Underinsured Motorists Coverage |
| 40 | CA01771013 | Delaware Changes |
| 41 | CA02550220 | Delaware Changes – Cancellation And Nonrenewal |
| 42 | CA22081116 | Delaware Personal Injury Protection Endorsement |
| 43 | CA01401013 | District Of Columbia Changes |
| 44 | CA02631013 | District Of Columbia Changes – Cancellation And Nonrenewal |
| 45 | CA21491013 | District Of Columbia Uninsured Motorists Coverage |
| 46 | CA01280617 | Florida Changes |
| 47 | CA02670617 | Florida Changes – Cancellation And Nonrenewal |
| 48 | CA22100218 | Florida Personal Injury Protection |
| 49 | CA01091013 | Georgia Changes |
| 50 | IL02620215 | Georgia Changes – Cancellation And Nonrenewal |
| 51 | CA01270417 | Hawaii Changes |
| 52 | CA02010417 | Hawaii Changes – Cancellation And Nonrenewal |

DA-19661a (12/2008) — Copyright, Insurance Services Office, Inc. 2000 — Page 8 of 13

---

**CHUBB**
ACE American Insurance Company
436 Walnut Street
Philadelphia PA

### Business Auto Declarations

POLICY NUMBER: ISA H25295304

| Endt. No. | Form No. | Description |
|---|---|---|
| 53 | CA22650218 | Hawaii Personal Injury Protection Coverage |
| 54 | CA01181013 | Idaho Changes |
| 55 | CA01200115 | Illinois Changes |
| 56 | CA02700118 | Illinois Changes – Cancellation And Nonrenewal |
| 57 | IL01621013 | Illinois Changes – Defense Costs |
| 58 | CA21300115 | Illinois Uninsured Motorists Coverage |
| 59 | CA01191013 | Indiana Changes |
| 60 | CA01601013 | Iowa Changes |
| 61 | CA01220619 | Kansas Changes |
| 62 | CA02650116 | Kansas Changes – Cancellation And Nonrenewal |
| 63 | CA22141013 | Kansas Personal Injury Protection |
| 64 | CA21370619 | Kansas Uninsured Motorists Coverage |
| 65 | CA01251013 | Kentucky Changes |
| 66 | CA22161013 | Kentucky Personal Injury Protection |
| 67 | CA01031013 | Louisiana Changes |
| 68 | CA01341013 | Maine Changes |
| 69 | CA21741013 | Maine Uninsured Motorists Coverage |
| 70 | CA02151217 | Maryland Cancellation Changes |
| 71 | CA01701013 | Maryland Changes |
| 72 | CA22191013 | Maryland Personal Injury Protection Endorsement |
| 73 | CA21131013 | Maryland Uninsured Motorists Coverage |
| 74 | MM99670411 | Massachusetts Changes |
| 75 | MM99111011 | Massachusetts Mandatory Endorsement |
| 76 | CA01100916 | Michigan Changes |
| 77 | IL02860417 | Michigan Changes – Cancellation And Nonrenewal |
| 78 | CA22200418 | Michigan Personal Injury Protection |
| 79 | CA22241013 | Michigan Property Protection Coverage |
| 80 | CA01381013 | Minnesota Changes |
| 81 | CA02181013 | Minnesota Changes – Cancellation And Nonrenewal |
| 82 | CA22250117 | Minnesota Personal Injury Protection |
| 83 | CA21241013 | Minnesota Uninsured And Underinsured Motorists Coverage |
| 84 | CA01650716 | Missouri Changes |
| 85 | CA02190116 | Missouri Changes – Cancellation And Nonrenewal |
| 86 | CA01661013 | Missouri Changes – Pollution Exclusion |
| 87 | CA02201013 | Montana Changes – Cancellation And Nonrenewal |
| 88 | IL01671013 | Montana Changes – Conformity With Statutes |
| 89 | CA99351113 | Nebraska Auto Medical Payments Coverage |

DA-19661a (12/2008) — Copyright, Insurance Services Office, Inc. 2000 — Page 9 of 13

Exhibit B

**CHUBB®**

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

**Business Auto Declarations**

POLICY NUMBER: ISA H25295304

| Endt. No. | Form No. | Description |
|---|---|---|
| 90 | CA01561013 | Nebraska Changes |
| 91 | CA02211217 | Nebraska Changes – Cancellation |
| 92 | CA21701013 | Nebraska Uninsured And Underinsured Motorists Coverage |
| 93 | CA01361013 | Nevada Changes |
| 94 | CA02620119 | New Hampshire Changes – Cancellation And Nonrenewal |
| 95 | CA01111219 | New Hampshire Changes In Policy |
| 96 | CA31260215 | New Hampshire Uninsured Motorists Coverage |
| 97 | CA01881013 | New Jersey Changes |
| 98 | CA01841116 | New Jersey Changes – Physical Damage Inspection |
| 99 | CA22300120 | New Jersey Personal Injury Protection |
| 100 | CA21141016 | New Jersey Uninsured And Underinsured Motorists Coverage |
| 101 | CA01391013 | New Mexico Changes |
| 102 | CA02500515 | New Mexico Changes – Cancellation And Nonrenewal |
| 103 | CA02250814 | New York Changes – Cancellation |
| 104 | CA01121215 | New York Changes In Business Auto And Motor Carrier Coverage Forms |
| 105 | CA22321118 | New York Mandatory Personal Injury Protection Endorsement |
| 106 | CA01261013 | North Carolina Changes |
| 107 | CA21161013 | North Carolina Uninsured Motorists Coverage |
| 108 | CA01611013 | North Dakota Changes |
| 109 | CA22341013 | North Dakota Personal Injury Protection Endorsement |
| 110 | CA21861013 | North Dakota Underinsured Motorists Coverage |
| 111 | CA21831013 | North Dakota Uninsured Motorists Coverage |
| 112 | CA01321013 | Oklahoma Changes |
| 113 | CA01491013 | Oregon Changes |
| 114 | CA22361116 | Oregon Personal Injury Protection |
| 115 | CA21050116 | Oregon Uninsured Motorists Coverage – Bodily Injury |
| 116 | CA22371013 | Pennsylvania Basic First-Party Benefit |
| 117 | CA01800616 | Pennsylvania Changes |
| 118 | IL01201013 | Pennsylvania Changes – Defense Costs |
| 119 | MM99350411 | Personal Injury Liability Coverage |
| 120 | CA01140914 | Puerto Rico Changes |
| 121 | CA01480214 | Rhode Island Changes |
| 122 | CA02731013 | Rhode Island Changes – Cancellation And Nonrenewal |
| 123 | CA21430615 | Rhode Island Uninsured Motorists Coverage – Bodily Injury |
| 124 | CA99580414 | South Carolina Auto Medical Payments Coverage |
| 125 | CA01500517 | South Carolina Changes |

DA-19661a (12/2008)  Copyright, Insurance Services Office, Inc. 2000  Page 10 of 13
Exhibit B

---

**CHUBB®**

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

**Business Auto Declarations**

POLICY NUMBER: ISA H25295304

| Endt. No. | Form No. | Description |
|---|---|---|
| 126 | CA02300719 | South Carolina Changes – Cancellation And Nonrenewal |
| 127 | CA21191213 | South Carolina Uninsured Motorists Coverage |
| 128 | CA01231013 | South Dakota Changes |
| 129 | CA21411018 | South Dakota Uninsured And Underinsured Motorists Coverage |
| 130 | CA01461013 | Tennessee Changes |
| 131 | CA01961013 | Texas Changes |
| 132 | CA02431113 | Texas Changes – Cancellation And Nonrenewal |
| 133 | CA99951013 | Texas Supplementary Death Benefit |
| 134 | MM99281013 | Uninsured Motorists Coverage - Massachusetts |
| 135 | CA31131118 | Uninsured Motorists Endorsement – New York |
| 136 | CA21211102 | Uninsured Motorists Endorsement (Virginia) |
| 137 | CA01590517 | Utah Changes |
| 138 | CA22441116 | Utah Personal Injury Protection |
| 139 | IL02190615 | Vermont Changes – Cancellation And Nonrenewal |
| 140 | CA01291013 | Vermont Changes In Business Auto And Motor Carrier Coverage Forms |
| 141 | CA01851013 | Vermont Changes In Business Auto And Motor Carrier Coverage Forms – Pollution |
| 142 | CA21631016 | Vermont Uninsured Motorists Coverage |
| 143 | CA01160218 | Virginia Changes – Business Auto Coverage Form |
| 144 | CA02680218 | Virginia Changes In Policy – Cancellation And Nonrenewal |
| 145 | CA22461116 | Virginia Medical Expense And Income Loss Benefits Endorsement |
| 146 | CA01351013 | Washington Changes |
| 147 | IL01231113 | Washington Changes – Defense Costs |
| 148 | CA99681113 | West Virginia Auto Medical Payments Coverage |
| 149 | CA01830116 | West Virginia Changes |
| 150 | CA01891013 | West Virginia Changes – Coverage Extension For Temporary Substitute Autos |
| 151 | CA02520917 | West Virginia Changes – Nonrenewal |
| 152 | CA21221113 | West Virginia Uninsured And Underinsured Motorists Coverage |
| 153 | CA99241013 | Wisconsin Auto Medical Payments Coverage |
| 154 | CA01171013 | Wisconsin Changes |
| 155 | CA21031013 | Wisconsin Uninsured Motorists Coverage |
| 156 | IL01760611 | Alaska Changes - Appraisal |
| 157 | IL01210908 | Alaska Changes - Attorney's Fees |
| 158 | IL02800908 | Alaska Changes - Cancellation And Nonrenewal |
| 159 | IL02310908 | Arkansas Changes - Cancellation And Nonrenewal |
| 160 | IL09090398 | Arkansas Notice |

DA-19661a (12/2008)  Copyright, Insurance Services Office, Inc. 2000  Page 11 of 13
Exhibit B

**CHUBB**
Business Auto Declarations
ACE American Insurance Company
436 Walnut Street
Philadelphia PA

POLICY NUMBER: ISA H25295304

| Endt. No. | Form No. | Description |
|---|---|---|
| 161 | IL02701219 | California Changes -- Cancellation And Nonrenewal |
| 162 | IL02280907 | Colorado Changes - Cancellation And Nonrenewal |
| 163 | IL01690907 | Colorado Changes - Concealment, Misrepresentation Or Fraud |
| 164 | IL00241014 | Compulsory Liability Insurance Policy -- Puerto Rico |
| 165 | IL02600119 | Connecticut Changes -- Cancellation And Nonrenewal |
| 166 | IL01400908 | Connecticut Changes - Civil Union |
| 167 | IL01510112 | Delaware Changes - Civil Union |
| 168 | IL01490112 | Hawaii Changes - Civil Union |
| 169 | IL02040908 | Idaho Changes - Cancellation And Nonrenewal |
| 170 | IL01470911 | Illinois Changes - Civil Union |
| 171 | IL01580908 | Indiana Changes |
| 172 | IL02720907 | Indiana Changes - Cancellation And Nonrenewal |
| 173 | IL01561117 | Indiana Changes - Concealment, Misrepresentation Or Fraud |
| 174 | IL01171210 | Indiana Changes - Workers' Compensation Exclusion |
| 175 | IL02760908 | Iowa Changes - Cancellation And Nonrenewal |
| 176 | IL02630908 | Kentucky Changes - Cancellation And Nonrenewal |
| 177 | IL02770118 | Louisiana Changes -- Cancellation And Nonrenewal |
| 178 | IL02470211 | Maine Changes - Cancellation And Nonrenewal |
| 179 | IL01690907 | Maine Changes - Concealment, Misrepresentation Or Fraud |
| 180 | IL01360504 | Mandatory Premium And Coverage Conditions Endorsement - Puerto Rico |
| 181 | IL02820908 | Mississippi Changes - Cancellation And Nonrenewal |
| 182 | IL02510907 | Nevada Changes - Cancellation And Nonrenewal |
| 183 | IL01100907 | Nevada Changes - Concealment, Misrepresentation Or Fraud |
| 184 | IL01150110 | Nevada Changes - Domestic Partnership |
| 185 | IL01450908 | New Hampshire Changes - Civil Union |
| 186 | IL01870907 | New Hampshire Changes - Concealment, Misrepresentation Or Fraud |
| 187 | IL02080907 | New Jersey Changes - Cancellation And Nonrenewal |
| 188 | IL01410908 | New Jersey Changes - Civil Union |
| 189 | IL01830808 | New York Changes - Fraud |
| 190 | IL02340917 | North Dakota Changes -- Cancellation And Nonrenewal |
| 191 | IL01650908 | North Dakota Changes - Examination Of Your Books And Records |
| 192 | IL02440907 | Ohio Changes - Cancellation And Nonrenewal |
| 193 | IL02360907 | Oklahoma Changes - Cancellation And Nonrenewal |
| 194 | IL01771010 | Oklahoma Changes - Concealment, Misrepresentation Or Fraud |
| 195 | IL01791002 | Oklahoma Notice |
| 196 | IL02790908 | Oregon Changes - Cancellation And Nonrenewal |

**CHUBB**
Business Auto Declarations
ACE American Insurance Company
436 Walnut Street
Philadelphia PA

POLICY NUMBER: ISA H25295304

| Endt. No. | Form No. | Description |
|---|---|---|
| 197 | IL01420908 | Oregon Changes - Domestic Partnership |
| 198 | IL02460907 | Pennsylvania Changes - Cancellation And Nonrenewal |
| 199 | IL09101203 | Pennsylvania Notice |
| 200 | IL01610312 | Rhode Island Changes - Civil Union |
| 201 | IL01840907 | South Dakota Changes - Appraisal |
| 202 | IL02320908 | South Dakota Changes - Cancellation And Nonrenewal |
| 203 | IL02500908 | Tennessee Changes - Cancellation And Nonrenewal |
| 204 | IL02660908 | Utah Changes - Cancellation And Nonrenewal |
| 205 | IL01090908 | Vermont Changes - Civil Union |
| 206 | IL01700907 | Vermont Changes - Concealment, Misrepresentation Or Fraud |
| 207 | IL01460810 | Washington Common Policy Conditions |
| 208 | IL02810489 | West Virginia Changes - Cancellation |
| 209 | IL02831118 | Wisconsin Changes -- Cancellation And Nonrenewal |

THIS DECLARATION AND THE BUSINESS AUTO POLICY AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY

COUNTERSIGNED BY _____

AUTHORIZED AGENT

THE TOTAL AMOUNT DUE INCLUDES A PREMIUM SURCHARGE PURSUANT TO SECTION 136.392 OF THE KENTUCKY REVISED STATUTES.

## Kentucky Local Government Premium Tax Schedule

| Named Insured Medtronic plc | | | Endorsement Number 1 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 TO 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The premium shown on the Declarations includes the total tax amount for the Kentucky Local Government Premium Tax which is the sum of the tax amounts for each taxing jurisdiction shown below. Each tax amount includes the tax prescribed by the State of Kentucky in accordance with KRS 91A.080 and a collection fee pursuant to KRS. 91A.080(4) and 806 KAR. 2:090.

| **Taxing Jurisdiction** | **Tax Amount** |
|---|---|
| Louisville | $19.00 |

---

Authorized Representative

ALL-32677a (04/12)                                                      Page 1 of 1

Exhibit B

---

5

## SURCHARGE SCHEDULE

| Named Insured Medtronic plc | | | Endorsement Number 2 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 TO 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

The following surcharge(s) have been applied at inception of this policy:

| State | Name of Surcharge | Amount |
|---|---|---|
| KY | KY Public Service Surcharge | $6.00 |
| MI | Michigan Catastrophic Claims Association (MCCA) Surcharge | $7,920.00 |
| MI | Michigan Auto Theft Prevention Authority (ATPA) Surcharge | $36.00 |
| CA | California Auto Fraud Assessment | $266.00 |
| CO | Colorado Auto Theft Prevention Authority Fee | $45.00 |
| AZ | Arizona Auto Theft Prevention Authority Fee | $34.00 |
| NJ | NJ Property Liability Insurance Guarantee Association | $9.00 |
| NY | New York Motor Vehicle Law Enforcement Fee | $560.00 |
| NC | NC - Auto Loss Recoupment Surcharge | $43.00 |
| TX | Motor Vehicle Crime Prevention Authority (MVCPA) | $432.00 |
| | | |
| | | |
| | | |
| | | |
| | | |

Surcharges will be adjusted at audit and concurrent with any other applicable premium adjustment. The rates used to adjust the surcharges are set by the states. The formulae for the adjustment bases used to adjust the surcharges are also set by the states.

ALL-22421 (10/11)                                                      Page 1 of 1

Exhibit B

**CHUBB**

POLICY NUMBER: ISA H25295304

COMMERCIAL AUTO
CA 00 01 10 13

## SIGNATURES

| Named Insured<br>Medtronic plc | | | Endorsement Number<br>3 |
|---|---|---|---|
| Policy Symbol<br>ISA | Policy Number<br>H25295304 | Policy Period<br>05/01/2020 to 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

THE ONLY COMPANY APPLICABLE TO THIS POLICY IS THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA (A stock company)
BANKERS STANDARD INSURANCE COMPANY (A stock company)
ACE AMERICAN INSURANCE COMPANY (A stock company)
ACE PROPERTY AND CASUALTY INSURANCE COMPANY (A stock company)
INSURANCE COMPANY OF NORTH AMERICA (A stock company)
PACIFIC EMPLOYERS INSURANCE COMPANY (A stock company)
ACE FIRE UNDERWRITERS INSURANCE COMPANY (A stock company)
WESTCHESTER FIRE INSURANCE COMPANY (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary                    JOHN J. LUPICA, President

---

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|----|---|---|

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols 1, 2, 3, 4, 5, 6 or 19 are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 7 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. "Loss"; or
   e. Destruction.

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who Is An Insured**

The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   (1) The owner or anyone else from whom you hire or borrow a covered "auto".

   This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

   (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

   (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

   (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

   (5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

   c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

   a. Supplementary Payments

   We will pay for the "insured":

   (1) All expenses we incur.

   (2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

   (3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

   (4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

   (5) All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

   (6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

   b. Out-of-state Coverage Extensions

   While a covered "auto" is away from the state where it is licensed, we will:

   (1) Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

   (2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

   We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

   a. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

   b. That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

b. The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

a. Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

b. Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed;

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

Exhibit B

Exhibit B

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. **Comprehensive Coverage**

      From any cause except:

      **(1)** The covered "auto's" collision with another object; or

      **(2)** The covered "auto's" overturn.

   b. **Specified Causes Of Loss Coverage**

      Caused by:

      **(1)** Fire, lightning or explosion;

      **(2)** Theft;

      **(3)** Windstorm, hail or earthquake;

      **(4)** Flood;

      **(5)** Mischief or vandalism; or

      **(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. **Collision Coverage**

      Caused by:

      **(1)** The covered "auto's" collision with another object; or

      **(2)** The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   a. **Transportation Expenses**

      We will pay up to $20 per day, to a maximum of $600, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   b. **Loss Of Use Expenses**

      For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

      **(1)** Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

      **(2)** Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

      **(3)** Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

      However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

### B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. **Nuclear Hazard**

      **(1)** The explosion of any weapon employing atomic fission or fusion; or

      **(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

   b. **War Or Military Action**

      **(1)** War, including undeclared or civil war;

      **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

      **(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" due and confined to:

   a. Wear and tear, freezing, mechanical or electrical breakdown.

   b. Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

4. We will not pay for "loss" to any of the following:

   a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   b. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

   c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   d. Any accessories used with the electronic equipment described in Paragraph c. above.

5. Exclusions 4.c. and 4.d. do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

   a. Permanently installed in or upon the covered "auto";

   b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

   c. An integral part of the same unit housing any electronic equipment described in Paragraphs a. and b. above; or

   d. Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

6. We will not pay for "loss" to a covered "auto" due to "diminution in value".

### C. Limits Of Insurance

1. The most we will pay for:

   a. "Loss" to any one covered "auto" is the lesser of:

      **(1)** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

      **(2)** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

   b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

      **(1)** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

Exhibit B

**(2)** Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

**(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment, you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option, we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own; or

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

(1) The United States of America;

(2) The territories and possessions of the United States of America;

(3) Puerto Rico;

(4) Canada; and

(5) Anywhere in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V – DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph 6.b. or 6.c. of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**5.** Vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers; or

**6.** Vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense";

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

---

Page 12 of 12    © Insurance Services Office, Inc., 2011    CA 00 01 10 13

Exhibit B

---

POLICY NUMBER: ISA H25295304                                 IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

**1.** We have the right to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe or healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

---

IL 00 17 11 98        Copyright, Insurance Services Office, Inc., 1998        Page 1 of 1

Exhibit B

1

## ADDITIONAL INSURED –
## DESIGNATED PERSONS OR ORGANIZATIONS

| Named Insured Medtronic plc | | | Endorsement Number 4 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 to 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**BUSINESS AUTO COVERAGE FORM
AUTO DEALERS COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
EXCESS BUSINESS AUTO COVERAGE FORM**

Additional Insured(s):  Any person or organization whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss .

A.    For a covered "auto," Who Is Insured is amended to include as an "insured," the persons or organizations named in this endorsement.  However, these persons or organizations are an "insured" only for "bodily injury" or "property damage" resulting from acts or omissions of:

1.   You.

2.   Any of your "employees" or agents.

3.   Any person operating a covered "auto" with permission from you, any of your "employees" or agents.

B.    The persons or organizations named in this endorsement are not liable for payment of your premium.

_____
Authorized Representative

DA-9U74c (03/16)                                                                                          Page 1 of 1

Exhibit B

---

1

## CANCELLATION BY US

| Named Insured Medtronic plc | | | Endorsement Number 5 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 to 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**BUSINESS AUTO COVERAGE FORM
MOTOR CARRIERS COVERAGE FORM
AUTO DEALERS COVERAGE FORM**

Paragraph A.2. of CANCELLATION (Common Policy Conditions) is replaced by the following:

2.   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

a.   10 days (or greater if required by state statute) before the effective date of cancellation if we cancel for nonpayment of premium; or

b.   90  days (but no less than the minimum number of days required by state statute) before the effective date of cancellation if we cancel for any other approved legal reason.

At no time will we provide less than the state mandated timeframe for notice.

_____
Authorized Representative

DA-13117c (06/14)                                                                                          Page 1 of 1

Exhibit B

1

## DIFFERENCE IN CONDITIONS/DIFFERENCE IN LIMITS

| Named Insured Medtronic plc | | | Endorsement Number 6 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 TO 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If this policy provides greater coverage, limits or conditions than any of the policies listed in the Schedule of Other Policies below (each such scheduled policy referred to as an "Other Policy") for any loss, then we will reimburse you, if we cannot pay directly, for such loss to the extent of any difference in the coverages, limits or conditions between this policy and the Other Policy, subject to the terms, limitations and conditions of this policy. Any coverage provided by this policy will be excess over any coverage provided by an Other Policy, and only to the extent of any such difference in terms, limits and conditions.

If this policy and any Other Policy provide coverage for the same loss, then the most we will pay, or reimburse, under this policy and all Other Policies combined is the highest applicable Limit of Insurance under any one policy applicable to such loss, provided, however, that if this policy has higher limits than any such Other Policy, the most we will pay, or reimburse, under this policy is the difference between the applicable Limit of Insurance of this policy and the total limits of insurance of such Other Policies; and in such event, the total amount of coverage afforded under this policy and all such Other Policies will not exceed the amount of the applicable Limit of Insurance of this policy.

Solely with respect to an Other Policy, the provisions of this endorsement supersede any Other Insurance Condition contained in this policy.

Schedule of Other Policies:
| Policy Issuing Company | Policy Number |
|---|---|
| Chubb Insurance Company of Canada | CAC 426356 |

_____
Authorized Representative

ALL-18845c (06/12)                                   Page 1 of 1

Exhibit B

---

## DIRECT ACTION EXPENSES

| Named Insured Medtronic plc | | | Endorsement Number 7 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 TO 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
### This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
AUTO DEALERS COVERAGE FORM

The following is added to the SUPPLEMENTARY PAYMENTS provision of the policy and any endorsement attached to the policy which modifies or amends the SUPPLEMENTARY PAYMENTS provision of the policy:

In addition, we will pay for all reasonable "Direct Action Expenses".

As used in this endorsement, "Direct Action Expenses" means all defense, investigation, settlement, legal costs and expenses, and prejudgment interest, that we incur and that arise out of or relate to any "suit", seeking payment of damages under this policy, which "suit" is brought or made directly against us pursuant to any law that grants a third party the right to bring a direct action against us by virtue of the issuance of this policy. "Direct Action Expenses" also include expenses related to any appeal from a judgment.

Direct Action Expenses do not include any such expenses that we incur if we are sued because of the entry of a default judgment against an insured, if that default judgment was entered solely due to our mistake in the handling of the initial "suit" and the insured provided us with timely notice of that "suit".

All other terms and conditions remain unchanged.

_____
Authorized Representative

ALL-44289c (11/16)                                   Page 1 of 1

Exhibit B

**FRONTED REIMBURSEMENT OF DEDUCTIBLE ENDORSEMENT**

**ALLOCATED LOSS ADJUSTMENT EXPENSE ("ALAE") BORNE ENTIRELY BY THE INSURED**

| Named Insured | Medtronic plc | | Endorsement Number |
|---|---|---|---|
| | | | 8 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| ISA | H25295304 | 05/01/2020 TO 05/01/2021 | |
| Issued By (Name of Insurance Company) | | | |
| ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**BUSINESS AUTO COVERAGE**
**TRUCKERS COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**GARAGE COVERAGE FORM**

**I)  DEDUCTIBLE AMOUNT**

The Deductible Per "Accident" is equal to:

1.  The Limit of Insurance for each coverage provided under this policy, except Physical Damage and Garagekeepers; plus
2.  All Allocated Loss Adjustment Expense.

**II)  ADDITIONAL PROVISIONS**

1)  "We" will pay all sums that "we" become legally obligated to pay, up to the Limit of Insurance under this policy.

2)  "You" must reimburse us up to the Deductible Amount for any amounts we have paid under this policy.

3)  The Deductible Amount shown in Section I of this endorsement will apply per "accident", regardless of the number of claimants, Insureds, claims made or "suits" brought, or persons or organizations making claims or bringing "suits".

4)  If "you" fail to reimburse "us" for any amount due under this endorsement, or fail to provide "us" any collateral that "we" require, "you" will be in default of "your" obligations to "us", and "we" may take any steps "we" deem necessary to enforce our rights against "you", including but not limited to drawing on any amount of collateral "we" hold or canceling this policy, if permitted by law.

5)  Each Named Insured is jointly and severally liable for all amounts reimbursable under this endorsement.

6)  If "we" recover any payment "we" make under this policy from anyone liable for damages or "ALAE", the amount "we" recover will first be applied to any payments "we" made in excess of the Deductible Amount and to "our" expenses in obtaining the recovery. The remainder of the recovery, if any, will reduce the amount that is reimbursable by "you".

**III)  ALLOCATED LOSS ADJUSTMENT EXPENSE DEFINITION**

"Allocated Loss Adjustment Expense(s)" or "ALAE" means such claim expenses, costs and any interest provided for under the Supplementary Payments of this policy, that are incurred in connection with the investigation, administration, adjustment, settlement or defense of any claim or lawsuit that we, under our accounting practices, directly allocate to a particular claim, whether or not a payment indemnifying the claimant(s) is made. Such expenses include, but are not limited to, subrogation, all court costs, fees and expenses; fees for service of process; fees and expenses to attorneys for legal services; the cost of services of undercover operations and detectives; fees to obtain medical cost containment services; the cost of employing experts for the purpose of preparing maps, photographs, diagrams, and chemical or physical analysis, or for expert advice or opinion; the cost of obtaining copies of any public records; and the cost of depositions and court reporters or recorded statements, provided, however, that Allocated Loss Adjustment Expense shall not include the salaries and traveling expenses of our employees or our overhead and adjusters' fees.

**IV)  NO OTHER CHANGES**

All other terms of this policy, including those with respect to:

(a)  Our right and duty to defend any "insured" against a "suit" asking for damages to which this insurance applies, and

(b)  Limit of Insurance, and

(c)  Your duties in the event of an accident, claim, suit or loss

remain unchanged.

_____
Authorized Agent

Exhibit B

Exhibit B

**KNOWLEDGE OF AN ACCIDENT**

1

| Named Insured Medtronic plc | | | Endorsement Number 9 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 TO 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**BUSINESS AUTO COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**

The following is added to Condition A.2. Duties in the Event of Accident, Claim, Suit OR, Loss:

d. Knowledge of an "accident" by any of your agents, servants or "employees" shall not constitute knowledge by you unless:

Your executive officers or anyone responsible for administering your insurance program.

_____
Name or Title

has received notice from the agent, servant or "employee".

_____
Authorized Representative

DA-5X68b (06/14)                                                      Page 1 of 1

Exhibit B

---

**MEXICO COVERAGE ENDORSEMENT**

| Named Insured Medtronic plc | | | Endorsement Number 10 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 TO 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

Auto accidents in Mexico are subject to the laws of Mexico only — NOT the laws of the United States of America. Unlike the United States, the Republic of Mexico considers an auto accident a CRIMINAL OFFENSE as well as a civil matter.

In some cases, the coverage under this endorsement may NOT be recognized by Mexican authorities and the company may not be allowed to implement this coverage at all in Mexico. You should consider purchasing auto coverage from a licensed Mexican Insurance Company before driving into Mexico.

The coverages provided by this policy for covered "autos" are extended to "accidents" occurring in Mexico within 75 miles from the boundary of the United States of America. This extension only applies for infrequent trips into Mexico that do not exceed ten days at any one time.

**SECTION II — LIABILITY COVERAGE** is changed as follows:

The following Exclusions are added:

This insurance does not apply:

1. If the covered "auto" is not principally garaged and used in the United States;

2. To any "insured" who does not live in the United States;

The **PHYSICAL DAMAGE COVERAGE** Section is changed as follows:

B. The following Exclusions are added:

We do not provide any coverage:

1. If your covered "auto" is not principally garaged and used in the United States;

2. To any "insured" who does not live in the United States.

**THE FOLLOWING CONDITION IS ADDED:**

We will pay "losses" under PHYSICAL DAMAGE to your covered "auto" in the United States, not in Mexico. If your covered "auto" must be repaired in Mexico in order to be driven, we will not pay more than the actual cash value of such loss at the nearest United States point where the repairs can be made. We will not pay the cost of towing, transporting or salvaging your covered "auto" while it is within Mexico.

The **CONDITIONS** Section is changed as follows:

B. **GENERAL CONDITIONS**

5. **OTHER INSURANCE**

The following is added to OTHER INSURANCE provisions:

e. The insurance we provide by this endorsement will be excess over any other collectible insurance.

DA-9T51 (7/93) Ptd. in U.S.A.                                    Page 1 of 2

Exhibit B

2

**f. POLICY PERIOD, COVERAGE TERRITORY**

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico;

d. Canada;

e. The Republic of Mexico within 75 miles from the boundary of the United States of America. This extension only applies for infrequent trips into Mexico which do not exceed ten days at any one time.

We also cover "loss" to, or "accidents" involving a covered "auto" while being transported between any of these places.

---

**NON-CONTRIBUTORY ENDORSEMENT FOR ADDITIONAL INSUREDS**

| Named Insured Medtronic plc | | | Endorsement Number 11 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 TO 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**BUSINESS AUTO COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**AUTO DEALERS COVERAGE FORM**

**Schedule**

| Organization | Additional Insured Endorsement |
|---|---|
| Any additional insured with whom you have agreed to provide such noncontributory insurance, pursuant to and as required under a written contract executed prior to the date of loss. | |

*(If no information is filled in, the schedule shall read: "All persons or entities added as additional insureds through an endorsement with the term "Additional Insured" in the title)*

For organizations that are listed in the Schedule above that are also an Additional Insured under an endorsement attached to this policy, the following is added to the Other Insurance Condition under General Conditions:

If other insurance is available to an insured we cover under any of the endorsements listed or described above (the "Additional Insured") for a loss we cover under this policy, this insurance will apply to such loss on a primary basis and we will not seek contribution from the other insurance available to the Additional Insured.

_____
Authorized Representative

---

DA-9T51 (7/93) Ptd. in U.S.A.

_____
Authorized Agent

Page 2 of 2

DA-21886b (06/14)

Page 1 of 1

Exhibit B

Exhibit B

1

## NOTICE OF ACCIDENT

| Named Insured Medtronic plc | | | Endorsement Number 12 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 TO 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**BUSINESS AUTO COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**AUTO DEALERS COVERAGE FORM**

The Duties In The Event Of Accident, Claim, Suit Or Loss Condition is amended by the addition of the following:

Notice of an "accident," claim, "suit" or loss will be deemed to be prompt if you give us such notice as soon as:

<u>Your Risk Management Department</u>
　[Name or Title]

knows of such "accident," claim, "suit" or loss.

This endorsement does not modify or waive any others duties, terms or conditions of this Coverage Form.

_____
Authorized Representative

DA-14673b (03/15)　　　　　　　　　　　　　　　　Page 1 of 1

Exhibit B

---

1

## NOTIFICATION OF PREMIUM ADJUSTMENT

| Named Insured Medtronic plc | | | Endorsement Number 13 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 TO 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

For the states and lines of business in which regulatory approval has been granted for the NCCI Large Risk Alternative Rating Option, the ISO Large Risk Alternative Rating Option, or the independently filed Chubb Large Risk Rating Plan, the premiums for this policy will be adjusted in accordance with the Notice of Election, signed by you.

_____
Authorized Representative

ALL-18057 (12/11)　　　　　　　　　　　　　　　　Page 1 of 1

Exhibit B

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured Medtronic plc | | | Endorsement Number 14 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 TO 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

Exhibit B

---

1

## TRAILER ENDORSEMENT

| Named Insured Medtronic plc | | | Endorsement Number 15 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 TO 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

Coverage afforded under this coverage part shall apply to trailers (designed for use with private passenger autos) owned or rented by your employees when used with private passenger autos insured under this policy.

_____
Authorized Agent

Exhibit B

**UNINTENTIONAL ERRORS & OMISSIONS**

2

| Named Insured Medtronic plc | | | Endorsement Number 16 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 TO 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**BUSINESS AUTO COVERAGE FORM**
**AUTO DEALERS COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**

We agree with you that:

Your failure to disclose all hazards existing as of the inception date of the policy shall not prejudice you with respect to the coverage afforded by this policy, provided such failure or omission is not intentional.

_____
Authorized Representative

DA-14672b (06/14)                                                    Page 1 of 1

Exhibit B

**WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS**

| Named Insured Medtronic plc | | | Endorsement Number 17 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H25295304 | Policy Period 05/01/2020 TO 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This Endorsement modifies insurance provided under the following:**

**BUSINESS AUTO COVERAGE FORM**
**MOTOR CARRIERS COVERAGE FORM**
**AUTO DEALERS COVERAGE FORM**

We waive any right of recovery we may have against the person or organization shown in the Schedule below because of payments we make for injury or damage arising out of the use of a covered auto.  The waiver applies only to the person or organization shown in the SCHEDULE.

**SCHEDULE**

Any person or organization against whom you have agreed to waive your right of recovery in a written contract, provided such contract was executed prior to the date of loss.

_____
Authorized Representative

DA-13115a (06/14)                                                    Page 1 of 1

Exhibit B

### BROAD FORM NAMED INSURED

| Named Insured Medtronic plc | Endorsement Number 18 |
|---|---|
| **Policy Symbol** ISA | **Policy Number** H25295304 | **Policy Period** 05/01/2020 TO 05/01/2021 | **Effective Date of Endorsement** |
| Issued By (Name of Insurance Company) ACE American Insurance Company | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

BUSINESS AUTO COVERAGE FORM

It is agreed that Item 1. of the Declarations page is amended to read as follows:

Medtronic plc and any and all subsidiary, affiliated, associated, or allied companies, corporations, firms, entities, organizations, or joint ventures, as now or hereafter constituted, for which Medtronic plc has the responsibility of placing insurance.

©Chubb. 2016. All rights reserved.

Exhibit B

---

POLICY NUMBER:  ISA H25295304

Endorsement Number:  19

**INTERLINE**
**IL 09 13 04 98**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## INSURANCE INSPECTION SERVICES
## EXEMPTION FROM LIABILITY

## THE FOLLOWING LIMITS OUR LIABILITY

We, the insurance company, our agents, employees, or service contractors, are not liable for damages from injury, death or loss occurring as a result of any act or omission in the furnishing of or the failure to furnish insurance inspection services related to, in connection with or incidental to the issuance or renewal of a policy of property or casualty insurance.

This exemption from liability does not apply:

A. If the injury, loss or death occurred during the actual performance of inspection services and was proximately caused by our negligence, or by the negligence of our agents, employees or service contractors;

B. To any inspection services required to be performed under the provisions of a written service contract or defined loss prevention program;

C. In any action against us, our agents, or service contractors for damages proximately caused by our acts or omissions which are determined to constitute a crime, actual malice or gross negligence; or

D. If we fail to provide this written notice to the insured whenever the policy is issued or when new **policy forms** are issued upon renewal.

Copyright, Insurance Services Office, Inc.,  1997

Exhibit B

POLICY NUMBER: ISA H25295304    Endorsement Number: 20

IL 00 21 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
(Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

   "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

   "Nuclear facility" means:

      (a) Any "nuclear reactor";

      (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

      (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

      (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

   "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

   "Property damage" includes all forms of radioactive contamination of property.

POLICY NUMBER: ISA H25295304

Endorsement Number: 21

**COMMERCIAL AUTO**
CA 99 03 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

**B. Who Is An Insured**

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:
   a. War, including undeclared or civil war;
   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily Injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

**D. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**E. Changes In Conditions**

The Conditions are changed for Auto Medical Payments Coverage as follows:

1. The Transfer Of Rights Of Recovery Against Others To Us Condition does not apply.

2. The reference in Other Insurance in the Auto Dealers and Business Auto Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

Exhibit B

POLICY NUMBER: ISA H25295304

1
Endorsement Number: 22

COMMERCIAL AUTO
CA 99 54 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COVERED AUTO DESIGNATION SYMBOL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

| Named Insured: Medtronic plc |
| --- |
| Endorsement Effective Date: |

**Section I – Covered Autos** in the Business Auto and Motor Carrier Coverage Forms and **Section I – Covered Autos Coverages** in the Auto Dealers Coverage Form are amended by adding the following:

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols may be used (in addition to the numerical symbols described in the Coverage Form) to describe the "autos" that may be covered "autos". The entry of one of these symbols next to a coverage on the Declarations will designate the only "autos" that are covered "autos".

| Symbol | | Description Of Covered Auto Designation Symbols |
| --- | --- | --- |
| | | For use with the Business Auto Coverage Form |
| 10 | = | All owned or hired autos; Only those "autos" for which you have agreed under written contract executed prior to loss to provide Medical Payments Coverage |
| | | For use with the Auto Dealers Coverage Form |
| 32 | = | |

| Symbol | | Description Of Covered Auto Designation Symbols |
| --- | --- | --- |
| | | For use with the Motor Carrier Coverage Form |
| 72 | = | |
| 73 | = | |

CA 99 54 10 13      © Insurance Services Office, Inc., 2011      **Page 1 of 1**

Exhibit B

---

POLICY NUMBER: ISA H25295304

1
Endorsement Number: 23

COMMERCIAL AUTO
CA 99 33 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYEES AS INSUREDS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following is added to the **Section II – Covered Autos Liability Coverage, Paragraph A.1. Who Is An Insured** provision:

Any "employee" of yours is an "insured" while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.

CA 99 33 10 13      © Insurance Services Office, Inc., 2011      **Page 1 of 1**

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 24

**COMMERCIAL AUTO**
CA 20 55 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## FELLOW EMPLOYEE COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The **Fellow Employee Exclusion** contained under the **Covered Autos Liability Coverage** does not apply.

CA 20 55 10 13          © Insurance Services Office, Inc., 2011          Page 1 of 1

Exhibit B

---

POLICY NUMBER: ISA H25295304

1
Endorsement Number: 25

**COMMERCIAL AUTO**
CA 99 16 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HIRED AUTOS SPECIFIED AS COVERED AUTOS YOU OWN

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: Medtronic plc |
|---|
| Endorsement Effective Date: |

**SCHEDULE**

| Description Of Auto: |
|---|
| All autos hired for a period of 180 days or longer |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** Any "auto" described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire, borrow or lease.

**B. Changes In Covered Autos Liability Coverage**

The following is added to the **Who Is An Insured** provision:

While any covered "auto" described in the Schedule is rented or leased to you and is being used by or for you, its owner or anyone else from whom you rent or lease it is an "insured" but only for that covered "auto".

CA 99 16 10 13          © Insurance Services Office, Inc., 2011          Page 1 of 1

Exhibit B

POLICY NUMBER:  ISA H25295304

2
Endorsement Number: 26

COMMERCIAL AUTO
CA 20 01 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LESSOR – ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Named Insured:  Medtronic plc | |
| Endorsement Effective Date: | |

**SCHEDULE**

| | | |
|---|---|---|
| Insurance Company:   ACE American Insurance Company | | |
| Policy Number:   ISA H25295304 | Effective Date:   05/01/2020 | |
| Expiration Date:   05/01/2021 | | |
| Named Insured:   Medtronic plc | | |
| Address:   710 Medtronic Parkway<br>Lc110<br>Minneapolis MN 55432 | | |
| Additional Insured (Lessor):   Any Lessor whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss. | | |
| Address: | | |
| Designation Or Description Of "Leased Autos":   All autos leased by you | | |

| Coverages | Limit Of Insurance | |
|---|---|---|
| Covered Autos Liability | $2,000,000 | Each "Accident" |
| Comprehensive | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus<br>$              Deductible For Each Covered "Leased Auto" | |
| | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus | |

| Collision | $ | Deductible For Each Covered "Leased Auto" |
|---|---|---|
| Specified<br>Causes Of Loss | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus<br>$              Deductible For Each Covered "Leased Auto" | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, the **Who Is An Insured** provision under **Covered Autos Liability Coverage** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   a. You;

   b. Any of your "employees" or agents; or

   c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

CA 20 01 10 13                © Insurance Services Office, Inc., 2011                Page 1 of 2

Page 2 of 2                © Insurance Services Office, Inc., 2011                CA 20 01 10 13

Exhibit B

Exhibit B

**NEW MEXICO AMENDATORY ENDORSEMENT: UNINSURED/UNDERINSURED MOTORISTS**

| Named Insured Medtronic plc | | | Endorsement Number 27 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H252R5304 | Policy Period 05/01/2020 TO 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**BUSINESS AUTOMOBILE COVERAGE FORM**
**TRUCKERS COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**GARAGE COVERAGE FORM**

It is hereby agreed and understood that the Uninsured Motorist and Underinsured Motorists limits and coverage, including coverage rejection, are amended in accordance with the insured's selections on ILU037 or ILU038.

Authorized Agent

DA-24986 (05/08)                                                                 Page 1 of 1

Exhibit B

---

**STATE OF NORTH DAKOTA AMENDATORY ENDORSEMENT**
**UNINSURED/UNDERINSURED MOTORISTS COVERAGE REJECTION**

| Named Insured Medtronic plc | | | Endorsement Number 28 |
|---|---|---|---|
| Policy Symbol ISA | Policy Number H252R5304 | Policy Period 05/01/2020 TO 05/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**BUSINESS AUTOMOBILE COVERAGE FORM**
**AUTO DEALERS COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**EXCESS BUSINESS AUTO COVERAGE FORM**
**EXCESS TRUCKERS COVERAGE FORM**

It is agreed and understood that Uninsured Motorists and/or Underinsured Motorists Coverage provided under the North Dakota Uninsured Motorist Insurance endorsement attached to this policy does not apply to vehicles weighing more than 20,000 pounds.

Authorized Representative

DA-27455a (10/13)                                                               Page 1 of 1

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 29

**COMMERCIAL AUTO**
CA 01 75 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ARIZONA CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Arizona, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Changes In Conditions**

The **Concealment, Misrepresentation Or Fraud** General Condition is replaced by the following:

**2. Concealment, Misrepresentation Or Fraud**

We will not pay for any "loss" or damage in any case involving misrepresentations, omissions, concealment of facts or incorrect statements:

a. That are fraudulent;

b. That are material either to the acceptance of the risk, or to the hazard assumed by us; and

c. Where, if the true facts had been known to us as required either by the application for the policy or otherwise, we in good faith would either:

(1) Not have issued the policy;

(2) Not have issued the policy in as large an amount; or

(3) Not have provided coverage with respect to the hazard resulting in the "loss".

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 30

**COMMERCIAL AUTO**
CA 02 05 05 14

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ARIZONA CHANGES – NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following is added to the **Cancellation** Common Policy Condition and supersedes any provision to the contrary:

**Nonrenewal**

1. If we decide not to renew this Policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal at least 30 days before the expiration or anniversary date of this Policy.

2. We will mail or deliver our written notice to the first Named Insured's last address known to us.

3. We will not mail or deliver this written notice if:

a. You have requested or agreed to nonrenewal;

b. This Policy is expressly designated as nonrenewable;

c. You have failed to pay a premium when due;

d. We have offered to issue a renewal policy;

e. You have insured elsewhere; or

f. You have specifically requested termination.

4. If notice is mailed, proof of mailing is sufficient proof of notice.

---

Exhibit B

Exhibit B

POLICY NUMBER: ISA H25295304    Endorsement Number: 31

**COMMERCIAL AUTO**
**CA 01 62 10 13**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ARKANSAS CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Arkansas, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

Paragraph 2.b.(4) of the **Who Is An Insured** Provision of the Auto Dealers Coverage Form does not apply.

**B. Changes In Physical Damage Coverage**

If collision coverage, comprehensive coverage or specified causes of loss coverage is provided by this Coverage Form on at least one covered "auto", then a temporary substitute vehicle is also a covered "auto". A temporary substitute vehicle means any "auto" you do not own which is provided for your use with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

1. Breakdown;
2. Repair; or
3. Servicing.

**C. Changes In Conditions**

1. The **Appraisal For Physical Damage Loss** Condition is replaced by the following:

   **Appraisal For Physical Damage Loss**

   If you and we disagree on the amount of "loss", either party may make a written request for an appraisal of the "loss". However, an appraisal will be made only if both you and we agree, voluntarily, to have the loss appraised. If so agreed, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If we submit to an appraisal, we will still retain our right to deny the claim.

   An appraisal decision will not be binding on either party.

2. The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

   We will be entitled to recovery only after the "insured" has been fully compensated for the "loss" or damage sustained.

3. The **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are changed by adding the following:

   When the following applies:

   a. This Coverage Form and any other Coverage Form or policy providing liability, physical damage, uninsured and underinsured motorists coverage apply to an "auto" in a given "accident"; and

   b. This Coverage Form provides coverage to an "insured" who:

      (1) Is engaged in the business of providing primarily private passenger vehicles to the public under a rental agreement for a period not to exceed 90 days and rents or leases the "auto" to an individual;

      (2) Is a duly licensed automobile dealer loaning an "auto" as a temporary replacement to a person whose "auto" is out of use because of its breakdown, repair or servicing; or

      (3) Is a duly licensed automobile dealer and loans the "auto" out for use as a demonstrator "auto"; and

   c. The other Coverage Form provides coverage to a person who is not working for, and not employed by, a business described in Paragraph b.(1), b.(2) or b.(3) above and who, at the time of the "accident", is operating an "auto" provided by a business described in Paragraph b.(1), b.(2) or b.(3) above;

then the other Coverage Form is primary and this Coverage Form is excess over any coverage available to the person described in Paragraph C.3.c.

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 32

**COMMERCIAL AUTO**
**CA 04 24 10 13**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALIFORNIA AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

**B. Who Is An Insured**

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

**D. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage form, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

**E. Changes In Conditions**

The Conditions are changed for Auto Medical Payments Coverage as follows:

1. The Transfer Of Rights Of Recovery Against Others To Us Condition does not apply.

2. The reference in Other Insurance in the Auto Dealers and Business Auto Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, adoption, marriage or registered domestic partnership under California law, who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 33

**COMMERCIAL AUTO**
**CA 01 43 05 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, California, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following are added to the **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form and supersede any provisions to the contrary:

1. When this Coverage Form and any other Coverage Form or policy providing liability coverage apply to an "auto" and:

   **a.** One provides coverage to a Named Insured engaged in the business of selling, repairing, servicing, delivering, testing or road-testing "autos"; and

   **b.** The other provides coverage to a person not engaged in that business; and

   **c.** At the time of an "accident", a person described in Paragraph **1.b.** is operating an "auto" owned by the business described in Paragraph **1.a.**, then that person's liability coverage is primary and the Coverage Form issued to a business described in Paragraph **1.a.** is excess over any coverage available to that person.

2. When this Coverage Form and any other Coverage Form or policy providing liability coverage apply to an "auto" and:

   **a.** One provides coverage to a Named Insured engaged in the business of selling, repairing, servicing, delivering, testing or road-testing "autos"; and

   **b.** The other provides coverage to a person not engaged in that business; and

   **c.** At the time of an "accident", an "insured" under the Coverage Form described in Paragraph **2.a.** is operating an "auto" owned by a person described in Paragraph **2.b.**, then the Coverage Form issued to the business described in Paragraph **2.a.** is primary and the liability coverage issued to a person described in Paragraph **2.b.** is excess over any coverage available to the business.

3. When this Coverage Form and any other Coverage Form or policy providing liability coverage apply to a "commercial vehicle" and:

   **a.** One provides coverage to a Named Insured, who in the course of business, rents or leases "commercial vehicles" without operators; and

   **b.** The other provides coverage to a person other than as described in Paragraph **3.a.**; and

   **c.** At the time of an "accident", a person who is not the Named Insured of the Policy described in Paragraph **3.a.**, and who is not the agent or "employee" of such Named Insured, is operating a "commercial vehicle" provided by the business covered by the Coverage Form or policy described in Paragraph **3.a.**, then the liability coverage provided by the Coverage Form or policy described in Paragraph **3.b.** is primary, and the liability coverage provided by the Coverage Form or policy described in Paragraph **3.a.** is excess over any coverage available to that person.

4. Notwithstanding Paragraph **A.3.**, when this Coverage Form and any other Coverage Form or policy providing liability coverage apply to a power unit and any connected "trailer" or "trailers" and:

   **a.** One provides coverage to a Named Insured engaged in the business of transporting property by "auto" for hire; and

   **b.** The other provides coverage to a Named Insured not engaged in that business; and

   **c.** At the time of an "accident", a power unit is being operated by a person insured under the Coverage Form or policy described in Paragraph **4.a.**, then that Coverage Form or policy is primary for both the power unit and any connected "trailer" or "trailers" and the Coverage Form or policy described in Paragraph **4.b.** is excess over any other coverage available to such power unit and attached "trailer" or "trailers".

**B.** As used in this endorsement:

"Commercial vehicle" means an "auto" subject to registration or identification under California law which is:

1. Used or maintained for the transportation of persons for hire, compensation or profit;

2. Designed, used or maintained primarily for the transportation of property; or

3. Leased for a period of six months or more.

POLICY NUMBER: ISA H25295304

Endorsement Number: 34

**COMMERCIAL AUTO**
**CA 04 40 10 13**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COLORADO AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred for services rendered within three years from the date of the "accident".

**B. Who Is An Insured**

1. You while "occupying", maintaining or using, or, while a pedestrian, when struck by, any "auto".

2. If you are an individual, any "family member" while "occupying", maintaining or using, or, while a pedestrian, when struck by, any "auto".

3. Anyone else "occupying", maintaining or using a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

**D. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage form, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

**E. Changes In Conditions**

1. The Conditions are changed as follows:

   a. The **Transfer Of Rights Of Recovery Against Others To Us** Condition does not apply.

   b. The reference in **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form to "other collectible insurance" applies only to other collectible auto medical payments insurance.

2. The following is added to the Conditions:

   **Assignment Of Payment Of Covered Expenses**

   a. An "insured" may assign payments due under auto medical payments coverage, in writing, to a licensed hospital or other licensed health care provider as defined in COLO. REV. STAT. § 10-4-601, an occupational therapist as defined in COLO. REV. STAT. § 12-40.5-103 or a massage therapist as defined in COLO. REV. STAT. § 12-35.5-103.

   b. If an "insured" assigns such benefits, we will pay covered benefits directly to the licensed healthcare provider.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

POLICY NUMBER:  ISA H25295304

Endorsement Number:  35

**COMMERCIAL AUTO**
CA 01 13 10 13

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COLORADO CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Colorado, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Changes In Conditions**

**A.** The last paragraph in the Other Insurance Condition in the Auto Dealers and Business Auto Coverage Forms and the last paragraph in the Other Insurance Condition in the Motor Carrier Coverage Form are replaced by the following:

When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, the loss will be paid in accordance with the following method:

1. All applicable policies will pay on an equal basis until the policy with the lowest limit of insurance is exhausted.

2. If any loss remains and there:

   **a.** Are two or more remaining policies whose applicable limits of insurance have not been exhausted, then such policies will continue to pay in accordance with Paragraph 1.; or

   **b.** Is one remaining policy, then such policy will continue to pay until its limit of insurance has been exhausted.

**B.** The following condition is added:

If the "insured's" whereabouts for service of process cannot be determined through reasonable effort, the "insured" agrees to designate and irrevocably appoint us as the agent of the "insured" for service of process, pleadings or other filings in a civil action brought against the "insured" or to which the "insured" has been joined as a defendant or respondent in any Colorado court if the cause of action concerns an incident for which the "insured" can possibly claim coverage. Subsequent termination of the insurance policy does not affect the appointment for an incident that occurred when the policy was in effect. The "insured" agrees that any such civil action may be commenced against the "insured" by the service of process upon us as if personal service had been made directly on the "insured". We agree to forward all communications related to service of process to the last-known e-mail and mailing address of the policyholder in order to coordinate any payment of claims or defense of claims that are required.

CA 01 13 10 13 — © Insurance Services Office, Inc., 2012 — Page 1 of 1

Exhibit B

---

POLICY NUMBER:  ISA H25295304

Endorsement Number:  36

IL 01 25 11 13

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COLORADO CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Colorado law.

**B.** Under the Commercial Automobile Coverage Part, the term "family member" is replaced by the following and supersedes any other provisions to the contrary:

"Family member" means a person related to:

1. The individual Named Insured by blood, adoption, marriage or civil union recognized under Colorado law, who is a resident of such Named Insured's household, including a ward or foster child;

2. The individual named in the Schedule by blood, adoption, marriage or civil union recognized under Colorado law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage -- Broadened Coverage For Named Individuals endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Colorado law, who is a resident of your household, including a ward or foster child.

IL 01 25 11 13 — © Insurance Services Office, Inc., 2013 — Page 1 of 1

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 37

**COMMERCIAL AUTO**
CA 01 07 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONNECTICUT CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Connecticut, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. The following is added to **Who Is An Insured:**

   If you are an individual, your "family member" is an "insured" while using any covered "auto" you own.

2. **Coverage Extensions** is amended as follows:

   a. Paragraph **a.(2)** of Supplementary Payments is replaced by the following:

   (2) Up to $250 for the cost of bail bonds (including bonds for related traffic law violations). We do not have to furnish these bonds.

   b. **Supplementary Payments** is amended by the addition of the following:

   (7) We will pay all expenses incurred by an "insured" for first aid to others at the time of an "accident".

   (8) At your request we will issue (or arrange for the issuance of) a bond to release attachments. The amount of the bond will not exceed the limit of liability stated in the policy.

3. The **Fellow Employee** Exclusion is replaced by the following:

   **Fellow Employee**

   "Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business. However, we will cover "bodily injury" caused by your "employee" to his fellow "employee".

4. The **Care, Custody Or Control** Exclusion does not apply to "property damage" to a residence or private garage caused by a covered "auto" of the private passenger type.

**B. Changes In Conditions**

**Other Insurance** is changed as follows:

   a. If you are other than an "auto" dealer or repairer, Covered Autos Liability Coverage applies to and is primary for any temporary substitute for an "auto" you own if the substitute "auto" is operated by an "insured" and owned by an "auto" dealer or repairer.

   b. If you are an "auto" dealer or repairer, Covered Autos Liability Coverage is excess for an "auto" you own if operated by a customer to whom you have loaned the "auto".

**C. Changes In Auto Medical Payments Coverage**

Exclusion **C.8.** does not apply.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 38

**COMMERCIAL AUTO**
CA 01 90 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONNECTICUT CHANGES – LIABILITY OF MUNICIPALITIES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Connecticut, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

The **Expected Or Intended Injury** Exclusion is changed by the addition of the following:

This exclusion does not apply to "bodily injury" or "property damage" caused by an "employee" while acting in the performance of his or her duties and within the scope of his or her employment, unless such "bodily injury" or "property damage" is the result of any wilful or wanton act of such "employee" in the discharge of such duty.

**B. Changes In Definitions**

The definition of "accident" is replaced by the following:

"Accident" includes:

   a. Continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage"; and

   b. Incidents in which "bodily injury" or "property damage" is caused by an "employee" while acting in the performance of his or her employment, if the "bodily injury" or "property damage" was not the result of any wilful or wanton act of such "employee" in the discharge of such duty.

---

Exhibit B

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 39

COMMERCIAL AUTO
CA 21 57 03 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONNECTICUT UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Connecticut, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| Named Insured: Medtronic plc |
| --- |
| Endorsement Effective Date: |

## SCHEDULE

| Limit Of Insurance | | |
| --- | --- | --- |
| Uninsured Motorists Coverage: | $ See DA40002 | Each "Accident" |
| Underinsured Motorists Coverage: | $ See DA40002 | Each "Accident" |
| If indicated by an "X" in the box to the left or in the Declarations, Underinsured Motorists Conversion Coverage applies. | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle".

2. We will pay only after all liability bonds or policies have been exhausted by judgments or payments.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":
   a. The Named Insured and any "family members".
   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

This insurance does not apply to any of the following:

1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of an "underinsured motor vehicle".

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by:
   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or
   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or
   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

4. "Bodily injury" sustained by:
   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form;
   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form; or
   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

5. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

6. Punitive or exemplary damages.

7. "Bodily injury" arising directly or indirectly out of:
   a. War, including undeclared or civil war;
   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Or Underinsured Motorists Coverage shown in the Schedule or Declarations.

   The coverage limit for Uninsured And Underinsured Motorists Coverage applies separately to damages caused by an "accident" with an "uninsured motor vehicle" and an "underinsured motor vehicle".

2. The Limit of Insurance shall be reduced by:

   a. All sums paid or payable under any workers' compensation or similar law.

   b. All sums paid to "insureds" because of "bodily injury" by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

**E. Changes in Conditions**

The Conditions are changed for Connecticut Uninsured And Underinsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   If there is other applicable similar insurance available under one or more policies or provisions of coverage:

   a. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary, secondary or excess basis.

   b. Subject to Paragraph 1.a. above, with respect to "bodily injury" to an "insured" while:

      (1) "Occupying" a vehicle owned by that "insured", only the Uninsured/Underinsured Motorists Coverage applicable to that vehicle will apply, and no other policies or provisions of coverage will apply.

      (2) "Occupying" a vehicle not owned by that "insured", or while not "occupying" any vehicle, the following priorities of recovery apply:

| First | The Uninsured/Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
| Second | Any Coverage Form or policy affording Uninsured/Underinsured Motorists Coverage to the "insured" as an individual Named Insured. |
| Third | Any Coverage Form or policy affording Uninsured/Underinsured Motorists Coverage to the "insured" as a "family member". |

c. With respect to the second and third priorities, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all limits applicable on the same level of priority.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved; and

   b. Promptly send us copies of the legal papers if a "suit" is brought.

3. **Legal Action Against Us** is replaced by the following:

   **Legal Action Against Us**

   a. No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

   b. Any legal action against us under this Coverage Form must be brought within three years after the date of the "accident".

   c. Paragraph 3.b. above of this condition does not apply if, within three years after the date of the "accident", we and the "insured" agree to arbitration in accordance with the provisions of this Coverage Form.

4. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

   **Transfer Of Rights Of Recovery Against Others To Us**

   a. With respect to damages caused by an "accident" with an "uninsured motor vehicle":

      (1) If any person or organization has rights to recover damages from another, that person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

      (2) If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

      (3) If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

   b. With respect to damages caused by an "accident" with an "underinsured motor vehicle", the **Transfer Of Rights Of Recovery Against Others To Us** Condition does not apply.

5. The following condition is added:

   **Arbitration**

   a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle", or do not agree as to the amount of damages, then the matter may be arbitrated. Both parties must agree to arbitration. If the amount of damages the "insured" demands is $40,000 or less, both parties will select a single arbitrator. Each party will pay the expenses it incurs and bear the expenses of the arbitrator equally. If the amount of damages the "insured" demands is more than $40,000, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

   b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by the arbitrator(s) will be binding.

**F. Underinsured Motorists Conversion Coverage**

If the Schedule or Declarations indicates that Underinsured Motorists Conversion Coverage applies, the following provisions apply:

1. The definition of "underinsured motor vehicle" is replaced by the following:

   "Underinsured motor vehicle" means a land motor vehicle or "trailer" for which the sum of all payments received by or on behalf of the "insured", from or on behalf of anyone who is legally responsible, is less than the fair, just and reasonable damages of the "insured".

2. With respect to coverage provided under the above definition of "underinsured motor vehicle", Paragraph 2. of the **Limit Of Insurance Provision** does not apply.

**G. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   a. To which no bodily injury liability bond or policy applies at the time of the "accident";

   b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must either:

      (1) Hit an "insured", a covered "auto" or a vehicle the "insured" is "occupying"; or

      (2) Cause "bodily injury" to the "insured" without physical contact with the "insured", a covered "auto" or a vehicle the "insured" is "occupying". However, in such cases, the "insured" must prove by a fair preponderance of the evidence that the "bodily injury" resulted from the negligence of an unidentified motorist.

However, "uninsured motor vehicle" does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or who becomes insolvent and cannot provide the amounts required by that motor vehicle law;

   b. Owned by a governmental unit or agency; or

   c. Designed for use mainly off public roads while not on public roads.

4. "Underinsured motor vehicle" means a land motor vehicle or "trailer" for which the sum of all bodily injury liability bonds or policies applicable at the time of the "accident" is less than the Limit of Insurance of this coverage.

However, "underinsured motor vehicle" does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law;

   b. Owned by a governmental unit or agency;

   c. Designed for use mainly off public roads while not on public roads; or

   d. For which an insuring or bonding company denies coverage or is or becomes insolvent.

---

POLICY NUMBER:  ISA H25295304

Endorsement Number:  40

**COMMERCIAL AUTO**
CA 01 77 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DELAWARE CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Delaware, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Changes In Covered Autos Liability Coverage**

**The Expected Or Intended Injury Exclusion** is replaced by the following:

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". However, this exclusion does not apply for amounts up to the limits of liability required by the Delaware Financial Responsibility Law.

---

POLICY NUMBER:  ISA H25295304

Endorsement Number:  41

**COMMERCIAL AUTO**
CA 02 55 02 20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DELAWARE CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Delaware, the Coverage Form is changed as follows:

**A.** Paragraphs **2.** and **5.** of the **Cancellation Common Policy Condition** are replaced by the following:

**2.** If this Policy has been in effect for less than 60 days, we may cancel this Policy for any reason subject to the following:

We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 60 days before the effective date of cancellation if we cancel for any other permissible reason.

**5.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata.

If the first Named Insured cancels, the refund may be less than pro rata. If the first Named Insured cancels, we will refund the unearned premium only if one of the following has occurred:

**a.** The first Named Insured has other liability insurance in effect on the covered "auto" that provides at least the minimum limits required by the Delaware Insurance Code for liability and No-fault Coverage;

**b.** The covered "auto" is no longer owned by the first Named Insured;

**c.** The covered "auto" is no longer operable or capable of being repaired so as to become operable; or

**d.** The first Named Insured becomes self-insured under the provisions of the Delaware Insurance Code.

The cancellation will become effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation Common Policy Condition:**

**7. Cancellation Of Policies In Effect For 60 Days Or More**

**a.** If this Policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this Policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

**(3)** Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

**(4)** Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

**(5)** Fraudulent acts against us by the insured or its representative that materially affect the nature of the risk insured;

**(6)** Lack of cooperation from the insured on loss control matters materially affecting insurability of the risk;

**(7)** Loss of or substantial changes in applicable reinsurance;

**(8)** Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal; or

**(9)** Bona fide loss of or reduction in available insurance capacity if we give 60 days' written notice to the first Named Insured and the Insurance Commissioner.

**b.** If we cancel this Policy based on Paragraph **7.a.(1)** above, we will mail or deliver a written notice, to the first Named Insured and any person entitled to notice under this Policy, at least 10 days before the effective date of cancellation. If we cancel this Policy for any other reason listed above, we will mail or deliver a written notice to the first Named Insured and any person entitled to notice under this Policy at least 60 days before the effective date of such cancellation.

**c.** Notice will be sent to the last mailing addresses known to us, by:

**(1)** Certified mail; or

**(2)** USPS Intelligent Mail barcode (IMb).

**C.** The following condition is added:

**Nonrenewal**

**1.** If we decide not to renew this Policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least 60, but not more than 120, days before the expiration date, or the anniversary date if this is a policy written for a term of more than one year with no fixed expiration date.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us:

**a.** Certified mail; or

**b.** USPS Intelligent Mail barcode (IMb).

 © Insurance Services Office, Inc., 2019
Exhibit B

 © Insurance Services Office, Inc., 2019
Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 42

**COMMERCIAL AUTO**
CA 22 08 11 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DELAWARE PERSONAL INJURY PROTECTION ENDORSEMENT

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Delaware, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| Named Insured: Medtronic plc |
| Endorsement Effective Date: |

**SCHEDULE**

| The following Limit of Compensation shall apply as indicated below: | | | |
|---|---|---|---|
| | Personal Injury Protection For "Bodily Injury" | Limit Of Compensation | Premium |
| ☐ | Single Limit | $30,000 Each "Accident" | $ |
| ☐ | Or Split Limits | $15,000 Each Person $30,000 Each "Accident" | $ |
| | A Personal Injury Protection coverage deductible of  $ applies to you or you and "family members" as indicated below: | | |
| ☐ | You | | |
| ☐ | You And "Family Members" | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. Coverage**

**1. Personal Injury Protection**

We will pay, in accordance with Del. Code Ann. Tit. 21, Chapter 21, Subchapter 1, Personal Injury Protection benefits to or for the benefit of the "injured person" who sustains "bodily injury" caused by an "accident" arising out of the ownership, maintenance or use of a "motor vehicle" as a motor vehicle and incurred within two years from the date of the "accident".

Subject to the limits shown in the Schedule, these Personal Injury Protection benefits consist of:

**a.** Medical expenses. Reasonable expenses for necessary medical, hospital, dental, surgical, x-ray, ambulance, and professional nursing services, prosthetic devices and nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

**b.** Funeral expenses. Reasonable and necessary expenses for professional funeral services and all customary charges, which may include a burial plot.

**c.** Loss of earnings. Any amount actually lost, net of taxes on income which would have applied, by reason of inability to work and earn wages or salary or their equivalents that would otherwise have been earned in the normal course of an "injured person's" employment but not other income, that loss of earnings does not include any loss after the death of an "injured person".

**d.** Substitute service expenses. Reasonable and necessary extra expense for personal services which would have been performed by the "injured person" had he or she not been injured.

**2. Damage To Property Other Than A Motor Vehicle**

We will pay in accordance with Del. Code Ann. Tit. 21, Chapter 21, Subchapter 1, for accidental damage which occurs during the policy period to property damaged in an "accident" involving the "insured motor vehicle", other than damage to a "motor vehicle".

**B. Who Is An Insured**

**1.** You.

**2.** If you are an individual, any "family member".

**3.** Any person while "occupying" the "insured motor vehicle".

**4.** Any person injured in an "accident" involving the "insured motor vehicle", other than an occupant of another "motor vehicle".

**C. Exclusions**

**1. Personal Injury Protection**

We will not pay Personal Injury Protection benefits for "bodily injury" sustained by:

**a.** Any person while the "motor vehicle" is used as a public or livery conveyance to the extent that the limits of liability for this coverage exceed the limits of liability required by the Financial Responsibility Law of the State of Delaware, unless such use is specifically declared and described in the Coverage Part. This includes, but is not limited to, any period of time a "motor vehicle" is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the "motor vehicle".

**b.** Any person while "occupying" a "motor vehicle" located for use as a residence or premises.

**c.** Any person resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

**d.** Any person due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing.

**e.** Any person while operating the "insured motor vehicle" without your express or implied consent.

**f.** Any person if such person's conduct contributed to his or her "bodily injury" under any of the following circumstances:

**(1)** Causing "bodily injury" to himself or herself intentionally; or

**(2)** While committing a felony.

**g.** Any person, other than you or any "family member", while a pedestrian, if the accident occurs outside the State of Delaware.

**h.** You or any "family member" while "occupying" or while a pedestrian arising out of the ownership, maintenance or use of any "motor vehicle" (other than the "insured motor vehicle") with respect to which the insurance required by the Delaware Motorists Protection Act is in effect.

i. You or any "family member" while "occupying" or while a pedestrian arising out of the ownership, maintenance or use of any "motor vehicle" owned by or furnished or available for the regular use of you or any "family member" if such "motor vehicle" is not an "insured motor vehicle".

**2. Damage To Property Other Than A Motor Vehicle**

We will not pay benefits for:

a. Damage to any property while the "insured motor vehicle" is being used as a public or livery conveyance to the extent that the limits of liability for this coverage exceed the limits of liability required by the Financial Responsibility Law of the State of Delaware, unless such use is specifically declared and described in the Coverage Part.

b. Damage to any property while the "insured motor vehicle" is located for use as a residence or premises.

c. Damage to any property resulting from radioactive contamination.

d. Damage to any property due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to the foregoing.

e. Damage to any property while the "insured motor vehicle" is used without your permission or implied consent.

f. Damage to aircraft, watercraft, self-propelled mobile equipment and to any property in or upon any of the aforementioned.

g. Damage to any property in or upon any "motor vehicle".

h. Damage to any property owned by, rented to or leased by you or any "family member".

**D. Limit Of Insurance**

**1. Personal Injury Protection**

Regardless of the number of persons insured, policies applicable, claims made, premiums paid or "insured motor vehicles" to which this coverage applies, the total limit of compensation payable by us under this coverage is as follows, provided that, the payment for funeral expenses included in the following shall in no event exceed $5,000 for any one person:

a. If the Schedule indicates a single limit of compensation, the total limit of compensation payable by us under this coverage for all loss and expense arising out of "bodily injury" as a result of any one "accident" shall be $30,000. We will apply the limit of compensation to provide any separate limits required by law for personal injury protection benefits.

b. If the Schedule indicates an "each person" and "each accident" limit of compensation, the total limit of compensation payable by us under this coverage for all loss and expense arising out of "bodily injury" sustained by one "injured person" as the result of any one "accident" shall be $15,000 and, subject to the above provision respecting one "injured person", the total limit of compensation payable by us for all loss and expense arising out of "bodily injury" sustained by two or more "injured persons" as the result of any one "accident" shall be $30,000.

The total amount of any applicable deductible shall be deducted from the total amount of all sums which we are obligated to pay for all loss and expense arising out of "bodily injury" sustained by one or more "injured persons" to whom such deductible applies as the result of any one "accident" and, subject to the foregoing, the total limit of compensation payable by us with respect to loss and expense of such "injured person" or persons shall be the difference between such deductible amount and the limit of compensation specified in the Coverage Part.

**2. Damage To Property Other Than A Motor Vehicle**

Regardless of the number of persons insured, policies applicable, claims made, premiums paid or "insured motor vehicles" to which this coverage applies, the total limit of compensation payable by us under this coverage for all damage to property as the result of any one "accident" shall be $10,000.

**E. Changes In Conditions**

The Conditions are changed for Delaware Personal Injury Protection Coverage as follows:

**1. Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are replaced by the following:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt written notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "injured person's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "injured person" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "injured person's" own cost.

(2) Immediately send us copies of any demand, notice, summons or legal paper received concerning the claim or "suit".

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

(4) Authorize us to obtain medical reports, copies of records and loss of earnings information or other pertinent information.

(5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

(6) As promptly as practical and in no event more than two years after expenses are incurred, give us written proof of claim, under oath if required.

c. If an "injured person" or his or her legal representative institutes legal action for damages for "bodily injury", he or she must promptly give us a copy of the summons and complaint or other process served in connection with the legal action.

d. If there is "loss" to an "insured motor vehicle" or its equipment, you must also do the following:

(1) Promptly notify the police if the "insured motor vehicle" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the "insured motor vehicle" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the "insured motor vehicle" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

e. In the event of loss to property other than a motor vehicle:

(1) The property shall be protected and any further loss due to failure to protect shall not be recoverable under this coverage; reasonable expenses incurred affording such protection shall be deemed incurred at our request; and

(2) Within 91 days after loss, sworn proof of loss in such form and including such information as we may reasonably require shall be filed with us and, upon our request, the damaged property shall be exhibited and the owner or bailee thereof shall submit to examination under oath.

**2. Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are amended by the addition of the following:

For damage to property other than a "motor vehicle", this coverage does not apply if there is other valid and collectible property coverage covering a loss which would otherwise be covered by this coverage unless the owner or operator of the "insured motor vehicle" would be legally liable for such damage under applicable principles of tort law. The question of whether such owner or operator would be legally liable shall be resolved by arbitration.

**3. Policy Period, Coverage Territory** is amended by the addition of the following:

For damage to property other than a "motor vehicle", we cover "accidents" and "losses" occurring during the policy period shown in the Declarations and in the State of Delaware.

The following conditions are added:

**Coordination And Nonduplication**

**1.** For Personal Injury Protection benefits, no "injured person" shall recover duplicate Personal Injury Protection payments for the same elements of loss under this or any other similar automobile coverage or for any benefits provided under any workers' compensation law.

**2.** For Personal Injury Protection benefits, this coverage is excess to any other similar automobile coverage available:

**a.** To an "injured person" as a result of "bodily injury" sustained while "occupying", or while a pedestrian arising out of the ownership, maintenance or use of any vehicle other than a "motor vehicle" with respect to which the security required under the Delaware Motorists Protection Act is in effect; or

**b.** To an "injured person", other than a resident of the State of Delaware, as a result of "bodily injury" sustained while "occupying" the "insured motor vehicle" if the "accident" occurs outside the State of Delaware.

**3.** Any automobile medical payments coverage and any uninsured motorists coverage provided under this Policy are excess over any benefits available, or which would be available but for the application of a deductible, under the coverage provided for Personal Injury Protection and for Damage To Property Other Than A Motor Vehicle.

**Dental Or Surgical Procedures, Medical Expense And Loss Of Earnings**

For Personal Injury Protection benefits, any expenses for dental or surgical procedures, medical expenses including related treatment and "loss of earnings", the necessity of which have been medically ascertained and verified in writing as being necessary by a qualified medical practitioner within two years from the date of the "accident", which are impossible or impractical to perform during that period, shall be treated as if incurred within two years from the date of the "accident". We shall have the option to pay such expenses either at the time such expenses are ascertained or at the time they are incurred. The amount of loss of earnings payable in connection with such dental or surgical procedures shall be limited to the period of time that is reasonably necessary to recover from such procedures but not to exceed 90 days.

**Arbitration**

We shall submit to arbitration any claim for Personal Injury Protection benefits provided by this endorsement, and any claim for damage to a "motor vehicle", including loss of use of such vehicle; provided the person claiming loss or damage shall make a written request for arbitration to the Insurance Commissioner of the State of Delaware within 90 days from the date an offer of settlement or denial of coverage or liability has been made by us.

**Statutory Provision**

Notwithstanding any of the terms and conditions of the Policy, the coverage afforded under this insurance is, subject to its terms and conditions, at least as extensive as the minimum coverage required by Del. Code Ann. Tit. 21, Chapter 21, Subchapter 1.

**F. Additional Definitions**

**1.** The definition of "auto" in the **Definitions** section does not apply. The following definition of "motor vehicle" applies instead:

**a. Personal Injury Protection**

"Motor vehicle" means a land motor vehicle, including a trailer or semitrailer used therewith, designed to travel upon public roads in, upon or by which any person or property is or may be transported or drawn upon a public highway, except devices moved by human or animal power or used exclusively upon stationary rails or tracks.

**b. Damage To Property Other Than A Motor Vehicle**

"Motor vehicle" means a land motor vehicle, including a trailer or semitrailer used therewith, designed to travel upon public roads in, upon or by which any person or property is or may be transported or drawn upon a public highway, except devices moved by human or animal power or used exclusively upon stationary rails or tracks. "Motor vehicle" also includes self-propelled mobile equipment.

**2.** The definition of "insured" in the **Definitions** section does not apply. The following definition of "injured person" applies instead:

"Injured person" means:

**a.** Any person injured while "occupying" the "insured motor vehicle";

**b.** Any person injured in an "accident" involving the "insured motor vehicle"; or

**c.** You or any "family member" injured while a pedestrian or while "occupying" any "motor vehicle", other than the "insured motor vehicle".

**3.** As used in this endorsement:

**a.** "Family member" means members of your immediate family not having a separate household and persons actually residing with and economically dependent upon you.

**b.** "Insured motor vehicle" means:

**(1)** For Personal Injury Protection, a "motor vehicle" owned by you to which the bodily injury Covered Autos Liability Coverage of the Coverage Part applies and which is registered in the State of Delaware.

**(2)** For Damage To Property Other Than A Motor Vehicle, a "motor vehicle" owned by you to which the property damage Covered Autos Liability Coverage of the Coverage Part applies and which is registered in the State of Delaware.

**c.** "Occupying" means in, upon, getting in, on, out or off.

**d.** "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

POLICY NUMBER: ISA H25295304

Endorsement Number: 43

COMMERCIAL AUTO
CA 01 40 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DISTRICT OF COLUMBIA CHANGES

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Suspension Of Auto-related Coverages**

In accordance with the requirements of District of Columbia law, all "auto"-related coverages provided by this Coverage Form shall be suspended for you or any "family member" who operates any vehicle during any period when that person's driver's license is suspended or revoked.

**B. Changes In Auto Medical Payments Coverage**

Any amount payable under this coverage shall be reduced by any amount paid or payable under any Personal Injury Protection Coverage for the same element of loss.

**C. Additional Definitions**

As used in this endorsement:

"Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 44

COMMERCIAL AUTO
CA 02 63 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DISTRICT OF COLUMBIA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. The Cancellation Common Policy Condition** does not apply. The following condition applies instead:

**Ending This Policy**

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation. At least five days before sending notice to the first Named Insured, we will notify the agent or broker, if any, who wrote the policy.

3. If this policy has been in effect for 60 days or less and is not a renewal of a policy we issued, we may cancel this policy for any reason.

4. If this policy has been in effect more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The registration of a covered auto has been suspended or revoked during the policy period and this results in no covered "auto" being validly registered;

   **c.** An insured's license has been suspended or revoked during the policy period.

5. Notice of cancellation will state the effective date of cancellation. The policy will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**Nonrenewal**

1. If we decide not to renew or continue this policy we will mail or deliver to the first Named Insured written notice at least 30 days before the end of the policy period. At least five days before sending notice to the agent or broker, if any, we will notify the agent or broker, if any, who wrote the policy. Failure to pay the required renewal or continuation premium when due shall mean that the first Named Insured has not accepted our offer.

2. If the first Named Insured obtains other insurance this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail by post office receipt secured or certified mail or deliver our notice of cancellation or nonrenewal to the last mailing addresses known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 45

**COMMERCIAL AUTO**
CA 21 49 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DISTRICT OF COLUMBIA UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, the District of Columbia, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: Medtronic plc |
| Endorsement Effective Date: |

**SCHEDULE**

| Limit Of Insurance: $See DA40002 | Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The definition of "uninsured motor vehicle" in this endorsement applies in its entirety unless an "X" is entered below:

☐ If an "X" is entered in this box, Paragraph b. of the definition of "uninsured motor vehicle" does not apply.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" or "property damage", caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle", we will pay this coverage only if Paragraph a. or b. below applies:

   a. The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of a vehicle described in Paragraph b. of the definition of "underinsured motor vehicle" and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

   c. The Named Insured for "property damage" only.

**C. Exclusions**

This insurance does not apply to any of the following:

1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" in accordance with the procedure described in Paragraph A.2.b.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. The direct or indirect benefit of any insurer of property.

4. "Bodily injury" sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

5. "Property damage" to an "auto" or to property contained in an "auto" owned by the Named Insured which is not a covered "auto".

6. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

7. "Property damage" for which the "insured" has been or is entitled to be compensated by other property or physical damage insurance.

8. The first $200 of the amount of "property damage" to the property of each "insured" as the result of any one "accident".

9. Punitive or exemplary damages.

10. "Bodily injury" or "property damage" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage shown in the Schedule or Declarations.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form, Medical Payments Coverage endorsement or Personal Injury Protection Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

3. We will not pay for "property damage" that is paid or payable under Physical Damage Coverage.

**E. Changes In Conditions**

The Conditions are changed for Uninsured Motorists Coverage as follows:

1. Other Insurance in the Auto Dealers and Business Auto Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

   b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

   c. If coverage under this Coverage Form is provided:

      (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

      (2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. Duties In The Event Of Accident, Claim, Suit Or Loss in the Business Auto and Motor Carrier Coverage Forms and Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions in the Auto Dealers Coverage Form are changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved.

   b. Promptly send us copies of the legal papers if a "suit" is brought.

   c. A person seeking coverage from an insurer, owner, or operator of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such vehicle.

3. Transfer Of Rights Of Recovery Against Others To Us is replaced by the following:

   **Transfer Of Rights Of Recovery Against Others To Us**

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

   Our rights do not apply under this provision with respect to damages caused by an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" if we:

   a. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle"; and

   b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

   If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

   a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

   b. We also have a right to recover the advanced payment.

4. The following condition is added:

   **Arbitration**

   a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", the "insured" may request that the claim be resolved by the Board of Consumer Claims Arbitration for the District of Columbia. However, disputes concerning coverage under this endorsement may not be arbitrated. If we agree to arbitrate before the Board, the Board may hear and decide the matter. A decision reached by the Board will be binding.

   b. However, if we do not agree to arbitration before the Board, the Board will not arbitrate the matter. In such case, either party may make a written demand for arbitration under the provisions of this Paragraph b. However, disputes concerning coverage under this endorsement may not be arbitrated. If a demand for arbitration under this Paragraph b. is made, each party will select an arbitrator. The two arbitrators will select a third arbitrator. If they cannot agree within 30 days on the selection of a third arbitrator, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally. A decision agreed to by two or more of the arbitrators will be binding.

**F. Additional Definitions**

As used in this endorsement:

1. "Property damage" means destruction of:

   a. A covered "auto";

b. Property contained in the covered "auto" and owned by the Named Insured or, if the Named Insured is an individual, any "family member"; or

c. Property contained in the covered "auto" and owned by anyone else "occupying" the covered "auto".

2. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by District of Columbia law;

b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" where bodily injury or property damage liability bond(s) or policy(ies) are insufficient to pay the "economic loss" up to the applicable limit of Uninsured Motorists Coverage shown in the Schedule or in the Declarations.

"Economic loss" as used in this Provision b. means:

(1) With respect to bodily injury, economic detriment incurred as a result of an accident resulting in injury, consisting of and limited to medical and rehabilitation expenses, work loss inclusive of replacement services loss, and death benefits. However, "economic loss" does not include pain, suffering, inconvenience, physical or mental impairment, and other nonpecuniary damage recoverable under the tort law applicable to injury arising out of the maintenance or use of a motor vehicle.

(2) With respect to property damage, direct and accidental loss or damage to a covered "auto" or property contained in the covered "auto".

c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

d. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

b. Owned by a governmental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 46

**COMMERCIAL AUTO**
CA 01 28 06 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. Covered Autos Liability Coverage is changed as follows:

Paragraph (5) of a. Supplementary Payments under Coverage Extensions in the Auto Dealers, Business Auto and Motor Carrier Coverage Forms is replaced by the following:

We will pay for the "insured":

(5) All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

B. Physical Damage Coverage is changed as follows:

1. No deductible applies under Specified Causes Of Loss or Comprehensive Coverage for "loss" to glass used in the windshield.

2. All other Physical Damage Coverage provisions will apply.

C. Paragraph 1. of Loss Conditions, Appraisal For Physical Damage Loss, is replaced by the following:

1. Appraisal For Physical Damage Loss

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss", the opposing party may, prior to appraisal, demand mediation of the dispute in accordance with the Mediation provision contained in this endorsement. The mediation must be completed before a demand for appraisal can be made. In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

---

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**D. The General Conditions are amended as follows:**

1. The following is added to the **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms, and Other Insurance – Primary And Excess Provisions Condition in the Motor Carrier Coverage Form:

   a. When this Coverage Form and any other Coverage Form or policy providing liability coverage applies to an "auto" and:

      (1) One provides coverage to a lessor of "autos" for rent or lease; and

      (2) The other provides coverage to a person not described in Paragraph **D.1.a.(1);**

   then the Coverage Form or policy issued to the lessor described in Paragraph **D.1.a.(1)** is excess over any insurance available to a person described in **D.1.a.(2)** if the face of the lease or rental agreement contains, in at least 10 point type, the following language:

   > The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by FLA. STAT. SECTION 324.021(7) and FLA. STAT. SECTION 627.736.

2. The following condition is added to the Auto Dealers, Business Auto and Motor Carrier Coverage Forms:

   **Mediation**

   1. In any claim filed by an "insured" with us for:

      a. "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

      b. "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

      c. "Loss" to a covered "auto" or its equipment, in any amount;

      either party may make a written demand for mediation of the claim prior to the institution of litigation.

   2. A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

   3. The request must state:

      a. Why mediation is being requested.

      b. The issues in dispute, which are to be mediated.

   4. The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

   5. Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

   6. The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 47

**COMMERCIAL AUTO**

**CA 02 67 06 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraph **A.2.b.** of the Common Policy Conditions, **Cancellation**, is replaced by the following:

   b. 45 days before the effective date of cancellation if we cancel for any other reason.

**B.** Paragraphs **A.4.** and **A.5.** of the Common Policy Conditions, **Cancellation**, are replaced by the following:

   4. Notice of cancellation will state the effective date of, and reason(s) for, the cancellation. The policy period will end on that date.

   5. If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this Policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

**C.** The following is added to Paragraph **A.** of the Common Policy Conditions, **Cancellation**:

   7. If this Policy provides Personal Injury Protection, Property Damage Liability Coverage or both and:

      a. It is a new or renewal policy, it may not be cancelled by the first Named Insured during the first 60 days immediately following the effective date of the Policy or renewal, except for one of the following reasons:

         (1) The covered "auto" is completely destroyed such that it is no longer operable;

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

---

(2) Ownership of the covered "auto" is transferred; or

(3) The Named Insured has purchased another policy covering the motor vehicle insured under this Policy.

b. It is a new policy, we may not cancel it during the first 60 days immediately following the effective date of the Policy for nonpayment of premium unless a check used to pay us is dishonored for any reason or any other type of premium payment is subsequently determined to be rejected or invalid.

D. The following condition is added:

Nonrenewal

1. If we decide not to renew or continue this Policy, we will mail you notice at least 45 days before the end of the policy period. If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

2. If we fail to mail proper notice of nonrenewal and you obtain other insurance, this Policy will end on the effective date of that insurance.

3. Notice of nonrenewal will state the reason(s) for the nonrenewal and the effective date of nonrenewal. The policy period will end on that date.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 48

**COMMERCIAL AUTO**
CA 22 10 02 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| |
|---|
| **Named Insured:** Medtronic plc |
| **Endorsement Effective Date:** |

We agree with the "named insured", subject to all the provisions of this endorsement and to all of the provisions of the Policy except as modified herein, as follows that:

**SCHEDULE**

Any Personal Injury Protection deductible shown in the Declarations of  $

is applicable to ☐ the following "named insured" only:

☐ each "named insured" and each dependent "family member".

☐ Work loss for "named insured" does not apply.

☐ Work loss for "named insured" and dependent "family member" does not apply.

| Benefits | Limit Per Person |
|---|---|
| Total Aggregate Limit for all Personal Injury Protection Benefits, except Death Benefits | $10,000 |
| Death Benefits | $5,000 |
| Medical Expenses | 80% of medical expenses subject to the total aggregate limit and the provisions of Paragraphs D.2.a. and b. under Limit Of Insurance. |
| Work Loss | 60% of work loss subject to the total aggregate limit |
| Replacement Services Expenses | subject to the total aggregate limit |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## A. Coverage

We will pay Personal Injury Protection benefits in accordance with the Florida Motor Vehicle No-fault Law to or for an "insured" who sustains "bodily injury" in an "accident" arising out of the ownership, maintenance or use of a "motor vehicle". Subject to the limits shown in the Schedule, these Personal Injury Protection benefits consist of the following:

### 1. Medical Expenses

a. All reasonable "medically necessary" expenses for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, including prosthetic devices. However, we will pay for these benefits only if the "insured" receives initial services and care within 14 days after the "motor vehicle" "accident" that are:

(1) Lawfully provided, supervised, ordered or prescribed by a licensed physician, dentist or chiropractic physician;

(2) Provided in a hospital or in a facility that owns, or is wholly owned by, a hospital; or

(3) Provided by a person or entity licensed to provide emergency transportation and treatment;

as authorized by the Florida Motor Vehicle No-fault Law.

b. Upon referral by a licensed health care provider described in Paragraph A.1.a.(1), (2) or (3), follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to Paragraph A.1.a., if provided, supervised, ordered or prescribed only by a licensed:

(1) Physician, osteopathic physician, chiropractic physician or dentist; or

(2) Physician assistant or advanced registered nurse practitioner, under the supervision of such physician, osteopathic physician chiropractic physician or dentist;

as authorized by the Florida Motor Vehicle No-fault Law.

Follow-up services and care may also be provided by:

(3) A licensed hospital or ambulatory surgical center;

(4) An entity wholly owned by one or more licensed physicians, osteopathic physicians, chiropractic physicians or dentists; or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(5) An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(6) A licensed physical therapist, based upon referral by a provider described in Paragraph A.1.b.; or

(7) A health care clinic licensed under the Florida Health Care Clinic Act:

(a) Which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities or the Accreditation Association for Ambulatory Health Care, Inc.; or

(b) Which:

(i) Has a licensed medical director;

(ii) Has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(iii) Provides at least four of the following medical specialties:

i. General medicine;

ii. Radiography;

iii. Orthopedic medicine;

iv. Physical medicine;

v. Physical therapy;

vi. Physical rehabilitation;

vii. Prescribing or dispensing outpatient prescription medication; or

viii. Laboratory services;

as authorized by the Florida Motor Vehicle No-fault Law.

However, with respect to Paragraph A.1., medical expenses do not include massage or acupuncture, regardless of the person, entity or licensee providing the massage or acupuncture;

### 2. Replacement Services Expenses

With respect to the period of disability of the injured person, all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his or her household.

### 3. Work Loss

With respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person; and

### 4. Death Benefits

## B. Who Is An Insured

1. The "named insured".

2. If the "named insured" is an individual, any "family member".

3. Any other person while "occupying" a covered "motor vehicle" with the "named insured's" consent.

4. A "pedestrian" if the "accident" involves the covered "motor vehicle".

## C. Exclusions

We will not pay Personal Injury Protection benefits for "bodily injury":

1. Sustained by the "named insured" or any "family member" while "occupying" any "motor vehicle" owned by the "named insured" that is not a covered "motor vehicle".

2. Sustained by any person while operating the covered "motor vehicle" without the "named insured's" expressed or implied consent;

3. Sustained by any person, if such person's conduct contributed to his or her "bodily injury" under any of the following circumstances:

a. Causing "bodily injury" to himself or herself intentionally; or

b. While committing a felony;

4. To the "named insured" or any "family member" for work loss if an entry in the Schedule or Declarations indicates that coverage for work loss does not apply;

5. To any "pedestrian", other than the "named insured" or "family member", not a legal resident of the state of Florida;

6. To any person, other than the "named insured", if that person is the "owner" of a "motor vehicle" for which security is required under the Florida Motor Vehicle No-fault Law;

7. To any person, other than the "named insured", or any "family member", who is entitled to personal injury protection benefits from the owner of a "motor vehicle" that is not a covered "motor vehicle" under this insurance or from the "owner's" insurer; or

8. To any person who sustains "bodily injury" while "occupying" a "motor vehicle" located for use as a residence or premises.

## D. Limit Of Insurance

1. Regardless of the number of persons insured, policies or bonds applicable, premiums paid, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits, available under the Florida Motor Vehicle No-fault Law from all sources combined, including this Policy, for or on behalf of any one person who sustains "bodily injury" as the result of any one "accident", shall be:

a. $10,000 for medical expenses, work loss and replacement services; and

b. $5,000 for death benefits.

2. Subject to Paragraph D.1.a., we will pay:

a. Up to $10,000 for medical expenses, if a licensed physician, dentist, physician assistant or an advanced registered nurse practitioner authorized by the Florida Motor Vehicle No-fault Law has determined that the "insured" had an "emergency medical condition"; or

b. Up to $2,500 for medical expenses, if any health care provider described in Paragraph A.1.a. or A.1.b. has determined that the "insured" did not have an "emergency medical condition".

3. Any amount paid under this coverage will be reduced by the amount of benefits an injured person has been paid or is entitled to be paid for the same elements of "loss" under any workers' compensation law.

 © Insurance Services Office, Inc., 2017

Exhibit B

 © Insurance Services Office, Inc., 2017

Exhibit B

4. If personal injury protection benefits, under the Florida Motor Vehicle No-fault Law, have been received from any insurer for the same elements of loss and expense benefits available under this Policy, we will not make duplicate payments to or for the benefit of the injured person. The insurer paying the benefits shall be entitled to recover from us its pro rata share of the benefits paid and expenses incurred in handling the claim.

5. The deductible amount shown in the Schedule will be deducted from the total amount of expenses and losses listed in Paragraphs **A.1.**, **A.2.** and **A.3.** of this endorsement before the application of any percentage limitation for each "insured" to whom the deductible applies. The deductible does not apply to the death benefit.

6. Any amount paid under this coverage for medical expenses shall be limited by the medical fee schedule prescribed by the Florida Motor Vehicle No-fault Law.

**E. Changes In Conditions**

The **Conditions** are changed for **Personal Injury Protection** as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

   Compliance with the following duties is a condition precedent to receiving benefits.

   In the event of an "accident", the "named insured" must give us or our authorized representative prompt written notice of the "accident".

   If any injured person or his or her legal representative institutes a legal action to recover damages for "bodily injury" against a third party, a copy of the summons, complaint or other process served in connection with that legal action must be forwarded to us as soon as possible by the injured person or his or her legal representative.

   A person seeking personal injury protection benefits must, as soon as possible, give us written proof of claim, under oath if required, containing full particulars concerning the injuries and treatment received and/or contemplated, and send us any other information that will assist us in determining the amount due and payable.

A person seeking personal injury protection benefits must submit to an examination under oath. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information.

2. **Legal Action Against Us** is replaced by the following:

   **Legal Action Against Us**

   a. No legal action may be brought against us until there has been full compliance with all terms of this Policy. In addition, no legal action may be brought against us:

      (1) Until the claim for benefits is overdue in accordance with Paragraph **F.2.** of this endorsement; and

      (2) Until we are provided with a demand letter in accordance with the Florida Motor Vehicle No-fault Law sent to us via U.S. certified or registered mail; and

      (3) With respect to the overdue claim specified in the demand letter, if, within 30 days of receipt of the demand letter, we:

         (a) Pay the overdue claim; or

         (b) Agree to pay for future treatment not yet rendered;

         in accordance with the requirements of the Florida Motor Vehicle No-fault Law.

   b. If legal action is brought against us, all claims related to the same health care provider or facility shall be brought in a single action, unless good cause can be shown why such claims should be brought separately.

3. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

   **Transfer Of Rights Of Recovery Against Others To Us**

   Unless prohibited by the Florida Motor Vehicle No-fault Law, in the event of payment to or for the benefit of any injured person under this coverage:

   a. We will be reimbursed for those payments, not including reasonable attorneys' fees and other reasonable expenses, from the proceeds of any settlement or judgment resulting from any right of recovery of the injured person against any person or organization legally responsible for the "bodily injury" from which the payment arises. We will also have a lien on those proceeds.

   b. If any person to or for whom we pay benefits has rights to recover benefits from another, those rights are transferred to us. That person must do everything necessary to secure our rights and must do nothing after loss to impair them.

   c. The insurer providing personal injury protection benefits on a private passenger "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the "owner" or the insurer of the "owner" of a commercial "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, if such injured person sustained the injury while "occupying", or while a "pedestrian" through being struck by, such commercial "motor vehicle". However, such insurer's right of reimbursement under this Paragraph **c.** does not apply to an "owner" or registrant of a "motor vehicle" used as a taxicab.

4. **Concealment, Misrepresentation Or Fraud** is replaced by the following:

   **Concealment, Misrepresentation Or Fraud**

   We do not provide coverage under this endorsement for an "insured" if that "insured" has committed, or a material act or omission, insurance fraud relating to personal injury protection coverage under this form, if fraud is admitted to in a sworn statement by the "insured" or if the fraud is established in a court of competent jurisdiction. Any insurance fraud voids all personal injury protection coverage arising from the claim with respect to the "insured" who committed the fraud. Any benefits paid prior to the discovery of the fraud are recoverable from that "insured".

5. **Policy Period, Coverage Territory** is replaced by the following:

   **Policy Period, Coverage Territory**

   The insurance under this section applies only to "accidents" which occur during the policy period:

   a. In the state of Florida;

   b. As respects the "named insured" or any "family member", while "occupying" the covered "motor vehicle" outside the state of Florida but within the United States of America, its territories or possessions or Canada; and

   c. As respects the "named insured", while "occupying" a "motor vehicle" of which a "family member" is the "owner" and for which security is maintained under the Florida Motor Vehicle No-fault Law outside the state of Florida but within the United States of America, its territories or possessions or Canada.

**F. Additional Conditions**

The following conditions are added:

**1. Mediation**

a. In any claim filed by an "insured" with us for:

(1) "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

(2) "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

(3) "Loss" to a covered "auto" or its equipment, in any amount,

either party may make a written demand for mediation of the claim prior to the institution of litigation.

b. A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

c. The request must state:

(1) Why mediation is being requested.

(2) The issues in dispute, which are to be mediated.

d. The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone, if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

e. Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

f. The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

**2. Payment Of Benefits**

Personal injury protection benefits payable under this Coverage Form, whether the full or partial amount, may be overdue if not paid within 30 days after we are furnished with written notice of the covered loss and the amount of the covered loss in accordance with the Florida Motor Vehicle No-fault Law.

However, if we have a reasonable belief that a fraudulent insurance act has been committed relating to personal injury protection coverage under this Coverage Form, we will notify the "insured" in writing, within 30 days after the submission of the claim, that the claim is being investigated for suspected fraud. No later than 90 days after the submission of the claim, we will either deny or pay the claim, in accordance with the Florida Motor Vehicle No-fault Law.

If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, will provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which will be considered a timely submission of written notice of a claim.

**3. Modification Of Policy Coverages**

Any Automobile Medical Payments Coverage and any Uninsured Motorists Coverage afforded by the Policy shall be excess over any personal injury protection benefits paid or payable.

Regardless of whether the full amount of personal injury protection benefits has been exhausted, any Medical Payments Coverage afforded by the Policy shall pay the portion of any claim for personal injury protection medical expenses which are otherwise covered but not payable due to the limitation of 80% of medical expense benefits but shall not be payable for the amount of the deductible selected.

**4. Medical Reports And Examinations; Payment Of Claim Withheld**

As soon as practicable, the person making the claim shall submit to mental and physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to, or fails to appear at, an examination, we will not be liable for subsequent personal injury protection benefits. Such person's refusal to submit to, or failure to appear at, two examinations, raises a rebuttable presumption that such person's refusal or failure was unreasonable.

Whenever a person making a claim as a result of an injury sustained while committing a felony is charged with committing that felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

**5. Provisional Premium**

In the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-fault Law providing for the exemption of persons from tort liability, the premium stated in the Declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this Policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the "named insured" pursuant to the Florida Motor Vehicle No-fault Law with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium shown in the Declarations, the "named insured" shall pay to us the excess as well as the amount of any return premium previously credited or refunded.

**6. Special Provisions For Rented Or Leased Vehicles**

Notwithstanding any provision of this coverage to the contrary, if a person is injured while "occupying", or through being struck by, a "motor vehicle" rented or leased under a rental or lease agreement which does not specify otherwise in language required by FLA. STAT. SECTION 627.7263(2) in at least 10-point type on the face of the agreement, the personal injury protection benefits available under the Florida Motor Vehicle No-fault Law and afforded under the lessor's policy shall be primary.

**7. Insured's Right To Personal Injury Protection Information**

a. In a dispute between us and an "insured", or between us and an assignee of the "insured's" personal injury protection benefits, we will, upon request, notify such "insured" or assignee that the limits for Personal Injury Protection have been reached. We will provide such information within 15 days after the limits for Personal Injury Protection have been reached.

b. If legal action is commenced, we will, upon request, provide an "insured" with a copy of a log of personal injury protection benefits paid by us on behalf of the "insured". We will provide such information within 30 days of receipt of the request for the log from the "insured".

**G. Additional Definitions**

As used in this endorsement:

**1.** "Emergency medical condition" means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

a. Serious jeopardy to "insured's" health;

b. Serious impairment to bodily functions; or

c. Serious dysfunction of any bodily organ part.

2. "Motor vehicle" means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semitrailer designed for use with such vehicle.

However, "motor vehicle" does not include:

   a. A mobile home;

   b. Any "motor vehicle" which is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit authority or a political subdivision of the state.

3. "Family member" means a person related to the "named insured" by blood, marriage or adoption, including a ward or foster child, who is a resident of the same household as the "named insured".

4. "Named insured" means the person or organization named in the Declarations of the Policy and, if an individual, shall include the spouse if a resident of the same household.

5. "Occupying" means in or upon or entering into or alighting from.

6. "Owner" means a person or organization who holds the legal title to a "motor vehicle" and also includes:

   a. A debtor having the right to possession, in the event a "motor vehicle" is the subject of a security agreement;

   b. A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more; and

   c. A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease without option to purchase, and such lease is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

7. "Pedestrian" means a person while not an occupant of any self-propelled vehicle.

8. "Medically necessary" refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing or treating an illness, injury, disease or symptom in a manner that is:

   a. In accordance with generally accepted standards of medical practice;

   b. Clinically appropriate in terms of type, frequency, extent, site and duration; and

   c. Not primarily for the convenience of the patient, physician or other health care provider.

**COMMERCIAL AUTO**
**CA 01 09 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES

For a covered "auto" licensed or principally garaged in Georgia, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Covered Autos Liability Coverage is primary for an "auto" you don't own if operated by the "insured" and owned by a retail seller of "autos".

2. If you are a retail seller of "autos", Covered Autos Liability Coverage is excess for an "auto" you own if operated by an "insured" other than you or your "employee".

3. The **Expected Or Intended Injury** Exclusion is replaced by the following:

   **Expected Or Intended Injury**

   This insurance does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

   However, this exclusion does not apply for coverage up to the minimum limit specified by the Georgia Motor Vehicle Safety Responsibility Act.

**B. Changes In Physical Damage Coverage**

1. If Collision Coverage is provided, Collision Coverage is primary for an "auto" you don't own if operated by the "insured" and owned by a retail seller of "autos".

2. If you are a retail seller of "autos", Collision Coverage is excess for an "auto" you own if operated by an "insured" other than you or your "employee".

3. The "diminution in value" Exclusion does not apply.

**C. Changes In Conditions**

1. Paragraph **A.6.** of the **Cancellation** Common Policy Condition is replaced by the following:

   6. If notice is mailed, a receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service shall be sufficient proof of notice.

2. Paragraph **2.a.** of **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

   a. In the event of "accident", claim, "suit" or "loss", we or our representative must receive prompt notice of the "accident" or "loss". Include:

   (1) How, when and where the "accident" or "loss" occurred;

   (2) The "insured's" name and address; and

   (3) To the extent possible, the names and addresses of any injured persons and witnesses.

   The requirement for giving notice of a claim, if not satisfied by the "insured" within 30 days of the date of the "accident", may be satisfied by an injured third party who, as the result of such "accident", has a claim against the "insured". However, in this event, notice of a claim given by an injured third party must be mailed to us.

**3.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

**Concealment, Misrepresentation Or Fraud**

We will not pay for any "loss" or damage in any case of:

**a.** Concealment or misrepresentation of a material fact; or

**b.** Fraud;

committed by you or any other "insured", at any time, and relating to coverage under this policy.

**4.** The last sentence in the **Appraisal For Physical Damage Loss** Condition is replaced by the following:

We do not waive any of our rights under this policy by agreeing to an appraisal.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 50

IL 02 62 02 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice; or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

---

© Insurance Services Office, Inc., 2012

CA 01 09 10 13

Exhibit B

IL 02 62 02 15

© Insurance Services Office, Inc., 2014

Exhibit B

C. The following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:

If we decide to:

1. Cancel or nonrenew this policy; or

2. Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

3. Change any policy provision which would limit or restrict coverage;

then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph D. or E. below, we will mail or deliver notice at least:

   a. 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

   b. 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

   c. 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

D. The following provisions apply to insurance covering residential real property only provided under the:

Capital Assets Program (Output Policy) Coverage Part;

Commercial Property Coverage Part;

Farm Coverage Part;

if the named insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary except as applicable as described in Paragraph E.:

1. When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

2. When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons:

   a. Nonpayment of premium, whether payable to us or to our agent;

   b. Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

   c. Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

   d. Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

   We may cancel by providing notice to the first Named Insured at least:

   (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (2) 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b., c.** or **d.** above.

E. With respect to a policy that is written to permit an audit, the following is added to the **Cancellation** Common Policy Condition:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

1. We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

2. If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

---

POLICY NUMBER:  ISA H25295304

Endorsement Number:  51

**COMMERCIAL AUTO**
**CA 01 27 04 17**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# HAWAII CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Hawaii, this endorsement modifies insurance provided under the following:

   AUTO DEALERS COVERAGE FORM
   BUSINESS AUTO COVERAGE FORM
   MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

The lead-in to Paragraph A.1.b. of the **Who Is An Insured** provision in the Business Auto and Motor Carrier Coverage Forms and the lead-in to Paragraph D.2.b. of the **Who Is An Insured** provision in the Auto Dealers Coverage Form are replaced by the following:

Anyone else is an "insured" while using a covered "auto" you own, hire or borrow with a reasonable belief that such "insured" is entitled to do so except:

**B. Changes In Conditions**

1. The **Legal Action Against Us** Condition is replaced by the following:

   No action may be brought against us under this Coverage Form until there has been full compliance with all the terms of this coverage.

   No action may be brought against us more than two years after the latest of the following:

   a. The date of the "auto" "accident";

   b. Our last payment;

   c. The entry of a final order in arbitration;

   d. The entry of final judgment in, or dismissal with prejudice of, a tort action arising from a motor vehicle "accident", where a cause of action for insurer bad faith arises out of the tort action; or

   e. Payment of liability coverage for underinsured motorists coverage claims.

2. The following is added to the **Other Insurance** Condition in the Business Auto Coverage Form:

   When this Coverage Form and any other Coverage Form or policy providing liability coverage apply to an "auto" and:

   a. One provides coverage to a Named Insured engaged in the business of renting or leasing "autos"; and

   b. The other provides coverage to a person not engaged in the business; and

   c. At the time of an "accident", a person described in Paragraph b. is operating an "auto" owned by the business described in Paragraph a., then that person's liability coverage is primary and the Coverage Form issued to a business described in Paragraph a. is excess over any coverage available to that person, provided:

   (1) The insurer providing liability coverage to a person described in Paragraph b. responds to a claim or "suit"; and

   (2) The "auto" is rented, leased or offered for rent or lease from a business described in Paragraph a. to a customer for a period of six months or less.

---

© Insurance Services Office, Inc., 2014

IL 02 62 02 15

Exhibit B

CA 01 27 04 17

Copyright, Hawaii Insurance Bureau, Inc., 2016
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

Exhibit B

**3.** The following condition is added:

**Conflict Of Provisions**

In the event that there is a conflict between the provisions of this Policy or endorsements attached and the Hawaii Motor Vehicle Insurance Law, such law shall take precedence over the provisions of the Policy or endorsements.

**C. Changes In Definitions**

The following is added to the **Definitions** section of the Auto Dealers, Business Auto and Motor Carrier Coverage Forms:

"Family member" means a person who is a resident of the Individual Named Insured's household and is either:

**1.** Related to such Named Insured by blood, marriage or adoption. This includes a ward or foster child; or

**2.** Registered with the Director of Health as a reciprocal beneficiary.

Copyright, Hawaii Insurance Bureau, Inc., 2016
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

CA 01 27 04 17

Exhibit B

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 52

**COMMERCIAL AUTO**
**CA 02 01 04 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HAWAII CHANGES – CANCELLATION AND NONRENEWAL

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Hawaii, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The **Cancellation** Common Policy Condition does not apply. The following conditions apply instead:

**A. Cancellation**

**1.** The first Named Insured may cancel the Policy by giving us advance notice of the date cancellation is to take effect.

**2.** We may cancel the Policy for either of the following reasons by mailing to the first Named Insured written notice of cancellation at least:

  **a.** 20 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if cancellation is for any other reason not prohibited by the laws of the State of Hawaii.

**3.** When this Policy has been in effect for more than 60 days, or if this is a renewal or continuation policy, we may cancel only:

  **a.** For nonpayment of premium; or

  **b.** If the driver's license of the principal operator of a covered "auto" is under suspension or revocation.

**4.** If this Policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be made within 15 days of the date cancellation becomes effective. If the first Named Insured cancels, the refund may be less than pro rata.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**B. Nonrenewal**

If we decide not to renew or continue this Policy, we will mail the first Named Insured notice at least 30 days before the end of the policy period. Such notice will include the reason(s) for nonrenewal. We have the right to not renew or continue this Policy only if:

**1.** One or more of the reasons listed in Paragraph **A.3.** of **Cancellation** exists;

**2.** The Hawaii Insurance Commissioner determines that our financial soundness would be impaired by the writing of additional policies of insurance;

**3.** We cease to write any new policies of insurance of any kind in the State of Hawaii; or

**4.** We are otherwise permitted by the laws of the State of Hawaii.

**C. Mailing Of Notices**

Any notice of cancellation or nonrenewal will be mailed, supported by a certificate of mailing properly validated by the U.S. Postal Service, to the first Named Insured's last known address. Proof of mailing of any notice will be sufficient proof of notice.

**D. Automatic Termination**

If we offer in writing to renew or continue your policy at least 30 days before the end of the policy period, and you do not accept our offer before the end of the policy period, your policy will automatically terminate. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

CA 02 01 04 17      Copyright, Hawaii Insurance Bureau, Inc., 2016
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.     

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 53

COMMERCIAL AUTO
CA 22 65 02 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HAWAII PERSONAL INJURY PROTECTION COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Hawaii, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| Named Insured: Medtronic plc |
| --- |
| Endorsement Effective Date: |

**SCHEDULE**

| Benefit: Medical Expenses | Limit Of Insurance: $10,000 per person per "accident" |
| --- | --- |
| **Deductible** | |
| ☐ If indicated to the left or in the Declarations, Personal Injury Protection benefits shall be subject to a deductible of $ | |
| This deductible shall apply to the total of all Personal Injury Protection benefits paid to the total number of "insureds", other than those described in Paragraph b. of the definition of "insured". | |
| **Copayment** | |
| ☐ If indicated to the left or in the Declarations, Personal Injury Protection benefits shall be subject to a copayment of $ applicable to you or any "family member". | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Personal Injury Protection**

We will pay, in accordance with the Hawaii Motor Vehicle Insurance Law, personal injury protection benefits for medical expenses incurred with respect to "bodily injury" sustained by an "insured" and caused by an "auto accident" arising out of the operation, maintenance or use of a covered "auto".

These benefits are subject to the provisions of the Hawaii Motor Vehicle Insurance Law. Benefits consist of the following:

All appropriate and reasonable treatment and expenses necessarily incurred as a result of accidental harm to an "insured" and which are substantially comparable to the requirements for prepaid health care plans, including medical, hospital, surgical, professional, nursing, advanced practice nursing recognized pursuant to Chapter 457, dental, optometric, chiropractic, naturopathy, acupuncture, ambulance, prosthetic services, medical equipment and supplies, products and accommodations furnished, x-ray, psychiatric, occupational therapy, rehabilitation, and if prescribed by a medical doctor, physical therapy and therapeutic massage by a licensed massage therapist.

Benefits under this section may be with copayment, and will be subject to and apply the utilization requirements applicable under prepaid health care plans, under Chapter 393 and rules of the Department of Labor and Industrial Relations, pertaining to the Prepaid Health Care Act, as of January 1, 1998. This reference to the Prepaid Health Care Act is only for purposes of describing the coverages and exclusions, without regard to any specific insurer or plan, and will not be construed to transfer coverage to prepaid health care plans.

**B. Exclusions**

We will not pay personal injury protection benefits for "bodily injury":

1. Sustained by any "family member" who is a Named Insured under another motor vehicle insurance policy, except while "occupying" a covered "auto".

2. Sustained by you or any "family member" while "occupying" an "auto" "owned by" you which is not a covered "auto".

3. Sustained by any "family member" while "occupying" an "auto" "owned by" that "family member" and for which the security required under the Hawaii Motor Vehicle Insurance Law is not in effect.

4. Sustained by any "insured" using or operating an "auto" which causes any loss:

   a. While engaged in "criminal conduct"; or

   b. While seeking to avoid lawful arrest by a law enforcement officer.

5. Sustained by you or any "family member" while "occupying", or while a pedestrian caused by, an insured "auto" other than "your covered auto".

6. Sustained outside Hawaii by any "insured" other than you or a "family member" resulting from the operation, maintenance or use of an "auto" which is:

   a. Regularly used in the business of transporting persons or property; and

   b. One of five or more autos under common ownership.

7. Resulting from hazardous properties of nuclear materials.

8. To any "insured" receiving public assistance benefits when a motor vehicle insurance policy is issued to certified public assistance recipients at no cost under the Hawaii Joint Underwriting Plan.

   "Insured" receiving public assistance benefits" means an "insured" receiving:

   a. Direct cash payments through the Department of Human Resources; or

   b. Benefits from the Social Security Supplemental Security Insurance Program.

9. To any "insured" occupying a motorcycle or motor scooter at the time of accident.

10. Arising directly or indirectly out of:

    a. War, including undeclared or civil war;

    b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C. Limit Of Insurance**

1. The Limit Of Insurance shown in the Schedule or Declarations for this coverage is our maximum Limit of Insurance for each "insured" injured in any one "auto accident". This is the most we will pay regardless of the number of:

   a. "Insureds";

Copyright, Hawaii Insurance Bureau, Inc., 2017
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

Exhibit B

Copyright, Hawaii Insurance Bureau, Inc., 2017
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

Exhibit B

b. Claims made;

c. "Autos" or premiums shown in the Declarations;

d. "Autos" involved in the "auto accident"; or

e. Insurers providing personal injury protection benefits.

2. Subject to our maximum Limit of Insurance for this coverage, our Limit of Insurance for each person for:

a. Chiropractic treatments shall not exceed the lesser of:

(1) 30 visits at not more than $75 a visit, plus five x-rays at no more than $50 each; or

(2) Treatment as defined by the Hawaii State Chiropractic Association guidelines.

b. Acupuncture treatments shall not exceed 30 visits.

c. Naturopathic treatments shall not exceed 30 visits at no more than $75 a visit.

However, the combined total of naturopathic, chiropractic and acupuncture treatments shall not exceed 30 visits.

3. Any amount payable under this insurance will be limited by the workers' compensation supplemental medical fee schedule.

4. Any amount payable under this insurance will be reduced by amounts paid, payable, or required to be provided under any workers' compensation law.

However, if an "insured's" right to collect these workers' compensation benefits is contested, resulting in a delay of those payments, we will pay personal injury protection benefits.

5. If the Schedule or Declarations indicate that:

a. The medical expenses deductible option applies, any amounts payable for the sum of medical expenses for you or any "family member" as a result of any one "auto accident" will be reduced by the amount of such deductible.

b. The medical expenses copayment option applies, any amounts payable for you or any "family member" as a result of any one "auto accident" will be reduced by such copayment after the application of any deductible.

**D. Changes In Conditions**

The Conditions are changed for Personal Injury Protection as follows:

1. Paragraph b. of the **Duties In The Event Of Accident, Claim, Suit Or Loss Condition** in the Business Auto and Motor Carrier Coverage Forms and Paragraph b. of the **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are replaced by the following:

b. A person seeking coverage must:

(1) Cooperate with us in the investigation or settlement of any claim.

(2) Submit, as often as we reasonably require, to physical or mental examinations by health care providers we select or are acceptable to us.

(3) Authorize us to obtain:

(a) Medical reports;

(b) Statements of earnings; and

(c) Other pertinent records.

(4) Submit a written proof of claim under oath when required by us, including full information on the nature of treatment received and planned.

(5) Promptly send us copies of the legal papers if a suit is brought.

2. The **Transfer Of Rights Of Recovery Against Others To Us Condition** is amended by the addition of the following:

If we make payment under this Policy and the person to or for whom payment is made recovers damages from another, we will have a lien on the proceeds of recovery and that person shall:

a. Hold in trust for us the proceeds of the recovery; and

b. Reimburse us to the extent of our payment.

For any recovery subject to this provision, which results in duplication of personal injury protection benefits already paid under this Policy, we are entitled to recover 50% of the basic statutory requirement for Personal Injury Protection benefits. However, this 50% recovery does not apply to workers' compensation.

3. The following conditions are added:

a. **Arbitration**

If we and an "insured" do not agree on any matter to a claim, either party may request arbitration as prescribed in Section 431:10C-213 of the Hawaii Motor Vehicle Insurance Law.

b. **Nonduplication Of Benefits**

No one will be entitled to duplicate payments for the same elements of loss under this coverage regardless of the number of:

(1) "Autos" covered; or

(2) Insurers (including self-insurers) providing security in accordance with the Hawaii Motor Vehicle Insurance Law.

If an "insured" is entitled to similar benefits under more than one policy, the maximum recovery under all policies will not exceed the amount payable under the policy with the highest dollar limits of benefits.

If there is other applicable similar insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

If you or a "family member" is driving a "temporary loaner vehicle" and you are in an "auto accident", this insurance is primary and any similar insurance covering the "temporary loaner vehicle" will be excess coverage.

If there is an "auto accident" while an employee of a registered repair shop or licensed motor vehicle dealer is driving or road-testing "your covered auto", this insurance is excess to any primary coverage for personal injury protection benefits available to the repair shop or dealer.

c. **Excess Provision**

In consideration of the coverage afforded under Personal Injury Protection Benefits and the adjustment of any applicable rates, any amount payable under Uninsured Motorists Coverage will be excess to the amount of personal injury protection benefits paid or payable to an "insured" whose claim for such benefits meets the requirements of the Hawaii Motor Vehicle Law.

d. **Constitutionality Provision**

If a court of competent jurisdiction declares, or enters a judgment which renders the provisions of the Hawaii Motor Vehicle Insurance Law providing for abolition of tort liability invalid or unenforceable, we are subrogated to all rights of an "insured" to whom or for whose benefit any personal injury protection benefits have been paid under this Policy to the full extent of such payments.

The "insured" shall do:

(1) Whatever is necessary to enable us to exercise our rights; and

(2) Nothing after loss to prejudice them.

**E. Additional Definitions**

As used in this endorsement:

1. "Auto" means a vehicle of the type required to be registered under Chapter 286 of Hawaii Revised Statutes or a trailer attached to an "auto" but not including motorcycles or motor scooters.

2. "Auto accident" means an accident resulting from:

a. The "operation, maintenance or use" of an "auto" as an "auto".

b. Movement of an object propelled by an "auto".

3. "Criminal conduct" means:

a. Committing an offense punishable by more than a year's imprisonment.

b. Operating or using an "auto" to intentionally cause "bodily injury" or "property damage".

c. Operating or using an "auto" as a converter without a good faith belief by the operator or user that he or she is entitled to operate or use the vehicle.

4. "Insured" means:

a. You or any "family member" injured in an "auto accident":

(1) While "occupying" an "auto"; or

(2) As a "pedestrian" when struck by an "auto".

b. Anyone else injured in an "auto accident" while "occupying" or when struck as a "pedestrian" by "your covered auto" or a "temporary loaner vehicle".

5. "Occupying" means in, upon, getting in, on, out or off.

Copyright, Hawaii Insurance Bureau, Inc., 2017
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

Copyright, Hawaii Insurance Bureau, Inc., 2017
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

Exhibit B

6. "Operation, maintenance or use" includes "occupying" but does not include:

   a. Loading or unloading unless "bodily injury" occurs next to the vehicle; or

   b. Work done in the business of repairing, servicing or otherwise maintaining vehicles unless these are done outside the premises of this business.

7. "Owned by" means that a person:

   a. Holds a legal title; or

   b. Is a debtor who has legal possession while buying a vehicle on installments; or

   c. Has legal possession and has an agreement or lease of one year or more; or

   d. Is the owner of an "auto" until on selling the "auto", title is delivered to the buyer.

8. "Pedestrian" means anyone not "occupying" an "auto".

9. "Temporary loaner vehicle" means an "auto":

   a. Available to you as a customer of a repair shop or a dealer licensed by one or more appropriate state agencies.

   b. Used by you while the garage or dealer is servicing "your covered auto".

10. "Your covered auto" means an "auto":

   a. For which you are required to maintain security under the Hawaii Motor Vehicle Insurance Law.

   b. To which "bodily injury" liability coverage under this Policy applies.

---

POLICY NUMBER:  ISA H25295304

Endorsement Number:  54

**COMMERCIAL AUTO**
CA 01 18 10 13

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# IDAHO CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Idaho, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Conditions**

The **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are revised by the addition of the following:

When this Coverage Form and any other Coverage Form or policy providing liability insurance apply to a "loaned vehicle" and:

**1.** One provides coverage to a licensed seller or dealer; and

**2.** The other provides coverage to a person not engaged in that business; and

**3.** At the time of an "accident" a person covered by a Coverage Form described in Paragraph **2.** is operating a "loaned vehicle" owned by the business described in Paragraph **1.**, then that person's liability insurance is primary and the policy issued to a business described in Paragraph **1.** is excess over any insurance available to that person.

**B. Additional Definitions**

As used in this endorsement:

"Loaned vehicle" means a motor vehicle which is provided for temporary use without charge to the operator by a licensed seller or dealer for the purpose of demonstrating the vehicle to the operator as a prospective purchaser, or as a convenience to the operator during the repairing or servicing of a motor vehicle for the operator, regardless of whether such repair or service is performed by the owner of the loaned vehicles or by some other person or business.

---

CA 22 65 02 18

Copyright, Hawaii Insurance Bureau, Inc., 2017
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

Page 5 of 5

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 55

**COMMERCIAL AUTO**
**CA 01 20 01 15**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES

For a covered "auto" licensed or principally garaged in Illinois, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Paragraph **1.b.(3)** of the **Who Is An Insured** provision does not apply.

2. The **Limit Of Insurance** provision applies except that we will apply the Covered Autos Liability Coverage Limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $25,000 for "bodily injury" to any one person caused by any one "accident";

   b. $50,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   c. $20,000 for "property damage" caused by any one "accident".

   This provision will not change our total Limit of Insurance for Covered Autos Liability Coverage.

**B. Changes In Physical Damage Coverage**

Paragraph 3. of the **Limits Of Insurance** provision is replaced by the following:

3. We may deduct for betterment if:

   a. The deductions reflect a measurable decrease in market value attributable to the poorer condition of, or prior damage to, the vehicle.

   b. The deductions are for prior wear and tear, missing parts and rust damage that are reflective of the general overall condition of the vehicle considering its age. In this event, deductions may not exceed $500.

**C. Changes In Conditions**

The Other Insurance Condition in the Business Auto Coverage Form and the Other Insurance – Primary And Excess Insurance Provisions Condition in the Motor Carrier Coverage Form are changed by the addition of the following:

Covered Autos Liability Coverage provided by this Coverage Form for any "auto" you do not own is primary if:

1. The "auto" is owned or held for sale or lease by a new or used vehicle dealership;

2. The "auto" is operated by an "insured" with the permission of the dealership described in Paragraph 1. while your "auto" is being repaired or evaluated; and

3. The Limit of Insurance for Covered Autos Liability Coverage under this Policy is at least:

   a. $100,000 for "bodily injury" to any one person caused by any one "accident";

   b. $300,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   c. $50,000 for "property damage" caused by any one "accident".

Exhibit B

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 56

**COMMERCIAL AUTO**
**CA 02 70 01 18**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. The Cancellation Common Policy Condition is replaced by the following:**

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this Policy by mailing us advance written notice of cancellation.

2. When this Policy is in effect 61 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons by mailing you written notice of cancellation, stating the reasons for cancellation.

   a. Nonpayment of premium.

   b. The Policy was obtained through a material misrepresentation.

   c. Any "insured" has violated any of the terms and conditions of the Policy.

   d. The risk originally accepted has measurably increased.

   e. Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured.

   f. A determination by the Director of Insurance that the continuation of the Policy could place us in violation of the Illinois insurance laws.

3. If we cancel for nonpayment of premium, we will mail you at least 10 days' written notice.

4. If this Policy is cancelled for other than nonpayment of premium and the Policy is in effect:

   a. 60 days or less, we will mail you at least 30 days' written notice.

   b. 61 days or more, we will mail you at least 60 days' written notice.

5. If this Policy is cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. The effective date of cancellation stated in the notice shall become the end of the policy period.

7. Our notice of cancellation will state the reason for cancellation.

8. We will mail our cancellation notice to you at your last address known to us. Proof of mailing will be sufficient proof of notice.

9. Notification of cancellation will also be sent to your broker, if known, or agent of record, if known, and to the loss payee listed on the Policy.

**B. The following is added and supersedes any provision to the contrary:**

**Nonrenewal**

If we decide not to renew or continue this Policy, we will mail you written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. Proof of mailing will be sufficient proof of notice. Notification will also be sent to your broker, if known, or agent of record, if known, and to the loss payee listed on the Policy. If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

Exhibit B

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this Policy will end on the effective date of that insurance.

POLICY NUMBER: ISA H25295304

Endorsement Number: 57

IL 01 62 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
> COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDERS ERRORS AND OMISSIONS COVERAGE FORM
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM COVERAGE PART
> FARM UMBRELLA LIABILITY POLICY
> LIQUOR LIABILITY COVERAGE PART
> MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCT WITHDRAWAL COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK COVERAGE PART

A. The provisions of Paragraph B. are added to all Insuring Agreements that set forth a duty to defend under:

1. Section I of the Commercial General Liability, Commercial Liability Umbrella, Employment-related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability, Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

2. Section II under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

3. Section III under the Auto Dealers and Motor Carrier Coverage Forms;

4. Section A. Coverage under the Legal Liability Coverage Form; and

5. Coverage **C** – Mortgageholder's Liability under the Mortgageholders Errors And Omissions Coverage Form.

Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

B. If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

© Insurance Services Office, Inc., 2017

CA 02 70 01 18

Exhibit B

IL 01 62 10 13

© Insurance Services Office, Inc., 2013

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 58

**COMMERCIAL AUTO**
CA 21 30 01 15

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Illinois, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| |
|---|
| Named Insured: Medtronic plc |
| Endorsement Effective Date: |

## SCHEDULE

| | |
|---|---|
| Limit Of Insurance: $ See DA40002 | Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability under the Coverage Form.

   d. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability under the Coverage Form.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

This insurance does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. Punitive or exemplary damages.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of those.

**D. Limit Of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

   We will apply the limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $25,000 for "bodily injury" to any one person caused by any one "accident"; and

   b. $50,000 for "bodily injury" to two or more persons caused by any one "accident".

   This provision will not change our total limit of liability.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form, Medical Payments Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

**E. Changes In Conditions**

The Conditions are changed for Uninsured Motorists Coverage as follows:

1. Other Insurance in the Auto Dealers and Business Auto Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

CA 21 30 01 15 

© Insurance Services Office, Inc., 2014 

Page 1 of 4

Exhibit B

Page 2 of 4 

© Insurance Services Office, Inc., 2014 

CA 21 30 01 15

Exhibit B

b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

c. If the coverage under this Coverage Form is provided:

(1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

(2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the **Business Auto and Motor Carrier Coverage Forms** and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the **Auto Dealers Coverage Form** are changed by adding the following:

a. Promptly notify the police if a hit-and-run driver is involved; and

b. Promptly send us copies of the legal papers if a "suit" is brought.

3. **Legal Action Against Us** is replaced by the following:

**Legal Action Against Us**

a. No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

b. Any legal action against us must be brought within two years after the date of the "accident". However, this Paragraph b. does not apply to an "insured" if, within two years after the date of the "accident", arbitration proceedings have commenced in accordance with the provisions of this Coverage Form.

4. **Transfer Of Rights Of Recovery Against Others To Us** does not apply.

5. The following conditions are added:

**Reimbursement And Trust**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

**Arbitration**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages, then the disagreement will be arbitrated. If the "insured" requests, we and the "insured" will each select an arbitrator. The two arbitrators will select a third. If the arbitrators are not selected within 45 days of the "insured's" request, either party may request that arbitration be submitted to the American Arbitration Association. We will bear all the expenses of the arbitration except when the "insured's" recovery exceeds the minimum limit specified in the Illinois Safety Responsibility Law.

If this occurs, the "insured" will be responsible for payment of his or her expenses and an equal share of the expenses of the third arbitrator up to the amount by which the "insured's" recovery exceeds the statutory minimum.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives.

c. If arbitration is submitted to the American Arbitration Association, then the American Arbitration Association rules shall apply to all matters except medical opinions. As to medical opinions, if the amount of damages being sought:

(1) Is equal to or less than the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then the American Arbitration Association rules shall apply.

(2) Exceeds the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then rules of evidence that apply in the circuit court for placing medical opinions into evidence shall apply.

In all other arbitration proceedings, local rules of law as to arbitration procedure and evidence will apply.

d. If the arbitration involves three arbitrators, a decision agreed to by two of the arbitrators will be binding for the amount of damages not exceeding the lesser of either:

(1) $75,000 for "bodily injury" to any one person/$150,000 for "bodily injury" to two or more persons caused by any one "accident"; or

(2) The Limit Of Uninsured Motorists Insurance shown in the Schedule or Declarations.

F. **Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit, or cause an object to hit, an "insured", a covered "auto" or a vehicle an "insured" is "occupying". If there is no physical contact with the hit-and-run vehicle, the facts of the "accident" must be proved.

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

b. Owned by a governmental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

POLICY NUMBER: ISA H25295304

Endorsement Number: 59

**COMMERCIAL AUTO**
CA 01 19 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## INDIANA CHANGES

For a covered "auto" licensed in, or "auto dealer operations" conducted in, Indiana, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement or to any amendment to or replacement thereof, the provisions of the Coverage Form apply unless modified by the endorsement.

**Changes In Conditions**

A. Except as provided in Paragraph **B.** of this endorsement, **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are changed by adding the following and supersedes any provision to the contrary:

If there is other applicable insurance available under one or more policies or provisions of coverage, any insurance we provide for any covered "auto" owned by an "insured" is primary and shall first be exhausted.

B. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are changed by adding the following:

1. When two Coverage Forms providing liability coverage apply to an "auto" and:

   a. One provides coverage to a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road testing, parking or storing "autos"; and

   b. The other provides coverage to a person not engaged in that business; and

   c. At the time of an "accident" a person described in **1.b.** is operating an "auto" owned by the business described in **1.a.**, then that person's liability coverage is primary and the Coverage Form issued to a business described in **1.a.** is excess over any coverage available to that person.

2. When two Coverage Forms providing liability coverage apply to an "auto" and:

   a. One provides coverage to a named insured engaged in the business of repairing, servicing, parking or storing "autos"; and

   b. The other provides coverage to a person not engaged in that business; and

   c. At the time of an "accident" an "insured" under the Coverage Form described in **2.a.** is operating an "auto" owned by a person described in **2.b.**, then the liability Coverage Form issued to the business described in **2.a.** is primary and the Coverage Form issued to a person described in **2.b.** is excess over any coverage available to the business.

CA 01 19 10 13

© Insurance Services Office, Inc., 2012

Page 1 of 1

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 60

**COMMERCIAL AUTO**
CA 01 60 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## IOWA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Changes In Conditions**

The following is added to the **Legal Action Against Us** Condition:

However, a judgment creditor shall have a right to sue us to recover an execution on a judgment returned unsatisfied against an "insured" to the same extent that such "insured" could have enforced the "insured's" claim against us had the "insured" paid such judgment, but we will not be liable for damages that are in excess of the applicable limit of insurance.

CA 01 60 10 13

© Insurance Services Office, Inc., 2012

Page 1 of 1

POLICY NUMBER: ISA H25295304

Endorsement Number: 61

**COMMERCIAL AUTO**
**CA 01 22 06 19**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KANSAS CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Kansas, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. The paragraph within **Supplementary Payments** relating to court costs taxed against the "insured" is replaced by the following:

   All costs taxed against the "insured" in any "suit" against the "insured" we defend.

2. Paragraph **2.b.(4)** of the **Who Is An Insured** provision of the Auto Dealers Coverage Form does not apply.

3. For coverage and limits required by the Kansas Financial Responsibility law, **Exclusions** is changed as follows:

   a. The Workers' Compensation Exclusion is replaced by the following:

      **Workers' Compensation**

      Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or any similar law.

   b. The **Employee Indemnification And Employers' Liability** Exclusion is replaced by the following:

      **Employee Indemnification And Employers' Liability**

      This coverage does not apply to "bodily injury" to any "employee" of the "insured" arising out of and in the course of the "employee's" employment by the "insured" or while performing duties related to the conduct of the "insured's" business if benefits are required or available for the "employee" under any workers' compensation or disability benefits law or under any similar law. This exclusion does not apply to liability assumed by the "insured" under an "insured contract".

   c. The **Fellow Employee** Exclusion is replaced by the following:

      **Fellow Employee**

      "Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

   d. The **Care, Custody Or Control** Exclusion is replaced by the following:

      **Care, Custody Or Control**

      This coverage does not apply to "property damage" to property owned by, rented to, or in charge of or transported by an "insured". However, this exclusion does not apply to "property damage" to a rented residence or private garage or to liability assumed by the "insured" under a sidetrack agreement.

   e. The following is added to the War Exclusion:

      This exclusion applies only to the extent that the limit of insurance for this coverage in this Policy exceeds the limit required by the Kansas Automobile Injury Reparations Act.

   f. The **Racing** Exclusion does not apply.

   g. The exclusion relating to "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants does not apply if the discharge, dispersal, release or escape is sudden and accidental.

4. Our Limit of Insurance applies except that we will apply the limit shown in the Declarations to first provide the separate limits required by Kansas law as follows:

   a. $25,000 for "bodily injury" to any one person caused by any one "accident";

   b. $50,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   c. $25,000 for "property damage" caused by any one "accident".

   This provision will not change our limit of insurance.

**B. Changes In Physical Damage Coverage**

1. The "Diminution In Value" Exclusion does not apply.

2. The Limits Of Insurance provision with respect to repair or replacement resulting in better than like kind or quality in any coverage form or endorsement does not apply.

**C. Changes In Conditions**

1. The following is added to the **Loss Payment – Physical Damage Coverages Condition:**

   An "auto" shall be deemed a total "loss" when such "auto" is required to be registered in this state and has been directly and accidentally wrecked or damaged to the extent that the total cost of repair is 75% or more of the fair market value, in accordance with KAN. STAT. ANN. § 8-197(b)(2).

2. The **Concealment, Misrepresentation Or Fraud** General Condition is replaced by the following:

   **Concealment, Misrepresentation Or Fraud**

   We will not pay under this coverage form if you or any other "insured" in relation to an insurance application, rating, claim or coverage under this Policy knowingly and with intent to defraud:

   a. Presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral or telephonic communication or statement which such person knows to contain materially false information concerning any material fact; or

   b. Conceals information concerning any material fact for the purpose of misleading.

Exhibit B         Exhibit B

POLICY NUMBER: ISA H25295304      Endorsement Number: 62

**COMMERCIAL AUTO**
**CA 02 65 01 16**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# KANSAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** If you are an individual and a covered "auto" you own is of the "private passenger type", and this Policy covers fewer than five "autos" and does not insure the motor vehicle hazard of garages, motor vehicle sales agencies, repair shops, service stations or public parking places, the Cancellation Common Policy Condition does not apply to that "auto". The following condition applies instead:

**Ending This Policy**

**1. Cancellation**

  **a.** You may cancel the Policy by mailing or delivering to us advance written notice of cancellation.

  **b.** We may cancel this Policy by mailing you notice of cancellation. If we cancel for nonpayment of premium, we will mail you at least 10 days' notice. If we cancel for any other reason, we will mail you at least 30 days' written notice.

  **c.** When this Policy is in effect 60 days or more or is a renewal or continuation policy, we may cancel **Covered Autos Liability Coverage and Personal Injury Protection** only for one or more of the following reasons:

    **(1)** Nonpayment of premium.

    **(2)** Fraudulent misrepresentation in obtaining this Policy.

    **(3)** The "insured" violates any terms or conditions of the Policy.

**(4)** You or any other operator who either resides in the same household or customarily operates a covered "auto":

  **(a)** Has had his or her driver's license suspended or revoked during the policy period.

  **(b)** Is or becomes subject to epilepsy or heart attacks and cannot produce a physician's certificate stating that he or she can operate a motor vehicle safely.

  **(c)** Has been convicted during the policy period or 36 months before it, for:

    **(i)** Any felony;

    **(ii)** Criminal negligence resulting in death, homicide or assault, arising from the operation of a motor vehicle;

    **(iii)** Driving a motor vehicle while intoxicated or under the influence of drugs;

    **(iv)** Leaving the scene of an "accident" without stopping to report;

    **(v)** Theft of a motor vehicle;

    **(vi)** Making false statements when applying for a driver's license; or

    **(vii)** A third moving violation, committed within a period of 18 months of:

      **i.** Any regulation limiting the speed of motor vehicles;

      **ii.** Any of the provisions in the motor vehicle laws of any state, the violation of which constitutes a misdemeanor or traffic infraction; or

      **iii.** Any ordinance, traffic infraction, or ordinance which prohibits the same acts as a misdemeanor statute of the uniform act regulating traffic on highways, whether or not the violations were repetitions of the same offense or were different offenses.

**(5)** We replace this Policy with another one providing similar coverages and the same limits for the covered "auto". The replacement policy will take effect when this Policy is cancelled, and will end a year after this Policy begins or on this Policy's expiration date, whichever is earlier.

**d.** Renewal or continuation of this Policy does not act as a waiver or estoppel of any reasons for cancellation which existed before the effective date of renewal or continuation.

**e.** If this Policy is cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**f.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**2. Nonrenewal**

  **a.** If we decide not to renew or continue this Policy, we will mail you written notice at least 30 days before the end of the policy period.

  **b.** We may not renew or continue this Policy only for one or more of the following reasons:

    **(1)** When we are required or have been permitted by the commissioner of insurance, in writing, to reduce premium volume in order to preserve our financial integrity.

    **(2)** When we cease to transact such business in this state.

    **(3)** When we are able to show competent medical evidence that the insured has a physical or mental disablement that impairs his or her ability to drive in a safe and reasonable manner.

    **(4)** When unfavorable underwriting factors, pertinent to the risk, are existent, and of a substantial nature, which could not have reasonably been ascertained by us at the initial issuance or the last renewal of the Policy.

    **(5)** When the Policy has been continuously in effect for a period of five years, provided that such five-year period shall begin at the first anniversary date following the policy effective date.

    **(6)** When any of the reasons specified as reasons for cancellation are existent.

  **c.** If we offer to renew or continue this Policy and you do not accept, this Policy will terminate at the end of the policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

  **d.** If we fail to mail proper notice of nonrenewal and you obtain other insurance, this Policy will end on the effective date of that insurance.

**3. Mailing Of Notices**

We will mail any notice of cancellation or nonrenewal by certified or registered mail, United States Post Office certificate of mailing or any other mail tracking method currently used, approved or accepted by the United States Postal Service to your last mailing address known to us. Proof of mailing will be sufficient proof of notice.

**B.** For all policies not described in Paragraph **A.** above, the **Cancellation Common Policy** Condition does not apply. The following condition applies instead:

**Ending This Policy**

**1. Cancellation**

  **a.** You may cancel the Policy by returning it to us or by giving us advance notice of the date cancellation is to take effect.

  **b.** We may cancel this Policy by mailing you written notice of cancellation, stating our reasons for cancellation. If we cancel for nonpayment of premium, we will mail you at least 10 days' notice. If we cancel for any other reason, we will mail you at least 30 days' notice.

Exhibit B

c. When this Policy is in effect for 90 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium.

(2) This Policy was issued because of material misrepresentation.

(3) Any "insured" violated any of the material terms and conditions of this Policy.

(4) Unfavorable underwriting factors, specific to the "insured", exist that were not present at the inception of this Policy.

(5) A determination by the insurance commissioner that continuation of coverage could place us in a hazardous financial condition or in violation of the laws of Kansas.

(6) A determination by the insurance commissioner that we no longer have adequate reinsurance to meet our needs.

d. The effective date of cancellation stated in the notice shall become the end of the policy period.

e. If this Policy is cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not offered a refund.

2. **Nonrenewal**

a. If we decide not to renew or continue this Policy, we will mail you written notice at least 60 days before the end of the policy period stating the reasons for nonrenewal. If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

b. If we fail to mail proper notice and you obtain other insurance, this Policy will end on the effective date of that insurance.

3. **Mailing Of Notices**

Any notice of cancellation or nonrenewal will be mailed by certified or registered mail, United States Post Office certificate of mailing or any other mail tracking method currently used, approved or accepted by the United States Postal Service to the first named insured's last mailing address known to us. Proof of mailing of any notice will be sufficient proof of notice.

4. **Notice To Director Of Vehicles**

If you are a Vehicle Dealer or Mobile Home Dealer, the following provision applies:

If the Policy is cancelled, we will notify the Director of Vehicles 30 days before the effective date of cancellation.

---

POLICY NUMBER: ISA H25295304                                      Endorsement Number: 63

COMMERCIAL AUTO
CA 22 14 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KANSAS PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Kansas, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

We agree with you, subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: | Medtronic plc |
| Endorsement Effective Date: | |

**SCHEDULE**

| Benefits | Limits |
|---|---|
| A. Medical Expenses | Up to $4,500 |
| B. Rehabilitation Expenses | Up to $4,500 |
| C. Work Loss | $900 per month maximum, up to one year maximum |
| D. Essential Service Expenses | Up to $25 per day, up to 365 days maximum |
| E. Funeral Expenses | Up to $2,000 per person |
| F. Survivor's Loss | $900 per month maximum and $25 per day essential service expenses, both up to 365 days maximum* |
| * Survivor's loss shall be paid for a period not to exceed one year after the "insured's" death, less the number of months the "insured" received work loss prior to his or her death. | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

---

## A. Coverage

We will pay Personal Injury Protection benefits in accordance with the Kansas Automobile Injury Reparations Act to or for an "insured" who sustains "bodily injury" caused by an "accident" arising out of the ownership, operation, maintenance or use of a "motor vehicle". Subject to the limits shown in the Schedule, these Personal Injury Protection benefits consist of the following:

1. **Medical Expenses.** All reasonable expenses incurred for necessary medical, surgical, X-ray and dental services, including prosthetic devices and necessary ambulance, hospital and professional nursing services, necessary health care rendered by licensed psychologists and also includes services recognized and permitted under the laws of Kansas for an "insured" who relies upon spiritual means through prayer alone for healing in accordance with such person's religious beliefs.

2. **Rehabilitation Expenses.** All reasonable expenses incurred for necessary psychiatric or psychological services, occupational therapy and such occupational training and retraining as may be reasonably necessary to enable the "insured" to obtain suitable employment.

3. **Work Loss.** Loss during the "insured's" lifetime of "monthly earnings" due to such person's inability to engage in available and appropriate gainful activity, provided the "bodily injury" sustained is the proximate cause of such liability.

4. **Essential Service Expenses.** Appropriate and reasonable expenses incurred in obtaining ordinary and necessary services in lieu of those that, but for the "bodily injury", the "insured" would have performed for the benefit of such person or such person's family.

5. **Funeral Expenses.** Funeral, burial or cremation expenses incurred.

6. **Survivor's Loss.** Total allowances to all "survivors" for:

   a. Loss after an "insured's" death of his or her "monthly earnings"; and

   b. Essential service expenses incurred after the "insured's" death, reduced by the amount of any expenses of the survivors which have been avoided by reason of the "insured's" death.

## B. Who Is An Insured

1. You if you sustain "bodily injury" while "occupying" or as a pedestrian through direct physical contact with any "motor vehicle".

2. If you are an individual, any "family member" if the "family member" sustains "bodily injury" while "occupying" or as a pedestrian through direct physical contact with any "motor vehicle".

3. Any other person who sustains "bodily injury" while "occupying" the "insured motor vehicle" or as a pedestrian through direct physical contact with the "insured motor vehicle" while not "occupying" any "motor vehicle".

## C. Exclusions

We will not pay Personal Injury Protection benefits for "bodily injury":

1. Sustained by you or any "family member" while "occupying" any "motor vehicle" owned by you which is not a covered "auto".

2. Sustained by any person operating the covered "auto" without your express or implied consent.

3. Sustained by any person if such person:

   a. Causes such "bodily injury" to him or herself intentionally;

   b. Is an intentional converter of a "motor vehicle" at the time such "bodily injury" is sustained;

   c. Is injured as a result of conduct within the course of a business of repairing, servicing or otherwise maintaining "motor vehicles" unless such conduct occurred off the business premises; or

   d. Is injured as a result of conduct in the course of loading or unloading a "motor vehicle" unless the conduct occurred while "occupying" such "motor vehicle".

4. Sustained by any person other than you if such person is the owner of a "motor vehicle" with respect to which security is required under the Kansas Automobile Injury Reparations Act.

5. Sustained by any person, other than you, injured while "occupying" or when struck by any "motor vehicle" other than a covered "auto", with respect to which the security required by the Kansas Automobile Injury Reparations Act is in effect.

6. Sustained by any person other than you or any "family member" not a resident of Kansas while not "occupying" the covered "auto".

## D. Limit Of Insurance

Regardless of the number of "insureds", policies or bonds applicable, claims made, premiums paid or covered "autos" to which this coverage applies, the most we will pay for Personal Injury Protection benefits for "bodily injury" sustained by any one person in any one "motor vehicle accident" is limited as follows:

1. Medical Expenses shall not include rehabilitation expenses. The maximum amount payable shall not exceed $4,500;

2. Rehabilitation Expenses shall not include medical expenses. The maximum amount payable shall not exceed $4,500;

3. Work Loss shall not exceed:

   a. $900 per month for a period of no more than one year after the date the "insured" first becomes unable to engage in available and appropriate gainful activity; and

   b. Shall be limited to 85% of any such work loss unless such amount payable is deemed includable in gross income for federal income tax purposes;

4. Essential Service Expenses incurred during the lifetime of the "insured" shall not exceed $25 per day for a period not to exceed 365 days after the date such expenses are first incurred;

5. Funeral Expenses shall not exceed $2,000;

6. Survivor's Loss shall not exceed $900 per month for the loss of "monthly earnings" of the "insured" and shall not exceed $25 per day for essential service expenses. All survivor's loss shall be paid for a period not to exceed one year after the "insured's" death, less the number of months the "insured" received work loss prior to his or her death.

7. Any amount payable by us under the terms of this coverage shall be reduced by the amount payable on account of such "bodily injury" under any workers' compensation law.

## E. Changes In Conditions

The Conditions are changed for Personal Injury Protection as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are amended by the addition of the following:

   a. If an "insured" or such person's legal representative or "survivors" institute legal action to recover damages for "bodily injury", such person must as soon as practicable give us a copy of the summons and complaint or other process served in connection with the legal action.

   b. The "insured" or someone on such person's behalf must as soon as practicable give us written proof of claim, including:

      (1) Full particulars of the nature and extent of the "bodily injury", treatment and rehabilitation received and contemplated; and

      (2) Such other information that will help us determine the amount due and payable.

   No claim for personal injury protection benefits shall be made after two years from the date of the "bodily injury".

2. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

   a. In the event of recovery by the "insured", such person's dependents or personal representatives by judgment, settlement or otherwise against the party causing "bodily injury" pursuant to K.S.A. Supp. 40-3117, the "insured's" rights shall be transferred to us to the extent of duplicative Personal Injury Protection benefits provided to date of such recovery. We shall have a lien against such recovery and may intervene in any action to protect and enforce such lien. The amount of any judgment in any such action, settlement or recovery otherwise recovered by the "insured", such person's dependents or personal representatives prior to the completion of Personal Injury Protection benefits otherwise actually paid and recovered which is in excess to the extent of such Personal Injury Protection benefits paid to the date of recovery of such judgment, settlement or recovery otherwise shall be credited against future payments of said Personal Injury Protection benefits.

b. In the event an "insured", such person's dependents or personal representative fails to commence an action against the party causing the "bodily injury" within 18 months after the date of the "accident" that resulted in injury, such failure shall operate as an assignment to us of any cause of action which the "insured", the dependents or personal representatives of such person may have against the party causing "bodily injury" for the purpose and to the extent of recovery of damages which are duplicative of Personal Injury Protection benefits. We may enforce the action in our name or that of the "insured", representatives or dependents of the "insured" for their benefit as their interest may appear by proper action in any court of competent jurisdiction.

c. In the event of recovery pursuant to K.S.A. 60-258a, and amendments thereto, any rights transferred to us shall be reduced by the percentage of negligence attributable to the "insured".

d. Pursuant to this section, the court shall fix attorneys' fees which shall be paid proportionately by the "insured", such person's dependents or personal representatives and us in the amounts determined by the court.

**3. Concealment, Misrepresentation Or Fraud** does not apply.

**4. Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

If no more insurers or self-insurers are liable to pay Personal Injury Protection benefits for the same injury to any one "insured", the maximum recovery under all applicable policies will not exceed the amount payable under the policy with the highest dollar limits of benefits. Personal injury protection coverage shall be provided in accordance with the following order of priorities, under the policy providing the security required by the Kansas Automobile Injury Reparations Act to:

| First | Any "motor vehicle" owned by the "insured"; |
| Second | The "motor vehicle" the "insured" was "occupying" or struck by at the time of the "accident"; or |
| Third | The covered "auto", for injury sustained by a "family member" while "occupying" or when struck by any "motor vehicle" outside the state of Kansas, who is not a "named insured" under a separate policy. |

**5. The Policy Period, Coverage Territory** Condition is replaced by the following:

This Coverage Part applies only to "accidents" which occur during the policy period:

a. In the state of Kansas; and

b. With respect to the "named insured" or "family member", while "occupying" or when struck by any "motor vehicle", outside the state of Kansas but within the United States of America, its territories or possessions, or Canada.

**6.** The following conditions are added:

**Payment Of Benefits**

Personal Injury Protection benefits payable under this Coverage Form shall be overdue if not paid within 30 days after we are furnished written notice of the fact of a covered "loss" and the amount of the covered "loss". Work loss that is payable under this Coverage Form shall be paid not less than every two weeks after such notice. If such written notice is not furnished as to the entire claim, any partial amounts supported by written notice is overdue if not paid within 30 days after such written notice is furnished. Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within 30 days after such written notice is furnished to us. All overdue payments shall bear simple interest at the rate of eighteen percent (18%) per year.

**Coordination And Nonduplication**

a. Any "auto" medical payments coverage provided under this Coverage Part shall be excess insurance over any Personal Injury Protection benefits paid or payable under this or any other "auto" insurance policy because of "bodily injury" sustained by an "insured".

b. In the event that there is a conflict between the provisions of this endorsement and the provisions of the Coverage Form to which it is attached, the provisions of the Coverage Form are superseded by the provisions of this endorsement.

c. Terms of this Coverage Form which are in conflict with the provisions of the Kansas Automobile Injury Reparations Act are hereby amended to conform to such law.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Insured motor vehicle" means a "motor vehicle" of which the "named insured" is the owner and with respect to which:

a. The "bodily injury" Covered Autos Liability Coverage of the policy applies and for which a specific premium is charged; and

b. The "named insured" is required or has elected to maintain security required under the Kansas Automobile Injury Reparations Act.

**2.** "Monthly earnings" means:

a. One-twelfth of the annual earnings, at the time the "bodily injury" was sustained, of an "insured" who is regularly employed or regularly self-employed;

b. One-twelfth of the anticipated annual earnings of an "insured" who is not regularly employed or self-employed, or who is unemployed, from the time such person would reasonably have been expected to be so employed. Anticipated annual earnings of an unemployed "insured" who has previously been employed or self-employed shall be calculated by averaging the annual compensation of such person for a period not to exceed five years preceding the year of such person's "bodily injury", during which such person was employed; or

c. With respect to Survivor's Loss in the event of death of an "insured" who was a social security recipient or a retirement or pension benefit recipient, or both, at the time of such "insured's" death, one-twelfth of the annual amount of the difference between the annual amount of social security benefits or retirement benefits, or both, which the "insured" was receiving at the time of such person's death and the annual amount of social security benefits or retirement benefits, or both, that the survivor is receiving after the time of such "insured's" death.

**3.** "Motor vehicle" means a self-propelled vehicle of a kind required to be registered in the state of Kansas including any trailer, semi-trailer, or pole trailer designed for use with such a vehicle; but shall not include a motorized bicycle.

**4.** "Named insured" means the individual named in the Declarations and also includes such person's spouse, if a resident of the same household, and also includes the owner.

**5.** "Family member" means a person related to you by blood, marriage or adoption, including a ward or foster child, who is a resident of your household, whether or not temporarily residing elsewhere.

**6.** "Occupying" means in or upon or entering into or alighting from.

**7.** "Survivor" means a deceased "insured's" spouse, or child under the age of 18 years, where such person's death resulted from a "bodily injury".

POLICY NUMBER: ISA H25295304      Endorsement Number: 64

**COMMERCIAL AUTO**
CA 21 37 06 19

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KANSAS UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Kansas, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| Named Insured: Medtronic plc |
| Endorsement Effective Date: |

**SCHEDULE**

| |
|---|
| Limit Of Insurance: $ See DA40002      Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle", we will pay under this coverage only if **a.** or **b.** below applies:

   a. The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 60 days after receipt of notification.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

This insurance does not apply to any of the following:

1. Any claim settled or judgment reached without our consent if the settlement or judgment prejudices our right to recover payment. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle".

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

4. "Bodily injury" sustained by an "insured" while "occupying" or when struck by any motor vehicle that is owned by or provided for the regular use of that "insured" for which the security required by Kansas law is not in effect.

**D. Limit Of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident", is the limit of Uninsured Motorists Insurance shown in the Schedule or Declarations. We will apply the limit shown in the Schedule or Declarations to first provide the separate limits required by Kansas law as follows:

   a. $25,000 for "bodily injury" to any one person caused by any one "accident", and

   b. $50,000 for "bodily injury" to two or more persons caused by any one "accident".

   This provision will not change our total limit of liability.

2. The limit for damages resulting from "bodily injury" caused by a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" applies separately from the limit for a vehicle described in Paragraphs **a.**, **c.** and **d.** of that definition.

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this and any Liability Coverage form, Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if the person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law or personal injury protection coverage.

4. Any amount paid under this insurance will reduce any amount an "insured" may be paid under the Coverage Form's Covered Autos Liability Coverage.

**E. Changes In Conditions**

The Conditions are changed for Uninsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are changed by addition of the following:

   a. The reference to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

   b. If there is other applicable insurance available under one or more policies or provisions of coverage, the maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

Exhibit B

Exhibit B

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver is involved.

**b.** Promptly send us copies of the legal papers if a "suit" is brought.

**c.** A person seeking Uninsured Motorists Coverage must also:

  **(1)** Notify us in writing, by certified mail, of a tentative settlement between the "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle";

  **(2)** Allow us 60 days after receipt of the written notice to advance payment to that "insured", in an amount equal to the tentative settlement, to preserve our rights against the insurer, owner or operator of such vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle".

  Such written notice shall include written documentation of all damages incurred, copies of all medical bills and written authorization or a court order to obtain reports from all employers and medical providers.

**3. Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

**a.** If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

**b.** We do not have a right of recovery with respect to damages resulting from an "accident" with a vehicle described in Paragraphs **a., c.** and **d.** of the definition of "uninsured motor vehicle" to which a liability bond or policy applies at the time of the "accident", but the bonding or insuring company is or becomes insolvent.

**c.** Our rights do not apply under this provision with respect to damages caused by an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" if we:

  **(1)** Have been given written notice by certified mail of a tentative agreement between the "insured" and the insuring company of the owner or operator of the underinsured motor vehicle to settle for liability limits; and

  **(2)** Fail to advance payments to the "insured" in an amount equal to the tentative settlement within 60 days after receipt of the notice.

  If we advance payment to the "insured" in an amount equal to the tentative settlement within 60 days after receipt of notification:

  **(1)** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

  **(2)** We also have a right to recover the advance payment.

**4. The Two Or More Coverage Forms Or Policies Issued By Us** General Condition does not apply.

**5. The Concealment, Misrepresentation Or Fraud** General Condition does not apply.

**6.** The following condition is added:

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**c.** Once arbitration is agreed to by both parties, either party has the right to bring arbitration under K.S.A. Sections 5-201 – 5-213 inclusive, in lieu of the arbitration procedure provided in this condition.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

**a.** For which no liability bond or policy at the time of an "accident" provides at least the amounts required by Kansas law;

**b.** That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of all liability bonds or policies at the time of an "accident" provides at least the amounts required by Kansas law, but their limits are less than the limit of this insurance;

**c.** For which an insuring or bonding company denies coverage or is or becomes insolvent;

**d.** For which neither the driver nor owner can be identified. The vehicle must either:

  **(1)** Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

  **(2)** Cause "bodily injury" to an "insured" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying", provided the facts of the "accident" can be corroborated by competent evidence other than the testimony of any person having a claim under this or any other similar insurance as the result of such "accident".

However, "uninsured motor vehicle" does not include any vehicle:

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.

**b.** Owned by a governmental unit or agency.

**c.** Designed for use mainly off public roads while not on public roads.

Exhibit B

POLICY NUMBER: ISA H25295304      Endorsement Number: 65

**COMMERCIAL AUTO**
**CA 01 25 10 13**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KENTUCKY CHANGES

For a covered "auto" licensed or principally garaged in Kentucky, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos**

The following is added to Paragraph C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos of Section I – Covered Autos:

If Collision Coverage is provided by the Coverage Form, any "auto" you do not own which is loaned to you as a temporary substitute for a covered "auto" you own that is out of use because of its breakdown, repair or servicing by a person, firm or corporation engaged in the business of selling, repairing and servicing "autos" is a covered "auto" for Collision Coverage.

**B. Changes In Covered Autos Liability Coverage**

The following Covered Autos Liability Coverage exclusions apply only to the extent that the limits of liability for such coverage exceed the limits of liability required by the Kentucky Motor Vehicle Reparations Act:

1. Expected Or Intended Injury;

2. Care, Custody Or Control; and

3. Pollution.

**C. Changes In Physical Damage Coverage**

No deductible applies under Comprehensive Coverage to "loss" to:

1. Glass used in the windshield, doors and windows; and

2. Glass, plastic or any other material used in lights required on an automobile by Chapter 189 of Kentucky Revised Statutes.

All other Physical Damage Coverage Provisions apply.

**D. Changes In Conditions**

1. The Concealment, Misrepresentation Or Fraud Condition is amended by the addition of the following:

However, once an "accident" has occurred while this Coverage Form is in effect, this condition does not apply to the Covered Autos Liability Coverage provided by this Coverage Form, except that we will provide Covered Autos Liability Coverage only up to the minimum limits of liability required by the Kentucky Motor Vehicle Reparations Act if you, or any other "insured", intentionally conceals or misrepresents a material fact, or commits fraud, in obtaining this policy.

2. The Other Insurance Condition in the Business Auto Coverage Form and the Other Insurance – Primary And Excess Insurance Provisions Condition in the Motor Carrier Coverage Form are changed by adding the following:

a. For a temporary substitute for an "auto" you own which is out of use because of its breakdown, repair or servicing, if the substitute "auto" is operated by an "insured" and is loaned to you, with or without consideration, by a person engaged in the business of selling, repairing and servicing "autos", Covered Autos Liability and Collision Coverages provided by this form shall be primary in the event of an "accident" or "loss" caused by the negligence of the "insured".

b. If you are engaged in the business of selling, repairing and servicing "autos", then for any "auto" you own, which is loaned to a customer, with or without consideration, as a temporary substitute for an "auto" owned by the customer which is out of use because of its breakdown, repair or servicing, Covered Autos Liability and Collision Coverages provided by this form shall be excess in the event of an "accident" or "loss" caused by the negligence of the customer.

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 66

**COMMERCIAL AUTO**
CA 22 16 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KENTUCKY PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Kentucky, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

The company will pay Personal Injury Protection benefits in accordance with Kentucky Revised Statutes Chapter 304, Subtitle 39, incurred with respect to "bodily injury" sustained by an "insured" and caused by an "accident" arising out of the operation, maintenance or use of a "motor vehicle" as a vehicle. These Personal Injury Protection benefits consist of the following:

**1. Medical Expense**

Reasonable charges incurred for reasonably needed products, services and accommodations, including those for medical care, physical rehabilitation, rehabilitative occupational training, licensed ambulance services and other remedial treatment and care, any nonmedical remedial treatment rendered in accordance with a recognized religious method of healing, and any healing arts professions of a type licensed by the Commonwealth of Kentucky, provided that medical expense shall not include that portion of a charge for a room in a hospital, clinic, convalescent or nursing home or any other institution engaged in providing nursing care and related services, in excess of a reasonable and customary charge for semiprivate accommodations, unless intensive care is medically required.

**2. Work Loss**

Loss of income from work the "insured" would probably have performed if he or she had not been injured, and expenses reasonably incurred by him or her in obtaining services in lieu of those he or she would have performed for income, reduced by any income from substitute work actually performed by him or her.

**3. Replacement Services Loss**

Expenses reasonably incurred in obtaining ordinary and necessary services in lieu of those the "insured" would have performed, not for income, but for the benefit of himself or his family if he had not been injured.

**4. Survivor's Economic Loss**

Loss after the "insured's" death of contributions of things of economic value to his "survivors", not including services they would have received from the "insured" had he not suffered the fatal injury, less expenses of the "survivors" avoided by reason of the eligible injured person's death.

**5. Survivor's Replacement Services Loss**

Expenses reasonably incurred by "survivors" after the "insured's" death in obtaining ordinary and necessary services in lieu of those the "insured" would have performed for their benefit had he not suffered the fatal injury, less expenses of the "survivors" avoided by reason of the "insured's" death and not subtracted in calculating survivor's economic loss.

**6. Funeral Expense**

Reasonable charges incurred for expenses in any way related to funeral, cremation or burial.

**B. Who Is An Insured**

**1.** The "named insured" or any "relative" who sustains "bodily injury" while "occupying" or while a "pedestrian" through being struck by any "motor vehicle", provided that, if such person has rejected the limitation upon his tort rights pursuant to Kentucky Revised Statutes Chapter 304, Subtitle 39, he shall not be an "insured", unless personal injury protection coverage has subsequently been purchased for such person under this policy; or

**2.** Any other person who sustains "bodily injury" while "occupying" or while a "pedestrian" through being struck by the "insured motor vehicle", provided that, if such person has rejected the limitation upon his tort right pursuant to Kentucky Revised Statutes Chapter 304, Subtitle 39, he shall not be an "insured".

**C. Exclusions**

We will not pay personal injury protection benefits for "bodily injury":

**1.** Sustained by the "named insured" or any "relative", who has not rejected his tort limitation pursuant to Kentucky Revised Statutes Chapter 304, Subtitle 39, while "occupying" or while a "pedestrian" through being struck by any "motor vehicle", other than the "insured motor vehicle", with respect to which the security required under Kentucky Revised Statutes Chapter 304, Subtitle 39, is in effect unless the provider of such security fails to make payment for loss within 30 days of reasonable proof of the fact and the amount of loss sustained.

**2.** Sustained by any person if such injury arises from his conduct within the course of a business of repairing, servicing or otherwise maintaining "motor vehicles" unless such conduct occurs off the business premises.

**3.** Sustained by any person arising from conduct in the course of loading or unloading any "motor vehicle" unless such conduct occurs while "occupying" such "motor vehicle".

**4.** With respect to any benefits any person would otherwise be entitled to receive hereunder for "bodily injury" intentionally caused by such person or arising out of his intentionally attempting to cause "bodily injury"; and, if any person dies as a result of intentionally causing or attempting to cause "bodily injury" to himself, his survivors are not entitled to any survivor's economic loss or survivor's replacement services loss benefits.

**5.** Sustained by any "pedestrian", other than the "named insured" or any "relative", outside the Commonwealth of Kentucky.

**6.** Sustained by any person, other than the "named insured" or any "relative", while "occupying" a "motor vehicle" which is regularly used in the course of the business of transporting persons or property and which is one of five or more "motor vehicles" under common ownership, or a "motor vehicle" owned by a government other than the Commonwealth of Kentucky, its political subdivisions, municipal corporations or public agencies, if the accident occurs outside the Commonwealth of Kentucky.

This exclusion does not apply to "bodily injury" sustained by any occupant of a bus if such occupant is a Kentucky resident, boarded the bus in Kentucky and the bus is registered in Kentucky with the security required under Kentucky Revised Statutes Chapter 304, Subtitle 39. However, this exception does not apply if the bus is owned by a government other than the Commonwealth of Kentucky, its political subdivisions, municipal corporations or public agencies.

**7.** Sustained by any person arising out of the use of any "motor vehicle" while located as a residence or premises.

**8.** Arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**9.** Resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

CA 22 16 10 13

© Insurance Services Office, Inc., 2012

Page 1 of 5

Page 2 of 5

© Insurance Services Office, Inc., 2012

CA 22 16 10 13

Exhibit B

Exhibit B

10. Sustained by any person while "occupying" a motorcycle, unless the Declarations indicates a premium for Motorcycle Personal Injury Protection Coverage.

11. Sustained by any person other than the "named insured" or any "relative" which arises from the operation, maintenance or use of a "motor vehicle" without a good faith belief that he or she is legally entitled to do so.

**D. Limit Of Insurance**

1. Regardless of the number of persons insured, policies or approved plans of self-insurance applicable, premiums paid, claims made or "insured motor vehicles" to which this coverage applies, the company's liability for personal injury protection benefits with respect to "bodily injury" sustained by any one "insured" in any one "motor vehicle" "accident" shall not exceed $10,000 in the aggregate, and subject to such aggregate limit:

   a. The maximum amount payable for work loss, replacement services loss, survivor's economic loss and survivor's replacement services loss shall not exceed $200 per week in the aggregate prorated for any lesser period, provided that, if the "insured's" earnings or work is seasonal or irregular, the weekly limit shall be equitably adjusted or apportioned on an annual basis;

   b. The maximum amount payable for funeral expense shall not exceed $1,000.

2. Any amount payable by the company under the terms of this coverage shall be reduced by any applicable deductible set forth in the Declarations, but only with respect to "bodily injury" sustained by the "named insured" or any "relative", provided that, if two or more such persons sustain "bodily injury" in the same "motor vehicle" "accident", such deductible applicable to all of them shall not exceed such deductible amount and such amount shall be allocated equally among them. Provided further that a "named insured" or "relative" is entitled to receive under this coverage the difference between this deductible and a greater deductible applicable under another policy applying to personal injury protection coverage pursuant to Kentucky Revised Statutes Chapter 304, Subtitle 39.

3. In calculating loss or expense for which personal injury protection benefits are payable under this coverage, a reduction shall be made in the amount of:

   a. All benefits or advantages a person receives or is entitled to receive from workmen's compensation, unless these benefits or advantages have not been received before personal injury protection benefits are overdue or the claim is paid.

   b. Any income tax saving resulting from benefits or advantages received for loss of income under this coverage or from like benefits or advantages received under workmen's compensation which are not considered taxable income, provided that the maximum reduction may not exceed 15% of the loss of income and shall be in lesser amount if the claimant furnishes to the company reasonable proof of a lower value of the income tax advantage.

**E. Changes In Conditions**

The Conditions are changed for Personal Injury Protection as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are amended by the addition of the following:

   a. In the event of an "accident", written notice containing particulars sufficient to identify the "insured" and also reasonably obtainable information respecting the time, place and circumstances of the "accident" shall be given by or on behalf of each "insured" to the company or any of its authorized agents as soon as practicable.

   b. As soon as practicable, the "insured" or someone on his behalf shall give the company written proof of claim, under oath if required, including full particulars of the nature and extent of the "bodily injury" treatment and rehabilitation received and contemplated and such other information as may assist the company in determining the amount due and payable. The "insured" shall submit, when required by order of a court, to a physical or mental examination by a physician specified in the court order.

2. The **Transfer Of Rights Of Recovery Against Others To Us** Condition is replaced by the following:

   **Transfer Of Rights Of Recovery Against Others To Us**

   Subject to the provisions of the Kentucky Revised Statutes Chapter 304, Subtitle 39, in the event of any payment under this coverage, the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

3. The **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form is replaced by the following:

   In the event an "insured" has other similar insurance, including approved self-insurance plans, available and applicable to the "accident", the maximum recovery under all such insurance shall not exceed the amount which would have been payable under the provisions of the insurance providing the highest dollar limit, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limit of liability of this coverage and such other insurance.

4. The following conditions are added:

   **Excess Coverages**

   a. Any amount payable under the uninsured motorists coverage shall be excess insurance over any personal injury protection benefits paid or payable under this or any other automobile insurance policy because of "bodily injury" sustained by an "insured";

   b. Any automobile medical payments or expense coverages afforded under this policy shall be excess insurance over any personal injury protection benefits paid or payable but for the application of a deductible under this or any other automobile insurance policy because of "bodily injury" sustained by an "insured".

**Nonduplication Of Benefits**

No "insured" shall recover duplicate benefits for the same elements of loss under this or any similar insurance, including approved self-insurance plans.

**Constitutionality Clause**

The premium for and the coverages of the policy have been established in reliance upon the provisions of the Kentucky Revised Statutes Chapter 304, Subtitle 39. In the event a court of competent jurisdiction declares, or enters a judgment the effect of which is to render, the provisions of such statutes invalid or unenforceable in whole or in part, the company shall have the right to recompute the premium payable for the policy, and the provisions of this endorsement shall be voidable or subject to amendment at the option of the company.

**Notice To Policyholders**

Acceptance of the coverage described in Kentucky Revised Statutes Chapter 304, Subtitle 39, places some limitations on your right to bring suit for "bodily injury". Kentucky Revised Statutes Section 304.39-060 provides in part that:

(1) Any person who registers, operates, maintains or uses a "motor vehicle" on the public roadways of this Commonwealth shall, as a condition of such registration, operation, maintenance or use of such "motor vehicle" and use of the public roadways, be deemed to have accepted the provisions of this subtitle, and in particular those provisions which are contained in this section.

(2)(a) Tort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance or use of a "motor vehicle" is 'abolished' for damages because of "bodily injury", sickness or disease to the extent the basic reparation benefits provided in this subtitle are payable therefor, or that would be payable but for any deductible authorized by this subtitle, under any insurance policy or other method of security complying with the requirements of this subtitle, except to the extent noneconomic detriment qualifies under Subsection (2)(b) hereof.

(b) In any action of tort brought against the owner, registrant, operator or occupant of a "motor vehicle" with respect to which security has been provided as required in this subtitle, or against any person or organization legally responsible for his or her acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish and inconvenience because of "bodily injury", sickness or disease arising out of the ownership, maintenance, operation or use of such "motor vehicle" only in the event that the benefits which are payable for such injury as 'medical expense' or which would be payable but for any exclusion or deductible authorized by this subtitle exceed $1,000, or the injury or disease consists in whole or in part of permanent disfigurement, a fracture to a bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of bodily function or death.

Any person who is entitled to receive free medical and surgical benefits shall be deemed in compliance with the requirements of this subsection upon a showing that the medical treatment received has an equivalent value of at least $1,000.

(c) Tort liability is not so limited for injury to a person who is not an owner, operator, maintainer or user of a "motor vehicle" within Subsection (1) of this section, nor for injury to the passenger of a motorcycle arising out of the maintenance or use of such motorcycle.

(3) Any person may refuse to consent to the limitations of his or her tort rights and liabilities as contained in this section. Such rejection must be completed in writing or electronically in a form to be prescribed by the Department of Insurance and must have been executed and filed with the Department at a time prior to any "motor vehicle" accident for which such rejection is to apply.

These are some of the exceptions to the limitations on your right to sue and are not intended to comprise a complete enumeration of all circumstances under which suit may be brought for "bodily injury".

**F. Additional Definitions**

As used in this endorsement:

1. "Named insured" means the person or organization named in the Declarations.

2. "Motor vehicle" means a vehicle as defined in Kentucky Revised Statutes Chapter 304, Subtitle 39.

3. "Insured motor vehicle" means a "motor vehicle" with respect to which:

   a. The "bodily injury" Covered Autos Liability insurance of the policy applies and for which a specific premium is charged; and

   b. The "named insured" is required to maintain security under the provisions of Kentucky Revised Statutes Chapter 304, Subtitle 39.

4. "Occupying" means in or upon, entering into or alighting from.

5. "Pedestrian" means a person who is not "occupying" a "motor vehicle" at the time the injury occurs.

6. "Relative" means the spouse and any person related to the "named insured" by blood, marriage or adoption, including a minor in the custody of the "named insured", spouse or such related person who is a resident of the same household as the "named insured", whether or not temporarily residing elsewhere, but does not include any such person who is a "named insured" under any other policy providing the security under Kentucky Revised Statutes Chapter 304, Subtitle 39.

7. "Survivor" means a person identified in Kentucky Revised Statutes Section 411.130 as one entitled to receive benefits by reason of the death of another person.

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 67

**COMMERCIAL AUTO**
CA 01 03 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. The third paragraph of **A. Coverage** is replaced by the following:

   We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

2. The lead-in to Paragraph **1.b.** of the **Who Is An Insured** provision is replaced by the following:

   Anyone else while using with your express or implied permission a covered "auto" you own, hire or borrow except:

3. Paragraph **1.b.(3)** of the **Who Is An Insured** provision is replaced by the following:

   **(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours. However, such persons are "insureds" up to the financial responsibility limits required by Louisiana Motor Vehicle Safety Responsibility Law.

**B. Changes In Physical Damage Coverage**

1. Exclusion **B.4.c.** in the Business Auto Coverage Form and Exclusion **B.2.e.** in the Motor Carrier Coverage Form do not apply to equipment designed for use as a two-way mobile radio or telephone which operates above or below the citizens' band range of frequencies on frequencies assigned by the Federal Communications Commission.

2. Paragraph **C.1.b.** of the **Limit Of Insurance** provision does not apply to equipment designed for use as a two-way mobile radio or telephone which operates above or below the citizens' band range of frequencies assigned by the Federal Communications Commission.

3. If Collision Coverage, Comprehensive Coverage or Specified Causes Of Loss Coverage is provided by this Coverage Form on at least one covered "auto", then the following type of vehicle is also a covered "auto" for that coverage:

   Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. "Loss"; or
   e. Destruction.

   However, if Comprehensive Coverage and Specified Causes Of Loss Coverage are provided separately by this Coverage Form on at least one covered "auto", then any temporary substitute "auto", as described above, is a covered "auto" for Comprehensive Coverage.

---

Exhibit B

**C. Changes In Conditions**

1. The **Appraisal For Physical Damage Loss** Condition is replaced by the following:

   If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will not be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

2. The lead-in to the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition is replaced by the following:

   We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

3. The **Legal Action Against Us** Condition is replaced by the following:

   **Legal Action Against Us**

   A person or organization may bring a "suit" against us including, but not limited to, a "suit" to recover on an agreed settlement or on a final judgment against an "insured"; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured" and the claimant or the claimant's legal representative.

4. The following is added to the **Loss Payment – Physical Damage Coverages** Condition:

   Loss payment will be made within 30 days after receipt of satisfactory proof of "loss" from the "insured".

5. The **Transfer Of Rights Of Recovery Against Others To Us** Condition is replaced by the following:

   If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them. However, our right to recover is subordinate to an "insured's" right to be fully compensated.

6. The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

   This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

   a. This Coverage Form;

   b. The covered "auto";

   c. Your interest in the covered "auto"; or

   d. A claim under this Coverage Form.

   However, such voidance of coverage applies only to the extent that such acts or omissions are made with the intent to deceive at the time of application under this Coverage Form.

7. With respect to rental motor vehicles, the **Other Insurance** Condition in the Business Auto Coverage Form and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are replaced by the following:

   Payments from applicable coverage provided under liability coverage and/or physical damage coverage for rental motor vehicles will be made in the following order of priority:

   a. From a policy or coverage purchased by the operator from the owner of the rental motor vehicle;

   b. From a personal policy of liability and/or physical damage coverage insuring the operator of a rented motor vehicle; and

   when this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**D. Changes In Auto Medical Payments Coverage**

If the Auto Medical Payments Coverage endorsement is attached, Paragraph A. is amended by the addition of the following:

However, if the "bodily injury" is diagnosed within one year of the "accident" and reported to us within three years of such "accident", we will not limit the time period in which we will pay reasonable expenses incurred for necessary medical and funeral services resulting from such "bodily injury".

**E. Changes In Trailer Interchange Coverage**

Paragraph A.2. of the Coverage provision in the Motor Carrier Coverage Form is replaced by the following:

2. We have the right and duty to defend any "insured" against a "suit" asking for such damages. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**F. Changes In Motor Carrier Endorsement**

If the Motor Carrier Endorsement is attached, Paragraph **B.1.c.** of the Trailer Interchange **Coverage** provision is replaced by the following:

c. We have the right and duty to defend any "insured" against a "suit" asking for such damages. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**G. Changes In Garagekeepers Coverage Endorsement**

If the Garagekeepers Coverage endorsement is attached, Paragraph **B.2.** of the **Coverage** provision is replaced by the following:

2. We have the right and duty to defend any "insured" against a "suit" asking for such damages. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**H. Changes In Garagekeepers Coverage – Customers' Sound-receiving Equipment Endorsement**

If the Garagekeepers Coverage – Customers' Sound-receiving Equipment endorsement is attached, Paragraph **B.2.** of the **Coverage** provision is replaced by the following:

2. We have the right and duty to defend any "insured" against a "suit" asking for such damages. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

POLICY NUMBER: ISA H25295304

Endorsement Number: 68

**COMMERCIAL AUTO**
CA 01 34 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MAINE CHANGES

For a covered "auto" licensed or principally garaged in Maine, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Changes In Conditions**

1. The lead-in to the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition is replaced by the following:

   **Duties In The Event Of Accident, Claim, Suit Or Loss**

   We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

2. The following provision is added to the **General Conditions** and supersedes any provision to the contrary with respect to the payment of post-judgment interest:

   **Post-Judgment Interest**

   We will pay interest accruing after a judgment is entered in accordance with Maine law. Our duty to pay interest ends when we pay, offer to pay or deposit in court that part of the judgment which does not exceed our Limit of Insurance.

This payment will not reduce the Limit of Insurance.

For the Business Auto and Motor Carrier Coverage Forms, this does not apply to Paragraph A.2.a.(6) of Section II – Covered Autos Liability Coverage and Paragraph A.3.e. of Section III – Trailer Interchange Coverage in the Motor Carrier Coverage Form.

If the Garagekeepers Coverage endorsement is attached, then this does not apply to Paragraph B.4.(e).

If the Garagekeepers Coverage - Customers' Sound-receiving Equipment endorsement is attached, then this does not apply to Paragraph D.5.

If the Motor Carrier Endorsement is attached, then this does not apply to Paragraph B.1.d.(5).

If the Trailer Interchange Coverage endorsement is attached, then this does not apply to Paragraph A.3.e.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 69

**COMMERCIAL AUTO**
CA 21 74 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MAINE UNINSURED MOTORISTS COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: Medtronic plc |
|---|
| Endorsement Effective Date: |

| SCHEDULE |
|---|

| Limit Of Insurance: $ See DA40002 | Each "Accident" |
|---|---|

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle", we will pay under this coverage only if Paragraph **a.** or **b.** below applies:

   a. The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of the vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

---

CA 01 34 10 13

© Insurance Services Office, Inc., 2012

Page 1 of 1

CA 21 74 10 13

© Insurance Services Office, Inc., 2012

Page 1 of 4

**b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

**a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

This insurance does not apply to any of the following:

**1.** Any claim settled without our consent. However, this exclusion does not apply:

**a.** If such settlement does not prejudice our right to recover payment; or

**b.** To a settlement made with the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" in accordance with the procedure described in Paragraph A.2.b.

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** "Bodily injury" sustained by:

**a.** An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form.

**b.** Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form.

**c.** Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

**4.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**5.** Punitive or exemplary damages.

**6.** "Bodily injury" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.

We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible, including all sums paid under the policy's Covered Autos Liability Coverage.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

**E. Changes In Conditions**

The Conditions are changed for Maine Uninsured Motorists Coverage as follows:

**1.** The reference in Other Insurance in the Auto Dealers and Business Auto Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form to "other collectible insurance" applies to other collectible uninsured motorists insurance.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver is involved;

**b.** Promptly send us copies of the legal papers if a "suit" is brought; and

**c.** A person seeking coverage from an insurer, owner or operator of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such vehicle.

**3. Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights do not apply under this provision with respect to damages caused by an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" if we:

**a.** Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle"; and

**b.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**a.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of this coverage; and

**b.** We also have a right to recover the advance payment.

**4.** The following condition is added:

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

**a.** For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

**b.** That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of all liability bonds or policies at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged, but that sum is less than the Limit of Insurance of this coverage;

**c.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

d. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must:

(1) Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

(2) Cause an "accident" resulting in "bodily injury" to an "insured" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying". We will only accept competent evidence which may include the testimony, under oath, of a person making claim under this or any similar coverage.

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law; or

b. Designed for use mainly off public roads while not on public roads.

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 70

**COMMERCIAL AUTO**
CA 02 15 12 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MARYLAND CANCELLATION CHANGES

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. The Cancellation** Common Policy Condition is changed as follows:

1. Paragraph 2. is replaced by the following:

a. When this Policy has been in effect for 45 days or less and is not a renewal policy, we may cancel this Policy by mailing to the first Named Insured at the last mailing address known to us written notice of cancellation, stating the reason for cancellation, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

(2) 15 days before the effective date of cancellation if we cancel because the risk does not meet our underwriting standards.

b. When this Policy has been in effect for more than 45 days or is a renewal policy, we may cancel this Policy by mailing to the first Named Insured at the last mailing address known to us written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

(2) 45 days before the effective date of cancellation if we cancel for a permissible reason other than nonpayment of premium, stating the reason for cancellation. Under this Paragraph (2), we may cancel only for one or more of the following reasons:

(a) When there exists material misrepresentation or fraud in connection with the application, policy or presentation of a claim.

(b) A change in the condition of the risk that results in an increase in the hazard insured against.

(c) A matter or issue related to the risk that constitutes a threat to public safety.

(d) If the Named Insured's driver's license or motor vehicle registration, or that of a driver insured under the Coverage Form, has been suspended or revoked during the policy period as a result of the "insured's" driving record.

If we cancel pursuant to Paragraph b.(2), you may request additional information on the reason for cancellation within 30 days from the date of our notice.

---

**2.** Paragraph **3.** does not apply.

**3.** Paragraph **5.** is replaced by the following:

If this Policy is cancelled, we will send the first Named Insured any premium refund due.

**a.** The refund will be pro rata if:

(1) We cancel; or

(2) The Policy is not a renewal policy, and the first Named Insured cancels upon receiving written notice that we recalculated the premium based on the discovery of a material risk factor during the first 45 days the Policy has been in effect.

**b.** If the first Named Insured cancels, other than the cancellation described in Paragraph **a.(2),** the refund will be calculated as follows:

(1) **Policies Written For One Year Or Less**

We will refund 90% of the pro rata unearned premium.

(2) **Policies Written For More Than One Year**

(a) If the Policy is cancelled in the first year, we will refund 90% of the pro rata unearned premium for the first year, plus the full annual premium for subsequent years.

(b) If the Policy is cancelled after the first year, we will refund the pro rata unearned premium.

(3) **Continuous And Annual Premium Payment Policies**

We will refund 90% of the pro rata unearned premium for the year in which the Policy is cancelled.

We will retain the minimum premium, except if the Policy is cancelled as of the inception date.

However, if this Policy is financed by a premium finance company and we or the premium finance company or the first Named Insured cancels the Policy, the refund will consist of the gross unearned premium computed pro rata, excluding any expense constant, administrative fee or nonrefundable charge filed with and approved by the insurance commissioner.

The cancellation will be effective even if we have not made or offered a refund.

**4.** Paragraph **6.** is replaced by the following:

We will send notice of cancellation to the first Named Insured by a "first-class mail tracking method" if:

**a.** We cancel for nonpayment of premium; or

**b.** This Policy is not a renewal of a policy we issued and has been in effect for 45 days or less.

We will send notice to the first Named Insured by a "first-class mail tracking method" or by commercial mail delivery service if we cancel for a reason other than nonpayment of premium and this Policy:

**a.** Is a renewal of a policy we issued; or

**b.** Has been in effect for more than 45 days.

We will maintain proof of mailing in a form authorized or accepted by the United States Postal Service or by other commercial mail delivery service when such service is used. Proof of mailing will be sufficient proof of notice.

**B.** The following condition is added:

**Nonrenewal**

**1.** If we decide not to renew or continue this Policy, we will mail to the first Named Insured written notice at least 45 days before the end of the policy period.

**2.** We will mail our notice of nonrenewal to the first Named Insured's last mailing address known to us. We will send notice of nonrenewal to the first Named Insured by a "first-class mail tracking method" or by commercial mail delivery service. We will maintain proof of mailing in a form authorized or accepted by the United States Postal Service or by other commercial mail delivery service when such service is used. Proof of mailing will be sufficient proof of notice.

**3.** When we elect not to renew a policy that has been in effect for more than 45 days for a reason other than nonpayment of premium, we will provide a written statement of the actual reason for the refusal to renew. You may request additional information within 30 days from the date of our notice.

**4.** If we offer to renew at least 45 days before the renewal date and you fail to make the required premium payment by the renewal date, the Policy will terminate on the renewal date for nonpayment of premium.

**C.** The following definition is added:

"First-class mail tracking method" means a method that provides evidence of the date that a piece of first-class mail was accepted for mailing by the United States Postal Service, including a certificate of mail and an electronic mail tracking system used by the United States Postal Service.

"First-class mail tracking method" does not include a certificate of bulk mailing.

Exhibit B

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 71

**COMMERCIAL AUTO**
CA 01 70 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MARYLAND CHANGES

For a covered "auto" licensed or principally garaged in Maryland, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. The Fellow Employee Exclusion is replaced by the following:

   **Fellow Employee**

   "Bodily injury" to:

   a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee"s employment or while performing duties related to the conduct of your business; or

   b. The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph a. above.

   However, this exclusion does not apply for coverage up to the minimum limit specified by the Maryland Vehicle Law.

2. The Racing Exclusion is replaced by the following:

   **Racing**

   Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

   However, this exclusion does not apply for coverage up to the minimum limit specified by the Maryland Vehicle Law.

**B. Changes In Physical Damage Coverage**

The "diminution in value" exclusion does not apply.

**C. Changes In Conditions**

1. The lead-in to the Duties In The Event Of Accident, Claim, Suit Or Loss Condition is replaced by the following:

   We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us:

2. The Concealment, Misrepresentation Or Fraud Condition is replaced by the following:

   **Concealment, Misrepresentation Or Fraud**

   We do not provide coverage for an "insured" who:

   a. Intentionally conceals or misrepresents a material fact; or

   b. Has made fraudulent statements or engaged in fraudulent conduct;

   in connection with any "accident" or "loss" for which coverage is sought under this policy.

   However, we will provide Covered Autos Liability Coverage to such "insured" for damages sustained by any person who has not:

   (1) Intentionally concealed or misrepresented a material fact; or

   (2) Made fraudulent statements or engaged in fraudulent conduct;

   if such damages result from an "accident" which is otherwise covered under this policy.

3. Paragraph a. of the Premium Audit Condition is replaced by the following:

   a. The estimated premium for this coverage form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is 30 days from the date of the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

POLICY NUMBER: ISA H25295304

Endorsement Number: 72

**COMMERCIAL AUTO**
**CA 22 19 10 13**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MARYLAND PERSONAL INJURY PROTECTION ENDORSEMENT

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Maryland, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:** Medtronic plc | |
| **Endorsement Effective Date:** | |

## SCHEDULE

| Personal Injury Protection Benefits | Total Aggregate Amount |
|---|---|
| Medical expense benefits, income continuation benefits and essential services benefits | ☐ $      Per "Insured" |

In consideration of a reduction in premium, the following Personal Injury Protection waiver option applies as indicated below or in the Declarations:

☐ If you are an individual, all Personal Injury Protection benefits provided under this endorsement are excluded for:
1. You;
2. Any "family member" aged 16 or over; and
3. All drivers shown on the Coverage Form.

☒ If you are other than an individual, all Personal Injury Protection benefits provided under this endorsement are excluded for:
1. You; and
2. All drivers shown on the Coverage Form.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

We will pay Personal Injury Protection benefits for loss and expense incurred because of "bodily injury" sustained by an "insured" and caused by an "accident" involving an "auto" as follows:

1. Medical expense benefits to or on behalf of each "insured". All reasonable expenses arising from the "accident" and incurred within three years from the date of the "accident" for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital and professional nursing services and funeral services (including funeral, burial or cremation services).

2. Income continuation benefits to or on behalf of each "insured" who, at the time of the "accident", was an "income producer". Payment for 85% of the loss of gross income incurred within three years from the date of the "accident".

3. Essential services benefits to or on behalf of each "insured" who, at the time of the "accident", was not an "income producer". Reimbursement for necessary and reasonable payment made to others, not members of the "insured's" household, incurred within three years from the date of the "accident" for essential services ordinarily performed by the "insured" for care and maintenance of his or her family household.

**B. Who Is An Insured**

1. You.
2. If you are an individual, any "family member".
3. Any other person while:
   a. "Occupying" the covered "auto" as a guest or passenger;
   b. Using the covered "auto" with your consent; or
   c. A "pedestrian" through being struck by the covered "auto".

**C. Exclusions**

We will not pay Personal Injury Protection benefits for "bodily injury" sustained by:

1. Any person who intentionally causes the "auto" "accident";
2. Any person while operating or voluntarily riding in an "auto" known by him or her to be stolen;
3. Any person while in the commission of a felony or fleeing or attempting to elude a police officer;

4. Any person arising out of the ownership, maintenance or use of a motorcycle, moped or motor scooter by such person;

5. Any person who is a pedestrian injured in an "accident" outside of Maryland and who is not a resident of Maryland;

6. You or any "family member" while "occupying" or struck by any "auto" owned by you or any "family member" that is not a covered "auto";

7. Any person while "occupying" an "auto" other than the covered "auto" under this Coverage Part or while a "pedestrian" struck by any "auto" other than the covered "auto" if such "auto" has the coverage required under § 19-505 of the Insurance Article of the Annotated Code of Maryland;

8. Any person while "occupying" an "auto" you own which is rented or borrowed from you for use as a "replacement vehicle" for a vehicle not in use if the vehicle not in use has the coverage required under § 19-505 of the Insurance Article of the Annotated Code of Maryland. This exclusion applies only if this Coverage Form is used with the Auto Dealers Coverage Form;

9. (If you are an individual), you, any "family members" aged 16 or over and all drivers shown on the Coverage Form, if the Schedule indicates that the Personal Injury Protection waiver has been selected; or

10. (If you are other than an individual), you and all drivers shown on the Coverage Form, if the Schedule indicates that the Personal Injury Protection waiver has been selected.

**D. Limit Of Insurance**

1. Regardless of the numbers of "insureds", policies or bonds applicable, claims made, premiums paid or covered "autos" to which this coverage applies, the most we will pay for Personal Injury Protection benefits to or for any one "insured" as the result of any one "accident" is the total aggregate amount per "insured" shown in the Schedule.

2. Any amount paid under this coverage to or on behalf of an "insured" will be reduced by any amount paid to or on behalf of that "insured" under any workers' compensation law of any state or the federal government. However, this applies only to that amount for which the provider of the workers' compensation benefits has not been reimbursed.

Exhibit B

**E. Changes In Conditions**

The **Conditions** are changed for Personal Injury Protection as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are amended by the addition of the following:

   If an "insured" is injured, that "insured" or someone on his or her behalf must promptly give us, within a period not to exceed 12 months after the date of the "accident":

   **a.** Written proof of claim;

   **b.** Full particulars of the nature and extent of the injuries and treatment received and contemplated; and

   **c.** Such other information that will help us determine the amount due and payable.

   If benefits for loss of wages or salary (or, in the case of a self-employed "insured", their equivalent) are claimed, the person presenting such claim shall authorize us to obtain details of all wage and salary payments (or their equivalent) paid to him or her by any employer or earned by him or her since the time of the "bodily injury" or during the year immediately preceding the date of the "accident".

   In the event of the "insured's" death or incapacity, his or her legal representative shall, upon each request by us, execute authorization to enable us to obtain medical records and copies of records.

   Proof of claim shall be made upon forms furnished by us, unless we have failed to furnish such forms within 15 days after receiving notice of claim. The person making claim shall submit to examination under oath if required, by any person named by us as often as reasonably required.

   If a lapse occurs in the period of disability or medical treatment of an "insured" who has received benefits under this coverage and he or she subsequently claims a recurrence of the "bodily injury" for which the original claim was made, such "insured" or someone on his or her behalf shall be required to submit to us reasonable medical proof of such recurrence.

   Payment of Personal Injury Protection benefits shall be made promptly and within 30 days after satisfactory proof of claim has been submitted to us.

2. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are amended by the addition of the following:

   With respect to you or any "family member" who sustains "bodily injury" while "occupying", or while a "pedestrian" through being struck by, an "auto" not insured as required under §§ 19-505 and 19-509 of the Insurance Article of the Annotated Code of Maryland:

   **a.** If there is no other available personal injury protection coverage, the benefits payable under this Coverage Part will be reduced by any medical or disability benefits coverage applicable to such "auto" and collectible from the insurer of such "auto".

   **b.** If there is other available personal injury protection coverage, the aggregate maximum amount payable for Personal Injury Protection benefits under this and all other policies shall not exceed the highest applicable limit of insurance for such coverage under any one of such policies, provided that such aggregate maximum amount will be reduced by any medical or disability benefits coverage applicable to such "auto" and collectible from the insurer of such "auto". This reduction shall not apply to benefits paid or payable under any uninsured motorists coverage or by the Maryland Unsatisfied Claim and Judgment Fund.

   In addition, any automobile medical payments coverage provided under the Coverage Part is excess over any medical expense benefits paid or payable under this or any other automobile insurance policy because of "bodily injury" to an "insured".

**F. Additional Definitions**

As used in this endorsement:

1. **"Auto"** means an automobile and any other vehicle, including a trailer, operated or designed for operation upon a public road by any power other than animal or muscular power.

2. **"Bodily injury"** means bodily injury, sickness or disease, including death resulting therefrom, but the term "bodily injury" shall not include:

   **a.** Bodily injury due to war, declared or not, civil war, insurrection, rebellion, revolution, or to any act or condition incident to any of the foregoing; and

   **b.** Bodily injury resulting from radioactive, toxic, explosive or other hazardous properties of nuclear material.

3. **"Family member"** means a person related to you by blood, marriage or adoption, who is a resident of the same household, and includes your unmarried and unemancipated children, while away from your household attending school or while in military service.

4. **"Income"** means wages, salary, tips, commissions, professional fees, and other earnings from business or farms owned individually or jointly or in partnership with others, and to the extent that any such earnings are paid or payable in property or services other than cash, income means the reasonable value of such property or services.

5. **"Income producer"** means a person who at the time of the "accident" was in an occupational status where he or she was earning or producing "income".

6. **"Occupying"** means in or upon or entering into or alighting from.

7. **"Pedestrian"** means any person not "occupying" an "auto", including an individual in, on, or alighting from any other vehicle operated by animal or muscular power, or on or alighting from an animal.

8. **"Replacement vehicle"** means a vehicle that is loaned by or rented from an auto repair facility or dealer to use while a vehicle owned by your customer is not in use because of its breakdown, repair, servicing or damage.

POLICY NUMBER: ISA H25295304

Endorsement Number: 73

**COMMERCIAL AUTO**
CA 21 13 10 13

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MARYLAND UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealers operations" conducted in, Maryland, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: Medtronic plc |
|---|
| Endorsement Effective Date: |

### SCHEDULE

| Limit Of Insurance: $ See DA40002 | Each "Accident" |
|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

### A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured", or "property damage", caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. We will pay under this coverage only if Paragraph a. or b. below applies:
   a. The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or
   b. A tentative settlement has been made between an "insured" and the insurer of the vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" and we:
      (1) Have been given prompt written notice of such tentative settlement by certified mail;
      (2) Have sent to the "insured" a written refusal to consent to acceptance of the settlement offer within 60 days after receipt of notification; and
      (3) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after the written refusal of the settlement offer.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us unless we:
   a. Received reasonable notice of the pendency of the "suit" resulting in the judgment; and
   b. Had a reasonable opportunity to protect our interests in the "suit".

### B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":
   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
   c. The Named Insured for "property damage" only.

### C. Exclusions

This insurance does not apply to any of the following:

1. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

2. The direct or indirect benefit of any insurer of property.

3. "Bodily injury" sustained by:
   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;
   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or
   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

4. Property of an "insured" contained in or struck by any vehicle owned by that "insured" that is not a covered "auto".

5. The first $250 of the amount of "property damage" to the property of each "insured" as the result of any one "accident".

6. Punitive or exemplary damages.

7. "Bodily injury" or "property damage" arising directly or indirectly out of:
   a. War, including undeclared or civil war;
   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.
   
   This exclusion applies to the extent that the Limit of Insurance exceeds the minimum limit required for Uninsured Motorists Coverage by the Transportation Article of the Annotated Code of Maryland.

### D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one "accident" is the Limit Of Uninsured Motorists Coverage shown in the Schedule or Declarations.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or any Medical Payments Coverage endorsement.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law. However, this applies only to that amount for which the provider of the workers' compensation benefits has not been reimbursed.

3. We will not pay for a "loss" which is paid or payable under Physical Damage Coverage.

Exhibit B

**E. Changes In Conditions**

The Conditions are changed for Uninsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   For any covered "auto" the Named Insured owns, this Coverage Form provides primary insurance. However, when used with the Auto Dealers Coverage Form, this Coverage Form will be secondary over any other collectible insurance available to the Named Insured's customers while a covered "auto" the Named Insured owns is being used as a "replacement vehicle". For any covered "auto" the Named Insured does not own, the insurance provided by this Coverage Form is excess over any other collectible primary uninsured motorists coverage but only to the extent that the Limit of Insurance under this Coverage Form exceeds the limit of such other collectible primary uninsured motorists insurance.

   If this Coverage Form and any other Coverage Form or policy providing similar insurance apply to the same "accident", the maximum Limit of Insurance under all Coverage Forms or policies shall be the highest applicable Limit of Insurance under any one Coverage Form or policy.

   When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved; and

   b. Promptly notify us if a "suit" is brought. We request that a copy of any legal papers served accompany the notice.

c. A person seeking Uninsured Motorists Coverage must:

   (1) Promptly notify us in writing, by certified mail, of a tentative settlement between the "insured" and the insurer of the "uninsured motor vehicle";

   (2) Allow us to send to the "insured", within 60 days after the receipt of notification, a written refusal to consent to acceptance of the settlement offer; and

   (3) Allow us to advance payment to that "insured", within 30 days after the written refusal to consent to acceptance of the settlement offer, in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "uninsured motor vehicle".

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

   Our rights do not apply under this provision with respect to Uninsured Motorists Coverage if we:

   a. Have been given prompt written notice of a tentative settlement, by certified mail, between an "insured" and the insurer of an "uninsured motor vehicle"; and

   b. Fail to send the "insured" a written refusal to consent to acceptance of the settlement offer within 60 days after receipt of notification.

   If we advance payment to the "insured" in an amount equal to the tentative settlement offer within 30 days after a written refusal to consent to acceptance of the settlement offer:

   a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

   b. We also have a right to recover the advanced payment.

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Property damage" means injury or destruction of:

   a. A covered "auto";

   b. Property contained in the covered "auto" and owned by the Named Insured or, if the Named Insured is an individual, any "family member"; or

   c. Property contained in the covered "auto" and owned by anyone else "occupying" the covered "auto".

4. "Replacement vehicle" means a vehicle that is loaned by or rented from an auto repair facility or dealer to use while a vehicle owned by the Named Insured's customer is not in use because of its breakdown, repair, servicing or damage.

5. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   a. For which no liability policy or other form of security accepted by the Motor Vehicle Administrator provides at least the amounts specified by the financial responsibility law of Maryland; and

   b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which:

      (1) With respect to damages for "bodily injury" only, the sum of the limits of liability under all liability bonds or policies applicable at the time of the "accident" is equal to or greater than the limit specified by the financial responsibility law of Maryland, but the sum of the limits for bodily injury liability is either:

         (a) Less than the limit of liability for this coverage; or

         (b) Reduced by payment to other persons injured in the "accident" to an amount less than the limit of liability for this coverage.

      (2) With respect to damages for "property damage" only, the sum of the limits of liability under all liability bonds or policies applicable at the time of the "accident" is equal to or greater than the limit specified by the financial responsibility law of Maryland, but that sum is less than the Limit of Insurance of this coverage.

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   d. That is a hit-and-run vehicle and neither the driver nor owner can be identified.

      The vehicle must:

      (1) Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

      (2) Cause an "accident" resulting in "bodily injury" or "property damage" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

   However, "uninsured motor vehicle" does not include any vehicle designed for use mainly off public roads while not on public roads.

POLICY NUMBER: ISA H25295304        **Endorsement Number: 74**        MM 99 67 04 11

MM 99 67 04 11

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MASSACHUSETTS CHANGES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

This Endorsement applies to risks not subject to the Massachusetts Compulsory Automobile Insurance Law

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Liability Coverage**

COVERAGE

The third paragraph is replaced by the following:

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense," even if it is without merit. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. If an "insured" settles a claim without our consent, we will not be bound by that settlement. Our duty to defend ends when we tender, or pay to any claimant or to a court of competent jurisdiction, with the court's permission, the maximum amount of the Liability Coverage Limit of Insurance, without the need for a judgment or settlement of the "suit" or a release by the claimant.

**B. Changes In Physical Damage Coverage**

1. COVERAGE

Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles is replaced by the following:

If you purchased Comprehensive Coverage for the damaged covered "auto," we will pay for the following under Comprehensive Coverage:

a. "Loss" caused by contact with a bird or animal;

b. "Loss" caused by falling objects or missiles; and

c. Glass breakage.

However, glass breakage, when involving other collision "loss," shall be considered a "loss" under Collision Coverage.

2. DEDUCTIBLE is replaced by the following:

1. For each covered "auto," our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown on the Declarations.

2. Any deductible under Comprehensive or Specified Causes of Loss Coverage does not apply to glass breakage or to our obligation to pay for transportation expenses incurred following a theft of a covered auto of the private passenger type.

3. Regardless of anything to the contrary, any Comprehensive Coverage deductible shown on the Declarations does apply to loss caused by fire or lightning.

3. The following Condition is added to Physical Damage Coverage.

LOSS PAYEE

When the Declarations shows that a loss payee has secured interest in a covered "auto," we will make payments under Physical Damage Coverage according to the legal interest of each party.

The loss payee's right of payment will not be invalidated by your acts or neglect except that we will not pay if the "loss" to a covered "auto" is the result of conversion, embezzlement, or secretion by you or any household member. Also, we will not pay the loss payee if the "loss" to a covered "auto" is the result of arson, theft or any other means of disposal committed by you or at your direction.

When we pay any loss payee, we shall, to the extent of our payment, have the right to exercise any of the loss payee's legal rights of recovery. If you do not file a proof of loss as provided in this policy, the loss payee must do so within 30 days after the "loss" becomes known to the loss payee.

In order for us to cancel the rights of any loss payee shown on the Declarations, a notice of cancellation must be sent to the loss payee as provided in this policy.

Exhibit B

Exhibit B

MM 99 67 04 11

**C. The Cancellation Common Policy Condition is replaced by the following:**

You can cancel all or any part of the insurance at any time by giving us or your agent at least twenty days written notice.

We can cancel all or any part of the insurance if:

1. You have not paid your premium on this policy.

2. We find that you were responsible for fraud or material misrepresentation when you applied for this policy or any extension or renewal of it.

3. Your driver's license or auto registration has been under suspension or revocation during the policy period.

Any notice of cancellation will be sent to you at your last address shown on the Declarations at least 20 days prior to the effective date. A notice sent by regular mail, for which a certificate of mailing receipt has been obtained from the United States Postal Service, will be considered sufficient notice.

In order for us to cancel the rights of any loss payee shown in the policy, a notice of cancellation must also be sent to the loss payee in a similar manner.

Refunds of any premium will be sent to you as soon as possible. If we cancel, the amount of your refund will be determined by a pro rata table based on the number of days the insurance was in effect. If the policy is cancelled by you or by law, you will get a refund which is less than proportional to the time involved. It will be based instead on a "short rate" table and procedures which compensate us for our expenses in servicing your policy.

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 75

MM 99 11 10 11

**THIS ENDORSEMENT CHANGES THE POLICY TO COMPLY WITH MASSACHUSETTS LAW. PLEASE READ IT CAREFULLY.**

## MASSACHUSETTS MANDATORY ENDORSEMENT

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

Condition A., Cancellation, is replaced by the following:

**A. Cancellation**

You can cancel all or any part of the insurance at any time by giving us or your agent at least 20 days written notice.

We can cancel all or any part of the insurance if:

1. You have not paid your premium on this policy.

2. We find that you were responsible for fraud or material misrepresentation when you applied for this policy or any extension or renewal of it.

3. Your driver's license or auto registration has been under suspension or revocation during the policy period.

If the driver's license or auto registration of anyone residing in your household who usually operates a covered "auto" has been under suspension or revocation during the policy period, we may suspend coverage for that person for all coverages under this policy except those coverages and limits required under Massachusetts law to register a motor vehicle.

We can cancel any coverage we are not required by Massachusetts law to sell you if we do so within the first 90 days of the policy period. Also, we can cancel in the same manner coverage limits which are higher than the limits we are required by law to sell you and any coverages designed to reduce the deductibles set by law.

Massachusetts law provides that your policy automatically terminates when:

1. You return the registration plates for a covered "auto" to the Registry of Motor Vehicles.

2. You purchase a new policy with another company covering a covered "auto" and you file a new Certificate of Insurance with the Registry of Motor Vehicles.

3. If you transfer title to a covered "auto" and you do not register another auto, this policy will terminate 30 days from the date of transfer of title.

---

However, if more than one covered "auto" is described on the Declarations, the termination of coverage applies only to the "auto" involved in one of the situations described above.

Any notice of cancellation will be sent to you at your last address shown on the Declarations at least 20 days prior to the effective date. A notice sent by regular mail, for which a certificate of mailing receipt has been obtained from the United Stated Postal Service, will be considered sufficient notice.

In order to cancel the rights of any loss payee shown in the policy, a notice of cancellation must also be sent to the loss payee in a similar manner.

If we cancel the insurance provided under this policy for Massachusetts registered vehicles, the cancellation is not effective unless we send the required notice to the Massachusetts Registry of Motor Vehicles.

Refunds of any premium will be sent to you as soon as possible. If we cancel, the amount of your refund will be determined by a pro rata table based on the number of days the insurance was in effect. If the policy is cancelled by you or by law, you will get a refund which is less than proportional to the time involved. It will be based instead on a "short rate" table and procedures which compensate us for our expenses in servicing your policy.

If you think that we have cancelled the insurance for a covered auto illegally, you can appeal to the Board of Appeals on Motor Vehicle Liability Policies and Bonds. Your cancellation notice will explain how to appeal.

Condition C., Examination of Your Books and Records, is replaced by the following:

**C.   Examination Of Your Books And Records**

   We may examine and audit your books and records as they relate to premium for this policy at any time during the policy period and up to three years afterward.

---

### COMPULSORY BODILY INJURY TO OTHERS COVERAGE

**A.   Coverage**

   We will pay all sums an insured legally must pay as damages because of "bodily injury" caused by a covered "auto" in Massachusetts "accidents." The damages we will pay are the amounts the injured person is entitled to collect for "bodily injury" through a court judgment or settlement.

   We have the right to defend any lawsuit brought against anyone covered under this coverage for damages which might be payable under this coverage. We also have a duty to defend any lawsuit, even if it is without merit. Our duty to defend ends, however, when we tender, or pay to any claimant, or to a court of competent jurisdiction, with

the court's permission, the maximum limits provided under this coverage. We may end our duty to defend at any time during the course of the lawsuit by tendering or paying the maximum limits provided under this coverage, without the need for a judgment or settlement of the lawsuit or a release by the claimant.

We have the right to settle any claim or lawsuit as we see fit. If any person covered under this policy settles a claim without our consent, we will not be bound by that settlement.

1.   Who is an insured:

   a.   You.

   b.   Anyone else using a covered "auto" with your consent.

2.   Coverage Extension

   a.   Supplementary Payments

      In addition to the Limit of Insurance, we will pay for the "insured":

      (1)   All expenses we incur.

      (2)   Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

      (3)   The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

      (4)   All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

      (5)   All costs taxed against the "insured" in any "suit" against the "insured" we defend.

      (6)   All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend; but our duty to pay interest ends when we have paid or deposited in court the part of the judgment that is within our Limit of Insurance.

      These payments are included in and not in addition to any payment otherwise payable under any Coverage Extension agreement of the policy.

B. **Exclusions**

This insurance does not apply to:

1. "Bodily injury" to guest occupants of a covered "auto."

2. "Accidents" outside of Massachusetts or in places in Massachusetts where the public has no right of access.

3. "Bodily injury" to any "employee" of the insured if entitled to Massachusetts workers' compensation benefits.

C. **Limits Of Insurance**

The most we will pay for injuries to one or more persons as a result of "bodily injury" to any one person in any one "accident" is $20,000. Subject to this $20,000 limit, the most we will pay for injuries to two or more people as the result of "bodily injury" to two or more people in any one "accident" is $40,000. This is the most we will pay as the result of a single "accident" no matter how many covered autos or premiums are shown on the Declarations. The limits shown on the Declarations for this coverage are included in and not in addition to the limits shown for Liability Coverage on the Declarations.

D. **Additional Conditions**

1. The law provides a special protection for anyone entitled to damages under this coverage. We must pay their claims even if false statements were made when applying for this policy or the registration for a covered "auto." We must also pay even if you or the legally responsible person fails to cooperate with us after the "accident." We will, however, be entitled to reimbursement from the person who did not cooperate or who made false statements.

2. If a claim is covered by us and also by another company authorized to sell auto insurance in Massachusetts, we will pay only our proportionate share. If an insured is using a covered "auto" you do not own at the time of the "accident," the owner's auto insurance pays up to its limits before we pay. Then, we will pay up to the limits for Compulsory Bodily Injury to Others Insurance shown on the Declarations for any damages not covered by that insurance.

---

## PERSONAL INJURY PROTECTION COVERAGE

---

The benefits under this coverage are commonly known as "PIP" or "No-Fault" benefits. It makes no difference who is legally responsible for the "accident."

A. **Coverage**

We will pay the benefits described below to an insured injured or killed in an auto "accident." Benefits are paid only for expenses or losses actually incurred within two years after the "accident."

We will pay three kinds of benefits:

1. **Medical Expenses**

We will pay all reasonable expenses incurred as a result of the "accident" for necessary medical, surgical, X-ray and dental services. This includes prosthetic devices. It also includes ambulance, hospital, professional nursing and funeral expenses.

2. **Lost Wages**

If an injured person is out of work because of the "accident," we will pay lost wages up to 75% of his or her average weekly gross wage or equivalent for the year ending on the day immediately before the "accident." We will not pay for the loss of any other type of income. If the injured person was unemployed at the time of the "accident," we will pay up to 75% of the amount he or she actually lost in earning power as a result of the "accident." Some people have a wage continuation program at work. If so, we will pay them only the difference between the total we would ordinarily pay under this insurance and the amount of the program payments. We will, however, reimburse the program if it allows benefits to be converted into cash or additional retirement credit. Sometimes program benefits are reduced or used up because of payments to the person injured in an "accident." In that case, we will pay for lost wages resulting from any other illness or injury that person has within one year of our last payment. The exact amount of our payment under this paragraph will be determined by Massachusetts law.

3. **Replacement Services**

We will reimburse the injured person for reasonable payments made to anyone outside his or her household for necessary services that he or she would have performed without pay for the benefit of the household, had he or she not been injured.

B. **Who Is An Insured**

1. You and, if the form of your business under Item One of the Declarations is shown as an individual, anyone living in your household while:

a. "occupying" a covered "auto;"

b. "occupying" an auto which does not have Massachusetts Compulsory Auto Insurance; or

c. a "pedestrian" struck by an auto which does not have Massachusetts Compulsory Auto Insurance.

2. Any other person while:

a. "occupying" a covered "auto" with your consent;

b. a pedestrian injured by a covered "auto" in Massachusetts or any Massachusetts resident who, while a pedestrian, is struck by a covered "auto" outside of Massachusetts.

C. **Exclusions**

This coverage does not apply to:

1. Anyone who, at the time of the "accident," was operating or "occupying" a motorcycle or any motor vehicle not subject to motor vehicle registration.

2. Anyone who contributed to his or her injury by operating an auto:

a. While under the influence of alcohol, marijuana, or a narcotic drug.

b. While committing a felony or seeking to avoid arrest by a police officer.

c. With the specific intent of causing injury to himself, herself or others.

3. Anyone who is entitled to workers' compensation benefits for the same injury.

D. **Limit Of Insurance**

For any one "accident," we will pay as many people as are injured, but the most we will pay for all benefits to any one person is $8,000. This is the most we will pay as the result of a single "accident" no matter how many covered "autos" or premiums are shown on the Declarations. Some people have a policy of health, sickness, or disability insurance or a contract or agreement with a group, organization, partnership or corporation to provide, pay for, or reimburse the cost of medical expenses ("health plan"). If so, we will pay up to $2,000 of medical expenses for any injured person. We will also pay medical expenses in excess of $2,000 for such injured person which will not be paid by a health plan. Medical expenses must be submitted to the health plan to determine what the health plan will pay before we pay benefits in excess of $2,000 under this coverage. We will not pay for medical expenses in

excess of $2,000 that the health plan would have paid had the injured person sought treatment in accordance with the requirements of the health plan. In any case, our total payment for medical expenses, lost wages and replacement services will not exceed $8,000.

E. **Additional Conditions**

The Conditions of the Policy are Changed for Personal Injury Protection Insurance by adding:

1. If the "accident" is in Massachusetts or it it is outside Massachusetts and the injured person does not sue for damages, we will pay benefits within a reasonable time - usually 30 days. If the "accident" is outside of Massachusetts and the injured person does sue, then we can wait for a settlement or judgment before paying benefits.

2. If anyone is entitled to Personal Injury Protection benefits and also to benefits under any other insurance provided by this policy, we will pay from this insurance first.

3. We will not pay Personal Injury Protection benefits to or for an injured person, to the extent those benefits would duplicate expenses or losses recovered by that person in a settlement or court judgment.

4. If anyone covered under this policy is also entitled to Personal Injury Protection benefits from any other auto policy, the total benefits payable will not be more than the highest amount payable under whichever one of the policies would have paid the most.

In that case, each insurer will pay only its proportionate share. We will not pay benefits under this insurance which duplicate payments made under the No-Fault coverage of any other auto policy.

5. We must be authorized to obtain medical reports and other records pertinent to the claim.

6. Within two years after an "accident," we may, at our option, pay the cost of renewing or continuing in force a policy of health, sickness or disability insurance for anyone under this coverage who is unwilling or unable to pay such cost. Our payment will not exceed the cost of renewing or continuing such policy for a period of two years after the "accident." Also, our payment will not operate to reduce the benefits otherwise payable under this coverage.

F. **Definitions**

The following definitions are added for Personal Injury Protection Coverage:

1. "Occupying" means in, upon, getting in, on, out or off.

2. "Pedestrian" includes anyone incurring injury as a result of being struck by an auto in an accident and who is not occupying an auto at the time of the accident.

---

**UNINSURED MOTORISTS COVERAGE**

**A. Coverage**

We will pay all sums an insured is legally entitled to recover as damages from the owner or operator of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the insured caused by an "accident." The owner's or operator's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle."

The most we will pay for damages to or for anyone injured in the following situations is $35,000 for each person and $80,000 for each "accident" or the limits you purchased, whichever is less:

1. Anyone injured while using an "auto" without the consent of the owner.

2. Anyone injured while an "auto" is being operated in a prearranged or organized racing, speed or demolition contest or in practice or preparation for any such contest.

This coverage does not apply to the direct or indirect benefit of any insurer or self-insurer under any workers' compensation or similar law.

1. Who is an Insured

a. You, while "occupying" a covered "auto," while "occupying" an "auto" you do not own, or if injured as a pedestrian.

b. If the form of your business under Item One of the Declarations is shown as an individual, any "household member," while "occupying" a covered "auto," while "occupying" an "auto" not owned by you, or if injured as a "pedestrian."

If there are two or more policies which provide coverage at the same limits, we will only pay our proportionate share. We will not pay damages to or for any

"household member" who has a Massachusetts auto policy of his or her own or who is covered by any Massachusetts auto policy of another "household member" providing uninsured auto insurance with higher limits.

c. Anyone else while "occupying" a covered "auto." We will not pay damages to or for anyone else who has a Massachusetts auto policy of his or her own, or who is covered by any Massachusetts auto policy of another "household member" providing uninsured auto insurance.

d. Anyone else for damages he or she is entitled to recover because of injury to a person under this coverage.

If you are injured while "occupying" a covered "auto" and you have two or more "autos" insured with us with different limits, we will only pay up to the limits shown on the Declarations for the "auto" you are "occupying" when injured.

If you are injured as a "pedestrian" or while "occupying" an "auto" you do not own and you have two or more Massachusetts auto policies which provide coverage at different limits, the policy with the higher limits will pay. If there are two or more policies which provide coverage at the same limits, we will only pay our proportionate share.

We will not pay damages to or for you if struck by, or while "occupying" an "auto" you own and which does not have Massachusetts compulsory auto insurance.

Likewise, we will not pay damages to or for any "household member" if struck by, or while "occupying" an "auto" owned by that "household member" which does not have Massachusetts compulsory auto insurance.

**B. Limits Of Insurance**

1. The most we will pay for injuries to one or more persons as a result of bodily injury to any one person in any one "accident" is shown on the Declarations as the "each person" limit. Subject to this limit, the most we will pay for injuries to two or more people as the result of bodily injury to two or more people in any one "accident" is shown on the Declarations as the "each accident" limit. This is the most we will pay as the result of a single "accident."

2. The limits of two or more "autos" or policies shall not be added together, combined, or stacked, to determine the limits of coverage available to anyone covered under this insurance, regardless of the number of "autos" involved, persons covered, claims made, or premiums shown on the Declarations.

3. We will not make payments under this coverage which duplicate payments under the Uninsured Motorists Coverage of any other auto policy.

4. We will reduce the damages an injured person is entitled to recover by:

a. The amount recovered from any legally responsible person provided the injured person is fully compensated for his or her damage for bodily injury.

b. The amount paid under a workers' compensation law or similar law.

We will pay the balance of the damages up to the limits shown for this coverage on the Declarations.

**C.  Changes In Conditions**

The conditions are changed for Uninsured Motorists Coverage as follows:

1. Other Insurance is deleted.

2. Two or More Coverage Forms or Policies Issued By Us is deleted.

**D.  Additional Conditions**

The following conditions are added for Uninsured Motorists Coverage:

1. Arbitration

   If we and an insured disagree whether the insured is legally entitled to recover damages from the owner or operator of an "uninsured motor vehicle" or do not agree as to the amount of damages, either party may make a written demand for arbitration.  However, in no event may a demand for arbitration constitute first notice of claim.  We must be given sufficient notice of claim to conduct a reasonable investigation and attempt settlement before arbitration can be used.

2. Settlement or Judgment

   If an insured person settles a claim as a result of an "accident" covered under this coverage, we will pay that person only if the claim was settled with our consent.

   We will not be bound under this coverage by any judgment resulting from a lawsuit brought without our written consent.  We will not, however, unreasonably withhold our consent.

**E.  Definitions**

The following definitions are added for Uninsured Motorists Coverage:

1. "Household member" means anyone living in your household who is related to you by blood, marriage or adoption.  This includes wards, step-children or foster children.

2. "Occupying" means in, upon, getting in on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or trailer:

   a. To which no "bodily injury" liability policy or bond applies at the time of the "accident," or

   b. To which a "bodily injury" liability policy or bond applies at the time of the "accident," but the insuring or bonding company denies coverage or becomes insolvent.

   c. Which is a hit-and-run vehicle and neither the operator nor owner can be identified.

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned by a governmental unit or someone who is legally self-insured.

b. Owned or regularly used by you.

c. Designed for use mainly off public roads while not on public roads.

d. Operated on rails or crawler treads.

e. While located for use as a residence or premises.

---

**LIABILITY COVERAGE**

**A.  Coverage**

The third paragraph is replaced by the following:

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense," even if it is without merit.  However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply.  We may investigate and settle any claim or "suit" as we consider appropriate.  If an "insured" settles a claim without our consent, we will not be bound by that settlement.  Our duty to defend ends when we tender, or pay to any claimant or to a court of competent jurisdiction, with the court's permission, the maximum amount of the Liability Coverage Limit of Insurance.  We may end our duty to defend at any time during the course of the "suit" by tendering, or paying the maximum amount of the Liability Coverage Limit of Insurance, without the need for a judgment or settlement of the "suit" or a release by the claimant.

**B.** **Exclusions**

The Pollution Exclusion is changed by the following:

Paragraph a.(1)(2) only applies to damages payable for "bodily injury" or "property damage" that exceed the limits of insurance we are required to sell you under Massachusetts law. Those limits are $35,000 each person and $80,000 each "accident" for "bodily injury" and $5,000 each "accident" for "property damage." This change, however, does not apply to liability assumed under a contract or agreement.

**C.** **Limit Of Insurance**

The Limit of Insurance is changed by adding the following:

If the limits of insurance for any vehicle or coverage are shown separately for "bodily injury" and "property damage," the following applies:

Regardless of the number of covered "autos," insureds, premiums paid, claims made or vehicles involved in the "accident," our limit of liability is as follows:

1. The most we will pay for the total of all damages and "covered pollution cost or expense" combined for injuries to one or more persons as a result of "bodily injury" to any one person in any one "accident" is the limit of Bodily Injury Liability shown on the Declarations for "each person."

2. Subject to the limit for "each person," the most we will pay for the total of all damages and "covered pollution cost or expense" combined for injuries resulting from "bodily injury" for two or more people caused by any one "accident" is the limit of Bodily Injury Liability shown on the Declarations for "each accident."

3. The most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from "property damage" caused by any one "accident" is the limit of Property Damage Liability shown on the Declarations.

---

**PHYSICAL DAMAGE COVERAGE**

---

**A.** **Coverage**

Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles is replaced by the following:

If you purchased Comprehensive Coverage for the damaged covered "auto," we will pay for the following under Comprehensive Coverage:

a. "Loss" caused by contact with a bird or animal;

b. "Loss" caused by falling objects or missiles; and

c. Glass breakage.

However, glass breakage, when involving other collision "loss," shall be considered a "loss" under Collision Coverage.

**B.** **Exclusions**

Exclusion 4.c. of the Business Auto Coverage Form and Exclusion 2.e. of the Motor Carrier Coverage Form are replaced by the following:

Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals. This exclusion does not apply to electronic equipment designed solely for:

1. the reproduction of sound,

2. vehicle recovery and anti-theft device systems, or

3. safety warning systems.

**C.** **Limit Of Insurance**

Limit of Insurance is changed by adding the following:

If the repair of a damaged part will impair the operational safety of the covered "auto," we will replace the part.

**D.** **Deductible**

Deductible is replaced by the following:

1. For each covered "auto," our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown on the Declarations.

2. Any deductible under Comprehensive or Specified Causes of Loss Coverage does not apply to glass breakage or to our obligation to pay for transportation expenses incurred following a theft of a covered auto of the private passenger type.

3. Regardless of anything to the contrary, any Comprehensive Coverage deductible shown on the Declarations does apply to loss caused by fire or lightning.

E. **Additional Conditions**

The following Conditions are added for Physical Damage Coverage:

1. **Claims Handling**

You must allow us to have the "auto" appraised after a collision or loss. If we have a direct payment plan approved by the Commissioner of Insurance, we will pay you in accordance with the appraisal and allow you to select a repair shop of your choice. If you choose not to have the covered "auto" repaired, or if we do not receive your Repair Certification Form, or, when requested, you do not make your "auto" available for reinspection within a reasonable period of time following repair, our payments automatically reduce the actual cash value of the covered "auto" if you have further claims. If you later give us proof of proper repair, the actual cash value will be increased.

If you choose not to accept payment under our direct payment plan or we do not have such a plan, and you have the covered "auto" repaired in accordance with the appraisal, you must send us a Completed Work Claim Form. We must pay you within seven days after receiving the form. If we fail to pay you within seven days after receipt of the Completed Work Claim Form, you have the right to sue us. If a court decides that we were unreasonable in refusing to pay you on time, you are entitled to double the amount of damage, plus costs and reasonable attorneys' fees. If you request us to, we will pay the repair shop directly; however, the repair shop must certify that it meets certain requirements. If you choose not to have the covered "auto" repaired, or if we do not receive your Completed Work Claim Form, we will determine the amount of decrease in the actual cash value of the covered "auto" and pay you that amount less your deductible. Our payment automatically reduces the actual cash value of the covered "auto" if you have further claims. If you later give us proof of proper repair, the actual cash value will be increased. We have a right to inspect all repairs.

2. **Total Loss**

If we pay for the total "loss" of a covered "auto:"

a. We will suspend Collision or Limited Collision coverage for the damaged covered "auto" until the covered "auto" passes a Motor Vehicle Safety Inspection Test.

b. We may suspend coverage for a fire or theft "loss" under Comprehensive or Specified Causes of Loss Coverage for any replacement "auto" unless it is made reasonably available for our inspection within two Registry of Motor Vehicle business days following the day you acquired it.

c. We have the right, if we so choose, to take title to the "auto." We also have the right, if we so choose, to take any damaged part for which we pay.

3. **Sales Tax**

If we pay for a loss to a covered "auto" under Physical Damage Coverage, we will also pay, subject to your deductible, all sales taxes applicable to the loss of an auto.

4. **Loss Payee**

When the Declarations shows that a loss payee has a secured interest in a covered "auto," we will make payments under Physical Damage Coverage according to the legal interest of each party.

The loss payee's right of payment will not be invalidated by your acts or neglect except that we will not pay if the "loss" to a covered "auto" is the result of conversion, embezzlement, or secretion by you or any household member. Also, we will not pay the loss payee if the "loss" to a covered "auto" is the result of arson, theft, or any other means of disposal committed by you or at your direction.

When we pay any loss payee we shall, to the extent of our payment, have the right to exercise any of the loss payee's legal rights of recovery. If you do not file a proof of loss as provided in this policy, the loss payee must do so within 30 days after the "loss" becomes known to the loss payee.

In order for us to cancel the rights of any loss payee shown on the Declarations, a notice of cancellation must be sent to the loss payee as provided in this policy.

5. **Pre-Insurance Inspection**

Massachusetts law requires that we inspect certain motor vehicles before providing Physical Damage Coverage. In some cases, we may defer the required inspection of the covered "auto" for ten calendar days (not including legal holidays/and Sundays) following the effective date of coverage. If you do not have the covered "auto" inspected within the time allowed, coverage for that "auto" will be automatically suspended. Your premium will be adjusted if the suspension lasts for more than ten days.

6. **Actual Cash Value**

Whenever the appraised cost of repair of an auto plus the probable salvage value of the auto may be reasonably expected to exceed the actual cash value of the auto, we shall determine the auto's actual cash value. Our determination shall be based on a consideration of all of the following factors:

1.) the retail book value for an auto of like kind and quality, but for the damage incurred;

2.) the price paid for the auto plus the value of prior improvements to the auto at the time of the accident, less appropriate depreciation;

3.) the decrease in value of the auto resulting from prior unrelated damage which is detected by the appraiser; and

4.) the actual cost of purchase of an available auto of like kind and quality but for the damage sustained.

## BUSINESS AUTO CONDITIONS

A.  **Duties In The Event Of Accident, Claim, Suit Or Loss** is changed as follows:

1.  Paragraph a. is changed by adding after (3) the following:

    We may have to pay for "property damage" under Liability Coverage even if you or the legally responsible person fails to give us prompt notice of the accident. In that case, we may be entitled to reimbursement from that person.

2.  Paragraph b.(4) is replaced by the following:

    (4) Authorize us to obtain medical reports and other records pertinent to the claim.

3.  Paragraph c. is replaced by the following:

    c.  If there is a "loss" to a covered "auto" or its equipment, you must also do the following:

    (1)  Promptly notify the police if the covered "auto" or any of its equipment is stolen. You must also report a fire loss to the fire department. The notice to the police or fire department must be on the form required by law.

    (2)  Do whatever is reasonable to protect the covered "auto" from further damage or "loss." We will pay for any reasonable expenses incurred in doing this.

    (3)  Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

4.  Paragraph d. is added as follows:

d.  We may also require you and any person seeking payment under any coverage provided by this policy to submit to an examination under oath at a place designated by us, within a reasonable time after we are notified of the claim.

B.  **Legal Action Against Us** is replaced by the following:

No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Liability Coverage, no legal action may be brought against us until we agree in writing that the insured has an obligation to pay or until the amount of that obligation has been finally determined by judgment after trial. No person or organization, other than an insured, has any right under this policy to bring us into any action to determine the liability of the insured.

C.  **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

Sometimes we may make a payment under this policy to you or to someone else who has a separate legal right to recover damages from others. In that case, those legal rights may be exercised by us. Anyone receiving payment under those circumstances must do nothing to interfere with those rights. He or she must also do whatever is necessary to help us recover for ourselves up to the amount we have paid. If we then recover more than we paid, we will pay that person the excess, less his or her proportionate share of the recovery, including reasonable attorneys' fees.

Any amount recovered because of a payment we make under Uninsured Motorists Coverage or Underinsured Motorists Coverage of this policy, shall first be applied to any unpaid damages due that person. Such unpaid damages must be a part of a claim settled with our consent or a part of a judgment resulting from a lawsuit brought with our written consent. Any balance then remaining shall be applied to the amounts we have paid under Uninsured Motorists Coverage or Underinsured Motorists Coverage. We will reduce the amount we will pay that person by his or her proportionate share of the costs of recovery including reasonable attorneys' fees.

Sometimes you or someone else may recover money from the person legally responsible for an "accident" and also receive money from us for the same "accident." If so, the amount we paid must be repaid to us to the extent that you or someone else recovers.

If you or someone else recover money from the person legally responsible for the accident and also receive money from us for the same accident as a payment under Uninsured Motorists Coverage or Underinsured Motorists Coverage of this policy, we must be repaid for any amounts so paid, but only to the extent that such recovery exceeds any unpaid damages due that person under a claim settled with our consent or judgment resulting from a lawsuit brought with our written consent.

Whenever we are entitled to repayment from anyone, the amount owed us can be reduced by our proportionate share of the costs of recovering the money, including reasonable attorneys' fees.

**D.    Concealment, Misrepresentation Or Fraud** is replaced by the following:

Except with respect to the coverages you are required to purchase in order to register your auto in Massachusetts, we may refuse to pay claims if any oral or written misrepresentation or warranty made in the negotiation of this policy by you, or on your behalf, was made with an actual intent to deceive or if the matter misrepresented or warranted increased the risk of loss.

**E.    Premium - Changes**

All premiums for this policy and any renewal or extension thereof shall be computed in accordance with the applicable rules, rates, rating plans, premiums and minimum premiums for the coverage afforded.

If a change requires a premium adjustment, we will adjust the premium as of the effective date of change.

**F.    Renewal**

If we decide not to renew this policy or any of its coverages, we must mail our notice to your agent or to you at your last address shown on the Declarations at least 45 days before your policy runs out.  A notice sent by regular mail, for which a certificate of mailing receipt has been obtained from the United States Postal Service, will be considered sufficient notice.  If we require a renewal application, and you fail to complete and return it to us within the specified time, we then have the right to cancel the renewal policy.

---

### DEFINITIONS

The Definition of "property damage" is changed as follows:

"Property damage" means damage to tangible property including any applicable sales tax and the costs resulting from loss of use of the damaged property.

---

POLICY NUMBER: ISA H25295304                                   Endorsement Number: 76

**COMMERCIAL AUTO**
CA 01 10 09 16

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Michigan, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.    Changes In Covered Autos Liability Coverage**

1.  For a covered "auto" subject to the Michigan no-fault law, **Covered Autos Liability Coverage** does not apply to "property damage" to a motor vehicle caused by an "accident" "occurring" in Michigan.

2.  Paragraph **2.b.(4)** of the **Who Is An Insured** Provision in the Auto Dealers Coverage Form is replaced by the following:

    **(4)** Your customers. However, those customers are "insureds" up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

3.  The Expected Or Intended Injury Exclusion is replaced by the following:

    **Expected Or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

    However, this exclusion does not apply for coverage up to the minimum limit specified by the Michigan Financial Responsibility Act.

4.  The **Racing** Exclusion is replaced by the following:

    **Racing**

    Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

    However, this exclusion does not apply for coverage up to the minimum limit specified by the Michigan Financial Responsibility Act.

**B.    Changes In Physical Damage Coverage**

Any Physical Damage Coverage and any Rental Reimbursement Coverage provided by the Policy do not apply to the extent that Property Protection Coverage benefits are available as required by Michigan law.

**C.    Changes In Conditions**

1.  The **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition in the Business Auto and Motor Carrier Coverage Forms and the **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** Condition in the Auto Dealers Coverage Form are amended to:

    a.  Revise Paragraph **a.** to allow you, or anyone on your behalf, to provide the notice necessary to satisfy this condition.

    b.  Add the following paragraph:

        Failure to give any notice required by this Condition within the time period specified shall not invalidate any claim made by you if it shall be shown not to have been reasonably possible to give notice within the prescribed time period and that notice was given as soon as was reasonably possible.

2. The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

   **Concealment, Misrepresentation Or Fraud**

   We do not provide coverage in any case of fraud by you at any time as it relates to this Coverage Form. We also do not provide coverage if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

   a. This Coverage Form;

   b. The covered "auto";

   c. Your interest in the covered "auto"; or

   d. A claim under this Coverage Form.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 77

IL 02 86 04 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is amended as follows:

   **1.** Paragraph **1.** is replaced by the following:

   The first Named Insured shown in the Declarations may cancel this Policy by giving us or our authorized agent notice of cancellation.

   **2.** Paragraph **3.** is replaced by the following:

   We will mail or deliver our notice to the first Named Insured's last mailing address known to us or our authorized agent.

   **3.** Paragraph **5.** is replaced by the following:

   If this Policy is cancelled, we will send the first Named Insured any pro rata premium refund due. The minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following condition is added and supersedes any other provision to the contrary:

   **Nonrenewal**

   If we decide not to renew this Policy, we will mail or deliver to the first Named Insured's last mailing address known to us or our authorized agent written notice of the nonrenewal not less than 30 days before the expiration date.

   If notice is mailed, proof of mailing shall be sufficient proof of notice.

---

© Insurance Services Office, Inc., 2016
CA 01 10 09 16
Exhibit B

IL 02 86 04 17
© Insurance Services Office, Inc., 2016
Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 78

**COMMERCIAL AUTO**
**CA 22 20 04 18**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MICHIGAN PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Michigan, this endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| |
|---|
| Named Insured: Medtronic plc |
| Endorsement Effective Date: |

**SCHEDULE**

| Coverage | Limit Of Insurance |
|---|---|
| Medical Expenses | No Specific Dollar Amount |
| Funeral Expenses | Up To $1,750 Per Person |
| Work Loss | Up To $5,541* For Any 30-day Period |
| Replacement Services | $20 Per Day Maximum |
| Survivors Loss Benefits Consisting Of Income Loss Benefits And Replacement Services | Up To $5,541* For Any 30-day Period Subject To A $20 Per Day Maximum For Replacement Services |
| • Or whatever maximum amount is established by the Michigan Insurance Commissioner for accidents occurring on or after the date of the change in maximum. | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

We will pay Personal Injury Protection benefits to or for an "insured" who sustains "bodily injury" caused by an "accident" and resulting from the ownership, maintenance or use of an "auto" as an "auto". These benefits are subject to the provisions of Chapter 31 of the Michigan Insurance Code. Personal Injury Protection benefits consist of the following benefits:

**1. Medical Expenses**

Reasonable and necessary medical expenses for an "insured's" care, recovery or rehabilitation. Charges for a hospital room are limited to those customary for a semiprivate room, unless special or intensive care is required.

**2. Funeral Expenses**

Reasonable funeral and burial expenses.

**3. Work Loss**

Up to 85% of an "insured's" actual loss of income from work. We will pay a higher percentage if the "insured" gives us reasonable proof that net income is more than 85% of gross income. The most we will pay in any 30-day period for this benefit is the amount shown in the Schedule or Declarations unless another amount is established by law. Any income an "insured" earns during the 30-day period is included in determining the income benefit we will pay. This benefit is payable for loss sustained during the three years after the accident. It does not apply after an "insured" dies. We will prorate this benefit for any period less than 30 days.

**4. Replacement Services**

Reasonable expenses for obtaining services to replace those an "insured" would normally have performed without pay for himself or herself or dependents. This benefit is payable for loss sustained during the three years after the accident. It does not apply after an "insured" dies.

**5. Survivors loss benefits consisting of:**

**a. Income Loss**

The contributions a deceased "insured's" spouse and dependents would have received, as dependents, if the "insured" had not died as a result of the "accident".

**b. Replacement Services**

Reasonable expenses for obtaining services to replace those a deceased "insured" would have performed without pay for his or her spouse and dependents.

The most we will pay in any 30-day period for the total of survivors loss benefits is the amount shown in the Schedule unless another amount is established by law. Any income an "insured" earns during the 30-day period is included in determining the income benefits we will pay. These benefits are payable during the three years after the "accident" but do not apply to any loss or expense incurred after an "insured" dies. We will prorate these benefits for any period of less than 30 days.

Survivors loss benefits are payable during the three years after the "accident". A deceased "insured's" spouse must have either resided with or been dependent on the "insured" at the time of death. The benefits cease for a spouse at remarriage or death. Any other dependent qualifies for benefits if, at the time of the "insured's" death, the person is under age 18, physically or mentally unable to earn a living or a full-time student.

**B. Who Is An Insured**

**1.** You or any "family member".

**2.** Anyone else who sustains "bodily injury":

**a.** While "occupying" a covered "auto";

**b.** As the result of an "accident" involving any other "auto" operated by you or a "family member" if that "auto" is a covered "auto" under the Policy's Covered Autos Liability Coverage; or

**c.** While not "occupying" any "auto" as a result of an "accident" involving a covered "auto".

**C. Exclusions**

We will not pay Personal Injury Protection benefits for "bodily injury":

**1.** To anyone causing intentional "bodily injury" to himself, herself or anyone else.

**2.** To anyone willingly operating or using an "auto" he or she has taken unlawfully, and that person knew or should have known that the "auto" was taken unlawfully.

**3.** To anyone not "occupying" an "auto", if the "accident" takes place outside Michigan. This exclusion does not apply to you or any "family member".

**4.** To you while "occupying" or struck by any "auto" owned or registered by you which is not a covered "auto".

**5.** To the owner or registrant of an "auto" for which the coverage required by the Michigan no-fault law is not in effect.

6. To anyone entitled to Michigan no-fault benefits as a Named Insured under another policy. This exclusion does not apply to you or anyone "occupying" a motorcycle.

7. To anyone entitled to Michigan no-fault benefits as a "family member" under another policy. This exclusion does not apply to you or any "family member" or anyone "occupying" a motorcycle.

8. To anyone while "occupying" or struck by an "auto" (other than a covered "auto") operated by you or a "family member" if the owner or registrant has the required Michigan no-fault coverage. This exclusion does not apply to you or any "family member".

9. To anyone while "occupying" an "auto" located for use as a residence or premises.

10. To anyone while "occupying" a public "auto" (other than a covered "auto") for which the required Michigan no-fault coverage is in effect. This exclusion does not apply to "bodily injury" to you or a "family member" while a passenger in a:

   a. School bus;

   b. Certified common carrier;

   c. Bus operated under a government sponsored transportation program;

   d. Bus operated by or servicing a nonprofit organization;

   e. Bus operated by a watercraft, bicycle or horse livery used only to transport passengers to or from a destination point;

   f. Taxicab; or

   g. Transportation network company vehicle.

11. To you or any "family member" while "occupying" an "auto" which is owned or registered by your or any "family member's" employer and for which the required Michigan no-fault coverage is in effect.

12. To anyone while "occupying" an "auto" for which the owner or registrant is not required to provide Michigan no-fault benefits and which is operated by you or a "family member" outside Michigan. This exclusion does not apply to you or a "family member", nor does it apply under medical or funeral expense benefits.

13. To any person resulting from the ownership, operation, maintenance or use of a parked "auto". This exclusion does not apply if:

   a. The "auto" was parked in such a way as to cause unreasonable risk of the "bodily injury"; or

b. The "bodily injury" results from physical contact with:

   (1) Equipment permanently mounted on the "auto" while the equipment is being used; or

   (2) Property being lifted onto or lowered from the "auto"; or

   c. The "bodily injury" is sustained while "occupying" the "auto".

   However, Exceptions b. and c. to this exclusion do not apply to an "employee" who has Michigan workers' disability compensation benefits available and who sustains "bodily injury" in the course of employment while loading, unloading or doing mechanical work on an "auto", unless the injury arises from the use or operation of another vehicle.

14. To you or any "family member" while "occupying" a motorcycle if the owner, registrant or operator of the "auto" involved in the "accident" has the required Michigan no-fault coverage.

15. Arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made, vehicles involved in the "accident" or insurers providing no-fault benefits, the most we will pay for "bodily injury" for each "insured" injured in any one "accident" are the amounts shown in the Schedule.

2. Any amount payable under this insurance shall be reduced by any benefits paid, payable or required to be provided by state or federal law except any benefits paid, payable or required to be provided by Medicare, provided:

   a. The benefits serve the same purpose as personal injury protection benefits; and

b. The benefits are provided or required to be provided as the result of the same "accident" for which this insurance is payable. However, this insurance shall not be reduced if any amount of workers' compensation benefits that are required to be provided are not available to the "insured".

3. Any amount payable under this insurance shall be reduced by any deductible you elect. However, the deductible applies only to you and any "family member".

### E. Changes In Conditions

1. Transfer Of Rights Of Recovery Against Others To Us is replaced by the following:

   **Transfer Of Rights Of Recovery Against Others To Us**

   If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, and that other person is an uninsured motorist, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

2. Duties In The Event Of Accident, Claim, Suit Or Loss in the Business Auto and Motor Carrier Coverage Forms and Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions in the Auto Dealers Coverage Form are amended by the addition of the following:

   If requested by us, the "insured" shall furnish a sworn statement of earnings since the "accident" and for a reasonable time prior to the "accident".

3. Legal Action Against Us is amended by the addition of the following:

   No claimant may bring a legal action for Personal Injury Protection benefits against us more than a year after the "accident". There are two exceptions. The action may be brought if we have been given notice within a year after the "accident" or have made a payment of benefits. In these cases, a claimant may bring the action within a year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, the claimant may not recover benefits for any part of a loss incurred more than a year before the action was brought.

4. The following conditions are added:

   **Reimbursement And Trust**

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid. This requirement is subject to any applicable limitations of Michigan law.

   **Coordination And Nonduplication**

   a. If an "insured" is entitled to Personal Injury Protection benefits under more than one policy, the maximum recovery under all policies shall not exceed the amount payable under the Policy providing the highest dollar limit.

   b. No person may recover duplicate benefits for the same expenses or loss.

   **Premium Recomputation**

   Chapter 31 of the Michigan Insurance Code places certain limitations on a person's right to sue for damages. The premium for the Policy reflects these limitations. If a court from which there is no appeal declares any of these limitations unenforceable, we will have the right to recompute the premium. The rates we use to recompute the premium will be subject to review by the Commissioner of Insurance. If you choose to delete any coverage as the result of the court's decision, we will compute any refund of premium on a pro rata basis.

### F. Additional Definitions

As used in this endorsement:

1. "Auto" means a motor vehicle or trailer operated or designed for use on public roads but does not include a vehicle operated by muscular power, a vehicle with fewer than three wheels, a motorcycle, or a farm tractor or other implement of husbandry which is not subject to the registration requirements of the Michigan Vehicle Code. This definition replaces the definition in the Policy.

2. "Family member" means a person related to you by blood, marriage or adoption, who is a resident of your household, including a ward or foster child.

3. "Occupying" means in, upon, getting in, on, out or off.

POLICY NUMBER: ISA H25295304

Endorsement Number: 79

**COMMERCIAL AUTO**
CA 22 24 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MICHIGAN PROPERTY PROTECTION COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Michigan, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay for "property damage" caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto" as an "auto". A covered "auto" under this coverage includes an "auto" operated by, but not owned by, you or any "family member" to which the Covered Autos Liability Coverage of the policy applies. This coverage is subject to Chapter 31 of the Michigan Insurance Code and applies only to an "accident" which happens in Michigan.

**B. Exclusions**

This insurance does not apply to:

1. "Property damage" to property owned by you or any "family member" if you or any "family member" was the owner, operator or registrant of an "auto" involved in the "accident" which caused the "property damage".

2. "Property damage" to any covered "auto" or its contents.

3. "Property damage" to any "auto" which is not a covered "auto" or to its contents. However, this exclusion does not apply to the "auto" or its contents if the "auto" was parked in such a way as not to cause unreasonable risk of the "property damage".

4. "Property damage" to the property of anyone while using a covered "auto" without "your" consent, unless that person reasonably believed he or she was entitled to use the "auto".

5. "Property damage" caused intentionally by any claimant.

6. "Property damage" to any property while a covered "auto" is located for use as a residence or premises.

7. "Property damage" to property as a result of an "accident" involving an "auto" not owned by you or any "family member". This exclusion applies only to the extent that the security required by the Michigan no-fault law has been provided by or for the owner.

8. "Property damage" to any property you accept for transportation as a 'motor carrier' as that term is defined in Chapter 475 of the Michigan Compiled Laws. However, this exclusion applies only to the extent that the property is covered, or would be covered except for a deductible, by a certificate of insurance or other security you have on file with any regulatory authority.

9. "Property damage" to property that occurs within the course of the business of repairing, servicing or otherwise maintaining motor vehicles.

10. "Property damage" arising directly or indirectly out of:

    a. War, including undeclared or civil war;

    b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C. Limit Of Insurance**

1. Regardless of the number of covered "autos", premiums paid, claims made, vehicles involved in the "accident" or insurers providing property protection insurance, the most we will pay for all "property damage" resulting from any one "accident" is $1,000,000. However, the amount we pay will be limited to the lesser of reasonable repair costs or replacement costs minus depreciation and the value of any loss of use.

2. Any amount we would otherwise pay for "property damage" will be reduced by any deductible shown in the Declarations prior to the application of our Limit of Insurance. To settle any claim, we will pay all or any part of the deductible shown. If this happens, you must reimburse us for the deductible or the part of the deductible we have paid.

**D. Changes In Conditions**

The Conditions are changed for Property Protection Coverage as follows:

1. **Transfer Of Rights Of Recovery Against Others To Us** does not apply.

2. **Legal Action Against Us** is amended by the addition of the following:

   No action to recover property protection insurance may be brought against us more than a year after the "accident".

3. The following conditions are added:

   **Reimbursement And Trust**

   If we make any payment to a claimant who recovers from a party legally responsible for "property damage", the claimant shall hold the proceeds in trust for us and pay us back the amount we have paid. This requirement is subject to any applicable limitations of Michigan law.

   **Nonduplication**

   We will not pay duplicate benefits for the same expenses or loss.

   **Claimants Notice To Us**

   A claimant must promptly notify us of an "accident" and must tell us how, when and where the "accident" happened.

**E. Additional Definitions**

As used in this endorsement:

1. "Auto" means a motor vehicle or trailer operated or designed for use on public roads but does not include a vehicle operated by muscular power, a vehicle with fewer than three wheels, a motorcycle, or a farm tractor or other implement of husbandry which is not subject to the registration requirements of the Michigan Vehicle Code.

2. "Family member" means a person related to you by blood, marriage or adoption, who is a resident of your household, including a ward or foster child.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Property damage" means damage to tangible property including the loss of use of such tangible property.

CA 22 24 10 13 | © Insurance Services Office, Inc., 2012 | Page 1 of 2

Page 2 of 2 | © Insurance Services Office, Inc., 2012 | CA 22 24 10 13

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 80

**COMMERCIAL AUTO**
CA 01 38 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINNESOTA CHANGES

For a covered "auto" licensed or principally garaged in Minnesota, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The Common Policy Conditions are amended as follows:

The **Examination Of Your Books And Records** Condition applies except that the time we have to examine your records after the policy period is changed from three years to one year.

**B.** The third paragraph of **A. Coverage** in **Section II – Covered Autos Liability Coverage** is replaced by the following:

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We will settle or defend, as we consider appropriate, any claim or "suit" asking for damages which are payable under the terms of this Coverage Form.

**C.** Paragraph **A.2.a. Coverage Extensions** of **Section II – Covered Autos Liability Coverage** is amended by the addition of the following:

**(7)** Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**D.** Paragraph **C. Limit Of Insurance** in **Section II – Covered Autos Liability Coverage** is revised by the addition of the following:

We will apply the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations to provide separate limits required by law for bodily injury liability and property damage liability. However, this provision will not change our total Limit of Insurance.

**E.** Paragraph **A.2.** of **Section III – Trailer Interchange Coverage** in the Motor Carrier Coverage Form is replaced by the following:

**2.** We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We will settle or defend, as we consider appropriate, any claim or "suit" asking for damages which are payable under the terms of this Coverage Form.

**F.** Paragraph **A.3. Coverage Extensions** of **Section III – Trailer Interchange Coverage** in the Motor Carrier Coverage Form is revised by the addition of the following:

**f.** Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**G.** The Conditions are amended as follows:

**1.** The **Appraisal For Physical Damage Loss** Condition is replaced by the following:

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", and the disputed amount is:

**a.** $10,000 or less, both parties must submit to appraisal; or

**b.** More than $10,000, either party may demand an appraisal of the "loss".

In the event of an appraisal, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we still retain our right to deny the claim.

**2.** The lead-in wording of the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition is replaced by the following:

The following duties apply:

**3. Transfer Of Rights Of Recovery Against Others To Us** is amended by the addition of the following:

**a.** Our rights under this condition with respect to all coverages other than Covered Autos Liability Coverage do not apply against a person who is 21 years of age or older who:

**(1)** Had control over the premises and, being in a reasonable position to prevent the consumption of alcoholic beverages, knowingly or recklessly permitted the consumption of alcoholic beverages that caused the intoxication of a person under 21 years of age; or

**(2)** Sold, bartered, furnished or gave to, or purchased alcoholic beverages for a person under 21 years of age that caused the intoxication of a person under 21 years of age;

and that intoxicated person caused the injury, "loss" or damage for which payment was made under this policy.

**b.** Our rights are subject to any applicable limitations contained in the Minnesota statutes.

**c.** With respect to Physical Damage, if you have received less than all of your deductible amount after a subrogation settlement or judgment, you will retain your right to recover the remaining portion of the deductible from parties liable for the "loss".

**d.** Our rights do not apply against any person or organization insured under this or any other Coverage Form we issue with respect to the same "accident" or "loss".

**4.** Paragraph **B.1. Bankruptcy** is replaced by the following:

**1. Bankruptcy**

Bankruptcy, insolvency or dissolution of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**5.** The **Concealment, Misrepresentation Or Fraud** Condition is amended as follows:

**a.** With respect to Covered Autos Liability Coverage, the **Concealment, Misrepresentation Or Fraud Condition** does not apply.

**b.** With respect to other than Covered Autos Liability Coverage, the **Concealment, Misrepresentation Or Fraud Condition** is replaced by the following:

We will not pay for any "loss" or damage in any case of fraud by you at any time as it relates to this Coverage Form. We will not pay for any "loss" or damage if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**(1)** This Coverage Form;

**(2)** The covered "auto";

**(3)** Your interest in the covered "auto"; or

**(4)** A claim under this Coverage Form.

POLICY NUMBER: ISA H25295304            Endorsement Number: 81

**COMMERCIAL AUTO**
CA 02 18 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINNESOTA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** If you are an individual and this policy covers fewer than five "autos" of the private passenger type not rated on a fleet basis; or this policy is a plan of reparation security insuring fewer than five "autos" rated on a commercial or fleet basis, the **Cancellation** Common Policy Condition does not apply. The following conditions apply instead:

**1. Cancellation**

**a.** The first Named Insured may cancel the policy by mailing or delivering to us advance written notice of cancellation.

**b. Policies In Effect Less Than 60 Days**

When this policy is in effect less than 60 days and is not a renewal or continuation policy, we may cancel for any reason by mailing or delivering written notice of cancellation to the first Named Insured:

**(1)** So as to be received at least 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** At least 30 days before the effective date of cancellation if we cancel for any other reason.

The notice of cancellation will state the reasons for cancellation. Information regarding moving traffic violations or motor vehicle accidents must be specifically requested on the application in order for us to cancel within the first 59 days of coverage for those incidents.

**c. Policies In Effect 60 Days Or More**

When this policy is in effect 60 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** This policy was obtained through a material misrepresentation;

**(3)** Any "insured" made a false or fraudulent claim or knowingly aided or abetted another in the presentation of such a claim;

**(4)** You failed to disclose fully your "auto" accidents and moving traffic violations for the preceding 36 months if called for in the written application for this policy;

**(5)** You failed to disclose in the written application any requested information necessary for the acceptance or proper rating of the risk;

**(6)** You knowingly failed to give any required notice of loss or notice of lawsuit commenced against you, or when requested, refused to cooperate in the investigation of a claim or defense of a lawsuit;

**(7)** You or any driver who either lives with you or customarily uses a covered "auto":

**(a)** Has had his or her driver's license suspended or revoked within the 36 months prior to the notice of cancellation because of a moving traffic violation or a refusal to be tested for being under the influence of alcohol;

**(b)** Is or becomes subject to epilepsy or heart attacks and does not produce a physician's certificate stating that he or she can operate an "auto" safely;

**(c)** Has an "accident" or conviction record, physical or mental condition, any one or all of which are such that his or her operation of an "auto" might endanger the public safety;

**(d)** Has been convicted, or forfeited bail, during the 24 months immediately preceding the notice of cancellation for criminal negligence in the use or operation of an "auto", or assault arising out of the use of an "auto" or operating an "auto" while in an intoxicated condition or while under the influence of drugs; or leaving the scene of an "accident" without stopping to report; or making false statements in an application for a driver's license, or theft or unlawful taking of an "auto";

**(e)** Has been convicted of, or forfeited bail for, one or more violations within the 18 months before the notice of cancellation, of any law, ordinance, or regulation which justify a revocation of a driver's license;

However, Subparagraphs **(a)** through **(e)** above do not apply with respect to any driver who either lives with you or customarily uses a covered "auto" if that driver is identified as a named insured in another coverage form or policy as an insured.

**(8)** A covered "auto" is:

**(a)** So mechanically defective that its operation might endanger public safety; or

**(b)** Used in carrying passengers for hire or compensation. This does not include car pools; or

**(c)** Used in the business of transporting flammables or explosives; or

**(d)** An authorized emergency vehicle; or

**(e)** Subject to an inspection law and has not been inspected or if inspected has failed to qualify within the period specified under such inspection law; or

**(f)** Substantially changed in type or condition during the policy period, increasing the risk substantially, so as to give clear evidence of a use other than the original use.

**(9)** We replace this policy with another one providing similar coverages and the same rates and limits for the covered "auto". The replacement policy will take effect when this policy is cancelled, and will end a year after this policy begins or on this policy's expiration date, whichever is earlier.

If we cancel for any reason described in Paragraphs **c.(1)** through **(9)** above, we will give written notice of cancellation to the first Named Insured at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason described in Paragraphs **c.(2)** through **c.(9)**.

The effective date of cancellation stated in the notice shall become the effective date of cancellation.

**d.** If this policy is cancelled, we will send the first Named Insured any premium refund due. Cancellation will be on a pro rata basis if the unearned premium is for a period of more than one month. If your request cancellation and the unearned premium is for a period of one month or less, the refund may be less than pro rata.

If we cancel, cancellation will not become effective unless the premium refund due is returned to you with the notice of cancellation or is delivered or mailed to you so as to be received by you not later than the effective date of cancellation.

If you cancel, any premium refund due will be refunded within 30 days following our receipt of the request for cancellation.

**e.** Proof of mailing of any notice shall be sufficient proof of notice.

Exhibit B

**2. Nonrenewal**

a. If we decide not to renew or continue this policy we will give the first Named Insured written notice of our intent not to renew at least 60 days before the end of the policy period. Such notice will be mailed or delivered to the first Named Insured at the last mailing address known to us. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

b. If we fail to mail or deliver proper notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

c. Proof of mailing of any notice shall be sufficient proof of notice.

**B.** For all other policies not described in Paragraph A. above, the **Cancellation Common Policy Condition** does not apply. The following Conditions apply instead:

**1. Cancellation**

a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

b. We may cancel this policy, subject to the provisions of c. below, by first class mailing, or by delivery, of a written notice of cancellation to the first Named Insured and any agent, to their last mailing addresses known to us. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

c. **Policies In Effect Less Than 90 Days**

If this policy is a new policy and has been in effect for fewer than 90 days, we may cancel for any reason by giving notice at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation, if we cancel for any other reason.

d. **Policies In Effect 90 Days Or More**

If this policy has been in effect for 90 days or more, or if it is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Misrepresentation or fraud made by you or with your knowledge in obtaining the policy or in pursuing a claim under the policy;

**(3)** An act or omission by you that substantially increases or changes the risk insured;

**(4)** Refusal by you to eliminate known conditions that increase the potential for loss after notification by us that the condition must be removed;

**(5)** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

**(6)** Loss of reinsurance by us which provided coverage to us for a significant amount of the underlying risk insured. Any notice of cancellation pursuant to this item shall advise the policyholder that he or she has 10 days from the date of receipt of the notice to appeal the cancellation to the commissioner of commerce and that the commissioner will render a decision as to whether the cancellation is justified because of the loss of reinsurance within 30 business days after receipt of the appeal;

**(7)** A determination by the commissioner that the continuation of the policy could place us in violation of the Minnesota insurance laws; or

**(8)** Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance. This provision for cancellation for failure to pay dues shall not be applicable to persons who are retired at 62 years of age or older or who are disabled according to social security standards.

If we cancel for any reason described in Paragraphs **d.(1)** through **(8)** above, we will give notice at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium. The cancellation notice shall contain the information regarding the amount of premium due and the due date, and shall state the effect of nonpayment by the due date. Cancellation shall not be effective if payment of the amount due is made prior to the effective date of cancellation; or

**(2)** 60 days before the effective date, if we cancel for any other reason described in Paragraphs **d.(2)** through **(8)** above. The notice of cancellation will state the reason for cancellation.

e. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

f. Proof of mailing of any notice shall be sufficient proof of notice.

**2. Nonrenewal**

If we decide not to renew or continue this policy, we will give the first Named Insured and any agent notice of our intent not to renew, at least 60 days before the expiration date. Such notice will be mailed or delivered to the first Named Insured and any agent at their last mailing addresses known to us.

We need not mail or deliver this notice if you have:

a. Insured elsewhere;

b. Accepted replacement coverage; or

c. Agreed not to renew this policy.

Proof of mailing of any notice shall be sufficient proof of notice.

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 82

COMMERCIAL AUTO
CA 22 25 01 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINNESOTA PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Minnesota, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

Named Insured: Medtronic plc

Endorsement Effective Date:

### SCHEDULE

In consideration of an increase in premium, the following Personal Injury Protection Coverage option applies as indicated below or in the Declarations:

☐ The Named Insured elects to add together two or more Personal Injury Protection Coverages. (Refer to Paragraph 3. of the Limit Of Insurance Provision.)

In consideration of a reduction in premium, exclusion of work loss applies as indicated below or in the Declarations:

☐ Work loss will not be provided for the Named Insured age 65 or older, or age 60 or older, if retired and receiving a pension.

☐ Work loss will not be provided for the Named Insured and any "family member" age 65 or older, or age 60 or older, if retired and receiving a pension.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

The company will pay, in accordance with the Minnesota No-fault Automobile Insurance Act, Personal Injury Protection benefits incurred with respect to "bodily injury" sustained by an "insured" caused by an "accident" arising out of the maintenance or use of a "motor vehicle" as a vehicle, or through being struck by a motorcycle. These Personal Injury Protection benefits consist of the following:

1. **Medical Expenses**

   Means all reasonable expenses incurred for necessary:

   a. Medical, surgical, x-ray, optical, dental, chiropractic and rehabilitative services, including prosthetic devices;

   b. Prescription drugs as provided under MINN. STAT. § 65B.44, Subd. 2;

   c. Ambulance and all other transportation expenses incurred in traveling to receive other covered medical expense benefits;

   d. Sign interpreting and language translation services, other than such services provided by a member of the "insured's" family, related to the receipt of medical expenses provided under Paragraph A.1. of this provision; and

   e. Hospital, extended care and nursing services, including necessary remedial treatment and services recognized and permitted under the laws of Minnesota for an "insured" who relies upon spiritual means through prayer alone for healing in accordance with his or her religious belief; however, it does not include expenses in excess of those for a semiprivate room, unless more intensive care is medically required.

2. **Work Loss**

   Means:

   a. 85% of loss of gross income resulting from the "insured's" inability to work on a regular basis including the costs incurred by an "insured" who is self-employed in hiring substitute "employees" to perform tasks which are necessary to maintain his or her income, which he or she normally performs himself or herself, and which he or she cannot perform because of his or her injury; or

   b. Lost unemployment benefits in an amount equal to the unemployment benefits otherwise payable, if the "insured":

      (1) Is unemployed at the time of the injury and is receiving or is eligible to receive unemployment benefits; and

      (2) Loses eligibility for unemployment benefits because of his or her inability to work caused by injury;

      reduced by any income from work actually performed by the "insured", or by any income he or she would have earned in available appropriate substitute work which he or she was capable of performing but unreasonably failed to undertake.

3. **Essential Services Expenses**

   Expenses reasonably incurred during a period commencing eight days after the date of the accident and during the "insured's" lifetime, in obtaining usual and necessary substitute services in lieu of those that, had he or she not been injured, he or she would have performed not for income but for the direct benefit of himself or herself or his or her household; if the non-fatally injured "insured" normally, as a full-time responsibility, provides care and maintenance of a home, with or without children, the benefit is the reasonable value of such care and maintenance.

4. **Funeral Expenses**

   Reasonable expenses for professional funeral and burial services, including expense for cremation, or delivery under the Minnesota Uniform Anatomical Gift Act.

5. **Survivors' Loss**

   Means:

   a. "Loss", in the event of the death of an "insured" occurring within one year from the date of the "accident", of contributions of money or tangible things of economic value, not including services, that his or her surviving dependents would have received from him or her for their support during their dependency had he or she not suffered the fatal "bodily injury"; and

b. Expenses reasonably incurred by surviving dependents after the death of an "insured" in obtaining ordinary and necessary substitute services in lieu of those he or she would have performed for their benefit had he or she not suffered the fatal "bodily injury", minus expenses of the surviving dependents avoided by reason of such death;

provided that the dependency of the surviving spouse shall be terminated in the event such surviving spouse remarries or dies, and the dependency of a child who is not physically or mentally incapacitated from earning shall be terminated in the event he or she attains majority, marries or becomes otherwise emancipated, or dies.

**B. Who Is An Insured**

1. The Named Insured or any "family member" who sustains "bodily injury" while "occupying" a "motor vehicle", or while a pedestrian as a result of an "accident" involving a "motor vehicle" or motorcycle.

2. Any other person who sustains "bodily injury" while "occupying" the "insured motor vehicle", or while a pedestrian as a result of an "accident" involving the "insured motor vehicle".

3. Any other person who sustains "bodily injury" while "occupying" a "motor vehicle" not owned by, but operated by the Named Insured or "family member", other than a public or livery conveyance, if the "bodily injury" results from the operation of the "motor vehicle" by the Named Insured or "family member". As used in this provision, public or livery conveyance includes, but is not limited to, any period of time a "motor vehicle" is being used by any person who is logged onto a "transportation network platform" as a driver, whether or not a passenger is "occupying" the "motor vehicle".

**C. Exclusions**

We will not pay Personal Injury Protection benefits for "bodily injury":

1. Sustained by any "family member" if such "family member" is entitled to Personal Injury Protection Coverage as a self-insured or as a Named Insured under the terms of any other Coverage Form or policy with respect to such coverage.

2. Sustained by any person, other than the Named Insured or "family member", if such person is entitled to Personal Injury Protection Coverage as a self-insured or as a Named Insured or "family member" under the terms of any other Coverage Form or policy with respect to such coverage.

3. Sustained by any person arising out of the maintenance or use of a "motor vehicle":

   a. Being used in the business of transporting persons or property; or

   b. Furnished by the employer of the Named Insured or "family member";

   if with respect to such vehicle, the security required by the Minnesota No-fault Automobile Insurance Act is in effect, provided that such "bodily injury" is sustained while not "occupying" another involved "motor vehicle"; however, this exclusion does not apply to **(i)** the "insured motor vehicle", **(ii)** a commuter van as defined in the Minnesota No-fault Automobile Insurance Act, **(iii)** a vehicle being used to transport children to school or to a school sponsored activity, **(iv)** a vehicle being used to transport children as part of a family or group family day care program, **(v)** any bus, other than a bus included as a vehicle described in **(ii)**, **(iii)** or **(iv)** above, while in operation within the state of Minnesota as to any Minnesota resident who is an insured as defined in the Minnesota No-fault Automobile Insurance Act, or **(vi)** a passenger in a taxi.

4. To any benefits any person would otherwise be entitled to receive hereunder for "bodily injury" intentionally caused by such person or arising out of his or her intentionally attempting to cause "bodily injury", and, if any person dies as a result of intentionally causing or attempting to cause "bodily injury" to himself or herself, his or her survivors are not entitled to any survivors' loss benefits.

5. Sustained by any person in the course of an officiated racing or speed contest, or in practice or preparation therefor, other than a rally held in whole or in part upon public roads.

6. Sustained by any person if such injury arises out of conduct within the course of a business of repairing, servicing or otherwise maintaining "motor vehicles" unless such conduct occurs off the business premises.

7. Sustained by any person if such injury arises out of conduct in the course of loading or unloading any "motor vehicle" unless the conduct occurs while such person is "occupying" such "motor vehicle".

8. Sustained by any person while "occupying" a motorcycle.

9. To Personal Injury Protection benefits otherwise payable in the event that a lapse of one year or more occurs in the period of disability and medical treatment of an "insured" as a result of any one "accident".

10. Sustained by any person, other than the Named Insured or any "family member", arising out of the maintenance or use by such person of a "motor vehicle" without a good faith belief that he or she is legally entitled to use such "motor vehicle".

11. Sustained by any person, other than the Named Insured or any "family member", while a pedestrian through being struck by the "insured" "motor vehicle", if the "accident" occurs outside the state of Minnesota.

12. Sustained by any person arising out of the maintenance or use of a "motor vehicle" while located for use as a residence or premises.

13. Arising directly or indirectly out of:

    a. War, including undeclared or civil war;

    b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

14. Resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

15. With respect to work loss, essential services expenses and survivors' loss benefits, sustained by any person, other than the Named Insured or "family member", while "occupying" any "motor vehicle", not owned by the Named Insured or "family member", which is being operated by the Named Insured or "family member".

16. Sustained by any person, other than the Named Insured or any "family member", while "occupying" a vehicle which is regularly used in the course of the business of transporting persons or property and which is one of five or more vehicles under common ownership or a vehicle owned by a government other than the state of Minnesota, its political subdivisions, municipal corporations or public agencies, if the "accident" occurs outside the state of Minnesota.

**D. Limit Of Insurance**

1. Except as provided in Paragraph 3., regardless of the number of persons insured, policies or plans of self-insurance applicable, premiums paid, claims made or "insured motor vehicles" to which this coverage applies, our liability for Personal Injury Protection benefits with respect to "bodily injury" sustained by any one "insured" in any one "motor vehicle" "accident" shall not exceed $40,000 in the aggregate and subject to such aggregate:

   a. The maximum amount payable for "medical expenses" shall not exceed $20,000.

   b. The maximum aggregate amount payable for work loss, essential services expenses, funeral expenses and survivors' loss benefits shall not exceed $20,000. Subject to this maximum aggregate:

      **(1)** The maximum amount payable for work loss shall not exceed $500 per week.

      **(2)** The maximum amount payable for essential services expenses shall not exceed $200 per week.

      **(3)** The maximum amount payable for funeral expenses shall not exceed $5,000.

      **(4)** The maximum amount payable for survivors' loss benefits:

         **(a)** With respect to Paragraph A.5.a. of the definition of survivors' loss benefits shall not exceed $500 per week; and

         **(b)** With respect to Paragraph A.5.b. of the definition of survivors' loss benefits shall not exceed $200 per week.

2. Any amount payable by the company under the terms of this coverage shall be reduced by:

   a. Any amounts paid, payable or required to be provided on account of such "bodily injury" under any workers' compensation law; except that if the "accident" involves a "motor vehicle" used in a "ridesharing arrangement", this coverage shall be primary.

   b. The amount of any deductible applicable to "medical expenses" set forth in this Coverage Form, but only with respect to "bodily injury" sustained by the Named Insured or by a "family member", provided that, if two or more such persons sustain "bodily injury" in the same "motor vehicle" "accident", the total amount of the deductible applicable to all of them shall not exceed the deductible amount stated in this Coverage Form, and such amount shall be allocated equally among them.

   c. The amount of any deductible applicable to work loss set forth in this Coverage Form, but only with respect to "bodily injury" sustained by the Named Insured or any "family member".

3. If the Schedule or Declarations indicates that the Named Insured elected to add together two or more Personal Injury Protection Coverages, regardless of the number of persons insured, premiums paid or claims made, our liability for Personal Injury Protection benefits with respect to "bodily injury" sustained by any one "insured" in any one "motor vehicle" "accident" shall not exceed $40,000 in the aggregate, per "insured motor vehicle", and subject to each such aggregate:

   a. The maximum amount payable for "medical expenses" shall not exceed $20,000 per "insured motor vehicle".

   b. The maximum amount payable for work loss, essential services expenses, funeral expenses and survivors' loss benefits shall not exceed $20,000 per "insured motor vehicle". Subject to this maximum aggregate:

      (1) The maximum amount payable for work loss shall not exceed $500 per week per "insured motor vehicle".

      (2) The maximum amount payable for essential services expenses shall not exceed $200 per week per "insured motor vehicle".

      (3) The maximum amount payable for funeral expenses shall not exceed $5,000 per "insured motor vehicle".

      (4) The maximum amount payable for survivors' loss benefits:

         (a) With respect to Paragraph A.5.a. of the definition of survivors' loss benefits shall not exceed $500 per week per "insured motor vehicle"; and

         (b) With respect to Paragraph A.5.b. of the definition of survivors' loss benefits shall not exceed $200 per week per "insured motor vehicle".

**E. Changes In Conditions**

The Conditions are changed for Personal Injury Protection as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are replaced by the following:

   a. In the event of any "accident", written notice containing particulars sufficient to identify the "insured" and also reasonably obtainable information respecting the time, place and circumstances of the "accident" shall be given by or on behalf of each "insured" to us or any of our authorized agents within six months from the date of the "accident". Failure to provide such written notice shall not render an "insured" ineligible to receive benefits unless actual prejudice is shown by us and then only to the extent of the prejudice. If an "insured", his or her legal representative or his or her surviving dependents shall institute legal action to recover damages for "bodily injury" against a person or organization who is or may be liable in tort therefor, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such "insured", his or her legal representative or his or her surviving dependents.

2. **The Transfer Of Rights Of Recovery Against Others To Us** Policy Condition does not apply.

3. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are amended by the following:

   In the event the "insured" has other similar insurance including self-insurance available and applicable to the "accident", we will not be liable for a greater proportion of any loss to which this coverage applies than the Limit of Insurance hereunder bears to the sum of the applicable Limits of Insurance of this coverage and such other insurance.

   However, if the driver or occupant of a "motor vehicle" sustains "bodily injury" while using the vehicle in the business of transporting persons or property, this insurance is primary.

   b. As soon as practicable, the "insured" or someone on his or her behalf shall give us written proof of claim, under oath if required, including full particulars of the nature and extent of the "bodily injury", treatment and rehabilitation received and contemplated, and such other information as may assist us in determining the amount due and payable. The "insured" shall submit to physical and mental examination by physicians selected by us when and as often as we may reasonably require. An "insured" who has undertaken a procedure or treatment for rehabilitation or a course of rehabilitative occupational training, other than a medical rehabilitation procedure or treatment, shall notify us that he or she has undertaken the procedure, treatment or training within 60 days after a rehabilitation expense exceeding $1,000 has been incurred for the procedure, treatment or training, unless we know or have reason to know of the undertaking. If the "insured" does not give the required notice within the prescribed time, we are responsible only for $1,000 or the expense incurred after the notice is given and within 60 days before the notice, whichever is greater, unless failure to give timely notice is the result of excusable neglect.

4. **The Two Or More Coverage Forms Or Policies Issued By Us** Policy Condition is replaced by the following:

   **Two Or More Coverage Forms Or Policies Issued By Us**

   If the Schedule indicates that the Named Insured elected to add together two or more Personal Injury Protection Coverages, the Two Or More Coverage Forms Or Policies Issued By Us provision in the Policy Conditions section of the Coverage Form does not apply to coverage afforded under this endorsement. However, no one will be entitled to receive duplicate payments for the same elements of "loss".

5. The following conditions are added:

   **Coordination, Nonduplication And Priority Of Payments**

   a. No "insured" shall recover duplicate benefits for the same elements of "loss" under this or any similar insurance including self-insurance.

   b. Any amount payable under any Uninsured Motorists Coverage afforded under this Coverage Form or policy shall be reduced by the amount of any Personal Injury Protection benefits paid or payable or which would be paid or payable but for the application of a deductible under this or any other motor vehicle insurance Coverage Form or policy because of "bodily injury" sustained by an "insured".

   **Constitutionality Clause**

   The premium for and the coverages of this Policy have been established in reliance upon the provisions of the Minnesota No-fault Automobile Insurance Act. In the event a court of competent jurisdiction declares, or enters a judgment the effect of which is to render the provisions of such act invalid or unenforceable in whole or in part, we shall have the right to recompute the premium payable for the Policy and the provisions of this endorsement shall be voidable or subject to amendment at our option.

**Arbitration**

If you and we disagree on the amount of "loss" under Personal Injury Protection and the disputed amount is:

**a.** $10,000 or less, both parties must submit to arbitration; or

**b.** More than $10,000, we will advise that whether we will submit the claim to arbitration.

Arbitration will be conducted in accordance with the Rules of Procedure For No-fault Arbitration contained in the Minnesota Insurance Laws.

In the event of arbitration, each party will select a competent arbitrator. The two arbitrators will select a competent and impartial umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen arbitrator; and

**b.** Bear the other expenses of the arbitration and umpire equally.

If we submit to arbitration, we still retain our right to deny the claim.

**F. Additional Definitions**

As used in this endorsement:

1. **"Family member"** means the spouse or any person related to the Named Insured by blood, marriage or adoption, including a minor in the custody of the Named Insured, spouse or such related person, who is a resident of the same household as the Named Insured whether or not temporarily residing elsewhere.

2. **"Insured motor vehicle"** means a "motor vehicle" with respect to which:

    **a.** The "bodily injury" liability insurance of the Coverage Form or Policy applies and for which a specific premium is charged; and

    **b.** The Named Insured is required to maintain security under the provisions of the Minnesota No-fault Automobile Insurance Act.

3. **"Motor vehicle"** means every vehicle, other than a motorcycle or other vehicle with fewer than four wheels, which:

    **a.** Is required to be registered pursuant to Minnesota Statutes, Chapter 168; and

    **b.** Is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets in the transportation of persons or property, and includes a "trailer" with one or more wheels, when the "trailer" is connected to or being towed by a "motor vehicle".

4. **"Occupying"** means in or upon, entering into or alighting from.

5. **"Ridesharing arrangement"** means the transportation of persons, for a fee or otherwise, in a "motor vehicle" when the transportation is incidental to another purpose of the driver. The term includes the forms of shared transportation known as car pools, commuter van pools and bus pools whether or not furnished by an employer. It does not include transportation of "employees" by an employer from one place to another.

6. **"Transportation network platform"** means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

---

POLICY NUMBER:  ISA H25295304

Endorsement Number:  83

**COMMERCIAL AUTO**
CA 21 24 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINNESOTA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Minnesota, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured:  Medtronic plc |
| --- |
| Endorsement Effective Date: |

**SCHEDULE**

| | Limit Of Insurance | |
| --- | --- | --- |
| Uninsured Motorists Coverage: | $ See DA40002 | Each "Accident" |
| Underinsured Motorists Coverage: | $ See DA40002 | Each "Accident" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought against an uninsured or underinsured motorist is not binding on us unless we have:

    **a.** Received reasonable notice of the commencement of the "suit" resulting in judgment; and

    **b.** Had a reasonable opportunity to protect our interests in the "suit".

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

    **a.** The Named Insured and any "family members".

---

b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

This insurance does not apply to any of the following:

1. Any claim settled with the owner or operator of an "uninsured motor vehicle" without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" under Uninsured Motorists Coverage, if that "bodily injury" is sustained by:

a. An individual Named Insured while "occupying" a covered "auto" that is not a covered "auto" for Uninsured Motorists Coverage; or

b. Any "family member" while "occupying" any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage.

4. "Bodily injury" under Underinsured Motorists Coverage, if that "bodily injury" is sustained by:

a. An individual Named Insured while "occupying" a covered "auto" that is not a covered "auto" for Underinsured Motorists Coverage; or

b. Any "family member" while "occupying" any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage.

5. Anyone using a vehicle without a reasonable belief that the person is entitled to do so. However, this exclusion does not apply to a "family member" who is not identified by name in any other contract for a plan of reparation security complying with the Minnesota No-fault Automobile Insurance Act, while using a covered "auto" which is owned by the Named Insured.

6. Punitive or exemplary damages.

7. "Bodily injury" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident":

a. With an "uninsured motor vehicle" is the limit of Uninsured Motorists Coverage shown in the Schedule.

b. With an "underinsured motor vehicle" is the limit of Underinsured Motorists Coverage shown in the Schedule.

We will apply the Limit Of Liability for each of these coverages as shown in the Schedule to provide separate limits required by law for uninsured and underinsured "bodily injury" liability.

2. Any amounts otherwise payable for damages under this insurance shall be reduced by all sums paid or payable or which would be paid or payable except for the application of a deductible under Personal Injury Protection applicable to the same element of loss.

3. We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

4. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form, any Liability Coverage form, or any Medical Payments Coverage endorsement attached to this Coverage Part.

**E. Changes In Conditions**

The Conditions are changed for Uninsured Motorists Coverage and Underinsured Motorists Coverage as follows:

1. The reference in **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form to "other applicable insurance" applies only to other collectible uninsured motorists insurance and is replaced by the following:

a. With respect to coverage we provide when a covered "auto" the Named Insured owns is involved in an "accident", only:

(1) The Limit of Insurance for Uninsured Motorists Coverage applicable to that "auto" will apply for damages for which the owner or operator of the "uninsured motor vehicle" is legally responsible.

(2) The Limit of Insurance for Underinsured Motorists Coverage applicable to that "auto" will apply for damages for which the owner or operator of the "underinsured motor vehicle" is legally responsible.

b. If an "insured" sustains "bodily injury" while:

(1) "Occupying" a vehicle not owned by that person or which is not "occupying" any vehicle; or

(2) "Occupying" a vehicle owned by the Named Insured or any "family member", if the Named Insured is an individual, and such vehicle is insured under one or more separate policies providing uninsured motorists or underinsured motorists insurance;

the following priorities of recovery apply:

| First Priority | The policy affording Uninsured Motorists Coverage or Underinsured Motorists Coverage to the vehicle the "insured" was "occupying" at the time of the "accident". |
|---|---|
| Second Priority | Any Coverage Form or policy affording Uninsured Motorists Coverage or Underinsured Motorists Coverage to the "insured" as an individual Named Insured or "family member". |

(1) Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority shall not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy.

(2) Where there is applicable insurance available under the first priority:

(a) The Limit of Insurance applicable to the vehicle the "insured" was "occupying", under the Coverage Form or policy in the first priority, shall first be exhausted; and

(b) If there is other applicable insurance available under one or more policies or provisions of coverage:

The maximum recovery in the second priority under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any collectible uninsured or underinsured motorists insurance providing coverage on a primary basis.

If the coverage under this Coverage Form is provided:

(i) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

(ii) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

(3) We will pay only our share of the "loss", not to exceed our share of the maximum recovery. Our share is the proportion that our Limit of Insurance bears to the total of all applicable limits in the same level of priority.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver is involved; and

**b.** Promptly send us copies of the legal papers if a "suit" is brought.

For an "underinsured motor vehicle", **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are also changed by adding the following:

**a.** Promptly notify us in writing of a tentative settlement between the "insured" and the insurer of an "underinsured motor vehicle". Such notice shall:

(1) Identify the "insured", the owner or driver of the "underinsured motor vehicle" and the insurer of the "underinsured motor vehicle";

(2) Disclose the limits of the automobile liability insurance available to the owner or driver of the "underinsured motor vehicle"; and

(3) Disclose the agreed upon amount of the tentative settlement; and

**b.** Allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

**3. Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following and supersedes any provision to the contrary:

**Transfer Of Rights Of Recovery Against Others To Us**

**a.** If any person or organization to or from whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**b.** If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

**c.** For an "underinsured motor vehicle", Paragraph 3.a. of the Transfer Of Rights Of Recovery Against Others To Us Condition does not apply if:

(1) We have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

(2) We fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of such notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of written notification:

(1) That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

(2) We also have a right to recover the advance payment.

**d.** Our rights under Paragraph 3.a. of this condition do not apply against any person or organization insured under this or any other Coverage Form we issue with respect to the same "accident" or "loss".

**e.** Our rights under this condition do not apply against a person who is 21 years of age or older who:

(1) Had control over the premises and, being in a reasonable position to prevent the consumption of alcoholic beverages, knowingly or recklessly permitted the consumption of alcoholic beverages that caused the intoxication of a person under 21 years of age; or

(2) Sold, bartered, furnished or gave to, or purchased alcoholic beverages for a person under 21 years of age that caused the intoxication of a person under 21 years of age;

and that intoxicated person caused the injury, "loss" or damage for which payment was made under this policy.

**f.** Our rights are subject to any applicable limitations contained in the Minnesota statutes.

**4.** The following condition is added:

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

**a.** To which **(1)** no bodily injury liability bond or policy applies at the time of an "accident" or **(2)** a bodily injury liability bond or policy applies at the time of the "accident", but its limit for bodily injury liability is less than the minimum limit for bodily injury liability specified by the Minnesota No-fault Automobile Insurance Act;

**b.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

**c.** That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying", or must cause an "accident" resulting in "bodily injury" to an "insured" without hitting a covered "auto" or a vehicle an "insured" is "occupying".

However, "uninsured motor vehicle" does not include any vehicle or equipment:

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who **(1)** denies coverage, **(2)** is or becomes insolvent or **(3)** cannot provide the amounts required by that motor vehicle law;

**b.** Designed for use mainly off public roads while not on public roads;

**c.** That is an "underinsured motor vehicle";

**d.** Owned by or furnished or available for the regular use of an "insured";

**e.** Operated on rails or crawler treads; or

**f.** While located for use as a residence or premises.

**4.** "Underinsured motor vehicle" means a land motor vehicle or "trailer" for which a bodily injury liability bond or policy applies at the time of the "accident" in limits equal to or greater than the minimum limits specified by the Minnesota No-fault Automobile Insurance Act, but its limit for "bodily injury" liability is not enough to pay the full amount the "insured" is legally entitled to recover as damages caused by the "accident".

However, "underinsured motor vehicle" does not include any vehicle or equipment:

**a.** For which a liability bond or policy applies at the time of the "accident", but the bonding or insuring company **(1)** denies coverage or **(2)** is or becomes insolvent;

b. Designed for use mainly off public roads while not on public roads;

c. That is an "uninsured motor vehicle";

d. Owned by or furnished or available for the regular use of an "insured";

e. Operated on rails or crawler treads; or

f. While located for use as a residence or premises.

POLICY NUMBER: ISA H25295304

Endorsement Number: 84

**COMMERCIAL AUTO**
CA 01 65 07 16

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MISSOURI CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Missouri, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. The following is added to Supplementary Payments:**

Prejudgment interest awarded against the "insured" on the part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**B. Changes In Covered Autos Liability Coverage**

1. Paragraph **2.b.(4)** of the Who Is An Insured Provision in the Auto Dealers Coverage Form is replaced by the following:

   **(4)** Your customers. However, those customers are "insureds" up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

2. Paragraph **1.b.** of the Who Is An Insured Provision in the Business Auto and Motor Carrier Coverage Forms and Paragraph **2.b.** of the **Who Is An Insured** Provision in the Auto Dealers Coverage Form are changed by adding the following:

   **(6)** If you are an individual, any member of your household, other than your spouse, who is related to you by blood or adoption, including a ward or foster child, who owns an "auto".

3. If your business is other than selling, repairing or servicing "autos", the **Care, Custody Or Control** Exclusion does not apply to "property damage" to or "covered pollution cost or expense" involving an "auto" loaned to you, with or without consideration, by a person engaged in the business of selling, repairing or servicing "autos" as a temporary substitute for an "auto" you own.

**C. Changes In Conditions**

1. The **Appraisal For Physical Damage Loss** Condition is replaced by the following:

   If you and we disagree on the amount of "loss", both parties may agree to an appraisal of the "loss" and to be bound by the results of that appraisal. If both parties so agree, then each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If we submit to an appraisal, we will still retain our right to deny the claim.

2. The following is added to the **Concealment, Misrepresentation And Fraud Condition**:

   With respect to Covered Autos Liability Coverage, this condition only applies in excess of the minimum limits of liability required by the Missouri Financial Responsibility Laws.

© Insurance Services Office, Inc., 2012

CA 21 24 10 13

Exhibit B

CA 01 65 07 16

© Insurance Services Office, Inc., 2015

Exhibit B

3. If your business is other than selling, repairing or servicing "autos", the following is added to the **Other Insurance** Condition in the Business Auto Coverage Form and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form:

Covered Autos Liability Coverage is primary for any temporary substitute for an "auto" you own if the substitute "auto" is operated by an "insured" and is loaned to you, with or without consideration, by a person engaged in the business of selling, repairing or servicing "autos".

4. If your business is selling, repairing or servicing "autos", the following is added to the **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form:

Covered Autos Liability Coverage is excess for any "auto" you own if operated by a customer to whom you have loaned the "auto", with or without consideration, as a temporary substitute for an "auto" owned by the customer.

**D.** The following provision is added:

**Missouri Property And Casualty Insurance Guaranty Association Coverage Limitations**

1. Subject to the provisions of the Missouri Property and Casualty Insurance Guaranty Association Act (to be referred to as the Act), if we are a member of the Missouri Property and Casualty Insurance Guaranty Association (to be referred to as the Association), the Association will pay claims covered under the Act if we become insolvent.

2. The Act contains various exclusions, conditions and limitations that govern a claimant's eligibility to collect payment from the Association and affect the amount of any payment. The following limitations apply subject to all other provisions of the Act:

a. Claims covered by the Association do not include a claim by or against an "insured" of an insolvent insurer, if the "insured" has a net worth of more than $25 million on the later of the end of the "insured's" most recent fiscal year or the December thirty-first of the year next preceding the date the insurer becomes insolvent; provided that an "insured's" net worth on such date shall be deemed to include the aggregate net worth of the "insured" and all of its affiliates as calculated on a consolidated basis.

b. Payments made by the Association for covered claims will include only that amount of each claim which is less than $300,000.

However, the Association will not:

(1) Pay an amount in excess of the applicable Limit of Insurance of the policy from which a claim arises; or

(2) Return to an "insured" any unearned premium in excess of $25,000.

These limitations have no effect on the coverage we will provide under this policy.

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 85

**COMMERCIAL AUTO**
CA 02 19 01 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MISSOURI CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** If you are an individual, partnership or limited liability company and a covered "auto" you own is of the "private passenger type", and this Policy covers fewer than five "autos" and does not insure the motor vehicle hazard of garages, motor vehicle sales agencies, repair shops, service stations or public parking places, the Cancellation Common Policy Condition does not apply to that "auto". The following condition applies instead:

**Ending This Policy**

1. **Cancellation**

a. You may cancel the Policy by returning it to us or by giving us advance notice of the date cancellation is to take effect.

b. If this Policy has been in effect for 60 days or less and is not a renewal or continuation policy, we may cancel for any reason. If we cancel, we will mail you at least 10 days' notice.

c. When this Policy has been in effect for more than 60 days or is a renewal or continuation policy, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium. If we cancel for this reason, we will mail you at least 10 days' notice.

(2) If you are an individual, partnership or limited liability company and your driver's license has been suspended or revoked during the policy period. If we cancel for this reason, we will mail you at least 60 days' notice. However, we may not cancel if you are more than one person, but only one person's license has been suspended or revoked. Instead we may exclude coverage for that person while operating a covered "auto" during a period of suspension or revocation.

(3) If you are an individual, we replace this Policy with another one providing similar coverages and the same limits for the covered "auto". The replacement policy will take effect when this Policy is cancelled, and will end a year after this Policy begins or on this Policy's expiration date, whichever is earlier.

d. If this Policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. However, making or offering to make the refund is not a condition of cancellation. The following provisions govern calculation of return premium:

(1) We will compute return premium pro rata and round to the next higher whole dollar when this Policy is:

(a) Cancelled by us or at our request;

---

**(b)** Cancelled because you no longer have a financial or insurable interest in the property or business operation that is the subject of this insurance;

**(c)** Cancelled but rewritten with us or in our company group; or

**(d)** Cancelled after the first year, if it is a prepaid policy written for a term of more than one year.

**(2)** When this Policy is cancelled at your request (except when Paragraph **(1)(b)**, **(1)(c)** or **(1)(d)** applies), we will return 90% of the pro rata unearned premium rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multiyear prepaid policy, we will return the full annual premium for the subsequent years.

**(3)** When this Policy is cancelled at your request and is an auto dealer's policy written on a reporting form basis, we will calculate the return or additional premium as follows:

**(a)** Final annual premium will be determined on the basis of the average value reported during the period in which the Policy was in effect.

**(b)** Pro rata earned premium will be determined based on the final annual premium for the number of days the Policy was in force as determined by Paragraph **(3)(a)** rounded to the next higher whole dollar.

**(c)** Pro rata unearned premium will be determined by subtracting Paragraph **(3)(b)** from Paragraph **(3)(a)**.

**(d)** The short rate surcharge will be determined by multiplying the unearned premium by 10% and rounding to the next higher whole dollar.

**(e)** Calculate the short rate earned premium by adding Paragraphs **(3)(b)** and **(3)(d)**.

**(f)** If the short rate earned premium is less than the sum of all payments (including any deposit premium), the difference is the return premium.

**(g)** If the short rate earned premium is greater than the sum of all payments (including any deposit premium), the difference is the additional premium due.

**e.** The effective date of cancellation stated in the notice shall become the end of the policy period.

**f.** No notice of cancellation will state the actual reason for cancellation unless the cancellation is due to nonpayment of premium.

**2. Nonrenewal**

**a.** If we decide not to renew or continue this Policy, we will mail you notice at least 60 days before the end of the policy period. If the policy period is other than one year, we will have the right not to renew or continue it only at the anniversary of its original effective date. If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

**b.** If we fail to mail proper notice of nonrenewal and you obtain other insurance, the coverages provided by this Policy will end on the effective date of any similar coverages provided by the other insurance.

**c.** Our notice of nonrenewal will state the actual reason for nonrenewal unless the nonrenewal is due to nonpayment of premium.

**3. Mailing Of Notices**

Any notice of cancellation or nonrenewal will be mailed by United States Postal Service certificate of mailing, first-class mail using Intelligent Mail barcode (IMb), or another mail tracking method used, approved, or accepted by the United States Postal Service to your last known mailing address. Proof of mailing of any notice will be sufficient proof of notice.

**B.** For "autos" not described in Paragraph **A.** above:

**1.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the actual reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

**b.** 30 days before the effective date of cancellation if cancellation is for one or more of the following reasons:

**(1)** Fraud or material misrepresentation affecting this Policy or a claim filed under this Policy or a violation of any of the terms or conditions of this Policy;

**(2)** Changes in conditions after the effective date of this Policy which have materially increased the risk assumed;

**(3)** We become insolvent; or

**(4)** We involuntarily lose reinsurance for this Policy;

**c.** 60 days before the effective date of cancellation if we cancel for any other reason.

**2.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund. The following provisions govern calculation of return premium:

**a.** We will compute return premium pro rata and round to the next higher whole dollar when this Policy is:

**(1)** Cancelled by us or at our request:

**(2)** Cancelled because you no longer have a financial or insurable interest in the property or business operation that is the subject of this insurance;

**(3)** Cancelled but rewritten with us or in our company group; or

**(4)** Cancelled after the first year, if it is a prepaid policy written for a term of more than one year.

**b.** When this Policy is cancelled at the request of the first Named Insured (except when Paragraph a.(2), a.(3) or a.(4) applies), we will return 90% of the pro rata unearned premium rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multiyear prepaid policy, we will return the full annual premium for the subsequent years.

**c.** When this Policy is cancelled at the request of the first Named Insured and is an auto dealer's policy written on a reporting form basis, we will calculate the return or additional premium as follows:

**(1)** Final annual premium will be determined on the basis of the average value reported during the period in which the Policy was in effect.

**(2)** Pro rata earned premium will be determined based on the final annual premium for the number of days the Policy was in force as determined by Paragraph c.(1) rounded to the next higher whole dollar.

**(3)** Pro rata unearned premium will be determined by subtracting Paragraph c.(2) from Paragraph c.(1).

**(4)** The short rate surcharge will be determined by multiplying the unearned premium by 10% and rounding to the next higher whole dollar.

**(5)** Calculate the short rate earned premium by adding Paragraphs c.(1) and c.(4).

**(6)** If the short rate earned premium is less than the sum of all payments (including any deposit premium), the difference is the return premium.

**(7)** If the short rate earned premium is greater than the sum of all payments (including any deposit premium), the difference is the additional premium due.

**3.** The following is added and supersedes any provision to the contrary:

**Nonrenewal**

**a.** We may elect not to renew this Policy by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the actual reason for nonrenewal, at least 60 days prior to the effective date of the nonrenewal.

**b.** If notice is mailed, proof of mailing will be sufficient proof of notice.

POLICY NUMBER: ISA H25295304

Endorsement Number: 86

**COMMERCIAL AUTO**
CA 01 66 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MISSOURI CHANGES – POLLUTION EXCLUSION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Missouri, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**A. Changes In Covered Autos Liability Coverage**

The following is added to the **Pollution Exclusion**:

This Pollution Exclusion applies even if such irritant or contaminant has a function in your business, operations, premises, site or location.

**B. Changes In General Liability Coverages**

With respect to the Auto Dealers Coverage Form:

**1.** The following is added to Exclusion **2.f. Pollution of Paragraph A. Bodily Injury And Property Damage Liability,** or to any amendment to or replacement thereof:

This Pollution Exclusion applies even if such irritant or contaminant has a function in your business, operations, premises, site **or location.**

**2.** The following is added to Exclusion **2.I. Pollution of Paragraph B. Personal And Advertising Injury Liability:**

This Pollution Exclusion applies even if such irritant or contaminant has a function in your business, operations, premises, site or location.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 87

**COMMERCIAL AUTO**
CA 02 20 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MONTANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The **Cancellation** Common Policy Condition does not apply. The following condition applies instead:

**Ending This Policy**

**A. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel the policy by mailing or delivering to us advance written notice of cancellation.

**2. Midterm Cancellation**

**a.** When this policy is in effect less than 60 days and is not a renewal or continuation policy, we may cancel for any reason. If we cancel for nonpayment of premium, we will mail at least 10 days' written notice to the first Named Insured. If we cancel for any other reason, we will mail at least 45 days' written notice to the first Named Insured.

**b.** When this policy is in effect 60 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium.

**(2)** If you are an individual and your driver's license or motor vehicle registration or that of a driver who lives with you and customarily uses the covered "auto" has been suspended or revoked during the policy period, or if the policy is a renewal, during its policy period or the 180 days immediately preceding its effective date.

If we cancel for nonpayment of premium, we will mail at least 10 days' written notice, stating the reason for cancellation, to the first Named Insured. If we cancel for any other reason, we will mail at least 45 days' written notice to the first Named Insured.

In this case, our notice will state that upon written request of the first Named Insured, mailed or delivered to us not less than 15 days prior to the effective date of cancellation, we will specify the reason for cancellation.

**3. Anniversary Cancellation**

If this policy has been written for a period of more than a year or without a fixed expiration date, we may cancel at the anniversary of its original effective date for any reason. If we cancel, we will mail you at least 45 days' written notice.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

However, when a financed insurance policy is cancelled, we will send any refund due to the premium finance company on a pro rata basis.

Exhibit B

**B. Nonrenewal**

1. If we decide not to renew or continue this policy, we will mail to the first Named Insured and agent, if any, notice at least 45 days before the end of the policy period. Our notice will state that upon written request of the first Named Insured, mailed or delivered to us not later than one month following the termination date of the policy, we will notify the first Named Insured in writing, within 15 days of the request of the reason or reasons for nonrenewal.

   If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to apply the required renewal or continuation premium when due shall mean that you have not accepted our offer.

2. If we fail to mail or deliver proper notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail or deliver our notice of cancellation or nonrenewal to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 88

IL 01 67 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MONTANA CHANGES – CONFORMITY WITH STATUTES

This endorsement modifies insurance provided under the following:

> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART
> FARM UMBRELLA LIABILITY POLICY
> LIQUOR LIABILITY COVERAGE PART
> MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART

**A.** The following condition is added:

Conformity with Montana statutes. The provisions of this policy or Coverage Part conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which you reside on or after the effective date of this policy or Coverage Part.

However, with respect to insurance provided under the Commercial Automobile Coverage Part, while a covered "auto" is away from Montana:

1. We will increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

2. We will provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

3. No one will be entitled to duplicate payments for the same elements of loss.

**B.** Any provision of this policy or Coverage Part (including endorsements which modify the policy or Coverage Part) that does not conform to the minimum requirements of a Montana statute is amended to conform to such statute.

---

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 89

**COMMERCIAL AUTO**
**CA 99 35 11 13**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEBRASKA AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

**B. Who Is An Insured**

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

**D. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**E. Changes In Conditions**

The Conditions are changed for Auto Medical Payments Coverage as follows:

1. **The Transfer Of Rights Of Recovery Against Others To Us** Condition does not apply.

2. The reference in **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form to "other collectible insurance" applies only to other collectible auto medical payments insurance.

   When this Coverage Form and any other Coverage Form or policy providing Auto Medical Payments Coverage apply with respect to an "accident" involving a "loaned vehicle", and such Coverage Forms or policies have a mutually repugnant clause regarding primary coverage, and:

   a. One provides coverage to a licensed seller or dealer that owns the "loaned vehicle"; and

   b. The other provides coverage to the operator of the "loaned vehicle"; and

   c. At the time of such "accident", the operator's Auto Medical Payments Coverage as described in Paragraph b. is primary and the licensed seller or dealer's Auto Medical Payments Coverage described in Paragraph a. is excess over any insurance available to that operator.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption, who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Loaned vehicle" means an "auto" which is provided for use as a temporary substitute without a direct charge to an insured operator by a licensed seller or dealer for use while the insured operator's covered "auto" is being serviced, repaired or inspected by such seller or dealer until such "auto" is returned to the licensed seller or dealer.

Exhibit B

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 90

**COMMERCIAL AUTO**
CA 01 56 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEBRASKA CHANGES

This endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Physical Damage Coverage**

Paragraph **C. Limits Of Insurance** is changed by adding the following:

If a "loss" to your covered "auto" is also payable as damages under the liability coverage of another Coverage Form or policy issued by us, we will pay for such damage or "loss" only once, either under this Coverage Form or the liability coverage of the other Coverage Form or policy issued by us.

**B. Changes In Conditions**

**1. The Appraisal For Physical Damage Loss** Condition is replaced by the following:

**Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", both parties may agree in writing to an appraisal of the "loss" and to be bound by the results of that appraisal. If both parties so agree, then each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. The Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

**Misrepresentation Or Breach Of Condition Or Warranty**

**a.** A misrepresentation or warranty made by you or on your behalf in the negotiation of or application for this Coverage Part will void this policy if:

**(1)** It is material;

**(2)** It is made with the intent to deceive;

**(3)** We rely on it; and

**(4)** We are deceived to our injury.

**b.** A breach of warranty or condition will void the policy if such breach exists at the time of "loss" and contributes to the "loss".

Exhibit B

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 91

**COMMERCIAL AUTO**
CA 02 21 12 17

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEBRASKA CHANGES – CANCELLATION

This endorsement modifies insurance provided under the following:

> AUTO DEALERS COVERAGE FORM
> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following is added to Paragraph **3.** of the **Cancellation Common Policy Condition:**

If the policy has been in effect 60 days or more or is a renewal or continuation policy, and we cancel for:

**a.** Nonpayment of premium to a premium finance company; or

**b.** Any reason other than nonpayment of premium;

notice of cancellation will be sent by registered mail, certified mail or first-class mail using Intelligent Mail barcode (IMb) or another similar tracking method used or approved by the United States Postal Service.

Exhibit B

POLICY NUMBER:  ISA H25295304

Endorsement Number:  92

**COMMERCIAL AUTO**
CA 21 70 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEBRASKA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Nebraska, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Named Insured:  Medtronic plc | |
| Endorsement Effective Date: | |

**SCHEDULE**

| | |
|---|---|
| Limit Of Insurance:  $See DA40002 | Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle".

2. With respect to damages resulting from an "accident" with an "underinsured motor vehicle", we will pay under this coverage only if Paragraph **a.** or **b.** below applies:

   a. The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle"; and we

   (1) Have been given prompt written notice of such tentative settlement; and

   (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought against the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" without our written consent is not binding on us unless we:

   a. Receive reasonable notice of the pendency of the "suit" resulting in the judgment; and

   b. Have had a reasonable opportunity to protect our interest in the "suit".

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" or using a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" or using a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent. However, this exclusion does not apply:

   a. If such settlement does not adversely affect our rights; or

   b. To a settlement made with the insurer of an "underinsured motor vehicle" in accordance with the procedure described in Paragraph **A.2.b.**

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

4. Punitive or exemplary damages.

5. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Liability shown in the Schedule or Declarations.

   The coverage limit for Uninsured and Underinsured Motorists Coverage applies separately to damages caused by an "accident" with an "uninsured motor vehicle" and an "underinsured motor vehicle".

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or Uninsured or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

## E. Changes In Conditions

The Conditions are changed for Underinsured Motorists Coverage as follows:

1. With respect to damages caused by an "uninsured motor vehicle", the reference in Other Insurance in the Auto Dealers and Business Auto Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

Exhibit B

2. With respect to damages caused by an "underinsured motor vehicle", **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible underinsured motorists insurance providing coverage on a primary basis.

c. If the coverage under this Coverage Form is provided:

   (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

   (2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

The following priorities of recovery apply:

| First | The Underinsured Motorists Coverage applicable to the Vehicle the "insured" was "occupying" at the time of the "accident". |
| Second | The Underinsured Motorists Coverage applicable to an "auto" not involved in the "accident" under which the injured person is an "insured". |

3. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

a. Promptly notify the police if a hit-and-run driver is involved; and

b. Promptly send us copies of the legal papers if a "suit" is brought.

With respect to an "underinsured motor vehicle", **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are also changed by adding the following:

a. Promptly notify us in writing of a tentative settlement between the "insured" and the insurer of an "underinsured motor vehicle".

b. Allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

4. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

a. If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back that amount we have paid.

b. For an "underinsured motor vehicle", the **Transfer Of Rights Of Recovery Against Others To Us** Condition does not apply if we:

   (1) Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

   (2) Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of written notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

   (1) That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

   (2) We also have a right to recover the advance payment.

5. The following condition is added:

**Reimbursement And Trust**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

6. The following condition is added:

**Arbitration**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If both parties so agree, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

F. **Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

a. For which no liability bond or policy applies at the time of the "accident".

b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. If there is no physical contact with the hit-and-run vehicle, the facts of the "accident" must be corroborated by competent evidence provided by an independent and disinterested person, other than the "insured" making the claim or any person "occupying" the covered "auto".

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

b. Owned by a governmental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

4. "Underinsured motor vehicle" means a land motor vehicle or "trailer" to which a "bodily injury" liability bond or policy applies at the time of an "accident" but its limit for "bodily injury" liability is either:

a. Not enough to pay the full amount the "insured" is legally entitled to recover as damages; or

b. Reduced by payments to persons other than an "insured", injured in the "accident", to less than the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not include any vehicle:

c. Owned by or furnished or available for the Named Insured's regular use or that of any "family member", if the Named Insured is an individual.

d. Owned by a governmental unit or agency.

e. Designed for use mainly off public roads while not on public roads.

f. Owned or operated by a self-insurer under any applicable motor vehicle law.

g. While located for use as a residence or premises.

h. Which is an "uninsured motor vehicle".

POLICY NUMBER: ISA H25295304

Endorsement Number: 93

**COMMERCIAL AUTO**
CA 01 36 10 13

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEVADA CHANGES

For a covered "auto" licensed in Nevada, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**I. Changes In Conditions**

**A.** If the Auto Medical Payments Coverage endorsement is attached, the Transfer Of Rights Of Recovery Against Others To Us Condition does not apply to Auto Medical Payments Coverage.

**B.** The Other Insurance Condition in the Business Auto Coverage Form and the Other Insurance – Primary And Excess Insurance Provisions Condition in the Motor Carrier Coverage Form are changed by adding the following:

1. When two Coverage Forms providing liability coverage apply to an "auto" and:

    **a.** One provides coverage to a Named Insured engaged in the business of selling, repairing, servicing, delivering, testing, road testing, parking or storing "autos"; and

    **b.** The other provides coverage to a person not engaged in that business; and

    **c.** At the time of an "accident", a person described in **1.b.** is operating an "auto" described in **1.a.**; then

    that person's liability insurance is primary and the Coverage Form issued to a business described in **1.a.** is excess over any insurance available to that person.

2. When two Coverage Forms providing liability coverage apply to an "auto" and:

    **a.** One provides coverage to a Named Insured engaged in the business of repairing or servicing "autos"; and

    **b.** The other provides coverage to a person not engaged in that business; and

    **c.** At the time of an "accident", a person described in **2.b.** is operating an "auto" owned by the business described in **2.a.** as a temporary substitute auto while that person's "auto" is being repaired or serviced by the business described in **2.a.**; then

    that person's liability coverage is primary and the Coverage Form issued to the business described in **2.a.** is excess over any insurance available to that person.

**II. Anti-stacking Provisions**

The contrasting type contained in this endorsement is in compliance with Nevada statutory requirements that anti-stacking provisions be prominently displayed in the policy, binder or endorsement.

**A. Changes In Covered Autos Liability Coverage**

The first paragraph of the Limit Of Insurance provision is replaced by the following:

**REGARDLESS OF THE NUMBER OF COVERED "AUTOS", "INSUREDS", PREMIUMS PAID, CLAIMS MADE OR VEHICLES INVOLVED IN THE "ACCIDENT", THE MOST WE WILL PAY FOR THE TOTAL OF ALL DAMAGES AND "COVERED POLLUTION COST OR EXPENSE" COMBINED, RESULTING FROM ANY ONE "ACCIDENT" IS THE LIMIT OF INSURANCE FOR COVERED "AUTOS" LIABILITY COVERAGE SHOWN IN THE DECLARATIONS.**

**B. Changes In Auto Medical Payments Coverage**

If the Auto Medical Payments Coverage endorsement is attached:

1. Exclusions **2.** and **3.** are replaced by the following:

    **2.** "BODILY INJURY" SUSTAINED BY YOU OR ANY "FAMILY MEMBER" WHILE "OCCUPYING" OR STRUCK BY ANY VEHICLE (OTHER THAN A COVERED "AUTO") OWNED BY YOU OR FURNISHED OR AVAILABLE FOR YOUR REGULAR USE.

    **3.** "BODILY INJURY" SUSTAINED BY ANY "FAMILY MEMBER" WHILE "OCCUPYING" OR STRUCK BY ANY VEHICLE (OTHER THAN A COVERED "AUTO") OWNED BY OR FURNISHED OR AVAILABLE FOR THE REGULAR USE OF ANY "FAMILY MEMBER".

2. The first paragraph of the Limit Of Insurance provision is replaced by the following:

    **REGARDLESS OF THE NUMBER OF COVERED "AUTOS", "INSUREDS", PREMIUMS PAID, CLAIMS MADE OR VEHICLES INVOLVED IN THE "ACCIDENT", THE MOST WE WILL PAY FOR "BODILY INJURY" FOR EACH "INSURED" INJURED IN ANY ONE "ACCIDENT" IS THE LIMIT OF AUTO MEDICAL PAYMENTS SHOWN IN THE DECLARATIONS.**

**C. Changes In Garagekeepers Coverage**

If the Garagekeepers Coverage endorsement is attached, Paragraph **1.** of the **Limits Of Insurance And Deductibles** provision is replaced by the following:

1. **REGARDLESS OF THE NUMBER OF "CUSTOMER'S AUTOS", "INSUREDS", PREMIUMS PAID, CLAIMS MADE OR "SUITS" BROUGHT, THE MOST WE WILL PAY FOR EACH "LOSS" AT EACH LOCATION IS THE GARAGEKEEPERS COVERAGE LIMIT OF INSURANCE SHOWN IN THE SCHEDULE FOR THAT LOCATION. PRIOR TO THE APPLICATION OF THIS LIMIT, THE DAMAGES FOR "LOSS" THAT WOULD OTHERWISE BE PAYABLE WILL BE REDUCED BY THE APPLICABLE DEDUCTIBLES FOR "LOSS" CAUSED BY:**

    **a.** COLLISION; OR

    **b.** WITH RESPECT TO GARAGEKEEPERS COVERAGE COMPREHENSIVE OR SPECIFIED CAUSES OF LOSS COVERAGE:

    (1) THEFT OR MISCHIEF OR VANDALISM; OR

    (2) ALL PERILS.

**D. Changes In Garagekeepers Coverage – Customers' Sound-receiving Equipment**

If the Garagekeepers Coverage – Customers' Sound-receiving Equipment endorsement is attached, Paragraph **1.** of the Limits Of Insurance And Deductibles provision is replaced by the following:

1. **REGARDLESS OF THE NUMBER OF "SOUND-RECEIVING EQUIPMENT" ITEMS IN A "CUSTOMER'S AUTO", "INSUREDS", PREMIUMS PAID, CLAIMS MADE OR "SUITS" BROUGHT, THE MOST WE WILL PAY FOR EACH "LOSS" AT EACH LOCATION IS THE GARAGEKEEPERS COVERAGE – SOUND-RECEIVING EQUIPMENT LIMIT OF INSURANCE SHOWN IN THE SCHEDULE FOR THAT LOCATION. PRIOR TO THE APPLICATION OF THIS LIMIT, THE DAMAGES FOR "LOSS" THAT WOULD OTHERWISE BE PAYABLE WILL BE REDUCED BY THE APPLICABLE DEDUCTIBLE FOR "LOSS" CAUSED BY COLLISION OR MISCHIEF OR VANDALISM.**

**E. Changes In Transportation Of Seasonal Or Migrant Agricultural Workers Endorsement**

If the Transportation Of Seasonal Or Migrant Agricultural Workers endorsement is attached, Paragraph **1.** of the Limit Of Insurance provision is replaced by the following:

1. **REGARDLESS OF THE NUMBER OF COVERED "AUTOS", "INSUREDS", PREMIUMS PAID, CLAIMS MADE OR VEHICLES INVOLVED IN THE "ACCIDENT", THE MOST WE WILL PAY FOR ALL DAMAGES RESULTING FROM ANY ONE "ACCIDENT" IS THE LIMIT OF INSURANCE SHOWN IN THE SCHEDULE FOR EACH "ACCIDENT".**

Exhibit B

**F. Changes In Conditions**

The **Two Or More Coverage Forms Or Policies Issued By Us** Condition is replaced by the following:

**TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US**

IF THIS COVERAGE FORM AND ANY OTHER COVERAGE FORM OR POLICY ISSUED TO YOU BY US OR ANY COMPANY AFFILIATED WITH US APPLY TO THE SAME "ACCIDENT", THE AGGREGATE MAXIMUM LIMIT OF INSURANCE UNDER ALL THE COVERAGE FORMS OR POLICIES SHALL NOT EXCEED THE HIGHEST APPLICABLE SINGLE VEHICLE LIMIT OF INSURANCE UNDER ANY ONE COVERAGE FORM OR POLICY REGARDLESS OF THE NUMBER OF COVERED "AUTOS", "INSUREDS", PREMIUMS PAID, CLAIMS MADE OR VEHICLES INVOLVED IN THE "ACCIDENT". THIS CONDITION DOES NOT APPLY TO ANY COVERAGE FORM OR POLICY ISSUED BY US OR AN AFFILIATED COMPANY SPECIFICALLY TO APPLY AS EXCESS INSURANCE OVER THIS COVERAGE FORM.

---

POLICY NUMBER: ISA H25295304          Endorsement Number: 94

COMMERCIAL AUTO
CA 02 62 01 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW HAMPSHIRE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

A. Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Conditions are replaced by the following:

2. We may cancel this policy by mailing or physically delivering to you written notice of cancellation, stating the reasons for cancellation, at least:

   a. 10 days before the effective date of cancellation if:

      (1) We cancel for nonpayment of premium;

      (2) We cancel for substantial increase in hazard; or

      (3) This is a new policy and its cancellation notice is mailed within the first 60 days of the effective date.

   b. 60 days before the effective date of cancellation if Paragraph **2.a.** of this endorsement does not apply.

   c. If this policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel only for one of the following reasons:

      (1) Nonpayment of premium;

      (2) Fraud or material misrepresentation affecting the policy or in the presentation of a claim under the policy, or violation of any of the terms or conditions of the policy; or

      (3) Substantial increase in hazard, provided that cancellation for this reason will be effective only after prior approval of the Commissioner.

3. We will mail or physically deliver our notice to your last mailing address known to us by:

   a. Certified mail or certificate of mailing if cancellation is for nonpayment of premium.

   b. Certified mail if cancellation is for any other reason.

   Proof that the notice was mailed in accordance with Paragraph **3.a.** or **3.b.** will be sufficient proof of notice.

B. Paragraph **6.** of the **Cancellation** Common Policy Conditions is deleted.

C. The following is added:

   **Nonrenewal**

   1. If we elect not to renew this policy, we will mail or physically deliver written notice of nonrenewal, stating the reasons for nonrenewal, to your last mailing address known to us at least 60 days prior to the expiration of the policy, or its anniversary date if it is a policy written for a term of more than one year.

   2. However, we need not mail or physically deliver this notice if:

      a. We manifest our willingness to renew;

      b. We refuse to renew due to nonpayment of premium;

      c. You fail to pay any advance premium required by us for this renewal; or

      d. Any property covered under this policy is insured under another insurance policy.

   3. If notice is mailed, proof of mailing will be sufficient proof of notice.

---

CA 01 36 10 13          © Insurance Services Office, Inc., 2012          Page 3 of 3

Exhibit B

CA 02 62 01 19          © Insurance Services Office, Inc., 2018          Page 1 of 1

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 95

COMMERCIAL AUTO
CA 01 11 12 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW HAMPSHIRE CHANGES IN POLICY

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, New Hampshire, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**PART I – STATUTORY CHANGES**

**A.** Part I of this endorsement changes the Covered Autos Liability Coverage of the Coverage Part. These changes are made to comply with Chapter 264 of the New Hampshire Revised Statutes.

**B. Changes In Covered Autos Liability Coverage**

1. For "auto" "accidents" occurring within the coverage territory, Covered Autos Liability Coverage on a covered "auto" applies to the operation of (or presence in) any other "auto". The following are "insureds":

   a. You, if you are an individual and the owner of a covered "auto" (or if spouses, either or both of whom own the covered "auto").

   b. Any person related to you by marriage, blood, or adoption, if a resident of your household.

   c. Any domestic servant, while engaged in employment by:

      **(1)** You; or

      **(2)** Any person related to you by marriage, blood, or adoption, if a resident of your household.

   The coverage applies only if the other "auto" is not owned by you, any person related to you by marriage, blood, or adoption, if a resident of your household or the domestic servant.

2. Covered Autos Liability Coverage provided by Part I of this endorsement is excess to any other collectible liability coverage.

3. The limit of liability for the coverage provided by Part I of this endorsement is the limit of liability required by the New Hampshire Financial Responsibility Law. The limit does not apply in addition to the limit of liability provided by the Coverage Part for use of "autos" you don't own.

**PART II – ADDITIONAL CHANGES**

**A.** Paragraph **A. Description Of Covered Auto Designation Symbols of Section I – Covered Autos** in the Business Auto and Motor Carrier Coverage Forms is amended as follows:

1. The description for Symbol 19 under the Business Auto Coverage Form is replaced by the following:

   Symbol 19 – Mobile Equipment Subject To Registration For Use On Public Roads Only

   Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this Policy if they were not subject to registration for use on public roads where they are licensed or principally garaged.

2. The description for Symbol 79 under the Motor Carrier Coverage Form is replaced by the following:

   Symbol 79 – "Mobile Equipment" Subject To Registration For Use On Public Roads Only

   Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this Policy if they were not subject to registration for use on public roads where they are licensed or principally garaged.

**B. Changes In Covered Autos Liability Coverage**

1. The **Who Is An Insured** provision is replaced by the following in the Business Auto and Motor Carrier Coverage Forms:

   **Who Is An Insured**

   The following are "insureds":

   a. You, your executives and partners (if you are a partnership) or members (if you are a limited liability company) are "insureds". However, executives, partners or members are not "insureds" for their own "autos".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow from one of your "employees" or a member of his or her household.

      **(1)** The owner of a covered "auto" you hire or borrow from one of your "employees" or a member of his or her household.

      **(2)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

      **(3)** Anyone other than your "employees", partners (if you are a partnership) or members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

   c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability. However, the owner or anyone else from whom you hire or borrow a covered "auto" is an "insured" only if that "auto" is a "trailer" connected to a covered "auto" you own.

2. The **Who Is An Insured** provision is replaced by the following in the Auto Dealers Coverage Form:

   **Who Is An Insured**

   The following are "insureds":

   a. You, your executives and partners (if you are a partnership) or members (if you are a limited liability company) are "insureds". However, executives, partners or members are not "insureds" for their own "autos".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      **(1)** The owner of a covered "auto" you hire or borrow from one of your "employees" or a member of his or her household.

      **(2)** Someone using a covered "auto" while he or she is working in a business of selling, servicing "autos" unless that business is yours.

      **(3)** Anyone other than your "employees", partners (if you are a partnership) or members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

   c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability. However, the owner or anyone else from whom you hire or borrow a covered "auto" is an "insured" only if that "auto" is a "trailer" connected to a covered "auto" you own.

   d. Your "employee" while using a covered "auto" you do not own, hire or borrow in your business or your personal affairs.

3. The **Care, Custody Or Control Exclusion** relating to property owned or transported by the "insured", or in the "insured's" care, custody or control, does not apply to "property damage" to a residence or private garage caused by a covered "auto" of the private passenger type.

4. The **Leased Autos** Exclusion in the Auto Dealers Coverage Form is replaced by the following:

   **Leased Autos**

   Any covered "auto" while leased to others.

5. The **Operations** Exclusion in the Business Auto and Motor Carrier Coverage Forms is replaced by the following:

   **Operations**

   "Bodily injury" or "property damage" arising out of the operation of:

   a. Any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment"; or

Exhibit B

b. Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to registration for use on public roads where it is licensed or principally garaged.

6. The following exclusion is added:

This insurance does not apply to:

Any "insured" for "bodily injury" or "property damage" arising out of the operation of any vehicle by that "insured" and while that "insured's" driver's license is under suspension or revocation.

However, this exclusion does not apply:

a. For amounts up to the minimum limits of liability required by the New Hampshire Financial Responsibility Law; or

b. If the suspension or revocation can be directly attributed to our failure to file the necessary certification material with the director of the division of motor vehicles.

7. The last paragraph in C. Limit Of Insurance in the Business Auto and Motor Carrier Coverage Forms and the last paragraph in 5. Limit Of Insurance – Covered Autos Liability in the Auto Dealers Coverage Form are replaced by the following:

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

**C. Changes In Physical Damage Coverage**

1. If the Coverage Part provides Comprehensive Coverage, no deductible applies to "loss" caused by the sinking, burning, collision or derailment of any conveyance transporting a covered "auto".

2. Any Collision Coverage Deductible shown in the Declarations does not apply if the "loss" is caused by an "uninsured motor vehicle" and the operator of the "uninsured motor vehicle" has been positively identified and is solely at fault.

**D. Changes In Auto Medical Payments Coverage**

1. Exclusion C.2. is replaced by the following:

This insurance does not apply to:

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto" insured under this Coverage Form) owned by you or furnished or available for your regular use.

2. Exclusion C.3. is replaced by the following:

This insurance does not apply to:

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto" insured under this Coverage Form) owned by or furnished or available for the regular use of any "family member".

3. Exclusion C.5. relating to "bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" applies only if workers' compensation benefits are available or required.

4. The following exclusion is added:

This insurance does not apply to:

"Bodily injury" sustained by an "insured":

a. While that "insured" is operating any "auto"; and

b. While that "insured's" driver's license is suspended or revoked.

However, this exclusion does not apply if the suspension or revocation can be directly attributed to our failure to file the necessary certification material with the director of the division of motor vehicles.

5. Paragraph C. Limit Of Insurance is replaced by the following:

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and a health insurance policy.

6. The following condition is added:

**Assignment Of Benefits**

Auto Medical Payments Coverage shall not be assignable to any health care provider.

**E. Changes In General Conditions**

1. Paragraph 5.c. of the Other Insurance provision in the Business Auto and Auto Dealers Coverage Forms is replaced by the following:

c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract". However, this Paragraph c. does not apply to that part of any contract or agreement entered into, as part of your business, pertaining to the rental, by you or any of your "employees", of any "auto".

2. Paragraph 5.g. of the Other Insurance – Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form is replaced by the following:

g. Regardless of the provisions of Paragraphs a., b., c., d. and e. above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract". However, this Paragraph g. does not apply to that part of any contract or agreement entered into, as part of your business, pertaining to the rental, by you or any of your "employees", of any "auto".

3. The Premium Audit provision is amended to add the following:

An audit to determine the final premium due or to be refunded will be completed within 120 days after the expiration or cancellation of the Policy or anniversary date, if this is a continuous policy or a policy written for a term longer than one year, provided that there is no bona fide dispute.

The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request. Except as provided above, the Examination Of Your Books And Records Common Policy Condition continues to apply.

**F. Changes In Definitions**

1. As used in this endorsement:

"Uninsured motor vehicle" means a land motor vehicle or "trailer":

a. For which no liability bond or policy applies at the time of an "accident";

b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle, "trailer" or semitrailer for which a liability bond or policy applies at the time of an "accident", but its limit for "bodily injury" liability is either:

(1) Less than the limit of liability for this coverage; or

(2) Reduced by payments to others injured in the "accident" to an amount which is less than the limit of liability for this coverage;

c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

d. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must:

(1) Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

(2) Cause an "accident" resulting in "bodily injury" to an "insured" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

If there is no physical contact with the hit-and-run vehicle, the facts of the "accident" must be corroborated by competent evidence other than the testimony of any person having a claim under this or any similar insurance as a result of such "accident".

However, "uninsured motor vehicle" does not include any vehicle:

(1) Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

(2) Owned by a governmental unit or agency; or

(3) Designed for use mainly off public roads while not on public roads.

2. The following definitions replace those contained in the Business Auto and Motor Carrier Coverage Forms:

a. The definition of "auto" is replaced by the following:

"Auto" means:

1. Any land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to registration for use on public roads where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

b. The definition of "mobile equipment" is replaced by the following:

"Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a. Power cranes, shovels, loaders, diggers or drills; or

b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

b. Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

a. Equipment designed primarily for:

(1) Snow removal;

(2) Road maintenance, but not construction or resurfacing; or

(3) Street cleaning;

b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to registration for use on public roads where it is licensed or principally garaged. Land vehicles that are subject to registration for use on public roads are considered "autos".

---

POLICY NUMBER: ISA H25295304          Endorsement Number: 96

COMMERCIAL AUTO
CA 31 26 02 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW HAMPSHIRE UNINSURED MOTORISTS COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| | |
|---|---|
| Named Insured:    Medtronic plc | |
| Endorsement Effective Date: | |

**SCHEDULE**

| Limit Of Insurance | | |
|---|---|---|
| Bodily Injury: | $ See DA40002 | Each "Accident" |
| Property Damage: | $ Included | Each "Accident" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

Uninsured Motorists Coverage also applies to damages an "insured" is legally entitled to recover from the owner or driver of a motor vehicle to which a "property damage" liability policy applies at the time of the "accident". However, this applies only when the insuring or bonding company is unable to pay the limits of its "property damage" coverage because of insolvency.

The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle", we will pay under this coverage only if Paragraph a. or b. below applies:

a. The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or

b. A tentative settlement has been made between an "insured" and the insurer of the vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" and we:

(1) Have been given prompt written notice of such tentative settlement; and

(2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

a. The Named Insured and any "family members".

b. Anyone else "occupying" an "insured motor vehicle" or a temporary substitute for an "insured motor vehicle". The "insured motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

a. Anyone "occupying" an "insured motor vehicle" or a temporary substitute for an "insured motor vehicle". The "insured motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

c. The Named Insured for "property damage" only.

**C. Exclusions**

This insurance does not apply to any of the following:

1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle", in accordance with the procedure described in Paragraph **A.2.b.**

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. The direct or indirect benefit of any insurer of property.

4. "Bodily injury" sustained by:

a. The Named Insured while "occupying" or when struck by any vehicle owned by the Named Insured that is not an "insured motor vehicle" for Uninsured Motorists Coverage under this Coverage Form;

b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not an "insured motor vehicle" for Uninsured Motorists Coverage under this Coverage Form; or

c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

d. The following "insureds":

(1) The Named Insured or any "family member":

(a) While that "insured" is operating any "auto"; and

(b) While that "insured's" driver's license is suspended or revoked.

(2) Any other "insured":

(a) While operating an "insured motor vehicle"; and

(b) While that "insured's" driver's license is suspended or revoked.

However, this exclusion does not apply if the suspension or revocation can be directly attributed to our failure to file the necessary certification material with the director of the division of motor vehicles.

5. Anyone using a vehicle without a reasonable belief that the person is entitled to do so. This exclusion does not apply to a "family member" using the "insured motor vehicle" which is owned by the Named Insured.

6. Punitive or exemplary damages.

7. "Bodily injury" or "property damage" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

1. Regardless of the number of "insured motor vehicles", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from bodily injury sustained in any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

Regardless of the number of "insured motor vehicles", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all "property damage" resulting from any one "accident" is the limit of liability required by the New Hampshire Financial Responsibility Law.

The coverage limit for Uninsured And Underinsured Motorists Coverage applies separately to damages caused by an "accident" with an "uninsured motor vehicle" and an "underinsured motor vehicle".

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form, Medical Payments Coverage endorsement, Underinsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement. This provision does not apply if duplicate payments for Uninsured Motorists Coverage are also provided for the same elements of "loss" under Medical Payments Coverage.

We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

Uninsured Motorists Coverage for "property damage" is excess to any other collectible coverage.

3. Any amount payable for "property damage" under this insurance will not reduce the limit of insurance applicable to an "insured" for "bodily injury" under this insurance.

**E. Changes In Conditions**

The Conditions are changed for Uninsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

c. If the coverage under this Coverage Form is provided:

(1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

(2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

a. Promptly notify the police if a hit-and-run driver is involved; and

**b.** Promptly send us copies of the legal papers if a "suit" is brought.

**c.** A person seeking coverage from an insurer, other or operator of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such vehicle.

**3. Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

**Transfer Of Rights Of Recovery Against Others To Us**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights do not apply under this provision with respect to damages caused by an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" if we:

**a.** Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle"; and

**b.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**a.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of this coverage; and

**b.** We also have a right to recover the advance payment.

**4.** The following condition is added:

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages, then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally. However, the "insured" will not be required to advance the expenses of arbitration.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding subject to a party's statutory right to judicial relief under the law.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to the individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Insured motor vehicle" means a self-propelled vehicle, "trailer" or semitrailer for which the Named Insured has purchased Uninsured Motorists Coverage. However, it does not include a farm tractor or crawler-type tractor or a vehicle operated exclusively upon stationary tracks.

**3.** "Occupying" means is, upon, getting in, on, out or off.

**4.** "Property damage" means physical injury to or destruction of:

**a.** An "insured motor vehicle" which is registered or principally garaged in New Hampshire and which is owned by the Named Insured or, if the Named Insured is an individual, such Named Insured's spouse, if a resident of the Named Insured's household.

**b.** Any property owned by the Named Insured or, if the Named Insured is an individual, any "family member", which is contained in the "insured motor vehicle".

**c.** Any property owned by anyone else which is contained in the "insured motor vehicle" while the person is "occupying" the "insured motor vehicle".

**5.** "Uninsured motor vehicle" means a land motor "vehicle" or "trailer":

**a.** For which no liability bond or policy applies at the time of an "accident";

**b.** That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle, "trailer" or semitrailer for which a liability bond or policy applies at the time of an "accident", but its limit for "bodily injury" liability is either:

**(1)** Less than the limit of liability for this coverage; or

**(2)** Reduced by payments to others injured in the "accident" to an amount which is less than the limit of liability for this coverage;

**c.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

**d.** That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must:

**(1)** Hit an "insured", an "insured motor vehicle" or a vehicle an "insured" is "occupying"; or

**(2)** Cause an "accident" resulting in "bodily injury" to an "insured" without hitting an "insured", an "insured motor vehicle" or a vehicle an "insured" is "occupying".

If there is no physical contact with the hit-and-run vehicle, the facts of the "accident" must be corroborated by competent evidence other than the testimony of any person having a claim under this or any similar insurance as the result of such "accident".

However, "uninsured motor vehicle" does not include any vehicle:

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

**b.** Owned by a governmental unit or agency; or

**c.** Designed for use mainly off public roads while not on public roads.

POLICY NUMBER: ISA H25295304

Endorsement Number: 97

**COMMERCIAL AUTO**
CA 01 88 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW JERSEY CHANGES

For a covered "auto" licensed or principally garaged in New Jersey, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Paragraph **1.b.(4)** of the **Who Is An Insured** provision is replaced by the following:

   **(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

   However, this paragraph does not apply for coverage up to the minimum financial responsibility limits specified in N.J.S.A. 39:6B-1.

2. **Exclusion 11. Pollution** is amended by the addition of the following:

   This exclusion does not apply for coverage up to the minimum financial responsibility limits specified in N.J.S.A. 39:6B-1.

**B. Changes In Conditions**

1. The following is added to the **Loss Payment – Physical Damages Coverages** Condition:

   If we pay the amount necessary to repair the stolen or damaged property, you have the option to use either:

   **a.** An "auto" repair facility with whom we have an arrangement; or

   **b.** An "auto" repair facility of your choice;

   in any repairs to the "auto".

   If you choose to use an "auto" repair facility other than an "auto" repair facility with whom we have an arrangement, we will pay you in accordance with the terms and conditions, including price, provided by the "auto" repair facility with whom we have an arrangement.

CA 01 88 10 13   © Insurance Services Office, Inc., 2012   Page 1 of 1

Exhibit B

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 98

**COMMERCIAL AUTO**
CA 01 84 11 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW JERSEY CHANGES – PHYSICAL DAMAGE INSPECTION

For a covered "private passenger auto" licensed or principally garaged in New Jersey, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following provisions are added to **Physical Damage Coverage** and apply in place of any conflicting policy provision:

**A. Changes In Physical Damage Coverage**

**Mandatory Inspection For Physical Damage Coverage**

1. We have the right to inspect any "private passenger auto", including a non-owned "private passenger auto", insured or intended to be insured under this Coverage Form, before Physical Damage Coverage shall be effective.

2. During the term of the Policy, coverage for an additional or replacement "private passenger auto" shall not become effective until the "insured" notifies us and requests coverage for the "private passenger auto". However, if the "insured" replaces a "private passenger auto" insured with us for at least 12 months before the replacement date with a "private passenger auto" acquired during the policy period, we will provide the same coverage which applied to the replaced "private passenger auto" for three days beginning on the date the "insured" acquires the replacement "private passenger auto". We will also provide an additional day of coverage for each Saturday, Sunday or New Jersey state holiday falling within the three days. After three days, coverage will not apply until the "insured" notifies us and requests coverage for the "private passenger auto".

3. When an inspection is required by us, the "insured" shall cooperate and make the "private passenger auto" available for the inspection.

**B. Changes In Definitions**

As used in this endorsement:

1. "Occupying" means in, upon, getting in, on, out or off.

2. "Private passenger auto" means:

   **a.** A private passenger "auto" of a private passenger or station wagon type that is owned or hired and is neither:

   **(1)** Used as a public or livery conveyance for passengers including, but not limited to, any period of time an "auto" is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the "auto"; nor

   **(2)** Rented to others with a driver; and

   **b.** A motor vehicle with a pickup body, a delivery sedan, a van, or a panel truck or camper-type vehicle used for recreational purposes owned by an individual or by husband and wife who are residents of the same household, not customarily used in the occupation, profession or business of the "insured" other than farming or ranching. An "auto" owned by a farm family co-partnership or corporation, which is principally garaged on a farm or ranch and otherwise meets the definitions contained in this section, shall be considered a private passenger auto owned by two or more relatives resident in the same household.

CA 01 84 11 16   © Insurance Services Office, Inc., 2016   Page 1 of 2

Exhibit B

3. "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

POLICY NUMBER: ISA H25295304

Endorsement Number: 99

**COMMERCIAL AUTO**
**CA 22 30 01 20**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW JERSEY PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, New Jersey, this endorsement modifies insurance provided under the following:

>AUTO DEALERS COVERAGE FORM
>BUSINESS AUTO COVERAGE FORM
>MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| |
|---|
| Named Insured: Medtronic plc |
| Endorsement Effective Date: |

**SCHEDULE**

| I. Extended Medical Expense Benefits | |
|---|---|
| **Benefits** | **Limit Of Insurance** |
| Medical Expenses | $ Per Person Per "Accident" |

**II. Medical Expense Benefits Deductible**

Unless otherwise indicated below, medical expense benefits are subject to a deductible of $250 per "accident".

☐ When indicated to the left, medical expense benefits applicable to:

  A. The "named insured" and, if the "named insured" is an individual, any "family members" will be subject to a deductible of $      per "accident" instead of the $250 deductible; and

  B. An "eligible injured person" other than the "named insured" and, if the "named insured" is an individual, any "family members" shall be subject to a separate deductible of $250 per "accident".

**III. Medical Expense Benefits Copayment**

Medical expense benefits are subject to a copayment of 20% per "accident" for amounts payable between the applicable deductible and $5,000.

**IV. Deletion Of Benefits Other Than Medical Expenses Option**

☐ All Personal Injury Protection Benefits other than medical expense benefits are deleted with respect to the "named insured" and, if the "named insured" is an individual, any "family members", when indicated to the left. Refer to the Deletion Of Benefits Other Than Medical Expenses Provision.

**V. Medical Expense Benefits-As-Secondary Option**

☐ If the "named insured" is an individual, medical expense benefits with respect to the "named insured" and "family members" are secondary to the health benefits plans under which the "named insured" and "family members" are insured, when indicated to the left.

| VI. | Personal Injury Protection Coverage For Pedestrians | |
|---|---|---|
| | Coverage ONLY is provided for "private passenger automobiles". | Premium |
| | | $ |
| VII. | Pedestrian Personal Injury Protection | |
| | Coverage ONLY is provided for the following vehicles designed for use principally on public roads which are not "private passenger automobiles" and to which the liability coverage of this Coverage Form applies. | |
| | Description Of Vehicle | Premium |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## A. Coverages

### 1. Personal Injury Protection

We will pay Personal Injury Protection Benefits for "bodily injury" sustained by an "eligible injured person" caused by an "accident" occurring during the policy period and arising out of the ownership, maintenance or use, including loading or unloading, of a "private passenger auto" as an auto.

These Personal Injury Protection Benefits consist of:

#### a. Medical Expense Benefits

An amount not exceeding $250,000 per person per "accident" for reasonable and necessary expenses incurred for medical, surgical, rehabilitative and diagnostic treatments and services, hospital expenses, ambulance or transportation services, medication and nonmedical expenses that are prescribed by a treating "health care provider" for a permanent or significant brain, spinal cord or disfiguring injury.

Nonmedical expense means charges for products and devices, not exclusively used for medical purposes or as durable medical equipment, such as vehicles, durable goods, equipment, appurtenances, improvements to real or personal property, fixtures and services and activities such as recreational activities, trips and leisure activities.

All medical expenses must be rendered by a "health care provider", be "clinically supported" and consistent with the symptoms, diagnosis or indications of the "insured". They must also be consistent with the most appropriate level of service that is in accordance with the standards of good practice and standard professional treatment protocols, including care paths for an "identified injury". They must not be rendered primarily for the convenience of the "insured" or "health care provider" nor may they involve unnecessary testing or treatment.

However, medical expenses include any nonmedical remedial treatment rendered in accordance with recognized religious methods of healing.

#### b. Income Continuation Benefits

An amount not exceeding a limit of $100 per week and a total limit of $5,200 payable for the loss of income of an "income producer" during his or her lifetime, as a result of "bodily injury" disability, not to exceed net "income" normally earned during the period in which benefits are payable.

#### c. Essential Services Benefits

An amount not exceeding a limit of $12 per day and a total limit of $4,380 payable to an "eligible injured person" as reimbursement for payments made to others, for substitute essential services of the type actually rendered during his or her lifetime and which he or she would ordinarily have performed not for "income" but for the care and maintenance of himself or herself and persons related to the "eligible injured person" by blood, marriage or adoption (including a ward or foster child) who are residents of the same household as the "eligible injured person".

#### d. Death Benefits

The amount or amounts payable in the event of the death of an "eligible injured person" as determined below:

(1) If the "eligible injured person" was an "income producer" at the time of the "accident", an amount equal to the difference between $5,200 and all basic income continuation benefits paid for any loss of "income" resulting from his or her injury prior to his or her death; or

(2) If the "eligible injured person" ordinarily performed essential services for the care and maintenance of himself or herself, his or her family or family household, an amount equal to the difference between $4,380 and all basic essential services benefits paid with respect to his or her injury prior to death.

#### e. Funeral Expense Benefits

An amount not exceeding a limit of $1,000 for reasonable funeral, burial and cremation expenses incurred.

### 2. Extended Medical Expense Benefits

We will pay Extended Medical Expense Benefits for "bodily injury" sustained by an "insured person" caused by an "accident" occurring during the policy period and arising out of the ownership, maintenance or use, including loading and unloading, of a "highway vehicle" not owned by or furnished or available for the regular use of the "named insured" or any "family member".

Subject to the limits shown in the Schedule or Declarations, Extended Medical Expense Benefits consist of the following:

Reasonable expenses incurred for medical, surgical, rehabilitative and diagnostic treatments and services, hospital expenses, ambulance or transportation services, medication and nonmedical expenses that are prescribed by a treating "health care provider" for a permanent or significant brain, spinal cord or disfiguring injury.

Nonmedical expense means charges for products and devices, not exclusively used for medical purposes or as durable medical equipment, such as vehicles, durable goods, equipment, appurtenances, improvements to real or personal property, fixtures and services and activities such as recreational activities, trips and leisure activities.

### 3. Pedestrian Personal Injury Protection

This coverage applies to "pedestrians" and only to "accidents" which occur during the policy period in New Jersey. With respect to an "insured motor vehicle" as described for this coverage, Pedestrian Personal Injury Protection Coverage is the only Personal Injury Protection Coverage for that vehicle.

We will pay Pedestrian Personal Injury Protection Benefits to an "eligible injured person". These Pedestrian Personal Injury Protection Benefits consist of:

**a. Medical Expense Benefits**

An amount not exceeding $250,000 per person per "accident" for reasonable and necessary expenses incurred for medical, surgical, rehabilitative and diagnostic treatments and services, hospital expenses, ambulance or transportation services, medication and nonmedical expenses that are prescribed by a treating "health care provider" for a permanent or significant brain, spinal cord or disfiguring injury.

Nonmedical expense means charges for products and devices, not exclusively used for medical purposes or as durable medical equipment, such as vehicles, durable goods, equipment, appurtenances, improvements to real or personal property, fixtures and services and activities such as recreational activities, trips and leisure activities.

All medical expenses must be rendered by a "health care provider", be "clinically supported" and consistent with the symptoms, diagnosis or indications of the "insured". They must also be consistent with the most appropriate level of service that is in accordance with the standards of good practice and standard professional treatment protocols, including care paths for an "identified injury". They must not be rendered primarily for the convenience of the "insured" or "health care provider" nor may they involve unnecessary testing or treatment.

However, medical expenses include any nonmedical remedial treatment rendered in accordance with recognized religious methods of healing.

**b. Income Continuation Benefits**

An amount not exceeding a limit of $100 per week and a total limit of $5,200 payable for the loss of income of an "income producer" during his or her lifetime, as a result of "bodily injury" disability; not to exceed net "income" normally earned during the period in which benefits are payable.

**c. Essential Services Benefits**

An amount not exceeding a limit of $12 per day and a total limit of $4,380 payable to an "eligible injured person" as reimbursement for payments made to others, for substitute essential services of the type actually rendered during his or her lifetime and which he or she would ordinarily have performed not for "income" but for the care and maintenance of himself or herself and persons related to the "eligible injured person" by blood, marriage or adoption (including a ward or foster child) who are residents of the same household as the "eligible injured person".

**d. Death Benefits**

The amount or amounts payable in the event of the death of an "eligible injured person" as determined below:

(1) If the "eligible injured person" was an "income producer" at the time of the "accident", an amount equal to the difference between $5,200 and all basic income continuation benefits paid for any loss of "income" resulting from his or her injury prior to his or her death; or

(2) If the "eligible injured person" ordinarily performed essential services for the care and maintenance of himself or herself, his or her family or family household, an amount equal to the difference between $4,380 and all basic essential services benefits paid with respect to his or her injury prior to death.

**e. Funeral Expense Benefits**

An amount not exceeding $1,000 for reasonable funeral, burial and cremation expenses incurred.

All medical expenses must be rendered by a "health care provider", be "clinically supported" and consistent with the symptoms, diagnosis or indications of the "insured". They must also be consistent with the most appropriate level of service that is in accordance with the standards of good practice and standard professional treatment protocols, including care paths for an "identified injury". They must not be rendered primarily for the convenience of the "insured" or "health care provider" nor may they involve unnecessary testing or treatment.

However, medical expenses include any nonmedical remedial treatment rendered in accordance with recognized religious methods of healing.

**B. Exclusions**

**1. Personal Injury Protection**

We will not pay Personal Injury Protection Benefits for "bodily injury":

**a.** To a person whose conduct contributed to the "bodily injury" in any of the following ways:

(1) While committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer; or

(2) While acting with specific intent to cause injury or damage to himself or herself or others;

**b.** To any person who, at the time of the "accident", was the owner or registrant of a "private passenger auto" registered or principally garaged in New Jersey that was being operated without Personal Injury Protection Coverage;

**c.** To any person who is not occupying a covered "auto", other than the "named insured" or any "family member" or a resident of New Jersey, if the "accident" occurs outside of New Jersey;

**d.** Arising out of the ownership, maintenance or use, including loading or unloading, of any vehicle while located for use as a residence or premises other than for transitory recreational purposes;

**e.** Arising directly or indirectly out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these;

**f.** Resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material;

**g.** To any person, other than the "named insured" or any "family member", if such person is entitled to New Jersey Personal Injury Protection Coverage as a "named insured" or "family member" under the terms of another policy; or

**h.** To any "family member", if such person is entitled to New Jersey Personal Injury Protection Coverage as a "named insured" under the terms of another policy; or

**i.** To any person operating or occupying a "private passenger auto" without the permission of the owner or the "named insured" under the Policy insuring that "auto";

**j.** For the following "diagnostic tests":

(1) Brain mapping, when not done in conjunction with appropriate neurodiagnostic testing;

(2) Iridology;

(3) Mandibular tracking and simulation;

(4) Reflexology;

(5) Spinal diagnostic ultrasound;

(6) Surface electromyography (surface EMG);

(7) Surrogate arm mentoring; or

(8) Any other "diagnostic test" that is determined to be ineligible for coverage under Personal Injury Protection Coverage by New Jersey law or regulation;

**k.** For the following "diagnostic tests" when used to treat temporomandibular joint disorder (TMJ/D):

(1) Doppler ultrasound;

(2) Electroencephalogram (EEG);

(3) Needle electromyography (needle EMG);

(4) Sonography;

(5) Thermograms/thermographs; or

(6) Videofluoroscopy.

**2. Extended Medical Expense Benefits**

The exclusions that apply to Personal Injury Protection also apply to Extended Medical Expense Benefits, except Exclusion **c.**, which does not apply to Extended Medical Expense Benefits. In addition, the following exclusions are added to Extended Medical Expense Benefits:

**a.** We will not pay Extended Medical Expense Benefits for "bodily injury" to any person, other than the "named insured" or any "family member" or a resident of New Jersey, if the "accident" occurs outside of New Jersey.

**b.** We will not pay Extended Medical Expense Benefits for "bodily injury" to any "insured" who is entitled to benefits for the "bodily injury" under:

**(1)** Personal Injury Protection Coverage; or

**(2)** Any:

**(a)** Workers' compensation law; or

**(b)** Medicare provided under federal law.

**c.** We will not pay Extended Medical Expense Benefits for "bodily injury" to any "insured" who would be entitled to benefits for the "bodily injury" under Personal Injury Protection Coverage, except for the application of a:

**(1)** Deductible;

**(2)** Copayment; or

**(3)** Medical fee schedule promulgated by the New Jersey Department of Banking and Insurance.

**3. Pedestrian Personal Injury Protection**

The exclusions that apply to Personal Injury Protection also apply to Pedestrian Personal Injury Protection, except Exclusions **b.** and **c.**, which do not apply to Pedestrian Personal Injury Protection Coverage.

**C. Limit Of Insurance**

**1.** Any amount payable by us as Personal Injury Protection benefits for "bodily injury" shall be reduced by:

**a.** All amounts paid, payable or required to be provided under any workers' compensation or employees' temporary disability law.

**b.** Medicare provided under federal law.

**c.** Benefits actually collected that are provided under federal law to active and retired military personnel.

**2.** Any amount payable by us as medical expense benefits will be limited by medical fee schedules, as promulgated by the New Jersey Department of Banking and Insurance for specific injuries or services, or the usual, customary and reasonable fee, whichever is less.

**3.** Any amounts payable for medical expense benefits as the result of any one "accident" shall be:

**a.** Reduced by the applicable deductible indicated in the Schedule or in the Declarations; and

**b.** Subject to the copayment of 20% for the amount between the applicable deductible and $5,000.

**4.** The applicable limit of income continuation benefits applies separately to each full regular and customary work week of an "eligible injured person". If this disability from work or employment consists of or includes only a part of such a week, we shall be liable for only that proportion of such weekly limit that the number of days lost from work or employment during the partial week bears to the number of days in his or her full work week.

**5.** If the Schedule or Declarations indicates that the "named insured" has elected the Medical Expense Benefits-As-Secondary Option, the following provisions apply to medical expense benefits:

**a. Priority Of Benefits**

**(1)** The health benefits plans under which the "named insured" and any "family member" are insured shall provide primary coverage for "allowable expenses" incurred by the "named insured" and any "family member" before any medical expense benefits are paid by us.

**(2)** This insurance shall provide secondary coverage for medical expense benefits for "allowable expenses", which remained uncovered.

**(3)** The total benefits paid by the health benefits plans and this insurance shall not exceed the total amount of "allowable expenses".

**b. Determination Of Medical Expense Benefits Payable**

**(1)** To calculate the amount of "actual benefits" to be paid by us, we will first determine the amount of "eligible expenses" which would have been paid by us, after application of the deductible and copayment indicated in the Schedule or Declarations, had the "named insured" not elected the Medical Expense Benefits-As-Secondary Coverage Option.

**(2)** If the remaining "allowable expenses" are:

**(a)** Less than the benefits calculated in Paragraph **(1)** above, we will pay "actual benefits" equal to the remaining "allowable expenses", without reducing the remaining "allowable expenses" by the deductible or copayment.

**(b)** Greater than the benefits calculated in Paragraph **(1)** above, we will pay "actual benefits" equal to the benefits calculated in Paragraph **(1)** above, without reducing the remaining "allowable expenses" by the deductible or copayment.

**(3)** We will not reduce the "actual benefits" determined in Paragraph **2.**:

**(a)** By any deductibles or copayments of the health benefits plans which have provided primary coverage for medical expense benefits; or

**(b)** For any "allowable expense" remaining uncovered which otherwise would not be an "eligible expense" under Personal Injury Protection Coverage, except as set forth in Paragraph **(4)** below.

**(4)** In determining remaining uncovered "allowable expenses", we shall not consider any amount for items of expense which exceed the dollar or percent amounts recognized by the medical fee schedules promulgated by the New Jersey Department of Banking and Insurance.

**(5)** The total amount of medical expense benefits for the "named insured" or any "family member" per "accident" shall not exceed the maximum amount payable for medical expense benefits under this Policy.

**c. Health Benefits Plan Ineligibility**

**(1)** If, after the "named insured" has elected the Medical Expense Benefits-As-Secondary Coverage Option, it is determined that the "named insured" or any "family member" did not have a health benefits plan in effect at the time an "accident" occurred which resulted in "bodily injury" to the "named insured" or any "family member", medical expense benefits shall be provided to the "named insured" or any "family member", subject to the following:

**(a)** Only Paragraph **1.** of the Limit Of Insurance Provision will apply with respect to medical expense benefits.

**(b)** Any amount payable for medical expense benefits for the "named insured" and any "family member" as a result of any one "accident" shall:

**(i)** Be reduced by a deductible equal to the sum of $750 plus the applicable deductible indicated in the Schedule or in the Declarations; and

**(ii)** Be subject to a copayment of 20% for amounts less than $5,000 after the deductible has been applied.

**(iii)** Be determined:

I. By the medical fee schedules promulgated by the New Jersey Department of Insurance; or

ii. By us, on a reasonable basis, considering the medical fee schedules for similar services or equipment in the region where the service or equipment was provided, if an item of expense is not included on the medical fee schedules.

**(iv)** Not exceed the maximum amount payable for medical expense benefits under this Policy.

**(2)** All items of medical expense incurred by the "named insured" or any "family member" for the treatment of "bodily injury" shall be "eligible expenses" to the extent the treatment of procedure from which the expenses arose:

**(a)** Is recognized on the medical fee schedules promulgated by the New Jersey Department of Banking and Insurance; or

**(b)** Are reasonable expenses in accordance with Section 4 of the New Jersey Reparation Reform Act.

**(3)** We shall be entitled to recover the difference between:

**(a)** The reduced premium paid under this Policy for the Medical Expense Benefits-As-Secondary Option; and

**(b)** The premium which would have been paid under this Policy had the "named insured" not elected such option.

We will not provide any premium reduction for the Medical Expense Benefits-As-Secondary Option for the remainder of the policy period.

**6.** The Limit Of Insurance shown in the Schedule or Declarations for weekly income continuation benefits shall be prorated for any period of "bodily injury" disability less than one week.

**D. Changes In Conditions**

**1.** The **Duties In The Event Of Accident, Claim, Suit Or Loss Condition** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are amended by the addition of the following:

**a.** If an "eligible injured person", "insured person" or the legal representative or survivors of either institutes legal action to recover damages for injury against a person or organization who is or may be liable in tort therefor, he or she must promptly give us a copy of the summons and complaint or other process served in connection with the legal action.

**b.** The "eligible injured person", "insured person" or someone on their behalf must promptly give us written proof of claim including:

**(1)** Full particulars of the nature and extent of the "bodily injury"; and

**(2)** Such other information that will help us determine the amount due and payable.

**c.** The "eligible injured person" or "insured person" must submit to physical examination by physicians when and as often as we reasonably require and a copy of the medical report will be forwarded to such "eligible injured person" or "insured person" if requested.

**d.** In the event of "accident", claim, "suit" or "loss", if the notice, proof of claim or other reasonably obtainable information regarding the accident is received by us more than 30 days after the accident, we may impose an additional medical expense benefits copayment in accordance with New Jersey law or regulation. This copayment shall be in addition to:

**(1)** Any medical expense benefits deductible or copayment; or

**(2)** Any penalty imposed in accordance with our **Decision Point Review Plan.**

**2.** The **Policy Period, Coverage Territory** Condition for Personal Injury Protection and Extended Medical Expense Benefits is replaced by the following:

This Coverage Part applies only to "accidents" which occur during the policy period:

**a.** Anywhere in the world.

**b.** For pedestrian Personal Injury Protection Coverage, the coverage territory is New Jersey.

**3.** For Extended Medical Expense Benefits, the **Two Or More Coverage Forms Or Policies Issued By Us** Condition does not apply. However, no one will be entitled to receive duplicate payments for the same elements of "loss".

**4.** The following Reimbursement And Trust Condition is added:

Subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act, if we make any payment to any "eligible injured person" or "insured person" under this coverage and that person recovers from another party, he or she shall hold the proceeds in trust for us and pay us back the amount we have paid. We will have a lien against such payment, and may give notice of the lien to the person or organization causing "bodily injury", his or her agent or insurer or a court having jurisdiction in the matter.

**5.** The following Payment Of Personal Injury Protection Benefits Conditions are added:

**a.** Medical expense benefits and essential services benefits may be paid at our option to the "eligible injured person", "insured person" or the person or organization furnishing the products or services for which such benefits are due. These benefits shall not be assignable except to providers of service benefits. Any such assignment is not enforceable unless the provider of service benefits agrees to be subject to the requirements of our **Decision Point Review Plan.** In the event of the death of an "eligible injured person" or "insured person" any amounts payable, but unpaid prior to death, for medical expense benefits are payable to the "eligible injured person's" or "insured person's" estate.

**b.** Benefits payable under Paragraph A.1.d.(1) of the description of death benefits are payable to the "eligible injured person's" surviving spouse, or if there is no surviving spouse, to his or her surviving children, or if there is not a surviving spouse or any surviving children, to the "eligible injured person's" estate.

**c.** Benefits payable under Paragraph A.1.d.(2) of the description of death benefits are payable to the person who has incurred the expense of providing essential services.

**d.** Funeral expense benefits are payable to the "eligible injured person's" or "insured person's" estate.

**6.** The following **Deletion Of Benefits Other Than Medical Expenses Option** Condition is added:

When the Schedule or the Declarations indicates that the Deletion Of Benefits Other Than Medical Expenses Option applies, we will pay Personal Injury Protection Benefits consisting only of medical expense benefits for the "named insured" and "family members".

**7.** The following **Employee Benefits Reimbursement** Condition is added:

If the "eligible injured person" or "insured person" fails to apply for workers' compensation benefits or employees' temporary disability benefits for which that person is eligible, we may immediately apply to the provider of these benefits for reimbursement of any Personal Injury Protection Benefits that we have paid.

**8.** The following **Proof Of Health Benefits Plan Coverage** Condition is added:

If the "named insured" has elected the Medical Expense Benefits-As-Secondary Option, the "named insured" shall provide proof that the "named insured" and "family members" are insured by health insurance coverage or benefits in a manner and to an extent approved by the New Jersey Department of Banking and Insurance.

**9.** The following **Special Requirements For Medical Expenses** Conditions are added:

**a.** Care Paths For "Identified Injuries" (Medical Protocols)

**(1)** The New Jersey Department of Banking and Insurance has established by regulation the standard courses of medically necessary diagnosis and treatment for "identified injuries". These courses of diagnosis and treatments are known as care paths.

The care paths do not apply to treatment administered during "emergency care".

**(2)** Upon notification to us of a "bodily injury" covered under this Policy, we will advise the "insured" of the care path requirements established by the New Jersey Department of Banking and Insurance.

(3) Where the care paths indicate a decision point, further treatment or the administration of a diagnostic test is subject to our **Decision Point Review Plan.**

A decision point means the juncture in treatment where a determination must be made about the continuation or choice of further treatment of an "identified injury".

b. **Coverage For "Diagnostic Tests"**

(1) In addition to the care path requirements for an "identified injury", the administration of any of the following "diagnostic tests" is also subject to the requirements of our **Decision Point Review Plan:**

(a) Brain audio evoked potential (BAEP);

(b) Brain evoked potential (BEP);

(c) Computer assisted tomographic studies (CT, CAT Scan);

(d) Dynatron/cyber station/cybex;

(e) H-reflex Study;

(f) Magnetic resonance imaging (MRI);

(g) Nerve conduction velocity (NCV);

(h) Somasensory evoked potential (SSEP);

(i) Sonogram/ultrasound;

(j) Visual evoked potential (VEP);

(k) Any of the following "diagnostic tests" when not otherwise excluded under Exclusion j.:

(i) Brain mapping;

(ii) Doppler ultrasound;

(iii) Electroencephalogram (EEG);

(iv) Needle electromyography (needle EMG);

(v) Sonography;

(vi) Thermography/thermograms;

(vii) Videofluoroscopy; or

(l) Any other "diagnostic test" that is subject to the requirements of our **Decision Point Review Plan** by New Jersey law or regulation.

(2) The "diagnostic tests" listed under Paragraph (1) must be administered in accordance with New Jersey Department of Banking and Insurance regulations, which set forth the requirements for the use of "diagnostic tests" in evaluating injuries sustained in "auto" "accidents".

However, those requirements do not apply to "diagnostic tests" administered during "emergency care".

(3) We will pay for other "diagnostic tests" that are:

(a) Not subject to our **Decision Point Review Plan**; and

(b) Not specifically excluded under Exclusion j.; only if administered in accordance with the criteria for medical expenses as provided in this endorsement.

c. **Decision Point Review Plan**

(1) Coverage for certain medical expenses under this endorsement is subject to our **Decision Point Review Plan**, which provides appropriate notice and procedural requirements that must be adhered to in accordance with New Jersey law or regulation. We will provide a copy of this plan upon request, or in the event of any claim for medical expenses under this coverage.

(2) Our **Decision Point Review Plan** includes the following minimum requirements as prescribed by New Jersey law or regulation:

(a) The requirements of the **Decision Point Review Plan** only apply after the tenth day following the "accident".

(b) We must be provided prior notice as indicated in our plan, with appropriate "clinically supported" findings, that additional treatment for an "identified injury", the administration of a "diagnostic test" listed under Paragraph (1) or the use of durable medical equipment is required.

The notice and "clinically supported" findings may include a comprehensive treatment plan for additional treatment.

(3) Once we receive such notice with the appropriate "clinically supported" findings, we will, in accordance with our plan:

(a) Promptly review the notice and supporting materials; and

(b) If required as part of our review, request any additional medical records or schedule a physical examination.

(4) We will then determine and notify the "eligible injured person" or the "insured person" whether we will provide coverage for the additional treatment, "diagnostic test" or use of durable medical equipment as indicated in our plan and within the applicable three business day requirements specified in New Jersey Department of Banking and Insurance regulations.

Any determination we make will be based on the determination of a physician. If the physician prepares a written report concerning the examination we have required, such report will be made available to the "eligible injured person" upon request.

(5) Any physical examination of an "eligible injured person" or "insured person" scheduled by us will be conducted in accordance with our plan.

(6) We may deny reimbursement of further treatment, testing or use of durable medical equipment for repeated unexcused failure of an "eligible injured person" or "insured person" to appear for a physical scheduled examination required by us in accordance with our plan.

(7) A penalty will be imposed in accordance with our plan if:

(a) We do not receive proper notice and "clinically supported" findings; or

(b) Any "eligible injured person" or "insured person" fails to use a network in accordance with N.J.A.C. 11:3-4.8.

(c) We do not receive proper notice for treatment, "diagnostic tests" or durable medical equipment in accordance with the requirements of our **Decision Point Review Plan.**

However, no penalty will be imposed where the proper notice or findings were received by us and we thereafter failed to act in accordance with our plan to request further information, modify or deny reimbursement of further treatment, "diagnostic tests" or the use of durable medical equipment with respect to that notice or those findings.

d. **Dispute Resolution**

If we and any person seeking Personal Injury Protection Coverage do not agree as to the recovery of Personal Injury Protection under this endorsement, then the matter may be submitted to dispute resolution, on the initiative of any party to the dispute, in accordance with N.J.A.C. 11:3-5.6.

However, prior to submitting such matter to dispute resolution, providers who are assigned service benefits by an "eligible injured person" or "insured person", or have a power of attorney from such person, shall be subject to our internal appeals process in accordance with New Jersey law or regulation. Any request for dispute resolution may include a request for review by a medical review organization.

10. The following condition is added for **Personal Injury Protection and Pedestrian Personal Injury Protection:**

**Coordination And Nonduplication**

a. Regardless of the number of "autos" insured for basic personal injury protection coverage pursuant to Section 4 of the New Jersey Automobile Reparation Reform Act or the number of insurers or policies providing such coverage, there shall be no duplication of payment of basic Personal Injury Protection Benefits and the aggregate maximum amount payable under this and all applicable policies with respect to "bodily injury" to any one person as the result of any one "accident" shall not exceed the applicable amounts or limits specified in Section 4 of said Act.

b. If an "eligible injured person" under this coverage is also an "eligible injured person" under other complying policies, the insurer paying benefits to such person shall be entitled to recover from each of the other insurers an equitable pro rata share of the benefits paid. The pro rata share is the proportion that the insurer's liability bears to the total of all applicable limits. Complying Policy means a policy of automobile liability insurance maintained pursuant to the requirements of Section 3 of the New Jersey Automobile Reparation Reform Act and providing basic Personal Injury Protection Coverage as approved by the Commissioner of Insurance.

11. The following condition is added for Personal Injury Protection and Extended Medical Expense Benefits:

**Medical Payments Deletion**

In consideration of the coverage provided for Personal Injury Protection and Extended Medical Expense Benefits in Paragraphs A.1. and A.2. of this endorsement, and the adjustment of applicable rates because of "bodily injury" to an "eligible injured person", any auto medical payments coverage provided under the Coverage Part is deleted with respect to an "auto" which is a covered "auto".

E. **Definitions**

The **Definitions** section is amended as follows:

1. The definition of "bodily injury" is replaced by the following:

"Bodily injury" means bodily harm, sickness or disease, including an "identified injury" or death that results.

2. The following definitions are added for **Personal Injury Protection, Extended Medical Expense Benefits and Pedestrian Personal Injury Protection:**

a. "Actual benefits" means those benefits determined to be payable for "allowable expenses".

b. "Allowable expense" means a medically necessary, reasonable and customary item of expense covered as benefits by the "named insured's" or "family member's" health benefits plan or Personal Injury Protection Benefits as an "eligible expense", at least in part. When benefits provided are in the form of services, the reasonable monetary value of each such service shall be considered as both an "allowable expense" and a paid benefit.

c. "Clinically supported" means that a "health care provider", prior to selecting, performing or ordering the administration of a treatment or "diagnostic test", has:

(1) Physically examined the "eligible injured person" or "insured person" to ensure that the proper medical indications exist to justify ordering the treatment or test;

(2) Made an assessment of any current and/or historical subjective complaints, observations, objective findings, neurologic indications, and physical tests;

(3) Considered any and all previously performed tests that relate to the injury and the results and which are relevant to the proposed treatment or test; and

(4) Recorded and documented these observations, positive and negative findings and conclusions on the "insured's" medical records.

d. "Diagnostic test(s)" means a medical service or procedure utilizing any means other than bioanalysis, intended to assist in establishing a:

(1) Medical;

(2) Dental;

(3) Physical therapy;

(4) Chiropractic; or

(5) Psychological diagnosis;

for the purpose of recommending or developing a course of treatment for the tested patient to be implemented by the treating practitioner or by the consultant.

e. "Eligible expense" means:

(1) In the case of health benefits plans, that portion of the medical expenses incurred for the treatment of "bodily injury" which is covered under the terms and conditions of the plan, without application of the deductible(s) and copayment(s), if any.

(2) In the case of Personal Injury Protection Benefits, that portion of the medical expenses incurred for the treatment of "bodily injury" which, without considering any deductible and copayment, shall not exceed:

(a) The percent or dollar amounts specified on the medical fee schedules, or the actual billed expense, whichever is less; or

(b) The reasonable amount, as determined by us, considering the medical fee schedules for similar services or equipment in the region where the service or equipment was provided, when an incurred medical expense is not included on the medical fee schedules.

f. "Emergency care" means all treatment of a "bodily injury" which manifests itself by acute symptoms of sufficient severity such that absence of immediate attention could reasonably be expected to result in death, serious impairment to bodily functions or serious dysfunction to a bodily organ or part. Such emergency care shall include all medically necessary care immediately following an "accident", including but not limited to, immediate prehospitalization care, transportation to a hospital or trauma center, emergency room care, surgery, critical and acute care. Emergency care extends during the period of initial hospitalization until the patient is discharged from acute care by the attending physician. Emergency care shall be presumed when medical care is initiated at a hospital within 120 hours of the "accident".

g. "Family member" means a person related to the "named insured" by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the "named insured".

h. "Health care provider" means those persons licensed or certified to perform health care treatment or services compensable as medical expenses and shall include, but not be limited to:

(1) Hospital or health care facilities that are maintained by a state or any of its political subdivisions or licensed by the Department of Health and Senior Services;

(2) Other hospitals or health care facilities designated by the Department of Health and Senior Services to provide health care services, or other facilities, including facilities for radiology and diagnostic testing, free-standing emergency clinics or offices, and private treatment centers;

(3) A nonprofit voluntary visiting nurse organization providing health care services other than in a hospital;

(4) Hospitals or other health care facilities or treatment centers located in other states or nations;

(5) Physicians licensed to practice medicine and surgery;

(6) Licensed chiropractors, dentists, optometrists, pharmacists, chiropodists (podiatrists), psychologists, physical therapists, health maintenance organizations, orthotists and prosthetists, professional nurses, occupational therapists, speech language pathologists, audiologists, physician assistants, physical therapy assistants and occupational therapy assistants;

(7) Registered bioanalytical laboratories;

(8) Certified nurse-midwives and nurse practitioners/clinical nurse-specialists; or

(9) Providers of other health care services or supplies including durable medical goods.

i. "Identified injury" means the following "bodily injuries" for which the New Jersey Department of Banking and Insurance has established standard courses of medically necessary diagnosis and treatment:

(1) Cervical Spine: Soft Tissue Injury;

(2) Cervical Spine: Herniated Disc/Radiculopathy;

(3) Thoracic Spine: Soft Tissue Injury;

(4) Thoracic Spine: Herniated Disc/ Radiculopathy;

(5) Lumbar-Sacral Spine: Soft Tissue Injury;

(6) Lumbar-Sacral Spine: Herniated Disc/Radiculopathy; and

(7) Any other "bodily injury" for which the New Jersey Department of Banking and Insurance has established standard courses of appropriate diagnosis and treatment.

j. "Income" means salary, wages, tips, commissions, fees and other earnings derived from work or employment.

k. "Income producer" means a person who, at the time of the "accident", was in an occupational status, earning or producing income.

l. "Named insured" means the person or organization named in Item **1** of the Declarations and, if an individual, includes his or her spouse if the spouse is a resident of the household of the "named insured", except that if the spouse ceases to be a resident of the same household, the spouse shall be a "named insured" for the full term of the Policy in effect at the time of cessation of residency. If the covered "auto" is owned by a farm family copartnership or corporation, the term "named insured" also includes the head of the household of each family designated in the Policy as having a working interest in the farm.

m. "Occupying" means in, upon, getting in, on, out or off.

n. "Pedestrian" means any person who is not occupying, using, entering into, or alighting from a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks.

o. "Private passenger auto" means a self-propelled vehicle designed for use principally on public roads and which is one of the following types:

(1) A private passenger or station wagon type auto;

(2) A van, a pickup or panel truck or delivery sedan; or

(3) A utility auto designed for personal use as a camper or motor home or for family recreational purposes.

A "private passenger auto" does not include:

(a) A motorcycle;

(b) An auto used as a public or livery conveyance for passengers including, but not limited to, any period of time an auto is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the auto.

This Paragraph (b) does not apply to an auto being used during any period of time a person is logged into a "transportation network platform" as a driver, a "transportation network company rider" is not "occupying" the auto and that driver has not accepted a request through the "transportation network platform" to transport a passenger.

(c) A pickup or panel truck, delivery sedan or utility auto customarily used in the occupation, profession or business of an "insured" other than farming or ranching; or

(d) A utility auto customarily used for the transportation of passengers other than members of the user's family or their guests.

p. "Transportation network company rider" means a passenger who uses a "transportation network platform" to connect with a driver for the purpose of receiving prearranged transportation services.

q. "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

3. The following definition is added to the **Definitions** section for **Personal Injury Protection:**

"Eligible injured person" means:

a. The "named insured" and, if the "named insured" is an individual, any "family member", if the "named insured" or the "family member" sustains "bodily injury":

(1) As a result of any "accident" while occupying, using, entering into or alighting from a "private passenger auto"; or

(2) While a "pedestrian", caused by a "private passenger auto" or by an object propelled by or from a "private passenger auto".

b. Any other person who sustains "bodily injury":

(1) While, with your permission, that person is occupying, using, entering into or alighting from the covered "auto"; or

(2) While a "pedestrian", caused by the covered "auto" or as a result of being struck by an object propelled by or from the covered "auto".

4. The following is added to the **Definitions** section for **Extended Medical Expense Benefits:**

a. "Highway vehicle" means a land motor vehicle or trailer other than:

(1) A "private passenger auto";

(2) A farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads;

(3) A vehicle operated on rails or crawler treads; or

(4) A vehicle while located for use as a residence or premises.

b. "Insured person" means:

(1) The "named insured" and, if the "named insured" is an individual, any "family member" of the "named insured", if the "named insured" or "family member" sustains "bodily injury":

(a) While occupying, using, entering into or alighting from a "highway vehicle"; or

(b) While a "pedestrian", caused by a "highway vehicle".

(2) Any other person who sustains "bodily injury" while occupying a "highway vehicle" (other than a motorcycle or a vehicle while being used as a public or livery conveyance including, but not limited to, any period of time a vehicle is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle) if such "highway vehicle" is being operated by the "named insured" and, if the "named insured" is an individual, a "family member", or any other person using such "highway vehicle" with the permission of the "named insured"; or

b. Any other person who sustains "bodily injury" occupying a covered "auto" if the covered "auto" is being operated by the "named insured" and, if the "named insured" is an individual, a "family member", or any other person using the covered "auto" with the permission of the "named insured".

5. The following is added to the **Definitions** section for **Pedestrian Personal Injury Protection:**

a. "Eligible injured person" means:

A person who sustains "bodily injury" while a "pedestrian", caused by an "insured motor vehicle" or as a result of being struck by an object propelled by or from the "insured motor vehicle".

b. "Insured motor vehicle" means a self-propelled motor vehicle designed for use principally on public roads, which is not a "private passenger auto" and to which the liability coverage of this Coverage Form applies.

POLICY NUMBER: ISA H25295304

Endorsement Number: 100

**COMMERCIAL AUTO**
**CA 21 14 10 16**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW JERSEY UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, New Jersey, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| | |
|---|---|
| Named Insured: Medtronic plc | |
| Endorsement Effective Date: | |

**SCHEDULE**

| | |
|---|---|
| Limit Of Insurance: $ See DA40002 | Each "Accident" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured", or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle" or an "underinsured motor vehicle".

2. With respect to damages resulting from an "accident" with an "underinsured motor vehicle", we will pay under this coverage only if Paragraph a. or b. below applies:

   a. The limit of any applicable liability bonds or policies has been exhausted by judgments or payments; or

   b. A tentative settlement has been made between an "insured" and the insurer of an "underinsured motor vehicle" and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Schedule or Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members";

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

   c. The Named Insured for "property damage" only.

**C. Exclusions**

This insurance does not apply to any of the following:

1. With respect to an "uninsured motor vehicle", any claim settled without our consent.

2. Damages for pain, suffering and inconvenience resulting from "bodily injury" caused by an "accident" involving an "uninsured motor vehicle" or an "underinsured motor vehicle", unless the injured person has a legal right to recover damages for such pain, suffering and inconvenience under the New Jersey Automobile Reparation Reform Act. The injured person's legal right to recover damages for pain, suffering and inconvenience under the New Jersey Automobile Reparation Reform Act will be determined by the liability tort limitation, if any, applicable to that person.

3. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

4. The direct or indirect benefit of any insurer of property.

5. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

6. "Property damage" for which the "insured" has been or is entitled to be compensated by other property or physical damage insurance.

7. The first $500 of the amount of "property damage" to the property of each "insured" as the result of any one "accident".

8. "Property damage" caused by a hit-and-run vehicle.

9. Punitive or exemplary damages.

10. "Bodily injury" or "property damage" sustained by any "insured" who is an owner of a motor vehicle:

    a. Insured under a basic automobile insurance policy issued in accordance with New Jersey law or regulation; or

    b. Required to be insured in accordance with New Jersey law or regulation, but not insured for this coverage or any similar coverage.

    However, this exclusion does not apply to an individual Named Insured, and such Named Insured's spouse, unless the individual Named Insured or such Named Insured's spouse is "occupying", at the time of an "accident", a motor vehicle described in Subparagraph a. or b. above.

11. "Bodily injury" or "property damage" arising directly or indirectly out of:

    a. War, including undeclared or civil war;

    b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the Limit Of Insurance shown in the Schedule or Declarations for Uninsured Motorists Coverage and Underinsured Motorists Coverage is the most we will pay for all damages resulting from any one "accident" with an "uninsured motor vehicle" or an "underinsured motor vehicle".

   a. However, subject to our maximum Limit of Insurance for this coverage, if:

      (1) An "insured" is not an individual Named Insured under this Policy;

      (2) That "insured" is an individual Named Insured under one or more other policies providing similar coverage; and

      (3) All such other policies have a Limit of Insurance for similar coverage which is less than the Limit of Insurance for this coverage;

then the most we will pay for all damages resulting from any one "accident" with an "uninsured motor vehicle" or an "underinsured motor vehicle" shall not exceed the highest applicable Limit of Insurance under any Coverage Form or policy providing coverage to that "insured" as an individual Named Insured.

b. However, subject to our maximum Limit of Insurance for this coverage, if:

(1) An "insured" is not the individual Named Insured under this Policy or any other policy;

(2) That "insured" is insured as a "family member" under one or more other policies providing similar coverage; and

(3) All such other policies have a Limit of Insurance for similar coverage which is less than the Limit of Insurance for this coverage;

then the most we will pay for all damages resulting from any one "accident" with an "uninsured motor vehicle" or an "underinsured motor vehicle" shall not exceed the highest applicable Limit of Insurance under any Coverage Form or policy providing coverage to that "insured" as a "family member".

However, Paragraphs D.1.a. and D.1.b. do not apply to "employees" of a business or corporate entity designated in the Schedule or Declarations as a Named Insured.

2. With respect to damages resulting from an "accident" involving an "uninsured motor vehicle", we will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

3. With respect to damages resulting from an "accident" involving an "underinsured motor vehicle", the Limit of Insurance shall be reduced by all sums paid by or for anyone who may be legally responsible, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

4. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form attached to this Coverage Part.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any personal injury protection benefits.

**E. Changes In Conditions**

The Conditions are changed for Uninsured And Underinsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

However, if an "insured" is:

(1) An individual Named Insured under one or more policies providing similar coverage;

(2) Not "occupying" a vehicle owned by that individual Named Insured; and

(3) Not an "employee" of a business or corporate entity designated in the Schedule or Declarations as a Named Insured;

then any recovery for damages for "bodily injury" or "property damage" for that "insured" may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage to that "insured" as an individual Named Insured.

However, if an "insured" is:

(a) Insured as a "family member" under one or more policies providing similar coverage;

(b) Not an individual Named Insured under this or any other policy; and

(c) Not an "employee" of a business or corporate entity designated in the Schedule or Declarations as a Named Insured;

then any recovery for damages for "bodily injury" or "property damage" for that "insured" may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage to that "insured" as a "family member".

b. Any insurance we provide with respect to a vehicle:

(1) The Named Insured does not own; or

(2) Owned by the Named Insured or, if the Named Insured is an individual, any "family member", that is not a covered "auto" for Uninsured And Underinsured Motorists Coverage under this Coverage Form,

shall be excess over any other collectible uninsured motorists or underinsured motorists insurance providing coverage on a primary basis.

c. If the coverage under this Coverage Form is provided:

(1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

(2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

a. Promptly notify the police if a hit-and-run driver or "stolen vehicle" is involved; and

b. Promptly send us copies of the legal papers if a "suit" is brought.

c. A person seeking coverage under this endorsement must also promptly notify us, in writing, of a tentative settlement between the "insured" and the insurer of an "underinsured motor vehicle", and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights do not apply under this provision with respect to damages caused by an "accident" with an "underinsured motor vehicle" if we:

a. Have been given prompt notice, in writing, of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

(1) That payment will be separate from any amount the "insured" is entitled to recover under the provisions of this endorsement; and

(2) We also have a right to recover the advanced payment.

4. The following condition is added:

**Arbitration**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**F. Additional Definitions**

As used in this endorsement:

1. "Property damage" means damage to a covered "auto", or to any property of an "insured" while contained in a covered "auto".

2. "Family member" means a person related to an individual Named Insured by blood, marriage, or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   a. For which no liability bond or policy applies at the time of an "accident";

   b. For which an insuring or bonding company denies coverage or is or becomes insolvent;

   c. That, with respect to damages for "bodily injury" only, is a hit-and-run vehicle whose operator or owner cannot be identified and that hits, or causes an "accident" resulting in "bodily injury" without hitting:

      (1) An individual Named Insured or any "family member";

      (2) A vehicle that the Named Insured or any "family member", if the Named Insured is an individual, is "occupying"; or

      (3) A covered "auto";

   d. For which the only available coverage is a special automobile policy, as defined by New Jersey law; or

   e. That is a "stolen vehicle".

   However, an "uninsured motor vehicle" does not include any vehicle:

      (1) Owned by or furnished or available for the regular use of the Named Insured or any "family member", except a "stolen vehicle", if the Named Insured is an individual;

      (2) Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

      (3) Owned by any governmental unit or agency;

      (4) Insured under a basic automobile insurance policy issued in accordance with New Jersey law or regulation;

      (5) Operated on rails or crawler treads;

      (6) Designed for use mainly off public roads while not on public roads; or

      (7) While located for use as a residence or premises.

5. "Underinsured motor vehicle" means the following:

   a. With respect to an "insured" who:

      (1) Is not the individual Named Insured under this Policy;

      (2) Is an individual Named Insured under one or more other policies providing similar coverage; and

      (3) Is not an "employee" of a business or corporate entity designated in the Schedule or Declarations as a Named Insured;

      "underinsured motor vehicle" means a land motor vehicle or "trailer" of any type to which a liability bond or policy applies at the time of an "accident", but its limit of liability is less than the highest applicable limit of liability under any Coverage Form or policy providing coverage to that "insured" as an individual Named Insured.

   b. With respect to an "insured" who:

      (1) Is not the individual Named Insured under this Policy or any other policy;

      (2) Is insured as a "family member" under one or more other policies providing similar coverage; and

      (3) Is not an "employee" of a business or corporate entity designated in the Schedule or Declarations as a Named Insured;

      "underinsured motor vehicle" means a land motor vehicle or "trailer" of any type to which a liability bond or policy applies at the time of an "accident", but its limit of liability is less than the highest applicable limit of liability under any Coverage Form or policy providing coverage to that "insured" as a "family member".

   c. With respect to any other "insured" who is not described in Paragraph a. or b. above, "underinsured motor vehicle" means a land motor vehicle or "trailer" of any type to which a liability bond or policy applies at the time of an "accident", but its limit of liability is less than the Limit of Insurance for this coverage.

   However, an "underinsured motor vehicle" does not include any vehicle:

      (1) Owned or operated by a self-insurer under any applicable motor vehicle law;

      (2) Owned by any governmental unit or agency;

      (3) Operated on rails or crawler treads;

      (4) Designed for use mainly off public roads while not on public roads;

      (5) While located for use as a residence or premises; or

      (6) Owned by or furnished or available for the regular use of the Named Insured or, if the Named Insured is an individual, any "family member".

6. "Stolen vehicle" means a vehicle that is a covered "auto" and, at the time of the "accident", the vehicle is operated by an unknown third person without the consent of the "insured".

POLICY NUMBER:  ISA H25295304

Endorsement Number:  101

**COMMERCIAL AUTO**
CA 01 39 10 13

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW MEXICO CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, New Mexico, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. The **Care, Custody Or Control** Exclusion **B.6.** contained in the Business Auto and Motor Carrier Coverage Forms is replaced by the following:

   **6. Care, Custody Or Control**

   "Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to:

   a. Liability assumed under a sidetrack agreement; or

   b. "Property damage" to or "covered pollution cost or expense" involving a motor vehicle you do not own if it is loaned:

   (1) Without a fee to the "insured" by a licensed automobile dealer for demonstration purposes, as a temporary substitute vehicle while it is being serviced or repaired, or as a promotional courtesy vehicle or courtesy vehicle; or

   (2) With a fee to the "insured" by a licensed automobile dealer or with or without a fee by anyone else for demonstration purposes, as a temporary substitute vehicle for that person's vehicle while it is being serviced or repaired, or as a promotional courtesy vehicle and the vehicle is provided under a written statement, signed by the "insured", which contains the following language:

   **PRIMARY LIABILITY ASSIGNMENT**

   In consideration of the vehicle owner entrusting the vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.

2. The **Care, Custody Or Control** Exclusion **4.f.** contained in the Auto Dealers Coverage Form is replaced by the following:

   **f. Care, Custody Or Control**

   "Property damage" to or "covered pollution cost or expense" involving:

   (1) Property owned, rented or occupied by the "insured";

   (2) Property loaned to the "insured";

   (3) Property held for sale or being transported by the "insured"; or

   (4) Property in the "insured's" care, custody or control.

   But this exclusion does not apply to:

   (a) Liability assumed under a sidetrack agreement; or

   (b) "Property damage" to or "covered pollution cost or expense" involving a motor vehicle you do not own if it is loaned:

   (i) Without a fee to the "insured" by a licensed automobile dealer for demonstration purposes, as a temporary substitute vehicle for that person's vehicle while it is being serviced or repaired, or as a promotional courtesy vehicle or courtesy vehicle; or

   (ii) With a fee to the "insured" by a licensed automobile dealer or with or without a fee by anyone else for demonstration purposes, as a temporary substitute vehicle for that person's vehicle while it is being serviced or repaired, or as a promotional courtesy vehicle or courtesy vehicle and the vehicle is provided under a written statement, signed by the "insured", which contains the following language:

   **PRIMARY LIABILITY ASSIGNMENT**

   In consideration of the vehicle owner entrusting the motor vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.

**B. Changes In Conditions**

1. The following is added to the **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form:

   When this Coverage Form and any other Coverage Form or policy providing liability coverage apply to an "auto" and:

   a. One Coverage Form or policy provides coverage to a Named Insured who is a licensed automobile dealer; and

   b. The other Coverage Form or policy provides coverage to a person who is not engaged in that business; and

   a person described in Paragraph b. is operating an "auto" owned by the business described in Paragraph a. which was loaned without a fee to that person for demonstration purposes, as a temporary substitute for that person's vehicle while it is being serviced or repaired, or as a promotional courtesy vehicle or courtesy vehicle, then the liability insurance provided by that person's Coverage Form or policy is primary and the liability insurance provided by the Coverage Form or policy issued to a business described in Paragraph a. is excess.

2. Paragraph **5.b.** of the **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and Paragraph **5.f.** of the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form do not apply to a covered "auto" that has been provided under a written Primary Liability Assignment contained in Subsection C of Section 23, Chapter 59A, Article 32 NMSA, which has been signed by an "insured".

**C. Changes In Definitions**

The definition of "insured contract" is revised to include a written Primary Liability Assignment contained in Subsection C of Section 23, Chapter 59A, Article 32 NMSA where a motor vehicle is loaned with a fee to the "insured" by a licensed automobile dealer, or with or without a fee by anyone else, for demonstration purposes, as a temporary substitute for that person's vehicle while it is being serviced or repaired, or as a promotional courtesy vehicle or courtesy vehicle, and that vehicle is provided under the Primary Liability Assignment signed by the "insured".

POLICY NUMBER: ISA H25295304

Endorsement Number: 102

COMMERCIAL AUTO
CA 02 50 05 15

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW MEXICO CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. The Cancellation Common Policy Condition does not apply. The following condition applies instead:**

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

2. If this Policy has been in effect less than 60 days and is not a renewal or continuation policy we issued, we may cancel for any reason by mailing or delivering written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, provided that the cancellation becomes effective before the Policy has been in effect for 60 days.

3. If Paragraph 2. does not apply, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium. If we cancel for this reason, we will mail or deliver to the first Named Insured at least 10 days' notice.

   b. There has been a substantial change in the risk assumed by us since the Policy was issued. If we cancel for this reason, we will mail or deliver to the first Named Insured at least 30 days' notice.

   c. The Policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by us. If we cancel for this reason, we will mail or deliver to the first Named Insured at least 15 days' notice.

   d. Willful and negligent acts or omission by the "insured" have substantially increased the hazards insured against. If we cancel for this reason, we will mail or deliver to the first Named Insured at least 15 days' notice.

   e. Revocation or suspension of your driver's license or that of another operator who either resides in the same household or customarily operates the "auto". If we cancel for this reason, we will mail or deliver to the first Named Insured at least 15 days' notice.

   f. You presented a claim based on fraud or material misrepresentation. If we cancel for this reason, we will mail or deliver to the first Named Insured at least 15 days' notice.

   The written notice of cancellation will state the reason for cancellation, except that such statement may be omitted from a notice mailed to an additional insured or lienholder under this Policy.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B. The following condition is added:**

**Nonrenewal**

1. If we decide not to renew or continue this Coverage Part, we will mail to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

CA 01 39 10 13 © Insurance Services Office, Inc., 2012 Page 3 of 3

Exhibit B

CA 02 50 05 15 © Insurance Services Office, Inc., 2014 Page 1 of 2

Exhibit B

2. If we offer to renew or continue and you do not accept, this Coverage Part will end on the expiration date of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

3. If we fail to mail proper notice of nonrenewal and you obtain other insurance, this Coverage Part will end on the effective date of that other insurance.

**C. Mailing Of Notices**

We will mail or deliver our notice of cancellation or nonrenewal to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

POLICY NUMBER: ISA H25295304

Endorsement Number: 103

**COMMERCIAL AUTO**
**CA 02 25 08 14**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – CANCELLATION

For a covered "auto" licensed or principally garaged in, or for "auto dealer operations" conducted in, New York, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**I.** If you are an individual and a covered "auto" you own is predominantly used for nonbusiness purposes, the **Cancellation Common Policy Condition** does not apply. The following condition applies instead:

**Ending This Policy**

**A. Cancellation**

1. You may cancel the entire Policy by returning it to us or by giving us advance notice of the date cancellation is to take effect.

2. When this Policy is in effect less than 60 days and is not a renewal or continuation policy, we may cancel the entire Policy for any reason provided we mail you notice within this period. If we cancel for nonpayment of premium, we will mail you at least 15 days' notice and such notice of cancellation on this ground shall inform the first Named Insured of the amount due. Payment of premium will be considered on time if made within 15 days after we mail you notice of cancellation. If we cancel for any other reason, we will mail you at least 20 days' notice.

**3.** When this Policy is in effect 60 days or more or is a renewal or continuation policy, we may cancel it or any insurance deemed severable only for one or more of the following reasons:

a. Nonpayment of premium, provided, however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due. If we cancel for this reason, we will mail you at least 15 days' notice. Payment of premium will be considered on time if made within 15 days after we mail you notice of cancellation.

b. Your driver's license or that of a driver who lives with you or customarily uses the covered "auto" has been suspended or revoked during the policy period, other than a suspension issued pursuant to Subdivision (1) of Section 510(b) of the New York Vehicle and Traffic Law, or one or more administrative suspensions arising out of the same incident which has or have been terminated prior to the effective date of cancellation. If we cancel for this reason, we will mail you at least 20 days' notice.

c. We replace this Policy with another one providing similar coverages and the same limits for a covered "auto" of the private passenger type. The replacement policy will take effect when this Policy is cancelled, and will end a year after this Policy begins or on this Policy's expiration date, whichever is earlier.

d. This Policy has been written for a period of more than one year or without a fixed expiration date. We may cancel for this reason, subject to New York Laws, only at an anniversary of its original effective date. If we cancel for this reason, we will mail you at least 45 but not more than 60 days' notice.

e. This Policy was obtained through fraud or material misrepresentation. If we cancel for this reason, we will mail you at least 20 days' notice.

f. Any "insured" made a fraudulent claim. If we cancel for this reason, we will mail you at least 20 days' notice.

If one of the reasons listed in this Paragraph 3. exists, we may cancel the entire Policy.

4. Instead of cancellation, we may condition continuation of this Policy on a reduction of Covered Autos Liability Coverage or elimination of any other coverage. If we do this, we will mail you notice at least 20 days before the date of the change.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this Policy is cancelled, we will send you any premium refund due. The refund will be pro rata.

Rowever, when the premium is advanced under a premium finance agreement, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

B. **Nonrenewal**

1. If this Policy is written for a period of less than one year and we decide, subject to New York Laws, not to renew or continue it, or to condition renewal or continuation on a reduction of Covered Autos Liability Coverage or elimination of any other coverage, we will mail or deliver to you written notice at least 45 but not more than 60 days before the end of the policy period.

2. We will have the right not to renew or continue a particular coverage, subject to New York Laws, only at the end of each 12-month period following the effective date of the first of the successive policy periods in which the coverage was provided.

3. We do not have to mail notice of nonrenewal if you, your agent or broker or another insurance company informs us in writing that you have replaced this Policy or that you no longer want it.

C. **Mailing Of Notices**

We will mail or deliver our notice of cancellation, reduction of limits, elimination of coverage or nonrenewal to the address shown on the Policy. However, we may deliver any notice instead of mailing it. If notice is mailed, a United States Postal Service certificate of mailing will be sufficient proof of notice.

II. For all policies other than those specified in Section I., the **Cancellation** Common Policy Condition is completely replaced by the following:

**Ending This Policy**

A. **Cancellation**

1. The first Named Insured shown in the Declarations may cancel the entire Policy by returning it to us or by giving us advance notice of the date cancellation is to take effect.

2. When this Policy is in effect 60 days or less and is not a renewal or continuation policy, we may cancel the entire Policy by mailing to the first Named Insured written notice at least 15 days before the effective date of cancellation if we cancel for any of the reasons included in Paragraph 3. below. We will provide the first Named Insured with 20 days' written notice if we cancel for any other reason.

3. When this Policy is in effect more than 60 days or is a renewal or continuation policy, we may cancel only for any of the reasons listed below, provided we mail the first Named Insured written notice at least 15 days before the effective date of cancellation:

a. Nonpayment of premium, provided, however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

b. Conviction of a crime arising out of acts increasing the hazard insured against;

c. Discovery of fraud or material misrepresentation in the obtaining of the Policy or in the presentation of a claim thereunder;

d. After issuance of the Policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current policy period;

e. Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the Policy, which results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the Policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the Policy was issued or last renewed;

f. Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

g. A determination by the Superintendent that the continuation of the Policy would violate, or would place us in violation of, any provision of the Insurance Code;

h. Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the "insured" will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. However, if we cancel for this reason, the first Named Insured may make a written request to the Department of Financial Services, within 10 days of receipt of this notice, to review our cancellation decision. We will also send a copy of this notice, simultaneously, to the Department of Financial Services; or

i. Suspension or revocation during the required policy period of the driver's license of any person who continues to operate a covered "auto", other than a suspension issued pursuant to Subdivision (1) of Section 510(b) of the New York Vehicle and Traffic Law or one or more administrative suspensions arising from the same incident which has or have been terminated prior to the effective date of cancellation.

4. Regardless of the number of days this Policy has been in effect, if:

a. This Policy covers "autos" subject to the provisions of Section 370 (a) and (b) of the New York Vehicle and Traffic Law; and

b. The Commissioner of the Department of Motor Vehicles deems this Policy to be insufficient for any reason;

we may cancel this Policy by giving you notice of such insufficiency 45 days before the effective date of cancellation to permit you to replace this Policy.

5. If this Policy is cancelled, we will send the first Named Insured any premium refund due. The refund will be pro rata.

However, when the premium is advanced under a premium finance agreement, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

6. The effective date of cancellation stated in the notice shall become the end of the policy period.

7. Notice will include the reason for cancellation. We will mail or deliver our notice to the first Named Insured at the address shown in the Policy and to the authorized agent or broker. However, we may deliver any notice instead of mailing it. Proof of mailing will be sufficient proof of notice.

**B. Notices Of Nonrenewal And Conditional Renewal**

1. If we decide not to renew or continue this Policy, we will send notice as provided in Paragraph 3. below.

2. If we conditionally renew this Policy upon:
   a. A change of limits;
   b. A change in type of coverage;
   c. A reduction of coverage;
   d. An increased deductible;
   e. An addition of exclusion; or
   f. Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added; or as a result of experience rating, retrospective rating or audit;
   we will send notice as provided in Paragraph 3. below.

3. If we decide not to renew or continue this Policy, or to conditionally renew this Policy as provided in Paragraphs 1. and 2. above, we will mail the first Named Insured notice at least 60 but not more then 120 days before the end of the policy period. If the policy period is other than one year, we will have the right not to renew or continue it only at an anniversary of its original effective date.

4. We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that you have replaced this Policy or no longer want it.

5. Any notice of nonrenewal or conditional renewal will be mailed to the first Named Insured at the address shown in the Policy and to the authorized agent or broker. However, we may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

6. Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase, and description of any other changes.

7. If we violate any of the provisions of Paragraph 3., 5. or 6. above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:
   a. And if notice is provided prior to the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60-day period, has replaced the coverage or elects to cancel.
   b. And if the notice is provided on or after the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

8. If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:
   a. Upon expiration of the 60-day period, unless Subparagraph b. below applies; or
   b. Notwithstanding the provisions in Paragraphs 7.a. and 7.b., as of the renewal date of the Policy if the conditional renewal notice was sent at least 30 days prior to the expiration or anniversary date of the Policy.

**C. With respect to the Auto Dealers Coverage Form:**

1. Paragraph F.6. **Limits Of Insurance – General Liability Coverages of Section II – General Liability Coverages** and Paragraph E.4. **Limit Of Insurance And Deductible of Section III – Acts, Errors Or Omissions Liability Coverages** are amended as follows:
   a. The Aggregate Limits Of Insurance for General Liability Coverages and the "Acts, Errors Or Omissions" Liability Aggregate Limit shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Section II, Paragraph B.7. of this endorsement.
   b. The last sentence of Paragraphs F.6. and E.4. does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

2. If the Limited Product Withdrawal Expense Endorsement is attached, then Paragraph B.2. is amended as follows:
   a. The Product Withdrawal Aggregate Limit shown in the Schedule will be increased in proportion to any policy extension provided in accordance with Section II, Paragraph B.7. of this endorsement.
   b. The last sentence of Paragraph B.2. does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

POLICY NUMBER: ISA H25295304      Endorsement Number: 104

**COMMERCIAL AUTO**
CA 01 12 12 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES IN BUSINESS AUTO AND MOTOR CARRIER COVERAGE FORMS

For a covered "auto" licensed or principally garaged in New York, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. The third paragraph of **A. Coverage** is replaced by the following:

   We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense", even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered "Autos" Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

2. **Who Is An Insured** does not include anyone loading or unloading a covered "auto" except you, your "employees", a lessee or borrower or any of their "employees".

3. **Supplementary Payments** is amended as follows:

   *a.* Paragraph **(5)** is replaced by the following:

      **(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

   *b.* The following paragraphs are added:

      **(7)** All expenses incurred by an "insured" for first aid to others at the time of an "accident".

      **(8)** The cost of appeal bonds.

4. Paragraph **b. Out-of-state Coverage Extensions** in the Business Auto and Motor Carrier Coverage Forms is replaced by the following:

   *b.* While a covered "auto" is used or operated in any other state or Canadian province, we will provide at least the minimum amount and kind of coverage which is required in such cases under the laws of such jurisdiction.

5. **Exclusions** is changed as follows:

   *a.* The **Employee Indemnification And Employer's Liability** Exclusion is replaced by the following:

      **Employee Indemnification And Employer's Liability**

      This insurance does not apply to:

      "Bodily injury" to an "employee" of the "insured" arising out of and in the course of:

      **(1)** Employment by the "insured"; or

      **(2)** Performing the duties related to the conduct of the "insured's" business.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

*b.* The **Fellow Employee Exclusion** is replaced by the following:

   **Fellow Employee**

   This insurance does not apply to:

   "Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

   However, this exclusion only applies if the fellow "employee" is entitled to benefits under any of the following: workers' compensation, unemployment compensation or disability benefits law, or any similar law.

*c.* The **Handling Of Property** Exclusion does not apply.

*d.* The **Movement Of Property By Mechanical Device** Exclusion does not apply.

*e.* The **Operations** Exclusion does not apply.

*f.* The **Completed Operations** Exclusion does not apply.

*g.* The **Pollution** Exclusion does not apply.

*h.* The **War** Exclusion is replaced by the following:

   **War**

   "Bodily injury" or "property damage" caused by war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

*i.* The **Racing** Exclusion does not apply.

*j.* The following exclusion is added:

   **Spousal Liability**

   "Bodily injury" to or "property damage" of the spouse of an "insured". However, we will pay all sums an "insured" legally must pay if named as a third-party defendant in a legal action commenced by his or her spouse against another party.

6. If the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations is equal to or greater than $160,000, the **Limit Of Insurance** provision is changed by the following:

   **Limit Of Insurance** applies except that we will apply the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations to first provide the separate limits required by the New York Motor Vehicle Safety Responsibility Act for:

   *a.* "Bodily injury" not resulting in death of any one person caused by any one "accident";

   *b.* "Bodily injury" not resulting in death of two or more persons caused by any one "accident";

   *c.* "Bodily injury" resulting in death of any one person caused by any one "accident";

   *d.* "Bodily injury" resulting in death of two or more persons caused by any one "accident"; or

   *e.* "Property damage" in any one "accident".

   This provision will not change our total Limit of Insurance.

7. If the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations is less than $160,000, the **Limit Of Insurance** provision is replaced by the following:

   Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident", is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations, except for those damages for "bodily injury" resulting in death. We will apply the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations to first provide the separate limits required by the New York Motor Vehicle Safety Responsibility Act as follows:

   *a.* "Bodily injury" not resulting in death of any one person caused by any one "accident";

   *b.* "Bodily injury" not resulting in death of two or more persons caused by any one "accident"; or

   *c.* "Property damage" in any one "accident".

This provision will not change our total Limit of Insurance.

All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

In addition, our Limit Of Insurance for "bodily injury" resulting in death is as follows:

a. Up to $50,000 for "bodily injury" resulting in death of any one person caused by any one "accident"; and

b. Up to $100,000 for "bodily injury" resulting in death of two or more persons caused by any one "accident", subject to a $50,000 maximum for any one person.

If the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations is not exhausted by payment of damages for:

a. "Bodily injury" not resulting in death;

b. "Property damage"; or

c. "Covered pollution cost or expense";

any remaining amounts will be used to pay damages for "bodily injury" resulting in death, to the extent the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations is not increased.

8. If forming part of the Policy, the Nuclear Energy Liability Exclusion (Broad Form) Endorsement does not apply to the Commercial Auto Coverage Part.

**B. Changes In Trailer Interchange Coverage**

Paragraph A.2. of Section III – Trailer Interchange Coverage in the Motor Carrier Coverage Form is replaced by the following:

2. We have the right and duty to defend any "insured" against a "suit" asking for these damages, even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**C. Changes In Physical Damage Coverage**

1. The Owned Autos You Acquire After The Policy Begins provision of Section I – Covered Autos is replaced by the following:

**Owned Autos You Acquire After The Policy Begins**

a. If Symbols 1, 2, 3, 4, 5, 6 or 19 are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

b. But, if Symbol 7 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

(1) We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

(2) You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

c. Notwithstanding the provisions of Paragraphs a. and b., during the term of the Coverage Part, Physical Damage Coverage for an additional or replacement private passenger "auto" shall not become effective until you notify us and request coverage for the "auto".

However, if you replace a private passenger "auto" currently insured with us for a continuous period of at least 12 months, we will provide the same coverage which applied to the replaced "auto", without a coverage request, for five calendar days beginning on the date you acquired the replacement "auto". After five calendar days, coverage will not apply until you request coverage for the "auto".

2. The War Or Military Action Exclusion is replaced by the following:

**War Or Military Action**

War, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

3. Deductible is replaced by the following:

**Deductible**

For each covered "auto", our obligation to pay for, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations.

4. The following provisions are added to Physical Damage Coverage and apply in place of any conflicting policy provisions:

a. **Mandatory Inspection For Physical Damage Coverage**

(1) We have the right to inspect any private passenger "auto", including a non-owned "auto", insured or intended to be insured under this Coverage Part before physical damage coverage shall become effective, except to the extent that this right is prescribed and limited by New York State Department of Financial Services' Insurance Regulation No. 79 (11 NYCRR 67) or Section 3411 of the New York Insurance Law.

(2) When an inspection is required by us, you must cooperate and make the "auto" available for the inspection.

b. **"Auto" Repairs Under Physical Damage Coverage**

Payment of a physical damage "loss" shall not be conditioned upon the repair of the "auto". We may not require that repairs be made by a particular repair shop or concern.

c. **Recovery Of Stolen Or Abandoned "Autos"**

If a private passenger "auto" insured under this Coverage Part for physical damage coverage is stolen or abandoned, we or our authorized representative shall, when notified of the location of the "auto", have the right to take custody of the "auto" for safekeeping.

**D. Changes In Conditions**

1. Paragraphs a. and b.(2) of the Duties In The Event Of Accident, Claim, Suit Or Loss Condition in the Business Auto and Motor Carrier Coverage Forms are replaced by the following:

We have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to us:

a. In the event of "accident", claim, "suit" or "loss", you or someone on your behalf must give us or our authorized representative notice as soon as reasonably possible of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

Written notice by or on behalf of the injured person or any other claimant to our authorized representative shall be deemed notice to us.

b. Additionally, you and any other involved "insured" must:

(2) Send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit" as soon as reasonably possible.

2. The Legal Action Against Us Condition in the Business Auto and Motor Carrier Coverage Forms is replaced by the following:

**Legal Action Against Us**

a. Except as provided in Paragraph b., no one may bring a legal action against us until:

(1) There has been full compliance with all of the terms of the Coverage Form; and

(2) Under Covered Autos Liability Coverage, we, by written agreement with the "insured" and the claimant, agree that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No person or organization has any right under this Policy to bring us into any action to determine the "insured's" liability.

b. With respect to "bodily injury" claims, if we deny coverage or do not admit liability because an "insured" or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an "insured":

(1) Brings an action to declare the rights of the parties under this Policy; and

(2) Names the injured person, someone acting for the injured person or other claimant as a party to the action.

3. Paragraph d. of the Other Insurance Condition in the Business Auto Coverage Form and Paragraph h. Other Insurance – Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form are replaced by the following:

When this Coverage Form and any valid and collectible insurance under any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

4. The following provision is added and supersedes any provision to the contrary:

Failure to give notice to us as soon as practicable, as required under this Coverage Part, shall not invalidate any claim made by the "insured", injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the "insured", injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

5. The Loss Payment – Physical Damage Coverages Condition is replaced by the following:

Loss Payment – Physical Damage Coverages

At our option, we may:

a. Pay for or replace damaged or stolen property; or

b. Return the stolen or damaged property, at our expense. We will pay for any damage that results to the "auto" from the "loss".

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

6. The Two Or More Coverage Forms Or Policies Issued By Us Condition in the Business Auto and Motor Carrier Coverage Forms is changed as follows:

This condition does not apply to liability coverage.

7. The Premium Audit Condition is amended by the addition of the following:

An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the Policy or the anniversary date, if this is a continuous policy or a policy written for a term longer than one year. But the audit may be waived if:

a. The total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1,500; or

b. The Policy requires notification to the insurer with specific identification of any additional exposure units (e.g., autos) for which coverage is requested.

c. Except as provided in Paragraphs a. and b. above, the Examination Of Your Books And Records Common Policy Condition continues to apply.

E. Changes In Definitions

The Definitions section in the Business Auto and Motor Carrier Coverage Forms is changed as follows:

1. The "covered pollution cost or expense" definition is replaced by the following:

"Covered pollution cost or expense" means any cost or expense arising out of:

a. Any request, demand, order or statutory or regulatory requirement; or

b. Any claim or "suit" by or on behalf of a governmental authority demanding;

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

2. The "insured contract" definition is replaced by the following:

"Insured contract" means:

a. A lease of premises;

b. A sidetrack agreement;

c. An easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade;

d. Any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

e. An indemnification of a municipality as required by ordinance, except in connection with work for a municipality;

f. That part of any contract or agreement entered into, as part of your business, by you or any of your employees, pertaining to the rental or lease of any "auto"; or

g. That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contract or agreement is made prior to the "bodily injury" or "property damage". Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

a. That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver;

b. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority; or

c. Under which the "insured" assumes liability for injury or damage caused by the dumping, discharge or escape of:

(1) Irritants, pollutants or contaminants that are, or that are contained in, any property that is:

(a) Being moved from the place where such property or pollutants are accepted by the "insured" for movement into or onto the covered "auto";

(b) Being transported or towed by the covered "auto";

(c) Being moved from the covered "auto" to the place where such property or pollutants are finally delivered, disposed of or abandoned by the "insured";

(d) Otherwise in the course of transit; or

(e) Being stored, disposed of, treated or processed in or upon the covered "auto" other than fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for, or result from, the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts.

(2) Irritants, pollutants or contaminants not described in Paragraph (1) above unless:

(a) The pollutants or any property in which the pollutants are contained is upset, overturned or damaged as a result of the maintenance or use of the covered "auto"; and

Exhibit B

(b) The discharge, dispersal, release or escape of the pollutants is caused directly by such upset, overturn or damage.

**3.** The "mobile equipment" definition is replaced by the following:

"Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers.

**e.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently mounted attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers.

**f.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

"Mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

However, the operation of:

**a.** Equipment described in Paragraphs **f.(2)** and **f.(3)** above; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged;

is considered operation of "mobile equipment" and not operation of an "auto".

**F.** **Changes In Forms And Endorsements**

**1.** All references to Underinsured Motorists Coverage shall mean Supplementary Uninsured/Underinsured Motorists Coverage.

**2.** If the Garagekeepers Coverage endorsement or the Garagekeepers Coverage – Customers' Sound-receiving Equipment endorsement is attached, then:

**a.** Paragraph **B.2.** is replaced by the following:

**2.** We will have the right and duty to defend any "insured" against a "suit" asking for these damages, even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**b.** Exclusion **3.** is replaced by the following:

**3.** We will not pay for "loss" caused by war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

**3.** If the Auto Medical Payments Coverage endorsement is attached, then Exclusion **C.6.** is replaced by the following:

**6.** "Bodily injury" caused by war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

**4.** If the Single Interest Automobile Physical Damage Insurance Policy is attached, the War Exclusion is replaced by the following:

This insurance does not apply to "loss" caused by war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

**5.** If the Stated Amount Insurance endorsement is attached, then Paragraph **C.2.** of that endorsement does not apply.

**6.** If the Trailer Interchange Coverage endorsement is attached, then Paragraph **A.2.** is replaced by the following:

**2.** We have the right and duty to defend any "insured" against a "suit" asking for these damages, even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**7.** If the Motor Carrier Endorsement is attached, then Paragraph **B.1.c.** is replaced by the following:

**c.** We have the right and duty to defend any "insured" against a "suit" asking for these damages, even if the allegations of the "suit" are groundless, false or fraudulent. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

Exhibit B

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 105

COMMERCIAL AUTO
CA 22 32 11 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK MANDATORY PERSONAL INJURY PROTECTION ENDORSEMENT

The Company agrees with the named insured, as follows:

## Section I

### Mandatory Personal Injury Protection

The Company will pay first-party benefits to reimburse for basic economic loss sustained by an eligible injured person on account of personal injuries caused by an accident arising out of the use or operation of a motor vehicle or a motorcycle during the policy period and within the United States of America, its territories or possessions, or Canada.

### First-party Benefits

First-party benefits, other than death benefits, are payments equal to basic economic loss, reduced by the following:

(a) 20 percent of the eligible injured person's loss of earnings from work to the extent that an eligible injured person's basic economic loss consists of such loss of earnings;

(b) Amounts recovered or recoverable on account of personal injury to an eligible injured person under State or Federal laws providing social security disability or workers' compensation benefits, or disability benefits under article 9 of the New York Workers' Compensation Law;

(c) The amount of any applicable deductible, provided that such deductible shall apply to each accident, but only to the total of first-party benefits otherwise payable to the named insured and any relative as a result of that accident.

### Basic Economic Loss

Basic economic loss shall consist of medical expense, work loss, other expense and, when death occurs, a death benefit as herein provided. Except for such death benefit, basic economic loss shall not include any loss sustained on account of death. Basic economic loss of each eligible injured person on account of any single accident shall not exceed $50,000, except that any death benefit hereunder shall be in addition thereto.

### Medical Expense

Medical expense shall consist of necessary expenses for:

(a) Medical, hospital (including services rendered in compliance with article 41 of the Public Health Law, whether or not such services are rendered directly by a hospital), surgical, nursing, dental, ambulance, X-ray, prescription drug and prosthetic services;

(b) Psychiatric, physical and occupational therapy and rehabilitation;

(c) Any nonmedical remedial care and treatment rendered in accordance with a religious method of healing recognized by the laws of New York; and

(d) Any other professional health services.

These medical expenses will not be subject to a time limitation, provided that, within one year after the date of the accident, it is ascertainable that further medical expenses may be sustained as a result of the injury. Payments hereunder for necessary medical expenses shall be subject to the limitations and requirements of section 5108 of the New York Insurance Law.

### Work Loss

Work loss shall consist of the sum of the following losses and expenses, up to a maximum payment of $2,000 per month for a maximum period of three years from the date of the accident:

(a) Loss of earnings from work which the eligible injured person would have performed had such person not been injured, except that an employee who is entitled to receive monetary payments, pursuant to statute or contract with the employer, or who receives voluntary monetary benefits paid for by the employer, by reason of such employee's inability to work because of personal injury arising out of the use or operation of a motor vehicle or a motorcycle, shall not be entitled to receive first-party benefits for loss of earnings from work to the extent that such monetary payments or benefits from the employer do not result in the employee suffering a reduction in income or a reduction in such employee's level of future benefits arising from a subsequent illness or injury; and

(b) Reasonable and necessary expenses sustained by the eligible injured person in obtaining services in lieu of those which such person would have performed for income.

### Other Expenses

Other expenses shall consist of all reasonable and necessary expenses, other than medical expense and work loss, up to $25 per day for a period of one year from the date of the accident causing injury.

### Death Benefit

Upon the death of any eligible injured person, caused by an accident to which this coverage applies, the Company will pay to the estate of such person a death benefit of $2,000.

### Eligible Injured Person

Subject to the exclusions and conditions set forth below, an eligible injured person is:

(a) The named insured and any relative who sustains personal injury arising out of the use or operation of any motor vehicle;

(b) The named insured and any relative who sustains personal injury arising out of the use or operation of any motorcycle, while not occupying a motorcycle;

(c) Any other person who sustains personal injury arising out of the use or operation of the insured motor vehicle in the State of New York while not occupying another motor vehicle; or

(d) Any New York State resident who sustains personal injury arising out of the use or operation of the insured motor vehicle outside of New York State while not occupying another motor vehicle.

### Exclusions

This coverage does not apply to personal injury sustained by:

(a) The named insured while occupying, or while a pedestrian through being struck by, any motor vehicle owned by the named insured with respect to which the coverage required by the New York Comprehensive Motor Vehicle Insurance Reparations Act is not in effect;

(b) Any relative while occupying, or while a pedestrian through being struck by, any motor vehicle owned by the relative with respect to which the coverage required by the New York Comprehensive Motor Vehicle Reparations Act is not in effect;

(c) The named insured or relative while occupying, or while a pedestrian through being struck by, a motor vehicle in New York State, other than the insured motor vehicle, with respect to which the coverage required by the New York Comprehensive Motor Vehicle Insurance Reparations Act is in effect; however, this exclusion does not apply to personal injury sustained in New York State by the named insured or relative while occupying a bus or school bus, as defined in sections 104 and 142 of the New York Vehicle and Traffic Law, unless that person is the operator, an owner, or an employee of the owner or operator, of such bus or school bus;

(d) Any person in New York State while occupying the insured motor vehicle which is a bus or school bus, as defined in sections 104 and 142 of the New York Vehicle and Traffic Law, but only if such person is a named insured or relative under any other policy providing the coverage required by the New York Comprehensive Motor Vehicle Insurance Reparations Act; however, this exclusion does not apply to the operator, an owner, or an employee of the owner or operator, of such bus or school bus;

(e) Any person while occupying a motorcycle;

(f) Any person who intentionally causes his or her own personal injury;

**(g)** Any person as a result of operating a motor vehicle while in an intoxicated condition or while his or her ability to operate the vehicle is impaired by the use of a drug (within the meaning of section 1192 of the New York Vehicle and Traffic Law) except that coverage shall apply to necessary emergency health services rendered in a general hospital, as defined in section 2801(10) of the New York Public Health Law, including ambulance services attendant thereto and related medical screening. However, where the person has been convicted of violating section 1192 of the New York Vehicle and Traffic Law while operating a motor vehicle in an intoxicated condition or while his or her ability to operate such vehicle is impaired by the use of a drug, and the conviction is a final determination, the Company has a cause of action against such person for the amount of first-party benefits that are paid or payable; or

**(h)** Any person while:

**(i)** Committing an act which would constitute a felony, or seeking to avoid lawful apprehension or arrest by a law enforcement officer;

**(ii)** Operating a motor vehicle in a race or speed test;

**(iii)** Operating or occupying a motor vehicle known to that person to be stolen; or

**(iv)** Repairing, servicing or otherwise maintaining a motor vehicle if the conduct is within the course of a business of repairing, servicing or otherwise maintaining a motor vehicle and the injury occurs on the business premises.

**(i)** The named insured or relative while not occupying a motor vehicle or a motorcycle when struck by a motorcycle in New York State with respect to which the coverage required by the New York Comprehensive Motor Vehicle Insurance Reparations Act is in effect;

**(j)** Any New York State resident, other than the named insured or relative injured through the use or operation of the insured motor vehicle outside of New York State if such resident is the owner or a relative of the owner of a motor vehicle insured under another policy providing the coverage required by the New York Comprehensive Motor Vehicle Insurance Reparations Act;

**(k)** Any New York State resident, other than the named insured or relative injured through the use or operation of the insured motor vehicle outside of New York State, if such resident is the owner of a motor vehicle for which the coverage required by the New York Comprehensive Motor Vehicle Insurance Reparations Act is not in effect.

**(l)** Any person who is injured while, pursuant to article 44-B of the Vehicle and Traffic Law, the insured motor vehicle is being used or operated by a transportation network company driver.

**Other Definitions**

When used in reference to this coverage:

**(a)** The "insured motor vehicle" means a motor vehicle owned by the named insured and to which the bodily injury liability insurance of this policy applies and for which a specific premium is charged;

**(b)** "Motorcycle" means a vehicle as defined in section 123 of the New York Vehicle and Traffic Law and which is required to carry financial security pursuant to article 6, 8 or 48-A of the Vehicle and Traffic Law;

**(c)** "Motor vehicle" means a motor vehicle, as defined in section 311 of the New York Vehicle and Traffic Law, and also includes fire and police vehicles, but shall not include any motor vehicle not required to carry financial security pursuant to article 6, 8 or 48-A of the Vehicle and Traffic Law, or a motorcycle as defined above;

**(d)** "Named insured" means the person or organization named in the Declarations;

**(e)** "Occupying" means in or upon or entering into or alighting from;

**(f)** "Personal injury" means bodily injury, sickness or disease;

**(g)** "Relative" means a spouse, child, or other person related to the named insured by blood, marriage, or adoption (including a ward or foster child), who regularly resides in the insured's household, including any such person who regularly resides in the household, but is temporarily living elsewhere; and

**(h)** "Use or operation" of a motor vehicle or a motorcycle includes the loading or unloading of such vehicle.

**Conditions**

**Action Against Company.** No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage.

**Notice.** In the event of an accident, written notice setting forth details sufficient to identify the eligible injured person, along with reasonably obtainable information regarding the time, place and circumstances of the accident, shall be given by, or on behalf of, each eligible injured person, to the Company, or any of the Company's authorized agents, as soon as reasonably practicable, but in no event more than 30 days after the date of the accident, unless the eligible injured person submits written proof providing clear and reasonable justification for the failure to comply with such time limitation. If an eligible injured person or that person's legal representative institutes a proceeding to recover damages for personal injury under section 5104(b) of the New York Insurance Law, a copy of the summons and complaint or other process served in connection with such action shall be forwarded as soon as practicable to the Company or any of the Company's authorized agents by such eligible injured person or that person's legal representative.

**Proof of Claim; Medical, Work Loss, and Other Necessary Expenses.** In the case of a claim for health service expenses, the eligible injured person or that person's assignee or representative shall submit written proof of claim to the Company, including full particulars of the nature and extent of the injuries and treatment received and contemplated, as soon as reasonably practicable but, in no event later than 45 days after the date services are rendered. The eligible injured person or that person's representative shall submit written proof of claim for work loss benefits and for other necessary expenses to the Company as soon as reasonably practicable but, in no event, later than 90 days after the work loss is incurred or the other necessary services are rendered. The foregoing time limitations for the submission of proof of claim shall apply unless the eligible injured person or that person's representative submits written proof providing clear and reasonable justification for the failure to comply with such time limitation. Upon request by the Company, the eligible injured person or that person's assignee or representative shall:

**(a)** Execute a written proof of claim under oath;

**(b)** As may reasonably be required submit to examinations under oath by any person named by the Company and subscribe the same;

**(c)** Provide authorization that will enable the Company to obtain medical records; and

**(d)** Provide any other pertinent information that may assist the Company in determining the amount due and payable.

The eligible injured person shall submit to medical examination by physicians selected by, or acceptable to, the Company, when, and as often as, the Company may reasonably require.

**Arbitration.** In the event any person making a claim for first-party benefits and the Company do not agree regarding any matter relating to the claim, such person shall have the option of submitting such disagreement to arbitration pursuant to procedures promulgated or approved by the Superintendent of Financial Services.

**Reimbursement and Trust Agreement.** To the extent that the Company pays first-party benefits, the Company is entitled to the proceeds of any settlement or judgment resulting from the exercise of any right of recovery for damages for personal injury under section 5104(b) of the New York Insurance Law. The Company shall have a lien upon any such settlement or judgment to the extent that the Company has paid first-party benefits. An eligible injured person shall:

**(a)** Hold in trust, for the Company, all rights of recovery which that person shall have for personal injury under section 5104(b) of the New York Insurance Law;

**(b)** Do whatever is proper to secure, and shall do nothing to prejudice, such rights; and

**(c)** Execute, and deliver to the Company, instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

An eligible injured person shall not compromise an action to recover damages brought under section 5104(b) of the New York Insurance Law, except:

**(a)** With the written consent of the Company;

**(b)** With approval of the court; or

**(c)** Where the amount of the settlement exceeds $50,000.

 © Insurance Services Office, Inc., 2018

Exhibit B

 © Insurance Services Office, Inc., 2018

Exhibit B

**Other Coverage.** Where more than one source of first-party benefits required by article 51 of the New York Insurance Law and article 6, 8 or 44-B of the New York Vehicle and Traffic Law is available and applicable to an eligible injured person in any one accident, this Company is liable to an eligible injured person only for an amount equal to the maximum amount that the eligible injured person is entitled to recover under this coverage, divided by the number of available and applicable sources of required first-party benefits. An eligible injured person shall not recover duplicate benefits for the same elements of loss under this coverage or any other mandatory first-party motor vehicle or no-fault motor vehicle insurance coverage issued in compliance with the laws of another state.

If the eligible injured person is entitled to benefits under any such mandatory first-party motor vehicle or no-fault motor vehicle insurance for the same elements of loss under this coverage, this Company shall be liable only for an amount equal to the proportion that the total amount available under this coverage bears to the sum of the amount available under this coverage and the amount available under such other mandatory insurance for the common elements of loss. However, where another state's mandatory first-party or no-fault motor vehicle insurance law provides unlimited coverage available to an eligible injured person for an element of loss under this coverage, the obligation of this Company is to share equally for that element of loss with such other mandatory insurance until the $50,000, or $75,000 if Optional Basic Economic Loss (OBEL) coverage is purchased, limit of this coverage is exhausted by the payment of that element of loss and any other elements of loss.

### Section II
**Excess Coverage**

If motor vehicle medical payments coverage or any disability coverages or uninsured motorists coverage are afforded under this policy, such coverages shall be excess insurance over any Mandatory PIP, OBEL or Additional PIP benefits paid or payable or which would be paid or payable but for the application of a deductible under this or any other motor vehicle No-Fault insurance policy.

### Section III
**Constitutionality**

If it is conclusively determined by a court of competent jurisdiction that the New York Comprehensive Motor Vehicle Insurance Reparations Act, or any amendment thereto, is invalid or unenforceable in whole or in part, then, subject to the approval of the Superintendent of Financial Services, the Company may amend this policy and may also recompute the premium for the existing or amended policy.

These amendments and recomputations will be effective retroactively to the date that such act or any amendment is deemed to be invalid or unenforceable in whole or in part.

---

POLICY NUMBER: ISA H25295304                                Endorsement Number: 106

**COMMERCIAL AUTO**
CA 01 26 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, North Carolina, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. The Covered Autos Liability Limit of Insurance applies except that we will apply the limit shown in the Declarations to first provide the separate limits required by North Carolina law as follows:

   a. $30,000 for "bodily injury" to any one person caused by any one "accident";

   b. $60,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   c. $25,000 for "property damage" caused by any one "accident".

   This provision will not change the Limit of Insurance.

2. If the policy provides Covered Autos Liability Coverage only for owned "autos", a temporary substitute for one of these will also be considered a covered "auto", subject to the following provisions:

   a. The owned "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

   b. The temporary substitute must be owned by someone other than you or a member of your household.

   c. The temporary substitute must be with the permission of the owner.

   d. The Covered Autos Liability Coverage for the temporary substitute is excess over any other collectible insurance.

**B. Changes In Physical Damage Coverage**

Paragraph A.3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles in the Business Auto and Motor Carrier Coverage Forms and Paragraph F.1.b. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles in the Auto Dealers Coverage Form are replaced by the following:

**Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by the covered "auto's" collision or overturn and "loss" caused by hitting a bird or animal considered a "loss" under Collision Coverage.

**C. Changes In Uninsured Motorists Coverage**

The Limit of Insurance applies except that we will apply the limit shown in the Declarations to first provide the separate limits required by North Carolina law as follows:

1. $30,000 for "bodily injury" to any one person caused by any one "accident";

---

2. $60,000 for "bodily injury" to two or more persons caused by any one "accident"; and

3. $25,000 for "property damage" caused by any one "accident".

This provision will not change the total Limit of Insurance.

**D. Changes In Auto Medical Payments Coverage**

If the Auto Medical Payments Coverage endorsement is attached, then Exclusion **C.5.** relating to "bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos", applies only if workers' compensation benefits are available.

**E. Changes In Garagekeepers Coverage**

If the policy provides Garagekeepers Coverage, any deductible will apply only to the amount of "loss" and will not reduce the Limit of Insurance.

**F. Changes In Conditions**

1. Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

   2. We may cancel any type or limit of coverage provided by this policy to the extent that it cannot be ceded to the North Carolina Reinsurance Facility as follows:

      **a.** If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

         (1) 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

         (2) 30 days before the effective date of cancellation if we cancel for any other reason.

      **b.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

         (1) Expiration of the policy term; or

         (2) Anniversary date;

         stated in the policy only for one or more of the following reasons:

            (a) Nonpayment of premium. Cancellation for nonpayment of premium is not effective if the amount due is paid before the effective date set forth in the notice of cancellation.

      (b) An act or omission by the "insured" or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy, or presenting a claim under this policy.

      (c) Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk.

      (d) Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk.

      (e) A fraudulent act against us by the "insured" or his or her representative that materially affects the insurability of the risk.

      (f) Willful failure by the "insured" or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us.

      (g) Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30.

      (h) Conviction of the "insured" of a crime arising out of acts that materially affect the insurability of the risk.

      (i) A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina.

      (j) You fail to meet the requirements contained in our corporate charter, articles of incorporation, or bylaws, when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

   We may cancel any type or limit of coverage provided by the policy to the extent that it can be ceded to the North Carolina Reinsurance Facility only for one or more of the following reasons by mailing to the first Named Insured at least 15 days' notice at the last address known to us:

      (1) Nonpayment of premium.

      (2) You become a nonresident of North Carolina and are not otherwise entitled to insurance through the Reinsurance Facility.

      (3) Our contract with the agent through whom this policy is written is terminated for reasons other than the quality of the agent's "insureds".

      (4) This policy is cancelled pursuant to a power of attorney given a company licensed according to the provisions of G.S. 58-56.

   2. To the extent that any type or limit of coverage provided by this policy cannot be ceded to the North Carolina Reinsurance facility, the following provision is added and supersedes any other provisions to the contrary:

   **Nonrenewal**

      **a.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

         (1) Expiration of the policy if it has been written for one year or less; or

         (2) Anniversary date if it is a continuous policy or has been written for more than one year or for an indefinite term.

      **b.** We need not mail or deliver the notice of nonrenewal if you have:

         (1) Insured property covered under this policy under any other insurance policy;

         (2) Accepted replacement coverage; or

         (3) Requested or agreed to nonrenewal of this policy.

      **c.** If notice is mailed, proof of mailing will be sufficient proof of notice.

   **d.** The written notice of cancellation or nonrenewal will:

      (1) Be mailed or delivered to the first Named Insured and any designated loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

      (2) State the reason or reasons for cancellation or nonrenewal.

   3. To the extent that any type or limit of coverage provided by this policy can be ceded to the North Carolina Reinsurance Facility, the following provision is added and supersedes any other provision to the contrary:

   **Nonrenewal**

   We may nonrenew this policy only for one or more of the following reasons:

      **a.** Nonpayment of premium.

      **b.** You become a nonresident of North Carolina and are not otherwise entitled to insurance through the Reinsurance facility.

      **c.** Our contract with the agent through whom this policy is written is terminated for reasons other than the quality of the agent's "insureds".

      **d.** This policy is cancelled pursuant to a power of attorney given a company licensed according to the provisions of G.S. 58-56.

      **e.** You fail to meet the requirements contained in our corporate charter, articles of incorporation, or bylaws, when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

   4. Common Policy Condition B. Changes is changed to read as follows:

   This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium for that change as of the effective date of change. If we revise this policy form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

5. Loss Condition **1. Appraisal For Physical Damage Loss** is replaced by the following:

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision, in writing, agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

6. The following is added to Loss Conditions:

**Appraisal For Property Damage**

In the event of an "accident":

**1.** If the claimant and we fail to agree as to the difference in fair market value of the motor vehicle immediately before and immediately after the "accident" and the difference in the claimant's and our estimate of the diminution in fair market value of the vehicle is greater than $2,000 or 25% of the fair market retail value of the vehicle prior to the "accident" as determined by the latest edition of the National Automobile Dealers Association Pricing Guide Book or other publications approved by the Commissioner of Insurance, whichever is less; and

**2.** Liability for coverage for the claim is not in dispute;

then on the written demand of either the claimant or us, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days after the demand.

Should the appraisers fail to agree, they shall then select a competent and disinterested appraiser to serve as an umpire. If the appraisers cannot agree upon an umpire within 15 days, either the claimant or we may request that a magistrate resident in the county where the insured motor vehicle is registered or the county where the "accident" occurred select the umpire.

The umpire then shall prepare a report determining the amount of "property damage" and shall file the report with us and the claimant.

The claimant or we shall have 15 days from the filing of the report to reject the report and notify the other party of such rejection. If the report is not rejected within 15 days from the filing of the report, the report shall be binding upon both the claimant and us.

Each appraiser shall be paid by the party selecting the appraiser, and the expenses of appraisal and umpire shall be paid by the parties equally.

If either party elects to have an appraisal to determine the amount of "property damage", then the amount of "property damage" cannot be decided through arbitration.

**7.** Paragraph **2. of the Concealment, Misrepresentation Or Fraud General Conditions** is amended by the addition of the following:

This condition does not apply for coverage up to the minimum limits of liability required by the North Carolina Financial Responsibility Act of 1957.

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 107

COMMERCIAL AUTO
CA 21 16 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NORTH CAROLINA UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or garaged in, or "auto dealer operations" conducted in, North Carolina, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: Medtronic plc |
|---|
| Endorsement Effective Date: |

**SCHEDULE**

| Limit Of Insurance: $ See DA40002 | Each "Accident" |
|---|---|

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

| The definition of "uninsured motor vehicle" in this endorsement applies in its entirety unless an "X" is entered below: |
|---|
| ☐ If an "X" is entered in this box, Paragraph **b.** of the definition of "uninsured motor vehicle" does not apply. |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of:

   **a.** An "uninsured motor vehicle" because of "bodily injury" sustained by the "insured" and caused by an "accident"; and

   **b.** An "uninsured motor vehicle", as defined in Paragraphs **a.** and **c.** of the definition of "uninsured motor vehicle", because of "property damage" caused by an "accident".

   The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle", we will pay under this coverage only if Paragraph **a.** or **b.** below applies:

   **a.** The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   **b.** A tentative settlement has been made between an "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" and we:

   **(1)** Have been given prompt written notice of such tentative settlement; and

**(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

**3.** Any judgment for damages arising out of a "suit" brought without sending us a copy of the summons, complaint or other process against an uninsured motorist is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

**1.** An individual, then the following are "insureds":

  **a.** The Named Insured and any "family members".

  **b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

  **c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

  **a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

  **b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

  **c.** The Named Insured for "property damage" only.

**C. Exclusions**

This coverage does not apply to:

**1.** Any claim settled by the "insured" or any legal representative of the "insured" without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" in accordance with the procedure described in Paragraph A.2.b.

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** The direct or indirect benefit of any insurer of property.

**4.** An "auto" or property contained in the "auto" other than a covered "auto".

**5.** The first $100 of the amount of "property damage" to the property of each "insured" as the result of any one "accident".

**6.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**7.** Punitive or exemplary damages.

**8.** "Bodily injury" or "property damage" arising directly or indirectly out of:

  **a.** War, including undeclared or civil war;

  **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

  **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage shown in the Declarations.

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.

  We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

  We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law exclusive of nonoccupational disability benefits.

**E. Changes In Conditions**

The Conditions are changed for Uninsured Motorists Coverage as follows:

**1.** Other Insurance in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

  **a.** The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

  **b.** Any insurance we provide with respect to a vehicle:

    **(1)** The Named Insured does not own; or

    **(2)** Owned by the Named Insured or, if the Named Insured is an individual, any "family member", that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

  shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

  **c.** If the coverage under this Coverage Form is provided:

    **(1)** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

    **(2)** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

**2.** Duties In The Event Of Accident, Claim, Suit Or Loss in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

  **a.** Promptly notify the police if a hit-and-run driver is involved.

  **b.** Promptly send us copies of the legal papers if a "suit" is brought. A "suit" may not be brought against anyone legally responsible for the use of any "auto" involved in the "accident" until 60 days after an "insured" notifies us or our agent of his or her belief that the prospective defendant is an uninsured motorist.

  **c.** Any person who intends to pursue recovery against the owner or operator of an "uninsured motor vehicle", as described in Paragraph **b.** of the definition of "uninsured motor vehicle", for damages beyond those paid or payable under this policy shall give us:

    **(1)** Notice of such intent; and

    **(2)** The opportunity to participate, at our expense, in the prosecution of such claim.

  **d.** A person seeking coverage from an insurer, owner or operator of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such vehicle.

**3.** Transfer Of Rights Of Recovery Against Others To Us is changed as follows:

  **a.** If we make any payment on the Named Insured's behalf, we are entitled to recover what we paid from other parties. The Named Insured must transfer rights of recovery against others to us. The Named Insured must do everything necessary to secure these rights and do nothing to jeopardize them.

However, our rights under this paragraph do not apply with respect to vehicles described in Paragraphs F.4.a., c. and d. of the definition of "uninsured motor vehicle". For these vehicles, if we make any payment and the Named Insured recovers from another party, that Named Insured must hold the proceeds in trust for us and pay us back the amounts we have paid.

b. Our rights do not apply under this provision with respect to damages caused by an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" if we:

(1) Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle"; and

(2) Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

(1) That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motor Vehicle Coverage; and

(2) We also have a right to recover the advanced payment.

4. The following condition is added:

Arbitration

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. The "insured" may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

c. If the "insured" elects not to arbitrate, our liability will be determined only in an action against us. In any action against us, except an action to determine whether a vehicle is an "uninsured motor vehicle", we may require the "insured" to join the owner or driver of the vehicle as a party defendant.

If the "insured" elects arbitration to determine the amount of "property damage", then the Appraisal For Property Damage Condition does not apply.

F. Additional Definitions

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Property damage" means injury to or destruction of the property of an "insured".

4. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

a. For which neither a bond or policy nor cash or securities on file with the North Carolina Commissioner of Motor Vehicles provides at least the amounts required by the North Carolina Motor Vehicle Safety and Responsibility Act.

b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of all bodily injury liability bonds or policies at the time of an "accident" provides at least the amounts required by the North Carolina Motor Vehicle Safety and Responsibility Act, but their limits are either:

(1) Less than the limits of underinsured motorists coverage applicable to a covered "auto" that the Named Insured owns involved in the "accident"; or

(2) Less than the limits of this coverage, if a covered "auto" that the Named Insured owns is not involved in the "accident"; or

(3) Reduced by payments to others injured in the "accident" to an amount which is less than the Limit of Insurance for this coverage.

However, an underinsured motor vehicle does not include a "covered auto" unless the Limit of Uninsured Motorists Coverage shown in the Declarations or Schedule is greater than the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations of this policy.

c. For which the insuring or bonding company denies coverage or is or becomes insolvent.

d. That is a hit-and-run vehicle causing "bodily injury" to an "insured" and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.

b. Owned by:

(1) The United States of America;

(2) Canada;

(3) A state; or

(4) An agency, except vehicles owned by political subdivisions of (1), (2) or (3) above.

c. Designed for use mainly off public roads while not on public roads.

© Insurance Services Office, Inc., 2012

CA 21 16 10 13

CA 21 16 10 13

© Insurance Services Office, Inc., 2012

Exhibit B

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 108

**COMMERCIAL AUTO**
CA 01 61 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NORTH DAKOTA CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, North Dakota, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are changed by adding the following:

1. Covered Autos Liability Coverage, Uninsured Motorists Coverage, Underinsured Motorists Coverage, Auto Medical Payments Coverage, Personal Injury Protection Coverage and Additional Personal Injury Protection Coverage are primary for an "auto" loaned, rented or leased to the "insured" and owned by someone in the business of selling, repairing, servicing, storing, leasing, renting or parking motor vehicles.

2. If you are in a business described in Paragraph 1., the coverages described in Paragraph 1. are excess for an "auto" you own if operated by an "insured" other than you or your "employee".

CA 01 61 10 13      © Insurance Services Office, Inc., 2012      Page 1 of 1

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 109

**COMMERCIAL AUTO**
CA 22 34 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NORTH DAKOTA PERSONAL INJURY PROTECTION ENDORSEMENT

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, North Dakota, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

We agree with the "Named Insured", subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

**A. Coverage**

We will pay Personal Injury Protection benefits in accordance with the North Dakota Auto Accident Reparations Act to or for an "insured" who sustains "bodily injury" caused by an "accident" arising out of the operation, maintenance or use of an "auto" as a vehicle. These personal injury protection benefits consist of the following:

1. Funeral expenses. Reasonable expenses incurred for a professional funeral, cremation and burial;

2. Medical expenses. Usual and customary charges incurred for reasonable and necessary medical, surgical, diagnostic, x-ray, dental, prosthetic, ambulance, hospital or professional nursing services or services for remedial treatment and care, but usual and customary charges do not include:

   a. The portion of the charge for a room in any hospital, clinic, convalescent or nursing home, extended care facility or any similar facility in excess of the reasonable and customary charge for semiprivate accommodations unless intensive care is medically needed;

   b. Charges for drugs sold without a prescription;

   c. Charges for experimental treatments; or

   d. Charges for medically unproven treatments;

3. Rehabilitation expenses. The cost of a procedure or treatment for rehabilitation or a course of rehabilitative occupational training if the procedure, treatment or training is reasonable and appropriate for the particular case, its cost is reasonable in relation to its probable rehabilitative effects, and it is likely to contribute substantially to medical or occupational rehabilitation;

4. Replacement services loss. Expenses incurred in obtaining ordinary and necessary services from others not members of the "insured's" household in lieu of those that the "insured" would have performed had he or she not been injured, not for income but for the benefit of himself or herself or his or her household, but "replacement services loss" does not include any loss after the death of the "insured";

5. Survivors' income loss. Loss sustained after an "insured's" death by his or her "survivors" during their dependency and consisting of the loss of the contributions they would have received for their support from that "insured" out of income from work he or she would normally have performed had he or she not died;

6. Survivors' replacement services loss. Expenses incurred after the "insured's" death by his "survivors" in obtaining ordinary and necessary services from others not members of that "insured's" household in lieu of the services he or she would have performed not for income but for the benefit of his or her household;

CA 22 34 10 13      © Insurance Services Office, Inc., 2012      Page 1 of 5

7. **Work loss.** Eighty-five percent of loss of income from work an "insured" who would normally be employed in gainful activity during the period of his or her disability would have performed had he or she not been injured, reduced by any income from substitute work actually performed by the "insured" or by income the "insured" would have earned in available appropriate substitute work which he or she was capable of performing but unreasonably failed to undertake, but work loss does not include any loss after death of an "insured".

**B. Who Is An Insured**

1. The "named insured" or any relative who sustains "bodily injury" while "occupying" any "auto" or while a "pedestrian" through being struck by any "auto" or motorcycle;

2. Any other person who sustains "bodily injury":

   a. While "occupying", or while a "pedestrian" through being struck by, the covered "auto";

   b. While "occupying" an "auto" not owned by, but operated by the "named insured" or "family member", if the "bodily injury" results from the operation of the "auto" by the "named insured" or "family member".

**C. Exclusions**

We will not pay Personal Injury Protection benefits for "bodily injury":

1. Sustained by the "named insured" while "occupying" any "auto" owned by the "named insured" which is not a covered "auto";

2. Sustained by any "family member" while "occupying" an "auto" owned by that "family member" with respect to which the security required by the North Dakota Auto Accident Reparation Act is not in effect;

3. Sustained by the "named insured" or any "family member", while "occupying" or while a "pedestrian" through being struck by, any "auto", other than the covered "auto", or an "auto" being used in a "ridesharing arrangement", with respect to which the security required under the North Dakota Auto Accident Reparation Act is in effect;

4. Sustained by any person if the injury arises out of conduct within the course of a business of repairing, servicing or otherwise maintaining an "auto", unless that conduct involves the actual operation of an "auto" as a vehicle on the business premises or unless that conduct occurs off the business premises;

5. Sustained by any person arising out of conduct in the course of loading or unloading any "auto", unless the injury occurs while "occupying" that "auto";

6. Sustained by any person while "occupying" any "auto" without the express or implied consent of the owner or while not in lawful possession of any "auto";

7. Sustained by any person as the result of entering or alighting from a stopped "auto" if the injury is not caused by another "auto";

8. Intentionally caused by any person who would otherwise be entitled to receive benefits hereunder for "bodily injury" arising out of his or her intentionally attempting to cause "bodily injury" to himself or herself or to another person, and, if any person dies as a result of intentionally causing or attempting to cause "bodily injury" to himself or herself, his or her "survivors" are not entitled to any "survivors" income loss or "survivors" replacement services loss benefits;

9. Sustained by any person while in the course of a racing or speed contest or in practice or preparation thereto;

10. Sustained by any "pedestrian", other than the "named insured" or any "family member", if the accident occurs outside the state of North Dakota;

11. Sustained by any person arising out of the operation, maintenance or use of any "auto" while located for use as a residence or premises;

12. Arising directly or indirectly out of:

    a. War, including undeclared or civil war;

    b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

13. Resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

**D. Definitions**

As used in this endorsement:

1. "Auto" means a vehicle having more than three load-bearing wheels, of a kind required to be registered under the laws of North Dakota relating to motor vehicles, designed primarily for operation upon the public streets, roads and highways, and driven by power other than muscular power, and includes a trailer designed for use with such vehicle.

2. Covered "auto" means an "auto" with respect to which:

   a. Security is required to be maintained under the provisions of The North Dakota Auto Accident Reparations Act; and

   b. The "bodily injury" liability coverage of the policy applies and for which a specific premium is charged.

3. "Family member" means a spouse or any other individual related to the "named insured" by blood, marriage or adoption, including a ward or foster child, who is a resident of the same household as the "named insured", or who usually makes his or her home in the same household but temporarily lives elsewhere.

4. "Named insured" means the person or organization named in the Declarations.

5. "Occupying" means in or upon.

6. "Pedestrian" means any individual not "occupying" a "motor vehicle" or any other vehicle designed to be driven or drawn by power other than muscular power.

7. "Ridesharing arrangement" means the transportation of persons in a "motor vehicle" where the transportation is incidental to another purpose of the driver or owner and is not provided for pecuniary gain. The term shall include ridesharing arrangements known as car pools and van pools as defined in North Dakota Laws.

8. "Survivor" means a dependent survivor of a deceased "insured" and includes the following survivors only:

   a. The surviving spouse if residing in the deceased's household at the time of his or her death, providing that the dependency of that spouse shall terminate upon remarriage; and

   b. Other persons receiving support from the deceased at the time of his or her death which would qualify them as dependents of the deceased for federal income tax purposes under the Federal Internal Revenue Code.

**E. Policy Period; Territory**

This coverage applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions, or Canada.

**F. Limit Of Insurance**

Regardless of the number of persons insured, policies or approved plans of self-insurance applicable, premiums paid, claims made or covered "autos" to which this coverage applies, our liability for personal injury protection benefits with respect to "bodily injury" sustained by any one "insured" in any one "auto" "accident" shall not exceed $30,000 in the aggregate, and subject to such aggregate limit:

1. The maximum amount payable for work loss or survivors' income loss shall not exceed $150 per week prorated for any lesser period;

2. The maximum amount payable for replacement services loss or survivors' replacement services loss shall not exceed $15 per day;

3. The maximum amount payable for funeral expenses shall not exceed $3,500.

Any amount payable by us under the terms of this coverage shall be reduced by the amount of benefits an "insured" has recovered or is entitled to recover for the same elements of loss under any workers' compensation act.

**G. Changes In Conditions**

The Conditions are changed for Personal Injury Protection as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are replaced by the following:

   We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

   a. In the event of an accident, written notice containing particulars sufficient to identify the "insured", and also reasonably obtainable information respecting the time, place and circumstances of the "accident", shall be given by or on behalf of each "insured" to the company or any of its authorized agents as soon as practicable. If an "insured", his or her legal representative or his or her "survivors" shall institute legal action to recover damages for "bodily injury" against a person or organization who is or may be liable in tort therefor, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such "insured", his or her legal representative or his or her "survivors".

   b. As soon as practicable, the "insured" or someone on his or her behalf shall give us written proof of claim, under oath if required, including full particulars of the nature and extent of the "bodily injury" treatment and rehabilitation received and contemplated and such other information as may assist us in determining the amount due and payable. The "insured" shall submit to physical and mental examination by physicians selected by us when and as often as we may reasonably require. If an "insured" refuses to submit to a physical or mental examination, we may request a court to enter an order requiring the "insured" to submit to the examination.

2. **Legal Action Against Us** is replaced by the following:

   **Legal Action Against Us**

   No action shall lie against us unless as a condition precedent thereto, there shall have been full compliance with all the terms of this coverage.

3. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

   **Transfer Of Rights Of Recovery Against Others To Us**

   Subject to any applicable limitation set forth in North Dakota Auto Accident Reparations Act, in the event of any payment under this coverage, we are subrogated to the rights of the person to whom or for whose benefit the payments were made to the extent of those payments. That person shall execute and deliver the instruments and papers and do whatever else is necessary to secure those rights. That person shall do nothing after loss to prejudice those rights.

4. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   In the event an "insured" has other similar insurance, including approved plans of self-insurance, available and applicable to the accident, the maximum recovery under all such insurance shall not exceed the amount which would have been payable under the provisions of the insurance providing the highest dollar limit, and we shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limit of liability of this coverage and the other insurance.

**H. Additional Conditions**

The following conditions are added for Personal Injury Protection:

1. **Constitutionality Clause**

   The premium for and the coverages of the policy have been established in reliance upon the provisions of the North Dakota Auto Accident Reparations Act. In the event a court of competent jurisdiction declares, or enters a judgment the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we shall have the right to recompute the premium payable for the policy, and the provisions of this endorsement shall be voidable or subject to amendment at our option.

2. **Coordination**

   Any amount payable under uninsured motorists coverage shall be reduced by the amount of any personal injury protection benefits paid or payable under this or any other automobile insurance policy because of "bodily injury" sustained by an "insured".

   Any automobile medical payments afforded under this policy shall be excess insurance over any personal injury protection benefits paid or payable under this or any other automobile insurance policy because of "bodily injury" sustained by an "insured".

3. **Nonduplication Of Benefits**

   No "insured" shall recover duplicate benefits for the same elements of loss under this or any similar insurance, including approved plans of self-insurance.

4. **Priority Of Payments**

   This coverage applies on a primary basis to "bodily injury" sustained by an "insured" if the "accident" arises out of the use or operation of the covered "auto" except, if the "accident" involves the operation of the "insured motor vehicle" in a "ridesharing arrangement", any personal injury protection coverage, required by the North Dakota Auto Accident Reparations Act, afforded by another policy under which such "insured" is a "named insured" or "family member", shall be primary and this coverage shall be excess.

5. **Reimbursement And Trust Agreement**

   In the event of the payment to any person under this coverage:

   a. We shall be entitled to the extent of the payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of that person against any person or organization legally responsible for the "bodily injury" because of which that payment is made, and we shall have a lien to the extent of that payment, notice of which may be given to the person or organization causing the "bodily injury", his or her agent, his or her insurer or a court having jurisdiction in the matter;

   b. That person shall hold in trust for our benefit all rights of recovery which he or she shall have against that other person or organization because of the "bodily injury";

   c. That person shall do whatever is proper to secure, and shall do nothing after loss to prejudice, those rights; and

   d. That person shall execute and deliver to us instruments and papers as may be appropriate to secure those rights and obligations of that person and us established by this provision.

POLICY NUMBER: ISA H25295304

Endorsement Number: 110

**COMMERCIAL AUTO**
CA 21 86 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH DAKOTA
# UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or for "auto dealer operations" conducted in, North Dakota, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: Medtronic plc |
| Endorsement Effective Date: |

**SCHEDULE**

| Limit Of Insurance:  $ See DA40002 | Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle".

2. We will pay under this coverage only if Paragraph a. or b. below applies:

   a. The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" which would exhaust the limits of liability under any applicable bonds or policies, and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. No judgment for damages arising out of a "suit" brought against the owner or operator of an "underinsured motor vehicle" is binding on us unless we:

   a. Received reasonable notice of the pendency of the "suit" resulting in the judgment; and

   b. Had a reasonable opportunity to protect our interests in the "suit".

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

This insurance does not apply to:

1. Punitive or exemplary damages.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by an "insured" while "occupying" any vehicle owned by, or furnished or available for the regular use of, the Named Insured or, if the Named Insured is an individual, any "family member", that is not a covered "auto".

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Underinsured Motorists Coverage shown in the Schedule or Declarations.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any valid and collectible motor vehicle medical payments, uninsured motorists coverage endorsement, personal injury protection or other similar motor vehicle coverages.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation or similar law, except nonoccupational disability benefits.

**E. Changes In Conditions**

The Conditions are changed for Underinsured Motorists Coverage as follows:

1. Other Insurance in the Auto Dealers and Business Auto Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form are replaced by the following:

   a. If this Coverage Form and any other Coverage Form or policy providing Underinsured Motorists Coverage apply to the same "accident" and:

      (1) The motor vehicle the "insured" was "occupying" at the time of the "accident" was loaned, rented or leased to the "insured", and a policy, which applies to the motor vehicle, was in force which provided Underinsured Motorists Coverage to someone engaged in the business of selling, repairing, servicing, storing, leasing, renting or parking motor vehicles, the following priorities of recovery apply:

| First Priority | The Underinsured Motorists Coverage applicable to a vehicle that is not involved in the "accident" that provides coverage to the injured person as a Named Insured; |
| Second Priority | The Underinsured Motorists Coverage applicable to a vehicle that is not involved in the "accident" that provides coverage to the injured person as an "insured" other than a Named Insured; |
| Third Priority | The Underinsured Motorists Coverage applicable to a vehicle the injured person was "occupying" at the time of the "accident". |

(2) The motor vehicle is not described in Paragraph E.1.a.(1) above, the following priorities of recovery apply:

| First Priority | The Underinsured Motorists Coverage applicable to a vehicle the injured person was "occupying" at the time of the "accident"; |
|---|---|
| Second Priority | The Underinsured Motorists Coverage applicable to a vehicle that is not involved in the "accident" that provides coverage to the injured person as a Named Insured; |
| Third Priority | The Underinsured Motorists Coverage applicable to a vehicle that is not involved in the "accident" that provides coverage to the injured person as an "insured" other than a Named Insured. |

b. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis. Our share is the proportion that our Limit of Insurance bears to the total of all applicable limits of insurance covering on the same level of priority.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

a. Promptly notify the proper law enforcement authorities of the "accident"; and

b. Promptly send us copies of the legal papers if a suit is brought;

c. A person seeking Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

a. If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

b. Our rights do not apply under this provision if we:

(1) Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of the "underinsured motor vehicle"; and

(2) Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of such notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after notification:

(1) That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

(2) We also have a right to recover advanced payment from the insurer, owner or operator of the "underinsured motor vehicle".

4. The following condition is added:

**Arbitration**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", both parties may agree to arbitration and to be bound by the results of that arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated. If both parties agree to arbitrate, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

F. **Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Underinsured motor vehicle" means a land motor vehicle or "trailer" for which the sum of all liability bonds or policies that apply at the time of an "accident" is either:

a. Less than the Limit of Insurance for Underinsured Motorists Coverage under this Coverage Form or policy, or

b. Reduced by payments to others injured in the "accident" to less than the Limit of Insurance for Underinsured Motorists Coverage under this Coverage Form or policy.

However, "underinsured motor vehicle" does not include any vehicle:

a. Owned by a governmental unit or agency;

b. For which an insuring or bonding company denies coverage or is or becomes insolvent;

c. While located for use as a residence or premises;

d. Operated by any person who is specifically excluded from coverage under this Coverage Form; or

e. That is a covered "auto" under this Coverage Form's Covered Autos Liability Coverage.

POLICY NUMBER:  ISA H25295304

Endorsement Number: 111

**COMMERCIAL AUTO**
CA 21 83 10 13

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NORTH DAKOTA
# UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or for "auto dealer operations" conducted in, North Dakota, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured:  Medtronic plc |
|---|
| Endorsement Effective Date: |

**SCHEDULE**

| Limit Of Insurance:  $ See DA40002 | Each "Accident" |
|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

### A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. No judgment for damages arising out of a "suit" brought against the owner or operator of an "uninsured motor vehicle" is binding on us unless we;

   a. Received reasonable notice of the pendency of the "suit" resulting in the judgment; and

   b. Had a reasonable opportunity to protect our interest in the "suit".

### B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

### C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled or judgment reached without our written consent, if the settlement or judgment prejudices our right to recover payment.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by an "insured" while "occupying" any vehicle owned by, or furnished or available for the regular use of, the Named Insured or, if the Named Insured is an individual, any "family member", that is not a covered "auto".

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. Punitive or exemplary damages.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

### D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any valid and collectible motor vehicle medical payments, underinsured motorists coverage endorsement, personal injury protection or other similar motor vehicle coverages.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation or similar law, except nonoccupational disability benefits.

### E. Changes In Conditions

The **Conditions** are changed for Uninsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   a. If this Coverage Form and any other Coverage Form or policy providing Uninsured Motorists Coverage apply to the same "accident" and:

      (1) The motor vehicle the "insured" was "occupying" at the time of the "accident" was loaned, rented or leased to the "insured", and a policy, which applies to the motor vehicle, was in force which provided Uninsured Motorists Coverage to someone engaged in the business of selling, repairing, servicing, storing, leasing, renting or parking motor vehicles, the following priorities of recovery apply:

| First Priority | The Uninsured Motorists Coverage applicable to a vehicle that is not involved in the "accident" that provides coverage to the injured person as a Named Insured; |
|---|---|
| Second Priority | The Uninsured Motorists Coverage applicable to a vehicle that is not involved in the "accident" that provides coverage to the injured person as an "insured" other than a Named Insured; |
| Third Priority | The Uninsured Motorists Coverage applicable to a vehicle the injured person was "occupying" at the time of the "accident". |

Exhibit B

**(2)** The motor vehicle is not described in Paragraph E.1.a.(1) above, the following priorities of recovery apply:

| First Priority | The Uninsured Motorists Coverage applicable to a vehicle the injured person was "occupying" at the time of the "accident". |
|---|---|
| Second Priority | The Uninsured Motorists Coverage applicable to a vehicle that is not involved in the "accident" that provides coverage to the injured person as a Named Insured; |
| Third Priority | The Uninsured Motorists Coverage applicable to a vehicle that is not involved in the "accident" that provides coverage to the injured person as an "insured" other than a Named Insured. |

**b.** The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis. Our share is the proportion that our Limit of Insurance bears to the total of all applicable limits of insurance covering on the same level of priority.

**2.** **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

**a.** Promptly notify the proper law enforcement authorities of the "accident"; and

**b.** Promptly send us copies of the legal papers if a "suit" is brought.

**3.** **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

**a.** If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

**b.** If we make a payment because the insurer of the "uninsured motor vehicle" is or becomes insolvent, the Transfer Of Rights Of Recovery Against Others To Us Condition does not apply to any right of recovery against either the insured of the insolvent insurer, or the North Dakota Guaranty Fund, except in amounts that exceed the limit of liability of the Coverage Form or policy that was issued by that insolvent insurer.

**4.** The following condition is added:

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", both parties may agree to arbitration and to be bound by the results of that arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated. If both parties agree to arbitrate, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

**a.** For which no liability bond or policy applies at the time of an "accident";

**b.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

**c.** That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must either:

**(1)** Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

**(2)** Cause "bodily injury" to an "insured" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying", provided the facts of the "accident" can be corroborated by competent evidence other than the testimony of any person having a claim under this or any other similar insurance as the result of such "accident".

However, "uninsured motor vehicle" does not include any vehicle:

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

**b.** Owned by a governmental unit or agency;

**c.** While located for use as a residence or premises;

**d.** Operated by any person who is specifically excluded from coverage under this Coverage Form; or

**e.** That is a covered "auto" under this Coverage Form's Covered Autos Liability Coverage.

POLICY NUMBER: ISA H25295304

Endorsement Number: 112

**COMMERCIAL AUTO**
CA 01 32 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OKLAHOMA CHANGES

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Paragraph **C. Limit Of Insurance** in the Business Auto and Motor Carrier Coverage Forms and Paragraph **D.5. Limit Of Insurance – Covered Autos Liability** in the Auto Dealers Coverage Form are changed by adding the following:

   Covered Autos Liability Coverage is provided in this Coverage Part in accordance with coverage required by the Compulsory Insurance Law of Oklahoma.

2. Paragraph **2.b.(4)** of the **Who Is An Insured** provision of the Auto Dealers Coverage Form does not apply.

**B. Changes In Conditions**

1. Paragraph **c.(2)** of the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition in the Business Auto and Motor Carrier Coverage Forms and Paragraph **c.(2)** of the **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** Condition in the Auto Dealers Coverage Form are replaced by the following:

   **(2)** Take all reasonable steps, at our expense, to protect the covered "auto" from further damage. Also, keep a record of your expenses for consideration in the settlement of the claim.

2. The **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are changed by adding the following:

   When two policies providing liability coverage apply to an "auto" and:

   **a.** One provides coverage to a named insured who is an authorized motor vehicle dealer; and

   **b.** The other provides coverage to a person not engaged in that business; and

   **c.** At the time of an "accident" a person described in **b.** is operating the "auto", then that person's liability insurance is primary and the dealer's liability insurance is excess over any insurance available to that person, provided:

   **(1)** The person is operating the "auto" with the permission of the dealer;

   **(2)** The change in financial responsibility is evidenced by a release signed by the person operating the "auto"; and

   **(3)** No fee or lease charge has been made by the dealer for the use of the "auto".

CA 01 32 10 13 © Insurance Services Office, Inc., 2012 Page 1 of 1

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 113

**COMMERCIAL AUTO**
CA 01 49 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OREGON CHANGES

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Paragraph **2.b.(4)** of the **Who Is An Insured** provision in the Auto Dealers Coverage Form is replaced by the following:

   **(4)** Your customers. However, if a customer of yours:

   **(a)** Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the following minimum limits specified by the Oregon Financial Responsibility Law:

   **(i)** $70,000 for each "accident", which is the minimum combined single limit of liability; or

   **(ii)** $25,000/$50,000/$20,000 for each "accident", which is the minimum split limit of liability.

   **(b)** Has other available insurance (whether primary, excess or contingent) less than the following minimum limits specified by the Oregon Financial Responsibility Law, they are an "insured" only for the amount by which such limits exceed the limit of their other insurance:

   **(i)** $70,000 for each "accident", which is the minimum combined single limit of liability; or

   **(ii)** $25,000/$50,000 for each "accident", which is the minimum split limit of liability.

2. Paragraph **b.(1)** of the **Out-of-state Coverage Extensions** is replaced by the following:

   **(1)** Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the minimum limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used, but this does not apply to any law governing motor carriers of passengers or property.

3. The following is added to the **Limit Of Insurance** provision of the Business Auto and Motor Carrier Coverage Forms and the **Limit Of Insurance – Covered Autos Liability** provision of the Auto Dealers Coverage Form:

   We will provide primary insurance for a vehicle that you do not own if such vehicle is owned by a self-insurer as qualified under the Oregon Financial Responsibility Law.

**B. Changes In Conditions**

1. The **Appraisal For Physical Damage Loss** Condition is replaced by the following:

   If you and we disagree on the amount of "loss", both parties may agree to an appraisal of the "loss" and to be bound by the results of that appraisal. If both parties so agree, then each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   **a.** Pay its chosen appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

CA 01 49 10 13 © Insurance Services Office, Inc., 2012 Page 1 of 2

However, we will reimburse you for reasonable appraisal costs if the final appraisal decision of the "loss" is greater than the amount of our last offer prior to incurring appraisal costs.

If we submit to an appraisal, we will still retain our right to deny the claim.

2. The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

a. Subject to Paragraphs **b.** and **c.** below, we will retain the right to deny a claim made by the "insured" or any other person if, whether before or after a loss, you have willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject of it, or your interest in it, or in case of any fraud or false swearing by you relating to it.

b. All statements made by you or on your behalf, in the absence of fraud, will be deemed representations and not warranties. No such statements that arise from an error in the application will be used in defense of a claim under this policy unless:

(1) The statements are contained in a written application; and

(2) A copy of the application is endorsed upon or attached to this policy when issued.

c. In order to use any representation made by you or on your behalf in defense of a claim under the policy, we must show that the representations are material and that we relied on them.

3. The following is added to the **Other Insurance** Condition of the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance – Primary And Excess Insurance Provisions** Condition of the Motor Carrier Coverage Form:

When coverage provided under a certificate of self-insurance is available, any motor vehicle liability insurance coverage we provide will be on a primary basis unless otherwise agreed to by the self-insurer.

---

POLICY NUMBER: ISA H25295304

ENDORSEMENT NUMBER: 114

COMMERCIAL AUTO
CA 22 36 11 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OREGON PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Oregon, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| | |
|---|---|
| Named Insured: Medtronic plc | |
| Endorsement Effective Date: | |

**SCHEDULE**

| Benefits | Limit Per Person |
|---|---|
| Medical And Hospital Expenses | $ 15,000 Less Deductible, if any |
| Income Continuation Expenses | $ 3,000 Per Month |
| Loss Of Services Expenses | $ 30 Per Day |
| Funeral Expenses | $ 5,000 |
| Child Care Expenses | $ 25 Per Day, up to a Maximum of $750 |

Coverage for medical and hospital expenses is subject to a deductible of $

applicable to:

☐ You

☐ You and each "family member"

☐ You or the "family member(s)" named below:

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

---

© Insurance Services Office, Inc., 2012

CA 01 49 10 13

Exhibit B

CA 22 36 11 16

© Insurance Services Office, Inc., 2016

Exhibit B

We agree with you, subject to all of the provisions of this endorsement and to all of the provisions of the Policy except as modified herein, as follows:

**A. Coverage**

We will pay Personal Injury Protection benefits to an "insured" who sustains "bodily injury" in an "accident" arising out of the ownership, maintenance or use of an "auto" as an "auto". Subject to the limits shown in the Schedule, these Personal Injury Protection benefits consist of the following:

**1. Medical And Hospital Expenses**

All reasonable and necessary expenses incurred within two years from the date of the "accident" for medical, hospital, dental, surgical, ambulance and prosthetic services.

**2. Income Continuation Expenses**

70% of the "insured's" loss of income from work during a period of disability caused by "bodily injury" sustained by such person in the "accident", provided that:

a. Such person was usually engaged in a paying occupation at the time of the "accident";

b. The period of such disability continues for at least 14 days; and

c. Income continuation expenses shall include only expenses for loss of income incurred from the date such disability commenced to the date on which such person is able to return to his usual occupation and is subject to a maximum payment period in the aggregate of 52 weeks.

**3. Loss Of Services Expenses**

Expenses reasonably incurred during a period of disability caused by "bodily injury" sustained by an "insured" in the "accident" for essential services that were performed by a person who is not related to the "insured", or residing in the "insured's" household, in lieu of those such person would have performed without income, provided that:

a. Such person was not usually engaged in a paying occupation at the time of the "accident";

b. The period of such disability continues for at least 14 days; and

c. Loss of services expenses shall include only expense for such services actually rendered from the date such disability commenced to the date on which such person is reasonably able to perform such services and is subject to a maximum payment period in the aggregate of 52 weeks.

However, loss of services expenses shall not include child care expenses.

**4. Funeral Expenses**

Reasonable and necessary expenses for professional funeral services incurred within one year after the date of the "accident".

**5. Child Care Expenses**

Expenses reasonably incurred for the care of a minor child of an "insured" who has sustained "bodily injury" in the "accident", provided:

a. The "insured" is the parent of the minor child and is required to be hospitalized for a minimum of 24 hours; and

b. Payments begin after the initial 24 hours of hospitalization and are made for as long as the "insured" is unable to return to work if he or she is usually engaged in a paying occupation. If such person was not usually engaged in a paying occupation at the time of the "accident", then payment will continue for as long as he or she is unable to perform essential services that he or she would have performed without income.

**B. Who Is An Insured**

1. You, if you sustain "bodily injury" while "occupying" a "private passenger auto" or, while a "pedestrian", through being struck by an "auto".

2. If you are an individual, any "family member" who sustains "bodily injury" while "occupying" a "private passenger auto" or, while a "pedestrian", through being struck by an "auto".

3. Any other person who sustains "bodily injury" while "occupying" or using the "covered auto" with your permission or, while a "pedestrian", through being struck by a "covered auto".

**C. Exclusions**

We will not pay Personal Injury Protection benefits for "bodily injury":

1. Sustained by any person:

a. Who intentionally causes injury to himself or herself;

b. While participating in any prearranged or organized racing or speed contest or in practice or preparation for any such contest; or

c. Who willfully conceals or misrepresents any material fact in connection with a claim for Personal Injury Protection benefits.

2. That results in the application of income continuation expenses and loss of service expenses, sustained by any "pedestrian" other than you or a "family member" in an "accident" that occurs outside the State of Oregon.

3. Arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

4. Resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

5. Sustained by you or any "family member" while "occupying" any "auto" you own or furnished or available for your regular use that is not a "covered auto", including a motorcycle or moped as defined in Oregon Statutes.

6. Sustained by a "family member" while "occupying" any "auto" owned by such "family member" or furnished or available for the "family member's" regular use that is not a "covered auto", including a motorcycle or moped as defined in Oregon Statutes.

**D. Limit Of Insurance**

1. Regardless of the number of "insureds", policies or bonds applicable, claims made, premiums paid or "covered autos" to which this coverage applies, the most we will pay for Personal Injury Protection benefits for "bodily injury" sustained by any one "insured" in any one "auto" "accident" is the Limit Per Person amount shown in the Schedule.

2. Any amount paid under this coverage will be reduced by any amount paid or payable by any workers' compensation or any other similar medical or disability benefits law (excluding Medicare and Medicaid).

3. Any amount payable under this coverage to you or a "family member" will reduce any amount payable for damages under this Coverage Form's Uninsured Motorists Coverage.

4. Any amount paid under this coverage to an "insured" will reduce any amount the "insured" may be entitled to recover for the same damages under this Coverage Form's Covered Autos Liability Coverage.

5. Any amount payable for medical and hospital expenses shall be reduced by the amount of the deductible you may elect. If you elect a deductible, it will be shown in the Schedule. The deductible applies only to you and/or any "family member".

**E. Changes In Conditions**

The Conditions are changed for Personal Injury Protection as follows:

1. The following is added to **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form:

a. If an "insured" or his or her legal representative institutes legal action for damages for "bodily injury", he or she must promptly give us a copy of the summons and complaint or other process served in connection with the legal action.

b. The "insured" or someone on his or her behalf must promptly give us written proof of claim, under oath if required, including:

(1) Full particulars of the nature and extent of the "bodily injury", treatment and rehabilitation received and contemplated; and

(2) Such other information that will help us determine the amount due and payable.

c. The "insured" or his or her legal representative shall give us authorization, each time we request it, to obtain medical reports, copies of records and information with respect to loss of income.

d. We may require that the "insured", as a condition for receiving income continuation expenses, cooperate in furnishing us reasonable medical proof of his or her inability to work.

2. The **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are replaced by the following:

The coverage provided in this endorsement is excess for:

a. "Bodily injury" sustained by any "pedestrian", other than you or any "family member". This coverage is excess to the extent that amounts are paid or payable to or for such "pedestrian" under any collateral benefits, including but not limited to:

(1) Insurance benefits under another policy issued by us or another company;

(2) Governmental benefits (except Medicare and Medicaid benefits);

(3) Gratuitous benefits; or

(4) Oregon Personal Injury Protection benefits.

b. "Bodily injury" sustained by you or any "family member" while "occupying" any "auto", other than the "covered auto", with respect to which Oregon Personal Injury Protection benefits are in effect.

3. The following conditions are added:

a. **Reimbursement And Trust**

In the event of payment to any person of any benefits under this endorsement:

(1) We shall be entitled to reimbursement or subrogation in accordance with the provisions of the Oregon Insurance Code.

(2) We are entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of the "insured" against any person or organization legally responsible for the "accident", to the extent benefits were paid, less our share of expenses, costs and attorneys' fees incurred by the "insured" in connection with such recovery.

(3) The "insured" shall hold in trust for our benefit all his or her rights of recovery to the extent of benefits furnished.

(4) The "insured" shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights.

(5) If we request in writing, the "insured" shall take, through any representative not in conflict of interest with him or her, designated by us, such action as may be necessary or appropriate to recover such benefits furnished as damages from the person or organization legally responsible, such action to be taken in the name of the "insured", but only to the extent of benefits furnished by us. In the event of recovery, we shall also be reimbursed out of such recovery for the "insured's" share of expenses, costs and attorneys' fees incurred by us in connection with the recovery.

(6) The "insured" shall execute and deliver to us such instructions and papers as may be appropriate to secure the rights and obligations of the "insured" and us as established by this provision.

b. **Arbitration**

(1) If we and an "insured" disagree whether the "insured" is entitled to recover Personal Injury Protection benefits, or do not agree as to the amount payable under this coverage, then if both parties agree at the time of the dispute, the matter shall be arbitrated.

In the event of arbitration, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree on the choice of the third arbitrator within 30 days, either may request that selection be made by a judge of a court of record in the county and state in which such arbitration is pending. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally. Costs to the "insured" of the arbitration proceedings shall not exceed $100, and all other costs of arbitration shall be borne by us. However, attorneys' fees and fees paid to medical or other expert witnesses are not arbitration expenses and are to be paid by the party incurring them.

(2) Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

c. **Coordination And Nonduplication**

Any automobile medical payments coverage afforded under this Coverage Part is excess over any medical expense benefits paid or payable under this endorsement or any other automobile insurance policy covering "bodily injury" to an "insured".

F. **Additional Definitions**

As used in this endorsement:

1. "Covered auto" means a "private passenger auto" to which the "bodily injury" Covered Autos Liability Coverage of the Policy applies and for which a specific premium is charged.

2. "Family member" means a spouse and any other person related to you by blood, marriage or adoption (including a ward or foster child), who is a resident of the same household as you.

3. "Occupying" means in or upon or entering into or alighting from.

4. "Pedestrian" means any person while not "occupying" a self-propelled vehicle other than a wheelchair or a similar low-powered motorized or mechanically propelled vehicle that is designed specifically for use by a physically disabled person who has a medical necessity for a wheelchair or other low-powered vehicle.

5. "Private passenger auto" means a four-wheel passenger or station wagon-type "auto" not used as a public or livery conveyance including, but not limited to, any period of time a four-wheel passenger or station wagon-type "auto" is being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" such four-wheel passenger or station wagon-type "auto".

"Private passenger auto" includes any other four-wheel "auto" of the utility, pickup body, sedan delivery or panel truck-type not used for wholesale or retail delivery other than farming, a self-propelled mobile home and a farm truck.

6. "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

POLICY NUMBER: ISA H25295304

Endorsement Number: 115

**COMMERCIAL AUTO**
**CA 21 05 01 16**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OREGON UNINSURED MOTORISTS COVERAGE – BODILY INJURY

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Oregon, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| | |
|---|---|
| Named Insured: Medtronic plc | |
| Endorsement Effective Date: | |

## SCHEDULE

| | |
|---|---|
| Limit Of Insurance: $ See DA40002 | Each "Accident" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle", we will pay under this coverage only if Paragraph a. or b. below applies:

   a. The limit of any applicable liability policies has been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of the vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone else "occupying" an "auto" the Named Insured is operating.

   d. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" in accordance with the procedure described in Paragraph A.2.b.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by an individual Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. Punitive or exemplary damages.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

2. We will provide primary insurance for a vehicle that you do not own if such vehicle is owned by a self-insurer as qualified under the Oregon Financial Responsibility Law.

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form, Medical Payments Coverage endorsement or Personal Injury Protection Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

Exhibit B

**E. Changes In Conditions**

The Conditions are changed for Uninsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

   b. When coverage provided under a certificate of self-insurance is available, any motor vehicle liability insurance or uninsured motorists coverage we provide will be on a primary basis unless otherwise agreed to by the self-insurer.

   c. If the coverage under this Coverage Form is provided:

      (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

      (2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

   a. If a "stolen vehicle" or a hit-and-run or phantom vehicle is involved, the Named Insured or someone on that Named Insured's behalf shall report the "accident" to the appropriate law enforcement agency within 72 hours of the "accident".

   b. If a "stolen vehicle" is involved, you or someone on your behalf must cooperate with the appropriate law enforcement agency in the prosecution of the theft of the vehicle.

   c. Promptly send us copies of the legal papers if a "suit" is brought.

   d. A person seeking coverage from a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" and allow advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such vehicle described in Paragraph b. of the definition of "uninsured motor vehicle".

3. **Legal Action Against Us** is replaced by the following:

   **Legal Action Against Us**

   a. No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

   b. No cause of action shall accrue to an "insured" under this coverage unless within two years from the date of the "accident":

      (1) Agreement as to the amount due under this Coverage Form has been concluded;

      (2) We or the "insured" has formally instituted arbitration proceedings;

      (3) The "insured" has filed an action against us; or

      (4) An action for "bodily injury" has been filed against the uninsured motorist and, within two years from the "date of settlement" or "final judgment" against the uninsured motorist, the "insured" has:

         (a) Formally instituted arbitration proceedings against us; or

         (b) Filed an action against us.

4. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

   **Transfer Of Rights Of Recovery Against Others To Us**

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

   Our rights do not apply under this provision with respect to damages caused by an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" if we:

   a. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle"; and

   b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

   If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

   a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of this coverage; and

   b. We also have a right to recover the advance payment.

5. The following condition is added:

   **Arbitration**

   a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration and to be bound by the results of that arbitration. If both parties so agree, then each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

   b. Unless both parties agree otherwise, arbitration will take place in either of the following, at the election of the "insured":

      (1) The county where the "insured" lives; or

      (2) The county where the "insured's" cause of action against the owner or driver of the "uninsured motor vehicle" arose.

      Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

   c. We will pay all arbitration costs to an "insured" in excess of $100. Arbitration costs to an "insured" shall not include attorneys' fees or any expenses incurred in producing evidence or witnesses or making transcripts of the arbitration proceedings.

**F. Additional Definitions**

As used in this endorsement:

1. "Date of settlement" means the date on which a written settlement agreement or release is signed by an "insured" or, in the absence of such documents, the date on which the "insured" or the attorney for the "insured" receives payment of any sum required by the settlement agreement.

2. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

3. "Final judgment" means a judgment that has become final by lapse of time for appeal or by entry in an appellate court of an appellate judgment.

4. "Occupancy" means in, upon, getting in, on, out or off.

5. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   a. For which no liability policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

   b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" to which a liability policy applies at the time of an "accident", but the amount paid for "bodily injury" under that policy to the "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages;

c. For which an insuring company denies coverage, becomes voluntarily or involuntarily bankrupt or is placed in receivership;

d. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying". However, in the event that a hit-and-run vehicle causes "bodily injury" to an "insured" without hitting the "insured", a covered "auto" or a vehicle the "insured" is "occupying", the facts of the "accident" must be corroborated by competent evidence other than the testimony of any person having an uninsured motorists claim resulting from the "accident";

e. That is a "stolen vehicle"; or

f. That is owned or operated by a self-insurer:

(1) That is not in compliance with ORS 806.130 (1)(c); or

(2) That becomes insolvent and cannot provide the amounts required by that motor vehicle law.

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any such government unless the vehicle is owned by an Oregon public body;

b. Designed for use mainly off public roads while not on public roads;

c. Operated on rails or crawler treads;

d. While located for use as a residence or premises and not as a vehicle; or

e. Owned by or furnished for the regular or frequent use of you or any "family member".

6. "Stolen vehicle" means:

a. A covered "auto" that is being operated without the consent of the "insured"; and

b. At the time of the "accident", the operator has no collectible liability insurance.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 116

**COMMERCIAL AUTO**
CA 22 37 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PENNSYLVANIA BASIC FIRST-PARTY BENEFIT

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Pennsylvania, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: Medtronic plc |
|---|
| Endorsement Effective Date: |

**SCHEDULE**

| Benefits | Limit Of Insurance |
|---|---|
| Medical Expense Benefits | Up to $5,000 per insured |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

We will pay the Basic First-party Benefit in accordance with the "Act" to or for an "insured" who sustains "bodily injury" caused by an "accident" arising out of the maintenance or use of an "auto".

**BENEFITS**

Subject to the limit shown in the Schedule or Declarations, the Basic First-party Benefit consists of Medical Expense Benefits. These benefits consist of reasonable and necessary medical expenses incurred for an "insured's":

1. Care;

2. Recovery; or

3. Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the "accident" causing "bodily injury". If within 18 months from the date of the "accident" causing "bodily injury" it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the "bodily injury", medical expenses will be paid without limitation as to the time such further expenses are incurred.

**B. Who Is An Insured**

1. You.

2. If you are an individual, any "family member".

3. Any person while "occupying" a covered "auto".

4. Any person while not "occupying" an "auto" if injured as a result of an "accident" in Pennsylvania involving a covered "auto".

If a covered "auto" is parked and unoccupied, it is not an "auto" involved in an "accident" unless it was parked in a manner as to create an unreasonable risk of injury.

---

CA 21 05 01 16

© Insurance Services Office, Inc., 2015

Page 5 of 5

Exhibit B

CA 22 37 10 13

© Insurance Services Office, Inc., 2012

Page 1 of 3

Exhibit B

## C. Exclusions

We will not pay First-party Benefits for "bodily injury":

1. Sustained by any person injured while intentionally causing or attempting to cause injury to himself or herself or any other person.

2. Sustained by any person while committing a felony.

3. Sustained by any person while seeking to elude lawful apprehension or arrest by a law enforcement official.

4. Sustained by any person while maintaining or using an "auto" knowingly converted by that person. However, this exclusion does not apply to:

   a. You; or

   b. Any "family member".

5. Sustained by any person who, at the time of the "accident":

   a. Is the owner of one or more currently registered "autos" and none of those "autos" is covered by the financial responsibility required by the "Act"; or

   b. Is "occupying" an "auto" owned by that person for which the financial responsibility required by the "Act" is not in effect.

6. Sustained by any person maintaining or using an "auto" while located for use as a residence or premises.

7. Sustained by a pedestrian if the "accident" occurs outside of Pennsylvania. This exclusion does not apply to:

   a. You; or

   b. Any "family member".

8. Sustained by any person while "occupying":

   a. A recreational vehicle designed for use off public roads; or

   b. A motorcycle, moped or similar type vehicle.

9. Arising directly or indirectly out of:

   a. A discharge of a nuclear weapon (even if accidental);

   b. War, including undeclared or civil war;

   c. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   d. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

10. From or as a consequence of the following whether controlled or uncontrolled or however caused:

   a. Nuclear reaction;

   b. Radiation; or

   c. Radioactive contamination.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", premiums paid, claims made, "autos" involved in the "accident" or insurers providing First-party Benefits, the most we will pay to or for an "insured" as the result of any one "accident" is the limit shown in the Schedule or in the Declarations.

2. Any amount payable under First-party Benefits shall be excess over any sums paid, payable or required to be provided under any workers' compensation law or similar law.

## E. Changes In Conditions

The Conditions are changed for First-party Benefits as follows:

1. **Transfer Of Rights Of Recovery Against Others To Us** does not apply.

2. The following conditions are added:

   **Nonduplication Of Benefits**

   No person may recover duplicate benefits for the same expenses or loss under this or any other similar automobile coverage including self-insurance.

### Priorities Of Policies

We will pay First-party Benefits in accordance with the order of priority set forth by the "Act". We will not pay if there is another insurer at a higher level of priority. The "First" category listed below is the highest level of priority and the "Fourth" category listed below is the lowest level of priority. The priority order is:

| First | The insurer providing benefits to the "insured" as a named insured. |
|---|---|
| Second | The insurer providing benefits to the "insured" as a "family member" who is not a named insured under another policy providing coverage under the "Act". |
| Third | The insurer of the "auto" which the "insured" is "occupying" at the time of the "accident". |
| Fourth | The insurer providing benefits on any "auto" involved in the "accident" if the "insured" is: |

   a. Not "occupying" an "auto"; and

   b. Not provided First-party Benefits under any other policy.

If two or more policies have equal priority within the highest applicable number in the priority order:

1. The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible;

2. If we are the insurer against whom the claim is first made, our payment to or for an "insured" will not exceed the applicable limit shown in the Schedule or Declarations;

3. The insurer thereafter is entitled to recover pro rata contribution from any other insurer for the benefits paid and the costs of processing the claim. If contribution is sought among insurers under the Fourth priority, proration shall be based on the number of involved motor vehicles; and

4. The maximum recovery under all policies shall not exceed the amount payable under the policy with the highest dollar limit of benefits.

## F. Additional Definitions

As used in this endorsement:

1. "Auto" means a self-propelled motor vehicle or trailer required to be registered, operated or designed for use on public roads. However, "auto" does not include a vehicle operated:

   a. By muscular power; or

   b. On rails or tracks.

2. The "Act" means the Pennsylvania Motor Vehicle Financial Responsibility Law.

3. "Family member" means a resident of your household who is:

   a. Related to you by blood, marriage or adoption; or

   b. A minor in your custody or in the custody of any other "family member".

4. "Occupying" means in, upon, getting in, on, out or off.

POLICY NUMBER: ISA H25295304

Endorsement Number: 117

COMMERCIAL AUTO
CA 01 80 06 16

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

The following is added to Paragraph **2.a.** **Supplementary Payments:**

Prejudgment interest awarded against the "insured" on the part of the judgment we pay. Any prejudgment interest awarded against the "insured" is subject to the applicable Pennsylvania Rules of Civil Procedure.

**B. Changes In Conditions**

1. Paragraph **2.b.(5)** of the **Duties In The Event Of An Accident, Claim, Suit Or Loss** Condition is replaced by the following:

   **(5)** After we show good cause, submit to examination at our expense, by physicians of our choice.

2. The following is added to Paragraph **5. Transfer Of Rights Of Recovery Against Others To Us** Condition:

   If we make any payment due to an "accident" and the "insured" recovers from another party in a separate claim or "suit", the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid less reasonable attorneys' fees, costs and expenses incurred by the "insured" to the extent such payment duplicates any amount we have paid under this coverage.

3. The following paragraph is added to the Other Insurance Condition:

   If you are a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. § 818.2, then:

   a. For any "auto" you own, which is loaned to a customer as a temporary substitute for an "auto" insured under a "customer's private passenger automobile insurance policy" which is out of use because it is being transported, serviced, repaired or inspected, Covered Autos Liability, but only with respect to damages because of "bodily injury" and Physical Damage Coverage provided by this Coverage Form shall be excess in the event of an "accident" or "loss".

   b. For any "auto" insured under your "customer's private passenger automobile insurance policy", while it is being transported, serviced, repaired or inspected by you or your "employee":

      **(1)** Covered Autos Liability, but only with respect to damages because of "bodily injury";

   **(2)** Comprehensive Coverage;

   **(3)** Specified Cause Of Loss Coverage; and/or

   **(4)** Collision Coverage;

   provided by this Coverage Form shall be primary in the event of an "accident" or "loss".

4. The following is added to Paragraph **B. General Conditions:**

   **a. Constitutionality Clause**

   The premium for, and the coverages of, this Coverage Form have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment, the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we shall have the right to recompute the premium payable for the Coverage Form and void or amend the provisions of the Coverage Form, subject to the approval of the Insurance Commissioner.

   **b. Conformity Clause**

   If you are a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. § 818.2, then whenever an "auto" insured under your "customer's private passenger automobile insurance policy" is being transported, serviced, repaired or inspected by you or your "employee":

   **(1)** The provisions of the:

      **(a)** Covered Autos Liability, but only with respect to damages because of "bodily injury";

   **(b)** Comprehensive Coverage;

   **(c)** Specified Cause Of Loss Coverage; and/or

   **(d)** Collision Coverage;

   provided by this Coverage Form are hereby amended to conform to 40 Pa. Stat. Ann. § 991.2007a; and

   **(2)** Pursuant to 40 Pa. Stat. Ann. § 991.2007a, the Limits Of Insurance provided in the Schedule or in the Declarations are hereby increased as needed to an amount equal to the:

      **(a)** Applicable limit(s);

      **(b)** Actual cash value; and/or

      **(c)** Amount necessary to repair or replace the property with other property of like kind and quality;

      set forth in the "customer's private passenger automobile insurance policy".

**C. Changes In Definitions**

For motor vehicle dealers as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. § 818.2, the following definition is added:

"Customer's private passenger automobile insurance policy" means a private passenger automobile insurance policy that:

1. Is currently in effect; and

2. Lists an "auto" owned by your customer or a "customer's auto" in the Declarations.

Exhibit B

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 118

IL 01 20 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDER'S ERRORS AND OMISSIONS COVERAGE FORM
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

1. Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Electronic Data Liability, Employment-related Practices Liability, Farm, Liquor Liability, Medical Professional Liability, Owners And Contractors Protective Liability, Pollution Liability, Product Withdrawal, Products/Completed Operations Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

2. Section **II** under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

3. Section **III** under the Auto Dealers and Motor Carrier Coverage Forms;

4. Section **A.** Coverage under the Legal Liability Coverage Form; and

5. Coverage **C** – Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form.

Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

IL 01 20 10 13   © Insurance Services Office, Inc., 2013   Page 1 of 1

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 119

MM 99 35 04 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERSONAL INJURY PROTECTION COVERAGE - MASSACHUSETTS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The benefits under this coverage are commonly known as "PIP" or "No-Fault" benefits. It makes no difference who is legally responsible for the "accident."

**A. Coverage**

We will pay the benefits described below to an insured injured or killed in an auto "accident." Benefits are paid only for expenses or losses actually incurred within two years after the "accident."

We will pay three kinds of benefits:

1. **Medical Expenses**

   We will pay all reasonable expenses incurred as a result of the "accident" for necessary medical, surgical, X-ray and dental services. This includes prosthetic devices. It also includes ambulance, hospital, professional nursing and funeral expenses.

2. **Lost Wages**

   If an injured person is out of work because of the "accident," we will pay lost wages up to 75% of his or her average weekly gross wage or equivalent for the year ending on the day immediately before the "accident." We will not pay for the loss of any other type of income. If the injured person was unemployed at the time of the "accident," we will pay up to 75% of the amount he or she actually lost in earning power as a result of the "accident." Some people have a wage continuation program at work. If so, we will pay them only the difference between the total we would ordinarily pay under this insurance and the amount of the program payments. We will, however, reimburse the program if it allows benefits to be converted into cash or additional retirement credit. Sometimes program benefits are reduced or used up because of payments to the person injured in an "accident." In that case, we will pay for lost wages resulting from any other illness or injury that person has within one year of our last payment. The exact amount of our payment under this paragraph will be determined by Massachusetts law.

MM 99 35 04 11   Copyright, Automobile Insurers Bureau, 1998   Page 1 of 4

MM 99 35 04 11

MM 99 35 04 11

**3. Replacement Services**

We will reimburse the injured person for reasonable payments made to anyone outside his or her household for necessary services that he or she would have performed without pay for the benefit of the household, had he or she not been injured.

**B. Who Is An Insured**

1. You, and, if the form of your business under Item One of the Declarations is shown as an individual, anyone living in your household while:

    a. "Occupying" a covered "auto;"

    b. "Occupying" an auto which does not have Massachusetts Compulsory Auto Insurance; or

    c. A "pedestrian" struck by an auto which does not have Massachusetts Compulsory Auto Insurance.

2. Any other person while:

    a. "Occupying" a covered "auto" with your consent;

    b. A pedestrian injured by a covered "auto" in Massachusetts or any Massachusetts resident who, while a pedestrian, is struck by a covered "auto" outside of Massachusetts.

**C. Exclusions**

This coverage does not apply to:

1. Anyone who, at the time of the "accident," was operating or "occupying" a motorcycle or any motor vehicle not subject to motor vehicle registration.

2. Anyone who contributed to his or her injury by operating an auto:

    a. While under the influence of alcohol, marijuana, or a narcotic drug.

    b. While committing a felony or seeking to avoid arrest by a police officer.

    c. With the specific intent of causing injury to himself, herself or others.

3. Anyone who is entitled to workers' compensation benefits for the same injury.

**D. Limit Of Insurance**

For any one "accident," we will pay as many people as are injured, but the most we will pay for all benefits to any one person is $8,000. This is the most we will pay as the result of a single "accident" no matter how many covered "autos" or premiums are shown on the Declarations. Some people have a policy of health, sickness, or disability insurance or a contract or agreement with a group, organization, partnership or corporation to provide, pay for, or reimburse the cost of medical expenses. If so, we will pay up to $2,000 of medical expenses for any injured person. We will also pay medical expenses in excess of $2,000 for such injured person which will not be paid by a medical expense provider. In either case, our total payment for medical expenses, lost wages and replacement services will not exceed $8,000.

**E. Additional Conditions**

The Conditions of the Policy are Changed for Personal Injury Protection Insurance by adding:

1. If the "accident" is in Massachusetts, or if it is outside Massachusetts and the injured person does not sue for damages, we will pay benefits within a reasonable time - usually 30 days. If the "accident" is outside of Massachusetts and the injured person does sue, then we can wait for a settlement or judgment before paying benefits.

2. If anyone is entitled to Personal Injury Protection benefits and also to benefits under any other insurance provided by this policy, we will pay from this insurance first.

3. We will not pay Personal Injury Protection benefits to or for an injured person, to the extent those benefits would duplicate expenses or losses recovered by that person in a settlement or court judgment.

4. If anyone covered under this policy is also entitled to Personal Injury Protection benefits from any other auto policy, the total benefits payable will not be more than the highest amount payable under whichever one of the policies would have paid the most. In that case, each insurer will pay only its proportionate share. We will not pay benefits under this insurance which duplicate payments made under the No-Fault coverage of any other auto policy.

5. We must be authorized to obtain medical reports and other records pertinent to the claim.

6. Within two years after an "accident," we may, at our option, pay the cost of renewing or continuing in force a policy of health, sickness or disability insurance for anyone under this coverage who is unwilling or unable to pay such cost. Our payment will not exceed the cost of renewing or continuing such policy for a period of two

MM 99 35 04 11

years after the accident."  Also, our payment will not operate to reduce the benefits otherwise payable under this coverage,

**F.   Definitions**

The following definitions are added for Personal Injury Protection Coverage:

1.   "Occupying" means in, upon, getting in, on, out or off.

2.   "Pedestrian" includes anyone incurring bodily injury as a result of being struck by an auto in an accident and who is not occupying an auto at the time of the accident.

---

POLICY NUMBER: ISA H25295304

Endorsement Number:  120

**COMMERCIAL AUTO**
**CA 01 14 09 14**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PUERTO RICO CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Puerto Rico, this endorsement modifies insurance provided under the following:

> AUTO DEALERS COVERAGE FORM
> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

COVERED AUTOS LIABILITY COVERAGE INCLUDES THE COMPULSORY PROPERTY DAMAGE LIABILITY COVERAGE REQUIRED BY THE PUERTO RICO "MOTOR VEHICLE COMPULSORY LIABILITY INSURANCE ACT".

**A.  Changes In Covered Autos Liability Coverage**

1.  The third paragraph of Coverage is replaced by the following:

    We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". This applies even if the "suit" is groundless, false or fraudulent. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

2.  Covered Autos Liability Coverage does not apply to the extent that the "insured" is exempted from liability because of the Puerto Rico Automobile Accident Social Protection Act.

3.  The following exclusion is added to Covered Autos Liability Coverage:

    We will not pay for "property damage" to any vehicle that is not insured for compulsory property damage liability coverage to the extent of the limit of liability required by the Puerto Rico "Motor Vehicle Compulsory Liability Insurance Act".

4.  The Limit Of Insurance provision is amended by the addition of the following paragraph:

    With respect to "accidents" occurring in Puerto Rico, we will first apply the limit of liability to provide the limit required by the Puerto Rico "Motor Vehicle Compulsory Liability Insurance Act". However, this provision will not change our total limit of liability.

**B.  Changes In Auto Medical Payments Coverage**

Auto Medical Payments Coverage does not apply to the extent that coverage is available under the Puerto Rico Automobile Accident Social Protection Act.

**C.  Changes In Conditions**

1.  The following provision is added:

    **Compulsory Property Damage Liability Coverage**

    If we cancel or nonrenew this Policy, or if you cancel or do not accept an offer to renew or continue this Policy, as provided in the Cancellation Common Policy Condition, then, in accordance with the requirements of the Regulations of the Insurance Code of Puerto Rico, issued pursuant to the Puerto Rico "Motor Vehicle Compulsory Liability Insurance Act":

    a.  We will notify the Joint Underwriting Association of the cancellation or nonrenewal of this Policy; and

    b.  The Compulsory Liability Insurance Joint Underwriting Association will offer, until the date of expiration of each of your covered "auto's" license, the compulsory property damage liability coverage required by the Puerto Rico "Motor Vehicle Compulsory Liability Insurance Act".

2.  The Cancellation Common Policy Condition is replaced by the following:

    a.  You may cancel the Policy by returning it to us or by giving us advance notice of the date cancellation is to take effect.

---

Copyright, Automobile Insurers Bureau, 1998

Exhibit B

© Insurance Services Office, Inc., 2013

Exhibit B

b. We may cancel the Policy by mailing you at least 10 days' notice at the last address you have informed us of in writing or, otherwise, at the address shown in this Policy. Proof of mailing of any notice will be sufficient proof of notice.

c. The effective date of cancellation stated in the notice shall become the end of the policy period.

d. If this Policy is canceled, you may be entitled to a premium refund. If so, we will send you the refund. However, making or offering to make the refund is not a condition of cancellation. If you cancel, the refund, if any, will be computed in accordance with the customary short rate procedure. If we cancel, the refund, if any, will be computed pro rata. Unearned premium does not include any amount that we are required to remit to the Joint Underwriting Association, with respect to the compulsory property damage liability coverage that the Puerto Rico Compulsory Liability Insurance Joint Underwriting Association is required to provide, in accordance with the Regulations of the Insurance Code of Puerto Rico.

3. **Legal Action Against Us** is replaced by the following:

No one may bring a legal action against us under this coverage form until there has been full compliance with all the terms of this coverage form.

4. The first sentence of **Appraisal For Physical Damage Loss** is replaced by the following:

If you and we fail to agree as to the amount of "loss", you (but not we) may demand an appraisal of the "loss".

5. **Interruption Of Coverage**

In accordance with requirements of the Regulations of the Insurance Code of Puerto Rico, if coverage provided under this coverage form is interrupted while the license of the covered "auto" is in effect, the period during which the coverage was not in force will be considered covered by the Joint Underwriting Association exclusively under the terms of the compulsory property damage liability coverage required by the Puerto Rico "Motor Vehicle Compulsory Liability Insurance Act".

6. The following condition is added:

**Transfer Of Your Interest In The Policy**

We must be notified of any transfer of ownership of your covered "auto" within 10 days of such transfer. After you notify us of the transfer, in accordance with the requirements of the Regulations of the Insurance Code of Puerto Rico, we will notify the Puerto Rico Compulsory Liability Insurance Joint Underwriting Association of the transfer of ownership of your covered "auto".

7. The following provisions are added:

**Settlement Of Claims**

Settlement of claims, to the extent of the limit of liability and coverage required by the Puerto Rico "Motor Vehicle Compulsory Liability Insurance Act", will be made, whenever applicable, in agreement with the diagrams mentioned in article No. 7 of the Initial Liability Determination System adopted in accordance with the mentioned act.

Notwithstanding the previously mentioned act, payments for other coverage afforded under this Policy, in addition to the payments resulting from the application of the mentioned diagrams, will be made by us, in accordance with the applicable coverage, up to the limits established in the same.

In the case that the above mentioned diagrams are not applicable, payments for coverage afforded under this Policy will be made by us, in accordance with the applicable coverage up to the limits established in the same.

**Conformity To Statute Or Regulation**

Any provision of this Policy that is in conflict with the Puerto Rico "Motor Vehicle Compulsory Liability Insurance Act" or Rule LXX of the Regulations of the Insurance Code of Puerto Rico is hereby amended to conform to that act or rule.

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 121

**COMMERCIAL AUTO**
**CA 01 48 02 14**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RHODE ISLAND CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Rhode Island, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following is added to Supplementary Payments:

Prejudgment interest awarded against the "insured" if we have previously agreed to settle the part of the judgment that is within our Limit of Insurance.

**B.** The following provision is added:

**Direct Liability Of Insurers**

We will be directly liable for those sums the "insured" becomes legally obligated to pay as damages to an injured party to which this insurance applies. In the event of that injured party's death, we will be directly liable for those sums the "insured" becomes legally obligated to pay as damages to the party entitled to sue as a result of the injured party's death, and to which this insurance applies.

**C.** Changes In Conditions

**1.** The last sentence of the **Appraisal For Physical Damage Loss** Condition is replaced by the following:

We shall not be held to have waived any of our rights by any act relating to appraisal.

**2.** The following is added to the **Duties In The Event Of Accident, Claim, Suit Or Loss Condition** in the Business Auto and Motor Carrier Coverage Forms and the **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** Condition in the Auto Dealers Coverage Form:

If a fire causes damage to a covered "auto", you must file a statement with the appropriate fire department in conformity with the provisions of R.I. GEN. LAWS Section 27-8.1-2.1.

**3.** The **Transfer Of Rights Of Recovery Against Others To Us** Condition is replaced by the following:

**Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them. We shall be entitled to recover payment on a loss only after the insured has been paid the deductible portion of the loss less the prorated share of the subrogation expense.

**4.** The following is added to the **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form:

a. When this Coverage Form and any other Coverage Form or policy providing liability coverage apply to an "auto" and:

**(1)** One provides coverage to an "insured" engaged in the business of leasing or renting "autos"; and

**(2)** The other provides coverage to a person not engaged in that business; and

**(3)** At the time of an "accident", a person covered by a Coverage Form described in Paragraph **4.a.(2)** is operating an "auto" rented or leased from the business covered by a Coverage Form described in Paragraph **4.a.(1);**

then the Coverage Form issued to a business described in **4.a.(1)** is excess over any coverage available to the person described in Paragraph **4.a.(2)** if:

(a) The business described in **4.a.(1)** rents or leases the "auto" to the "insured" under a written rental agreement; and

(b) The face of the rental agreement states, in at least 10-point type, that the valid and collectible insurance of any person operating the "auto" with the permission of the owner and/or lessor is primary.

b. If you have rented the covered "auto" to another and the rental agreement does not contain the requirements listed in **4.a.(a)** and **(b)**, then the following priority of recovery applies:

(1) The owner's liability insurance will be primary up to the limits required by law;

(2) The operator's policy will be excess; and

(3) Any remaining limits of the owner's policy will be excess to the operator's policy.

5. The following condition is added:

**Arbitration**

a. Any injured person suffering a loss, allegedly resulting out of the ownership, maintenance, or use of a covered "auto" by an "insured" or self-insured, and allegedly resulting from liability imposed by law for "property damage" or "bodily injury", may at his or her election, submit the matter to arbitration pursuant to Chapter 3 of Title 10 of the General Laws of Rhode Island.

b. Selection of Arbitrator. After submission to arbitration by the injured person, one arbitrator shall be selected from the list of qualified arbitrators of the Court-Annexed Arbitration Program of the Superior Court of Rhode Island. Each party shall share the expense of arbitration in accordance with the rules of the Court-Annexed Arbitration Program.

c. Hearings. The arbitrator shall call a hearing and provide seven days' notice of the time and place of the hearing to the parties. The hearing shall be informal, and the rules of evidence prevailing in judicial proceedings shall be binding. Any and all documentary evidence and other data deemed to be relevant by the arbitrator may be received in evidence. The arbitrator shall have the power to administer oaths and to require by subpoena the attendance and testimony of witnesses, and the production of books, records, and other evidence, relative or pertinent to the issues presented to them for determination. The decision of the arbitrator shall be binding upon the parties unless:

(1) In the event that "suit" has not been instituted, either party may reserve his/her right to a jury trial by giving notice of this reservation of right to the other party or parties and to the arbitrator within 60 days of the arbitrator's award by certified mail return receipt requested; or

(2) In the event that "suit" has been instituted, either party files a request for a jury trial with the court and notice to the other party or parties within 60 days of the arbitrator's award. If said case proceeds to trial subsequent to arbitration, the decision of the arbitrator shall not be admissible.

d. Statute of Limitations. Notwithstanding the foregoing, a "suit" shall be instituted in order to bring said action within any applicable statute of limitations, but said "suit" will otherwise be stayed until an arbitrator's award has been made or the case reached for trial.

POLICY NUMBER: ISA H25295304     Endorsement Number: 122

**COMMERCIAL AUTO**
CA 02 73 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RHODE ISLAND CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. Paragraphs 2., 3., 5. and 6. of the **Cancellation Common Policy Condition** are replaced by the following:

2. We may cancel this policy by giving, mailing or delivering to the first Named Insured and the insurance producer of record, if any, written notice of cancellation at least:

a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

If this policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

a. Nonpayment of premium;

b. Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

c. Activities or omissions on your part which increase any hazard insured against, including a failure to comply with loss control recommendations;

d. Change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to regulation, legislation, or court decision;

e. Loss or decrease of our reinsurance covering all or part of the risk or exposure covered by the policy;

f. Determination by the Commissioner of Insurance that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of this state;

g. Owner or occupant incendiarism;

h. Violation or breach by you of any policy terms or conditions;

i. Constructive or actual total "loss" of the Covered Property; or

j. Such other reasons as may be approved by the Commissioner of Insurance.

3. We will give, mail or deliver written notice to the first Named Insured at the mailing address shown in the policy and to the insurance producer of record, if any.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due.

The cancellation will be effective even if we have not made or offered a refund.

The following provisions govern the calculation of return premium:

a. We will compute return premium pro rata and round to the next higher whole dollar when a policy is:

(1) Cancelled at our request;

(2) Cancelled because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

(3) Cancelled and rewritten by us or a member of our company group;

Exhibit B

(4) Cancelled after the first year, if it is a prepaid policy written for a term of more than one year; or

(5) Cancelled by us at the request of any premium finance company upon default of the first Named Insured, when this policy is financed under a premium finance agreement.

**b.** When this policy is cancelled at your request (except when Paragraph **a.(2)**, **a.(3)** or **a.(4)** applies), we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multiyear prepaid policy, we will return the full annual premium for the subsequent years.

**c.** When this policy is cancelled at your request and is an auto dealer's policy written on a reporting form basis, we will calculate the return or additional premium as follows:

(1) Final annual premium will be determined on the basis of the average value reported during the period in which the policy was in effect.

(2) Pro rata earned premium will be determined based on the final annual premium for the number of days the policy was in force as determined by Paragraph **c.(1)** rounded to the next higher whole dollar.

(3) Pro rata unearned premium will be determined by subtracting Paragraph **c.(2)** from Paragraph **c.(1)**.

(4) The short rate surcharge will be determined by multiplying the unearned premium by 10% and rounding to the next higher whole dollar.

(5) Calculate the short rate earned premium by adding Paragraphs **c.(2)** and **c.(4)**.

(6) If the short rate earned premium is less than the sum of all payments (including any deposit premium), the difference is the return premium.

(7) If the short rate earned premium is greater than the sum of all payments (including any deposit premium), the difference is the additional premium due.

---

6. Proof of giving, mailing or delivering notice of cancellation will be sufficient proof of notice.

**B.** The following is added to the **Cancellation Common Policy Condition:**

7. We will provide you with the reason or reasons for cancellation if:

**a.** You request in writing a statement of the reasons for cancellation; and

**b.** You agree in writing to hold us harmless from liability for any:

(1) Communication giving notice of, or specifying the reasons for, cancellation; or

(2) Statement made in connection with an attempt to discover or verify the existence of conditions which would be a reason for cancellation as provided under Paragraph **A.2.**

**C.** The following is added and supersedes any provision to the contrary:

**Nonrenewal**

1. If we decide not to renew or continue this policy, we will give, mail or deliver to the first Named Insured and to the insurance producer of record, if any, written notice of our intent not to renew at least 60 days before:

**a.** The expiration date of the policy; or

**b.** An anniversary date of the policy, if the policy is written for a term longer than one year or with no fixed expiration date.

2. If nonrenewal is mailed to the insured, we shall forward the notice of nonrenewal to the last known address of the first Named Insured by first-class mail and maintain proof of mailing by the United States Postal Service certificate of mailing. This proof of mailing will be sufficient proof of notice.

3. We need not give, mail or deliver this notice if:

**a.** We have offered to issue a renewal policy; or

**b.** The first Named Insured has obtained, or has agreed in writing to obtain, replacement coverage.

**D.** We will also give, mail or deliver written notice of cancellation and nonrenewal, as provided under Paragraphs **A.** and **C.** above, to any loss payee named in the policy.

---

POLICY NUMBER: ISA H25295304                    Endorsement Number: 123

**COMMERCIAL AUTO**
**CA 21 43 06 15**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RHODE ISLAND UNINSURED MOTORISTS COVERAGE – BODILY INJURY

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Rhode Island, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:** | Medtronic plc |
| **Endorsement Effective Date:** | |

**SCHEDULE**

| "Bodily Injury" | $ See DA40002 | Each "Accident" |
|---|---|---|

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" because of "bodily injury" sustained by an "insured" and caused by an "accident".

The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

**a.** The Named Insured and any "family members".

**b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". Any "auto" that is owned by the Named Insured or any "family member" is not a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

**a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". Any "auto" that is owned by the Named Insured is not a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by an individual Named Insured or any "family member" while "occupying" or struck by any vehicle owned by such Named Insured or any "family member" that is not a covered "auto".

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. Punitive or exemplary damages.

6. "Bodily injury" arising directly or indirectly out of:

    a. War, including undeclared or civil war;

    b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Uninsured Motorists Insurance shown in the Schedule or Declarations. If there is more than one covered "auto", our limit of insurance for any one "accident", if "bodily injury" is sustained by an individual Named Insured or any "family member" is the sum of the limits applicable to each covered "auto". Subject to the maximum limit of liability for all damages:

    a. The most we will pay for all damages sustained in such "accident" by an "insured", other than an individual Named Insured or any "family member", is that "insured's" pro rata share of the limit shown in the Schedule or Declarations applicable to the vehicle an "insured" was "occupying" at the time of the "accident".

b. The individual Named Insured or any "family member" who sustains "bodily injury" in such "accident" will also be entitled to a pro rata share of the limit described in Paragraph a. above.

A person's pro rata share is the proportion that that person's damages bear to the total damages sustained by all "insureds".

2. No one will be entitled to recover duplicate payment for the same elements of "loss" under this coverage and any Liability Coverage form or Medical Payments endorsement attached to this Coverage Part.

We will not make duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payments for the same element of "loss" under any workers' compensation, disability benefits or similar law.

## E. Changes In Conditions

The Conditions are changed for Rhode Island Uninsured Motorists Coverage – Bodily Injury as follows:

1. Other Insurance in the Auto Dealers and Business Auto Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form apply except the reference to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. Duties In The Event Of Accident, Claim, Suit Or Loss in the Business Auto and Motor Carrier Coverage Forms and Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions in the Auto Dealers Coverage Form are changed by adding the following:

The Named Insured and any involved "insured" must:

    a. Promptly notify the police if "bodily injury" results from an "accident" involving a hit-and-run driver; and

    b. Promptly send us copies of the legal papers if a "suit" is brought.

3. The Legal Action Against Us provision is replaced by the following:

Legal Action Against Us

    a. No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form; and

    b. Any legal action against us under this Coverage Form must be brought within three years after the date of the "accident". However, this Paragraph 3.b. does not apply to an "insured" if, within three years after the date of the "accident", we or the "insured" has made a written demand for arbitration in accordance with the provisions of this Coverage Form.

4. Transfer Of Rights Of Recovery Against Others To Us is changed by adding the following:

We shall be entitled to recover payment on a "loss" only after the "insured" has been paid the deductible portion of the "loss", less the prorated share of the subrogation expense.

5. Two Or More Coverage Forms Or Policies Issued By Us does not apply.

6. The Arbitration Condition is replaced by the following for Uninsured Motorists Coverage:

Arbitration

    a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Either party may make a written demand for arbitration. Arbitration may be enforced at the option of the "insured". In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

    b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

## F. Additional Definitions

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

    a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

    b. Which is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of all liability bonds or policies at the time of an "accident" does not provide at least the amount an "insured" is legally entitled to recover as damages;

    c. For which an insuring or bonding company denies coverage or is or becomes insolvent;

    d. That is a hit-and-run vehicle and neither the driver nor owner can be identified; or

    e. That causes "bodily injury" to an "insured" without physical contact with the "insured", a covered "auto" or a vehicle the "insured" is "occupying". However, in such cases, the "insured" must prove by a fair preponderance of evidence that the "bodily injury" resulted from the negligence of an unidentified motorist.

However, "uninsured motor vehicle" does not include any vehicle owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or who becomes insolvent and cannot provide the amounts required by that motor vehicle law.

POLICY NUMBER: ISA H25295304

Endorsement Number: 124

COMMERCIAL AUTO
CA 99 58 04 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH CAROLINA
# AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred for services rendered within three years from the date of the "accident".

**B. Who Is An Insured**

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

**D. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

**E. Changes In Conditions**

The Conditions are changed for **Auto Medical Payments Coverage** as follows:

1. The Transfer Of Rights Of Recovery Against Others To Us Condition does not apply.

2. The reference in Other Insurance in the Auto Dealers and Business Auto Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

POLICY NUMBER: ISA H25295304

Endorsement Number: 125

**COMMERCIAL AUTO**
CA 01 50 05 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH CAROLINA CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, South Carolina, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Paragraph **2.b.(4)** of the **Who Is An Insured** provision in the Auto Dealers Coverage Form is replaced by the following:

    **(4)** Your customers. However, those customers are "insureds" up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

2. The **Expected Or Intended Injury** Exclusion is replaced by the following:

    "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". However, this exclusion does not apply for amounts up to the limits of liability required by the South Carolina Motor Vehicle Financial Responsibility Act.

3. The **Limit Of Insurance** provision under the Business Auto and Motor Carrier Coverage Forms is replaced by the following:

    Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

    All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

    No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

4. The **Limit Of Insurance – Covered Autos Liability** provision under the Auto Dealers Coverage Form is replaced by the following:

    For "accidents" resulting from the ownership, maintenance or use of covered "autos", the following applies:

    Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" involving a covered "auto" is the Limit Of Insurance for Covered "Autos" Liability Coverage shown in the Declarations.

    Damages and "covered pollution cost or expense" payable under the Limit of Insurance for Covered "Autos" Liability Coverage are not payable under any applicable Limits of Insurance under Section II – General Liability Coverages or Section III – Acts, Errors Or Omissions Liability Coverage.

    All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

**B. Changes In Physical Damage Coverage**

No deductible applies to auto safety glass. All other **Physical Damage Coverage** provisions will apply.

**C. Changes In Acts, Errors Or Omissions Liability Coverages**

The **Noncompensatory Damages** Exclusion under the Auto Dealers Coverage Form is replaced by the following:

Criminal fines or penalties imposed by law or regulation or demands for injunctive or equitable relief.

**D. Changes In Conditions**

The **Concealment, Misrepresentation Or Fraud** Condition does not apply to **Covered Autos Liability Coverage**.

Exhibit B
Exhibit B

POLICY NUMBER: ISA H25295304                                  Endorsement Number: 126

**COMMERCIAL AUTO**
**CA 02 30 07 19**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SOUTH CAROLINA CHANGES –
## CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The **Cancellation** Common Policy Condition is amended as follows:

  **1.** Paragraph **2.** is replaced by the following:

    We will mail or deliver to you and your agent written notice of cancellation, stating the reason(s) for cancellation, at the addresses shown in the Policy, at least:

    **a.** 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if cancellation is for any other reason.

  **2.** The following is added to Paragraph **4.**:

    If this Policy is cancelled during the first 60 days, and is not a renewal or a continuation policy, the cancellation will be effective only on or after the 61st day of the policy period. However, if this Policy is cancelled for nonpayment of premium, the cancellation will become effective only on or after the 31st day of the policy period.

  **3.** The following is added:

    If this Policy has been in effect for more than 120 days, we may cancel this Policy only for the following reasons:

    **a.** Nonpayment of premium;

    **b.** Material misrepresentation of fact, which if known to us would have caused us not to issue the Policy;

    **c.** Substantial change in the risk assumed, except to the extent that:

      **(1)** We had notice of the risk within the first 120 days of the policy period and this is not a renewal or continuation of a policy we issued; or

      **(2)** We should have reasonably foreseen the change or contemplated the risk in writing the Policy;

    **d.** Substantial breach of contractual duties, conditions or warranties; or

    **e.** Loss of our reinsurance covering all or a significant part of the particular risk insured, or where continuation of the Policy would imperil our solvency or place us in violation of the laws of South Carolina.

**B.** The following is added and supersedes any provisions to the contrary:

**Nonrenewal**

  **1.** We will not refuse to renew a policy issued for a term of more than one year, until expiration of its full term, if anniversary renewal has been guaranteed by additional premium consideration.

  **2.** If we decide not to renew this Policy, we will:

    **a.** Mail or deliver written notice of nonrenewal to the first Named Insured and agent, if any, before:

      **(1)** The expiration date of this Policy, if the Policy is written for a term of one year or less; or

      **(2)** An anniversary date of this Policy, if the Policy is written for a term of more than one year or for an indefinite term; and

    **b.** Provide at least:

      **(1)** 60 days' notice of nonrenewal, when nonrenewal is to become effective between November 1 and May 31; or

      **(2)** 90 days' notice of nonrenewal, when nonrenewal is to become effective between June 1 and October 31.

  **3.** Any notice of nonrenewal will be mailed or delivered to the address of the first Named Insured and agent, if any, shown in this Policy or, if none is shown, then to their last known addresses. If notice is mailed, proof of mailing will be sufficient proof of notice.

  **4.** Any notice of nonrenewal will state the precise reason for nonrenewal.

POLICY NUMBER: ISA H25295304      Endorsement Number: 127

COMMERCIAL AUTO
CA 21 19 12 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH CAROLINA
# UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, South Carolina, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| Named Insured:  Medtronic plc |
| Endorsement Effective Date: |

**SCHEDULE**

| |
|---|
| Limit Of Insurance:  $ See DA40002      Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Coverage**

We will pay in accordance with the South Carolina Uninsured Motorists Law all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by an "insured" or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":
   a. The Named Insured and any "family members".
   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
   c. The Named Insured for "property damage" only.

**C. Exclusions**

This coverage does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

4. The first $200 of the amount of "property damage" to the property of each "insured" as the result of any one "accident".

5. That part of "property damage" for which an "insured" has been compensated by insurance or otherwise.

6. "Bodily injury" or "property damage" arising directly or indirectly out of:
   a. War, including undeclared or civil war;
   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage shown in the Schedule. If the "bodily injury" or "property damage" is sustained by an individual Named Insured or any "family member" while "occupying" a covered "auto", our limit is the sum of:
   a. The Limit Of Insurance shown in the Schedule that applies to a covered "auto"; and
   b. That part of the limit for this coverage that applies to each additional covered "auto" that does not exceed the limit of insurance applicable to the covered "auto" involved in the "accident".

2. Subject to the maximum limit of insurance for all damages:
   a. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" or "property damage" sustained in an "accident" by an "insured" other than an individual Named Insured or any "family member" is that "insured's" pro rata share of the limit shown in the Schedule for this coverage that applies to the vehicle that "insured" was "occupying" at the time of the "accident".
   b. The individual Named Insured or any "family member" who sustains "bodily injury" in that "accident" will also be entitled to a pro rata share of the limit described in Paragraph a. above.

   A person's pro rata share shall be the proportion that that person's damages bear to the total damages sustained by all "insureds".

3. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", if "bodily injury" or "property damage" is sustained by an individual Named Insured or any "family member" while not "occupying" any "auto", the most we will pay for all damages resulting from that "accident" is the sum of:
   a. The highest limit of insurance for this coverage applicable to any one of such Named Insured's covered "autos"; and
   b. That part of the limit for this coverage that applies to each additional covered "auto" that does not exceed the limit of insurance applicable to the covered "auto" involved in the "accident".

Exhibit B

4. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", if "bodily injury" or "property damage" is sustained in an "accident" by an individual Named Insured or any "family member" while "occupying" a vehicle not owned by that Named Insured or any "family member", the most we will pay for all damages resulting from the "accident" will be the highest limit of insurance for this coverage that applies to any one of such Named Insured's covered "autos".

5. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", if "bodily injury" or "property damage" is sustained by an "insured" other than an individual Named Insured or any "family member" in an "accident" in which neither such Named Insured nor any "family member" sustained "bodily injury" or "property damage", the most we will pay for all damages resulting from that "accident" is the Limit Of Insurance shown in the Schedule for this coverage that applies to the vehicle that "insured" was "occupying" at the time of the "accident".

6. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

**E. Changes In Conditions**

The **Conditions** are changed for **Uninsured Motorists Coverage** as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   a. If an "insured" sustains "bodily injury" while "occupying" a vehicle not owned by that person or while not "occupying" any vehicle, the following priorities of coverage apply:

   | First Priority | The policy affording Uninsured Motorists Coverage to the vehicle the "insured" was "occupying" at the time of the "accident". |
   |---|---|
   | Second Priority | Any policy affording Uninsured Motorists Coverage to a Named Insured or a "family member", if the Named Insured is an individual. |

   (1) If there is no applicable insurance available under the first priority, the maximum recovery under all policies in the second priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

   (2) If there is applicable insurance available under the first priority:

   (a) The limit of insurance applicable to the vehicle the "insured" was "occupying", under the policy in the first priority, shall first be exhausted; and

   (b) The maximum recovery in the second priority shall not exceed the highest limit for any one vehicle under any one policy in the second priority.

   b. We will pay only our share of the loss, not to exceed our share of the maximum recovery. Our share is the proportion that our limit of insurance bears to the total of all applicable limits on the same level of priority.

   c. For "property damage", this insurance is excess to all collectible insurance of any kind.

   d. Except for "property damage", the reference to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved; and

   b. Promptly send us copies of the legal papers if a "suit" is brought.

3. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

   **Transfer Of Rights Of Recovery Against Others To Us**

   a. If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us to the extent of such payment that does not exceed the minimum limits specified by the South Carolina Motor Vehicle Financial Responsibility Act. That person or organization must do everything necessary to secure our rights and must do nothing after the "accident" or loss to impair them.

   b. If an "insured" has prosecuted to judgment any "suit" against anyone responsible, we will be entitled to an assignment of the judgment to the extent of payment under this insurance that does not exceed the minimum limits specified by the South Carolina Motor Vehicle Financial Responsibility Act.

   c. We will pay our proportionate part of any reasonable costs and expenses incurred for any recovery, including reasonable attorneys' fees. However, we reserve the right to retain an attorney of our choice to pursue a claim instead of reasonable attorneys' fees.

   d. If an "insured" making a claim for "property damage" under this insurance is also entitled to insurance or other compensation for the "property damage", we will not be obligated to pay the claim until the "insured" has assigned us the rights to the compensation to the extent of payment under this insurance that does not exceed the minimum limits specified by the South Carolina Motor Vehicle Financial Responsibility Act.

4. **Two Or More Coverage Forms Issued By Us** does not apply to **Uninsured Motorists Coverage.**

5. The following condition is added:

   **Conformity To Statute**

   This endorsement is intended to be in full conformity with the South Carolina Insurance Laws. If any provision of this endorsement conflicts with that law, it is changed to comply with the law.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Property damage" means injury to or destruction of the property of an "insured".

4. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   a. For which neither a liability bond or policy nor cash or securities deposited with the State Treasurer provide at least the amounts required by the South Carolina Motor Vehicle Financial Responsibility Act.

b. For which neither the operator nor owner can be identified and that hits or that causes an "accident" resulting in "bodily injury" or "property damage" without hitting an individual Named Insured or a "family member", a vehicle that an individual Named Insured or any "family member" is "occupying", the Named Insured's covered "auto" or any of such Named Insured's property.

The facts of the "accident" must be corroborated by competent evidence of an eyewitness other than the owner or operator of the vehicle that an individual Named Insured or any "family member" was "occupying" at the time of the "accident". The eyewitness must sign an affidavit attesting to the truth of the facts of the "accident" contained in the affidavit.

c. For which an insuring or bonding company successfully denies coverage, is or becomes insolvent, is in delinquency proceedings, suspension or receivership, or is proven unable to respond to a judgment.

d. For which the owner has not qualified as a self-insurer in accordance with the applicable provisions of the South Carolina Insurance Laws.

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

b. Owned by any governmental unit or agency unless a cause of action against that governmental unit or agency is barred by the Tort Claims Act, South Carolina Laws 1986, Ratification No. 514, Subsection 15-78-60, or by other applicable statute.

c. Designed for use mainly off public roads while not on public roads.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 128

**COMMERCIAL AUTO**
CA 01 23 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH DAKOTA CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, South Dakota, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Liability Coverage**

Paragraph 2.b.(4) of the Who Is An Insured provision in the Auto Dealers Coverage Form does not apply.

**B. Changes In Physical Damage Coverage**

The Limit Of Insurance provision with respect to repair or replacement resulting in better than like kind or quality is replaced by the following and supersedes any provision to the contrary:

We may deduct for betterment from the amount we pay for the "loss" only if the repair or replacement results in an increase in the fair market value of the vehicle.

Betterment as used in this provision means the difference between:

a. The fair market value of the vehicle before the "loss"; and

b. The fair market value of the vehicle after repair or replacement.

**C. Changes In Conditions**

The Legal Action Against Us Condition is replaced by the following:

**Legal Action Against Us**

No one has the right under this Policy to bring us into an action to determine the "insured's" liability.

---

CA 21 19 12 13      © Insurance Services Office, Inc., 2013      Page 5 of 5

Exhibit B

CA 01 23 10 13      © Insurance Services Office, Inc., 2012      Page 1 of 1

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 129

COMMERCIAL AUTO
CA 21 41 10 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH DAKOTA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

This endorsement modifies insurance provided under the following:

> AUTO DEALERS COVERAGE FORM
> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| Named Insured: Medtronic plc |
| --- |
| Endorsement Effective Date: |

## SCHEDULE

| Limit Of Insurance | | |
| --- | --- | --- |
| Uninsured Motorists Coverage: | $ See DA40002 | Each "Accident" |
| Underinsured Motorists Coverage: | $ See DA40002 | Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

### A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured" or "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured" or "underinsured motor vehicle".

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered "auto" is principally garaged, we will pay only after all liability bonds or policies have been exhausted by payment of judgments or settlements.

3. No judgment for damages arising out of a "suit" brought against, or settlement entered into with, the owner or operator of an "uninsured motor vehicle" or an "underinsured motor vehicle" is binding on us unless we:

   a. Received reasonable notice of the pendency of the "suit" resulting in judgment or the negotiations resulting in settlement; and

   b. Had a reasonable opportunity to protect our interests in the "suit" or settlement.

### B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

### C. Exclusions

This insurance does not apply to:

1. Punitive or exemplary damages.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the applicable limit of Uninsured Motorists Coverage and Underinsured Motorists Coverage shown in the endorsement Schedule. However, subject to the provisions in Paragraphs D.1.a. and b. below, in the case of an "accident" involving both an "uninsured motor vehicle" and an "underinsured motor vehicle", the most we will pay is both the limit of Uninsured Motorists Coverage and the limit of Underinsured Motorists Coverage shown in the endorsement Schedule.

   a. The limit entry for Uninsured Motorists Coverage in the endorsement Schedule applies only to "uninsured motor vehicles" as defined in Paragraph F.3. of the Additional Definitions section.

   b. The limit entry for Underinsured Motorists Coverage in the endorsement Schedule applies only to "underinsured motor vehicles" as defined in Paragraph F.4. of the Additional Definitions section.

2. No one will be entitled to receive duplicate payments for the same elements of "loss".

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

3. With respect to damages resulting from an "accident" with an "underinsured motor vehicle", the limit of liability shall be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

4. Any amount paid under this coverage will reduce any amount an "insured" may be paid under this Coverage Form's Covered Autos Liability Coverage.

**E. Changes In Conditions**

The following condition is changed for Uninsured Motorists Coverage only:

**Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

**Transfer Of Rights Of Recovery Against Others To Us**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

**The Conditions** are changed for Uninsured And Underinsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured or underinsured motorists insurance providing coverage on a primary basis.

   b. If the coverage under this Coverage Form is provided:

      (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

      (2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved; and

   b. Promptly send us copies of the legal papers if a "suit" is brought.

3. The following condition is added:

   **Arbitration**

   a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the parties may agree to arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated. If both parties agree to arbitrate, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

   b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision reached by two of the arbitrators will not be binding on either party.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged; or

   b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   c. Which is a hit-and-run vehicle and neither the driver nor owner can be identified or which causes an "accident" resulting in "bodily injury" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

However, "uninsured motor vehicle" does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law; or

   b. Designed for use mainly off public roads while not on public roads.

4. "Underinsured motor vehicle" means a land motor vehicle or "trailer" to which a liability bond or policy applies at the time of an "accident", but the amount paid for "bodily injury" to an "insured" under that bond or policy is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law;

   b. Designed for use mainly off public roads while not on public roads;

   c. Which is an "uninsured motor vehicle"; or

   d. For which an insuring or bonding company denies coverage or is or becomes insolvent.

POLICY NUMBER: ISA H25295304

Endorsement Number: 130

COMMERCIAL AUTO
CA 01 46 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TENNESSEE CHANGES

For a covered "auto" licensed in, or "auto dealer operations" conducted in, Tennessee, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**A. Changes In Covered Autos Liability Coverage**

Paragraph 2.b.(4) of the Who Is An Insured provision of the Auto Dealers Coverage Form does not apply.

**B. Changes In Conditions**

1. The following replaces the lead-in paragraph to the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition in the Business Auto and Motor Carrier Coverage Forms and the **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** Condition in the Auto Dealers Coverage Form:

   We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

2. The **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance – Primary and Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are changed by adding the following:

   a. When two policies providing liability insurance apply to an "auto" and:

      (1) One provides coverage to a named "insured" engaged in the business of selling, repairing, servicing, delivering, testing, road testing, parking or storing "autos";

      (2) The other provides coverage to a person not engaged in that business; and

      (3) At the time of an "accident" a person described in Paragraph a.(2) is operating an "auto" owned by the business described in Paragraph a.(1), then that person's liability insurance is primary and the policy issued to a business described in Paragraph a.(1) is excess over any insurance available to that person.

   b. When two policies providing liability insurance apply to an "auto" and:

      (1) One provides coverage to a named "insured" engaged in the business of repairing, servicing, parking or storing "autos";

      (2) The other provides coverage to a person not engaged in that business; and

      (3) At the time of an "accident" an "insured" b.(1) is operating an "auto" owned by a person described in Paragraph b.(2), then the liability insurance policy issued to the business described in Paragraph b.(1) is primary and the policy issued to a person described in Paragraph b.(2) is excess over any insurance available to the business.

CA 01 46 10 13                © Insurance Services Office, Inc., 2012                Page 1 of 1

Exhibit B

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 131

COMMERCIAL AUTO
CA 01 96 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES

For a covered "auto" licensed or principally garaged in Texas, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**A. Changes In Physical Damage Coverage**

1. The following exclusion is added to Paragraph **B. Exclusions** in the **Physical Damage Coverage** section:

   We will not pay for "loss" due to or as a consequence of a seizure of a covered "auto" by federal or state law enforcement officers as evidence in a case against you under the Texas Controlled Substances Act or the federal Controlled Substances Act if you are convicted in such case.

2. Paragraphs **C.2.** and **C.3.** of the **Limit Of Insurance** provision under **Physical Damage Coverage** do not apply.

3. Paragraph **D. Deductible** in the **Physical Damage Coverage** section is amended by the addition of the following:

   At the mutual agreement of you and us, we will not apply the deductible to "loss" to glass, if the glass is repaired rather than replaced.

**B. Changes In Conditions**

The following condition is added:

**Claim-handling Procedures**

1. Within 15 days after we receive written notice of a claim, we will:

   a. Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

   b. Begin any investigation of the claim; and

   c. Specify the information you must provide in accordance with Paragraph b. of the Duties Condition.

   We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

2. After we receive the information we request, we will notify you in writing as to whether:

   a. The claim will be paid;

   b. The claim has been denied, and inform you of the reasons for denial;

   c. More information is necessary; or

   d. We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

   We will provide notification, as described in 2.a. through 2.d. above, within:

   a. 15 "business days"; or

   b. 30 days if we have reason to believe the "loss" resulted from arson.

   If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

3. If a claim results from a weather-related catastrophe or a major natural disaster as defined by the Texas Department of Insurance, the claim-handling deadlines described above are extended for an additional 15 days.

4. If we notify you that we will pay your claim, or part of your claim, we will pay within five "business days" after we notify you.

CA 01 96 10 13                © Insurance Services Office, Inc., 2013                Page 1 of 2

Exhibit B

However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms under this Policy, we will make payment within five "business days" after the date you have complied with such terms.

5. We will notify the first Named Insured in writing of:

  a. An initial offer to settle a claim made or "suit" brought against any "insured" under Covered Autos Liability Coverage of this Policy. The notice will be given no later than the 10th day after the date on which the offer is made.

  b. Any settlement of a claim made or "suit" brought against the "insured" under Covered Autos Liability Coverage of this Policy. The notice will be given not later than the 30th day after the date of settlement.

As used in this condition, "business day" means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

**C. Changes In Uninsured/Underinsured Motorists Coverage**

All references to "Uninsured Motorists Coverage" in the title or text of any Coverage Form or endorsement thereto are changed to read "Uninsured/Underinsured Motorists Coverage".

**D. Changes In Trailer Interchange Coverage**

The following exclusion is added to Paragraph **B. Exclusions of Section III – Trailer Interchange Coverage** in the Motor Carrier Coverage Form and to Paragraph **B.2. Exclusions of the Motor Carrier** Endorsement if attached:

**Texas Controlled Substance Act**

We will not pay for "loss" due to or as a consequence of a seizure of a covered "auto" by federal or state law enforcement officers as evidence in a case against you under the Texas Controlled Substances Act or the federal Controlled Substances Act if you are convicted in such case.

**E. Changes In Garagekeepers Coverage**

If the Garagekeepers Coverage Endorsement or the Garagekeepers Coverage – Customers' Sound-receiving Equipment endorsement is attached, the following exclusion is added:

**Texas Controlled Substance Act**

We will not pay for "loss" due to or as a consequence of a seizure of a covered "auto" by federal or state law enforcement officers as evidence in a case against you under the Texas Controlled Substances Act or the federal Controlled Substances Act if you are convicted in such case.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 132

**COMMERCIAL AUTO**
**CA 02 43 11 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraphs **2.** and **5.** of the **Cancellation** Common Policy Condition contained in Endorsement IL 00 17 are replaced by the following:

  **2.** We may cancel this policy:

    **a.** By mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

    **b.** For the following reasons, if this policy does not provide coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001:

      **(1)** If this policy has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

      **(2)** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

        **(a)** Fraud in obtaining coverage;

        **(b)** Failure to pay premiums when due;

        **(c)** An increase in hazard within the control of the insured which would produce an increase in rate;

        **(d)** Loss of reinsurance covering all or part of the risk covered by the policy; or

      **(e)** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

  **c.** For the following reasons, if this policy provides coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001:

    **(1)** If this policy has been in effect for less than 90 days, we may cancel this policy for any reason.

    **(2)** If this policy has been in effect for 90 days or more, or if it is a renewal or continuation of a policy issued by us, we may cancel this policy, only for the following reasons:

      **(a)** If the first Named Insured does not pay the premium or any portion of the premium when due;

      **(b)** If the Texas Department of Insurance determines that continuation of this policy would result in violation of the Texas Insurance Code or any other law governing the business of insurance in Texas;

      **(c)** If the Named Insured submits a fraudulent claim; or

      **(d)** If there is an increase in the hazard within the control of the Named Insured which would produce an increase in rate.

---

Exhibit B

5. If this policy is canceled, we will send the first Named Insured any premium refund due. The refund will be pro rata, subject to the policy minimum premium. The cancellation will be effective even if we have not made or offered a refund.

B. The following condition is added:

**Nonrenewal**

1. We may elect to renew this policy except that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

2. If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 133

**COMMERCIAL AUTO**
CA 99 95 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS SUPPLEMENTARY DEATH BENEFIT

This endorsement modifies insurance provided under the following:

AUTO MEDICAL PAYMENTS COVERAGE
PERSONAL INJURY PROTECTION COVERAGE

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** Medtronic plc |
| **Endorsement Effective Date:** |

**A. Coverage**

We will pay under the provisions of personal injury protection insurance and/or auto medical payments insurance as afforded by this policy except as limited by this endorsement.

We will pay a supplementary death benefit equal to the limit shown for the coverages but not exceeding ten thousand dollars ($10,000) per person because of death:

1. Caused by an "auto" "accident"; and

2. Sustained by an "insured" while wearing a "seat belt" or protected by an "airbag".

We will pay the benefit if death from an "auto" "accident" occurs within three years of the date of such "accident".

**B. Proof Of Claim For Death Benefit**

The "beneficiary" must furnish us with proof of death of the "insured", accompanied by a police report or other suitable proof, that the "insured" at the time of the "auto" "accident" was wearing a "seat belt" or protected by an "air bag".

**C. Other Insurance**

Any amounts payable under the supplementary death benefit shall not be reduced by any other amounts paid or payable under this policy.

**D. Additional Definitions**

The following are added to the **Definitions** section and have special meaning for Supplementary Death Benefit:

1. "Insured" as used in this endorsement means the same persons who are covered under auto medical payments insurance and/or personal injury protection insurance.

2. "Seat belt" means manual or automatic safety belts or seat and shoulder restraints or a child restraint device.

3. "Airbag" is a functioning airbag designed to protect the occupant of a seat in an "auto".

4. "Beneficiary" means (in order of priority of payment):

a. The surviving spouse if a resident in the same household as the deceased at the time of the "accident"; or

b. If the deceased is an unmarried minor, either of the surviving parents who had legal custody at the time of the "accident"; or

c. The estate of the deceased.

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 134

MM 99 28 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**UNINSURED MOTORISTS COVERAGE - MASSACHUSETTS**

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. **Coverage**

We will pay all sums an insured is legally entitled to recover as damages from the owner or operator of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the insured caused by an "accident." The owner's or operator's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle."

The most we will pay for damages to or for anyone injured in the following situations is $35,000 for each person and $80,000 for each "accident" or the limits you purchased, whichever is less:

1. Anyone injured while using a covered "auto" without the consent of the owner.

2. Anyone injured while a covered "auto" is being operated in a prearranged or organized racing, speed or demolition contest or in practice or preparation for any such contest.

This coverage does not apply to the direct or indirect benefit of any insurer or self-insurer under any workers' compensation or similar law.

1. Who is an Insured:

   a. You, while "occupying" a covered "auto," while "occupying" an "auto" you do not own, or if injured as a "pedestrian."

   b. If the form of your business under Item One of the Declarations is shown as an individual, any "household member," while "occupying" a covered "auto," while "occupying" an "auto" not owned by you, or if injured as a "pedestrian."

   If there are two or more policies which provide coverage at the same limits, we will only pay our proportionate share. We will not pay damages to or for any

"household member" who has a Massachusetts auto policy of his or her own or who is covered by any Massachusetts auto policy of another "household member" providing uninsured auto insurance with higher limits.

   c. Anyone else while "occupying" a covered "auto." We will not pay damages to or for anyone else who has a Massachusetts auto policy of his or her own, or is covered by any Massachusetts auto policy of another "household member" providing uninsured auto insurance.

   d. Anyone else for damages he or she is entitled to recover because of injury to a person under this coverage.

If you are injured while "occupying" a covered "auto" and you have two or more "autos" insured with us with different limits, we only pay up to the limits shown on the Declarations for the "auto" you are "occupying" when injured.

If you are injured as a "pedestrian" or while "occupying" an "auto" you do not own and you have two or more Massachusetts auto policies at different limits, the policy with the higher limits will pay. If there are two or more policies which provide coverage at the same limits, we will only pay our proportionate share.

We will not pay damages to or for you if struck by, or while "occupying" an "auto" you own and which does not have Massachusetts compulsory auto insurance.

Likewise, we will not pay damages to or for any "household member" if struck by, or while "occupying" an "auto" owned by that "household member" which does not have Massachusetts compulsory auto insurance.

B. **Limits Of Insurance**

1. The most we will pay for injuries to one or more persons as a result of bodily injury to any one person in any one "accident" is shown on the Declarations as the "each person" limit. Subject to this limit, the most we will pay for injuries to two or more people as the result of bodily injury to two or more people in any one "accident" is shown on the Declarations as the "each accident" limit. This is the most we will pay as the result of a single "accident."

2. The limits of two or more "autos" or policies shall not be added together, combined, or stacked, to determine the limits of coverage available to anyone covered under this insurance, regardless of the number of "autos" involved, persons covered, claims made, or premiums shown on the Declarations.

3. We will not make payments under this coverage which duplicate payments provided under uninsured auto insurance of any other auto policy.

MM 99 28 10 13

4. We will reduce the damages an injured person is entitled to recover by:

   a. The amount recovered from any legally responsible person provided the injured person is fully compensated for his or her damage for bodily injury.

   b. The amount paid under a workers' compensation law or similar law.

We will pay the balance of the damages up to the limits shown for this coverage on the Declarations.

C. **Changes In Conditions**

The conditions are changed for Uninsured Motorists Coverage as follows:

1. Other Insurance is deleted.

2. Two or More Coverage Forms or Policies Issued By Us is deleted.

D. **Additional Conditions**

The following conditions are added for Uninsured Motorists Coverage:

1. Arbitration

   If we and an insured disagree whether the insured is legally entitled to recover damages from the owner or operator of an "uninsured motor vehicle" or do not agree as to the amount of damages, either party may make a written demand for arbitration. However, in no event may a demand for arbitration constitute first notice of claim. We must be given sufficient notice of claim to conduct a reasonable investigation and attempt settlement before arbitration can be used.

2. Settlement or Judgment

   If an insured person settles a claim as a result of an "accident" covered under this coverage, we will pay that person only if the claim was settled with our consent.

   We will not be bound under this coverage by any judgment resulting from a lawsuit brought without our written consent. We will not, however, unreasonably withhold our consent.

MM 99 28 10 13

E. **Additional Definitions**

As used in this endorsement:

1. "Household member" means anyone living in your household who is related to you by blood, marriage or adoption. This includes wards, step-children or foster children.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or trailer:

   a. To which no "bodily injury" liability policy or bond applies at the time of the "accident," or

   b. To which a "bodily injury" liability policy or bond applies at the time of the "accident," but the insuring or bonding company denies coverage or becomes insolvent.

   c. Which is a hit-and-run vehicle and neither the operator nor owner can be identified.

However, "uninsured motor vehicle" does not include any vehicle:

   a. Owned by a governmental unit or someone who is legally self-insured;

   b. Owned or regularly used by you;

   c. Designed for use mainly off public roads while not on public roads;

   d. Operated on rails or crawler treads;

   e. While located for use as a residence or premises.

POLICY NUMBER:  ISA H25295304

Endorsement Number:  135

**COMMERCIAL AUTO**
CA 31 13 11 18

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# UNINSURED MOTORISTS ENDORSEMENT – NEW YORK

We, the Company, agree with you, as the named insured, in return for the payment of the premium for this coverage to provide you with Uninsured Motorists (UM) Coverage, subject to the following terms and conditions:

**INSURING AGREEMENTS**

1. **Damages for Bodily Injury Caused by Uninsured Motor Vehicles.** We will pay all sums which the insured, as defined herein, or the insured's legal representative, shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, and caused by accident arising out of such uninsured motor vehicle's ownership, maintenance or use, subject to the Exclusions, Conditions, Limits and other provisions of this UM endorsement; provided, for the purposes of this coverage, determination as to whether the insured or the insured's representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or the insured's representative and us or, if they fail to agree, by arbitration.

2. **Definitions.** For purposes of this UM endorsement, the following terms shall have the following meanings:

   **(a) Insured.** The unqualified term "insured" means:

   (1) You, as the named insured and, while residents of the same household, your spouse and the relatives of either you or your spouse;

   (2) Any other person while occupying:

      (i) A motor vehicle owned by the named insured or, if the named insured is an individual, such spouse and used by or with the permission of either, or

      (ii) Any other motor vehicle while being operated by the named insured or such spouse, except a person occupying a motor vehicle not registered in the State of New York, while used as a public or livery conveyance; and

   (3) Any person, with respect to damages such person is entitled to recover because of bodily injury to which this coverage applies sustained by an insured under sub-paragraphs (1) or (2) above.

   **(b) Uninsured Motor Vehicle.** The term "uninsured motor vehicle" means a motor vehicle that through its ownership, maintenance or use, results in bodily injury to an insured, and for which:

   (1) No bodily injury liability insurance policy or bond applies to such vehicle (including a vehicle that was stolen, operated without the owner's permission, or unregistered) at the time of the accident; or

   (2) Neither the owner nor driver can be identified, including a hit-and-run vehicle, and which causes bodily injury to an insured by physical contact with the insured or with a motor vehicle occupied by the insured at the time of the accident, provided that:

      (i) The insured or someone on the insured's behalf shall have reported the accident within 24 hours or as soon as reasonably possible to a police, peace or judicial officer or to the Commissioner of Motor Vehicles and shall have filed with us a statement under oath that the insured or the insured's legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and

      (ii) At our request, the insured or the insured's legal representative makes available for inspection the motor vehicle the insured was occupying at the time of the accident, or

   (3) There is a bodily injury liability insurance coverage or bond applicable to such motor vehicle at the time of the accident, but:

      (i) The amount of such insurance coverage or bond is less than the UM limits of this policy; or

      (ii) The insurer writing such insurance coverage or bond denies coverage.

   (4) The term "uninsured motor vehicle" does not include a motor vehicle that is:

      (i) Insured under the liability coverage of this policy; or

      (ii) Owned by you, as the named insured and, while residents of the same household, your spouse and relatives of either you or your spouse; or

      (iii) Self-insured within the meaning of the financial responsibility law of the state in which the motor vehicle is registered, or any similar state or federal law, to the extent that the required amount of such coverage is equal to, or greater than, the UM limits of this policy; or

      (iv) Owned by the United States of America, Canada, a state, a political subdivision of any such government, or an agency of any of the foregoing; or

      (v) A land motor vehicle or trailer, while located for use as a residence or premises and not as a vehicle, or while operated on rails or crawler-treads; or

      (vi) A farm type vehicle or equipment designed for use principally off public roads, except while actually upon public roads.

   **(c) Hit-and-Run Motor Vehicle.** The term "hit-and-run motor vehicle" means a motor vehicle which causes bodily injury to an insured arising out of physical contact of such motor vehicle with the insured or with a motor vehicle which the insured is occupying at the time of the accident, provided:

   (1) there cannot be ascertained the identity of either the operator or the owner of such "hit-and-run motor vehicle";

   (2) the insured or someone on his behalf shall have reported the accident within 24 hours or as soon as reasonably possible to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 90 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and

   (3) at our request, the insured or his legal representative makes available for inspection the motor vehicle which the insured was occupying at the time of the accident.

   **(d) Bodily Injury.** The term "bodily injury" means bodily harm, including sickness, disease or death resulting therefrom.

   **(e) Occupying.** The term "occupying" means is, in, upon, entering into, or exiting from a motor vehicle.

   **(f) State.** The term "state" includes the District of Columbia, a territory or possession of the United States, and a province of Canada.

   **(g)** As used in this endorsement, the terms digital network, transportation network company driver, transportation network company, and transportation network company prearranged trip shall have the meanings set forth in section 1691 of the Vehicle and Traffic Law.

3. **Territory.** The coverage provided by this UM endorsement applies only to accidents which occur within the State of New York.

**Exclusions**

This UM coverage does not apply:

1. To bodily injury to an insured while operating a motor vehicle in violation of an order of suspension or revocation; or to care or loss of services recoverable by an insured because of such bodily injury so sustained.

2. To bodily injury to an insured, or care or loss of services recoverable by an insured, with respect to which such insured, the insured's legal representatives or any person entitled to payment under this UM coverage shall, without our written consent, make any settlement with or prosecute to judgment any action against any person or organization who may be legally liable therefor, but this provision shall be subject to Condition 8 of this UM endorsement.

3. To bodily injury to an insured incurred while occupying a motor vehicle owned by that insured, if such motor vehicle is not insured for at least the minimum bodily injury liability limits and UM limits required by law by the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of this policy.

4. So as to inure directly or indirectly to the benefit of any workers' compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workers' compensation or disability benefits law or any similar law.

5. For non-economic loss, resulting from bodily injury to an insured and arising from an accident in New York State, unless the insured has sustained serious injury as defined in Section 5102(d) of the New York Insurance Law.

6. To bodily injury to an insured incurred while the motor vehicle is used by a transportation network company driver who is logged onto a transportation network company's digital network but is not engaged in a transportation network company prearranged trip or while the driver provides a transportation network company prearranged trip pursuant to article 44-B of the Vehicle and Traffic Law.

**CONDITIONS**

1. **Policy Provisions.** None of the Insuring Agreements, Exclusions or Conditions of the policy shall apply to this UM coverage except "Duties After an Accident or Loss"; "Fraud", and "Termination" if applicable.

2. **Premium.** If during the policy period the number of motor vehicles owned by the named insured or spouse and registered in New York or the number of New York dealer's license plates or transporter plates issued to the named insured changes, the named insured shall notify us during the policy period of any change and the premium shall be adjusted as of the date of such change in accordance with the manuals in use by us. If the earned premium thus computed exceeds the advance premium paid, the named insured shall pay the excess to us; if less, we shall return to the named insured the unearned portion paid by such insured.

3. **Notice and Proof of Claim.** Within 90 days or as soon as practicable, the insured or other person making claim shall give us written notice of claim under this UM endorsement.

   As soon as practicable after our written request, the insured or other person making any claim shall give us written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details we need to determine the UM amount payable hereunder.

   The insured and every other person making claim hereunder shall, as may reasonably be required, submit to examinations under oath by any person named by us and subscribe the same. Proof of claim shall be made upon forms we furnish unless we fail to furnish such forms within 15 days after receiving notice of claim.

4. **Medical Reports.** The injured person shall submit to physical examinations by physicians we select when and as often as we may reasonably require. The insured, or in the event of the insured's incapacity, such insured's legal representative, or in the event of the insured's death, the insured's legal representative or the person or persons entitled to sue therefor, shall upon our request authorize us, when and as often as we may reasonably require, to obtain relevant medical reports and copies of records.

5. **Notice of Legal Action.** If the insured or such insured's legal representative brings any lawsuit against any persons or organizations legally responsible for the use of a motor vehicle involved in the accident, a copy of the summons and complaint or other process served in connection with the lawsuit shall be forwarded immediately to us by the insured or the insured's legal representative.

6. **UM Limit of Liability.** The UM limit payable under this UM endorsement shall be:

   (a) The limit of our liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident is $25,000 per person and, subject to this per person limit, the total limit of our liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons, as the result of any one accident is $50,000.

   (b) If the bodily injury results in death, the limit of our liability shall be $50,000 for such bodily injury resulting in death sustained by one person as the result of any one accident and, subject to this limit for each person, $100,000 for such bodily injury resulting in death sustained by two or more persons as the result of any one accident.

   (c) Any amount payable under the terms of this UM endorsement, including amounts payable for care or loss of services, because of bodily injury sustained by one person, shall be reduced by;

      (1) all sums paid to one or more insureds on account of such bodily injury by or on behalf of (a) the owner or operator of the uninsured motor vehicle and (b) any other person or persons jointly or severally liable together with such owner or operator for such bodily injury, and

      (2) all sums paid to one or more insureds on account of bodily injury sustained in the same accident under any insurance or statutory benefit similar to that provided by this UM endorsement.

7. **Other Insurance.** With respect to bodily injury to an insured while occupying a motor vehicle not owned by the named insured, the coverage under this UM endorsement shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such motor vehicle as primary insurance, and this UM endorsement shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provided in the foregoing paragraph, if there is other similar insurance available to the insured and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this coverage and such other insurance, and we shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this UM endorsement and such other insurance.

8. **Release or Advance.** In accidents involving the insured and one or more negligent parties, if such insured settles with any such party for the available limit of the motor vehicle bodily injury liability coverage of such party, release may be executed with such party after thirty calendar days actual written notice to us, unless within this time period we agree to advance such settlement amounts to the insured in return for the cooperation of the insured in our lawsuit on behalf of the insured.

   We shall have a right to the proceeds of any such lawsuit equal to the amount advanced to the insured and any additional amounts paid under this UM coverage. Any excess above those amounts shall be paid to the insured.

   An insured shall not otherwise settle with any negligent party, without our written consent, such that our rights would be impaired.

9. **Non-Duplication.** This UM coverage shall not duplicate any of the following:

   (a) Benefits payable under workers' compensation or other similar laws;

   (b) Non-occupational disability benefits under article nine of the Workers' Compensation Law or other similar law;

   (c) Any amounts recovered or recoverable pursuant to article fifty-one of the New York Insurance Law or any similar motor vehicle insurance payable without regard to fault;

   (d) Any valid or collectible motor vehicle medical payments insurance; or

   (e) Any amounts recovered as bodily injury damages from sources other than motor vehicle bodily injury insurance policies or bonds.

**10. Arbitration.** If any insured makes a claim under this UM coverage and we do not agree that such insured is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, or we do not agree as to the amount of payment that may be owing under this UM coverage, then, upon written demand of either the insured or us, or at the option and written demand of such insured if the accident occurred while the motor vehicle is used by a transportation network driver who is logged onto a transportation network company's digital network but is not engaged in a transportation network company prearranged trip or while the driver provides a transportation network company prearranged trip, the matter or matters upon which such insured and we do not agree shall be settled by arbitration, administered by the _(insert name of designated organization)_, pursuant to procedures approved by the Superintendent of Financial Services for this purpose. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such insured and we each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this UM endorsement.

**11. Subrogation.** If we make a payment under this UM coverage, we have the right to recover the amount of this payment from any person legally responsible for the bodily injury or loss of the person to whom, or for whose benefit, such payment was made to the extent of the payment. The insured or any person acting on behalf of the insured must do whatever is necessary to transfer this right of recovery to us. Except as permitted by Condition 8, such person shall do nothing to prejudice this right.

**12. Payment of Loss by Company.** We shall pay any amount due under this UM endorsement to the insured or, at our option, to a person authorized by law to receive such payment or to a person legally entitled to recover the damages which the payment represents.

**13. Action Against Company.** No lawsuit shall lie against us unless, as a condition precedent thereto, the insured or the insured's legal representative has first fully complied with all the terms of this UM endorsement.

**14. Assignment.** Assignment of interest under this UM endorsement shall not bind us until our consent is endorsed hereon.

**15. Survivor Rights.** If you or your spouse, if a resident of the same household, dies, this UM coverage shall cover:

  **(a)** The survivor as named insured;

  **(b)** The decedent's legal representative as named insured, but only while acting within the scope of such representative's duties as such; and

  **(c)** Any relative who was an insured at the time of such death.

**16. Policy Period – Termination.** This UM coverage applies only to accidents which occur on and after the effective date hereof and during the policy period and shall terminate upon (1) termination of the policy of which it forms a part or (2) termination of New York registration on all motor vehicles owned by the named insured or spouse.

This UM endorsement must be attached to the Change Endorsement when issued after the policy is written.

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 136

COMMERCIAL AUTO
CA 21 21 11 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# UNINSURED MOTORISTS ENDORSEMENT
### (VIRGINIA)

**A. Words And Phrases With Special Meaning**

The following words and phrases have special meaning throughout this endorsement and appear in quotation marks when used:

1. "You" and "your" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

2. "We", "us", and "our" mean the company providing insurance.

3. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage" the "insured" neither expected nor intended.

4. "Available for payment" means the amount of liability insurance coverage applicable to the claim of the injured person for "bodily injury" or "property damage" reduced by the payment of any other claims arising out of the same "accident."

5. "Bodily injury" means bodily injury, sickness or disease including death resulting from any of these.

6. "Covered auto" means a motor vehicle, or a "temporary substitute", with respect to which the "bodily injury" or "property damage" liability coverage of the policy applies.

7. "Family member" means a person related to "you" by blood, marriage or adoption who is a resident of "your" household, including a ward or foster child.

8. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured section of this endorsement, including the personal representative of any insured. Except with respect to "our" Limit Of Liability, the insurance afforded applies separately to each insured who is seeking coverage under this endorsement.

9. "Loss" means direct and accidental damage or loss.

10. "Property damage" means damage to or loss of use of tangible property.

11. "Occupying" means in, upon, using, getting in, on, out of or off.

12. "Temporary substitute" means a motor vehicle that is being used in place of a "covered auto". The "covered auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

13. "Underinsured motor vehicle" means a motor vehicle, when, and to the extent that, the total amount of "bodily injury" and "property damage" coverage applicable to the operation or use of the motor vehicle and "available for payment" for such "bodily injury" or "property damage", including all bonds or deposits of money or securities made pursuant to Article 15 (Section 46.2-435 et seq.) of Chapter 3 of Title 46.2 of the Code of Virginia, is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the motor vehicle.

14. "Uninsured motor vehicle" means a motor vehicle:

  **a.** For which:

    1. There is no "bodily injury" liability insurance and "property damage" liability insurance in the amounts specified by Section 46.2-472 of the Code of Virginia.

    2. There is such insurance but the insurer writing the insurance denies coverage for any reason whatsoever, including failure or refusal of the insured to cooperate with the insurer.

    3. There is no bond or deposit of money or securities in lieu of such insurance.

    4. The owner of the vehicle has not qualified as a self-insurer under the provisions of Section 46.2-368, or

    5. The owner or operator of the motor vehicle is immune from liability for negligence under the laws of the Commonwealth or the United States. A motor vehicle shall be deemed uninsured if its owner or operator is unknown.

If the owner or operator of any motor vehicle that causes "bodily injury" or "property damage" to the "insured" is unknown, and if the damage or injury results from an "accident" where there has been no contact between that motor vehicle and the motor vehicle occupied by the "insured", or where there has been no contact with the person of the "insured" if the "insured" was not "occupying" a motor vehicle, then for the "insured" to recover under this endorsement pursuant to Paragraph a. of this definition, the "accident" shall be reported promptly to either:

1. The insurer or;

2. A law-enforcement officer having jurisdiction in the county or city in which the "accident" occurred. If it is not reasonably practicable to make the report promptly, the report shall be made as soon as reasonably practicable under the circumstances.

b. Which is an "underinsured motor vehicle".

**B. We Will Pay**

"We" will pay in accordance with the Virginia Uninsured Motorists Law, all sums the "insured" is legally entitled to recover as damages from the owner or operator of an "uninsured motor vehicle".

**C. We Will Not Cover – Exclusions**

This insurance does not apply to:

1. A "bodily injury" or "property damage" claim settled by the "insured" without "our" consent with anyone who may be legally liable.

2. The direct or indirect benefit of any insurer of property.

3. The first $200 of the total amount of "property damage" as the result of any one "accident" involving an unidentifiable driver or owner of an "uninsured motor vehicle". This exclusion does not apply if the owner or operator of the "uninsured motor vehicle" causing the damage can be identified.

4. Anyone using the "covered auto" without a reasonable belief that the person is entitled to do so.

**D. Who Is Insured**

1. "You" or any "family member".

2. Anyone else "occupying" a "covered auto".

3. Anyone for damages he or she is entitled to recover because of "bodily injury" to which this coverage applies, sustained by another "insured" under 1. or 2. above.

**E. Our Limit Of Liability**

1. Regardless of the number of "covered autos", "insureds", claims made or motor vehicles involved in the "accident", the most "we" will pay for all damages resulting from any one "accident" is the limit of **Uninsured Motorists Insurance** shown in the Schedule or Declarations. However, if more than one "covered auto" is involved in the "accident", the limit of Uninsured Motorists Insurance shown in the Schedule or Declarations will apply separately to each of these "covered autos". Such limit of insurance shall first provide the separate limits required by the Virginia Motor Vehicle Safety Responsibility Act.

2. Except with respect to an "underinsured motor vehicle", damages otherwise payable under this coverage:

a. Shall be reduced by all sums paid because of "bodily injury" or "property damage" by or on behalf of persons or organizations who may be legally responsible.

b. With respect to an employee of a self-insured employer, shall be reduced by all sums paid or payable because of "bodily injury" under a workers' compensation law.

**F. Conditions**

The conditions applicable to this coverage are as follows:

1. **Other Insurance**

a. For "bodily injury" to an "insured" while "occupying" a motor vehicle that is not a "covered auto", this coverage shall apply only as excess insurance over any other similar insurance available to that "insured" and applicable to that motor vehicle as primary insurance. However, this paragraph does not apply to an "underinsured motor vehicle".

b. Except as provided in Paragraph a. above, if the "insured" has other similar "bodily injury" insurance available to him or her and applicable to the "accident", "we" shall not be liable for a greater proportion of any "loss" to which this coverage applies than the limit of liability of this coverage bears to the sum of the applicable limits of liability of this insurance and such other insurance. However, this provision does not apply to an "underinsured motor vehicle".

c. For "property damage", **Uninsured Motorists Insurance** is excess over all other collectible insurance of any kind applicable to the "property damage".

d. If the injured person is entitled to underinsured motorists coverage under more than one policy, the following order of priority applies and any amount "available for payment" shall be credited against such policies in the following order of priority:

(1) The policy covering a motor vehicle "occupied" by the injured person at the time of the "accident".

(2) The policy covering a motor vehicle not involved in the "accident" under which the injured person is a named insured.

(3) The policy covering a motor vehicle not involved in the "accident" under which the injured person is other than a named insured.

If there is more than one insurer providing coverage under one of the payment priorities set forth in Paragraph d. above, we will pay only "our" share of the "loss". "Our" share is the proportion that "our" limit of liability bears to the total of all limits applicable on the same level of priority.

2. **Our Right To Recover From Others**

If "we" make any payment, "we" are entitled to recover what "we" paid from other parties. Any person to or for whom "we" make payment must transfer to "us" his or her rights of recovery against any other party. The person must do everything necessary to secure these rights and must do nothing that would jeopardize them.

3. **Legal Action Against Us**

No legal action may be brought against "us" until there has been full compliance with all the terms of this policy.

4. **Changes**

If a change requires a premium adjustment, "we" will adjust the premium as of the effective date of the change.

5. **Transfer Of Rights And Duties**

"Your" rights and duties under this endorsement may not be assigned without "our" written consent.

6. **Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate shall not relieve "us" of any obligations under this endorsement.

7. **Policy Period, Coverage Territory**

Under this endorsement, "we" cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

a. The United States of America.

b. The territories and possessions of the United States of America.

c. Puerto Rico; and

d. Canada

"We" also cover "loss" to, or "accidents" involving, a "covered auto" while being transported between any of these places.

8. **Concealment, Misrepresentation, Or Fraud**

Coverage for "your" claim under this endorsement is void in any case of fraud by "you" at any time as it relates to this coverage. It is also void if "you", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This endorsement;

b. The "covered auto";

c. "Your" interest in the "covered auto"; or

d. A claim under this coverage.

9. **Premium Audit**

a. The estimated premium for this endorsement is based on the exposures "you" told "us" "you" would have when this policy began. "We" will compute the final premium due when "we" determine "your" actual exposures. The estimated total premium will be credited against the final premium due and the First Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the First Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this endorsement will be computed annually, based on "our" rates or premiums in effect at the beginning of each year of the policy.

10. **Arbitration**

a. If "we" and an "insured" disagree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.

"You" are not required to arbitrate; however, if both parties agree to arbitrate, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. "We" will pay all arbitration expenses if "we" request arbitration. If an "insured" requests the arbitration, each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision can be reached by two of the arbitrators but will not be binding.

---

POLICY NUMBER:  ISA H25295304

Endorsement Number:  137

COMMERCIAL AUTO
CA 01 59 05 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UTAH CHANGES

For a covered "auto" licensed or principally garaged in Utah, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Paragraph **b.(6)** is added to the **Who Is An Insured** provision in the Business Auto Coverage Form and supersedes any provision to the contrary:

   **(6)** Your customers, if your business is shown in the Declarations as a rental company. However, if a customer of yours has no other valid and collectible insurance, they are an "insured", but only up to $80,000 for each "accident", which is the minimum combined single limit of liability specified by UTAH CODE ANN. Section 31A-22-304.

   Rental company means any person or organization in the business of providing private passenger motor vehicles to the public under the terms of a rental agreement.

2. The **Expected Or Intended Injury** Exclusion is replaced by the following:

   **Expected Or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

   However, this exclusion does not apply for coverage up to the minimum combined single limit of liability specified by UTAH CODE ANN. Section 31A-22-304.

**B. Changes In Conditions**

1. The **Legal Action Against Us** Condition does not apply.

2. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

   **a.** We shall be entitled to a recovery only after the "insured" has been fully compensated for damages.

   **b.** If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

3. **The Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

   **Fraud Or Misrepresentation**

   Subject to UTAH CODE ANN. Section 31A-21-105, this Coverage Form may be rescinded in the event of fraud or misrepresentation by you or any other "insured" relating to:

   **a.** This Coverage Form;

   **b.** The covered "auto";

   **c.** Your interest in the covered "auto"; or

   **d.** A claim under this Coverage Form.

   However, this provision does not apply, but only up to the compulsory or financial responsibility limits required by Utah law, if an "accident" results in a third-party liability claim against the "insured" under this Coverage Part.

---

© ISO Properties, Inc.,  2002

CA 21 21 11 02

Exhibit B

CA 01 59 05 17

© Insurance Services Office, Inc., 2017

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 138

**COMMERCIAL AUTO**
CA 22 44 11 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UTAH PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or for "auto dealer operations" conducted in, Utah, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| Named Insured: Medtronic plc |
| Endorsement Effective Date: |

**SCHEDULE**

| Benefits | Limit Per Person |
|---|---|
| Medical Expenses | $3,000 |
| Work Loss | (a) 85% of any loss of gross income and earning capacity, not to exceed the total of $250 per week; and |
| | (b) $20 per day for inability to perform services for the household. |
| Funeral Expenses | $1,500 |
| Survivor Loss | $3,000 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

We agree with you, subject to all of the provisions of this endorsement and to all of the provisions of the Policy except as modified herein, as follows:

**A. Coverage**

We will pay Personal Injury Protection benefits in accordance with Title 31A, UTAH CODE ANNOTATED to or for an "insured" who sustains "bodily injury" caused by an "accident" arising out of the use of an "auto" as an auto.

Subject to the limits shown in the Schedule, these Personal Injury Protection benefits consist of:

**1. Medical Expenses**

Reasonable expenses incurred for necessary medical, surgical, x-ray, dental and rehabilitation services, including prosthetic devices, necessary ambulance, hospital and nursing services, and any nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing; however, it does not include expenses in excess of those for a semiprivate room, unless more intensive care is medically required.

**2. Work Loss**

**a.** Loss of income and loss of earning capacity by the "insured" during his or her lifetime, from inability to work during a period commencing three days after the date of the loss of income and earning capacity resulting from the "bodily injury" and continuing for a maximum of 52 consecutive weeks thereafter. If such "insured's" inability to work continues in excess of a total of two consecutive weeks after the date of the loss of income and earning capacity resulting from the "bodily injury", this three-day elimination period shall not be applicable; and

**b.** An allowance for services actually rendered or reasonably incurred that, but for the "bodily injury", the "insured" would have performed during his or her lifetime for his or her household commencing three days after the date of the "bodily injury" and continuing for a maximum of 365 consecutive days thereafter. If such "insured's" inability to perform such services continues in excess of 14 consecutive weeks after the date of the "bodily injury", this three-day elimination period shall not be applicable.

**3. Funeral Expenses**

Funeral, burial or cremation expenses incurred.

**4. Survivor Loss**

Compensation on account of the death of the "insured" and is payable only to natural persons who are the "insured's" heirs.

**B. Who Is An Insured**

**1.** You, unless you are injured in an "accident" which resulted from the use or operation of any motor vehicle which is owned by you and which is not a covered "auto".

**2.** If you are an individual, any "family member", unless the "family member" is injured in an "accident" which resulted from the use or operation of any motor vehicle which is owned by such "family member" and which is not a covered "auto".

**3.** Any person while "occupying" a covered "auto" with the consent of the "insured", except your customers, if your business is shown in the Declarations as a rental company. However, if the customer of a rental company has no other valid and collectible insurance, they are "insured", but only up to the minimum Personal injury protection coverage and benefits amount specified by UTAH CODE ANN. Section 31A-22-307. This supersedes any provision to the contrary.

Rental company means any person or organization in the business of providing private passenger motor vehicles to the public under the terms of a rental agreement.

**4.** Any person while "occupying" any other "auto" other than a public or livery conveyance, operated by you or a "family member". Public or livery conveyance as used in this provision includes, but is not limited to, any period of time an "auto" is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the "auto".

**5.** A "pedestrian" if the "accident" involves the use of a covered "auto".

**C. Exclusions**

We will not pay Personal Injury Protection benefits for "bodily injury":

**1.** Sustained by the "insured" while "occupying" an "auto" owned by, or furnished for the regular use of, that "insured", or if you are an individual, any "family member", that is not a covered "auto".

**2.** Sustained by any person while operating the covered "auto" without the express or implied consent of the "insured" or while not in lawful possession of the covered "auto".

**3.** Sustained by a "pedestrian" if the "accident" occurs outside the state of Utah. This exclusion does not apply, if you are an individual, to you or any "family member".

**4.** Sustained by any person if such person's conduct contributed to his injury under either of the following circumstances:

**a.** Causing injury to himself or herself intentionally, or

**b.** While committing a felony.

**5.** Sustained by any person arising out of the use of any "auto" while located for use as a residence or premises.

6. Arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7. Resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

**D. Limit Of Insurance**

1. Regardless of the number of "insureds", policies or bonds applicable, claims made, premiums paid or covered "autos" to which this coverage applies, the most we will pay for Personal Injury Protection benefits for "bodily injury" sustained by an "insured" in any one "accident" is the Limit Per Person amount shown in the Schedule.

2. Any amount payable under this coverage will be reduced by the amount paid, payable or required to be provided for "bodily injury":

   a. Under any workers' compensation plan or any similar statutory plan; or

   b. By the United States or any of its agencies because of his or her being on active duty in the military services.

**E. Changes In Conditions**

The Conditions of the Policy are changed for Personal Injury Protection as follows:

The following is added to Duties In The Event Of Accident, Claim, Suit Or Loss in the Business Auto and Motor Carrier Coverage Forms and Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions in the Auto Dealers Coverage Form:

   d. If an "insured" or his or her legal representative or survivor institutes legal action to recover damages for "bodily injury", he or she must promptly give us a copy of the summons and complaint or other process served in connection with the legal action.

   e. The "insured" or someone on his or her behalf must promptly give us written proof of claim, under oath if required, including:

      (1) Full particulars of the nature and extent of the "bodily injury", treatment and rehabilitation received and contemplated; and

      (2) Such other information that will help us determine the amount due and payable.

The following conditions are added:

**Reimbursement And Trust**

1. If we make any payment to any "insured" under this coverage and that person recovers from another party, he or she shall hold the proceeds in trust for us and pay us back the amount we have paid. We will have a lien against such payment, and may give notice of the lien to the person or organization causing "bodily injury", his or her agent or insurer or a court having jurisdiction in the matter.

2. Any "insured" receiving payment must hold in trust for our benefit all rights of recovery he or she has against the party causing "bodily injury".

3. That person must do everything necessary to secure such rights and must do nothing to impair them.

4. That person must execute and deliver to us instruments and papers that may be appropriate to secure his or her and our rights and obligations established by this provision.

**Coordination And Nonduplication**

1. No "insured" may recover duplicate payments for the same elements of "loss" under this or any other insurance.

2. This insurance is primary only for "bodily injury" sustained by an "insured" in an "accident" arising out of the use or operation of a covered "auto".

3. If an "insured" is entitled to Personal Injury Protection benefits under more than one policy, the maximum recovery under all policies combined will not exceed the amount payable under the policy with the highest dollar limit of benefits. Our share is the proportion that our Limit of Insurance bears to the total of all applicable limits covering on the same basis.

4. Personal Injury Protection benefits paid or payable under this Coverage Form or any other Coverage Form or policy providing auto insurance because of "bodily injury" sustained by an "insured" shall be primary to any Auto Medical Payments Coverage provided under this Coverage Form.

**Premium Recomputation**

The premium for this Policy is based on rates which have been established in reliance upon the limitations on the right to recover for damages imposed by the provisions of Title 31A, UTAH CODE ANNOTATED. If a court declares any of these provisions unenforceable, we have the right to recompute the premium, and the provisions of this endorsement are voidable or subject to amendment at our option.

**F. Additional Definitions**

As used in this endorsement:

1. "Auto" means every self-propelled vehicle which is designed for use upon a highway, including trailers and semitrailers designed for use with such vehicles, except traction engines, road rollers, farm tractors, tractor cranes, power shovels, and well drillers, and every vehicle which is propelled by electric power obtained from overhead wires but not operated on rails.

2. "Family member" means a person related to you by blood, marriage or adoption, including a ward or foster child, who is a resident of your household, whether or not temporarily residing elsewhere.

3. "Occupying" means being in or upon an "auto" as a passenger or operator or engaged in the immediate acts of entering, boarding or alighting from an "auto".

4. "Pedestrian" means any person not "occupying" or riding upon an "auto".

5. "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

POLICY NUMBER: ISA H25295304

Endorsement Number: 139

IL 02 19 06 15

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# VERMONT CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A. The Cancellation** Common Policy Condition is replaced by the following:

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

2. Cancellation Of Policies In Effect For Less Than 60 Days.

   If this Policy has been in effect for less than 60 days and this Policy is not a renewal of a policy we issued, we may cancel this Policy by:

   a. Giving at least 15 days' notice prior to the cancellation date for nonpayment of premium or substantial increase in hazard; or

   b. Mailing or delivering at least 45 days' notice prior to the cancellation date for any other reason.

   Written notice of cancellation, including the reason for cancellation, will be mailed or delivered to the first Named Insured at the first Named Insured's last mailing address known to us.

If cancellation is for nonpayment of premium, written notice may be sent by certificate of mailing or certified mail. If cancellation is for any reason other than nonpayment of premium, written notice must be sent by certified mail.

3. Cancellation Of Policies In Effect For 60 Days Or More.

   If this Policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel this Policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. Fraud or material misrepresentation affecting this Policy or in the presentation of claims under this Policy;

   c. Violation of any provisions of this Policy; or

   d. Substantial increase in hazard, provided we have secured approval for the cancellation from the commissioner of insurance.

   If we cancel this Policy for one of the reasons specified in Paragraph 3., we will cancel only in the following manner:

   a. By giving at least 15 days' notice before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. By mailing or delivering at least 45 days' notice before the effective date of cancellation if we cancel for any other reason.

Written notice of cancellation, including the reason for cancellation, will be mailed or delivered to the first Named Insured at the first Named Insured's last mailing address known to us.

If cancellation is for nonpayment of premium, written notice may be sent by certificate of mailing or certified mail. If cancellation is for any reason other than nonpayment of premium, written notice must be sent by certified mail.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** Any **When We Do Not Renew** Condition is deleted.

The following conditions are added:

1. **When We Do Not Renew**

   a. We may elect not to renew this Policy by mailing, by certified mail, or delivering written notice of nonrenewal to the first Named Insured's last mailing address known to us. We will mail or deliver this notice at least 45 days before the:

      (1) Expiration of the Policy; or

      (2) Anniversary date of this Policy if this Policy has been written for a term of more than one year.

   b. This provision does not apply:

      (1) If we have indicated a willingness to renew;

      (2) In case of nonpayment of premium;

      (3) If you do not pay any advance premium required by us for renewal; or

      (4) If any property covered in this Policy is insured under any other insurance policy.

2. **Renewal**

   a. If we:

      (1) Elect to renew this Policy; and

      (2) Have the necessary information to issue a renewal policy,

      we will confirm in writing at least 45 days before it expires our intention to renew this Policy; and the premium at which this Policy will be renewed.

   b. If we do not comply with the provisions of Paragraph **a.**, you will have renewal coverage. The renewal coverage will be at the rates:

      (1) In effect under the expiring or expired policy; or

      (2) In effect on the expiration date, that have been approved by the Commissioner,

      whichever are lower.

      This renewal coverage will be on a pro rata basis and will continue for 45 days after we confirm renewal coverage and premium. If you accept this renewal policy, this Paragraph b. does not apply.

© Insurance Services Office, Inc., 2014

© Insurance Services Office, Inc., 2014

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 140

**COMMERCIAL AUTO**
**CA 01 29 10 13**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# VERMONT CHANGES IN BUSINESS AUTO AND MOTOR CARRIER COVERAGE FORMS

For a covered "auto" licensed or garaged in Vermont, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

The following is added to the **Limit Of Insurance** provision:

If judgment is rendered against you and we continue the "suit" by appeal or otherwise, no limitation of liability in this policy shall be valid unless you agree to such continuation.

**B. Changes In Conditions**

1. The following is added to the **Legal Action Against Us** Condition:

   Under Covered Autos Liability Coverage, payment of any judicial judgment or claim by you for any of our liability in this policy shall not bar you from any action or right of action against us.

However, your right to bring legal action against us is not conditioned upon your compliance with the provisions of the Appraisal For Physical Damage Loss Condition.

2. The **Cancellation Common Policy Condition** is amended by the addition of the following:

   We may cancel the policy as allowed by the Cancellation Common Policy Condition.

   Cancellation ends this agreement as to the loss payee's interest. If we cancel this policy, we will:

   a. Mail you and the loss payee named in the policy the same advance notice; and

   b. Use the same method of mailing to notify you and the loss payee named in the policy.

CA 01 29 10 13

© Insurance Services Office, Inc., 2012

Page 1 of 1

Exhibit B

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 141

**COMMERCIAL AUTO**
**CA 01 85 10 13**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# VERMONT CHANGES IN BUSINESS AUTO AND MOTOR CARRIER COVERAGE FORMS – POLLUTION

For a covered "auto" licensed or garaged in Vermont, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Paragraph **A. Coverage** is replaced by the following:

   **A. Coverage**

   We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

   We have the right and duty to defend any "insured" against a "suit" asking for such damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

2. Exclusion **B.6. Care, Custody Or Control** is replaced by the following:

   **6. Care, Custody Or Control**

   "Property damage" to property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

3. Exclusion **B.11. Pollution** does not apply.

4. Paragraph **C. Limit Of Insurance** is replaced by the following:

   **C. Limit Of Insurance**

   Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

   All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

   No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Auto Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

CA 01 85 10 13

© Insurance Services Office, Inc., 2012

Page 1 of 2

Exhibit B

**B. Changes In Conditions**

For the purposes of the coverage provided by this endorsement, the conditions are amended as follows:

Paragraph **b.(2)** of the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition is replaced by the following:

(2) Immediately send us copies of any demand, notice, summons or legal paper received concerning the claim or "suit".

**C. Changes In Definitions**

1. The "covered pollution cost or expense" definition and the definition of "pollutants" do not apply.

2. As used in this endorsement:

"Suit" means a civil proceeding in which damages because of "bodily injury" or "property damage", to which this insurance applies, are alleged.

"Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 142

**COMMERCIAL AUTO**
**CA 21 63 10 16**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VERMONT UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Vermont, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| | |
|---|---|
| Named Insured: Medtronic plc | |
| Endorsement Effective Date: | |

**SCHEDULE**

| Limit Of Insurance | | |
|---|---|---|
| Bodily Injury: | $ See DA40002 | Each "Accident" |
| Property Damage: | $10,000 | Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured", or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle", we will pay under the coverage selected under this endorsement only if Paragraph **a.** or **b.** below applies:

a. The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or

b. A tentative settlement has been made between an "insured" and the insurer of the vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" and we:

(1) Have been given prompt written notice of such tentative settlement; and

(2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

---

Page 2 of 2      © Insurance Services Office, Inc., 2012      CA 01 85 10 13

Exhibit B

CA 21 63 10 16      © Insurance Services Office, Inc., 2016      Page 1 of 4

Exhibit B

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone else for "bodily injury" while "occupying" an "auto" the Named Insured does not own who is an "insured" for Covered Autos Liability under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability under the Coverage Form.

   d. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone else for "bodily injury" while "occupying" an "auto" the Named Insured does not own who is an "insured" for Covered Autos Liability under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability under the Coverage Form.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

   d. The Named Insured for "property damage" only.

**C. Exclusions**

This insurance does not apply to any of the following:

1. Any claim settled by the "insured" or any legal representative of the "insured" with the owner or driver of an "uninsured motor vehicle" without our consent, if the settlement prejudices our right to recover payments. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" in accordance with the procedure described in Paragraph A.2.b.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. The direct or indirect benefit of any insurer of property.

4. Damage to:

   a. Any vehicle; or

   b. Any property contained in or struck by any vehicle owned by the Named Insured or, if the Named Insured is an individual, any "family member" which is not a covered "auto".

5. The first $150 of the amount of each claim for "property damage" sustained by an "insured" in any one "accident". This deductible applies only to direct physical damage to:

   a. A covered "auto"; or

   b. The property of an "insured".

   However, this exclusion does not apply if there is valid and collectible "auto" physical damage coverage applicable to that damage under this or any other policy.

6. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

7. "Property damage" for which the "insured" has been compensated by other personal or physical damage coverage, including any physical damage coverage under this Policy.

8. Punitive or exemplary damages.

9. "Bodily injury" or "property damage" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident":

   a. For "bodily injury" is the limit of Uninsured Motorists Coverage shown in the Schedule or Declarations; and

   b. For "property damage" is $10,000 per claim.

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle", the Limit of Insurance shall be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

**E. Changes In Conditions**

The Conditions are changed for Uninsured Motorists Coverage as follows:

1. Other Insurance in the Auto Dealers and Business Auto Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form are changed by the addition of the following:

   a. The reference to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

   b. Any insurance we provide with respect to a vehicle owned by the Named Insured or, if the Named Insured is an individual, any "family member", that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form, shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

2. Duties In The Event Of Accident, Claim, Suit Or Loss in the Business Auto and Motor Carrier Coverage Forms and Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions in the Auto Dealers Coverage Form are changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved; and

   b. Promptly send us copies of the legal papers if a "suit" is brought.

c. A person seeking coverage from an insurer, owner or operator of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such vehicle.

3. Transfer Of Rights Of Recovery Against Others To Us is changed by adding the following:

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

   We will be entitled to recovery only after the "insured" has been fully compensated for the "loss" or damage sustained.

   If the "insured" settles with or recovers against any person, any reimbursement due to us under this section shall be reduced by deducting a fair portion of all reasonable expenses of recovery incurred in effecting the settlement or recovery. The expenses of recovery shall be apportioned between the parties as their interests appear at the time of the settlement or recovery.

   Our rights do not apply under this provision with respect to damages caused by an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" if we:

   a. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle"; and

   b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

b. We also have a right to recover the advance payment.

4. The **Two Or More Coverage Forms Or Policies Issued By Us** Condition does not apply.

5. The following condition is added:

**Arbitration**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Property damage" means injury to or destruction of the property of an "insured".

4. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

a. For which no liability bond or policy applies at the time of an "accident";

b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of all liability bonds or policies at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged, but:

(1) That sum is less than the sum of the limits of this coverage applicable to the "insured"; or

(2) The available liability insurance has been reduced by payments to others injured in the "accident" to an amount which is less than the limits of this coverage applicable to the "insured";

c. For which an insuring or bonding company denies coverage or is or becomes insolvent within one year of the date of the "accident"; or

d. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must:

(1) Hit an "insured", a covered "auto", a vehicle an "insured" is "occupying" or the property of an "insured"; or

(2) Cause an "accident" resulting in "bodily injury" to an "insured" or "property damage" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying". We will only accept competent evidence which may include the testimony, under oath, of a person making claim under this or any similar coverage.

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or who becomes insolvent and cannot provide the amounts required by that motor vehicle law;

b. Owned by a governmental unit or agency while being used within the scope of permission of that governmental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 143

**COMMERCIAL AUTO**
**CA 01 16 02 18**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES – BUSINESS AUTO COVERAGE FORM

For a covered "auto" licensed or principally garaged in Virginia, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraph **A. Coverage** of Section II – Covered Autos Liability Coverage is replaced by the following:

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We have the right and duty to defend any "suit" for such damages, even if the "suit" is groundless, false or fraudulent. However, we have no duty to defend "suits" for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**B.** Paragraph **A.1.b.** of Section II – Covered Autos Liability Coverage is amended by the addition of the following:

**1. Who Is An Insured**

The following are "insureds":

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(6) Your customers, if you are in the motor vehicle business. However, if a customer of yours:

(a) Has no other valid and collectible insurance applicable to the same "accident", they are an "insured" but only up to the financial responsibility limits specified in Section 46.2-472 of the Code of Virginia.

(b) Has other valid and collectible insurance applicable to the same "accident" less than the financial responsibility limits specified in Section 46.2-472, they are an "insured" only for the amount by which the financial responsibility law limits exceed the limits of their other insurance.

Motor vehicle business means the business of selling, leasing, repairing, servicing, storing or parking motor vehicles which are:

(a) Used for demonstration purposes by a prospective purchaser;

(b) Loaned or leased to another as a temporary substitute while such person's "auto" is being repaired or serviced; or

(c) Leased to another for a period of six months or more.

**C.** Paragraph **A.2. Coverage Extensions** of Section II – Covered Autos Liability Coverage is amended as follows:

1. Paragraphs **a.(3)**, **a.(5)** and **a.(6)** of **Supplementary Payments** are replaced by the following:

We will pay for the "insured":

(3) The cost of bonds to release attachments in any "suit" we defend, but only for bond amounts within our Limit of Insurance.

---

(5) All court costs taxed against the "insured" in any "suit" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

(6) All interest on the full amount of any judgment that accrues after entry of judgment in any "suit" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

**2. Paragraph a. Supplementary Payments** is amended by the addition of the following:

We will pay for the "insured":

(7) Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**D. Paragraph A.2.b.(1) of Section II -- Covered Autos Liability Coverage** is replaced by the following:

**2. Coverage Extensions**

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

(1) Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used.

**E. Paragraph B. Exclusions of Section II – Covered Autos Liability Coverage** is amended as follows:

**1. Paragraph B.4. Employee Indemnification And Employer's Liability Exclusion** is replaced by the following:

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of employment by the "insured"; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract".

**2. Paragraph B.5. Fellow Employee Exclusion** is deleted.

**3. Paragraph B.6. Care, Custody Or Control Exclusion** is replaced by the following:

"Property damage" to property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**4. Paragraph B.11. Pollution Exclusion** is replaced by the following:

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants". This exclusion does not apply if the discharge is sudden and accidental.

**5. Paragraph B.12. War Exclusion** is replaced by the following:

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**F. Paragraph C. Limit Of Insurance of Section II – Covered Autos Liability Coverage** is replaced by the following:

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

**2.** We will apply the limit shown in the Declarations to first provide the separate limits required by Virginia law as follows:

a. $25,000 for "bodily injury" to any one person caused by any one "accident"; and

b. Subject to 2.a. above, $50,000 for "bodily injury" to two or more persons caused by any one "accident"; and

c. $20,000 for "property damage" caused by any one "accident".

This provision will not change the Limit of Insurance.

**G. The Business Auto Conditions of Section IV** are amended as follows:

**1. Paragraph A.2.b.(3) of the Duties In The Event Of Accident, Claim, Suit Or Loss Condition** is replaced by the following:

b. Additionally, you and any other involved "insured" must:

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit". The "insured" will be deemed not to have cooperated with us only if his or her failure or refusal to do so harms our defense of an action for damages.

**2. Paragraph A.2.c. of the Duties In The Event Of Accident, Claim, Suit Or Loss Condition** is replaced by the following:

c. If there is a "loss" to a covered "auto" or its equipment, you must also do the following, but only with respect to a Physical Damage claim:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Do what is reasonably necessary to protect the covered "auto" from further damage. Also keep a record of your expenses for payment in the settlement claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Paragraph A.4. of the Loss Payment – Physical Damage Coverage Condition** is replaced by the following:

At our option, we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include:

(1) The applicable sales and use tax for the damaged or stolen property;

(2) Any applicable titling and license transfer fees incurred in obtaining a replacement vehicle in the event of a total "loss" to a covered "auto"; and

(3) Any applicable general average, salvage or disposal charges.

**4. Paragraph B.2. Concealment, Misrepresentation Or Fraud Condition** is replaced by the following:

Coverage for your claim under this Coverage Form is void in any case of fraud by you at any time as it relates to the Coverage Form. It is also void if you, at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

**5. Paragraph B.5.b. of the Other Insurance Condition** is replaced by the following:

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is deemed to be a covered "auto" you don't own.

**6. Paragraph B.6. Premium Audit Condition** is replaced by the following:

The estimated premium for this Coverage Form is based on the exposures you told us you would have when this Policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**7. Paragraph B.8. of the Two Or More Coverage Forms Or Policies Issued By Us Condition** is deleted.

8. **Paragraph B. General Conditions** is amended by the addition of the following:

In return for the payment of the premium, and subject to all the terms of this Policy, we agree with you to provide the insurance as stated in this Policy.

**H. Section V – Definitions** is amended as follows:

1. The "covered pollution cost or expense" definition is deleted.

2. Exceptions **b.** and **c.** to the "insured contract" definition are deleted.

3. The definition of "suit" is replaced by the following:

"Suit" means a civil proceeding in which damages because of "bodily injury" or "property damage", to which this insurance applies, are alleged.

"Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

**I. Changes in Endorsements**

1. All references to Auto Medical Payments are replaced in the endorsements by Medical Expense Benefits.

2. All references to personal injury protection (no-fault) and "covered pollution cost or expense" in any endorsement do not apply.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 144

**COMMERCIAL AUTO**
CA 02 68 02 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES IN POLICY – CANCELLATION AND NONRENEWAL

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Virginia, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** If you are an individual and a covered "auto" you own is of the private passenger type and not used in your occupation, profession or business, other than farming, and is not used as a public or livery conveyance including, but not limited to, any period of time a covered "auto" is being used by an insured ("insured") who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto"; and your business shown in the Declarations is not a garage, sales agency, repair shop, service station or public parking place, then the **Cancellation Common Policy Condition** does not apply. The following conditions apply instead:

1. **Cancellation**

a. You or your attorney-in-fact may cancel the Policy by returning to us or by mailing to us advance written notice of the date cancellation is to take effect.

b. We may cancel this Policy by mailing or delivering to the first Named Insured shown in the Declarations written notice of cancellation at least:

(1) 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 45 days before the effective date of cancellation if we cancel for any other reason.

c. When this Policy is in effect 60 days or more or is a renewal or continuation policy, we may only cancel for one or more of the following reasons:

(1) Nonpayment of premium.

(2) Your driver's license or that of a driver who lives with you or customarily uses the covered "auto" has been suspended or revoked during the policy period or, if the Policy is a renewal, during its policy period or the 90 days immediately preceding the last effective date.

(3) You or your attorney-in-fact has notified us that you have changed your legal residence to a state other than Virginia and your covered "auto" will be principally garaged in your new state.

(4) We replace this Policy with another one providing similar coverages and the same limits for the covered "auto". The replacement policy will take effect when this Policy is cancelled and will end a year after this Policy begins or on this Policy's expiration date, whichever is earlier.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

---

e. If this Policy is cancelled, you may be entitled to a premium refund. If so, we will send the first Named Insured the refund. However, making or offering to make the refund is not a condition of cancellation. If you or your attorney-in-fact cancels, the refund, if any, will be computed in accordance with the procedure described in Paragraph C. of this endorsement.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

**2. Nonrenewal**

a. If we decide not to renew or continue this Policy, we will mail the first Named Insured shown in the Declarations notice at least 45 days before the end of the policy period. If the Policy is written for a period of less than one year or without a fixed expiration date, we will have the right not to renew or continue a particular coverage only at the end of any six-month period following its original effective date.

b. If we or our agent offers to renew or continue this Policy and you or your attorney-in-fact does not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you or your attorney-in-fact has not accepted our offer.

**3. Mailing Of Notices**

a. Any notice of cancellation or nonrenewal will be mailed to the first Named Insured's last known address in accordance with Virginia Law. However, we may deliver any notice instead of mailing it.

b. The notice of cancellation or nonrenewal will state the specific reason(s) for cancellation or nonrenewal, except when a policy is being cancelled or nonrenewed for nonpayment of premium.

**B. For all other risks not described in Paragraph A. above:**

1. Paragraphs **1.** and **2.** of the **Cancellation** Common Policy Condition are replaced by the following:

a. You or your attorney-in-fact may cancel the Policy by mailing or delivering to us advance written notice of the date cancellation is to take effect.

b. We may cancel the Policy by mailing or delivering to the first Named Insured shown in the Declarations written notice of cancellation, stating the reason(s) for cancellation, at least:

(1) 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 45 days before the effective date of cancellation if we cancel for any other reason.

2. Paragraph **3.** of the **Cancellation** Common Policy Condition does not apply.

3. Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

5. If this Policy is cancelled, you may be entitled to a premium refund. If so, we will send the first Named Insured the refund. However, making or offering to make the refund is not a condition of cancellation. If you or your attorney-in-fact cancels, the refund, if any, will be computed in accordance with the procedure described in Paragraph C. of this endorsement.

4. The following conditions are added:

a. Nonrenewal

(1) We may nonrenew the Policy by mailing or delivering to the first Named Insured shown in the Declarations written notice of nonrenewal, stating the reason for nonrenewal, at least:

(a) 15 days before the expiration date of the Policy if we nonrenew for nonpayment of premium; or

(b) 45 days before the expiration date of the Policy if we nonrenew for any other reason.

(2) If we or our agent offers to renew or continue this Policy and you or your attorney-in-fact does not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you or your attorney-in-fact has not accepted our offer.

b. Mailing Of Notices

Any notice of cancellation or nonrenewal will be mailed to the first Named Insured's last known address in accordance with Virginia Law. However, we may deliver any notice instead of mailing it.

**C. The following provisions govern the calculation of return premium for all risks:**

1. We will compute return premium pro rata and round to the next higher whole dollar when a policy is cancelled:

a. At our request;

b. Because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

c. And rewritten by us or a member of our company group; or

d. After the first year, if it is a prepaid policy written for a term of more than one year.

2. When this Policy is cancelled at your request (except when Paragraph **1.b.**, **1.c.** or **1.d.** applies), we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multiyear prepaid policy, we will return the full annual premium for the subsequent years. In addition, earned premium will not be less than our policywriting minimum premium.

3. When this Policy is cancelled at your request and is an auto dealer's policy written on a reporting form basis, we will calculate the return or additional premium as follows:

a. Final annual premium will be determined on the basis of the average value reported during the period in which the Policy was in effect.

b. Pro rata earned premium will be determined based on the final annual premium for the number of days the Policy was in force, as determined by Paragraph **3.a.**, rounded to the next higher whole dollar.

c. Pro rata unearned premium will be determined by subtracting Paragraph **3.b.** from Paragraph **3.a.**

d. The short rate surcharge will be determined by multiplying the unearned premium by 10% and rounding to the next higher whole dollar.

e. Calculate the short rate earned premium by adding Paragraphs **3.b.** and **3.d.**

f. If the short rate earned premium is less than the sum of all payments (including any deposit premium), the difference is the return premium.

g. If the short rate earned premium is greater than the sum of all payments (including any deposit premium), the difference is the additional premium due.

However, earned premium will not be less than our policywriting minimum premium.

**D. Additional Definitions**

As used in this endorsement:

1. "Occupying" means in, upon, getting in, on, out or off.

2. "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

Exhibit B

Exhibit B

POLICY NUMBER: ISA H25295304      Endorsement Number: 145

**COMMERCIAL AUTO**
**CA 22 46 11 16**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA MEDICAL EXPENSE AND
# INCOME LOSS BENEFITS ENDORSEMENT

For a covered "auto" licensed or principally garaged in Virginia, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:** Medtronic plc | |
| **Endorsement Effective Date:** | |

## SCHEDULE

The insurance afforded by this endorsement is only for the coverage(s) indicated by a specific premium charge in the Declarations or in the Schedule.

| Coverages | Limit Of Insurance | | Premium |
|---|---|---|---|
| Section I Medical Expense Benefits | $5,000 | Each Person | $Included |
| Section II Income Loss Benefits | $100 Per Week Each Person | | $Included |
| | Total Premium | | $Included |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## SECTION I – MEDICAL EXPENSE BENEFITS

### A. Coverage

We will pay, in accordance with Section 38.2-2201 or 46.2-465 of the Virginia Code, to a covered injured person, "medical expense" benefits as a result of "bodily injury" caused by an "accident" and arising out of the ownership, maintenance or use of a motor vehicle as a motor vehicle.

### B. Exclusions

This insurance does not apply to "bodily injury":

1. Sustained by any person who intentionally injures himself or herself;

2. Sustained by any person to the extent that benefits for that injury are in whole or in part payable under any workers' compensation or similar law;

3. Sustained by the "named insured" or any "family member" while "occupying" any motor vehicle owned by or furnished or available for regular use by such "named insured" or any "family member" and that is not a "covered auto"; or

4. Due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to war.

### C. Limit Of Insurance

1. Regardless of the number of claims made or "covered autos" to which this insurance applies, the most we will pay for "medical expense" benefits to any "insured" who sustains "bodily injury" in any one "accident" is the Limit Of Insurance for "medical expense" benefits shown in the Schedule or Declarations.

2. No "insured" will be entitled to collect under "medical expense" Coverage, more than his or her actual "medical expenses" incurred within three years after the date of the "accident", from this or any other automobile insurance policy or combination of those policies providing "medical expense" insurance applicable to that "accident".

## SECTION II – INCOME LOSS BENEFITS

### A. Coverage

We will pay, in accordance with Section 38.2-2201 or 46.2-465 of the Virginia Code, to a covered injured person, "income loss" benefits as a result of "bodily injury" caused by an "accident" and arising out of the ownership, maintenance or use of a motor vehicle.

### B. Exclusions

Exclusions 1., 2., 3. and 4. under Section I of this endorsement apply to Section II.

### C. Limit Of Insurance

1. Regardless of the number of claims made or "covered autos" to which this insurance applies, the most we will pay for "Income Loss" Benefits to any "insured" who sustains "bodily injury" in any one "accident" is the Limit Of Insurance shown in the Schedule or Declarations from the first work day lost as a result of the "accident" up to the date that the "insured" is able to return to his or her usual occupation or the date of death of that "insured", whichever occurs first.

2. No "insured" will be entitled to collect more than his or her actual "income loss" sustained within one year after the date of the "accident", from this or any other automobile insurance policy or combination of those policies providing "income loss" benefits insurance applicable to that "accident".

## SECTION III – CONDITIONS

The following Conditions are applicable to both Sections I and II, except as noted:

### 1. Notice

In the event of an "accident", written notice containing particulars sufficient to identify the "insured", and also reasonably obtainable information respecting the time, place and circumstances of the "accident" must be given by or on behalf of the "insured" to us or our legal representatives as soon as possible.

If an "insured" or his or her legal representative institutes legal action for damages for "bodily injury", he or she must promptly give us a copy of the summons and complaint or other process served in connection with the legal action.

### 2. Legal Action Against Us

No one may bring a legal action against us until there has been full compliance with all the terms of this endorsement.

### 3. Medical Reports; Proof Of Claim

As soon as practicable, the "insured" or someone on his or her behalf must give us written proof of claim, under oath if required, including full particulars of the nature and extent of injuries and treatment received or contemplated. He or she must also furnish us with any other information that may assist us in determining the amount due and payable. The "insured" must submit to physical examinations, at our expense, by physicians we select when and as often as we may require.

The "insured", or in the event of his or her incapacity or death, his or her legal representative, shall upon each of our requests, execute authorization to enable us to obtain medical reports, copies of records and information with respect to loss of income. We may require that the "insured", as a condition for receiving "income loss" benefits, cooperate in furnishing us reasonable medical proof of his or her inability to work.

### 4. Transfer Of Rights Of Recovery Against Others To Us

With respect to Section II only, if any person or organization to or for whom we make payment for "income loss" benefits under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

POLICY NUMBER:  ISA H25295304

Endorsement Number:  146

**SECTION IV – DEFINITIONS**

As used in this endorsement:

1. "Covered auto" means a motor vehicle with respect to which:

   **a.** The "named insured" is the owner;

   **b.** The "bodily injury" liability or "property damage" liability coverage of the Coverage Form applies; and

   **c.** The insurance provided under this endorsement applies and for which a specific premium has been charged.

2. "Family member" means a person related to the "named insured" by blood, marriage or adoption who is a resident of the "named insured's" household, including a ward or foster child.

3. "Income loss" means an amount equal to the loss of income incurred by an "insured", usually engaged in a remunerative occupation, within one year after the date of the "accident", and as a result of disability caused by the "accident".

4. "Insured" means:

   **a.** The "named insured" or any "family member" who sustains "bodily injury" while "occupying" a motor vehicle, or if struck by a motor vehicle while not "occupying" a motor vehicle; or

   **b.** Any other person who sustains "bodily injury" while "occupying" a "covered auto".

5. "Medical expense" means all reasonable and necessary expenses for medical, chiropractic, hospital, x-ray, professional nursing, dental, surgical, prosthetic and rehabilitation services, services provided by an emergency medical services vehicle as defined in Section 32.1-111.1 of the Virginia Code, and funeral expenses, incurred within three years after the date of the "accident".

6. "Named insured" means the individual or organization designated in the Schedule of this endorsement and if not designated therein, means the individual or organization named in Item 1. of the Declarations of the Policy.

7. "Occupying" means is, upon, getting in, on, out of, off or using.

**SECTION V – MEDICAL EXPENSE AND INCOME LOSS BENEFITS – INDIVIDUAL NAMED INSURED**

If "you" are an individual and a "covered auto" "you" own is of the private passenger type ("private passenger type"), the provisions of this endorsement apply, except that Paragraph **C. Limit Of Insurance** of Section I and II of this endorsement are replaced by the following:

**C. Limit Of Insurance**

Regardless of the number of "covered autos", "insureds" or claims made, the most we will pay for "bodily injury" for each "insured" injured in any one "accident" shall be determined as follows:

1. If there is only one "covered auto" of the private passenger type ("private passenger type"), the most we will pay is the limit of Medical Expenses and "Income Loss" Benefits shown in the Schedule or Declarations.

2. If there is more than one "covered auto" of the private passenger type ("private passenger type"), our limit of liability is the sum of the highest limits applicable to covered "autos" of the private passenger type ("private passenger type"), subject to a maximum of four such "autos".

COMMERCIAL AUTO
CA 01 35 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WASHINGTON CHANGES

For a covered "auto" licensed or principally garaged in, or for "auto dealer operations" conducted in, Washington, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

The **Employee Indemnification And Employer's Liability Exclusion** applies only to "bodily injury" to any "employee" of the "insured" whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to "bodily injury" to "employees" of the "insured" whose employment is subject to the Industrial Insurance Act of Washington, the **Employee Indemnification And Employer's Liability Exclusion** is replaced by the following:

**Employee Indemnification And Employer's Liability**

This insurance does not apply to "bodily injury" to:

   **a.** An "employee" of the "insured" arising out of and in the course of:

   **(1)** Employment by the "insured"; or

   **(2)** Performing duties related to the conduct of the "insured's" business; or

   **b.** Any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". A domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**B. Changes In Physical Damage Coverage**

1. The lead-in to Paragraph B.1. in the Business Auto and Motor Carrier Coverage Forms and Paragraph F.3.a. in the Auto Dealers Coverage Form is replaced by the following:

   We will not pay for "loss" caused directly or indirectly by any of the following:

2. The **Limit Of Insurance** provision with respect to repair or replacement resulting in better than like kind or quality is replaced by the following and supersedes any provision to the contrary:

   We may deduct for betterment for parts normally subject to repair and replacement during the useful life of the "auto". In this event, deductions shall be limited to the lesser of:

   **a.** An amount equal to the proportion that the expired life of the part to be repaired or replaced bears to the normal useful life of that part; or

   **b.** The amount by which the resale value of the "auto" is increased from the repair or replacement.

3. The following is added to the **Limit Of Insurance** provision:

   We will not pay for a "loss" which is paid under Underinsured Motorists Coverage.

**C. Changes In Garagekeepers Coverage**

If Garagekeepers Coverage in the Auto Dealers Coverage Form is selected or if the Garagekeepers Coverage endorsement or the Garagekeepers Coverage – Customers' Sound Receiving Equipment endorsement is attached, then the exclusion which refers to declared or undeclared war or insurrection is replaced by the following:

We will not pay for "loss" arising directly or indirectly out of the following:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Changes In General Liability Coverages**

With respect to the Auto Dealers Coverage Form:

1. Exclusion 2.d. **Employee Indemnification And Employer's Liability** under Paragraph A. **Bodily Injury And Property Damage Liability** applies only to "bodily injury" to any "employee" of the "insured" whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

2. With respect to "bodily injury" to "employees" of the "insured" whose employment is subject to the Industrial Insurance Act of Washington, Exclusion 2.d. **Employee Indemnification And Employer's Liability** under Paragraph A. **Bodily Injury And Property Damage Liability** is replaced with the following:

d. **Employee Indemnification And Employer's Liability Exclusion**

This insurance does not apply to "bodily injury" to:

(1) An "employee" of the "insured" arising out of and in the course of:

(a) Employment by the "insured"; or

(b) Performing duties related to the conduct of the "insured's" business; or

(2) Any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the "insured" under an "insured contract".

3. Paragraphs 5.a.(1), (2) and (3) of the **Who Is An Insured** provision apply only to "employees" of the "insured" whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

4. With respect to "employees" of the "insured" whose employment is subject to the Industrial Insurance Act of Washington, Paragraph 5.a. of the **Who Is An Insured** provision is replaced by the following:

a. "Bodily injury" or "personal and advertising injury":

(1) To you (if you are an individual), your partners (if you are a partnership), your members (if you are a limited liability company) or a fellow "employee" of the "insured" while in the course of his or her employment or while performing duties related to the conduct of your "auto dealer operations";

(2) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1) above; or

(3) Arising out of his or her providing or failing to provide professional health care services.

**E. Changes In Conditions**

1. The **Appraisal For Physical Damage Loss** Condition is replaced by the following:

**Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

Neither we nor you shall be held to have waived any rights by any act relating to appraisal.

2. The **Transfer Of Rights Of Recovery Against Others To Us** Condition is replaced by the following:

**Transfer Of Rights Of Recovery Against Others To Us**

a. If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us for that payment. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

b. We are entitled to a recovery only after the person or organization has been fully compensated for damages by another party.

3. The following is added to the **Legal Action Against Us** Condition:

If this action is brought pursuant to Sec. 3 of RCW 48.30, then 20 days prior to filing such an action, you are required to provide written notice of the basis for the cause of action to us and the Office of the Insurance Commissioner. Such notice may be sent by regular mail, registered mail, or certified mail with return receipt requested.

POLICY NUMBER: ISA H25295304                    Endorsement Number: 147

IL 01 23 11 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WASHINGTON CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDER'S ERRORS AND OMISSIONS
COVERAGE FORM
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

1. Section I of the Commercial General Liability, Commercial Liability Umbrella, Electronic Data Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

2. Section II under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

3. Section III under the Auto Dealers and Motor Carrier Coverage Forms;

4. Section A. Coverage under the Legal Liability Coverage Form; and

5. Coverage C – Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form.

Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

IL 01 23 11 13            © Insurance Services Office, Inc., 2013            Page 1 of 1

Exhibit B

---

POLICY NUMBER: ISA H25295304                    Endorsement Number: 148

COMMERCIAL AUTO
CA 99 68 11 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WEST VIRGINIA AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred for services rendered within three years from the date of the "accident".

**B. Who Is An Insured**

1. You while "occupying" any "auto".

2. If you are an individual, any "family member" while "occupying" any "auto".

3. You or any "family member" while a pedestrian when struck by any "auto". This includes an "auto" which causes "bodily injury" without hitting an "insured", provided the facts of the "accident" can be proven by sufficient independent corroborative evidence, other than the testimony of the "insured" making a claim under this or similar coverage.

4. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers ' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises. If your "employee" is entitled to workers' compensation benefits, then this Exclusion C.4. does not apply to any amount recovered through subrogation from such "employee" by your workers' compensation insurer with respect to the Auto Medical Payments Coverage provided under this endorsement.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

CA 99 68 11 13            © Insurance Services Office, Inc., 2013            Page 1 of 2

Exhibit B

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

**D. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage form, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

**E. Changes In Conditions**

The Conditions are changed for Auto Medical Payments Coverage as follows:

1. The **Transfer Of Rights Of Recovery Against Others To Us** Condition does not apply.

2. The reference in **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption, who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

---

POLICY NUMBER: ISA H25295304     Endorsement Number: 149

**COMMERCIAL AUTO**
CA 01 83 01 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WEST VIRGINIA CHANGES

For a covered "auto" licensed or principally garaged in West Virginia, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

The **Expected Or Intended Injury** Exclusion is replaced by the following:

1. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". However, this exclusion does not apply for amounts up to the limits of liability required by the West Virginia Safety Responsibility Law.

**B. Changes In Physical Damage Coverage**

The **Appraisal For Physical Damage Loss** Condition is replaced by the following:

1. **Appraisal For Physical Damage**

If you and we disagree on the amount of "loss", either may demand, in writing, an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select a competent and impartial umpire. If the appraisers cannot agree upon an umpire within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A written decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**C. Changes In Conditions**

The following is added to the **Other Insurance** Condition in the Business Auto Coverage Form and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form:

When this Coverage Form and any other Coverage Form or policy providing liability coverage apply to an "auto" and:

1. One provides coverage to an "insured" engaged in the business of leasing or renting "autos";

2. The other provides coverage to a person not engaged in that business; and

3. At the time of an "accident", a person covered by a Coverage Form described in Paragraph **C.2.** is operating an "auto" rented or leased from the business covered by a Coverage Form described in Paragraph **C.1.**;

then the Coverage Form issued to a business described in **C.1.** is excess over any coverage available to the person described in Paragraph **C.2.**

However, if the person described in **C.2.** purchased liability coverage from a business described in **C.1.**, then such coverage will be primary and any Coverage Form issued to the person described in **C.2.** shall be excess.

POLICY NUMBER: ISA H25295304

Endorsement Number: 150

**COMMERCIAL AUTO**
CA 01 89 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WEST VIRGINIA CHANGES – COVERAGE EXTENSION FOR TEMPORARY SUBSTITUTE AUTOS

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, West Virginia, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: Medtronic plc |
|---|
| Endorsement Effective Date: |

### SCHEDULE OF COVERAGES

Enter an "X" in one or more of the following check boxes if at least one "auto" is provided that coverage under the Coverage Form. However, if Comprehensive Physical Damage Coverage and Specified Causes Of Loss Coverage are provided separately by the Coverage Form on at least one covered "auto", then enter an "X" in the check box that provides Comprehensive Physical Damage Coverage.

#### COVERAGE

☐ If an "X" is entered in this check box, this endorsement provides Covered Autos Liability Coverage for a "temporary substitute auto".

☐ If an "X" is entered in this check box, this endorsement provides Comprehensive Physical Damage Coverage for a "temporary substitute auto".

☐ If an "X" is entered in this check box, this endorsement provides Collision Physical Damage Coverage for a "temporary substitute auto".

☐ If an "X" is entered in this check box, this endorsement provides Specified Causes Of Loss Coverage for a "temporary substitute auto".

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

Any "temporary substitute auto" that is loaned to the named insured will be considered a covered "auto" only for those coverages where an "X" is entered in the check box in the Schedule of Coverages. However, if Comprehensive Physical Damage Coverage and Specified Causes Of Loss Coverage are provided separately by the Coverage Form on at least one covered "auto", then any "temporary substitute auto" will be considered a covered "auto" for Comprehensive Physical Damage Coverage.

**B. Changes In Exclusions**

The Care, Custody Or Control Exclusion under Covered Autos Liability Coverage does not apply to a "temporary substitute auto". However, this exclusion does apply to contents in a "temporary substitute auto".

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we pay for each coverage designated in the Schedule of Coverages is the Limit Of Insurance for that coverage shown in the Declarations.

If both Covered Autos Liability and Physical Damage coverages are provided by this Coverage Form, any amount payable for damage to a "temporary substitute auto" under this Coverage Form's Covered Autos Liability Coverage shall be reduced by all sums paid for the same damages under this Coverage Form's Physical Damage Coverage.

No one will be entitled to receive duplicate payments for the same elements of "loss".

**D. Changes In Conditions**

The Other Insurance Condition in the Auto Dealers and Business Auto Coverage Forms and the Other Insurance – Primary And Excess Insurance Provisions Condition in the Motor Carrier Coverage Form are changed by adding the following:

When this Coverage Form and any other Coverage Form or policy apply and:

1. One provides coverage to an "insured" engaged in the business of selling, leasing, repairing or servicing "autos"; and

2. The other provides coverage to a person not engaged in that business; and

3. At the time of an "accident" a person covered by a Coverage Form described in Paragraph **D.2.** is operating an auto provided by the business covered by a Coverage Form described in Paragraph **D.1.** as a "temporary substitute auto",

then the Coverage Form issued to a business described in Paragraph **D.1.** is excess over any coverage available to the person described in Paragraph **D.2.**

**E.** As used in this endorsement:

"Temporary substitute auto" means any "auto" you do not own while used with the permission of its owner, who is engaged in the business of selling, leasing, repairing or servicing "autos" while such "auto" is used as a temporary replacement for a covered "auto" you own that is out of use because of its:

1. Breakdown,

2. Repair, or

3. Servicing.

POLICY NUMBER: ISA H25295304

Endorsement Number: 151

**COMMERCIAL AUTO**
CA 02 52 09 17

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WEST VIRGINIA CHANGES – NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following is added and supersedes any provision to the contrary:

**Nonrenewal**

1. If we decide not to renew or continue this Policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice at least 45 days before the end of the Policy.

2. For policies that have been in effect for two consecutive years or longer, we will have the right not to renew or continue this Policy if the reason or reasons for the nonrenewal are not prohibited by the provisions of Section 33-6A-4 of the West Virginia Statutes.

3. If we fail to mail or deliver proper written notice of nonrenewal and you obtain other insurance, this Policy will end on the effective date of that insurance.

4. Any notice of nonrenewal will be mailed or delivered to your last known address. If notice is mailed, proof of mailing will be sufficient proof of notice.

CA 02 52 09 17

© Insurance Services Office, Inc., 2017

Page 1 of 1

Exhibit B

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 152

**COMMERCIAL AUTO**
CA 21 22 11 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WEST VIRGINIA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or for "auto dealer operations" conducted in, West Virginia, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| Named Insured: Medtronic plc |
| --- |
| Endorsement Effective Date: |

**SCHEDULE**

| Coverage | Limit Of Insurance | |
| --- | --- | --- |
| Uninsured Motorists Coverage: | $ See DA40002 | Each "Accident" |
| Underinsured Motorists Coverage: | $ See DA40002 | Each "Accident" |

The definitions of "uninsured motor vehicle" and "underinsured motor vehicle" apply unless an "X" is entered below:

☐ If an "X" is entered in this box, only the definition of "uninsured motor vehicle" applies.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured" or "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured" or "underinsured motor vehicle".

2. With respect to damages resulting from an "underinsured motor vehicle", we will pay under this coverage only if a. or b. below applies:

   a. The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle", and we:

      (1) Have been given prompt written notice of such tentative settlement; and

CA 21 22 11 13

© Insurance Services Office, Inc., 2013

Page 1 of 4

Exhibit B

**(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

**1.** An individual, then the following are "insureds":

**a.** The Named Insured and any "family members".

**b.** Anyone else "occupying" or using a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

**a.** Anyone "occupying" or using a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**c.** The Named Insured for "property damage" only.

## C. Exclusions

This insurance does not apply to any of the following:

**1.** Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of an "underinsured motor vehicle", in accordance with the procedure described in Paragraph A.2.b.

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** The direct or indirect benefit of any insurer of property.

**4.** The first $300 of the amount of "property damage" to the property of each "insured" as a result of any one "accident" caused by an "uninsured motor vehicle".

**5.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**6.** Punitive or exemplary damages.

**7.** "Bodily injury" or "property damage" if that "bodily injury" or "property damage" is sustained by:

**a.** An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" under this Coverage Form.

**b.** Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" under this Coverage Form.

**c.** Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

However, with respect to Uninsured Motorists Coverage, this Exclusion **7.** applies only to the extent that the limits of liability of this coverage exceed the statutory minimum amount of Uninsured Motorists Coverage.

**8.** "Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured or Underinsured Motorists Coverage shown in the Schedule.

**2.** In no event will an "insured" be entitled to receive duplicate payment for the same elements of "loss".

## E. Changes In Conditions

The **Conditions** of the Policy are changed for Uninsured And Underinsured Motorists Coverage as follows:

**1. Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance -- Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

**a.** Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured or underinsured motorists insurance providing coverage on a primary basis.

**b.** If the coverage under this Coverage Form is provided:

**(1)** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

**(2)** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

**a.** If physically able, promptly notify the police if a hit-and-run driver is involved, unless the "accident" has already been investigated by the police; and

**b.** Promptly send us copies of the legal papers if a suit is brought.

A person seeking Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

**3. Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

We shall be entitled to recovery only after the "insured" has been fully compensated for damages.

Our rights do not apply under this provision with respect to Underinsured Motorists Coverage if we:

**a.** Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

**b.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**a.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

**b.** We also have a right to recover the advanced payment.

We do not have a right of recovery against anyone who has a liability bond or policy which is in whole or part uncollectible because the insuring or bonding company is or becomes insolvent or has been placed in receivership.

**4. Two Or More Coverage Forms Or Policies Issued By Us** does not apply.

## F. Additional Definitions

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Property damage" means injury or destruction of:

   a. A covered "auto";

   b. Property contained in the covered "auto"; or

   c. Any other property (except an "auto") owned by an "insured" and located in West Virginia.

4. "Uninsured motor vehicle" means a land vehicle or "trailer":

   a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the West Virginia Motor Vehicle Safety Responsibility Law;

   b. For which an insuring or bonding company legally denies coverage or its bond or policy is in whole or part uncollectible because the company is or becomes insolvent or has been placed in receivership; or

   c. For which neither the driver nor owner is identifiable. The vehicle or "trailer" must either:

      (1) Hit an "insured", an "insured's" property, a covered "auto" or a vehicle an "insured" is "occupying"; or

      (2) Cause "bodily injury" to an "insured" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

The facts of the "accident" must be proven by sufficient independent corroborative evidence, other than the testimony of the "insured" making a claim under this or similar coverage.

However, "uninsured motor vehicle" does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by the motor vehicle law; or

   b. Designed for use mainly off public roads while not on public roads.

5. "Underinsured motor vehicle" means a land motor vehicle or "trailer" to which a liability bond or policy applies at the time of the "accident" but the amount paid for "bodily injury" or "property damage" to an "insured" under that bond or policy is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law; or

   b. Designed for use mainly off public roads while not on public roads.

---

POLICY NUMBER:  ISA H25295304                                    Endorsement Number: 153

COMMERCIAL AUTO
CA 99 24 10 13

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WISCONSIN AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical, chiropractic and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred for services rendered within three years from the date of the "accident".

**B. Who Is An Insured**

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

4. Anyone else "occupying" an "auto" you do not own who is an "insured" for liability under the Coverage Form, but only at times when that person is an "insured" for liability under the Coverage Form.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

**D. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

**E. Changes In Conditions**

The reference in Other Insurance in the Auto Dealers and Business Auto Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

Exhibit B

---

POLICY NUMBER:  ISA H25295304                                                                 Endorsement Number:  154

**COMMERCIAL AUTO**
CA 01 17 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WISCONSIN CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Wisconsin, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. If your business is other than selling, servicing, repairing or parking "autos", **Who Is An Insured** is changed to include an officer, agent or "employee" of such business while using a covered "auto". However, that person is an "insured" only if he or she has no other valid and collectible insurance with at least the applicable minimum limit specified in WIS. STAT. ch. 344. In this event, coverage will be provided only up to the applicable minimum limit specified in WIS. STAT. ch. 344. The applicable minimum limit is:

    a. $60,000 for each "accident" for "bodily injury" and "property damage", if the limit of liability is a single limit that applies for each "accident"; or

    b. $25,000 for each person/$50,000 for each "accident" for "bodily injury"/$10,000 for "property damage", if the limit of liability is indicated as a split limit.

2. If your business is selling, servicing, repairing or parking "autos", **Who Is An Insured** is changed to include anyone other than an officer, agent or "employee" of such business while using a covered "auto". However, that person is an "insured" only if he or she has no other valid and collectible insurance with at least the applicable minimum limit specified in WIS. STAT. ch. 344. In this event, coverage will be provided only up to the applicable minimum limit specified in WIS. STAT. ch. 344. The applicable minimum limit is:

    a. $60,000 for each "accident" for "bodily injury" and "property damage", if the limit of liability is a single limit that applies for each "accident"; or

    b. $25,000 for each person/$50,000 for each "accident" for "bodily injury"/$10,000 for "property damage", if the limit of liability is indicated as a split limit.

Exhibit B

3. The following is added to **Who Is An Insured:**

Anyone else is an "insured" while using a covered "auto" you own with your or any adult "family member's" permission.

4. The **Auto Dealers Coverage Form** is changed as follows:

a. Paragraph **2.b.(4)(a)** of the **Who Is An Insured** provision is replaced by the following:

(a) Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to $60,000 for each "accident", which is the minimum combined single limit of liability specified in WIS. STAT. ch. 344.

b. Paragraph **2.b.(4)(b)** of the **Who Is An Insured** provision is replaced by the following:

(b) Has other available insurance (whether primary, excess or contingent), less than the applicable minimum limit for "bodily injury" or "property damage" liability specified in WIS. STAT. ch. 344, they are an "insured" only for the amount by which the applicable minimum limit of liability exceeds the limit of their other insurance. The applicable minimum limit is:

(i) $60,000 for each "accident" for "bodily injury" or "property damage", if the limit of liability is a single limit that applies for each "accident"; or

(ii) $25,000 for each person/$50,000 for each "accident" for "bodily injury"/$10,000 for "property damage", if the limit of liability is indicated as a split limit.

5. Paragraph **1.b.(4)** of the **Who Is An Insured** provision in the Motor Carrier Coverage Form does not apply.

6. The **Fellow Employee Exclusion** does not apply if the "bodily injury" results from the use of a covered "auto" you do not own or lease.

B. **Changes In Conditions**

1. The lead-in to the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition in the Business Auto and Motor Carrier Coverage Forms and the **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** Condition in the Auto Dealers Coverage Form is replaced by the following:

We have no duty to provide coverage under this policy if failure to comply with the following duties is prejudicial to us:

2. The first sentence of Paragraph **a.** in the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition in the Business Auto and Motor Carrier Coverage Forms is replaced by the following:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representatives notice as soon as reasonably possible of the "accident" or "loss".

3. The first sentence of Paragraph **a.** in the **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** Condition in the Auto Dealers Coverage Form is replaced by the following:

a. In the event of "accident", claim, "suit", offense, "loss" or "act, error or omission", you must give us or our authorized representatives notice as soon as reasonably possible of the "accident", offense, "loss" or "act, error or omission".

4. The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

We shall be entitled to a recovery only after the "insured" has been fully compensated for damages.

5. The **Legal Action Against Us** Condition does not apply.

6. The following is added to the **Concealment, Misrepresentation Or Fraud** Condition:

No oral or written statement, representation or warranty made by the "insured" or on his or her behalf in the negotiation for or procurement of this Coverage Form shall be deemed material or defeat or void this Coverage Form, unless such statement, representation or warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty, increased the risk or contributed to the "loss". In addition, no breach of a warranty in this Coverage Form shall defeat or void this Coverage Form unless the breach of such warranty increased the risk at the time of "loss", or contributed to the "loss", or existed at the time of the "loss".

Our authorized representative's knowledge will be considered our knowledge. If our authorized representative knows before an "accident" or "loss", and if applicable, offense or "act, error or omission", something which violates a policy condition, this will not void the policy or defeat a recovery for a claim.

If we elect to rescind this policy, we will notify the "insured" of our intention within 60 days after acquiring knowledge of sufficient facts to constitute grounds for rescission.

7. The following condition is added:

**Conformity To Statute Or Rule**

Any provision of this Coverage Part (including endorsements which modify the Coverage Part) that is in conflict with a Wisconsin statute or rule is hereby amended to conform to that statute or rule.

The term rule means a valid rule promulgated by the Commissioner of Insurance in accordance with the rule-making authority conferred under WIS. STAT. Section 227.11(2) and published in the Wisconsin Administrative Code.

POLICY NUMBER: ISA H25295304

Endorsement Number: 155

**COMMERCIAL AUTO**
CA 21 03 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WISCONSIN UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Wisconsin, this endorsement modifies insurance provided under the following:

> AUTO DEALERS COVERAGE FORM
> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Named Insured: Medtronic plc | |
| Endorsement Effective Date: | |

**SCHEDULE**

| | | |
|---|---|---|
| Limit Of Insurance: $ See DA40002 | | Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":
   a. The Named Insured and any "family members".

b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

c. Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability under the Coverage Form.

d. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability under the Coverage Form.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. Punitive or exemplary damages.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

2. The Limit of Insurance under this coverage shall be reduced by:

   a. All sums paid or payable under any workers' compensation, disability benefits or similar law; and

   b. All sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Liability Coverage.

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form, Underinsured Motorists Coverage endorsement or Uninsured Motorists Coverage endorsement.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not make a duplicate payment because of "bodily injury" under workers' compensation, disability benefits or similar law.

**E. Changes In Conditions**

The Conditions are changed for Uninsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

   b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

   c. If the coverage under this Coverage Form is provided:

      (1) On a primary basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

      (2) On an excess basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved; and

   b. Promptly send us copies of the legal papers if a "suit" is brought.

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

   a. We shall be entitled to the right to recover damages from another only after the "insured" has been fully compensated for damages.

   b. If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid only after the "insured" has been fully compensated for damages.

4. The following condition is added:

   **Arbitration**

   a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

   b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**F. Additional Definitions**

As used in this endorsement:

1. **"Family member"** means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

3. **"Uninsured motor vehicle"** means a land motor vehicle or "trailer":

   a. For which no liability bond or policy at the time of an "accident" provides at least the applicable minimum limit for "bodily injury" liability specified in WIS. STAT. ch. 344. The applicable minimum limit is:

      (1) $50,000 for each "accident", if the limit of liability is a single limit that applies for each "accident"; or

      (2) $25,000 for each person/$50,000 for each "accident", if the limit of liability is indicated as a split limit;

   b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying", or must hit another vehicle that hits an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

   d. That is a phantom motor vehicle and neither the driver nor owner can be identified. The vehicle must make no physical contact with the insured nor with a vehicle the insured is occupying, and all of the following must apply:

      (1) The facts of the accident must be corroborated by competent evidence that is provided by someone other than the "insured" or any other person who makes a claim against the uninsured motorists coverage as a result of the accident;

      (2) Within 72 hours after the accident, the "insured" or someone on behalf of the "insured" must report the accident to a police, peace or judicial officer or to the department of transportation or, if the accident occurs outside of Wisconsin, the equivalent agency in the state where the accident occurs; and

      (3) Within 30 days after the accident occurs, the "insured" or someone on behalf of the "insured" must file with the insurer a statement under oath that the "insured" or a legal representative of the "insured" has a cause of action arising out of the accident for damages against a person whose identity is not ascertainable and setting forth the facts in support of the statement.

   However, "uninsured motor vehicle" does not include any vehicle:

   a. Owned by a governmental unit or agency;

   b. Operated exclusively on rails or crawler treads;

   c. Designed for use mainly off public roads while not on public roads;

   d. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent; or

   e. That is an underinsured motor vehicle.

Exhibit B       Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 156

IL 01 76 06 11

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ALASKA CHANGES – APPRAISAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The following provisions are replaced by the Appraisal Provision set forth below:

1. Commercial Automobile Coverage Part, Appraisal for Physical Damage Loss; and

2. Capital Assets Program (Output Policy) Coverage Part, Appraisal Loss Condition, but only if Endorsement OP 04 03, Vehicle Physical Damage Condition, is attached.

If you and we fail to agree on the amount of "loss", either may make a written demand for an appraisal of the "loss". In this event, within 10 days of the demand, each party will choose a competent appraiser and will notify the other of the appraiser selected. The two appraisers will promptly choose a competent and impartial umpire. Not later than 15 days after the umpire has been chosen, unless this time period is extended by the umpire, each appraiser will separately state, in writing, the actual cash value and the amount of "loss". If the appraisers submit a written report of an agreement on the actual cash value and the amount of "loss" to us, that agreement will be binding. If they fail to agree, they will promptly submit their differences to the umpire. A decision agreed to by one of the appraisers and the umpire will be binding as to the actual cash value and the amount of "loss". Each party will:

1. Pay its own counsel and adjuster fees; and

2. Bear those other expenses and fees which are incurred as a result of the appraisal, either in entirety or proportionately, as determined by the umpire.

Neither party waives any rights under this policy by agreeing to an appraisal.

**B.** Except as provided in C. below, the following replaces the Appraisal Conditions in the Equipment Breakdown Coverage Part, the Commercial Inland Marine Coverage Part, the Commercial Property Coverage Part, the Capital Assets Program (Output Policy) Coverage Part, the Farm Coverage Part and the Standard Property Policy:

If you and we fail to agree on the value of the property or the amount of loss ("loss"), either may make a written demand for an appraisal of the loss ("loss"). In this event, within 10 days of the demand, each party will choose a competent appraiser and will notify the other of the appraiser selected. The two appraisers will promptly choose a competent and impartial umpire. If they cannot agree, either may request that the choice be made by a judge of a court having jurisdiction. Not later than 15 days after the umpire has been chosen, unless this time period is extended by the umpire, each appraiser will separately state, in writing, the value of the property and the amount of loss ("loss"). If the appraisers submit a written report of an agreement on the value of the property and the amount of loss ("loss"), that agreement will be binding. If they fail to agree, they will promptly submit their differences to the umpire. A decision agreed to by one of the appraisers and the umpire will be binding. Each party will:

1. Pay its own counsel and adjuster fees; and

2. Bear those other expenses and fees which are incurred as a result of the appraisal, either in entirety or proportionately, as determined by the umpire.

Neither party waives any rights under this policy by agreeing to an appraisal.

**C.** The Appraisal Condition in:

1. Business Income Coverage Form (And Extra Expense) CP 00 30;

2. Business Income Coverage Form (Without Extra Expense) CP 00 32; and

3. Capital Assets Program Coverage Form (Output Policy) OP 00 01, Paragraph A.7. Business Income And Extra Expense

is replaced by the following:

If you and we fail to agree on the amount of Net Income and operating expense or the amount of loss, either may make a written demand for an appraisal of the loss. In this event, within 10 days of the demand, each party will choose a competent appraiser and will notify the other of the appraiser selected. The two appraisers will promptly choose a competent and impartial umpire. If they cannot agree, either may request that the choice be made by a judge of a court having jurisdiction. Not later than 15 days after the umpire has been chosen, unless this time period is extended by the umpire, each appraiser will separately state, in writing, the amount of Net Income and operating expense or the amount of loss. If the appraisers submit a written report of an agreement on the amount of Net Income and operating expense or the amount of loss, that agreement will be binding. If they fail to agree, they will promptly submit their differences to the umpire. A decision agreed to by one of the appraisers and the umpire will be binding. Each party will:

1. Pay its own counsel and adjuster fees; and

2. Bear those other expenses and fees which are incurred as a result of the appraisal, either in entirety or proportionately, as determined by the umpire.

Neither party waives any rights under this policy by agreeing to an appraisal.

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 157

IL 01 21 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ALASKA CHANGES – ATTORNEY'S FEES

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY – MORTGAGEHOLDER'S ERRORS AND OMISSIONS COVERAGE FORM
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

### SCHEDULE

| Attorney's Fees For A Judgment Of | Additional Premium |
| --- | --- |
| $ | $ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

In any "suit" we defend in Alaska, our obligation under Supplementary Payments to pay all costs taxed against the "insured" is amended by the following:

**A.** We will pay that portion of the attorney's fees awarded as costs which does not exceed the amount allowed for a contested case in the schedule of attorney's fees contained in Alaska Civil Rule 82 for a judgment equal to the applicable Limit of Insurance.

**B.** However, if a premium and a judgment amount are shown in the Schedule, we will pay, instead of the attorney's fees provided in Paragraph **A.** above, that portion of the attorney's fees awarded as costs which do not exceed the amount allowed for a contested case in Civil Rule 82 for the judgment amount shown in the Schedule.

Exhibit B

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 158

IL 02 80 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ALASKA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A. The Cancellation** Common Policy Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. We may cancel this policy by mailing to you and the agent or broker of record written notice of cancellation. Such notice, stating the reason for cancellation, must be sent by first class mail at least:

   a. 10 days before the effective date of cancellation if we cancel for:

      (1) Conviction of the insured of a crime having as one of its necessary elements an act increasing a hazard insured against; or

      (2) Fraud or material misrepresentation by the insured or a representative of the insured in obtaining the insurance or by the insured in pursuing a claim under this policy; or

   b. 20 days before the effective date of cancellation if we cancel for:

      (1) Nonpayment of premium; or

      (2) Failure or refusal of the insured to provide the information necessary to confirm exposure or determine the policy premium; or

   c. 60 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail our notice to your last known address and the last known address of the agent or broker of record.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. A post office certificate of mailing or certified mail receipt will be sufficient proof of mailing of notice.

Exhibit B

**6.** If this policy is cancelled, we will return any premium refund due to the agent or broker of record, or directly to the first Named Insured, or, if applicable, to the premium finance company. If:

**a.** We cancel, the refund will be the pro rata unearned premium. The refund will be returned or credited before the effective date of cancellation. However, if cancellation is for:

**(1)** Nonpayment of premium;

**(2)** Conviction of the insured of a crime having as one of its necessary elements an act increasing a hazard insured against;

**(3)** Discovery of fraud or material misrepresentation made by the insured or a representative of the insured in obtaining the insurance or by the insured in pursuing a claim under the policy; or

**(4)** Failure or refusal of the insured to provide the information necessary to confirm exposure or necessary to determine the policy premium;

any unearned premium shall be returned or credited within 45 days after the cancellation notice is given; or

**b.** The first Named Insured cancels, the refund:

**(1)** Will be the pro rata unearned premium minus a cancellation fee of 7.5% of the pro rata unearned premium. However, we will not retain this cancellation fee if this policy is cancelled:

**(a)** And rewritten with us or in our company group;

**(b)** At our request;

**(c)** Because you no longer have a financial or insurable interest in the property or business operation that is the subject of this insurance; or

**(d)** After the first year for a prepaid policy written for a term of more than one year; or

**(2)** Will be returned or credited:

**(a)** By the effective date of cancellation; or

**(b)** Within 45 days of your request to cancel;

whichever is later.

If the policy is selected for audit, we will complete the audit within 45 days of receipt of the request for cancellation. The refund will be returned within 45 days of completion of an audit, or the effective date of cancellation, whichever is later.

**B.** The following is added and supersedes any provision to the contrary:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail written notice of nonrenewal, by first class mail, to you and the agent or broker of record at least 45 days before:

**a.** The expiration date; or

**b.** The anniversary date if this policy has been written for more than one year or with no fixed expiration date.

**2.** We need not mail notice of nonrenewal if:

**a.** We have manifested in good faith our willingness to renew; or

**b.** The first Named Insured has failed to pay any premium required for this policy; or

**c.** The first Named Insured fails to pay the premium required for renewal of this policy.

**3.** Any notice of nonrenewal will be mailed to your last known address and the last known address of the agent or broker of record. A post office certificate of mailing or certified mail receipt will be sufficient proof of mailing of notice.

**C.** The following Condition is added:

**Notice Of Premium Or Coverage Changes On Renewal**

If the premium to renew this policy increases more than 10% for a reason other than an increase in coverage or exposure basis, or if after the renewal there will be a material restriction or reduction in coverage not specifically requested by the insured, we will mail written notice to your last known address and the last known address of the agent or broker of record at least 45 days before:

**1.** The expiration date; or

**2.** The anniversary date if this policy has been written for more than one year or with no fixed expiration date.

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 159

IL 02 31 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ARKANSAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **5.** of the Cancellation Common Policy Condition is replaced by the following:

**5.a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** We will refund the pro rata unearned premium if the policy is:

**(1)** Cancelled by us or at our request;

**(2)** Cancelled but rewritten with us or in our company group;

**(3)** Cancelled because you no longer have an insurable interest in the property or business operation that is the subject of this insurance; or

**(4)** Cancelled after the first year of a prepaid policy that was written for a term of more than one year.

**c.** If the policy is cancelled at the request of the first Named Insured, a cancellation described in b.**(2), (3)** or **(4)** above, we will refund 90% of the pro rata unearned premium. However, the refund will be less than 90% of the pro rata unearned premium if the refund of such amount would reduce the premium retained by us to an amount less than the minimum premium for this policy.

**d.** The cancellation will be effective even if we have not made or offered a refund.

**e.** If the first Named Insured cancels the policy, we will retain no less than $100 of the premium, subject to the following:

**(1)** We will retain no less than $250 of the premium for the Equipment Breakdown Coverage Part.

**(2)** We will retain the premium developed for any annual policy period for the General Liability Classifications, if any, shown in the Declarations.

**(3)** If the Commercial Auto Coverage Part covers only snowmobiles or golfmobiles, we will retain $100 or the premium shown in the Declarations, whichever is greater.

**(4)** If the Commercial Auto Coverage Part covers an "auto" with a mounted amusement device, we will retain the premium shown in the Declarations for the amusement device and not less than $100 for the auto to which it is attached.

B. The following is added to the **Cancellation Common Policy Condition:**

**7. Cancellation Of Policies In Effect More Than 60 Days**

a. If this policy has been in effect more than 60 days or is a renewal policy, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

(3) The occurrence of a material change in the risk which substantially increases any hazard insured against after policy issuance;

(4) Violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or its occupancy which substantially increases any hazard insured against under the policy;

(5) Nonpayment of membership dues in those cases where our by-laws, agreements or other legal instruments require payment as a condition of the issuance and maintenance of the policy; or

(6) A material violation of a material provision of the policy.

b. Subject to Paragraph **7.c.,** if we cancel for:

(1) Nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy at least 10 days before the effective date of cancellation.

(2) Any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy at least 20 days before the effective date of cancellation.

c. The following applies to the Farm Umbrella Liability Policy, Commercial Liability Umbrella Coverage Part and the Commercial Automobile Coverage Part:

(1) If we cancel for nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 10 days before the effective date of cancellation;

(2) If we cancel for any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 20 days before the effective date of cancellation.

C. Paragraph **g.** of the **Mortgageholders Condition,** if any, is replaced by the following:

g. If we elect not to renew this policy, we will give written notice to the mortgageholder:

(1) As soon as practicable if nonrenewal is due to the first Named Insured's failure to pay any premium required for renewal; or

(2) At least 60 days before the expiration date of this policy if we nonrenew for any other reason.

D. The following Condition is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail to the first Named Insured shown in the Declarations, and to any lienholder or loss payee named in the policy, written notice of nonrenewal at least 60 days before:

a. Its expiration date; or

b. Its anniversary date, if it is a policy written for a term of more than one year and with no fixed expiration date.

However, we are not required to send this notice if nonrenewal is due to the first Named Insured's failure to pay any premium required for renewal.

The provisions of this Paragraph **1.** do not apply to any mortgageholder.

**2.** We will mail our notice to the first Named Insured's mailing address last known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

POLICY NUMBER: ISA H25295304

Endorsement Number: 160

IL 09 09 03 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ARKANSAS NOTICE

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
PERSONAL AUTO POLICY PART D – COVERAGE FOR DAMAGE TO YOUR AUTO

The following statement is added to the policy:

IN THE REPAIR OF YOUR COVERED MOTOR VEHICLE UNDER THE PHYSICAL DAMAGE COVERAGE PROVISIONS OF THIS POLICY, WE MAY REQUIRE OR SPECIFY THE USE OF MOTOR VEHICLE PARTS NOT MADE BY THE ORIGINAL MANUFACTURER. THESE PARTS ARE REQUIRED TO BE AT LEAST EQUAL IN TERMS OF FIT, QUALITY, PERFORMANCE, AND WARRANTY TO THE ORIGINAL MANUFACTURER PARTS THEY REPLACE.

© ISO Properties, Inc., 2007

IL 02 31 09 08
Exhibit B

IL 09 09 03 98

Copyright, Insurance Services Office, Inc., 1997

Exhibit B

POLICY NUMBER: ISA H25295304      Endorsement Number: 161

IL 02 70 12 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the Cancellation Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

  **(1)** Nonpayment of premium; or

  **(2)** Discovery of fraud by:

    **(a)** Any insured or his or her representative in obtaining this insurance; or

    **(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

  **(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

  **(2)** Discovery of fraud or material misrepresentation by:

    **(a)** Any insured or his or her representative in obtaining this insurance; or

    **(b)** You or your representative in pursuing a claim under this policy.

  **(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

  **(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

  **(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

  **(6)** A determination by the Commissioner of Insurance that the:

    **(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

    **(b)** Continuation of the policy coverage would:

      **(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

      **(ii)** Threaten our solvency.

  **(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

  **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

  **(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the Cancellation Common Policy Condition:

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

**b.** We may not cancel this policy solely because the first Named Insured has:

  **(1)** Accepted an offer of earthquake coverage; or

  **(2)** Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted an offer of renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This restriction (**c.**) applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

  **(1)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

  **(2)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

**d.** If a state of emergency under California Law is declared and the residential property is located in any ZIP Code within or adjacent to the fire perimeter, as determined by California Law, we may not cancel this policy for one year, beginning from the date the state of emergency is declared, solely because the dwelling or other structure is located in an area in which a wildfire has occurred.However, we may cancel:

  **(1)** When you have not paid the premium, at any time by letting you know at least 10 days before the date cancellation takes effect;

  **(2)** If willful or grossly negligent acts or omissions by the Named Insured, or his or her representatives, are discovered that materially increase any of the risks insured against; or

  **(3)** If there are physical changes in the property insured against, beyond the catastrophe-damaged condition of the structures and surface landscape, which result in the property becoming uninsurable.

**C.** The following is added and supersedes any provisions to the contrary:

**Nonrenewal**

**1.** Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

**2. Residential Property**

This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

  **a.** We may elect not to renew such coverage for any reason, except as provided in **b.**, **c.** and **d.** below.

  **b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

  However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

  **(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

  **(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

  **(3)** We have:

   **(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

   **(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

   the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

  **c.** We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority, that included an earthquake policy premium surcharge.

  **d.** We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This restriction (**d.**) applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

   **(1)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

   **(2)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

  **e.** If a state of emergency under California Law is declared and the residential property is located in any ZIP Code within or adjacent to the fire perimeter, as determined by California Law, we may not nonrenew this policy for one year, beginning from the date the state of emergency is declared, solely because the dwelling or other structure is located in an area in which a wildfire has occurred.

  However, we may nonrenew:

   **(1)** If willful or grossly negligent acts or omissions by the Named Insured, or his or her representatives, are discovered that materially increase any of the risks insured against;

   **(2)** If losses unrelated to the postdisaster loss condition of the property have occurred that would collectively render the risk ineligible for renewal; or

   **(3)** If there are physical changes in the property insured against, beyond the catastrophe-damaged condition of the structures and surface landscape, which result in the property becoming uninsurable.

**3.** We are not required to send notice of nonrenewal in the following situations:

  **a.** If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between us and a member of our insurance group.

  **b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

  **c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

  **d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

  **e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

  **f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

POLICY NUMBER: ISA H25285304

Endorsement Number: 162

IL 02 28 09 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COLORADO CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation Common Policy Condition** is replaced by the following:

**2.** If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**B.** The following is added to the **Cancellation Common Policy Condition:**

**7. Cancellation Of Policies In Effect For 60 Days Or More**

**a.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy by mailing through first-class mail to the first Named Insured written notice of cancellation:

**(1)** Including the actual reason, at least 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** At least 45 days before the effective date of cancellation if we cancel for any other reason.

We may only cancel this policy based on one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** A false statement knowingly made by the insured on the application for insurance; or

**(3)** A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

**C.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail through first-class mail to the first Named Insured shown in the Declarations written notice of the nonrenewal at least 45 days before the expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**D.** The following condition is added:

**INCREASE IN PREMIUM OR DECREASE IN COVERAGE**

We will not increase the premium unilaterally or decrease the coverage benefits on renewal of this policy unless we mail through first-class mail written notice of our intention, including the actual reason, to the first Named Insured's last mailing address known to us, at least 45 days before the effective date.

Any decrease in coverage during the policy term must be based on one or more of the following reasons:

**1.** Nonpayment of premium;

**2.** A false statement knowingly made by the insured on the application for insurance; or

**3.** A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

If notice is mailed, proof of mailing will be sufficient proof of notice.

Exhibit B

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 163

IL 01 69 09 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COLORADO CHANGES – CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART – FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL COVERAGES, CONDITIONS, DEFINITIONS
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM

The CONCEALMENT, MISREPRESENTATION OR FRAUD Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case of:

1. Concealment or misrepresentation of a material fact; or

2. Fraud;

committed by you or any other insured ("insured") at any time and relating to coverage under this policy.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 164

IL 00 24 10 14

## COMPULSORY LIABILITY INSURANCE POLICY – PUERTO RICO

**THIS POLICY INCLUDES TEXT FROM THE ANNEX 1 TO RULE LXX OF THE REGULATIONS OF THE INSURANCE CODE OF PUERTO RICO, WHICH CONTAINS THE UNIFORM POLICY FORM THAT PROVIDES THE PROPERTY DAMAGE LIABILITY COVERAGE REQUIRED BY THE PUERTO RICO "MOTOR VEHICLE COMPULSORY LIABILITY INSURANCE ACT". THIS COVERAGE APPLIES ONLY TO ACCIDENTS THAT OCCUR IN PUERTO RICO AND THAT RESULT FROM THE USE OF "YOUR COVERED AUTO".**

Various provisions in this Policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

In consideration of the premium for the compulsory liability insurance and subject to all of the terms of this Policy, we agree with you the following:

### SECTION I – DEFINITIONS

A. Throughout this Policy, "you", "your" and "yours" refer to:

1. The "named insured" owner of "your covered auto" shown in the Declarations;

2. If the "named insured" is an individual:

   a. The spouse, if a resident of the same household; and

   b. If the "named insured" dies, the surviving spouse, if a resident of the same household at the time of death. Coverage applies to the spouse as if the "named insured" shown in the Declarations.

B. "We", "us" and "our" refer to the Company providing this insurance.

Other words and phrases are defined. They are in quotation marks when used.

C. "Family member", if the "named insured" is an individual, means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

D. "Insured" means:

1. You or any "family member" with respect to the use of "your covered auto".

2. Any person using "your covered auto" with your permission, except someone using "your covered auto" while working in a business of selling, servicing, repairing or parking motor vehicles, unless that business is yours.

3. The legal representative of the deceased person, if the "named insured" shown in the Declarations is an individual and dies. This applies only with respect to the representative's legal responsibility for the use of "your covered auto".

E. "Traffic accident" refers to an accident between motor vehicles in which at least one of the motor vehicles involved is in motion.

F. "Trailer" means a vehicle designed to be pulled by a "private passenger vehicle" or a "commercial vehicle". "Trailer" includes semitrailer.

It also means a farm wagon or farm implement while towed by a "private passenger vehicle" or a "commercial vehicle".

G. "Private insurer" means an insurer that is authorized or may be authorized in the future to underwrite in Puerto Rico, insurance against any loss, expense or liability for loss of or damage to persons or property, resulting from or incidental to the ownership, maintenance or use of any land vehicle, aircraft or draft or riding animal, all this in accordance with Article 4.070(1) of the Insurance Code of Puerto Rico, provided that the volume of premiums written for that kind of insurance by said insurer is greater than one (1) percent of the total volume of premiums underwritten in Puerto Rico for the same.

H. "Joint Underwriting Association" means the Compulsory Liability Insurance Joint Underwriting Association made up of all the private insurers, whose main purpose is to provide compulsory liability insurance to applicants of said insurance who have been rejected by the private insurers.

I. "Your covered auto" means:

1. Your motor vehicle shown in the Declarations and classified as a "private passenger vehicle" or as a "commercial vehicle".

2. Any "trailer" attached to the motor vehicle shown in the Declarations, if registered in the Puerto Rico Department of Transportation and Public Works as having a loading capacity of two (2) tons or under.

---

IL 01 69 09 07                    © ISO Properties, Inc., 2006                    Page 1 of 1            □
                                                                                    Exhibit B

IL 00 24 10 14                    © Insurance Services Office, Inc., 2014              Page 1 of 7
                                                                                    Exhibit B

3. Your "trailer" shown in the Declarations, if registered in the Puerto Rico Department of Transportation and Public Works as having a loading capacity of over two (2) tons.

J. "Property damage" means physical injury to or destruction of a motor vehicle and does not include loss of use of a motor vehicle.

K. "Declarations" means the page in this Policy designated as such and for the insureds of the "Joint Underwriting Association" means the license of the vehicle covered under this Policy.

L. "Suit" means a civil proceeding in which damages because of "property damages" to which this insurance applies are alleged.

M. "Joint accident report" means the uniform accident report that all "insureds" shall use to notify the "private insurers" or the "Joint Underwriting Association", of an accident between two (2) or more motor vehicles and the circumstances pertaining to how, when and where the accident occurred.

N. "Police" means the Puerto Rico State Police and the Municipal Guard or Municipal Police.

O. "Traditional liability insurance" means vehicle insurance as defined in Section 4.070(1) of the Insurance Code of Puerto Rico, which is written by a "private insurer" different from the compulsory liability insurance established by Act No. 253 of December 27, 1995, as amended.

P. "System" means the Initial Liability Determination System adopted in accordance with Act No. 253 of December 27, 1995, as amended.

Q. "Commercial vehicle" means a motor vehicle that the Puerto Rico Department of Transportation and Public Works does not register as a private automobile, an automobile of a handicapped person or a motorcycle. The term "commercial vehicle" includes a "trailer" registered by said Department as having a loading capacity of over two (2) tons.

R. "Racing vehicle" or "high-speed vehicle" means a motor vehicle that has been modified or that, by its own design, is suited for driving at a higher than normal speed depending on the condition of the road. This classification results because of the motor, the chassis, the suspension, the brakes and the tires with which the vehicle is endowed.

S. "Motor vehicles" means and includes commercial vehicles and private passenger vehicles.

T. "Private passenger vehicle" means a motor vehicle that the Puerto Rico Department of Transportation and Public Works registers as a private automobile, an automobile of a handicapped person or a motorcycle.

U. "Public vehicle" means a motor vehicle used on public roads for the transportation of passengers, in exchange of payment, by a public carrier as defined in Section 2(d) of Act No. 109 of June 28, 1962, as amended, known as the "Puerto Rico Public Service Act".

## SECTION II — COMPULSORY LIABILITY INSURANCE COVERAGE

### A. Insuring Agreement

We will pay the following damages for "property damage" for which any "insured" becomes legally responsible because of a "traffic accident" resulting from the use of "your covered auto":

1. In the case of a "traffic accident" which is within the scope of the diagrams mentioned in Article No. 7 of the "System", the amount, if any, payable under the applicable diagram. The amount thus determined is the most we will pay regardless of any subsequent adjudication of additional amounts, unless a court of competent jurisdiction determines that said "traffic accident" is not within the scope of the diagrams mentioned in Article No. 7 of the "System" or that the selection of the diagram applied in that particular "traffic accident" was incorrectly made.

   a. If the court determines that the "traffic accident" is not within the scope of the diagrams mentioned in Article No. 7 of the "System", we will pay the amounts, if any, settled through the use of available means, subject to the provisions of the Insurance Code of Puerto Rico. Damages will include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or "suit" asking for these damages. Therefore, in addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for the coverage has been exhausted through payment of judgments, settlements or court consignments.

If the court determines that the "traffic accident" is not within the scope of the diagrams mentioned in Article No. 7 of the "System", we will also pay the legal defense costs, if any, you incurred in presenting your case, to the court, regarding the applicability of the diagrams, until the court's decision as to the nonapplicability of the diagrams is final.

   b. If the court determines that the selection of the diagram applied in a particular "traffic accident" was incorrectly made, we will pay the amount, if any, corresponding to the applicable diagram, as determined by the court. In this event, we will also pay the legal defense costs, if any, you incurred in presenting your case, to the court, regarding the applicability of the diagrams, until the court's decision as to the correct selection of diagram is final.

2. In the case of a "traffic accident" that does not fall within the scope of the diagrams mentioned in Article No. 7 of the "System", we will pay the amount, if any, settled or awarded through the use of available means, subject to the provisions of the Insurance Code of Puerto Rico. Damages will include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. Therefore, in addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for the coverage has been exhausted through payment of judgments, settlements or court consignments.

We have no duty to defend or settle any claims for "property damage" not covered under this Policy.

### B. Supplementary Payments

In addition to our limit of liability, we will pay on behalf of an "insured":

1. Up to two hundred and fifty dollars ($250) for the cost of bail bonds required because of a "traffic accident", including violations related to Act No. 141 of July 20, 1960, as amended, known as the Puerto Rico Vehicles and Traffic Act. The "traffic accident" must result in "property damage" covered under this Policy.

2. Premiums on appeal bonds and bonds to release attachments in any "suit" we defend.

3. Interest accruing after a judgment is entered in any "suit" we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. All reasonable expenses incurred by an "insured", at our request, and the actual loss of earnings up to fifty dollars ($50) a day.

5. The cost of towing "your covered auto" by a tow truck to your residence or to a secure location for storage of the vehicle, as designated by an "insured", when the motor vehicle cannot move under its own power because of a traffic accident. We will determine the cost, subject to the following conditions:

   a. The cost of towing which from time to time will be set by the Puerto Rico Public Service Commission.

   b. We will use the distance chart published by the Puerto Rico Highway Authority to calculate the distance. When use of the chart is not feasible, the distance will be calculated by using alternative methods.

   c. We will pay for the towing expense as a reimbursement, provided that we are given evidence that payment has been made.

   d. Only services provided by tow trucks duly authorized by the Puerto Rico Public Service Commission will be honored.

6. A payment of $100.00 as supplementary compensation to assist the affected individual in coping with the difficulties of having a motor vehicle being repaired in a shop. Eligibility for this benefit will include all those motor vehicle owners whose vehicles have been damaged by an "insured" with "your covered auto" in a traffic accident, provided that such owners have not contributed or been liable for the accident, in accordance with the diagrams of Rule LXXI of the Regulations of the Insurance Code of Puerto Rico. The benefit will be paid as a reimbursement after the motor vehicle has been repaired and it has been inspected by our representative.

7. The cost of sales and use tax (IVU) paid by the insured for the cost of parts and labor incurred in repairing a motor vehicle.

## C. Exclusions

1. We will not provide "property damage" liability coverage to any "insured" for:

   a. "Property damage" intentionally caused by any "insured".

   b. "Property damage" to property owned or being transported by any "insured".

   c. "Property damage" to property:

      (1) Rented to;

      (2) Used by; or

      (3) In the care, custody or control of any "insured".

   d. The use of any motor vehicle, other than "your covered auto".

   e. The use of any vehicle, located inside a facility designed for racing, for the purpose of:

      (1) Competing in; or

      (2) Practicing or preparing for, any prearranged or organized racing or speed contest.

   f. Any "insured" who, in connection with any "traffic accident" for which coverage is sought under this Policy, has made fraudulent statements or engaged in fraudulent conduct.

   g. "Property damage" for which any "insured":

      (1) Is an insured under a nuclear energy liability policy; or

      (2) Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by any of the following or their successors:

      (1) American Nuclear Insurers;

      (2) Mutual Atomic Energy Liability Underwriters; or

      (3) Nuclear Insurance Association of Canada.

   h. "Property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   The exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of "your covered auto" or its parts, if the pollutants escape or are discharged, dispersed or released directly from "your covered auto's" part designed by its manufacturer to hold, store, receive or dispose of such pollutants.

2. We will not pay damages for "property damage" to any motor vehicle that is not insured as required by Act No. 253 of December 27, 1995, as amended in accordance with the provisions of Article 11(b) of said Act.

## D. Limit Of Liability

The limit of liability established by Act No. 253 of December 27, 1995, as amended, is our maximum limit of liability for "property damage" resulting from any one "traffic accident". This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made or claimants; or

3. Motor vehicles involved in the "traffic accident".

Except with respect to the limit of liability, the coverage afforded in this Policy applies separately to each "insured" who is seeking coverage or against whom a claim or "suit" is brought.

---

## SECTION III – DUTIES AFTER A TRAFFIC ACCIDENT

We have no duty to provide coverage under this Policy unless there has been full compliance with the following duties:

1. We must be notified promptly of how, when and where a "traffic accident" occurred.

   Notice should also include the names and addresses of any witnesses.

2. A person seeking coverage must:

   a. Cooperate with us in the investigation, settlement or defense of any claim or "suit";

   b. Promptly send us copies of any notices or legal papers received in connection with a "traffic accident";

   c. Submit, as often as we reasonably require, to examination under oath and subscribe the same;

   d. Authorize us to obtain pertinent records;

   e. Submit a proof of loss when required by us; and

   f. Report to the "police" a "traffic accident" in which "your covered auto" is involved, within forty-eight (48) hours from its occurrence, except for justifiable causes.

---

## SECTION IV – GENERAL PROVISIONS

### A. Legal Action Against Us

No legal action may be brought against us until there has been full compliance with all the terms of this Policy.

### B. Changes

1. This Policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

2. If we make a change which broadens coverage under this edition of your policy, that change will automatically apply to your policy as of the date we implement the change in Puerto Rico.

   This item 2. does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

   a. A subsequent edition of your policy; or

   b. An amendatory endorsement.

### C. Conformity With State Statutes

Any provision of this Policy which, on its effective date, is in conflict with the statutes of Puerto Rico is hereby amended to conform to the minimum requirements of such statutes.

### D. Entire Contract

This Policy will become effective only when its corresponding premium has been paid at the time of issuance or renewal of the license of the motor vehicle to which this insurance applies.

When the compulsory liability insurance is provided by the "Joint Underwriting Association", this Policy and the license of the motor vehicle to which this insurance applies will constitute the entire contract between you and us.

When the compulsory liability insurance is provided by the private insurers, this Policy, the "Declarations" pertaining to the same and the application for this insurance attached to this Policy constitute the entire contract between you and us.

### E. Errors In Classification

In the event that the classification pertaining to "your covered auto" is incorrectly stated, the Policy premium corresponding to the correct classification shall be deemed to be applicable.

### F. Joint Accident Report

Our receiving, within fifteen (15) days after a "traffic accident", the "Joint Accident Report", duly completed, will expedite the resolution of a claim.

### G. Bankruptcy

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this Policy.

### H. Other Insurance

This Policy provides primary insurance for "your covered auto".

### I. Termination

1. **Cancellation**

   a. We may not cancel this Policy for any reason.

   b. You may cancel this Policy only if "your covered auto":

      (1) Is a total loss and therefore unable to cause any damage in the public roads and you provide us the corresponding certification issued by the Puerto Rico Department of Transportation and Public Works, to the effect that the vehicle is shown in the Motor Vehicle Register of said Department with an annotation indicating that it has a scrap lien and that its motor vehicle license and license plate have been surrendered for cancellation to the mentioned Department.

---

**(2)** Is exported from Puerto Rico and you provide to us the corresponding certification, issued by the Puerto Rico Department of Transportation and Public Works, to the effect that the vehicle is shown in the Motor Vehicle Register of said Department with an annotation indicating that it has an exportation lien and that its motor vehicle license and license plate have been surrendered for cancellation to the mentioned Department.

If you request this Policy's cancellation pursuant to item **1.b.** above, before the expiration of the policy period, you may be entitled to a premium refund. If so, we will refund the pro rata unearned premium subject to a minimum earned premium of seven dollars ($7).

**2. Renewal**

**a.** This Policy will be renewed by us at expiration. Nevertheless, we will not renew it if you have obtained other equal coverage on "your covered auto" and you have notified us, in writing, of this other coverage, no less than forty (40) days prior to the expiration date of this Policy.

**b.** At renewal date we may find that you no longer qualify under the underwriting guidelines established for the compulsory liability insurance issued by "private insurers" because of any of the following reasons:

**(1)** "Your covered auto" is used as a "public vehicle";

**(2)** "Your covered auto" is a "racing vehicle" or "high-speed vehicle";

**(3)** You or the main driver of "your covered auto" has accumulated five (5) or more points on account of traffic law violations during the past three (3) years;

**(4)** You or the main driver of "your covered auto" has been convicted of driving a motor vehicle under the influence of alcohol or drugs, or of participating in any type of racing activity on public roads;

**(5)** Your driver's license or that of the main driver of "your covered auto" has been suspended or revoked within one (1) year from the requested effective date of the compulsory liability insurance policy; or

**(6)** "Your covered auto" is not insurable in accordance with the written underwriting guidelines that we maintain for the underwriting of the traditional liability insurance policies that we issue. When applying this rule, we shall neither establish nor permit any discrimination in favor of particular persons and in detriment of others or between insureds or objects of insurance that essentially have the same elements of insurability, risk and exposure, or expense factors, and as far as it is applicable, we shall not incur in any unfair discrimination as typified in the Insurance Code of Puerto Rico.

If such is the case, we must notify you, in writing, of our decision, by regular mail to the last address notified to us, in writing, or to the mailing address appearing in this Policy, no less than thirty (30) days prior to the expiration date of the Policy. However, the "Joint Underwriting Association" cannot deny the compulsory liability insurance coverage for any of the reasons stated in the above item **2.b.**

We shall maintain in our files evidence supporting the defense of any rejection that we may effect in accordance with the above guidelines, including the reference to the underwriting rule applied for the rejection.

**3. Other Termination Provisions**

If you obtain "traditional liability insurance", with similar or broader coverage than the compulsory liability insurance, on "your covered auto", the compulsory liability insurance provided by this Policy will terminate, at your request, on the effective date of the other insurance.

In such event, you may be entitled to a premium refund. If so, we will refund the pro rata unearned premium, subject to a minimum earned premium of seven dollars ($7), to the insurer that provides your "traditional liability insurance", to be credited to the premium of said insurance or to be returned to you, if your "traditional liability insurance" is fully paid.

**4. Notices**

**a.** Any notice required may be delivered or mailed by us or you.

**b.** Proof of mailing of any notice shall be sufficient proof of notice.

**J. Territory And Policy Period**

This Policy applies only to "traffic accidents" which occur in Puerto Rico during the policy period. The policy period will commence:

**1.** On the effective date of the "your covered auto's" license, if the premium for this Policy is paid on or before said date; or

**2.** On the date that the premium for this Policy is paid, if payment is made after the effective date of "your covered auto's" license.

The policy period will terminate on the expiration date of "your covered auto's" license.

**K. Transfer Of Your Interest In This Policy**

Your rights and duties under this Policy may not be assigned without our written consent, except that if ownership of "your covered auto" is transferred, the coverage provided by this Policy will automatically be transferred to the new owner of the vehicle. You will have no further rights under this Policy. However, you should notify us of any transfer of ownership of "your covered auto" within ten (10) days of such transfer. Failure to do so could affect your loss experience record.

POLICY NUMBER: ISA H25295304      Endorsement Number: 165

IL 02 60 01 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONNECTICUT CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** Cancellation of policies in effect for less than 60 days.

If this policy has been in effect for less than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason by giving you written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** Cancellation of policies in effect for 60 days or more.

**a.** If this policy has been in effect for 60 days or more or this is a renewal of a policy we issued, we may cancel this policy by giving you written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for one or more of the following reasons:

**(a)** Nonpayment of premium;

**(b)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(c)** Discovery of fraud or material misrepresentation by you in obtaining the policy or in perfecting any claim thereunder;

**(d)** Discovery of any willful or reckless act or omission by you increasing the hazard insured against; or

**(e)** A determination by the Commissioner that continuation of the policy would violate or place us in violation of the law; or

**(2)** 60 days before the effective date of cancellation if we cancel for one or more of the following reasons:

**(a)** Physical changes in the property which increase the hazard insured against;

**(b)** A material increase in the hazard insured against; or

**(c)** A substantial loss of reinsurance by us affecting this particular line of insurance.

**b.** We may not cancel policies in effect for 60 days or more or renewal policies for any reason other than the reasons described in Paragraph **3.a.** above.

**c.** If we cancel for nonpayment of premium, you may continue the coverage and avoid the effect of the cancellation by payment in full at any time prior to the effective date of cancellation.

**d.** Notice of cancellation will be delivered or sent by:

**(1)** Registered mail;

**(2)** Certified mail; or

**(3)** Mail evidenced by a United States Post Office certificate of mailing.

**4.** We will give notice to you at your last mailing address known to us.

**5.** Notice of cancellation will state the specific reason for the cancellation and the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**7.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The following conditions are added and supersede any other provision to the contrary:

**1.** Nonrenewal

If we decide not to renew this policy, we will send notice as provided in Paragraph **B.3.** of this endorsement.

**(2)** 60 days before the effective date of cancellation if we cancel for one or more of the following reasons:

With respect to automobile liability insurance policies only, your policy shall terminate on the effective date of any other insurance policy you purchase with respect to any automobile designated in both policies.

**2.** Conditional Renewal

**a.** If we conditionally renew this policy under terms or conditions less favorable to the insured than currently provided under this policy, then we will send notice as provided in Paragraph **B.3.** of this endorsement.

**b.** The conditional renewal notice shall clearly state or be accompanied by a statement clearly identifying any:

**(1)** Reduction in coverage limits;

**(2)** Coverage provisions added or revised that reduce coverage; or

**(3)** Increases in deductibles.

**3.** Notices Of Nonrenewal And Conditional Renewal

**a.** If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs **B.1.** and **B.2.** of this endorsement, we will mail or deliver to you a written notice of nonrenewal or conditional renewal, stating the specific reason for nonrenewal or conditional renewal, at least 60 days before the expiration date of this policy. The notice will be sent to your address last known to us.

**b.** This notice will be delivered or sent by:

**(1)** Registered mail;

**(2)** Certified mail; or

**(3)** Mail evidenced by a certificate of mailing.

If notice is mailed, proof of mailing is sufficient proof of notice.

**c.** However, we are not required to send notice of nonrenewal if nonrenewal is due to your failure to pay any advance premium required for renewal.

**C.** The **When We Do Not Renew** Condition of the Commercial General Liability Coverage Part, Commercial Liability Umbrella Coverage Part and Employment-Related Practices Liability Coverage Part does not apply.

Exhibit B

Exhibit B

POLICY NUMBER: ISA H25295304                    Endorsement Number: 166

IL 01 40 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONNECTICUT CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    ELECTRONIC DATA LIABILITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    FARM COVERAGE PART
    FARM UMBRELLA LIABILITY POLICY
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PRODUCT WITHDRAWAL COVERAGE PART

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Connecticut law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to:

1. Individual Named Insured by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of such Named Insured's household, including a ward or foster child; or

2. Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, or Farm Umbrella Liability Policy, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of your household, including a ward or foster child.

---

POLICY NUMBER: ISA H25295304                    Endorsement Number: 167

IL 01 51 01 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DELAWARE CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    ELECTRONIC DATA LIABILITY COVERAGE PART
    FARM COVERAGE PART
    FARM UMBRELLA LIABILITY POLICY
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCT WITHDRAWAL COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Delaware law.

**B.** Under the Commercial Automobile Coverage Part, the term "family member" is replaced by the following and supersedes any other provisions to the contrary:

"Family member" means:

1. A person related to the individual Named Insured by blood, adoption, marriage or civil union recognized under Delaware law, who is a resident of such Named Insured's household, including a ward or foster child;

2. Members of your immediate family including a partner to a civil union recognized under Delaware law, not having a separate household and persons actually residing with and economically dependent upon you, if Delaware Personal Injury Protection Endorsement is attached;

3. A person related to the individual named in the Schedule by blood, adoption, marriage or civil union recognized under Delaware law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individuals endorsement is attached; or

4. A person related to you by blood, adoption, marriage or civil union recognized under Delaware law, who is a resident of your household, including a ward or foster child, if the Individual Named Insured endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Delaware law, who is a resident of your household, including a ward or foster child.

POLICY NUMBER: ISA H25295304

Endorsement Number: 168

IL 01 49 01 12

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HAWAII CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or partner to a civil union recognized under Hawaii law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following and supersedes any other provisions to the contrary:

"Family member" means a person:

1. Who is a resident of the Individual Named Insured's household and is either:

   a. Related to such Named Insured by blood, adoption, marriage or civil union recognized under Hawaii law. This includes a ward or foster child; or

   b. Registered with the Director of Health as a reciprocal beneficiary; or

2. Related to the individual named in the Schedule by blood, adoption, marriage or civil union recognized under Hawaii law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individuals endorsement is attached; or

3. Related to you by blood, adoption, marriage or civil union recognized under Hawaii law, who is a resident of your household, including a ward or foster child, if the Individual Named Insured endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Hawaii law, who is a resident of your household, including a ward or foster child.

IL 01 49 01 12 © Insurance Services Office, Inc., 2011 Page 1 of 1

Exhibit B

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 169

IL 02 04 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## IDAHO CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **1.** and **2.** of the **Cancellation Common Policy Condition** are replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation. Cancellation will be effective on the later of the date requested by the first Named Insured or the date we receive the request.

2. **Policies In Effect**

   **a. 60 Days Or Less**

   If this policy has been in effect for 60 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium. If delivered via United States mail, the 10 day notification period begins to run five days following the date of postmark; or

   (2) 30 days before the effective date of cancellation if we cancel for any other reason.

   **b. More Than 60 Days**

   If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   (1) Nonpayment of premium;

   (2) Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

   (3) Acts or omissions on your part which increase any hazard insured against;

   (4) Change in the risk which materially increases the risk of loss after the policy has been issued or renewed including, but not limited to, an increase in exposure due to regulation, legislation or court decision;

   (5) Loss of or decrease in reinsurance which provided us with coverage for all or part of the risk insured;

IL 02 04 09 08 © ISO Properties, Inc., 2007 Page 1 of 2 □

Exhibit B

(6) A determination by the Director of Insurance that continuation of this policy would jeopardize our solvency or place us in violation of the insurance laws of Idaho or any other state; or

(7) Violation or breach by the insured of any policy terms or conditions other than nonpayment of premium.

We will mail or deliver written notice of cancellation to the first Named Insured at least:

(a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium. If delivered via United States mail, the 10 day notification period begins to run five days following the date of postmark; or

(b) 30 days before the effective date of cancellation if we cancel for any other reason stated in 2.b. above.

B. The following Condition is added and supersedes any provision to the contrary:

NONRENEWAL

1. If we elect not to renew this policy, we will mail or deliver to the first Named Insured a written notice of intention not to renew at least 45 days prior to the expiration or anniversary date of the policy.

2. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

3. If notice is not mailed or delivered at least 45 days before the expiration or anniversary date of this policy, this policy will remain in effect until 45 days after notice is mailed or delivered. Earned premium for the extended period of coverage will be calculated pro rata at the rates applicable to the expiring policy.

4. We need not mail or deliver this notice if:

a. We have offered to renew this policy;

b. You have obtained replacement coverage; or

c. You have agreed in writing to obtain replacement coverage.

5. If notice is mailed, proof of mailing will be sufficient proof of notice.

C. The following Condition is added:

PREMIUM OR COVERAGE CHANGES AT RENEWAL

1. If we elect to renew this policy, we will mail or deliver written notice of any total premium increase greater than ten percent (10%) which is the result of a comparable increase in premium rates, change in deductible, reduction in limits or reduction in coverage to the first Named Insured, at the last mailing address known to us.

2. Any such notice will be mailed or delivered to the first Named Insured at least 30 days before the expiration or anniversary date of the policy.

3. If notice is not mailed or delivered at least 30 days before the expiration or anniversary date of the policy, the premium, deductible, limits and coverage in effect prior to the changes will remain in effect until the earlier of the following:

a. 30 days after notice is given; or

b. The effective date of replacement coverage obtained by the first Named Insured.

4. If the first Named Insured accepts the renewal, the premium increase, if any, and other changes will be effective on and after the first day of the renewal term.

5. If the first Named Insured elects not to renew, any earned premium for the resulting extended period of coverage will be calculated pro rata at the lower of the new rates or rates applicable to the expiring policy.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

---

POLICY NUMBER: ISA H25295304     Endorsement Number: 170

IL 01 47 09 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ILLINOIS CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

B. Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to:

1. Individual Named Insured by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of such Named Insured's household, including a ward or foster child; or

2. Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

C. With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of your household, including a ward or foster child.

---

Exhibit B          Exhibit B

**POLICY NUMBER: ISA H25295304**

Endorsement Number: 171

IL 01 58 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA CHANGES

This endorsement modifies insurance provided under the following:

    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL PROPERTY – LEGAL LIABILITY COVERAGE FORM
    COMMERCIAL PROPERTY – MORTGAGEHOLDERS ERRORS AND OMISSIONS
    COVERAGE FORM*
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    FARM LIABILITY COVERAGE FORM
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

\* Under the **Mortgageholders Errors And Omissions Coverage Form,** the following condition applies only to Coverage C and Coverage D.

The following condition is added:

Notice given by or on behalf of the insured to any of our authorized agents in Indiana, with particulars sufficient to identify the insured, shall be considered to be notice to us.

---

**POLICY NUMBER: ISA H25295304**

Endorsement Number: 172

IL 02 72 09 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    FARM UMBRELLA LIABILITY POLICY
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

(2) 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

(3) 30 days before the effective date of cancellation if we cancel for any other reason.

**b. More Than 90 Days**

If this policy has been in effect for more than 90 days, or is a renewal of a policy we issued, we may cancel this policy, only for one or more of the reasons listed below, by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

(2) 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

(3) 45 days before the effective date of cancellation if:

(a) There has been a substantial change in the scale of risk covered by this policy;

(b) Reinsurance of the risk associated with this policy has been cancelled; or

(c) You have failed to comply with reasonable safety recommendations.

---

B. The following is added to the Common Policy Conditions and supersedes any provision to the contrary.

**NONRENEWAL**

1. If we elect not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days before:

   a. The expiration date of this policy, if the policy is written for a term of one year or less; or

   b. The anniversary date of this policy, if the policy is written for a term of more than one year.

2. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 173

IL 01 56 11 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES – CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART

A. The Concealment, Misrepresentation Or Fraud Condition is replaced by the following:

   **Concealment, Misrepresentation Or Fraud**

   We will not pay for any loss or damage in any case of:

   1. Concealment or misrepresentation of a material fact; or

   2. Fraud

   committed by an insured ("insured") at any time and relating to a claim under this policy.

B. However, with respect to the Commercial Property and Farm Coverage Parts, Paragraph A. does not apply when a claim is made by an "innocent coinsured", provided:

   1. The property loss or damage occurs to the primary residence of the "innocent coinsured" as covered under Building Coverage (for Commercial Property) or Coverage A or B (for Farm).

   2. The "final settlement" for the property loss or damage is at least 60% of available insurance proceeds under the policy.

C. The following is added and supersedes any provision to the contrary:

   1. Any payment made pursuant to Paragraph B. will be for:

      a. The actual cost of repair or replacement of the property that is the subject of the claim if the actual cost of repair or replacement is less than or equal to the maximum limit of coverage under the policy; or

   b. The maximum limit of coverage under the policy if the actual cost of repair or replacement of the property that is the subject of the claim is greater than the maximum limit of coverage under the policy.

   2. Any payment made pursuant to Paragraph B. is limited to the following:

      a. An "innocent coinsured's" ownership interest in the property, less any payments we make to a mortgagee or other lienholder with a secured interest in the property.

      b. We will not pay another coinsured for any part of the claim for which we have already paid to an "innocent coinsured".

      c. We will not pay an amount that is greater than the amount an "innocent coinsured" is entitled to under a decree of dissolution of marriage between the "innocent coinsured" and an individual described in Paragraphs D.1.a. or b.

D. As used in this endorsement, "innocent coinsured" is an insured ("insured") who:

   1. Did not have knowledge of, cooperate in, or intentionally contribute to a property loss or damage that was caused or arranged by another individual who:

   Is an insured ("insured") and:

      a. Died in connection with the circumstances that caused the property loss or damage; or

      b. Has been charged with a crime based on a court finding that there is probable cause to believe that the individual committed the crime in connection with the circumstances that caused the property loss or damage;

---

Exhibit B

2. Signs a sworn affidavit attesting that they did not have knowledge of, cooperate in, or intentionally contribute to the property loss or damage; and

3. Cooperates in the investigation and resolution of the claim for the property loss or damage, any police investigation related to the property loss or damage, and any criminal prosecution of the individual that caused or arranged the property loss or damage.

E. As used in this endorsement, "final settlement" is a determination:

1. Of the amount owed by us to an "innocent coinsured" under Building Coverage (for Commercial Property) or Coverage A or B (for Farm) under the policy and for property loss or damage to the "innocent coinsured's" primary residence; and

2. Made by:

   a. Acceptance of a proof of loss by us;

   b. Execution of a release by the "innocent coinsured";

   c. Acceptance of an arbitration award by the "innocent coinsured" and us; or

   d. Judgment of a court of competent jurisdiction.

However, "final settlement" does not apply to loss or damage related to contents, personal property, or another loss that is not covered under Building Coverage (for Commercial Property) or Coverage A or B (for Farm) under this policy.

Exhibit B

---

POLICY NUMBER:  ISA H25295304

Endorsement Number:  174

IL 01 17 12 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## INDIANA CHANGES - WORKERS' COMPENSATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM LIABILITY COVERAGE FORM
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. For insurance provided under the:

Commercial General Liability Coverage Part
Commercial Liability Umbrella Coverage Part
Employment-Related Practices Liability Coverage Part
Liquor Liability Coverage Part
Medical Professional Liability Coverage Part
Owners And Contractors Protective Liability Coverage Part
Pollution Liability Coverage Part
Products/Completed Operations Liability Coverage Part
Railroad Protective Liability Coverage Part
Underground Storage Tank Policy

The following is added to the **Workers' Compensation And Similar Laws Exclusion:**

This exclusion also applies to any obligation of the insured under the Indiana Workers' Compensation statutes arising out of the failure of the insured to exact from a contractor (or subcontractor if the insured is a contractor) a certificate from the workers' compensation board showing that the contractor (or subcontractor) has complied with the applicable workers' compensation insurance requirements.

B. For insurance provided under the Commercial Automobile Coverage Part, the following is added to the **Workers' Compensation Exclusion:**

This exclusion also applies to any obligation of the "insured" under the Indiana Workers' Compensation statutes arising out of the failure of the "insured" to exact from a contractor (or subcontractor if the "insured" is a contractor) a certificate from the workers' compensation board showing that the contractor (or subcontractor) has complied with the applicable workers' compensation insurance requirements.

C. For insurance provided under the Farm Liability Coverage Form and Farm Umbrella Liability Policy, the following is added to the **Workers' Compensation Or Similar Law Exclusion:**

This exclusion also applies to any obligation of the "insured" under the Indiana Workers' Compensation statutes arising out of the failure of the "insured" to exact from a contractor (or subcontractor if the "insured" is a contractor) a certificate from the workers' compensation board showing that the contractor (or subcontractor) has complied with the applicable workers' compensation insurance requirements.

Exhibit B

POLICY NUMBER: ISA H25295304      Endorsement Number: 175

IL 02 76 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# IOWA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation Common Policy** Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2. Cancellation Requirements**

  **a.** We may cancel this policy, by mailing or delivering to the first Named Insured and any loss payee written notice of cancellation at least:

    **(1)** 30 days before the effective date of cancellation if we cancel due to loss of reinsurance coverage;

    **(2)** 10 days before the effective date of cancellation if we cancel for any other reason.

  **b.** If this policy is a new policy and has been in effect for less than 60 days, we may cancel for:

    **(1)** Loss of reinsurance, subject to **d.** below; or

    **(2)** Any other reason.

  **c.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

    **(1)** Nonpayment of premium;

    **(2)** Misrepresentation or fraud made by or with your knowledge in obtaining the policy, when renewing the policy, or in presenting a claim under the policy;

    **(3)** Acts or omissions by you that substantially change or increase the risk insured;

    **(4)** Determination by the Commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state;

    **(5)** You have acted in a manner which you knew or should have known was in violation or breach of a policy term or condition; or

    **(6)** Loss of reinsurance, subject to **d.** below.

  **d.** We may cancel due to loss of reinsurance which provides coverage to us for a significant portion of the underlying risk insured, but only if the Commissioner determines that such cancellation is justified.

**3.** We will mail or deliver our notice to the first Named Insured's and any loss payee's last mailing address known to us.

**4.** Notice of cancellation will state:

  **a.** The reason for cancellation; and

  **b.** The effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, a post office department certificate of mailing is proof of receipt of notice. However, if cancellation is for nonpayment of premium, a certificate of mailing is not required.

**B.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and any loss payee at least 45 days before the expiration date of this policy, except if:

  **a.** We have offered to issue a renewal policy; or

  **b.** You have failed to pay a premium due or any advance premium required by us for renewal.

**2.** If notice is mailed, a post office department certificate of mailing is proof of receipt of notice.

POLICY NUMBER: ISA H25295304      Endorsement Number: 176

IL 02 63 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# KENTUCKY CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    FARM UMBRELLA LIABILITY POLICY
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph 2. of the **Cancellation Common Policy Condition** is replaced by the following:

    **2. Cancellation Of Policies In Effect For 60 Days Or Less**

        If this policy has been in effect for 60 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 14 days before the effective date of cancellation.

**B.** The following is added to the **Cancellation Common Policy Condition**:

    **7. Cancellation Of Policies In Effect For More Than 60 Days**

      **a.** If this policy has been in effect for more than 60 days or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

        **(1)** Nonpayment of premium;

        **(2)** Discovery of fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

        **(3)** Discovery of willful or reckless acts or omissions on your part which increase any hazard insured against;

        **(4)** The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

        **(5)** A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

        **(6)** We are unable to reinsure the risk covered by the policy; or

        **(7)** A determination by the commissioner that the continuation of the policy would place us in violation of the Kentucky insurance code or regulations of the commissioner.

      **b.** If we cancel this policy based on Paragraph **7.a.** above, we will mail or deliver a written notice of cancellation to the first Named Insured, stating the reason for cancellation, at least:

        **(1)** 14 days before the effective date of the cancellation, if cancellation is for nonpayment of premium; or

        **(2)** 75 days before the effective date of the cancellation, if cancellation is for any reason stated in **7.a.(2)** through **7.a.(7)** above.

**C.** The following is added and supersedes any provision to the contrary:

    **NONRENEWAL**

    **1.** For the purpose of this Condition:

      **a.** Any policy period or term of less than six months shall be considered to be a policy period or term of six months; and

      **b.** Any policy period or term of more than one year or any policy with no fixed expiration date shall be considered a policy period or term of one year.

    **2.** If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, at the last mailing address known to us, at least 75 days before the expiration date of the policy period.

**3.** If notice of nonrenewal is not provided pursuant to this Condition, coverage under the same terms and conditions shall be deemed to be renewed for the ensuing policy period upon payment of the appropriate premium until you have accepted replacement coverage with another insurer, or until you have agreed to the nonrenewal.

**4.** If we mail or deliver a renewal notice to the first Named Insured at least 30 days before the end of the policy period, stating the renewal premium and its due date, the policy will terminate without further notice unless the renewal premium is received by us or our authorized agent by the due date.

**5.** If this policy terminates because the renewal premium has not been received by the due date, we will, within 15 days, mail or deliver to the first Named Insured at his last known address a notice that the policy was not renewed and the date it was terminated.

**6.** If notice is mailed, proof of mailing is sufficient proof of notice.

POLICY NUMBER: ISA H25295304        Endorsement Number: 177

IL 02 77 01 18

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOUISIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** Paragraph **2.** of the Cancellation Common Policy Condition is replaced by the following, which applies unless Paragraph **B.** of this endorsement applies:

**2. Notice Of Cancellation**

**a. Cancellation Of Policies In Effect For Fewer Than 60 Days Which Are Not Renewals**

If this policy has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason, subject to the following:

**(1)** Cancellation for nonpayment of premium:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

**(2)** Cancellation for any other reason:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the effective date of cancellation.

**b. Cancellation Of Renewal Policies And New Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Fraud or material misrepresentation made by you or with your knowledge with the intent to deceive in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**(3)** Activities or omissions by you which change or increase any hazard insured against;

**(4)** Change in the risk which increases the risk of loss after we issued or renewed this policy, including an increase in exposure due to regulation, legislation, or court decision;

**(5)** Determination by the Commissioner of Insurance that the continuation of this policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state;

**(6)** The insured's violation or breach of any policy terms or conditions; or

**(7)** Any other reasons that are approved by the Commissioner of Insurance.

We will mail or deliver written notice of cancellation under Paragraph **A.2.b.** to the first Named Insured at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 30 days before the effective date of cancellation if we cancel for a reason described in Paragraphs **A.2.b.(2)** through **(7)** above.

**B.** Paragraph **2.** of the Cancellation Common Policy Condition is replaced by the following, which applies with respect to premium payments due on new and renewal policies, including installment payments:

**2. Notice Of Cancellation**

**a.** If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs **B.2.b.** and **B.2.c.**

**b.** We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument.

**c.** The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

**C.** With respect to the Coverage Parts and Policies to which this endorsement applies, except the Equipment Breakdown Coverage Part, Paragraph **5.** of the Cancellation Common Policy Condition is replaced by the following:

**5. Premium Refund**

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **C.5.a.**, **C.5.b.**, **C.5.c.**, **C.5.d.** and **C.5.e.** The cancellation will be effective even if we have not made or offered a refund.

**a.** If the first Named Insured cancels, the refund will not be less than 90% of the pro rata unearned premium, rounded to the next higher whole dollar. The refund will be returned within 30 days after the effective date of cancellation.

We will send the refund to the first Named Insured and any mortgagee that has provided us with written notice of the percentage of the premium being funded with the mortgagee's own funds. The percentage of the unearned premium attributable to the mortgagee shall be returned to the mortgagee and the percentage of the unearned premium attributable to the first Named Insured shall be returned to the first Named Insured.

**b.** If we cancel, the refund will be to the first Named Insured unless Paragraph **C.5.c.** or **C.5.d.** applies.

**c.** If we cancel based on Paragraph **B.2.** of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **B.2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**d.** With respect to any cancellation of the Commercial Auto Coverage Part, we will send the return premium, if any, to the premium finance company if the premium was financed by such company.

**e.** When return premium payment is sent to the premium finance company or the agent of the insured, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

**D.** With respect to the Equipment Breakdown Coverage Part, Paragraph **5.** of the Cancellation Common Policy Condition is replaced by the following:

**5. Premium Refund**

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **D.5.a.**, **D.5.b.**, **D.5.c.**, **D.5.d.** and **D.5.e.** The cancellation will be effective even if we have not made or offered a refund.

**a.** If we cancel, the refund will be pro rata.

b. If the first Named Insured cancels, the refund will not be less than 75% of the pro rata unearned premium, rounded to the next higher whole dollar. The refund will be returned within 30 days after the effective date of cancellation.

c. We will send the refund to the first Named Insured unless Paragraph D.5.d. applies.

d. If we cancel based on Paragraph B.2. of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in B.2.c. If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the premium directly to such payor.

e. When return premium payment is sent to the premium finance company or the agent of the insured, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

E. The **Premiums** Common Policy Condition is replaced by the following:

**Premiums**

1. The first Named Insured shown in the Declarations is responsible for the payment of all premiums.

2. We will pay return premiums, if any, to the first Named Insured, unless another person or entity is entitled to be the payee in accordance with Paragraph C. or D. of this endorsement.

F. Paragraph f. of the Mortgageholders Condition in the Commercial Property Coverage Part, Standard Property Policy and the Capital Assets Program (Output Policy) Coverage Part, and Paragraph 4.f. of the **Mortgageholders** Condition in the Farm Coverage Part are replaced by the following:

If we cancel a policy that has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we will give written notice to the mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least:

(1) 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

(2) 60 days before the effective date of cancellation, if we cancel for any other reason.

If we cancel a policy that has been in effect for 60 days or more, or is a renewal of a policy we issued, we will give written notice to the mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least:

(1) 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

(2) 30 days before the effective date of cancellation, if we cancel for any other reason.

G. The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least 60 days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year with no fixed expiration date.

2. We need not mail or deliver this notice if:

a. We or another company within our insurance group have offered to issue a renewal policy; or

b. You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

3. Any notice of nonrenewal will be mailed or delivered to the first Named Insured, mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. Such notice to the insured shall include the insured's loss run information for the period the policy has been in force within, but not to exceed, the last three years of coverage.

POLICY NUMBER:  ISA H25295304     Endorsement Number: 178

IL 02 47 02 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MAINE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraphs 2., 4. and 6. of the **Cancellation** Common Policy Condition are replaced by the following:

2. We may cancel this policy by mailing or delivering written notice of cancellation to the first Named Insured. If we cancel, cancellation will not be effective prior to 10 days after the receipt by the first Named Insured of the notice of cancellation.

4. Notice of cancellation to the first Named Insured will state the effective date of and reasons for cancellation. The policy period will end on that date.

6. A post office certificate of mailing to the first Named Insured at the last known mailing address will be conclusive proof of receipt of notice on the third calendar day after mailing.

B. If this policy has been in effect for 60 days or more, or if it is a renewal or continuation of a policy issued by us, the following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:

7. We may cancel this policy only for one or more of the following reasons:

a. Nonpayment of premium;

b. Fraud or material misrepresentation made by you or with your consent in obtaining the policy, continuing the policy or in presenting a claim under the policy;

c. Substantial change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including, but not limited to, an increase in exposure due to regulation, legislation or court decision;

d. Failure to comply with reasonable loss control recommendations;

e. Substantial breach of contractual duties, conditions or warranties; or

f. Determination by the superintendent of insurance that the continuation of a class or block of business to which the policy belongs will jeopardize our solvency or will place us in violation of the insurance laws of Maine or any other state.

**C.** The following is added and supersedes any other provision to the contrary:

Nonrenewal

If we decide not to renew this policy, we will mail or deliver notice of nonrenewal to the first Named Insured. Nonrenewal will not be effective prior to 30 days after the receipt by the first Named Insured of the notice of nonrenewal. A post office certificate of mailing to the first Named Insured at the last known mailing address will be conclusive proof of receipt of notice on the third calendar day after mailing.

**D.** With respect to Physical Damage Coverage provided under the Commercial Automobile Coverage Part, we will provide like notice of cancellation or nonrenewal to any loss payee named in the policy.

---

POLICY NUMBER:  ISA H25295304

Endorsement Number:  179

IL 01 89 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MAINE CHANGES – CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART – FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL COVERAGES, CONDITIONS, DEFINITIONS
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM
STANDARD PROPERTY POLICY

The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We do not provide coverage to one or more insureds ("insureds") who, at any time:

**1.** Intentionally concealed or misrepresented a material fact;

**2.** Engaged in fraudulent conduct; or

**3.** Made a false statement;

relating to this insurance.

---

© Insurance Services Office, Inc., 2010

IL 02 47 02 11

Exhibit B

IL 01 89 09 07

© ISO Properties, Inc., 2006

Exhibit B

POLICY NUMBER: ISA H25295304      Endorsement Number: 180

**IL 01 36 05 04**

# MANDATORY PREMIUM AND COVERAGE CONDITIONS ENDORSEMENT – PUERTO RICO

It is hereby understood and agreed that pursuant to the regulations approved by the Commissioner of Insurance of Puerto Rico, this policy is amended according to the following conditions and stipulations:

1. **Policy Premium Paid in Full by You:** If the premium for this policy is to be paid by you in its entirety and is not subject to any form of financing as contemplated by this endorsement, insurance coverage will be afforded only if the total premium is paid in full to, and received by, us or our authorized representative on or before the effective date shown on the declarations of this policy. Otherwise, the policy will be effective on the date the total premium is paid in full to, and received by, us or our authorized representative, and we will proceed as indicated in Section **10** of this endorsement.

2. **Policy Premium Subject to Our Deferred Payment Plan:** If we have available a deferred payment plan duly approved by the Commissioner of Insurance of Puerto Rico under which the premium for this policy will be paid, insurance coverage will be afforded only if the initial or down payment under said payment plan is paid to, and received by, us or our authorized representative on or before the effective date shown on the declarations of this policy. Otherwise, the policy will be effective on the date the initial or down payment is paid in full to, and received by, us or our authorized representative, and we will proceed as indicated in Section **10** of this endorsement.

3. **Policy Premium to be Financed as Part of a Financing or Leasing Transaction:** If the premium for this policy is being financed in its entirety (and accordingly no initial or down payment is made by you) in connection with the financing or leasing of property, insurance coverage will be afforded as of the effective date shown on the declarations of this policy only if, within thirty (30) days following the end of the month in which the policy is to be effective, we receive from the bank or financing institution the corresponding total premium.

    In the event the payment from the bank or financing institution is not received by us or our authorized representative by the due date indicated above, no insurance coverage will be afforded under this policy and the same will be void as of the date on which it should have become effective.

4. **Policy Premium to be Financed by a Financing Institution or by a Bank:** If the premium for this policy is financed through a financing institution or by a bank in a situation not covered by the preceding Section 3, this policy will be effective on the date the down payment of at least 20% of the total annual premium to be paid by you, together with the corresponding premium finance contract duly executed, are received by us or our authorized representative.

    In the event the payment of the bank does not make the total corresponding payment and said payment is not received by us or our authorized representative within the thirty (30) days following the inception date of the policy, we will cancel the policy in accordance with the cancellation clause of this policy.

5. **Policy Premium to be Paid Under an Escrow Account:** If this policy is issued in connection with the financing or leasing of property and the premium for this policy is to be paid from funds proceeding from an escrow account, insurance coverage will be afforded as of the effective date shown on the declarations of this policy only if, within thirty (30) days following the end of the month in which the policy is to be effective, we receive from the bank or financing institution the corresponding total premium.

    In the event the payment from the bank or financing institution is not received by us or our authorized representative by the due date indicated above, no insurance coverage will be afforded under this policy and the same will be void as of the date on which it should have become effective.

6. **Policy Premium to be Paid Under an Escrow Account (Condominium Policies Only):** If this policy is issued for a condominium and 25% or more of the premiums for this policy will be paid with funds originating from an escrow account, insurance coverage will be granted on the effective date reflected in the declarations of this policy only if we or our authorized representative have received the premiums thus deposited from the bank or financial institution within thirty (30) days following the last day of the month on which the policy is to enter into effect, and if we have received from you the remaining premium within sixty (60) days following the effective date of the policy.

    If this policy is issued for a condominium and less than 25% of the premiums for this policy will be paid with funds originating from an escrow account, insurance coverage will be granted on the effective date reflected in the declarations of this policy only if we or our authorized representative have received from you 25% of the total premium at the time this policy enters into effect and the remaining premium is received by us within sixty (60) days following the effective date of the policy.

    In the event full payment of the premium corresponding to this policy is not received by us or our authorized representative by the expiration dates indicated above, insurance coverage under this policy will be cancelled on the date in which the premiums paid are used up. We will send you a notice of cancellation, in accordance with the cancellation clause of this policy, indicating when this cancellation will be effective.

7. **Policy Premium to be Partly Paid with Proceeds of Single Interest Insurance Cancellations:** If a portion of the total premium for this policy will be paid with the proceeds of the premium return resulting from the cancellation of a single interest policy or certificate, this policy will be effective as of the date the greater of the following amounts is paid to, and received by, us or our authorized representative:

    a. 20% of the annual premium corresponding to this policy, or

    b. the difference between the total premium payable under this policy and the proceeds of the premium return resulting from the cancellation of the single interest policy or certificate.

    In the event said premium return is not received by us or our authorized representative within the sixty (60) days following the end of the month in which this policy became effective, we will mail you a notice of cancellation in accordance with the cancellation clause of this policy, to be effective on the date the premium paid by you is exhausted.

8. **Endorsement Premium:** Endorsements issued after the inception date of this policy, affording additional insurance and which result in an additional premium, shall not be effective until the total additional premium due thereon is paid in full to, and received by, us or our authorized representative. This procedure will be followed if the premium for this policy has been paid in full by you or has been financed by the bank or financing institution. If the premium for this policy is subject to a deferred payment plan the aforesaid endorsement shall not be effective until a down payment of the additional premium in accordance with such plan is paid to, and received by, us or our authorized representative, and accordingly subsequent payments of the plan are amended to include the unpaid portion of the additional premium for the endorsement.

9. **Premium Corrections:** Any additional premium due resulting from changes in rates, classifications, premium bases, or any other adjustments (as determined by us or the proper rating organization), shall be paid in full within thirty (30) days from the date of billing of the corrective endorsement. If the payment corresponding to this policy is subject to a deferred payment plan or a premium financing contract, a down payment of the additional premium in accordance with such plan or financing contract shall be paid to, and received by, us or our authorized representative within that same thirty (30) day period and accordingly subsequent payments of the plan will be amended to include the unpaid portion of the additional premium for the endorsement. Otherwise, we shall mail to you a notice of cancellation in accordance with the cancellation clause of this policy using the sum of the original premium plus the premium of the corrective endorsement as the basis for the calculation of the amount of premium return due to you, if any.

10. **Late Payments:** If payment is received after the specified due date, we will proceed as follows:

    a. For new policies (Sections 1 and 2 above) we will issue a change of effective date of coverage notice stating:

    (1) that the insurance afforded under the policy is effective as of the date of receipt of the applicable premium payment,

    (2) the resulting amended inception and expiration dates of the policy, which will be postponed by the same number of days that coverage was not afforded due to the late receipt of the premium payment, and

    (3) the corresponding period of time during which coverage is not afforded under the policy.

Exhibit B

Exhibit B

b. For premium correction endorsements (Section 9 above) we will issue, subject to the applicable regulations, a limited reinstatement notice stating:

(1) that the insurance afforded by the policy will be reinstated as of the date of receipt of the applicable additional premium payment,

(2) the period for which coverage is not afforded, and

(3) the amount of premium return due to you, if any.

11. **Cancellation of Policy:** Upon failure in the payment of any premium when due under a policy in force, we must, within the next twenty (20) days following the due date, issue a notice of cancellation in accordance with the provisions of this policy.

12. **Definition of Authorized Representative:** Authorized representative for the purpose of this endorsement means a general agent, an authorized policywriting agent, or a person duly authorized in writing by us for premium collection purposes.

13. This mandatory endorsement supersedes any other conditions to this effect in the policy to which it is attached.

---

POLICY NUMBER:  ISA H25295304

Endorsement Number:  181

IL 02 82 09 08

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MISSISSIPPI CHANGES — CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph **7.** is added to the **Cancellation** Common Policy Conditions:

**7.** If:

a. The first Named Insured cancels this policy, we will notify any named creditor loss payee.

b. We cancel this policy, we will mail or deliver our written notice of cancellation to any named creditor loss payee in the same manner and at the same time as notification is given to the first Named Insured, as stated in this Condition.

The provisions of Paragraphs **a.** and **b.** above do not apply to any mortgageholder.

B. Paragraphs **f.** and **g.** of the **Mortgageholders** Condition, if any, are replaced by the following:

**f.** If:

(1) The first Named Insured cancels this policy, we will notify the mortgageholder.

(2) We cancel this policy, we will give written notice to the mortgageholder at least 30 days before the effective date of cancellation.

We will notify the mortgageholder by mailing or delivering the cancellation notice to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

g. If:

(1) The first Named Insured does not renew this policy, we will notify the mortgageholder.

(2) We decide not to renew this policy, we will give written notice to the mortgageholder at least:

(a) 10 days before an anniversary date or the expiration date of the policy, if the nonrenewal is due to nonpayment of premium; or

(b) 30 days before an anniversary date or the expiration date of the policy, if the nonrenewal is for any other reason.

We will notify the mortgageholder by mailing or delivering the notice of nonrenewal to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

C. The following Condition is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** If the first Named Insured does not renew this policy, we will notify any named creditor loss payee.

2. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and any named creditor loss payee, at least:

   a. 10 days before the effective date of nonrenewal, if the nonrenewal is due to nonpayment of premium; or

   b. 30 days before an anniversary date or the expiration date of the policy, if the nonrenewal is for any other reason.

   We will notify the first Named Insured and any named creditor loss payee by mailing or delivering the notice of nonrenewal to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

The provisions of Paragraphs **1.** and **2.** above do not apply to any mortgageholder.

**D.** The requirements for notification of cancellation or nonrenewal of this policy, as stated in Paragraphs **A., B.** and **C.** above, supersede any other notification requirements to any named creditor loss payee and any mortgageholder, stated in this policy, including any endorsement attached to the policy.

**E.** Any named creditor loss payee and any mortgageholder may elect not to receive notification of cancellation or nonrenewal by providing us with a written release.

---

POLICY NUMBER: ISA H25295304                    Endorsement Number: 182

IL 02 51 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEVADA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following are added to the **Cancellation** Common Policy Condition:

**7.a. Midterm Cancellation**

If this policy has been in effect for 70 days or more, or if this policy is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) Conviction of the insured of a crime arising out of acts increasing the hazard insured against;

(3) Discovery of fraud or material misrepresentation in obtaining the policy or in presenting a claim thereunder;

(4) Discovery of an act or omission or a violation of any condition of the policy which occurred after the first effective date of the current policy, and substantially and materially increases the hazard insured against;

(5) A material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

(6) A determination by the commissioner that continuation of our present volume of premiums would jeopardize our solvency or be hazardous to the interests of our policyholders, creditors or the public;

(7) A determination by the commissioner that the continuation of the policy would violate, or place us in violation of, any provision of the code.

**b. Anniversary Cancellation**

If this policy is written for a term longer than one year, we may cancel for any reason at an anniversary, by mailing or delivering written notice of cancellation to the first Named Insured at the last mailing address known to us at least 60 days before the anniversary date.

**B.** The following is added as an additional Condition and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations a notice of intention not to renew at least 60 days before the agreed expiration date.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

---

2. We need not provide this notice if:

    a. You have accepted replacement coverage;

    b. You have requested or agreed to nonrenewal; or

    c. This policy is expressly designated as nonrenewable.

**C. Notices**

    1. Notice of cancellation or nonrenewal in accordance with A. and B. above, will be mailed, first class or certified, or delivered to the first Named Insured at the last mailing address known to us and will state the reason for cancellation or nonrenewal.

    2. We will also provide a copy of the notice of cancellation, for both policies in effect less than 70 days and policies in effect 70 days or more, to the agent who wrote the policy.

---

POLICY NUMBER: ISA H25295304      Endorsement Number: **183**

IL 01 10 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEVADA CHANGES – CONCEALMENT MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART – FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL COVERAGES, CONDITIONS, DEFINITIONS
    FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
    FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM
    STANDARD PROPERTY POLICY

The **CONCEALMENT, MISREPRESENTATION OR FRAUD** Condition is replaced by the following:

    **CONCEALMENT, MISREPRESENTATION OR FRAUD**

    We will not pay for any loss ("loss") or damage in any case of:

    1. Concealment or misrepresentation of a material fact; or

    2. Fraud;

committed by an insured ("insured") at any time and relating to a claim under this policy.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 184

IL 01 15 01 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NEVADA CHANGES – DOMESTIC PARTNERSHIP

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** All references to spouse shall include an individual who is in a domestic partnership recognized under Nevada law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you:

1. Individual Named Insured by blood, adoption, marriage or domestic partnership recognized under Nevada law, who is a resident of such Named Insured's household, including a ward or foster child; or

2. Individual named in the Schedule by blood, adoption, marriage or domestic partnership recognized under Nevada law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or domestic partnership recognized under Nevada law, who is a resident of your household, including a ward or foster child.

IL 01 15 01 10 © Insurance Services Office, Inc., 2009 Page 1 of 1

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 185

INTERLINE
IL 01 45 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NEW HAMPSHIRE CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** All references to spouse shall include a partner in a civil union recognized under New Hampshire law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to:

1. Individual Named Insured by blood, adoption, marriage or civil union recognized under New Hampshire law, who is a resident of such Named Insured's household, including a ward or foster child; or

2. Individual named in the Schedule by blood, adoption, marriage or civil union recognized under New Hampshire law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, or the Farm Umbrella Liability Policy, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under New Hampshire law, who is a resident of your household, including a ward or foster child.

IL 01 45 09 08 © ISO Properties, Inc., 2007 Page 1 of 1

POLICY NUMBER: ISA H25295304      Endorsement Number: 186

IL 01 87 09 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEW HAMPSHIRE CHANGES – CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART – FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL
COVERAGES, CONDITIONS, DEFINITIONS
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY
AND EQUIPMENT COVERAGE FORM
STANDARD PROPERTY POLICY

The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We do not provide coverage to one or more insureds ("insureds") who, at any time:

1. Intentionally concealed or misrepresented a material fact;

2. Engaged in fraudulent conduct; or

3. Made a false statement;

relating to this insurance.

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 187

IL 02 08 09 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEW JERSEY CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured. The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are maintained by the insurer in writing and will be furnished to the insured and/or the insured's lawful representative upon written request.

This provision shall not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

**B.** Paragraph 2. of the Cancellation Common Policy Condition is replaced by the following:

2. If this policy has been in effect for less than 60 days, we may cancel this policy for any reason subject to the following:

a. We may cancel this policy by mailing or delivering to the first Named Insured and any person entitled to notice under this policy written notice, of cancellation, at least:

(1) 10 days before the effective date of cancellation if we cancel for:

(a) Nonpayment of premium; or

(b) Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) as follows:

(i) "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a 'moral hazard'"; and

(ii) "The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible. Any change in the character or circumstances of an individual, corporate, partnership or other insured that will increase the probability of such a loss or liability may be considered a 'moral hazard'".

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation.

**C.** The following is added to the **Cancellation Common Policy Condition:**

**7. Cancellation Of Policies In Effect For 60 Days Or More**

**a.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f);

**(3)** Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

**(4)** Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

**(5)** Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

**(6)** Lack of cooperation from the insured on loss control matters materially affecting insurability of the risk;

**(7)** Fraudulent acts against us by the insured or its representative that materially affect the nature of the risk insured;

**(8)** Loss of or reduction in available insurance capacity;

**(9)** Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

**(10)** Loss of or substantial changes in applicable reinsurance;

**(11)** Failure by the insured to comply with any Federal, State or local fire, health, safety or building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

**(12)** Failure by the insured to provide reasonable and necessary underwriting information to us upon written request therefore and a reasonable opportunity to respond.

**(13)** Agency termination, provided:

**(a)** We document that replacement coverage at comparable rates and terms has been provided to the first Named Insured, and we have informed the first Named Insured, in writing, of the right to continue coverage with us; or

**(b)** We have informed the first Named Insured, in writing, of the right to continue coverage with us and the first Named Insured has agreed, in writing, to the cancellation or nonrenewal based on the termination of the first Named Insured's appointed agent.

**(14)** Any other reasons in accordance with our underwriting guidelines for cancellation of commercial lines coverage.

**b.** If we cancel this policy based on Paragraph **7.a.(1)** or **(2)** above, we will mail or deliver a written notice, to the first Named Insured and any person entitled to notice under this policy, at least 10 days before the effective date of cancellation. If we cancel this policy for any other reason listed above, we will mail or deliver a written notice to the first Named Insured and any person entitled to notice under this policy, not more than 120 days nor less than 30 days before the effective date of such cancellation.

**c.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.

**d.** Notice will be sent to the last mailing addresses known to us, by:

**(1)** Certified mail; or

**(2)** First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.

**e.** We need not send notice of cancellation if you have:

**(1)** Replaced coverage elsewhere; or

**(2)** Specifically requested termination.

**D.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** We may elect not to renew this policy for any reason permitted to cancel it. If we elect not to renew this policy, we will mail a notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 30 days but not more than 120 days before the expiration date of this policy. If this policy does not have a fixed expiration date, it shall be deemed to expire annually on the anniversary of its inception.

**2.** This notice will be sent to the first Named Insured at the last mailing address known to us by:

**a.** Certified mail; or

**b.** First class mail, if we have obtained from the post office a date stamped proof of mailing showing the first Named Insured's name and address.

**3.** We need not mail or deliver this notice if you have:

**a.** Replaced coverage elsewhere; or

**b.** Specifically requested termination.

POLICY NUMBER: ISA H25295304      Endorsement Number: 188

IL 01 41 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEW JERSEY CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under New Jersey law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

1. Individual Named Insured by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of such Named Insured's household, including a ward or foster child; or

2. Individual named in the Schedule by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of your household, including a ward or foster child.

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 189

IL 01 83 08 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEW YORK CHANGES – FRAUD

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART – FARM PROPERTY OTHER FARM PROVISIONS FORM – ADDITIONAL COVERAGES, CONDITIONS, DEFINITIONS
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM

The **CONCEALMENT, MISREPRESENTATION OR FRAUD** Condition is replaced by the following:

**FRAUD**

We do not provide coverage for any insured ("insured") who has made fraudulent statements or engaged in fraudulent conduct in connection with any loss ("loss") or damage for which coverage is sought under this policy.

However, with respect to insurance provided under the **COMMERCIAL AUTOMOBILE COVERAGE PART,** we will provide coverage to such "insured" for damages sustained by any person who has not made fraudulent statements or engaged in fraudulent conduct if such damages are otherwise covered under the policy.

POLICY NUMBER: ISA H25295304                    Endorsement Number: 190

IL 02 34 09 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH DAKOTA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs 2. and 3. of the Cancellation Common Policy Condition are replaced by Paragraphs 2. and 3. below, except to the extent that Item B. of this endorsement applies.

**2. Policies In Effect:**

**a. For Less Than 90 Days**

If this policy has been in effect for less than 90 days, we may cancel the policy for any reason by mailing to the first Named Insured, and agent, if any, written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation; or

**(2)** Five days before the effective date of cancellation for any condition stated in Paragraph B. of this endorsement.

**b. For 90 Days Or More Or Policies With Terms Longer Than One Year Or Continuous Policies**

If this policy has been in effect for 90 days or more, is a renewal of a policy we issued, is a policy issued for a term longer than one year or is a continuous policy, we may cancel the policy only for one or more of the following reasons:

**(1)** Nonpayment of premiums;

**(2)** Misrepresentation or fraud made by the "insured" or with the "insured's" knowledge in obtaining the policy or in pursuing a claim under the policy;

**(3)** The "insured's" actions that have substantially increased or substantially changed the risk insured;

**(4)** The "insured's" refusal to eliminate known conditions that increase the potential for loss, after our notification that the condition must be removed;

**(5)** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

**(6)** Loss of reinsurance which provided us with coverage for a significant amount of the underlying risk insured;

**(7)** A determination by the insurance commissioner that the continuation of the policy could place us in violation of North Dakota insurance laws;

**(8)** Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance. Cancellation for this reason does not apply to persons who are retired at 62 years of age or older or to any person who is disabled according to social security standards;

**(9)** A violation of any local fire, health, safety, building or construction regulation or ordinance with respect to Covered Property or the occupancy thereof which substantially increases any hazard insured against; or

**(10)** Certain conditions exist, as stated in Paragraph B. of this endorsement.

We will mail written notice of cancellation to the first Named Insured, and agent, if any, at least:

**(a)** Five days before the effective date of cancellation for any condition stated in Paragraph B. of this endorsement;

**(b)** 10 days before the effective date of cancellation for nonpayment of premium; or

**(c)** 30 days before the effective date of cancellation for any reason stated in Paragraphs 2.b.(2) through (9) above.

However, for policies with terms longer than one year or continuous policies, notice of cancellation will be mailed at least 30 days prior to any anniversary date for any reason stated in Paragraphs 2.b.(1) through (9) above.

If we cancel for a reason listed in Paragraphs 2.b.(1) through (9) above, the notice of cancellation will state our reasons for cancellation.

**3.** We will mail our notice, by first-class mail, to the first Named Insured and agent, if any, at the last mailing address known to us.

**B.** We may also cancel the policy if one or more of the following conditions exist:

**1.** Buildings with at least 65% of the rental units in the building unoccupied.

**2.** Buildings that have been damaged by a covered cause of loss and the "insured" has stated or such time has elapsed as clearly indicates that the damage will not be repaired.

**3.** Buildings to which, following a fire, permanent repairs have not commenced within 60 days following satisfactory adjustment of loss.

**4.** Buildings that have been unoccupied 60 or more consecutive days, except buildings that have a seasonal occupancy, and buildings actually in the course of construction or repair and reconstruction which are properly secured against unauthorized entry.

**5.** Buildings that are in danger of collapse because of serious structural conditions or those buildings subject to extremely hazardous conditions not contemplated in filed rating plans such as those buildings that are in a state of disrepair as to be dilapidated.

**6.** Buildings on which, because of their physical condition, there is an outstanding order to vacate or an outstanding demolition order, or which have been declared unsafe in accordance with applicable law.

**7.** Buildings from which fixed and salvageable items have been or are being removed and the "insured" can give no reasonable explanation for the removal.

**8.** Buildings on which there is reasonable knowledge and belief that the property is endangered and is not reasonably protected from possible arson for the purpose of defrauding an insurer.

**9.** Buildings with any of the following conditions:

**a.** Failure to furnish heat, water, sewer service, or public lighting for 30 consecutive days or more.

**b.** Failure to correct conditions dangerous to life, health, or safety.

**c.** Failure to maintain the building in accordance with applicable law.

**d.** Failure to pay property taxes for more than one year.

**10.** Buildings that have characteristics of ownership condition, occupancy, or maintenance, which are violative of law or public policy.

**C.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail to the last known address of the first Named Insured shown in the Declarations, and agent, if any, a notice of intention not to renew at least:

**a.** 60 days prior to the expiration date of the policy, except as provided in Paragraph b.; or

**b.** 90 days prior to the expiration date of the policy when the policy provides professional liability coverage for legal and medical services.

The notice of nonrenewal will state our reason for nonrenewal.

**2.** We will mail our notice, by first-class mail, to the first Named Insured and agent, if any, at the last mailing address known to us.

**3.** We need not mail or deliver this notice if you have:

  **a.** Insured elsewhere;

  **b.** Accepted replacement coverage; or

  **c.** Requested or agreed to nonrenewal.

This Paragraph **3.** does not apply to the Commercial Automobile, Farm and Commercial Property Coverage Parts when you accept replacement coverage providing equal or more extensive coverage.

---

POLICY NUMBER: ISA H25295304     Endorsement Number: 191

IL 01 65 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NORTH DAKOTA CHANGES – EXAMINATION OF YOUR BOOKS AND RECORDS

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**The Examination Of Your Books And Records** Common Policy Condition is replaced by the following:

**EXAMINATION OF YOUR BOOKS AND RECORDS**

**1.** Except as provided in **2.** below, we may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**2.** Any audit conducted to determine the premium due or to be refunded must be completed within 180 days after:

  **a.** The expiration date of the policy; or

  **b.** The anniversary date, if this is a continuous policy or a policy written for a term longer than one year;

unless you agree in writing to extend the audit period.

POLICY NUMBER: ISA H25295304

Endorsement Number: 192

IL 02 44 09 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OHIO CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

```
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
```

**A.** With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, the **Cancellation** Common Policy Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy only for one or more of the following reasons, except as provided in Paragraph **6.** below:

   **a.** Nonpayment of premium;

   **b.** Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

   **c.** Discovery of a moral hazard or willful or reckless acts or omissions on your part which increases any hazard insured against;

   **d.** The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

   **e.** Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

   **f.** Failure of an insured to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

   **g.** A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

3. We will mail written notice of cancellation to the first Named Insured, and agent if any, at the last mailing addresses known to us. Proof of mailing will be sufficient proof of notice.

4. We will mail the notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation, if we cancel for a reason stated in **2.b.** through **2.g.** above.

5. The notice of cancellation will:

   **a.** State the effective date of cancellation. The policy period will end on that date.

   **b.** Contain the date of the notice and the policy number, and will state the reason for cancellation.

6. Policies written for a term of more than one year or on a continuous basis may be cancelled by us for any reason at an anniversary date, upon 30 days' written notice of cancellation.

7. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the Common Policy Conditions and supersedes any provisions to the contrary:

**NONRENEWAL**

1. If we elect not to renew this policy, we will mail written notice of nonrenewal to the first Named Insured, and agent if any, at the last mailing addresses known to us. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

2. We will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.

3. Proof of mailing will be sufficient proof of notice.

**C. Common Policy Conditions**

1. Paragraph **A.2.a.** of the **Businessowners** Common Policy Conditions is deleted.

2. Paragraph **E.2.** of the **Cancellation** Common Policy Condition in the Standard Property Policy is deleted. Paragraph **E.2.** is replaced by the following (unless Item **A.** of this endorsement applies):

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date, if we cancel for any other reason.

© ISO Properties, Inc., 2006

Exhibit B

© ISO Properties, Inc., 2006

Exhibit B

POLICY NUMBER: ISA H25295304       Endorsement Number: 193

IL 02 36 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OKLAHOMA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

After coverage has been in effect for more than 45 business days or after the effective date of a renewal of this policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted under it;

**(3)** Discovery of willful or reckless acts or omissions by you that increase any hazard insured against;

**(4)** The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

**(5)** A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any covered property or its occupancy that substantially increases any hazard insured against;

**(6)** A determination by the Insurance Commissioner that the continuation of the policy would place us in violation of the insurance laws of this state;

**(7)** Your conviction of a crime having as one of its necessary elements an act increasing any hazard insured against; or

**(8)** Loss of or substantial changes in applicable reinsurance.

**B.** The following are added to the Common Policy Conditions and supersede any provisions to the contrary:

**1.** Nonrenewal

**a.** If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least 45 days before:

**(1)** The expiration date of this policy; or

**(2)** An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

**b.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.

**c.** If notice is mailed:

**(1)** It will be considered to have been given to the first Named Insured on the day it is mailed.

**(2)** Proof of mailing will be sufficient proof of notice.

**d.** If notice of nonrenewal is **not** mailed or delivered at least 45 days before the expiration date or an anniversary date of this policy, coverage will remain in effect until 45 days after notice is given. Earned premium for such extended period of coverage will be calculated pro rata based on the rates applicable to the expiring policy.

**e.** We will **not** provide notice of nonrenewal if:

**(1)** We, or another company within the same insurance group, have offered to issue a renewal policy; or

**(2)** You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

**f.** If we have provided the required notice of nonrenewal as described in **B.1.a.** above, and thereafter extend the policy for a period of 90 days or less, we will not provide an additional nonrenewal notice with respect to the period of extension.

**2.** Premium Or Coverage Changes At Renewal

**a.** If we elect to renew this policy, we will give written notice of any premium increase, change in deductible, or reduction in limits or coverage, to the first Named Insured, at the last mailing address known to us.

**b.** Any such notice will be mailed or delivered to the first Named Insured at least 45 days before:

**(1)** The expiration date of this policy; or

**(2)** An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

**c.** If notice is mailed:

**(1)** It will be considered to have been given to the first Named Insured on the day it is mailed.

**(2)** Proof of mailing will be sufficient proof of notice.

**d.** If the first Named Insured accepts the renewal, the premium increase or coverage changes will be effective the day following the prior policy's expiration or anniversary date.

**e.** If notice is **not** mailed or delivered at least 45 days before the expiration date or anniversary date of this policy, the premium, deductible, limits and coverage in effect prior to the changes will remain in effect until:

**(1)** 45 days after notice is given; or

**(2)** The effective date of replacement coverage obtained by the insured;

whichever occurs first.

If the first Named Insured then elects **not** to renew, any earned premium for the resulting extended period of coverage will be calculated pro rata at the lower of the new rates or rates applicable to the expiring policy.

**f.** We will **not** provide notice of the following:

**(1)** Changes in a rate or plan filed pursuant to the Property and Casualty Competitive Loss Cost Rating Act applicable to an entire class of business;

**(2)** Changes which are based upon the altered nature or extent of the risk insured; or

**(3)** Changes in policy forms filed with or approved by the Insurance Commissioner and applicable to an entire class of business.

POLICY NUMBER: ISA H25295304      Endorsement Number: 194

**INTERLINE**
**IL 01 77 10 10**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OKLAHOMA CHANGES – CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART – FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL
COVERAGES, CONDITIONS, DEFINITIONS
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM
STANDARD PROPERTY POLICY

A. When this endorsement is attached to the **Standard Property Policy CP 00 99**, the term Coverage Part in this endorsement is replaced by the term Policy.

B. The **Concealment, Misrepresentation Or Fraud** condition is replaced by the following:

Except as provided in Paragraphs C. and D., we do not provide coverage in any case of fraud by you as it relates to this Coverage Part at any time. We also do not provide coverage if you or any other insured ("insured"), at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

C. The **Concealment, Misrepresentation Or Fraud** condition in the Commercial Auto Coverage Part is replaced by the following:

We do not provide coverage in any case of fraud by you at any time as it relates to this Coverage Part. We also do not provide coverage if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The covered "auto";

3. Your interest in the covered "auto"; or

4. A claim under this Coverage Part.

However, this provision does not apply, but only up to the compulsory or financial responsibility limits required by Oklahoma law, if an "accident" results in a third party liability claim against the "insured" under this Coverage Part.

D. Under the Kidnap/Ransom And Extortion Coverage Form, the **Concealment, Misrepresentation Or Fraud** condition is replaced by the following:

We do not provide coverage in any case of fraud by you as it relates to this insurance at any time. We also do not provide coverage if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This insurance;

2. A person insured under this insurance;

3. The "property" covered under this insurance;

4. Your interest in the "property" covered under this insurance; or

5. A claim under this insurance.

IL 01 77 10 10      © Insurance Services Office, Inc., 2010      Page 1 of 1

Exhibit B

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 195

**IL 01 79 10 02**

# OKLAHOMA NOTICE

The following statement is added to the policy:

**WARNING:**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy, containing any false, incomplete or misleading information, is guilty of a felony.

IL 01 79 10 02      © ISO Properties, Inc., 2002      Page 1 of 1

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 196

IL 02 79 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OREGON CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph 2. of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** If this policy has been in effect for:

**a.** Fewer than 60 days and is not a renewal policy, we may cancel for any reason.

**b.** 60 days or more or is a renewal policy, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

**(3)** Substantial increase in the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to rules, legislation or court decision;

**(4)** Failure to comply with reasonable loss control recommendations;

**(5)** Substantial breach of contractual duties, conditions or warranties;

**(6)** Determination by the commissioner that the continuation of a line of insurance or class of business to which the policy belongs will jeopardize our solvency or will place us in violation of the insurance laws of Oregon or any other state; or

**(7)** Loss or decrease in reinsurance covering the risk.

**c.** 60 days or more or is a renewal policy, we may cancel for any other reason approved by the commissioner by rule, but only with respect to insurance provided under the following:

**(1)** A package policy that includes commercial property and commercial liability insurance;

**(2)** Commercial Automobile Coverage Part;

**(3)** Commercial General Liability Coverage Part;

**(4)** Commercial Property Coverage Part – Legal Liability Coverage Form;

**(5)** Commercial Property Coverage Part – Mortgageholders Errors And Omissions Coverage Form;

**(6)** Employment-related Practices Liability Coverage Part;

**(7)** Farm Coverage Part – Farm Liability Coverage Form;

**(8)** Liquor Liability Coverage Part;

**(9)** Products/Completed Operations Liability Coverage Part; or

**(10)** Medical Professional Liability Coverage Part.

**B.** Paragraph 3. of the **Cancellation** Common Policy Condition is amended by the addition of the following:

**3.** We will mail or deliver to the first Named Insured written notice of cancellation, stating the reason for cancellation.

**C.** The following is added to the **Cancellation** Common Policy Condition:

**7. Number Of Days' Notice Of Cancellation:**

**a.** With respect to insurance provided under 2.c.(1) through (10) above, cancellation will not be effective until at least 10 working days after the first Named Insured receives our notice.

**b.** With respect to insurance other than that provided under 2.c.(1) through (10) above, cancellation will not be effective until at least:

**(1)** 10 days after the first Named Insured receives our notice, if we cancel for nonpayment of premium; or

**(2)** 30 days after the first Named Insured receives our notice, if we cancel for any other reason.

**D.** Paragraph 6. of the **Cancellation** Common Policy Condition does not apply.

**E.** The following are added and supersede any provision to the contrary:

**1. Nonrenewal**

We may elect not to renew this policy by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal before the:

**a.** Expiration date of the policy; or

**b.** Anniversary date of the policy if this policy is written for a term of more than one year or without a fixed expiration date.

However, if this policy is issued for a term of more than one year and for additional consideration the premium is guaranteed, we may not refuse to renew the policy at its anniversary date.

Nonrenewal will not be effective until at least 45 days after the first Named Insured receives our notice.

**2. Mailing Of Notices**

**a.** If notice of cancellation or nonrenewal is mailed, a post office certificate of mailing will be conclusive proof that the first Named Insured received the notice on the third calendar day after the date of the certificate of mailing.

**b.** The following provision applies with respect to coverage provided under the Farm Coverage Part:

If the first Named Insured has affirmatively consented to our use of an electronic record to deliver notice of cancellation or nonrenewal and has not withdrawn such consent, then the electronic record delivering notice of cancellation or nonrenewal satisfies the requirement that the notice of cancellation or nonrenewal be provided, or made available, to the first Named Insured in writing if we send the first Named Insured the electronic record with a request for a return receipt and we receive the return receipt. If we do not receive the return receipt, we may cancel or nonrenew the policy only after providing or delivering the notice of cancellation or nonrenewal to the first Named Insured in writing, subject to Paragraph 2.a. above.

Exhibit B

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 197

**IL 01 42 09 08**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OREGON CHANGES – DOMESTIC PARTNERSHIP

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or individual who is in a domestic partnership recognized under Oregon law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to:

1. Individual Named Insured by blood, adoption, marriage or domestic partnership recognized under Oregon law, who is a resident of such Named Insured's household, including a ward or foster child; or

2. Individual named in the Schedule by blood, adoption, marriage or domestic partnership recognized under Oregon law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or domestic partnership recognized under Oregon law, who is a resident of your household, including a ward or foster child.

© ISO Properties, Inc., 2007

**Page 1 of 1**

Exhibit B

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 198

**IL 02 46 09 07**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **Cancellation Of Policies In Effect For Less Than 60 Days**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. **Cancellation Of Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

a. You have made a material misrepresentation which effects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

b. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

© ISO Properties, Inc., 2006

**Page 1 of 2**

□

Exhibit B

e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

1. Nonrenewal

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

2. Increase Of Premium

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 199

IL 09 10 12 03

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;
2. Consultation or advice; or
3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;
2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or
3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence

| Instruction to Policy Writers |
| Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania. |

---

© ISO Properties, Inc., 2006

IL 02 46 09 07 ☐

Exhibit B

IL 09 10 12 03

© ISO Properties, Inc., 2003

Exhibit B

POLICY NUMBER: ISA H25295304      Endorsement Number: 200

IL 01 61 03 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## RHODE ISLAND CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Rhode Island law.

**B.** Under the Commercial Automobile Coverage Part, the term "family member" is replaced by the following and supersedes any other provisions to the contrary:

"Family member" means a person related to:

**1.** An individual Named Insured by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of such Named Insured's household, including a ward or foster child;

**2.** The individual named in the Schedule by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individuals endorsement is attached; or

**3.** You by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of your household, including a ward or foster child, if the Individual Named Insured endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of your household, including a ward or foster child.

Exhibit B

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 201

IL 01 84 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SOUTH DAKOTA CHANGES – APPRAISAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART

**A.** Except as provided in Paragraph **B.** of this endorsement, the Appraisal Loss Condition is replaced by the following:

**APPRAISAL**

If we and you disagree on the value of the property or the amount of the loss both parties may agree to an appraisal of the loss. If both parties so agree, then each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. Any outcome of the appraisal will not be binding on either party. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will retain our right to deny the claim.

**B.** The Appraisal Condition in Capital Assets Program Coverage Form (Output Policy), OP 00 01, Paragraph **A.7.** Business Income And Extra Expense is replaced by the following:

**APPRAISAL**

If we and you disagree on the amount of net income and operating expense or the amount of the loss, both parties may agree to an appraisal of the loss. If both parties so agree, then each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of net income and operating expense and the amount of the loss. If they fail to agree, they will submit their differences to the umpire. Any outcome of the appraisal will not be binding on either party. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will retain our right to deny the claim.

Exhibit B

POLICY NUMBER: ISA H25295304      Endorsement Number: 202

IL 02 32 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SOUTH DAKOTA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A. Paragraph 2. of Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 20 days before the effective date of cancellation.

After 60 days from the effective date of policy issuance a notice of cancellation may not be issued unless it is based upon at least one of the following reasons as stated in South Dakota law:

**(a)** Nonpayment of premium;

**(b)** Discovery of fraud or material misrepresentation made by or with the knowledge of the Named Insured in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**(c)** Discovery of acts or omissions on the part of the Named Insured which increase any hazard insured against;

**(d)** The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued;

**(e)** A violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

**(f)** A determination by the director of insurance that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of South Dakota;

**(g)** Your violation or breach of any policy terms or conditions; or

**(h)** Such other reasons as are approved by the director of insurance.

**B.** The following condition is added and supersedes any provisions to the contrary:

**NONRENEWAL.**

**1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal not less than 60 days before:

**a.** The expiration date; or

**b.** The anniversary date if this is a continuous policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

IL 02 32 09 08      © ISO Properties, Inc., 2007      Page 1 of 1 ☐

Exhibit B

---

POLICY NUMBER: ISA H25295304      Endorsement Number: 203

IL 02 50 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TENNESSEE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A. Paragraph 5. of the Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

The refund will be pro rata if:

**a.** We cancel; or

**b.** The policy is cancelled at the request of a premium finance company that has financed this policy under a premium finance agreement.

The refund may be less than pro rata if the first Named Insured cancels the policy.

The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**1.** Nonpayment of premium, including any additional premium, calculated in accordance with our current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

**2.** Your conviction of a crime increasing any hazard insured against;

**3.** Discovery of fraud or material misrepresentation on the part of either of the following:

**a.** You or your representative in obtaining this insurance; or

**b.** You in pursuing a claim under this policy;

**4.** Failure to comply with written loss control recommendations;

**5.** Material change in the risk which increases the risk of loss after we issued or renewed insurance coverage;

**6.** Determination by the insurance commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of Tennessee or any other state;

**7.** Your violation or breach of any policy terms or conditions; or

**8.** Other reasons that are approved by the insurance commissioner.

Notice of cancellation will state the reason for cancellation.

IL 02 50 09 08      © ISO Properties, Inc., 2007      Page 1 of 2 ☐

Exhibit B

C. The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, at least 60 days before the expiration date unless:

   a. We have offered to issue a renewal policy; or

   b. You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the policy. If notice is mailed, proof of mailing will be sufficient proof of notice.

D. The following is added to the **Premiums Common Policy Condition:**

Whenever an insurance policy which is financed with a premium finance company is cancelled, the insurer shall return, within 30 days after the effective date of the cancellation, whatever gross unearned premiums are due under the insurance policy directly to the premium finance company for the account of the first Named Insured.

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 204

IL 02 66 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UTAH CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

A. The following is added to the **Cancellation** Common Policy Condition:

7. If this policy has been in effect for more than 60 days or if this is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. Material misrepresentation;

   c. Substantial change in the risk assumed unless we should reasonably have foreseen the change or contemplated the risk when entering the contract; or

   d. Substantial breaches of contractual duties, conditions or warranties.

   If we cancel for nonpayment of premium, notice of cancellation must state the reason for cancellation.

8. With respect to the Commercial Automobile Coverage Part, the following applies in addition to the provisions of Paragraph **7.** above:

   We may cancel this policy if your driver's license, or the driver's license of a person who customarily drives a "covered auto", is suspended or revoked.

9. Notice of cancellation must be delivered or mailed by first-class mail.

B. The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. If we elect to not renew this policy, we will mail, by first-class mail, written notice of nonrenewal to the first Named Insured, at the last mailing address known to us, at least 30 days before the expiration or anniversary date of this policy.

2. We need not mail this notice if:

   a. You have accepted replacement coverage;

   b. You have requested or agreed to nonrenewal; or

   c. This policy is expressly designated as non-renewable.

3. If notice is mailed, proof of mailing is sufficient proof of notice.

---

© ISO Properties, Inc., 2007

☐

Exhibit B

© ISO Properties, Inc., 2007

☐

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 205

IL 01 09 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## VERMONT CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    FARM COVERAGE PART
    FARM UMBRELLA LIABILITY POLICY
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union under Vermont law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person, who is a resident of your household and is related to you by blood, adoption, including a ward or foster child, marriage, or civil union under Vermont law.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part or the Farm Umbrella Liability Policy, the term "family member" is replaced by the following:

"Family member" means a person, who is a resident of your household and is related to you by blood, adoption, including a ward or foster child, marriage, or civil union under Vermont law.

IL 01 09 09 08    © ISO Properties, Inc., 2007    **Page 1 of 1**

Exhibit B

---

POLICY NUMBER: ISA H25295304

Endorsement Number: 206

COMMERCIAL AUTO
IL 01 70 09 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## VERMONT CHANGES – CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART – FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL COVERAGES, CONDITIONS, DEFINITIONS
    FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
    FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM

The **CONCEALMENT, MISREPRESENTATION OR FRAUD** Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case of:

**1.** Concealment or misrepresentation of a material fact; or

**2.** Fraud;

committed by you at any time and relating to coverage under this policy.

IL 01 70 09 07    © ISO Properties, Inc., 2006    **Page 1 of 1**  ☐

Exhibit B

POLICY NUMBER: ISA H25295304

Endorsement Number: 207

IL 01 46 08 10

# WASHINGTON COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

The conditions in this endorsement replace any similar conditions in the policy that are less favorable to the insured.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by notifying us or the insurance producer in one of the following ways:

   a. Written notice by mail, fax or e-mail;

   b. Surrender of the policy or binder; or

   c. Verbal notice.

   Upon receipt of such notice, we will cancel this policy or any binder issued as evidence of coverage, effective on the later of the following:

   a. The date on which notice is received or the policy or binder is surrendered; or

   b. The date of cancellation requested by the first Named Insured.

2. We may cancel this policy by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation, including the actual reason for the cancellation, to the last mailing address known to us, at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 45 days before the effective date of cancellation if we cancel for any other reason;

   except as provided in Paragraphs 3. and 4. below.

3. We may cancel the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part, if made a part of this policy, by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation at least five days before the effective date of cancellation for any structure where two or more of the following conditions exist:

   a. Without reasonable explanation, the structure is unoccupied for more than 60 consecutive days, or at least 65% of the rental units are unoccupied for more than 120 consecutive days, unless the structure is maintained for seasonal occupancy or is under construction or repair;

   b. Without reasonable explanation, progress toward completion of permanent repairs to the structure has not occurred within 60 days after receipt of funds following satisfactory adjustment or adjudication of loss resulting from a fire;

   c. Because of its physical condition, the structure is in danger of collapse;

   d. Because of its physical condition, a vacation or demolition order has been issued for the structure, or it has been declared unsafe in accordance with applicable law;

   e. Fixed and salvageable items have been removed from the structure, indicating an intent to vacate the structure;

   f. Without reasonable explanation, heat, water, sewer and electricity are not furnished for the structure for 60 consecutive days; or

   g. The structure is not maintained in substantial compliance with fire, safety and building codes.

4. If:

   a. You are an individual;

   b. A covered auto you own is of the "private passenger type"; and

   c. The policy does not cover garage, automobile sales agency, repair shop, service station or public parking place operations hazards;

   we may cancel the Commercial Automobile Coverage Part by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation, including the actual reason for cancellation, to the last mailing address known to us:

   a. At least 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. At least 10 days before the effective date of cancellation for any other reason if the policy is in effect less than 30 days; or

   c. At least 20 days before the effective date of cancellation for other than nonpayment if the policy is in effect 30 days or more; or

   d. At least 20 days before the effective date of cancellation if the policy is in effect for 60 days or more or is a renewal or continuation policy, and the reason for cancellation is that your driver's license or that of any driver who customarily uses a covered "auto" has been suspended or revoked during policy period.

5. We will also mail or deliver to any mortgage holder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at their last mailing address known to us, written notice of cancellation, prior to the effective date of cancellation. If cancellation is for reasons other than those contained in Paragraph A.3. above, this notice will be the same as that mailed or delivered to the first Named Insured. If cancellation is for a reason contained in Paragraph A.3. above, we will mail or deliver this notice at least 20 days prior to the effective date of cancellation.

6. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

7. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be at least 90% of the pro rata refund unless the following applies:

   a. For Division Two – Equipment Breakdown, if the first Named Insured cancels, the refund will be at least 75% of the pro rata refund.

   b. If:

      (1) You are an individual;

      (2) A covered auto you own is of the "private passenger type";

      (3) The policy does not cover garage, automobile sales agency, repair shop, service station or public parking place operations hazards; and

      (4) The first Named Insured cancels;

      the refund will be not less than 90% of any unearned portion not exceeding $100, plus 95% of any unearned portion over $100 but not exceeding $500, and not less than 97% of any unearned portion in excess of $500.

   The cancellation will be effective even if we have not made or offered a refund.

8. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

The policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspection And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations, and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**G. Nonrenewal**

1. We may elect not to renew this policy by mailing or delivering written notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured and the first Named Insured's agent or broker, at their last mailing addresses known to us. We will also mail to any mortgage holder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at their last mailing address known to us, written notice of nonrenewal. We will mail or deliver these notices at least 45 days before the:

   a. Expiration of the policy; or

   b. Anniversary date of this policy if this policy has been written for a term of more than one year.

Otherwise, we will renew this policy unless:

   a. The first Named Insured fails to pay the renewal premium after we have expressed our willingness to renew, including a statement of the renewal premium, to the first Named Insured and the first Named Insured's insurance agent or broker, at least 20 days before the expiration date;

   b. Other coverage acceptable to the insured has been procured prior to the expiration date of the policy; or

   c. The policy clearly states that it is not renewable and is for a specific line, subclassification, or type of coverage that is not offered on a renewable basis.

2. If:

   a. You are an individual;

   b. A covered auto you own is of the "private passenger type"; and

   c. The policy does not cover garage, automobile sales agency, repair shop, service station or public parking place operations hazards;

the following applies to nonrenewal of the Commercial Automobile Coverage Part in place of G.1.:

   a. We may elect not to renew or continue this policy by mailing or delivering to you and your agent or broker written notice at least 20 days before the end of the policy period, including the actual reason for nonrenewal. If the policy period is more than one year, we will have the right not to renew or continue it only at an anniversary of its original effective date. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

   b. We will not refuse to renew Liability Coverage or Collision Coverage solely because an "insured" has submitted claims under Comprehensive Coverage or Towing And Labor Coverage.

   c. If we fail to mail or deliver proper notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

POLICY NUMBER: ISA H25295304      Endorsement Number: 208

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WEST VIRGINIA CHANGES – CANCELLATION

The provision in the Cancellation Condition which indicates that proof of mailing will be sufficient proof of notice is deleted.

POLICY NUMBER: ISA H25295304      Endorsement Number: 209

IL 02 83 11 18

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WISCONSIN CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph 2. of the Cancellation Common Policy Condition is replaced by the following:

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

If this policy has been in effect for less than 60 days and is not a renewal policy, we may cancel for any reason.

If this policy has been in effect for 60 days or more or is a renewal of a policy we issued, except as provided in Paragraph 7. below, we may cancel this policy only for one or more of the following reasons:

a. The policy was obtained by material misrepresentation;

b. There has been a substantial change in the risk we originally assumed, except to the extent that we should have foreseen the change or considered the risk in writing the policy;

c. There have been substantial breaches of contractual duties, conditions or warranties; or

d. Nonpayment of premium.

If this policy has been in effect for 60 days or more or is a renewal of a policy we issued, the notice of cancellation will state the reason for cancellation.

B. The following is added to the Cancellation Common Policy Condition:

7. Anniversary Cancellation

If this policy is written for a term of more than one year or has no fixed expiration date, we may cancel this policy for any reason by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the anniversary date of the policy. Such cancellation will be effective on the policy's anniversary date.

We may cancel this policy because of the termination of an insurance marketing intermediary's contract with us only if the notice of cancellation contains an offer to continue the policy with us if we receive a written request from the first Named Insured prior to the date of cancellation.

**C.** The following applies to the:

Capital Assets Program (Output Policy) Coverage Part

Commercial Inland Marine Coverage Part

Commercial Property Coverage Part

Crime And Fidelity Coverage Part

Equipment Breakdown Coverage Part

Farm Coverage Part

1. We may rescind this policy because of the following:

   **a.** Misrepresentation made by you or on your behalf in the negotiation for or procurement of this Coverage Part, if the person knew or should have known that the representation was false;

   **b.** Breach of affirmative warranty made by you or on your behalf in the negotiation for or procurement of this Coverage Part;

   **c.** Failure of a condition before a loss if such failure exists at the time of loss; or

   **d.** Breach of a promissory warranty if such breach exists at the time of loss.

2. We may not rescind this policy:

   **a.** For the reasons in Paragraphs **C.1.a.** and **C.1.b.** unless:

      **(1)** We rely on the misrepresentation or affirmative warranty and the misrepresentation or affirmative warranty is either material or made with intent to deceive; or

      **(2)** The facts misrepresented or falsely warranted contribute to the loss.

   **b.** For the reasons in Paragraphs **C.1.c.** and **C.1.d.** unless such failure or breach:

      **(1)** Increases the risk at the time of loss; or

      **(2)** Contributes to the loss.

3. If we elect to rescind this policy, we will notify the first Named Insured of our intention within 60 days after acquiring knowledge of sufficient facts to constitute grounds for rescission.

**D.** The following are added and supersede any other provisions to the contrary:

1. **Nonrenewal**

   **a.** If we elect not to renew this policy we will mail or deliver written notice of nonrenewal to the first Named Insured's last mailing address known to us. We may elect not to renew for any reason; the notice will state the reason for nonrenewal. We will mail or deliver the notice at least 60 days before the expiration date of this policy.

We need not mail or deliver the notice if:

**(1)** You have insured elsewhere;

**(2)** You have accepted replacement coverage;

**(3)** You have requested or agreed to nonrenewal of this policy;

**(4)** This policy is renewed in an affiliate in compliance with WIS. STAT. § 631.39; or

**(5)** This policy is expressly designated as nonrenewable.

   **b.** We may refuse to renew this policy because of the termination of an insurance marketing intermediary's contract with us only if the notice of nonrenewal contains an offer to renew the policy with us if we receive a written request from the first Named Insured prior to the renewal date.

   **c.** If you fail to pay the renewal or continuation premium by the premium due date, this policy will terminate on the policy expiration or anniversary date, if we have:

      **(1)** Given you written notice of the renewal or continuation premium not more than 75 days nor less than 10 days prior to the due date of the premium; and

      **(2)** Stated clearly in the notice the effect of nonpayment of premium by the due date.

2. **Anniversary Alteration**

   If this policy is written for a term of more than one year or has no fixed expiration date, we may alter the terms or premiums of this policy by mailing or delivering written notice of loss favorable terms or premiums to the first Named Insured's last mailing address known to us. We will mail, by first class mail, or deliver this notice at least 60 days prior to the anniversary date.

   If we notify the first Named Insured within 60 days prior to the anniversary date, the new terms or premiums will not take effect until 60 days after the notice was mailed or delivered. The notice will include a statement of the first Named Insured's right to cancel. The first Named Insured may elect to cancel the policy at any time during the 60-day period, in accordance with Paragraph **1.** of the Cancellation Common Policy Condition. If the first Named Insured elects to cancel the policy during the 60-day period, return premiums or additional premium charges will be calculated proportionally on the basis of the old premiums.

3. **Renewal With Altered Terms**

   If we elect to renew this policy but on less favorable terms or at higher premiums, we will mail or deliver written notice of the new terms or premiums to the first Named Insured's last mailing address known to us. We will mail, by first class mail, or deliver this notice at least 60 days prior to the renewal date.

   If we notify the first Named Insured within 60 days prior to the renewal date, the new terms or premiums will not take effect until 60 days after the notice was mailed or delivered. The notice will include a statement of the first Named Insured's right to cancel. The first Named Insured may elect to cancel the renewal policy at any time during the 60-day period, in accordance with Paragraph **1.** of the Cancellation Common Policy Condition. If the first Named Insured elects to cancel the renewal policy during the 60-day period, return premiums or additional premium charges will be calculated proportionately on the basis of the old premiums.

We need not mail or deliver this notice if the only change adverse to you is a premium increase that:

**a.** Is less than 25% and is generally applicable to the class of business to which this policy belongs; or

**b.** Results from a change based on your action that alters the nature or extent of the risk insured against, including but not limited to a change in the classification or the units of exposure, or increased policy coverage.

**E.** **Special Provision — Cancellation And Nonrenewal**

With respect to insurance provided under the Commercial Automobile Coverage Part, we will not cancel or refuse to renew Liability Coverage wholly or partially because of age, sex, residence, race, color, creed, religion, national origin, ancestry, marital status or occupation of anyone who is an insured.