IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON RAHIMZADEH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22 C 7056 |
| | ) |
| ACE AMERICAN INSURANCE COMPANY, | ) Judge Joan H. Lefkow |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Jason Rahimzadeh filed this action against Defendant ACE American Insurance Company (ACE)[1] after Rahimzadeh was hit by a vehicle while riding his personal bicycle during a virtual work-promoted exercise event.[2] He brings claims under Illinois law alleging that ACE breached the insurance contract by failing to provide underinsured motorists (UIM) coverage, that ACE's promised insurance coverage is illusory, and that ACE violated Section 155 of the Illinois Insurance Code, 215 Ill. Comp. Stat. 5/155. ACE now moves to dismiss the complaint

---

[1] Although Rahimzadeh's complaint refers to both ACE and "Chubb," clarification from ACE makes clear that "Chubb" is merely a trade name. (*See* dkt. 17 at 1–2.) ACE further explains that it is "part of the 'Chubb' family of companies for branding purposes" and that as the issuer of the relevant insurance policy it is the only appropriate defendant in this case. (*Id.* at 2.) Although Rahimzadeh points to circumstances possibly suggesting that a separate "Chubb" entity could have played a role in this dispute (*id.* at 2–4), the court takes ACE's representation at face value. Additionally, Rahimzadeh does not identify a particular "Chubb" entity that should be joined to the suit. Speculation that some "Chubb" entity could be a proper defendant is insufficient to show that "the court cannot accord complete relief among existing parties" absent joinder of an additional party. Fed. R. Civ. P. 19(a)(1)(A). It is well-established that "the plaintiff is 'the master of the complaint,'" *Holmes Grp., Inc.* v. *Vornado Air Circulation Sys., Inc.* 535 U.S. 826, 831 (2002) (quoting *Caterpillar, Inc.* v. *Williams*, 482 U.S. 386, 398–99 (1987)), and so Rahimzadeh must amend the complaint accordingly if he believes some additional entity is a necessary defendant.

[2] This court has diversity jurisdiction under 28 U.S.C. § 1332, and venue is proper under 28 U.S.C. § 1391(b).

1

under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 12.) For the reasons stated below, the motion is granted.

## BACKGROUND

Rahimzadeh alleges the following facts in his complaint. On September 11, 2020, Rahimzadeh "suffered significant, debilitating injuries" when he was struck by a vehicle while riding a bicycle. (Dkt. 1-1 ¶¶ 3, 30, 47.)[3] The accident occurred during the workday while he was employed by Medtronic PLC ("Medtronic"). (*Id.* ¶¶ 4–5.) As a part of his employment, Medtronic issued a company vehicle to Rahimzadeh. (*Id.* ¶¶ 11–12.) This company vehicle was registered to "D. L. Peterson Trust" and insured by ACE, an insurance company. (*Id.* ¶¶ 7, 11–14, 34.)

The insurance policy issued by ACE for the company vehicle (the Policy) lists "Medtronic plc" as the Named Insured. (Dkt. 12-1 at 58, 97.) The Policy includes both liability and UIM coverage. (*See id.* at 60, 166.) The UIM coverage provision obligates ACE to "pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.'" (*Id.* at 166.) For the purposes of liability coverage, the Policy defines "insureds" to include "Anyone … while using with [Medtronic's] permission a covered 'auto[.]'" (*Id.* at 60.) As for UIM coverage, the Policy then explains that when a "partnership, limited liability company, corporation or any other form of organization" is designated as the Named Insured, then "[a]nyone 'occupying' a covered 'auto'" is an "insured" for purposes of UIM coverage. (*Id.* at 166.) The Policy defines "auto" as a "land motor vehicle,

---

[3] Dkt. 1-1 is a continuous document that includes the complaint and the insurance policy at issue in this lawsuit, along with other documents not relevant to the present motion. Because the documents are jumbled together, the court cites to dkt. 1-1 only for the complaint. The insurance policy is also attached to ACE's motion to dismiss as dkts. 12-1, 12-2, and 12-3, and so the court cites the insurance policy to those docket entries to facilitate ease of reference.

'trailer' or semitrailer designed for travel on public roads" or "[a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged." (*Id.* at 68.) Vehicles leased by Medtronic are considered "covered autos." (*Id.* at 59, 97.) "'Occupying' means in, upon, getting in, on, out or off." (*Id.* at 169.)

When the accident occurred, Rahimzadeh was "participating in exercise activities endorsed by his employer, Medtronic." (Dkt. 1-1 ¶ 15.) Medtronic's "Healthier Together" initiative encourages employees to "run, walk, or roll a 5K" during the workday. (*Id.* ¶¶ 31–32.) Sometime before the accident, Medtronic sent an email to employees announcing that the "first virtual Medtronic Move Together 5K" would take place September 11–13, 2020. (*Id.* ¶ 30.) As a part of this work initiative, Rahimzadeh would bike during the workday. (*Id.* ¶ 32.) On September 11, a workday and the first day of the "Healthier Together" initiative, he was struck by a vehicle which led to "debilitating" injuries. (*Id.* ¶¶ 3, 30.) After the accident, Rahimzadeh submitted a claim for UIM coverage under Medtronic's insurance policy. (*Id.* ¶ 16.) ACE sent a letter and refused coverage under the policy for the following reasons: "(1) the bicycle does not meet the definition of an owned 'auto' as defined in the Policy, nor would it qualify as an 'auto' owned by Medtronic; and (2) [Rahimzadeh] does not qualify as an 'insured' under the Policy, under the terms of the Illinois Uninsured Motorists Coverage Endorsement." (*Id.* ¶ 23.) Rahimzadeh's counsel sent a response letter arguing for coverage (*id.* ¶ 26), but ACE replied by reiterating its refusal (*id.* ¶ 27).

Rahimzadeh then took legal action. He sued the at-fault driver of the vehicle and sought UIM coverage through his personal insurance. (*Id.* ¶¶ 17–18.) He also filed this suit on September 8, 2022, bringing claims under Illinois law for breach of contract (Count I), for

3

illusory coverage (Count II), and for vexatious and unreasonable conduct under Section 155 (Count III).[4] ACE now moves to dismiss all of the claims against it. (Dkt. 12.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). These factual allegations "must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In ruling on 12(b)(6) motions, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Taha* v. *Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). Documents attached to a complaint are considered part of that pleading. Fed. R. Civ. P. 10(c).

## ANALYSIS

ACE argues that Rahimzadeh fails to state his breach of contract, illusory coverage, and vexatious and unreasonable conduct claims. Rahimzadeh counters that ACE's motion improperly asks the court to consider "the merits of the case" rather than simply testing "the sufficiency of the complaint." (Dkt. 14 at 5.) In making this argument, Rahimzadeh misunderstands the applicable legal standard. Testing "the sufficiency of the complaint, not the merits of the case" means only that the court must "accept the facts [alleged in the complaint] as true and draw all

---

[4] Originally filed in the Circuit Court of Cook County, the action was removed by defendants to federal court on December 14, 2022. (Dkt. 1.)

reasonable inferences in the [plaintiff's] favor." *Gociman* v. *Loyola Univ. Chi.*, 41 F.4th 873, 885 (7th Cir. 2022). It is entirely appropriate for the court to resolve questions of law at the motion to dismiss stage, and indeed "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke* v. *Williams*, 490 U.S. 319, 326 (1989). ACE argues that as a matter of law, Rahimzadeh has not alleged facts in the complaint that demonstrate an entitlement to relief under any of his claims. Such argument is the proper method by which a defendant may challenge the sufficiency of the complaint against it. *See, e.g.*, *Iqbal*, 556 U.S. at 678. The court considers each of Rahimzadeh's claims in turn.

## I. Breach of Contract

Rahimzadeh primarily seeks a declaration that he is entitled to UIM coverage under the Policy, and that ACE's refusal to cover the September 2020 collision under the UIM provisions of the Policy constitutes a breach of contract. To state a claim for breach of contract under Illinois law, Rahimzadeh must allege facts indicating "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Catania* v. *Local 4250/5050 of Commc'ns Workers of Am.*, 834 N.E.2d 966, 971 (Ill. App. Ct. 2005) (quoting *Henderson-Smith & Assocs., Inc.* v. *Nahamani Family Serv. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001)). There is no dispute that the facts alleged in Rahimzadeh's complaint fulfill elements one and two. Instead, ACE argues that Rahimzadeh cannot establish that a breach occurred because Rahimzadeh was not occupying an "auto" covered by the Policy when he was involved in the collision. (Dkt. 12 at 4.)

When interpreting an insurance policy under Illinois law, the same principles of interpretation and construction apply as when construing other contracts. *See, e.g.*, *Seeburg Corp. of Del.* v. *United Founders Life Ins. Co. of Ill.*, 403 N.E.2d 503, 506 (Ill. App. Ct. 1980).

The inquiry begins with an initial question of law as to whether the contract is ambiguous. *Platinum Supplemental Ins., Inc.* v. *Guarantee Tr. Life Ins. Co.*, 989 F.3d 556, 563 (7th Cir. 2021). A contract is ambiguous "if it is capable of being understood in more sense than one." *Sherwood Commons Townhome Owners Ass'n, Inc.* v. *Dubois*, 148 N.E.3d 900, 912 (Ill. App. Ct. 2020) (quoting *Farm Credit Bank of St. Louis* v. *Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991)). If the court determines that the contract contains an ambiguity, "construction of the contract becomes a question of fact and extrinsic evidence is admissible to ascertain the parties' intent." *See City of Peoria* v. *Peoria Area Advancement Grp., LLC*, 2017 IL App (3d) 160216-U, ¶ 62 (2017) (citing *Whitlock*, 581 N.E.2d at 667). By contrast, when the terms of a contract are unambiguous, their interpretation remains a question of law. *See Lexington Ins. Co.* v. *Horace Mann Ins. Co.*, 186 F. Supp. 3d 920, 929 (N.D. Ill. 2016); *Whitlock*, 581 N.E.2d at 667.

Here, Rahimzadeh makes no argument regarding ambiguity in his response brief but asserts in the complaint that the "policy is ambiguous with respect to UIM coverage for the September 11, 2020 accident." (Dkt. 1-1 ¶ 39.) This statement—unsupported by any citation to relevant contractual language—is entirely conclusional. The court is "not bound to accept as true a legal conclusion [in the complaint] couched as a factual allegation," *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986), and Rahimzadeh's failure to develop his ambiguity argument results in its forfeiture at the motion to dismiss stage, *see, e.g.*, *John K. MacIver Inst. for Pub. Policy* v. *Evers*, 994 F.3d 602, 614 (7th Cir. 2021). In any event, the court's review of the Policy's relevant terms reveals no ambiguity. It is therefore proper for the court to interpret the Policy as a question of law at the motion to dismiss stage.

The key dispute in this case is whether Illinois public policy requires interpretation of the Policy in such a way to extend UIM coverage to Rahimzadeh even though his company car had

6

no involvement in the collision that caused his injuries. Under the Policy, a person is considered an "insured"—and hence eligible for UIM coverage—only if that person is "'occupying' a covered 'auto[.]'" (Dkt. 12-1 at 166.) Rahimzadeh alleges that he was riding his bicycle at the time of the collision. (Dkt. 1-1 ¶¶ 32, 48.) He makes no allegations that he was "in, upon, getting in, on, out or off" (dkt. 12-1 at 169) his company car at the time of the accident, and he advances no argument that he was in "actual or virtual physical contact" with the vehicle. *DeSaga* v. *W. Bend Mut. Ins. Co.*, 910 N.E.2d 159, 167 (Ill. App. Ct. 2009) (interpreting insurance policy defining "occupying" in the same way as here to require that "(1) there must be some nexus or relationship between the injured party and the covered vehicle, and (2) there must be actual or virtual physical contact between the injured party and the covered vehicle"). Accordingly, Rahimzadeh has not alleged that he was "occupying" a covered auto at the time of the collision and therefore would not be considered an insured entitled to UIM coverage under the Policy.

Notwithstanding this plain language, Rahimzadeh argues that recent developments in Illinois law make the "occupying a covered auto" requirement void as violative of public policy. (Dkt. 14 at 7.) For support, Rahimzadeh relies entirely on the Illinois Appellate Court's recent decision in *Galarza* v. *Direct Auto Ins. Co.*, 209 N.E.3d 409 (Ill. App. Ct. 2022). In *Galarza*, the court concluded that an individual who "qualifies as an insured for purposes of the policy's bodily injury liability provisions … must be treated as an insured for purposes of [UIM] coverage." *Id.* at 417. The court then held that Illinois public policy requires UIM coverage for insureds injured while pedestrians by uninsured motorists and that contractual language limiting UIM coverage to insureds occupying a covered vehicle violates Illinois public policy. *Id.* at 417–18. Thus, Rahimzadeh argues that the Policy's "occupying a covered auto" requirement cannot provide a valid ground to deny him UIM coverage under Illinois law. (Dkt. 14 at 10–11.)

In Illinois, "the power to declare a private contract invalid on public policy grounds is exercised sparingly." *Phoenix Ins. Co.* v. *Rosen*, 949 N.E.2d 639, 645 (Ill. 2011). "An agreement will not be invalidated unless it is clearly contrary to what the constitution, the statutes, or the decisions of the courts have declared to be the public policy of Illinois or unless it is 'manifestly injurious to the public welfare[,]'" *id.* (quoting *Progressive Universal Ins. Co. of Ill.* v. *Liberty Mut. Fire Ins. Co.*, 828 N.E.2d 1175, 1180 (Ill. 2005)), and "[t]hose seeking to have an agreement invalidated carry a 'heavy burden' of demonstrating a violation of public policy[,]" *id.* (quoting *Mohanty* v. *St. John Heart Clinic, S.C.*, 866 N.E.2d 85, 93 (Ill. 2006)). Additionally, "[w]hether an agreement is contrary to public policy depends on the particular facts and circumstances of the case." *Progressive*, 828 N.E.2d at 1180.

Here, Rahimzadeh makes no effort to engage with this legal standard or explain why the public policy announced in *Galarza* applies with equal force to the facts and circumstances of this case. Rahimzadeh would have the court treat this case as identical in all relevant respects to *Galarza*—even though *Galarza* examined UIM coverage available to the family member of a named insured under a personal automobile insurance policy, 209 N.E.3d at 412, while this case considers the extent to which UIM coverage is available to the employee of a corporate named insured under the corporation's insurance policy. Because Rahimzadeh has not grappled with this distinction or its potential implications, the court cannot conclude that he has met his "heavy burden" of demonstrating that the Policy "is *clearly* contrary to what the constitution, the statutes, or the decisions of the courts have declared to be the public policy of Illinois." *Phoenix*, 949 N.E.2d at 645 (emphasis added). Based on the facts alleged in the complaint, and without his public policy argument to invalidate the Policy's "occupying a covered auto" requirement,

8

Rahimzadeh is not eligible for UIM coverage under the plain language of the Policy. This alone is sufficient reason to grant ACE's motion as to the breach of contract claim.

Furthermore, closer examination of the relevant law makes clear that the distinction between the facts of *Galarza* and this case are indeed dispositive. As the court described in *Stark* v. *Illinois Emcasco Insurance Co.*, "where an insured is a corporation, uninsured motorist coverage does *not* extend to employees or family members of employees for accidents that do not involve occupancy of covered vehicles." 869 N.E.2d 957, 962 (Ill. App. Ct. 2007) (emphasis in original) (citing *Economy Preferred Ins. Co.* v. *Jersey Cty. Constr., Inc.*, 615 N.E.2d 1290, 1292 (Ill. App. Ct. 1993)).[5] The *Stark* court explained this rule as an exercise in respect for the contracting parties. When a company purchases automobile insurance for its vehicles, it pays premiums "to provide underinsured coverage benefits for those occupying a covered automobile." *Id.* at 963. Absent contractual language to the contrary, the insurer does not contemplate "undertaking the risk" of insuring corporate employees or officers as pedestrians, and requiring the insurer to provide UIM coverage to employees for injuries sustained while they are pedestrians would impermissibly result in a court "making a new contract of insurance for the parties[.]" *Id.* at 964.

The logic of *Stark* is consistent with that expressed in *Galarza*. *Galarza* holds that Illinois law requires insurers to protect policyholders from uninsured motorists, and public policy will not permit insurers to avoid this responsibility by excluding pedestrians who would have been

---

[5] Rahimzadeh insists that *Stark* "does not stand for the proposition that UIM coverage does not extend to employees injured in accidents that do not involve occupancy of covered autos if the named insured is a corporation." (Dkt. 14 at 12.) But that proposition is the most concise way to state the holding of the case. *See Stark*, 869 N.E.2d at 964 (holding that plaintiff, the sole officer, director, and shareholder of a corporation, had no UIM coverage rights under the corporation's insurance policy when he was injured in a collision as a pedestrian because he was neither "a named insured nor occupying a covered automobile at the time of the accident").

9

entitled to UIM coverage if only they had been in their vehicle at the time of the collision. *See* 209 N.E.3d at 418. Put differently, UIM coverage protects individual policyholders and their families as people, not just as occupants of their covered vehicle. By contrast, corporate policyholders contract with insurers to protect the company, not individuals associated with the company, and so such contracts may specify that the company's interest in UIM coverage is implicated only when a person occupies a company vehicle. *See generally Stark*, 869 N.E.2d 957. Illinois law does not allow insurers to deny an insured UIM coverage simply because of the insured's status as a pedestrian, but it does recognize that a person associated with a company need not be considered an insured under the company's insurance policy in all circumstances merely because that person would be an insured in some circumstances. *See Galarza*, 209 N.E.3d at 419 (distinguishing *Stark* without disturbing its holding by clarifying that *Galarza* considers "the insured's status as a pedestrian" while *Stark* addresses "whether the policy issued to a company provided certain coverage to the company's sole officer, director, and shareholder").

Here, Rahimzadeh alleges that he was a Medtronic employee seeking UIM coverage under an insurance policy listing Medtronic as the named insured for injuries that occurred when he was not occupying a company vehicle. By making a claim under Medtronic's insurance policy, Rahimzadeh directly implicates *Stark*—and the key question becomes whether Rahimzadeh can qualify as an insured under the Policy when not using or occupying a covered auto. He cannot. (*See* dkt. 12-1 at 60, 166.) Rahimzadeh therefore had no right to UIM coverage under the Policy, and his breach of contract claim against ACE is properly dismissed.[6] *See Stark*,

---

[6] *Galarza* is not implicated here because the alleged fact that Rahimzadeh was riding his bicycle at the time of the collision is irrelevant. The same result would follow whether Rahimzadeh was walking, cycling, riding a motorcycle, or commuting to work in his personal vehicle. As long as the collision occurred when he was not occupying a covered vehicle, Rahimzadeh would not be considered an insured under the Policy.

869 N.E.2d at 964 ("Plaintiff, not being a named insured nor occupying a covered automobile at the time of the accident, had no coverage rights under the [company's insurance policy]… .")

## II.     Illusory Coverage

Rahimzadeh also pleads an illusory coverage claim in the alternative to his breach of contract claim. In support, Rahimzadeh alleges that the Policy "limits coverage to vehicles that are owned by Medtronic" (dkt. 1-1 ¶ 53), so the fact that the registered owner of his Medtronic-issued car is "D.L. Peterson Trust" makes insurance coverage under the policy illusory (*id.* ¶¶ 54–56; dkt. 14 at 13). Rahimzadeh also alleges that the rationale used by ACE in its denial letters would make it impossible for him to receive UIM coverage for his use of the company-issued vehicle. (Dkt. 1-1 ¶¶ 57–60.)

"An insurance policy is illusory under Illinois law if there is no possibility under any set of facts for coverage." *U.S. Specialty Ins. Co.* v. *Vill. of Melrose Park*, 455 F. Supp. 3d 681, 689 (N.D. Ill. 2020) (internal quotation marks omitted). In other words, an insurance policy need not "provide coverage against all possible liabilities; if it provides coverage against some, the policy is not illusory." *Atl. Specialty Ins. Co.* v. *AC Chi., LLC*, 272 F. Supp. 3d 1043, 1051 (N.D. Ill. 2017) (quoting *Nicor, Inc.* v. *Associated Elec. & Gas Ins. Servs. Ltd.*, 841 N.E.2d 78, 86 (Ill. App. Ct. 2005), *aff'd*, 860 N.E.2d 280 (Ill. 2006)).

Here, the facts alleged by Rahimzadeh show that the Policy provides coverage against some possible liabilities. If Rahimzadeh were injured by an uninsured motorist while he was occupying a covered auto, for example, then he would plainly be entitled UIM coverage under the Policy. (Dkt. 12-1 at 166.) The rationales provided by ACE in its denial letters do not indicate otherwise. (Dkt. 1-1 ¶¶ 23, 27, 57, 60.) Furthermore, D.L. Peterson Trust's ownership of Rahimzadeh's company-issued vehicle is irrelevant. Rahimzadeh alleges that ACE admitted in

its correspondence with him that "the vehicle used by Rahimzadeh is an insured vehicle, subject to UM/UIM coverage" (*id.* ¶ 59), and there are no allegations that ACE denied coverage on the grounds that Rahimzadeh's company-issued vehicle was not a covered vehicle. (*See also* dkt. 12-1 at 59, 97 (vehicles leased by Medtronic are covered autos under the Policy).) But even if Rahimzadeh's company-issued vehicle were somehow not a covered auto under the Policy, that still would not make the Policy illusory—it would simply mean that Rahimzadeh's company-issued car was not covered by the Policy. In such circumstances, Rahimzadeh would still have UIM coverage under the Policy if he were to drive or occupy a different company vehicle that was covered by the Policy. Because Rahimzadeh alleges facts showing that the Policy provides UIM coverage in at least some circumstances, his illusory coverage claim cannot succeed as a matter of law and must be dismissed.

### III. Section 155 of the Illinois Insurance Code

Lastly, Rahimzadeh alleges that ACE engaged in vexatious and unreasonable conduct by refusing to provide UIM coverage for the September 2020 collision, and he therefore makes a claim for attorney fees under 215 Ill. Comp. Stat. 5/155(1). Section 155 "provides that an award of attorneys fees and costs is appropriate if insurers' actions are 'vexatious and unreasonable.'" *Citizens First Nat'l Bank of Princeton* v. *Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) (quoting 215 Ill. Comp. Stat. 5/155). An insurer does not act vexatiously and unreasonably "if (1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *Id.* (citations omitted). As discussed in the court's breach of contract analysis, the court agrees with ACE that it properly denied coverage in light of the Policy and the

facts alleged in the complaint. Consequently, ACE has asserted a legitimate policy defense and has taken a reasonable legal position on an unsettled issue of law. As a result, the law requires dismissal of Rahimzadeh's Section 155 claim. *See id.*; *PQ Corp.* v. *Lexington Ins. Co.*, 860 F.3d 1026, 1038 (7th Cir. 2017) ("It is neither vexatious nor unreasonable … to deny coverage based on a position that prevails.").

## **CONCLUSION AND ORDER**

For the reasons stated above, the motion to dismiss is granted. The complaint is dismissed without prejudice. Rahimzadeh is given until October 10, 2023 to file an amended complaint. If he does not replead, this dismissal will convert to a dismissal with prejudice on October 11, 2023.

Date: September 20, 2023

_____
U.S. District Judge Joan H. Lefkow